# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

PROMOS TECHNOLOGIES, INC., )
                      )
      Plaintiff, )
                      )
     v. )
                      )
FREESCALE SEMICONDUCTOR, INC., )
                      )
      Defendant. )

**REDACTED**
**PUBLIC VERSION**

Civil Action No. 06-788-JJF

## PLAINTIFF PROMOS TECHNOLOGIES, INC.'S MOTION TO COMPEL DEFENDANT FREESCALE SEMICONDUCTOR, INC. TO PRODUCE TECHNICAL DOCUMENTS DESCRIBING CERTAIN PRODUCTS ACCUSED OF INFRINGEMENT

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
Telephone: (302) 654-1888
Facsimile: (302) 654-2067
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Plaintiff*
*ProMOS Technologies, Inc.*

*Of Counsel*:

William H. Wright
HOGAN & HARTSON LLP
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
Telephone: (310) 785-4600

Steven J. Routh
Sten A. Jensen
HOGAN & HARTSON LLP
555 Thirteenth Street, NW
Washington, DC 20004
Telephone: (202) 637-5600

Dated: July 6, 2007
182088.1

Pursuant to Rules 34 and 37 of the Federal Rules of Civil Procedure and Local Rule 37.1, Plaintiff ProMOS Technologies, Inc. ("ProMOS") hereby respectfully moves the Court for an order compelling defendant Freescale Semiconductor, Inc. ("Freescale") to produce basic technical documents necessary for ProMOS to prepare its infringement case for trial.

This case is at a critical stage of discovery, with document production scheduled to be completed by August 15, 2007. Nonetheless, Freescale has yet to produce technical documents for any cache memory products beyond the representative product families specifically analyzed by ProMOS in its discovery responses. Although ProMOS has provided Freescale with infringement contentions that explain how representative Freescale products infringe the two cache memory patents-in-suit, Freescale has taken the position that ProMOS must come forward with a similar showing for each and every product on which ProMOS seeks discovery before Freescale will produce technical documents on those products. Freescale's position is inconsistent with the scope of discovery under Fed. R. Civ. P. 26 and 34, and would deny ProMOS the opportunity to determine the extent of Freescale's infringing conduct. Accordingly, the Court should compel Freescale to comply with its discovery obligations and to produce the requested documents.

## PROCEDURAL BACKGROUND

On December 22, 2006, ProMOS filed this action against Freescale, a manufacturer of semiconductors, alleging infringement of three of ProMOS's patents: U.S. Patent No. 5,488,709 entitled "Cache Including Decoupling Register Circuits" ("the '709 patent"), U.S. Patent No. 5,732,241 entitled "Random Access Cache Memory Controller and System" ("the '241 patent"), and U.S. Patent No. 6,670,267 entitled "Formation of Tungstein-Based Interconnect Using Thin Physically Vapor Deposited Titanium Nitride Layer" ("the '267 patent"). Both the '709 patent and the '241 patent involve cache memory, a supplementary memory system that temporarily stores

frequently-used instructions and data for quicker processing by the central processor of a computer (the '709 patent and the '241 patent are referred to collectively herein as the "cache memory patents"). The '267 patent is directed toward a method for manufacturing semiconductors using titanium nitride. This motion does not present any issues relating to the '267 patent.

1.     **ProMOS's Document Requests to Freescale**

The proposed scheduling order submitted jointly by the parties requires that document production be completed by August 15, 2007. ProMOS served its first set of document requests on Freescale on April 12, 2007. A copy of these requests is attached hereto as Exhibit A. In relevant part, the requests seek basic technical documents necessary for ProMOS to present its infringement case at trial, including circuit diagrams (Request Nos. 46-49), drawings, schematics, and specifications (Request Nos. 27-30), reference and user manuals (Request No. 32), and manufacturing drawings (Request Nos. 33-37) of Freescale Products. ProMOS's requests specifically defined the term "Freescale Products" to include (i) "microcontrollers, microprocessors, processors, digital signal processors, controller cores, processor cores and all other components or goods you manufacture or market for sale or sell in any way that use, incorporate, work with or rely on cache memory"; (ii) "systems, components, products and goods that use, incorporate work with or rely on microcontrollers, microprocessors, processors, digital signal processors, controller cores, processor cores or other components or goods that use, incorporate, work with or rely on cache memory"; and (iii) "integrated circuits and semiconductor products that incorporate one or more conductors that includes a layer of tungsten overlying a layer

of titanium nitride, such conductors including, but not limited to, those formed using Damascene and dual Damascene processes." Ex. A at 5. 1/

Freescale served its responses to ProMOS's document requests on May 17, 2007. A copy of Freescale's responses is attached hereto as Exhibit B. With regard to ProMOS's request for circuit diagrams, Freescale asserted objections but agreed to produce non-privileged responsive documents. Ex. B (Responses to Request Nos. 46-49). Freescale, however, did not indicate an intent to produce user or operation manuals. Id. (Response to Request No. 32). Moreover, in response to other requests for technical documents, Freescale asserted a number of objections and stated that "Freescale will supplement its response within a reasonable time frame upon receiving sufficient information from ProMOS regarding its allegations to allow Freescale to respond with information regarding relevant Freescale products." Id. (Responses to Request Nos. 27-30).

**2.    ProMOS's Identification of Freescale Products Currently Known to Infringe**

Notwithstanding Freescale's suggestion to the contrary, at the time Freescale responded to ProMOS's document requests, ProMOS already had provided Freescale with detailed information regarding its infringement allegations, including a list of representative products accused of infringement and Powerpoint presentations explaining ProMOS's infringement contentions with respect to representative Freescale products. On May 14, 2007, ProMOS served its answers to Freescale's First Set of Interrogatories, a copy of which is attached hereto as Exhibit C. In these answers, ProMOS provided Freescale with specific information regarding the infringing Freescale products specifically identified by ProMOS. In doing so, ProMOS's interrogatory answers stated

---

1/    The first two prongs of the definition of Freescale Products are relevant to this motion as they seek information relating to products that use cache memory – the subject matter of the '709 and '241 patents. The third prong of the definition is not relevant to this motion as it seeks information on products manufactured using the inventions claimed in the '267 patent.

as follows: "Freescale infringes the '709 patent through its MPC 7450 RISC microprocessor and similar processors including MPC 7448, MPC 7447A, MPC 7457, MPC 7455, MPC 7451, MPC 7450, MPC 7447, MPC 7445, MPC 7441.  Other infringing processors include the e500 and e600 cores and processors and systems that include those cores as well as the products identified as the PowerQUICC II and Power QUICC III processors.  The i.MX31 processor infringes the '709 patent."  Ex. C (Answer to Interrogatory No. 1).  With regard to the '241 patent, ProMOS asserted: "Freescale infringes the '241 patent through its i.MX31 processor, MC 68060, MC68LC060 and MC68EC60 processors, the ColdFire processors identified as the MCF548x processor, and the ColdFire V4e, V5 and V5E processors."  Id.  ProMOS also provided Freescale with detailed Powerpoint presentations showing how certain of the independent claims of the patents-in-suit read on representative Freescale products.  See Attachments to Exhibit C.

　　　　ProMOS thus provided Freescale with specific infringement contentions regarding a number of products known by ProMOS to infringe the cache memory patents-in-suit.  With regard to those patents, however, ProMOS specifically stated in its interrogatory answers that "the foregoing listing is exemplary, and ProMOS believes that other past and present Freescale products infringe [the cache memory patents-in-suit].  Additional information in that regard is in the exclusive possession of Freescale.  Accordingly, ProMOS reserves the right to supplement this response as discovery progresses."  Ex. C (Answer to Interrogatory No. 1).

**3.　　　Freescale's Document Production and The Parties' Discovery Conferences**

　　　　The vast majority of the so-called "technical" documents produced by Freescale to date relating to the cache memory patents are comprised of 30,000 pages of publicly-available user manuals and reference manuals and drafts thereof.  See FSI DEL 5558-30343; FSI DEL 30737-31305.  The user manuals and reference manuals are available from Freescale's website

and do not contain sufficient technical detail to permit ProMOS to prepare an adequate

infringement case for trial.  The only other technical documents that have been produced by

Freescale as of the filing of this motion are seven documents, collectively totaling 300-some pages,

which appear to be                          **REDACTED**

                                                        Freescale has yet to produce any

circuit diagrams,2/ detailed block diagrams, manufacturing drawings, specifications or detailed

schematics of any of its cache memory systems – even those specifically identified as infringing

products in ProMOS's interrogatory answers.

     ProMOS provided Freescale with notice of its complaints about the adequacy of

Freescale's discovery responses in letters dated May 18, 2007 and June 25, 2007.  Exhibit D.  The

parties also held telephone conferences relating to these issues on May 23, 2007, June 28, 2007,

and July 5, 2007.  During each of these discussions, counsel for ProMOS has made clear its

disagreement with  Freescale's position on the issues that are the subject of this motion.  Although

Freescale has promised to supplement its production in the coming days to include additional

technical documents on the product families specifically identified in ProMOS's interrogatory

answers, Freescale has taken the position that it will not produce *any* technical documents relating

to Freescale's other cache memory products until after ProMOS specifically identifies such

products and provides claim charts or their equivalent setting forth ProMOS's contentions

_____

2/     A circuit diagram is a drawing which uses standardized symbols to depict the connections
between components of an electrical device.  They are used by companies that manufacture and
sell semiconductors and similar devices, and tend to be lengthy documents, in light of the amount
of circuitry in an integrated circuit.  For example, in a proceeding filed by Freescale against
ProMOS in the Eastern District of Texas, many of the circuit diagrams produced by ProMOS are
approximately 200 pages each.

regarding how those products infringe the cache memory patents. 3/ Freescale's refusal to provide these documents effectively prevents ProMOS from determining the full extent to which Freescale products infringe the cache memory patents-in-suit.

## ARGUMENT

The Federal Rules of Civil Procedure provide for "a broad scope of discovery." Novartis Pharmaceuticals Corp. v. Eon Labs Mfg., Inc., 206 F.R.D. 392, 394 (D. Del. 2002); accord Block Drug Co., Inc. v. Sedona Labs., Inc., No. Civ. A. 06-350, 2007 WL 1183828, *1 (D. Del. Apr. 19, 2007) ("discovery is to be liberally allowed"); Corning Inc. v. SRU Biosystems, LLC, 223 F.R.D. 191, 193 (D. Del. 2004) ("it is well recognized that the federal rules allow broad and liberal discovery") (granting motion to compel); Advanced Med. Optics, Inc. v. Alcon Inc., No. Civ. A. 03-1095-KAJ, 2004 WL 187774, *2 (D. Del. Aug. 18, 2004) ("The broad scope of discovery under the Federal Rules of Civil Procedures is well-known.") (granting motion to compel discovery into sales of non-accused products). Thus, "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." F.R.C.P. 26(b)(1). Relevance "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." Pitney Bowes, Inc. v. Kern Int'l, Inc., 239 F.R.D. 62, 65 (D. Conn. 2006). The party receiving a request must not only produce information which is admissible as evidence, but also information which "appears reasonably calculated to lead to the discovery of admissible evidence." Id.; see also Advanced Med. Optics, Inc. 2004 WL 187774 at *2 ("Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.").

---

3/      In an effort to narrow the issues in dispute, ProMOS also has now provided Freescale with a preliminary list of specific, additional products that it contends to infringe the cache memory patents-in-suit based on presently-available information. See Exhibit E.

"'Reasonably calculated' in Rule 26 means 'any possibility that the information sought may be relevant to the subject matter of the action.'" Pitney Bowes, Inc. v. Kern Int'l, Inc., 239 F.R.D. 62, 65 (D. Conn. 2006)  Moreover, "[i]n patent cases there is a substantial policy for a 'broad type of discovery and duty of full disclosure' in order to reduce the 'maximum amount of evidence." Ropak Corp. v. Plastican, Inc., No. 04 C 5422, 2006 WL 1005406 (N.D. Ill. Apr. 17, 2006).

The technical documents that are the subject of this motion – circuit diagrams, block diagrams, specifications, manufacturing drawings, and other technical drawings – not only are reasonably calculated to lead to the discovery of admissible evidence, but they also are critical to ProMOS's ability to prove its infringement case at trial.  See Pitney Bowes, 239 F.R.D. at 65 ("the technical specifications in drawings related to … the accused devices at issue in the case [are] not only directly and highly relevant, but indeed are critical to the infringement claims asserted in the case."); Cornell Research Foundation, Inc. v. Hewlett Packard Co., 223 F.R.D. 55, 74 (N.D.N.Y. 2003) (same); see also Laitram Corp. v. NEC Corp., 62 F.3d 1388, 1395 (Fed. Cir. 1995) (holding that substantial evidence supported jury's finding of infringement where plaintiff's expert walked through comparison of patent claims to defendant's circuit diagrams).

Freescale has provided a number of excuses for why it will not produce technical documents for any cache memory products other than those specifically identified and analyzed in ProMOS's interrogatory answers.  First, Freescale has suggested that ProMOS must first come forward with a showing that each product not specifically identified in ProMOS's interrogatory answers infringes the cache memory patents before Freescale will produce information in discovery relating to such product. 4/  That assertion turns the discovery rules on their head; if this

---

4/    This argument cannot be characterized as a Rule 11 pre-filing investigation argument. Rule 11 requires that a plaintiff determine that "at least one" of a defendant's products infringes at least one claim of each of the patents-in-suit. Renesas Technology Corp. v. Nanya Technology

court were to require plaintiffs to prove their claims before entitling them to take discovery into

any particular issue, the result would be that no plaintiff would ever be entitled to take meaningful

discovery.  Having already determined that some of Freescale's representative cache memory

products infringe the cache memory patents and provided Freescale with detailed information

regarding its infringement contentions, ProMOS is entitled to take discovery on other cache

memory products manufactured and sold by Freescale in order to determine the full extent and

breadth of Freescale's infringement.  See Video Technology Computers, Ltd. v. Apple Computer,

Inc., No. 84 C 4595, 1987 WL 28270, * 2 (N.D. Ill. Dec. 16, 1987) (requiring the plaintiff, an

accused infringer, to produce circuit diagrams for IBM-compatible computers so that the

defendant/patentee could determine whether such products infringed the patents-in-suit, even

though the defendant/patentee until that point in the case had focused only on Apple-compatible

computers);  Phillip M. Adams & Assocs., LLC v. Dell, Inc., Civil No. 1:05-CV-64, 2006 WL

2666408, *4 (D. Utah Sept. 15, 2006) (noting that a plaintiff in a district that requires preliminary

infringement contentions is required to provide defendant only with known information regarding

infringement, and further noting that "[a]s discovery develops the entire field of allegedly

infringing products, the claim charts will eventually be required to tell the entire story from

Plaintiff's viewpoint.");  Melvin v. United States, 14 Cl. Ct. 236, 238 (1988) ("Defendant's

contentions that plaintiff is on a 'fishing expedition' aside, the Court is of the opinion that plaintiff

is entitled to some discovery to support its broad claim that the F-16 infringes his patents.  There is

considerable merit to plaintiff's position that without the discovery he seeks, he is stymied from

---

Corp., No. C03-05709JFHRL, 2004 WL 2600466, *2 (N.D. Cal. Nov. 10, 2004) (a "plaintiff [must]
compare an accused product to its patents on a claim by claim, element by element basis for at least
one of each defendant's products."). Rule 11 does not require that a plaintiff identify and show
infringement by all of the defendant's infringing products before filing suit.

adequately supporting his claim because defendant controls exclusively the access to technical data that would assist plaintiff in specifying by name and claim the accused devices.").

Freescale also has argued that information allegedly available on Freescale's website would permit ProMOS's counsel to formulate a product-by-product infringement analysis. To begin with, a party may not escape its discovery obligations by asserting that the information requested in discovery is available to the other side from other sources. Swarthmore Radiation Oncology, Inc. v. Lapes, No. 92-3055, 1993 WL 517734, *2 (E.D. Pa. Dec. 1, 1993) ("The fact that information may be available to the requesting party from other sources is not usually a ground for objection.") (quoting Petrushka v. Johns-Manville, 83 F.R.D. 32, 35 (E.D. Pa. 1979). That is particularly true when the information in question is uniquely in the possession of the party from which discovery is sought, as is the case with information possessed by Freescale regarding its own products. In any event, ProMOS's counsel has reviewed Freescale's website. Based upon that review, ProMOS believes that a number of Freescale's cache memory products infringe the cache memory patents. However, the publicly-available documents contained on the Freescale website simply are not adequate replacements for the highly-technical circuit diagrams, block diagrams, manufacturing diagrams, specifications and other confidential documents in Freescale's possession that are sought by the document requests. 5/

---

5/     Nor is this a case where the document requests issued by ProMOS were "incomprehensible" as in Atmel Corp. v. Silicon Storage Tech., 76 Fed. Appx. 298 (Fed. Cir. 2003) (unpublished opinion not citable as precedent). Rather, the document requests at issue quite clearly refer to all products containing cache memory. Lest there be any doubt, ProMOS has provided Freescale with a preliminary list of products that ProMOS believes to be covered by the requests based on public information presently available to ProMOS, which is attached hereto as Exhibit E. It would seem, however, that Freescale would be in the best position to determine whether this list is conclusive or whether additional products need to be added.

Freescale has further argued that it would be unduly burdensome for it to gather and produce all technical documents relating to any "Freescale Product" as defined in ProMOS's discovery requests. Freescale has not substantiated this objection by providing ProMOS with detailed information regarding how many families of products fall within ProMOS's definition of "Freescale Product." Nonetheless, as ProMOS has advised Freescale in the past, ProMOS is willing to allow Freescale to make a limited production of critical technical documents relating to its other cache memory products so that ProMOS can undertake an infringement analysis and then determine whether additional technical documents are required for particular Freescale products because they are believed to infringe, and likewise whether some Freescale products can be eliminated from the list of accused products because ProMOS does not contend that they infringe. Consistent with that position, ProMOS is requesting through this motion that Freescale be ordered first to produce select technical documents (e.g., circuit diagrams and block diagrams), and then ProMOS could follow up with Freescale, and the Court if necessary, if ProMOS believes additional materials are required with respect to particular products. Other courts have employed a similar process when faced with this issue. See, e.g., Dolby Labs. v. Lucent Technologies, Inc., No. 5:01-CV-20709, 2004 WL 2445232, *8 (N.D. Cal. May 26, 2004) (compelling accused infringer to produce algorithms for products as to which patentee had not yet articulated infringement positions, and permitting patentee to file further motion to compel if it believed it was entitled to additional documents following receipt of the algorithms).

Finally, it is worth noting that even with respect to the Freescale product families for which ProMOS has provided a specific showing of infringement in its interrogatory answers, Freescale has yet to produce many of the critical technical documents necessary for ProMOS to present its infringement case at trial. Although Freescale has promised to supplement its document

production in this area in the coming weeks, Freescale's counsel has informed ProMOS's counsel that Freescale does not use circuit diagrams, and instead stated that much of the information that would otherwise be contained on a circuit diagram is input into machines at Freescale's production facility. In order to test this assertion and to obtain additional information regarding the technical documentation maintained by Freescale with respect to its cache memory products, ProMOS has noticed a Rule 30(b)(6) deposition for July 20, 2007 – before this motion is scheduled to be heard. ProMOS is hopeful that this deposition will assist the parties in resolving at least some of the issues presented by this motion. However, to the extent that deposition and any additional meet and confer conferences do not resolve the issues herein, and to the extent that Freescale does not maintain any circuit diagrams in hard copy or electronic form, ProMOS anticipates that it may become necessary for Freescale to provide ProMOS with access to Freescale's computer systems so that ProMOS's experts and counsel may review and copy the design information that is provided to and stored in the machines. See, e.g., Cornell Research Foundation, Inc. v. Hewlett Packard Co., 223 F.R.D. 55, 75 (N.D.N.Y. 2003) (permitting plaintiff's expert to visit defendant's facility to review technical specifications in their electronic format).

## CONCLUSION

For the foregoing reasons, Plaintiff ProMOS Technologies, Inc. respectfully requests that the Court GRANT its Motion to Compel Defendant Freescale Semiconductors, Inc. to Produce Technical Documents Describing Certain Products Accused of Infringement.

ASHBY & GEDDES

/s/ *John G. Day*

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
Telephone: (302) 654-1888
Facsimile: (302) 654-2067
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Plaintiff*
*ProMOS Technologies, Inc.*

*Of Counsel*:

William H. Wright
HOGAN & HARTSON LLP
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
Telephone: (310) 785-4600

Steven J. Routh
Sten A. Jensen
HOGAN & HARTSON LLP
555 Thirteenth Street, NW
Washington, DC 20004
Telephone: (202) 637-5600
Facsimile: (202) 637-5910

Dated: July 6, 2007
182088.1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PROMOS TECHNOLOGIES, INC.,                )
                                          )
                    Plaintiff,            )        C.A. No. 06-788-JJF
                                          )
          v.                              )
                                          )
FREESCALE SEMICONDUCTOR, INC.,            )
                                          )
                    Defendant.            )

## ORDER

This _____ day of _____, 2007, plaintiff Promos Technologies, Inc.,

having filed a motion to compel defendant Freescale Semiconductor, Inc. to produce technical

documents describing certain products accused of infringement, and the Court, after considering

the positions of the parties, having concluded that good grounds exist for the requested relief;

now therefore,

     IT IS HEREBY ORDERED that plaintiff's motion to compel is granted.


     _____
     United States District Judge

## STATEMENT PURSUANT TO LOCAL RULE 7.1.1

Pursuant to Local Rule 7.1.1, counsel for ProMOS has made a reasonable effort to reach agreement with counsel for Freescale on the matters set forth in this motion.  Although the parties have worked together in good faith and have resolved a number of issues relating to alleged discovery deficiencies in the discovery responses of both sides, they have reached an impasse with respect to Freescale's obligation to produce technical documentation relating to cache memory products that have not been specifically identified in ProMOS's interrogatory responses.

*/s/ John G. Day*

_____

John G. Day

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

PROMOS TECHNOLOGIES, INC.,⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀Plaintiff,⠀⠀⠀⠀⠀⠀)⠀⠀⠀C.A. No. 06-788-JJF
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
FREESCALE SEMICONDUCTOR, INC.,⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀Defendant.⠀⠀⠀⠀⠀)

**PLAINTIFF PROMOS TECHNOLOGIES, INC.'S
FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS
FROM DEFENDANT FREESCALE SEMICONDUCTOR, INC. (Nos. 1-117)**

⠀⠀⠀⠀Pursuant to Rules 34 and 26 of the Federal Rules of Civil Procedure, Plaintiff

ProMOS Technologies, Inc. ("ProMOS") hereby requests that defendant Freescale

Semiconductor, Inc. ("Freescale")  produce for inspection and/or copying the following

documents and things at the offices of Hogan & Hartson, LLP, Columbia Square, 555 13th Street,

N.W., Washington, D.C., 20004, or such other mutually agreed upon location, within thirty (30)

days of the date of service of these requests.

## DEFINITIONS

⠀⠀⠀⠀1.⠀⠀⠀⠀The terms "Plaintiff" and "ProMOS" refer to ProMOS Technologies, Inc., and its

officers, agents, employees, and representatives.

⠀⠀⠀⠀2.⠀⠀⠀⠀The terms "Defendant," "you," "your," and "Freescale" refer to Defendant

Freescale Semiconductor, Inc., including but not limited to its divisions, subsidiaries, directors,

agents, representatives, attorneys and employees, and any predecessor in interest.

⠀⠀⠀⠀3.⠀⠀⠀⠀The term "Complaint" means the Complaint and any amended Complaints filed by

Plaintiff in this action.

4.      The term "Answer" means the Answer and Affirmative Defenses, or any amendments thereto, filed by Defendant in this action. Whenever a request refers to or quotes from the Answer, all words in the request have the same meaning as in the Answer.

5.      The term "Counterclaims" means the Counterclaims, or any amendments thereto, filed by Defendant in this action. Whenever a request refers to or quotes from the Counterclaims, all words in the request have the same meaning as in the Counterclaims.

6.      The term "document" as used herein is employed in the broadest possible sense under Rule 34 and includes, but is not limited to, any printed, written, recorded, taped, electronic (including e-mail and deleted electronic media that is recoverable in any form), graphic, or other tangible matter from whatever source, however produced or reproduced, whether in draft or otherwise, whether sent or received or neither, including the original, all amendments and addenda and any non-identical copy (whether different from the original because of notes made on or attached to such copy or otherwise ) of any and all writings, correspondence, letters, telegraphs, telex communicants, cables, notes, notations, papers, newsletters, memoranda, interoffice communications, e-mails, releases, agreements, contracts, books, pamphlets, studies, minutes of meetings, recordings or other memorials of any type of personal or telephone conversations, meetings or conferences, reports, analyses, test results, examinations, evaluations, estimates, projections, forecasts, receipts, statements, accounts, books of account, diaries, calendars, desk pads, appointment books, stenographer's notebooks, transcripts, ledgers, registers, worksheets, journals, statistical records, cost sheets, summaries, lists, tabulations, digests, canceled or uncanceled checks or drafts, vouchers, charge slips, invoices, purchase orders, hotel charges, accountant's reports, financial statements, newspapers, periodicals or magazine materials, and any materials underlying, supporting, or used in the preparation of any

documents. The term "document(s)" also specifically includes any records stored on computer tape or computer disk or otherwise stored by or in a computer, including telephone voice mail or electronic mail, whether or not a hard copy (i.e., paper copy) of the document is or was at any time in existence. A document includes all documents appended thereto. The documents requested shall include all marked copies. A "marked copy" is any document containing any writing or any markings of any kind in the text, in the margins, or on the reverse side of the document.

7.    The term "person(s)" includes any natural person, corporation, partnership, association, joint venture, sole proprietorship, firm, business enterprise, governmental or quasi-governmental body or agency, or legal entity of any type, and includes both the singular and plural.

8.    The term "communications" means all oral, visual, or other sensory means of transmitting information, messages, or statements, including but not limited to correspondence, letters, memoranda, e-mails (with any attachment(s)), meeting minutes, transcripts of telephone conversations, and presentations.

9.    The terms or phrases "relating to," "relate(s)," or "related to" includes, but is not limited to, constituting, comprising, consisting of, containing, setting forth, describing, discussing, citing, regarding, pertaining to, mentioning, proposing, showing, disclosing, containing, analyzing, explaining, summarizing, supporting, evidencing, authorizing, concerning, embodying, reflecting, identifying, incorporating, considering, recommending, continuing, enumerating, dealing with, commenting on, referring to directly or indirectly, dealing with, responding to, or in any way logically or factually relevant to the matter described in the request.

10.    The term "date" means the exact day, month and year, if ascertainable, or, if not, the best available approximation, including relationship to other events.

11.    The terms "and" as well as "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these requests any documents that otherwise would be construed to be outside their scope.

12.    The terms "ProMOS patents," "ProMOS patents-in-suit," and "patents-in-suit," mean United States Letters Patent No. 5,488,709 ("the '709 patent") entitled "Cache Including Decoupling Register Circuits;" United States Letters Patent No. 5,732,241 ("the '241 patent") entitled "Random Access Cache Memory Controller and System;" and United States Letters Patent No. 6,670,267 ("the '267 patent") entitled "Formation of Tungsten-Based Interconnect Using Thin Physically Vapor Deposited Titanium Nitride Layer."

13.    With respect to the '709 patent and the '241 patent, the term "inventor" shall mean Alfred K. Chan.  With respect to the '267 patent, the term "inventor" shall mean Vincent Fortin.  The term "inventors" shall mean Messrs. Chan and Fortin together.

14.    The term "infringement" shall be defined broadly to include direct, contributory and induced infringement under the applicable laws.

15.    The term "market," as a verb, shall mean to sell, lease, license, exhibit or distribute; or to offer to sell, lease, license, exhibit or distribute.

16.    The term "sale" means and refers to any exchange of goods, services or other property for value and includes transferring goods to another party on a consignment basis, regardless of whether title has passed.

17.    As used herein, "prior art" includes any reference or subject matter set forth in or relevant under 35 U.S.C. § 102 and 35 U.S.C. § 103.

18.    The term "Freescale Product(s)" includes:  microcontrollers, microprocessors, processors, digital signal processors, controller cores, processor cores and all other components or goods you manufacture or market for sale or sell in any way that use, incorporate, work with or rely on cache memory; systems, components, products and goods that use, incorporate work with or rely on microcontrollers, microprocessors, processors, digital signal processors, controller cores, processor cores or other components or goods that use, incorporate, work with or rely on cache memory; and integrated circuits and semiconductor products that incorporate one or more conductors that includes a layer of tungsten overlying a layer of titanium nitride, such conductors including, but not limited to, those formed using Damascene and dual Damascene processes.

## INSTRUCTIONS

1.    In responding to these requests, you shall furnish all documents that are in your possession, custody, or control; or are within the possession, custody, or control of your officers, directors, employees, agents, representatives, present or former contractors, consultants, investigators, or attorneys; or otherwise available to you, regardless of whether documents are possessed directly by you, or any parent, subsidiary or affiliated corporation, or any of such entity's officers, directors, employees, agents, representatives, present or former contractors, consultants, investigators or attorneys.

2.    Organize and label each document or set of documents, indicating by number the request to which the document(s) relates.  In your written response, provide the document production (i.e. "Bates") number(s) for document(s) responsive to each request.

3.    Electronic and computerized information must be produced in an intelligible format or together with a description of the system from which it was derived sufficient to permit rendering of the materials intelligible.

4.      If any document responding to all or any part of this Request is not currently

available, include a statement to that effect and furnish whatever documents are available.

Include in your statement when such documents were most recently in your possession or subject

to your control and what disposition was made of them, identifying the name, job title, and the

last known address of each person currently in possession or control of such documents.  If any

of such documents were destroyed, identify the name, job title and the last known business

address of each person who directed that the documents be destroyed, and state the reasons the

documents were destroyed.  If you do not have a document responsive to a request, but you

know of person(s) or organization(s) who may have all or any portion of the document, then all

such information, including names, addresses, and telephone numbers, shall be disclosed in your

written response.

5.      If any document or portion of any document covered by this Request for

Production is withheld from production due to a claim of privilege, protection, or other grounds

for non-disclosure, furnish a list of all such documents withheld that provides the following

information: (a) the "Bates" number(s); (b) the identity of the person(s) who prepared or

authorized the preparation of the document and, if applicable, the person(s), addresses, and

organization  to whom the document was sent or shown; (c) the date (or your best approximation

thereof) on which the document was prepared; (d) a description of the type of document (e.g.,

letter, ledger, etc.); (e) the subject matter of the document; (f) a brief reason why the document is

claimed to be privileged, protected, or subject to non-disclosure; and (g) the paragraph(s) of this

Request to which the document responds.

6.      This Request is continuing and requires, to the extent authorized by Rule 26(e) of

the Federal Rules of Civil Procedure, production of any additional responsive documents that

may be located or acquired by you or your employees after the date of your original production.

7.    Unless otherwise indicated in a particular request, the relevant time period for each Request shall be from January 1, 2000, to the present.

## SPECIFIC REQUESTS FOR PRODUCTION

**REQUEST NO. 1:**

All documents identified, requested to be identified, relied upon, reviewed, or consulted in responding to Plaintiff's First Set of Interrogatories to Defendant.

**REQUEST NO. 2:**

All written policies, procedures and guidelines related to Freescale's computers, computer systems, electronic data and electronic media that hold, contain, save, or manage documents, including, but not limited to, (a) back up tape rotation schedules; (b) electronic data retention, preservation and destruction schedules; (c) employee use of company computers and data; (d) file naming conventions and standards; (e) diskette, CD, DVD, and other removable media labeling standards; and (e) e-mail storage (i.e., limitations on mailbox sizes and storage locations).

**REQUEST NO. 3:**

Documents sufficient to show your document retention and/or destruction policies and/or practices from 2000 to the present.

**REQUEST NO. 4:**

Organizational charts for all of your Information Technology-related or Information Services-related departments or divisions.

**REQUEST NO. 5:**

Documents sufficient to show your past and present organizational and operational structure, including all divisions or subsidiaries, entities owned or controlled by

Freescale, affiliates, predecessors or successors in interest, whether in the United States, or anywhere else in the world, and the identity of the officers and managers of each such entity.

**REQUEST NO. 6:**

All documents that identify present employees, past employees, consultants, and contract employees, whether full or part time, whose responsibilities or assignment include work relating to the conception, design, development, manufacture, analysis, testing, marketing, sales or repair of each Freescale Product, including but not limited to, organizational charts and telephone or email directories.

**REQUEST NO. 7:**

All documents that identify present employees, past employees, consultants, and contract employees, whether full or part time, whose responsibilities or assignment include work relating to the conception, design, development, manufacture, analysis, testing, marketing, sales or repair of each cache memory used with or in, incorporated in or relied on by a Freescale Product, including but not limited to, organizational charts and telephone or email directories.

**REQUEST NO. 8:**

All documents that identify present employees, past employees, consultants, and contract employees, whether full or part time, whose responsibilities or assignment include work relating to the conception, design, development, manufacture, analysis, testing, marketing, sales or repair of any register(s) used in writing, reading, buffering or accessing data from or to each cache memory used with or in, incorporated in or relied on by a Freescale Product, including but not limited to, organizational charts and telephone or email directories.

**REQUEST NO. 9:**

All documents that identify present employees, past employees, consultants, and

contract employees, whether full or part time, whose responsibilities or assignment include work relating to the conception, design, development, manufacture, analysis, testing, marketing, sales or repair of each cache controller used with or in, incorporated in or relied on by a Freescale Product, including but not limited to, organizational charts and telephone or email directories.

**REQUEST NO. 10:**

All documents that identify present employees, past employees, consultants, and contract employees, whether full or part time, whose responsibilities or assignment include work relating to the conception, design, development, manufacture, analysis, testing, marketing, sales or repair of each process for forming conductors that include a layer of tungsten overlying a layer of titanium nitride used with or in, incorporated in or relied on by a Freescale Product, including but not limited to, organizational charts and telephone or email directories.

**REQUEST NO. 11:**

Documents sufficient to identify, describe, illustrate, or depict names and/or functions of subsidiaries, departments, or divisions that were involved in any manner in the conception, design, development, manufacture, analysis, testing, marketing, sales or repair of any Freescale Product.

**REQUEST NO. 12:**

Documents sufficient to identify, describe, illustrate, or depict names and/or functions of subsidiaries, departments, or divisions that were involved in any manner in the conception, design, development, manufacture, analysis, testing, marketing, sales or repair of each cache memory used with, incorporated in or relied on by any Freescale Product.

**REQUEST NO. 13:**

Documents sufficient to identify, describe, illustrate, or depict names and/or

functions of subsidiaries, departments, or divisions that were involved in any manner in the conception, design, development, manufacture, analysis, testing, marketing, sales or repair of any register(s) used in writing, reading, buffering or accessing data from or to each cache memory used with or in, incorporated in or relied on by a Freescale Product.

**REQUEST NO. 14:**

Documents sufficient to identify, describe, illustrate, or depict names and/or functions of subsidiaries, departments, or divisions that were involved in any manner in the conception, design, development, manufacture, analysis, testing, marketing, sales or repair of each cache controller used with or in, incorporated in or relied on by a Freescale Product.

**REQUEST NO. 15:**

Documents sufficient to identify, describe, illustrate, or depict names and/or functions of subsidiaries, departments, or divisions that were involved in any manner in the conception, design, development, manufacture, analysis, testing, marketing, sales or repair of each process for forming conductors that include a layer of tungsten overlying a layer of titanium nitride used with or in, incorporated in or relied on by a Freescale Product.

**REQUEST NO. 16:**

All documents relating to third parties contracted, consulted, hired and/or retained that worked with Freescale or worked with another third party on Freescale's behalf on the conception, design, development, implementation, testing and manufacturing of each version of each model of Freescale Product, including but not limited to, contracts, contract proposals, Requests for Proposals (RFPs), solicitations, queries, investigations, and capability studies.

**REQUEST NO. 17:**

All documents relating to third parties contracted, consulted, hired and/or retained

that worked with Freescale or worked with another third party on Freescale's behalf on the conception, design, development, implementation, testing and manufacturing of each version of each cache memory used with, incorporated in or relied on by any Freescale Product, including but not limited to, contracts, contract proposals, Requests for Proposals (RFPs), solicitations, queries, investigations, and capability studies.

**REQUEST NO. 18:**

      All documents relating to third parties contracted, consulted, hired and/or retained that worked with Freescale or worked with another third party on Freescale's behalf on the conception, design, development, implementation, testing and manufacturing of each version of each register(s) used in writing, reading, buffering or accessing data from or to each cache memory used with, incorporated in or relied on by a Freescale Product, including but not limited to, contracts, contract proposals, Requests for Proposals (RFPs), solicitations, queries, investigations, and capability studies.

**REQUEST NO. 19:**

      All documents relating to third parties contracted, consulted, hired and/or retained that worked with Freescale or worked with another third party on Freescale's behalf on the conception, design, development, implementation, testing and manufacturing of each version of each cache controller used with, incorporated in or relied on by a Freescale Product, including but not limited to, contracts, contract proposals, Requests for Proposals (RFPs), solicitations, queries, investigations, and capability studies.

**REQUEST NO. 20:**

      All documents relating to third parties contracted, consulted, hired and/or retained that worked with Freescale or worked with another third party on Freescale's behalf on the

conception, design, development, implementation, testing and manufacturing of each version of each process for forming conductors that include a layer of tungsten overlying a layer of titanium nitride used with or in, incorporated in or relied on by a Freescale Product, including but not limited to, contracts, contract proposals, Requests for Proposals (RFPs), solicitations, queries, investigations, and capability studies.

**REQUEST NO. 21:**

Your annual reports, prospectuses, proxy statements and Form 10-K and Form 10-Q reports for the years 2000 to the present.

**REQUEST NO. 22:**

All documents relating to design reviews and design review meetings, including but not limited to, all notes, minutes, reports, action item lists and management summaries, relating to each version of each model of Freescale Product.

**REQUEST NO. 23:**

All documents relating to design reviews and design review meetings, including but not limited to, all notes, minutes, reports, action item lists and management summaries, relating to each version of each cache memory used with, incorporated in or relied on by any Freescale Product.

**REQUEST NO. 24:**

All documents relating to design reviews and design review meetings, including but not limited to, all notes, minutes, reports, action item lists and management summaries, relating to each version of each register(s) used in writing, reading, buffering or accessing data from or to each cache memory used with, incorporated in or relied on by a Freescale Product.

**REQUEST NO. 25:**

All documents relating to design reviews and design review meetings, including but not limited to, all notes, minutes, reports, action item lists and management summaries, relating to each version of each cache controller used with, incorporated in or relied on by a Freescale Product.

**REQUEST NO. 26:**

All documents relating to design reviews and design review meetings, including but not limited to, all notes, minutes, reports, action item lists and management summaries, relating to each version of each process for forming conductors that include a layer of tungsten overlying a layer of titanium nitride used with or in, incorporated in or relied on by a Freescale Product.

**REQUEST NO. 27:**

All documents relating to drawings, schematics, blueprints, manufacturing specifications, engineering specifications, design specifications, product test specifications, part specifications, assembly specifications and other documents relating to the design, development, or manufacture of any Freescale Product.

**REQUEST NO. 28:**

All documents relating to drawings, schematics, blueprints, manufacturing specifications, engineering specifications, design specifications, product test specifications, part specifications, assembly specifications and other documents relating to the design, development, or manufacture of each cache memory used with, incorporated in or relied on by any Freescale Product.

**REQUEST NO. 29:**

All documents relating to drawings, schematics, blueprints, manufacturing specifications, engineering specifications, design specifications, product test specifications, part specifications, assembly specifications and other documents relating to the design, development, or manufacture of each register(s) used in writing, reading, buffering or accessing data from or to each cache memory used with, incorporated in or relied on by a Freescale Product.

**REQUEST NO. 30:**

All documents relating to drawings, schematics, blueprints, manufacturing specifications, engineering specifications, design specifications, product test specifications, part specifications, assembly specifications and other documents relating to the design, development, or manufacture of each cache controller used with, incorporated in or relied on by a Freescale Product.

**REQUEST NO. 31:**

All documents relating to drawings, schematics, blueprints, manufacturing specifications, engineering specifications, design specifications, product test specifications, part specifications, assembly specifications and other documents relating to the design, development, or manufacture of each process for forming conductors that include a layer of tungsten overlying a layer of titanium nitride used with or in, incorporated in or relied on by a Freescale Product.

**REQUEST NO. 32:**

All versions of operation manuals, repair manuals, or user manuals for any Freescale Product.

**REQUEST NO. 33:**

All manufacturing and/or production drawings for any Freescale Product,

including but not limited to hardware drawings, engineering drawings, assembly drawings, and blueprints.

**REQUEST NO. 34:**

All manufacturing and/or production drawings for each cache memory used with, incorporated in or relied on by any Freescale Product, including but not limited to hardware drawings, engineering drawings, assembly drawings, and blueprints.

**REQUEST NO. 35:**

All manufacturing and/or production drawings for each register(s) used in writing, reading, buffering or accessing data from or to each cache memory used with, incorporated in or relied on by a Freescale Product, including but not limited to hardware drawings, engineering drawings, assembly drawings, and blueprints.

**REQUEST NO. 36:**

All manufacturing and/or production drawings for each cache controller used with, incorporated in or relied on by a Freescale Product, including but not limited to hardware drawings, engineering drawings, assembly drawings, and blueprints.

**REQUEST NO. 37:**

All manufacturing and/or production drawings for each process for forming conductors that include a layer of tungsten overlying a layer of titanium nitride used with or in, incorporated in or relied on by a Freescale Product.

**REQUEST NO. 38:**

All documents relating to the conception, engineering, design, research, development, manufacture, testing, use, repair and/or operation of each version of each model of Freescale Product, including but not limited to specifications, schematics, block diagrams, data

sheets, layouts, databases, depictions, photographs, simulations, test results, manuals, journals, notes, notebooks, communications, and correspondence.

**REQUEST NO. 39:**

All documents relating to the conception, engineering, design, research, development, manufacture, testing, use, repair and/or operation of each version of each cache memory used with, incorporated in or relied on by any Freescale Product, including but not limited to specifications, schematics, block diagrams, data sheets, layouts, databases, depictions, photographs, simulations, test results, manuals, journals, notes, notebooks, communications, and correspondence.

**REQUEST NO. 40:**

All documents relating to the conception, engineering, design, research, development, manufacture, testing, use, repair and/or operation of each version of each register(s) used in writing, reading, buffering or accessing data from or to each cache memory used with, incorporated in or relied on by a Freescale Product, including but not limited to specifications, schematics, block diagrams, data sheets, layouts, databases, depictions, photographs, simulations, test results, manuals, journals, notes, notebooks, communications, and correspondence.

**REQUEST NO. 41:**

All documents relating to the conception, engineering, design, research, development, manufacture, testing, use, repair and/or operation of each version of each cache controller used with, incorporated in or relied on by a Freescale Product, including but not limited to specifications, schematics, block diagrams, data sheets, layouts, databases, depictions, photographs, simulations, test results, manuals, journals, notes, notebooks, communications, and correspondence.

**REQUEST NO. 42:**

All documents relating to the conception, engineering, design, research, development, manufacture, testing, use, repair and/or operation of each process for forming conductors that include a layer of tungsten overlying a layer of titanium nitride used with or in, incorporated in or relied on by a Freescale Product, including but not limited to specifications, schematics, block diagrams, data sheets, layouts, databases, depictions, photographs, simulations, test results, manuals, journals, notes, notebooks, communications, and correspondence.

**REQUEST NO. 43:**

For each Freescale Product, documents sufficient to show the place and process of manufacture, models manufactured, units manufactured, and destination of units manufactured.

**REQUEST NO. 44:**

To the extent not produced in response to any other request, all reference designs and schematics relating to each version of each model of Freescale Product.

**REQUEST NO. 45:**

All pictures or photographs of Freescale Products, including but not limited to any die or portion of any die.

**REQUEST NO. 46:**

Circuit diagrams for each version of each model of Freescale Product.

**REQUEST NO. 47:**

Circuit diagrams for each version of each cache memory used with, incorporated in or relied on by any Freescale Product.

**REQUEST NO. 48:**

Circuit diagrams for each version of each register(s) used in writing, reading,

buffering or accessing data from or to each cache memory used with, incorporated in or relied on by a Freescale Product.

**REQUEST NO. 49:**

Circuit diagrams for each version of each cache controller used with, incorporated in or relied on by a Freescale Product.

**REQUEST NO. 50:**

Process flows and process recipes for each version of each model of Freescale Product.

**REQUEST NO. 51:**

Process flows and process recipes for each version of each process for forming conductors that include a layer of tungsten overlying a layer of titanium nitride used with or in, incorporated in or relied on by a Freescale Product.

**REQUEST NO. 52:**

All documents relating to source code, object code, pseudo code, flow charts or design specifications of the circuit diagrams, Verilog code and/or VHDL code, and reticle layout code for each version of each model of Freescale Product.

**REQUEST NO. 53:**

All documents relating to source code, object code, pseudo code, flow charts or design specifications of the circuit diagrams, Verilog code and/or VHDL code, and reticle layout code for each version of each cache memory used with, incorporated in or relied on by any Freescale Product.

**REQUEST NO. 54:**

All documents relating to source code, object code, pseudo code, flow charts or

design specifications of the circuit diagrams, Verilog code and/or VHDL code, and reticle layout

code for each version of each register(s) used in writing, reading, buffering or accessing data

from or to each cache memory used with, incorporated in or relied on by a Freescale Product.

**REQUEST NO. 55:**

All documents relating to source code, object code, pseudo code, flow charts or

design specifications of the circuit diagrams, Verilog code and/or VHDL code, and reticle layout

code for each version of each cache controller used with, incorporated in or relied on by a

Freescale Product.

**REQUEST NO. 56:**

Documents sufficient to identify the date of all revisions to circuit diagrams,

source code, Verilog code and/or VHDL code, and reticle layout code for each version of each

model of Freescale Product.

**REQUEST NO. 57:**

All documents relating to the operation of each version of each model of

Freescale Product.

**REQUEST NO. 58:**

All documents relating to the operation of each version of each cache memory

used with, incorporated in or relied on by any Freescale Product.

**REQUEST NO. 59:**

All documents relating to the operation of each version of each register(s) used in

writing, reading, buffering or accessing data from or to each cache memory used with,

incorporated in or relied on by a Freescale Product.

**REQUEST NO. 60:**

All documents relating to the operation of each version of each cache controller used with, incorporated in or relied on by a Freescale Product.

**REQUEST NO. 61:**

All engineering change orders or notices for each version of each model of Freescale Products.

**REQUEST NO. 62:**

Documents sufficient to show the device and system architecture of each version of each model of Freescale Product.

**REQUEST NO. 63:**

All documents relating to comparative testing of each version of each model of Freescale Products.

**REQUEST NO. 64:**

All prototypes and models of Freescale Products, from initial prototype to commercial and/or production models made from 2000 to the present.

**REQUEST NO. 65:**

Complete copies of all licenses or agreements to which you are a party, including but not limited to cross-licenses, inter-company agreements, settlements, covenants not to enforce or releases that relate in any way to integrated circuit manufacturing, microprocessor, microcontroller, DRAM, SDRAM or memory technologies.

**REQUEST NO. 66:**

All documents that refer to, discuss, evidence, mention or constitute any contracts or license agreements, including drafts, in which Freescale has licensed, or licenses, or

considering licensing products, technology or patents from or to third parties relating to microprocessor, microcontroller, processor or memory technologies.

**REQUEST NO. 67:**

All documents relating to your policies on licensing or cross-licensing patents, know-how or technology.

**REQUEST NO. 68:**

Documents sufficient to identify any third parties that manufacture any Freescale Products.

**REQUEST NO. 69:**

All articles, speeches, presentations or interviews, both internal and external, that have been written and/or given by your employees, officers, directors or other of your representatives relating to Freescale Products.

**REQUEST NO. 70:**

All press releases from 2000 to the present relating to Freescale Products.

**REQUEST NO. 71:**

All documents relating to ProMOS or the patents-in-suit, including but not limited to documents that relate to your first awareness of any of the patents-in-suit and your earliest notice of potential infringement of any of the patents-in-suit.

**REQUEST NO. 72:**

All documents relating to communications exchanged between you and any third party relating to the patents-in-suit, this lawsuit and/or ProMOS.

**REQUEST NO. 73:**

        Each Freescale meeting agenda, corporate minutes or minutes of meetings relating to the patents-in-suit, this lawsuit and/or ProMOS products.

**REQUEST NO. 74:**

        All documents relating to any effort by Freescale or anyone else on its behalf to design, redesign, commercialize or modify any Freescale Product in view of the patents-in-suit.

**REQUEST NO. 75:**

        All documents relating to any attempt by Freescale or anyone on its behalf to design around and/or avoid infringement of the patents-in-suit by any Freescale Product.

**REQUEST NO. 76:**

        All documents related or referring to any ProMOS patent.

**REQUEST NO. 77:**

        All documents relating to your evaluation, analysis, or consideration of the patents in-suit, including but not limited to any reverse engineering or testing performed on any Freescale Product.

**REQUEST NO. 78:**

        All documents relating to your consideration of whether or not to obtain a license from ProMOS for the patents-in-suit.

**REQUEST NO. 79:**

        All documents found or identified during any enforceability, prior art or invalidity searches, or any other studies relating to the patents-in-suit, including any copies of patents, publications, or other prior art identified during such searches or studies.

**REQUEST NO. 80:**

All documents that relate, support, or contradict Freescale's assertion that the patents-in-suit are invalid for any reason, including but not limited to anticipation or obviousness.

**REQUEST NO. 81:**

All documents that Freescale contends constitute prior art to the patents-in-suit.

**REQUEST NO. 82:**

All documents that relate, support, or contradict Freescale's assertion that the patents-in-suit are unenforceable.

**REQUEST NO. 83:**

All opinion letters, memoranda, or other documents relating to your contentions on validity/invalidity, infringement/non-infringement, or enforceability/unenforceability of the patents-in-suit.

**REQUEST NO. 84:**

All documents supporting, refuting or relating in any way to the affirmative defenses or counterclaims set forth in your Answer to the Complaint.

**REQUEST NO. 85:**

All documents relating to any contention by you that your products do not infringe the patents-in-suit, including but not limited to documents relating to the interpretation, scope, and meaning of the claims in any of the patents-in-suit.

**REQUEST NO. 86:**

All opinions of counsel obtained with respect to infringement, validity, or enforceability of the patents-in-suit upon which you intend to rely at trial to defend against claims of willful infringement, inducement to infringe, or contributory infringement.

**REQUEST NO. 87:**

All communications or opinions of officers, directors and/or employees of yours with respect to infringement, validity, or enforceability of the patents-in-suit or regarding any licensing negotiations with ProMOS.

**REQUEST NO. 88:**

Documents sufficient to show by month or calendar quarter for each year since 2000 the number of each version of each model of Freescale Product manufactured, used, sold or distributed in the United States.

**REQUEST NO. 89:**

Documents sufficient to show by month or calendar quarter for each year since 2000 the volume of sales in dollars from the sale or distribution of each version of each model of Freescale Product.

**REQUEST NO. 90:**

All projections, forecasts, business plans, strategic plans, fiscal plans, marketing plans or sales plans relating to the sale of Freescale Products from 2000 to the present, including documents containing projections through calendar year 2012.

**REQUEST NO. 91:**

All documents relating to the means by which sales or sales information relating to each version of each model of Freescale Product is maintained and tracked by or on behalf of Freescale.

**REQUEST NO. 92:**

All versions of all part number decoders or legends for each version of each model of Freescale Product.

- 24 -

**REQUEST NO. 93:**

Current and historical price lists for each version of each model of Freescale Product.

**REQUEST NO. 94:**

All documents relating to returns of, or complaints, dissatisfaction, negative comments, unfavorable opinions or suggestions for improvement regarding each version of each model of Freescale Products.

**REQUEST NO. 95:**

All documents relating to favorable, positive, commendatory, or complimentary feedback, comments or opinions regarding each version of each model of Freescale Products.

**REQUEST NO. 96:**

All documents relating to favorable, positive, commendatory, or complimentary feedback, comments or opinions regarding any ProMOS product.

**REQUEST NO. 97:**

All documents relating to sales, distribution or importation agreements entered into between Freescale and any third party for each version of each model of Freescale Product.

**REQUEST NO. 98:**

Documents sufficient to show each of your distributors, resellers and customers of each version of each model of Freescale Product.

**REQUEST NO. 99:**

All documents relating to purchase orders and/or specifications received from customers or potential customers for each version of each model of Freescale Product, including all drawings and information received therewith.

**REQUEST NO. 100:**

All documents relating to market shares for Freescale and its competitors for each of the Freescale Products.

**REQUEST NO. 101:**

Summary documents categorized by year and by product type and name regarding the following: (1) Freescale's total unit and dollar volumes for Freescale Products manufactured, sold, or offered for sale by you from 2000 to the present, including projections through calendar year 2012; and (2) revenues, costs (fixed and variable), gross profit, and net profit for all such products manufactured, sold or offered for sale by you from 2000 to the present, including projections through calendar year 2012.

**REQUEST NO. 102:**

Summary documents categorized by year and by product type and name regarding gross expenses, including but not limited to direct labor costs, direct manufacturing costs, selling costs, variable overhead costs, incurred in the manufacture, distribution, or sale of Freescale Products from 2000 to the present, including projections through calendar year 2012.

**REQUEST NO. 103:**

Documents sufficient to show the date of the first sale of each Freescale Product.

**REQUEST NO. 104:**

Summary documents identifying the distributors and retailers to whom you have sold each Freescale Product from 2000 through the present, including the name, address, product(s) sold by model number, number of units sold, date of sale, date of shipment, and sales price.

**REQUEST NO. 105**:

Financial statements, including profit and loss statements, income statements, balance sheets, statements of cash flow, statements of retained earnings, and notes thereto for Freescale and any of its affiliates, divisions, subsidiaries, or parent companies.

**REQUEST NO. 106:**

All documents relating to market, industry or consumer studies, surveys, or analyses of any Freescale Product and/or any competitor's product.

**REQUEST NO. 107:**

All drafts, proposals, and final copies of advertising, sales, or promotional literature, including but not limited to television and print media advertising, brochures and trade show promotional material, catalogues, price lists, sell sheets, product descriptions, sales literature, drawings, videotapes, audio tapes, electronic media, or photographs for advertising, point-of-sale commercials, or other promotional material for Freescale Products.

**REQUEST NO. 108:**

All memoranda, correspondence, bulletins, newsletters, or other documents that currently or since 2000 have been distributed to, made available to, received from, or drafted by your present or former employees engaged in marketing or sales functions relating to Freescale Products.

**REQUEST NO. 109:**

All documents prepared by, provided by, sent to, or received from your advertising agencies or public relations firms relating to any Freescale Product.

**REQUEST NO. 110:**

All documents that you may introduce as exhibits at the trial of this matter.

**REQUEST NO. 111:**

All documents identifying by name, company, address and title, all third parties hired by you or your counsel to investigate the above-captioned litigation, ProMOS, the patents-in-suit, or any ProMOS products.

**REQUEST NO. 112:**

Ten samples of each Freescale Product.

**REQUEST NO. 113:**

Any and all witness statements taken in connection with this litigation.

**REQUEST NO. 114:**

All documents provided to any person(s) that you expect to call as an expert witness at trial.

**REQUEST NO. 115:**

All documents relied upon by any person(s) that you expect to a call as an expert witness at trial in forming the opinion(s) as to which the person(s) will or may testify.

**REQUEST NO. 116:**

All documents relating to each person you employ, have employed, or have retained as an expert, including but not limited to curriculum vitae, resumes, retention agreements, letters, statements, and communications.

**REQUEST NO. 117:**

All documents on which you intend to rely for and/or that might be relevant to a reasonable royalty analysis or calculation using the so-called *Georgia Pacific* factors.

ASHBY & GEDDES

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
Telephone: (302) 654-1888
Telecopier: (302) 654-2067
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Plaintiff ProMOS Technologies, Inc.*

*Of Counsel*:

William H. Wright
HOGAN & HARTSON LLP
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
Telephone: (310) 785-4672
Facsimile: (31) 785-4601

Steven J. Routh
Sten A. Jensen
HOGAN & HARTSON LLP
555 Thirteenth Street, NW
Washington, DC 20004
Telephone: (202) 637-6472
Facsimile: (202) 637-5910

Dated: April 12, 2007
179643.1

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of April, 2007, the attached **PLAINTIFF PROMOS**

**TECHNOLOGIES, INC.'S FIRST SET OF REQUESTS FOR PRODUCTION OF**

**DOCUMENTS AND THINGS FROM DEFENDANT FREESCALE SEMICONDUCTOR,**

**INC. (Nos. 1-117)** was served upon the below-named counsel of record at the address and in the

manner indicated:

Mary B. Graham, Esquire                                    HAND DELIVERY
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347

Jason W. Cook, Esquire                                    VIA FEDERAL EXPRESS
Jones Day
2727 North Harwood Street
Dallas, TX  75201-1515

Kevin P. Ferguson, Esquire                               VIA FEDERAL EXPRESS
Jones Day
77 West Wacker
Chicago, IL  60601-1692

F. Drexel Feeling, Esquire                               VIA FEDERAL EXPRESS
Jones Day
North Point
901 Lakeside Avenue
Cleveland, OH  44114-1190

Lauren E. Maguire

177267.1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PROMOS TECHNOLOGIES, INC.,           )
                                     )
              Plaintiff,             )        C.A. No. 06-788-JJF
                                     )
       v.                            )
                                     )
FREESCALE SEMICONDUCTOR, INC.,       )
                                     )
              Defendant.             )

## NOTICE OF SERVICE

The undersigned hereby certifies that on the 12th day of April, 2007, **PLAINTIFF PROMOS TECHNOLOGIES, INC.'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS FROM DEFENDANT FREESCALE SEMICONDUCTOR, INC. (Nos. 1-117)** was served upon the following counsel of record at the address and in the manner indicated:


Mary B. Graham, Esquire                        HAND DELIVERY
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347

Jason W. Cook, Esquire                         VIA FEDERAL EXPRESS
Jones Day
2727 North Harwood Street
Dallas, TX  75201-1515

Kevin P. Ferguson, Esquire                     VIA FEDERAL EXPRESS
Jones Day
77 West Wacker
Chicago, IL  60601-1692

F. Drexel Feeling, Esquire                     VIA FEDERAL EXPRESS
Jones Day
North Point
901 Lakeside Avenue
Cleveland, OH  44114-1190

ASHBY & GEDDES

/s/ *Lauren E. Maguire*
_____
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
Telephone: (302) 654-1888
Facsimile: (302) 654-2067
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Plaintiff*
*ProMOS Technologies, Inc.*

*Of Counsel*:

Steven J. Routh
Sten A. Jensen
HOGAN & HARTSON LLP
555 Thirteenth Street, NW
Washington, DC  20004
Telephone:  (202) 637-5600
Facsimile:  (202) 637-5910

William H. Wright
HOGAN & HARTSON LLP
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA  90067
Telephone:  (310) 785-4600

Dated:  April 12, 2007
177270.1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 12th day of April, 2007, the attached **NOTICE OF SERVICE**

was served upon the below-named counsel of record at the address and in the manner indicated:

Mary B. Graham, Esquire                                          <u>HAND DELIVERY</u>
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347

Jason W. Cook, Esquire                                          <u>VIA FEDERAL EXPRESS</u>
Jones Day
2727 North Harwood Street
Dallas, TX  75201-1515

Kevin P. Ferguson, Esquire                                     <u>VIA FEDERAL EXPRESS</u>
Jones Day
77 West Wacker
Chicago, IL  60601-1692

F. Drexel Feeling, Esquire                                      <u>VIA FEDERAL EXPRESS</u>
Jones Day
North Point
901 Lakeside Avenue
Cleveland, OH  44114-1190


/s/ *Lauren E. Maguire*
_____
Lauren E. Maguire

## Discovery Documents

1:06-cv-00788-JJF Promos Technologies Inc. v. Freescale Semiconductor Inc.

PATENT

### U.S. District Court

### District of Delaware

## Notice of Electronic Filing

The following transaction was entered by Maguire, Lauren on 4/12/2007 at 12:33 PM EDT and filed on 4/12/2007

**Case Name:**          Promos Technologies Inc. v. Freescale Semiconductor Inc.

**Case Number:**        1:06-cv-788

**Filer:**              Promos Technologies Inc.

**Document Number:** 13

**Docket Text:**
NOTICE OF SERVICE of First Set of Requests for Production of Documents and Things From Defendant Freescale Semiconductor, Inc. (Nos. 1-117) by Promos Technologies Inc..(Maguire, Lauren)


**1:06-cv-788 Notice has been electronically mailed to:**

Steven J. Balick     sbalick@ashby-geddes.com, dfioravanti@ashby-geddes.com, jday@ashby-geddes.com, lmaguire@ashby-geddes.com, mkipp@ashby-geddes.com, nlopez@ashby-geddes.com, rgamory@ashby-geddes.com, tlydon@ashby-geddes.com

John G. Day     jday@ashby-geddes.com, dfioravanti@ashby-geddes.com, dharker@ashby-geddes.com, lmaguire@ashby-geddes.com, mkipp@ashby-geddes.com, nlopez@ashby-geddes.com, rgamory@ashby-geddes.com, sbalick@ashby-geddes.com, tlydon@ashby-geddes.com

Mary B. Graham     dmyers@mnat.com, mbgefiling@mnat.com

**1:06-cv-788 Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=4/12/2007] [FileNumber=371463-0]
[acbbc4b7c0f3a0515c74f3c0fb52d6c79b9d44fb2c95ab00ddc61e2aaa9c018ef8dd
8650c9e18262136e92d84362e5a068e50e5dd2348c96a15d098a662514d2]]

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PROMOS TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-788 (JJF) |
| | ) | |
| FREESCALE SEMICONDUCTOR, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT FREESCALE'S RESPONSE TO PLAINTIFF PROMOS TECHNOLOGIES, INC.'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS FROM DEFENDANT FREESCALE SEMICONDUCTOR, INC. (NOS. 1-117)

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendant Freescale Semiconductor, Inc. ("Freescale") responds as follows to Plaintiff ProMOS Technologies, Inc.'s First Set Of Requests For Production Of Documents And Things From Defendant Freescale Semiconductor, Inc. (Nos. 1-117), served by ProMOS Technologies, Inc. ("ProMOS") on April 12, 2007.

## GENERAL OBJECTIONS

1. Freescale objects to these document requests as premature, overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products, the identity of the asserted claims, and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with relevant information. Where appropriate, Freescale will supplement its responses within a reasonable time frame upon receiving sufficient information from ProMOS regarding its allegations to allow Freescale to

respond meaningfully thereto.  In this regard, Freescale acknowledges that it just received ProMOS's interrogatory responses that purport to contain some of the missing information identified above, and Freescale is in the process of evaluating those responses.

2.      Freescale's Specific Objections to each document request are in addition to the General Objections set forth in this section.  These General Objections form a part of the response to each and every document request and are set forth here to avoid the duplication and repetition of restating them for each response.  The absence of a reference to a General Objection in each response to a particular document request does not constitute a waiver of any General Objection with respect to that document request.  All responses are made subject to and without waiver of Freescale's General and Specific Objections.  By making a Specific Objection to a particular document request, Freescale does not imply that that Specific Objection is not applicable in response to any other document request, nor that the General Objections are not applicable to that document request.  A statement in these responses that responsive documents will be produced should not be taken to mean that any such documents actually exist, but only that, if they exist and can be located through a reasonable search of Freescale's records, they will be produced.  Any documents to be produced will be produced for review at a mutually agreeable and convenient time and place.

3.      A partial answer to any document request which has been objected to in whole or in part is not a waiver of the objection.  By asserting various objections, Freescale does not waive other objections that may become applicable.

4.      Freescale objects to these document requests to the extent they request information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, law, rule, or immunity.  Should any response by Freescale

- 2 -

include such privileged or protected information, such disclosure is inadvertent and shall not constitute a waiver of any applicable privilege or immunity, of any other ground for objecting to discovery with respect to such response, or of Freescale's right to object during this litigation or otherwise to the use of such response.

5.    Freescale objects to these document requests to the extent they are inconsistent with, enlarge upon, or exceed the scope of discovery permitted by the Federal Rules of Civil Procedure, the Local Rules of the District of Delaware, or the parties' proposed Rule 16 Scheduling Order submitted to the Court on May 4, 2007.  Freescale also objects to these document requests to the extent they are contrary to or inconsistent with any Court order in this litigation.

6.    Freescale objects to these document requests to the extent they seek information not relevant to any issue in this case and to the extent they are not reasonably calculated to lead to the discovery of admissible evidence.

7.    Freescale objects to these document requests as overly broad and unduly burdensome to the extent they purport to require production of information, documents, or things not in the possession, custody, or control of Freescale.

8.    Freescale objects to these document requests to the extent they seek information obtainable from some other source (including, but not limited to, a public source) that is more convenient, less burdensome, or less expensive.

9.    Freescale objects to these document requests to the extent they seek information and documents obtained by Freescale from a third party pursuant to a nondisclosure and/or confidentiality agreement the terms of which prohibit Freescale from disclosing,

- 3 -

producing, revealing, and/or divulging such information and documents to any other party, including ProMOS.

       10.    Freescale objects to these document requests to the extent they prematurely seek information or opinions to be provided by expert witnesses.

       11.    Freescale's responses to these document requests are made without in any way waiving (a) the right to object to the use of any information, documents, or things provided herein as evidence in any subsequent proceeding in this action or any other action on the grounds of competency, relevancy, materiality, privilege, or other grounds of admissibility; and (b) the right to object on any ground to other discovery requests involving or relating to the subject matter of these document requests.  Furthermore, Freescale is providing responses herein in an effort to expedite discovery in this action and not as an indication or admission by Freescale of the relevancy, materiality, or admissibility thereof, and Freescale hereby reserves all objections to Plaintiff's use of such responses.

       12.    Freescale objects to the definition of "Freescale" as set forth in paragraph 2 of the definitions set forth in ProMOS's First Set of Document Requests to the extent it purports to impose discovery obligations on persons or entities other than the parties to this lawsuit.  Subject to and without waiving its objection to this definition, Freescale will respond to a request for production using any such defined term by diligently conducting its investigation and responding to discovery in light of those persons affiliated with Freescale during the relevant time period who are likely to have information relevant to the subject matter of this action, but without assuming any obligation to determine all of the information required under ProMOS's definition.

13. Freescale objects to these document requests to the extent they purport to require Freescale to produce and/or identify "all" documents relating to a specific or general subject to the extent that these document requests are overly broad, unduly burdensome, purport to require Freescale to interview all of its employees and search all of its files worldwide, and seek information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence. Freescale will make a reasonable inquiry of those employees whom, and a reasonable search of those files which, it reasonably believes may provide relevant, responsive, and non-duplicative information and documents.

14. Freescale's responses hereto are based on Freescale's present knowledge, information, and belief. As discovery and Freescale's investigation are ongoing, Freescale reserves the right to supplement these responses.

15. Freescale repeats and incorporates herein the General Objections included in Defendant Freescale's Response To Plaintiff ProMOS Technologies, Inc.'s First Set Of Interrogatories To Defendant Freescale Semiconductor, Inc. (Nos. 1-14).

## REQUEST NO. 1:

All documents identified, requested to be identified, relied upon, reviewed, or consulted in responding to Plaintiff's First Set of Interrogatories to Defendant.

## RESPONSE:

In addition to its General Objections, Freescale objects to this document request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

**REQUEST NO. 2:**

All written policies, procedures and guidelines related to Freescale's computers, computer systems, electronic data and electronic media that hold, contain, save, or manage documents, including, but not limited to, (a) back up tape rotation schedules; (b) electronic data retention, preservation and destruction schedules; (c) employee use of company computers and data; (d) file naming conventions and standards; (e) diskette, CD, DVD, and other removable media labeling standards; and (e) e-mail storage (i.e., limitations on mailbox sizes and storage locations.)

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as vague, overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent it requests documents regarding "all written policies, procedures and guidelines" and "employee use of computers and data."

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

**REQUEST NO. 3:**

Documents sufficient to show your document retention and/or destruction policies and/or practices from 2000 to the present.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request to the extent it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request to the extent such documents relate to the documents at issue in this lawsuit.

**REQUEST NO. 4:**

Organizational charts for all of your Information Technology-related or Information Services-related departments or divisions.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as vague, overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent it requires this information for "all of your Information Technology-related or Information Services-related departments or divisions" and is not directed to identifying relevant Freescale personnel and business operations.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

**REQUEST NO. 5:**

Documents sufficient to show your past and present organizational and operational structure, including all divisions or subsidiaries, entities owned or controlled by Freescale, affiliates, predecessors or successors in interest, whether in the United States, or anywhere else in the world, and the identity of the officers and managers of each such entity.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as vague, overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent it requires this information for all of Freescale "anywhere…in the world" and is not directed to identifying relevant Freescale personnel and business operations.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

**REQUEST NO. 6:**

All documents that identify present employees, past employees, consultants and contract employees, whether full or part time, whose responsibilities or assignment include work relating to the conception, design, development, manufacture, analysis, testing, marketing, sales or repair of each Freescale Product, including but not limited to, organizational charts and telephone or email directories.

**RESPONSE:**

      In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party. Freescale objects to this request to the extent it requests information protected by the attorney-client privilege and/or the attorney work product doctrine.

**REQUEST NO. 7:**

All documents that identify present employees, past employees, consultants, and contract employees, whether full or part time, whose responsibilities or assignment include work relating to the conception, design, development, manufacture, analysis, testing, marketing, sales or repair of each cache memory used with or in, incorporated in or relied on by a Freescale Product, including but not limited to, organizational charts and telephone or email directories.

**RESPONSE:**

        In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party. Freescale objects to this request to the extent it requests information protected by the attorney-client privilege and/or the attorney work product doctrine. Freescale objects to this request to the extent it is duplicative of Request No. 6.

**REQUEST NO. 8:**

All documents that identify present employees, past employees, consultants, and contract employees, whether full or part time, whose responsibilities or assignment include work relating to the conception, design, development, manufacture, analysis, testing, marketing, sales or repair of any register(s) used in writing, reading, buffering or accessing data from or to each cache memory used with or in, incorporated in or relied on by a Freescale Product, including but not limited to, organizational charts and telephone or email directories.

**RESPONSE:**

        In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation

of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party. Freescale objects to this request to the extent it requests information protected by the attorney-client privilege and/or the attorney work product doctrine. Freescale objects to this request to the extent it is duplicative of Request No. 6.

## REQUEST NO. 9:

All documents that identify present employees, past employees, consultants, and contract employees, whether full or part time, whose responsibilities or assignment include work relating to the conception, design, development, manufacture, analysis, testing, marketing, sales or repair of each cache controller used with or in, incorporated in or relied on by a Freescale Product, including but not limited to, organizational charts and telephone or email directories.

## RESPONSE:

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of

- 10 -

infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it

requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter

of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by

either party.  Freescale objects to this request to the extent it requests information protected by

the attorney-client privilege and/or the attorney work product doctrine.  Freescale objects to this

request to the extent it is duplicative of Request No. 6.

**REQUEST NO. 10:**

All documents that identify present employees, past employees, consultants, and contract
employees, whether full or part time, whose responsibilities or assignment include work relating
to the conception, design, development, manufacture, analysis, testing, marketing, sales or repair
of each process for forming conductors that include a layer of tungsten overlying a layer of
titanium nitride used with or in, incorporated in or relied on by a Freescale Product, including but
not limited to, organizational charts and telephone or email directories.

**RESPONSE:**

   In addition to its General Objections, Freescale objects to this document request

as premature because ProMOS has not provided Freescale with sufficient information

concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation

of ProMOS's infringement contentions) to permit Freescale to respond with information

regarding relevant Freescale products.  Freescale objects to this request as overly broad, unduly

burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor

reasonably calculated to lead to the discovery of admissible evidence to the extent the term

"Freescale Product" is not properly limited in time with respect to any products accused of

infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it

requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter

of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by

either party.  Freescale objects to this request to the extent it requests information protected by

the attorney-client privilege and/or the attorney work product doctrine.  Freescale objects to this request to the extent it is duplicative of Request No. 6.

## REQUEST NO. 11:

Documents sufficient to identify, describe, illustrate, or depict names and/or functions of subsidiaries, departments, or divisions that were involved in any manner in the conception, design, development, manufacture, analysis, testing, marketing, sales or repair of any Freescale Product.

## RESPONSE:

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products.  Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003.  Freescale objects to this request to the extent it requests information protected by the attorney-client privilege and/or the attorney work product doctrine.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

## REQUEST NO. 12:

Documents sufficient to identify, describe, illustrate, or depict names and/or functions of subsidiaries, departments, or divisions that were involved in any manner in the conception, design, development, manufacture, analysis, testing, marketing, sales or repair of each cache memory used with, incorporated in or relied on by any Freescale Product.

**RESPONSE:**

   In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003. Freescale objects to this request to the extent it requests information protected by the attorney-client privilege and/or the attorney work product doctrine. Freescale objects to this request to the extent it is duplicative of Request No. 11.

   Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

**REQUEST NO. 13:**

Documents sufficient to identify, describe, illustrate, or depict names and/or functions of subsidiaries, departments, or divisions that were involved in any manner in the conception, design, development, manufacture, analysis, testing, marketing, sales or repair of any register(s) used in writing, reading, buffering or accessing data from or to each cache memory used with or in, incorporated in or relied on by a Freescale Product.

**RESPONSE:**

   In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information

- 13 -

regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003. Freescale objects to this request to the extent it requests information protected by the attorney-client privilege and/or the attorney work product doctrine. Freescale objects to this request to the extent it is duplicative of Request No. 11.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

## REQUEST NO. 14:

Documents sufficient to identify, describe, illustrate, or depict names and/or functions of subsidiaries, departments, or divisions that were involved in any manner in the conception, design, development, manufacture, analysis, testing, marketing, sales or repair of each cache controller used with or in, incorporated in or relied on by a Freescale Product.

## RESPONSE:

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003. Freescale objects to

this request to the extent it requests information protected by the attorney-client privilege and/or the attorney work product doctrine. Freescale objects to this request to the extent it is duplicative of Request No. 11.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

**REQUEST NO. 15:**

Documents sufficient to identify, describe, illustrate, or depict names and/or functions of subsidiaries, departments, or divisions that were involved in any manner in the conception, design, development, manufacture, analysis, testing, marketing, sales or repair of each process for forming conductors that include a layer of tungsten overlying a layer of titanium nitride used with or in, incorporated in or relied on by a Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003. Freescale objects to this request to the extent it requests information protected by the attorney-client privilege and/or the attorney work product doctrine. Freescale objects to this request to the extent it is duplicative of Request No. 11.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

**REQUEST NO. 16:**

All documents relating to third parties contracted, consulted, hired and/or retained that worked with Freescale or worked with another third party on Freescale's behalf on the conception, design, development, implementation, testing and manufacturing of each version of each model of Freescale Product, including but not limited to, contracts, contract proposals, Requests for Proposals (RFPs), solicitations, queries, investigations, and capability studies.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party. Freescale objects to this request to the extent it requests information protected by the attorney-client privilege and/or the attorney work product doctrine. Freescale objects to this request to the extent it requests documents not in Freescale's possession, custody, or control.

**REQUEST NO. 17:**

All documents relating to third parties contracted, consulted, hired and/or retained that worked with Freescale or worked with another third party on Freescale's behalf on the conception, design, development, implementation, testing and manufacturing of each version of each cache memory used with, incorporated in or relied on by any Freescale Product, including but not limited to, contracts, contract proposals, Requests for Proposals (RFPs), solicitations, queries, investigations, and capability studies.

- 16 -

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party. Freescale objects to this request to the extent it requests information protected by the attorney-client privilege and/or the attorney work product doctrine. Freescale objects to this request to the extent it requests documents not in Freescale's possession, custody, or control. Freescale objects to this request to the extent it is duplicative of Request No. 16.

**REQUEST NO. 18:**

All documents relating to third parties contracted, consulted, hired and/or retained that worked with Freescale or worked with another third party on Freescale's behalf on the conception, design, development, implementation, testing and manufacturing of each version of each register(s) used in writing, reading, buffering or accessing data from or to each cache memory used with, incorporated in or relied on by a Freescale Product, including but not limited to, contracts, contract proposals, Requests for Proposals (RFPs), solicitations, queries, investigations, and capability studies.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information

concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products.  Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.  Freescale objects to this request to the extent it requests information protected by the attorney-client privilege and/or the attorney work product doctrine.  Freescale objects to this request to the extent it requests documents not in Freescale's possession, custody, or control.  Freescale objects to this request to the extent it is duplicative of Request No. 16.

## REQUEST NO. 19:

All documents relating to third parties contracted, consulted, hired and/or retained that worked with Freescale or worked with another third party on Freescale's behalf on the conception, design, development, implementation, testing and manufacturing of each version of each cache controller used with, incorporated in or relied on by a Freescale Product, including but not limited to, contracts, contract proposals, Requests for Proposals (RFPs), solicitations, queries, investigations, and capability studies.

## RESPONSE:

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products.  Freescale objects to this request as overly broad, unduly

burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Products" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party. Freescale objects to this request to the extent it requests information protected by the attorney-client privilege and/or the attorney work product doctrine. Freescale objects to this request to the extent it requests documents not in Freescale's possession, custody, or control. Freescale objects to this request to the extent it is duplicative of Request No. 16.

**REQUEST NO. 20:**

All documents relating to third parties contracted, consulted, hired and/or retained that worked with Freescale or worked with another third party on Freescale's behalf on the conception, design, development, implementation, testing and manufacturing of each version of each process for forming conductors that include a layer of tungsten overlying a layer of titanium nitride used with or in, incorporated in or relied on by a Freescale Product, including but not limited to, contracts, contract proposals, Requests for Proposals (RFPs), solicitations, queries, investigations, and capability studies.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of

infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.  Freescale objects to this request to the extent it requests information protected by the attorney-client privilege and/or the attorney work product doctrine.  Freescale objects to this request to the extent it requests documents not in Freescale's possession, custody, or control. Freescale objects to this request to the extent it is duplicative of Request No. 16.

### REQUEST NO. 21:

Your annual reports, prospectuses, proxy statements from Form 10-K and Form 10-Q reports for the years 2000 to present.

### RESPONSE:

In addition to its General objections, Freescale objects to this document request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence. Freescale objects to this request as unduly burdensome to the extent that the requested information is publicly available and could be obtained by ProMOS just as easily as Freescale.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

### REQUEST NO. 22:

All documents relating to design reviews and design review meetings, including but not limited to, all notes, minutes, reports, action item lists and management summaries, relating to each version of each model of Freescale Product.

### RESPONSE:

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information

concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.

## REQUEST NO. 23:

All documents relating to design reviews and design review meetings, including but not limited to, all notes, minutes, reports, action item lists and management summaries, relating to each version of each cache memory used with, incorporated in or relied on by any Freescale Product.

## RESPONSE:

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter

of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.  Freescale objects to this request to the extent it is duplicative of Request No. 22.

**REQUEST NO. 24:**

All documents relating to design reviews and design review meetings, including but not limited to, all notes, minutes, reports, action item lists and management summaries, relating to each version of each register(s) used in writing, reading, buffering and accessing data from or to each cache memory used with, incorporated in or relied on by Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products.  Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.  Freescale objects to this request to the extent it is duplicative of Request No. 22.

**REQUEST NO. 25:**

All documents relating to design reviews and design review meetings, including but not limited to, all notes, minutes, reports, action item lists and management summaries, relating to each version of each cache controller used with, incorporated in or relied on by a Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party. Freescale objects to this request to the extent it is duplicative of Request No. 22.

**REQUEST NO. 26:**

All documents relating to design reviews and design review meetings, including but not limited to, all notes, minutes, reports, action item lists and management summaries, relating to each version of each process for forming conductors that include a layer of tungsten overlying a layer of titanium nitride used with or in, incorporated in or relied on by a Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor

reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.  Freescale objects to this request to the extent it is duplicative of Request No. 22.

## REQUEST NO. 27:

All documents relating to drawings, schematics, blueprints, manufacturing specifications, engineering specifications, design specifications, product test specifications, part specifications, assembly specifications and other documents relating to the design, development, or manufacture of any Freescale Product.

## RESPONSE:

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products.  Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.

Without waiving any and subject to all of the foregoing objections, Freescale will supplement its response within a reasonable time frame upon receiving sufficient information from ProMOS regarding its allegations to allow Freescale to respond with information regarding relevant Freescale products.

## REQUEST NO. 28:

All documents relating to drawings, schematics, blueprints, manufacturing specifications, engineering specifications, design specifications, product test specifications, part specifications, assembly specifications and other documents relating to the design, development, or manufacture of each cache memory used with, incorporated in or relied on by any Freescale Product.

## RESPONSE:

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products.  Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.  Freescale objects to this request to the extent it is duplicative of Request No. 27.

Without waiving any and subject to all of the foregoing objections, Freescale will supplement its response within a reasonable time frame upon receiving sufficient information

from ProMOS regarding its allegations to allow Freescale to respond with information regarding relevant Freescale products.

## REQUEST NO. 29:

All documents relating to drawings, schematics, blueprints, manufacturing specifications, engineering specifications, design specifications, product test specifications, part specifications, assembly specifications and other documents relating to the design, development, or manufacturing of each register(s) used in writing, reading, buffering or accessing data from or to each cache memory used with, incorporated in or relied on by a Freescale Product.

## RESPONSE:

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party. Freescale objects to this request to the extent it is duplicative of Request No. 27.

Without waiving any and subject to all of the foregoing objections, Freescale will supplement its response within a reasonable time frame upon receiving sufficient information from ProMOS regarding its allegations to allow Freescale to respond with information regarding relevant Freescale products.

**REQUEST NO. 30:**

All documents relating to drawings, schematics, blueprints, manufacturing specifications, engineering specifications, design specifications, product test specifications, part specifications, assembly specifications and other documents relating to the design, development, or manufacture of each cache controller used with, incorporated in or relied on by a Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party. Freescale objects to this request to the extent it is duplicative of Request No. 27.

Without waiving any and subject to all of the foregoing objections, Freescale will supplement its response within a reasonable time frame upon receiving sufficient information from ProMOS regarding its allegations to allow Freescale to respond with information regarding relevant Freescale products.

**REQUEST NO. 31:**

All documents relating to drawings, schematics, blueprints, manufacturing specifications, engineering specifications, design specifications, product test specifications, part specifications, assembly specifications and other documents relating to the design, development, or manufacture

of each process for forming conductors that include a layer of tungsten overlying a layer of titanium nitride used with or in, incorporated in or relied on by a Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party. Freescale objects to this request to the extent it is duplicative of Request No. 27.

Without waiving any and subject to all of the foregoing objections, Freescale will supplement its response within a reasonable time frame upon receiving sufficient information from ProMOS regarding its allegations to allow Freescale to respond with information regarding relevant Freescale products.

**REQUEST NO. 32:**

All versions of operation manuals, repair manuals, or user manuals for any Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information

concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.

## REQUEST NO. 33:

All manufacturing and/or production drawings for any Freescale Product, including but not limited to hardware drawings, engineering drawings, assembly drawings, and blueprints.

## RESPONSE:

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter

of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.

Without waiving any and subject to all of the foregoing objections, Freescale will supplement its response within a reasonable time frame upon receiving sufficient information from ProMOS regarding its allegations to allow Freescale to respond with information regarding relevant Freescale products.

**REQUEST NO. 34:**

All manufacturing and/or production drawings for each cache memory used with, incorporated in or relied on by any Freescale Product, including but not limited to hardware drawings, engineering drawings, assembly drawings, and blueprints.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party. Freescale objects to this request to the extent it is duplicative of Request No. 33.

Without waiving any and subject to all of the foregoing objections, Freescale will supplement its response within a reasonable time frame upon receiving sufficient information

from ProMOS regarding its allegations to allow Freescale to respond with information regarding relevant Freescale products.

## REQUEST NO. 35:

All manufacturing and/or production drawings for each register(s) used in writing, reading, buffering or accessing data from or to each cache memory used with, incorporated in or relied on by a Freescale Product, including but not limited to hardware drawings, engineering drawings, assembly drawings, and blueprints.

## RESPONSE:

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party. Freescale objects to this request to the extent it is duplicative of Request No. 33.

Without waiving any and subject to all of the foregoing objections, Freescale will supplement its response within a reasonable time frame upon receiving sufficient information from ProMOS regarding its allegations to allow Freescale to respond with information regarding relevant Freescale products.

**REQUEST NO. 36:**

All manufacturing and/or production drawings for each cache controller used with, incorporated in or relied on by a Freescale Product, including but not limited to hardware drawings, engineering drawings, assembly drawings, and blueprints.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party. Freescale objects to this request to the extent it is duplicative of Request No. 33.

Without waiving any and subject to all of the foregoing objections, Freescale will supplement its response within a reasonable time frame upon receiving sufficient information from ProMOS regarding its allegations to allow Freescale to respond with information regarding relevant Freescale products.

**REQUEST NO. 37:**

All manufacturing and/or production drawings for each process for forming conductors that include a layer of tungsten overlying a layer of titanium nitride used with or in, incorporated in or relied on by a Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party. Freescale objects to this request to the extent it is duplicative of Request No. 33.

Without waiving any and subject to all of the foregoing objections, Freescale will supplement its response within a reasonable time frame upon receiving sufficient information from ProMOS regarding its allegations to allow Freescale to respond with information regarding relevant Freescale products.

**REQUEST NO. 38:**

All documents relating to the conception, engineering, design, research, development, manufacture, testing, use, repair and/or operation of each version of each model of Freescale Product, including but not limited to specifications, schematics, block diagrams, data sheets, layouts, databases, depictions, photographs, simulations, test results, manuals, journals, notes, notebooks, communications, and correspondence.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information

concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products.  Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.  Freescale objects to this request as duplicative of previous document requests.

Without waiving any and subject to all of the foregoing objections, Freescale will supplement its response within a reasonable time frame upon receiving sufficient information from ProMOS regarding its allegations to allow Freescale to respond with information regarding relevant Freescale products.

## REQUEST NO. 39:

All documents relating to the conception, engineering, design, research, development, manufacture, testing, use, repair and/or operation of each version of each cache memory used with, incorporated in relied on by any Freescale Product, including but not limited to specifications, schematics, block diagrams, data sheets, layouts, databases, depictions, photographs, simulations, test results, manuals, journals, notes, notebooks, communications, and correspondence.

## RESPONSE:

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information

regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party. Freescale objects to this request to the extent it is duplicative of Request No. 38.

Without waiving any and subject to all of the foregoing objections, Freescale will supplement its response within a reasonable time frame upon receiving sufficient information from ProMOS regarding its allegations to allow Freescale to respond with information regarding relevant Freescale products.

## REQUEST NO. 40:

All documents relating to the conception, engineering, design, research, development, manufacture, testing, use, repair and/or operation of each version of each register(s) used in writing, reading, buffering or accessing data from or to each cache memory used with, incorporated in or relied on by a Freescale Product, including but not limited to specifications, schematics, block diagrams, data sheets, layouts, data bases, depictions, photographs, simulations, test results, manuals, journals, notes, notebooks, communications, and correspondence.

## RESPONSE:

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor

reasonably calculated to lead to the discovery of admissible evidence to the extent the term

"Freescale Product" is not properly limited in time with respect to any products accused of

infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it

requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter

of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by

either party.  Freescale objects to this request to the extent it is duplicative of Request No. 38.

Without waiving any and subject to all of the foregoing objections, Freescale will

supplement its response within a reasonable time frame upon receiving sufficient information

from ProMOS regarding its allegations to allow Freescale to respond with information regarding

relevant Freescale products.

## REQUEST NO. 41:

All documents relating to the conception, engineering, design, research, development, manufacture, testing, use, repair and/or operation of each version of each cache controller used with, incorporated in or relied on by a Freescale Product, including but not limited to specifications, schematics, block diagrams, data sheets, layouts, databases, depictions, photographs, simulations, test results, manuals, journals, notes, notebooks, communications, and correspondence.

## RESPONSE:

In addition to its General Objections, Freescale objects to this document request

as premature because ProMOS has not provided Freescale with sufficient information

concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation

of ProMOS's infringement contentions) to permit Freescale to respond with information

regarding relevant Freescale products.  Freescale objects to this request as overly broad, unduly

burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor

reasonably calculated to lead to the discovery of admissible evidence to the extent the term

"Freescale Product" is not properly limited in time with respect to any products accused of

infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.  Freescale objects to this request to the extent it is duplicative of Request No. 38.

Without waiving any and subject to all of the foregoing objections, Freescale will supplement its response within a reasonable time frame upon receiving sufficient information from ProMOS regarding its allegations to allow Freescale to respond with information regarding relevant Freescale products.

## REQUEST NO. 42:

All documents relating to the conception, engineering, design, research, development, manufacture, testing, use, repair and/or operation of each process for forming conductors that include a layer of tungsten overlying a layer of titanium nitride used with or in, incorporated in or relied on by a Freescale Product, including but not limited to specifications, schematics, block diagrams, data sheets, layouts, databases, depictions, photographs, simulations, test results, manuals, journals, notes, notebooks, communications, and correspondence.

## RESPONSE:

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products.  Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter

of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party. Freescale objects to this request to the extent it is duplicative of Request No. 38.

Without waiving any and subject to all of the foregoing objections, Freescale will supplement its response within a reasonable time frame upon receiving sufficient information from ProMOS regarding its allegations to allow Freescale to respond with information regarding relevant Freescale products.

## REQUEST NO. 43:

For each Freescale Product, documents sufficient to show the place and process of manufacture, models manufactured, units manufactured, and destination of units manufactured.

## RESPONSE:

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

## REQUEST NO. 44:

To the extent not produced in response to any other request, all reference designs and schematics relating to each version of each model of Freescale Product.

**RESPONSE:**

        Freescale incorporates its objections to the extent this request repeats and overlaps with any information or documents responsive "to any other request."  In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products.  Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.

        Without waiving any and subject to all of the foregoing objections, Freescale will supplement its response within a reasonable time frame upon receiving sufficient information from ProMOS regarding its allegations to allow Freescale to respond with information regarding relevant Freescale products.

**REQUEST NO. 45:**

All pictures or photographs of Freescale Products, including but not limited to any die or portion of any die.

**RESPONSE:**

        In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information

concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Products" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party. Freescale objects to this response the extent it is duplicative of Request Nos. 38-42.

**REQUEST NO. 46:**

Circuit diagrams for each version of each model of Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

**REQUEST NO. 47:**

Circuit diagrams for each version of each cache memory used with, incorporated in or relied on by any Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003. Freescale objects to this request to the extent it is duplicative of Request No. 46.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

**REQUEST NO. 48:**

Circuit diagrams for each version of each register(s) used in writing, reading, buffering or accessing data from or to each cache memory used with, incorporated in or relied on by a Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information

regarding relevant Freescale products.  Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003.  Freescale objects to this request to the extent it is duplicative of Request No. 46.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

## REQUEST NO. 49:

Circuit diagrams for each version of each cache controller used with, incorporated in or relied on by a Freescale Product.

## RESPONSE:

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products.  Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003.  Freescale objects to this request to the extent it is duplicative of Request No. 46.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

**REQUEST NO. 50:**

Process flows and process recipes for each version of each model of Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

**REQUEST NO. 51:**

Process flows and process recipes for each version of each process for forming conductors that include a layer of tungsten overlying a layer of titanium nitride used with or in, incorporated in or relied on by a Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor

reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003. Freescale objects to this request to the extent it is duplicative of Request No. 50.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

## REQUEST NO. 52:

All documents relating to source code, object code, pseudo code, flow charts or design specifications of the circuit diagrams, Verilog code and/or VHDL code, and reticle layout code for each version of each model of Freescale Product.

## RESPONSE:

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.

**REQUEST NO. 53:**

All documents relating to source code, object code, pseudo code, flow charts or design specifications of the circuit diagrams, Verilog code and/or VHDL code, and reticle layout code for each version of each cache memory used with, incorporated in or relied on by any Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party. Freescale objects to this request to the extent it is duplicative of Request No. 52.

**REQUEST NO. 54:**

All documents relating to source code, object code, pseudo code, flow charts or design specifications of the circuit diagrams, Verilog code and/or VHDL code, and reticle layout code for each version of each register(s) used in writing, reading, buffering or accessing data from or to each cache memory used with, incorporated in or relied on by a Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation

of ProMOS's infringement contentions) to permit Freescale to respond with information

regarding relevant Freescale products.  Freescale objects to this request as overly broad, unduly

burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor

reasonably calculated to lead to the discovery of admissible evidence to the extent the term

"Freescale Product" is not properly limited in time with respect to any products accused of

infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it

requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter

of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by

either party.  Freescale objects to this request to the extent it is duplicative of Request No. 52.

## REQUEST NO. 55:

All documents relating to source code, object code pseudo code, flow charts or design
specifications of the circuit diagrams, Verilog code and/or VHDL code, and reticle layout  code
for each version of each cache controller used with, incorporated in or relied on by a Freescale
Product.

## RESPONSE:

             In addition to its General Objections, Freescale objects to this document request

as premature because ProMOS has not provided Freescale with sufficient information

concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation

of ProMOS's infringement contentions) to permit Freescale to respond with information

regarding relevant Freescale products.  Freescale objects to this request as overly broad, unduly

burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor

reasonably calculated to lead to the discovery of admissible evidence to the extent the term

"Freescale Product" is not properly limited in time with respect to any products accused of

infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it

requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter

of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.  Freescale objects to this request to the extent it is duplicative of Request No. 52.

**REQUEST NO. 56:**

Documents sufficient to identify the date of all revisions to circuit diagrams, source code, Verilog code and/or VHDL code, and reticle layout code for each version of each model of Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products.  Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003.

**REQUEST NO. 57:**

All documents relating to the operation of each version of each model of Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products.  Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor

reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.

Without waiving any and subject to all of the foregoing objections, Freescale will supplement its response within a reasonable time frame upon receiving sufficient information from ProMOS regarding its allegations to allow Freescale to respond with information regarding relevant Freescale products.

**REQUEST NO. 58:**

All documents relating to the operation of each version of each cache memory used with, incorporated in or relied on by any Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter

of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party. Freescale objects to this request to the extent it is duplicative of Request No. 57.

Without waiving any and subject to all of the foregoing objections, Freescale will supplement its response within a reasonable time frame upon receiving sufficient information from ProMOS regarding its allegations to allow Freescale to respond with information regarding relevant Freescale products.

**REQUEST NO. 59:**

All documents relating to the operation of each version of each register(s) used in writing, reading, buffering or accessing data from or to each cache memory used with, incorporated in or relied on by a Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party. Freescale objects to this request to the extent it is duplicative of Request No. 57.

Without waiving any and subject to all of the foregoing objections, Freescale will supplement its response within a reasonable time frame upon receiving sufficient information

from ProMOS regarding its allegations to allow Freescale to respond with information regarding relevant Freescale products.

**REQUEST NO. 60:**

All documents relating to the operation of each version of each cache controller used with, incorporated in or relied on by a Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party. Freescale objects to this request to the extent it is duplicative of Request No. 57.

Without waiving any and subject to all of the foregoing objections, Freescale will supplement its response within a reasonable time frame upon receiving sufficient information from ProMOS regarding its allegations to allow Freescale to respond with information regarding relevant Freescale products.

**REQUEST NO. 61:**

All engineering change orders or notices for each version of each model of Freescale Products.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Products" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.

**REQUEST NO. 62:**

Documents sufficient to show the device and system architecture of each version of each model of Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term

"Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

**REQUEST NO. 63:**

All documents relating to comparative testing of each version of each model of Freescale Products.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Products" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.

**REQUEST NO. 64:**

All prototypes and models of Freescale Products, from initial prototype to commercial and/or production models made from 2000 to the present.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Products" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.

**REQUEST NO. 65:**

Complete copies of all licenses or agreements to which you are a party, including but not limited to cross-licenses, inter-company agreements, settlements, covenants not to enforce or releases that relate in any way to integrated circuit manufacturing, microprocessor, microcontroller, DRAM, SDRAM or memory technologies.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Freescale objects to this document request to the extent it requests "[a]ll licenses or agreements" and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.

Without waiving any and subject to all of the foregoing objections, Freescale responds that most, if not all, of its license agreements contain confidentiality provisions that require Freescale to obtain the consent of the other party prior to disclosing the contents of the agreement.  Freescale is in the process of contacting these other parties and will produce relevant, responsive agreements after it receives consent to do so.

**REQUEST NO. 66:**

All documents that refer to, discuss, evidence, mention or constitute any contracts or license agreements, including drafts, in which Freescale has licensed, or licenses, or considering licensing products, technology or patents from or to third parties relating to microprocessor, microcontroller, processor or memory technologies.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine.  Freescale objects to this document request to the extent it requests "[a]ll documents" relating to all Freescale licenses and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.

Without waiving any and subject to all of the foregoing objections, Freescale responds that most, if not all, of its license agreements contain confidentiality provisions that require Freescale to obtain the consent of the other party prior to disclosing the contents of the agreement.  Freescale is in the process of contacting these other parties and will produce relevant, responsive agreements after it receives consent to do so.

**REQUEST NO. 67:**

All documents relating to your policies on licensing or cross-licensing patents, know-how or technology.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent it requests "[a]ll documents" relating to licensing of "know-how or technology" and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party. Freescale objects to the undefined terms "policies" and "know-how or technology" as vague and ambiguous.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

**REQUEST NO. 68:**

Documents sufficient to identify any third parties that manufacture any Freescale Products.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Products" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003. Freescale objects to

this document request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine.

Without waiving any and subject to all of the foregoing objections, Freescale responds that it is not presently aware of any non-privileged, relevant, and responsive documents, but if Freescale becomes aware of any such documents it will produce them.

### REQUEST NO. 69:

All articles, speeches, presentations or interviews, both internal and external, that have been written and/or given by your employees, officers, directors or other of your representatives relating to Freescale Products.

### RESPONSE:

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products.  Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Products" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.

### REQUEST NO. 70:

All press releases from 2000 to the present relating to Freescale Products.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Products" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.

**REQUEST NO. 71:**

All documents relating to ProMOS or the patents-in-suit, including but not limited to documents that relate to your first awareness of any of the patents-in-suit and your earliest notice of potential infringement of any of the patents-in-suit.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

**REQUEST NO. 72:**

All documents relating to communications exchanged between you and any third party relating to the patents-in-suit, this lawsuit and/or ProMOS.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent it requests "[a[ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

**REQUEST NO. 73:**

Each Freescale meeting agenda, corporate minutes or minutes of meetings relating to the patents-in-suit, this lawsuit and/or ProMOS products.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent it requests documents

from "each" meeting relating to ProMOS and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.

Without waiving any and subject to all of the foregoing objections, Freescale responds that it is not presently aware of any non-privileged, relevant, and responsive documents, but if Freescale becomes aware of any such documents it will produce them.

**REQUEST NO. 74:**

All documents relating to any effort by Freescale or anyone else on its behalf to design, redesign, commercialize or modify any Freescale Product in view of the patents-in-suit.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic on the grounds that it purports to require Freescale to interview all of its employees and search all of its files worldwide. Freescale objects to this request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine.

**REQUEST NO. 75:**

All documents relating to any attempt by Freescale or anyone on its behalf to design around and/or avoid infringement of the patents-in-suit by any Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature under the parties' proposed Rule 16 Scheduling Order, because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products, the identity of the asserted claims, and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products, and because the Court has not yet construed any of the claims of any of the Patents-in-Suit.  Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic on the grounds that it purports to require Freescale to interview all of its employees and search all of its files worldwide.  Freescale objects to this request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine.

**REQUEST NO. 76:**

All documents related or referring to any ProMOS patent.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine.  Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent it requests "[a]ll

documents" relating to "any ProMOS patent" and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession related to the Patents-in-Suit.

**REQUEST NO. 77:**

All documents relating to your evaluation, analysis, or consideration of the patents-in-suit, including but not limited to any reverse engineering or testing performed on any Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature under the parties' proposed Rule 16 Scheduling Order, because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products, the identity of the asserted claims, and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products, and because the Court has not yet construed any of the claims of any of the Patents-in-Suit. Freescale objects to this request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine.

**REQUEST NO. 78:**

All documents relating to your consideration of whether or not to obtain a license from ProMOS for the patents-in-suit.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature under the parties' proposed Rule 16 Scheduling Order, because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the

accused Freescale products, the identity of the asserted claims, and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products, and because the Court has not yet construed any of the claims of any of the Patents-in-Suit.  Freescale objects to this request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine.

## REQUEST NO. 79:

All documents found or identified during any enforceability, prior art or invalidity searches, or any other studies relating to the patents-in-suit, including any copies of patents, publications, or other prior art identified during such searches or studies.

## RESPONSE:

In addition to its General Objections, Freescale objects to this document request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

## REQUEST NO. 80:

All documents that relate, support, or contradict Freescale's assertion that the patents-in-suit are invalid for any reason, including but not limited to anticipation or obviousness.

## RESPONSE:

In addition to its General Objections, Freescale objects to this document request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine.  Freescale object to this request as overly broad and unduly burdensome to the extent it requests "[a]ll documents" relating to the requested topic on the grounds that it purports to require Freescale to interview all of its employees and search all of its files worldwide.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

**REQUEST NO. 81:**

All documents that Freescale contends constitute prior art to the patents-in suit.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as overly broad and unduly burdensome to the extent it requests "[a]ll documents" relating to the requested topic on the grounds that it purports to require Freescale to interview all of its employees and search all of its files worldwide.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

**REQUEST NO. 82:**

All documents that relate, support, or contradict Freescale's assertion that the patents-in-suit are unenforceable.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Freescale objects to this document request as overly broad and unduly burdensome to the extent it requests "[a]ll documents" relating to the requested topic on the grounds that it purports to require Freescale to interview all of its employees and search all of its files worldwide. Freescale objects to this request to the extent it seeks documents outside of the possession, custody, or control of Freescale.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

**REQUEST NO. 83:**

All opinion letters, memoranda, or other documents relating to your contentions on validity/invalidity, infringement/non-infringement, or enforceability/unenforceability of the patents-in-suit.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature under the parties' proposed Rule 16 Scheduling Order, because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products, the identity of the asserted claims, and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products, and because the Court has not yet construed any of the claims of any of the Patents-in-Suit. Freescale objects to this request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine.

**REQUEST NO. 84:**

All documents supporting, refuting or relating in any way to the affirmative defenses or counterclaims set forth in your Answer to the Complaint.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Freescale objects to this document request as overly broad and unduly burdensome to the extent it requests "[a]ll documents" relating to the requested topic on the grounds that it purports to require Freescale to interview all of its employees and search all of its files worldwide.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

**REQUEST NO. 85:**

All documents relating to any contention by you that your products do not infringe the patents-in-suit, including but not limited to documents relating to the interpretation, scope, and meaning of the claims in any of the patents-in-suit.

**RESPONSE:**

   In addition to its General Objections, Freescale objects to this document request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine.  Freescale objects to this document request as overly broad and unduly burdensome to the extent it requests "[a]ll documents" relating to the requested topic on the grounds that it purports to require Freescale to interview all of its employees and search all of its files worldwide.

   Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

**REQUEST NO. 86:**

All opinions of counsel obtained with respect to infringement, validity, or enforceability of the patents-in-suit upon which you intend to rely at trial to defend against claims of willful infringement, inducement to infringe, or contributory infringement.

**RESPONSE:**

   In addition to its General Objections, Freescale objects to this document request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine.

**REQUEST NO. 87:**

All communications or opinions of officers, directors and/or employees of yours with respect to infringement, validity, or enforceability of the patents-in-suit or regarding any licensing negotiations with ProMOS.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

**REQUEST NO. 88:**

Documents sufficient to show by month or calendar quarter for each year since 2000 the number of each version of each model of Freescale Product manufactured, used, sold or distributed in the United States.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited to products made, used, offered for sale, or sold within the United States, or imported into the United States, and, with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, is not properly limited in time.

**REQUEST NO. 89:**

Documents sufficient to show by month or calendar quarter for each year since 2000 the volume of sales in dollars from the sale or distribution of each version of each model of Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products.  Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited to products made, used, offered for sale, or sold within the United States, or imported into the United States, and, with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, is not properly limited in time.

Freescale will supplement its response within a reasonable time frame upon receiving sufficient information from ProMOS regarding its allegations to allow Freescale to respond with the requested information regarding relevant Freescale products.

**REQUEST NO. 90:**

All projections, forecasts, business plans, strategic plans, fiscal plans, marketing plans or sales plans relating to the sale of Freescale Products from 2000 to the present, including documents containing projections through calendar year 2012.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products.  Freescale objects to this request as overly broad, unduly

burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited to products made, used, offered for sale, or sold within the United States, or imported into the United States, and, with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, is not properly limited in time, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.

**REQUEST NO. 91:**

All documents relating to the means by which sales or sales information relating to each version of each model of Freescale Product is maintained and tracked by or on behalf of Freescale.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited to products made, used, offered for sale, or sold within the United States, or imported into the United States, and, with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, is not properly limited in time, and to the extent it requests "[a]ll documents" relating to the requested

topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.

**REQUEST NO. 92:**

All versions of all part number decoders or legends for each version of each model of Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003.

**REQUEST NO. 93:**

Current and historical price lists for each version of each model of Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor

reasonably calculated to lead to the discovery of admissible evidence to the extent the term

"Freescale Product" is not properly limited to products made, used, offered for sale, or sold

within the United States, or imported into the United States, and, with respect to any products

accused of infringing the Fortin patent, which did not issue until December 30, 2003, is not

properly limited in time.

## REQUEST NO. 94:

All documents relating to returns of, or complaints, dissatisfaction, negative comments, unfavorable opinions or suggestions for improvement regarding each version of each model of Freescale Products.

## RESPONSE:

In addition to its General Objections, Freescale objects to this document request

as premature because ProMOS has not provided Freescale with sufficient information

concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation

of ProMOS's infringement contentions) to permit Freescale to respond with information

regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly

burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor

reasonably calculated to lead to the discovery of admissible evidence to the extent the term

"Freescale Products" is not properly limited in time with respect to any products accused of

infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it

requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter

of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by

either party.

## REQUEST NO. 95:

All documents relating to favorable, positive, commendatory, or complimentary feedback, comments or opinions regarding each version of each model of Freescale Products.

**RESPONSE:**

   In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products.  Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Products" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.

**REQUEST NO. 96:**

All documents relating to favorable, positive, commendatory, or complimentary feedback, comments or opinions regarding any ProMOS product.

**RESPONSE:**

   In addition to its General Objections, Freescale objects to this document request as overly broad and unduly burdensome to the extent it seeks documents outside of the possession, custody, or control of Freescale and to the extent that the requested information is publicly available and could be obtained by ProMOS just as easily as Freescale.  Freescale objects to this  request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent  that it seeks "all documents" relating to "any ProMOS

product" and to the extent it not limited to the subject matter of the claims or defenses raised in the lawsuit by either party.

Without waiving any and subject to all of the foregoing objections, Freescale responds that it is not presently aware of any non-privileged, relevant, and responsive documents, but if Freescale becomes aware of any such documents it will produce them.

**REQUEST NO. 97:**

All documents relating to sales, distribution or importation agreements entered into between Freescale and any third party for each version of each model of Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products.  Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003.

**REQUEST NO. 98:**

Documents sufficient to show each of your distributors, resellers and customers of each version of each model of Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation

of ProMOS's infringement contentions) to permit Freescale to respond with information regularly relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003.

**REQUEST NO. 99:**

All documents relating to purchase orders and/or specifications received from customers or potential customers for each version of each model of Freescale Product, including all drawings and information received therewith.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regularly relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited to products made, used, offered for sale, or sold within the United States, or imported into the United States, and, with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, is not properly limited in time.

**REQUEST NO. 100:**

All documents relating to market shares for Freescale and its competitors for each of the Freescale Products.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Products" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party. Freescale objects to this request as overly broad and unduly burdensome to the extent it seeks documents outside of the possession, custody, or control of Freescale and to the extent that the requested information is publicly available and could be obtained by ProMOS just as easily as Freescale.

Without waiving any and subject to all of the foregoing objections, Freescale will produce any non-privileged documents in its possession responsive to this request.

**REQUEST NO. 101:**

Summary documents categorized by year and by product type and name regarding the following: (1) Freescale's total unit and dollar volumes for Freescale Products manufactured, sold, or offered for sale by you from 2000 to the present, including projections through calendar year 2012; and (2) revenues, costs (fixed and variable), gross profit, and net profit for all such products manufactured, sold or offered for sale by you from 2000 to the present, including projections through calendar year 2012.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited to products made, used, offered for sale, or sold within the United States, or imported into the United States, and, with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, is not properly limited in time.

**REQUEST NO. 102:**

Summary documents categorized by year and by product type and name regarding gross expenses, including but not limited to direct labor costs, direct manufacturing costs, selling costs, variable overhead costs, incurred in the manufacture, distribution, or sale of Freescale Products from 2000 to the present, including projections through calendar year 2012.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term

"Freescale Product" is not properly limited to products made, used, offered for sale, or sold within the United States, or imported into the United States, and, with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, is not properly limited in time.

## REQUEST NO. 103:

Documents sufficient to show the date of the first sale of each Freescale Product.

## RESPONSE:

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited to products made, used, offered for sale, or sold within the United States, or imported into the United States, and, with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, is not properly limited in time.

## REQUEST NO. 104:

Summary documents identifying the distributors and retailers to whom you have sold each Freescale Product from 2000 through the present, including the name, address, products(s) sold by model number, number of units sold, date of sale, date of shipment, and sales price.

## RESPONSE:

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information

concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products.  Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited to products made, used, offered for sale, or sold within the United States, or imported into the United States, and, with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, is not properly limited in time.

**REQUEST NO. 105:**

Financial statements, including profit and loss statements, income statements, balance sheets, statements of cash flow, statements of retained earnings, and notes thereto for Freescale and any of its affiliates, divisions, subsidiaries, or parent companies.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the subject matter of the claims or defenses raised in the lawsuit by either party.

**REQUEST NO. 106:**

All documents relating to market, industry or consumer studies, surveys, or analyses of any Freescale Product and/or any competitor's product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as overly broad and unduly burdensome to the extent it seeks documents outside of the

possession, custody, or control of Freescale.  Freescale objects to this request as overly broad,

unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit

nor reasonably calculated to lead to the discovery of admissible evidence to the extent it is not

limited to the subject matter of the claims or defenses raised in the lawsuit by either party.

Freescale objects to this request as unduly burdensome to the extent that the requested

information is publicly available and could be obtained by ProMOS just as easily as Freescale.

Without waiving any and subject to all of the foregoing objections, Freescale will

produce non-privileged documents in its possession responsive to this request.

## REQUEST NO. 107:

All drafts, proposals, and final copies of advertising, sales, or promotional literature, including
but not limited to television and print media advertising, brochures and trade show promotional
material, catalogues, price lists, sell sheets, product descriptions, sales literature, drawings,
videotapes, audio tapes, electronic media, or photographs for advertising, point-of-sale
commercials, or other promotional material for Freescale Products.

## RESPONSE:

In addition to its General Objections, Freescale objects to this document request

as premature because ProMOS has not provided Freescale with sufficient information

concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation

of ProMOS's infringement contentions) to permit Freescale to respond with information

regarding relevant Freescale products.  Freescale objects to this request as overly broad, unduly

burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor

reasonably calculated to lead to the discovery of admissible evidence to the extent the term

"Freescale Products" is not properly limited in time with respect to any products accused of

infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it

requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter

of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.

**REQUEST NO. 108:**

All memoranda, correspondence, bulletins, newsletters, or other documents that currently or since 2000 have been distributed to, made available to, received from, or drafted by your present or former employees engaged in marketing or sales functions relating to Freescale Products.

**RESPONSE:**

       In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Products" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.

**REQUEST NO. 109:**

All documents prepared by, provided by, sent to, or received from your advertising agencies or public relations firms relating to any Freescale Product.

**RESPONSE:**

       In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information

concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products.  Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.

## REQUEST NO. 110:

All documents that you may introduce as exhibits at the trial of this matter.

## RESPONSE:

In addition to its General Objections, Freescale objects to this document request as premature.  Freescale objects to this request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request in accordance with the Federal Rules of Civil Procedure and the Court's orders.

## REQUEST NO. 111:

All documents identifying by name, company, address and title, all third parties hired by you and your counsel to investigate the above-captioned litigation, ProMOS, the patents-in-suit, or any ProMOS products.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the subject matter of the claims or defenses raised in the lawsuit by either party. Freescale objects to this request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request in accordance with the Federal Rules of Civil Procedure and the Court's orders.

**REQUEST NO. 112:**

Ten samples of each Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003.

**REQUEST NO. 113:**

Any and all witness statements taken in connection with this litigation.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Freescale objects to this request as vague and ambiguous to the extent it requests all "witness statements." As Freescale interprets that term, Freescale responds that it is not presently aware of any non-privileged, relevant, and responsive documents, but if Freescale becomes aware of any such documents it will produce them.

**REQUEST NO. 114:**

All documents provided to any person(s) that you expect to call as an expert witness at trial.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the subject matter of the claims or defenses raised in the lawsuit by either party.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request in accordance with the Federal Rules of Civil Procedure and the Court's orders.

**REQUEST NO. 115:**

All documents relied upon by any person(s) that you expect to a call as an expert witness at trial in forming the opinion(s) as to which the person(s) will or may testify.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Freescale objects to this document request as premature.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request in accordance with the Federal Rules of Civil Procedure and the Court's orders.

**REQUEST NO. 116:**

All documents relating to each person you employ, have employed, or have retained as an expert, including but not limited to curriculum vitae, resumes, retention agreements, letters, statements, and communications.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the subject matter of the claims or defenses raised in the lawsuit by either party.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request in accordance with the Federal Rules of Civil Procedure and the Court's orders.

**REQUEST NO. 117:**

All documents on which you intend to rely for and/or that might be relevant to a reasonable royalty analysis or calculation using the so-called *Georgia Pacific* factors.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature. Freescale objects to this request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request in accordance with the Federal Rules of Civil Procedure and the Court's orders.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Mary B. Graham*

———————————————————————
Mary B. Graham (#2256)
James W. Parrett, Jr. (#4292)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
302.658.9200

*Attorneys for Freescale Semiconductor, Inc.*

OF COUNSEL:

David L. Witcoff
Kevin P. Ferguson
John M. Michalik
JONES DAY
77 West Wacker
Chicago, IL 60601-1692
312.782.3939

F. Drexel Feeling
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH 44114-1190
216.586.3939

Dated: May 17, 2007
830702

## CERTIFICATE OF SERVICE

I hereby certify that on May 17, 2007, true and correct copies of the foregoing were caused to be served upon the following individuals in the manner indicated:

**BY E-MAIL AND HAND DELIVERY**

John G. Day, Esquire
Steven J. Balick, Esquire
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
Wilmington, DE  19899

**jday@ashby-geddes.com**
**sbalick@ashby-geddes.com**

**BY E-MAIL AND FEDERAL EXPRESS**

Sten A. Jensen, Esquire
HOGAN & HARTSON LLP
555 Thirteenth Street, NW
Washington, DC  20004

**sajensen@hhlaw.com**

**BY E-MAIL**

Steven J. Routh, Esquire
HOGAN & HARTSON LLP
**sjrouth@hhlaw.com**

William H. Wright, Esquire
HOGAN & HARTSON LLP
**whwright@hhlaw.com**

William C. Gooding, Esquire
GOODING & CRITTENDEN, L.L.P.
**billgooding@gooding-crittenden.com**

*/s/ Mary B. Graham*

_____

Mary B. Graham (#2256)

# EXHIBIT C

**REDACTED**

# EXHIBIT D

**REDACTED**

# EXHIBIT E

# FreeScale Processors

| Product | Core | Description |
|---|---|---|
| MPC5200 | 603e core | 16 KB instruction cache / 16 KB data cache |
| MPC5200B | 603e core | 16 KB instruction cache / 16 KB data cache |
| MPC5510 | e200z1 core, optional secondary e200z0 core | L1: 1MB or 512 KB embedded flash, plus memory management unit with buffer |
| MPC5533 | e200z3 core | L1: 48KB cache; 768KB embedded flash; plus memory management unit with buffer |
| MPC5534 | e200z3 core | L1: 64KB cache; 1MB embedded flash; plus memory management unit with buffer |
| MPC5553 | e200z6 core | L1 (U-Cache): 8KB; L2: 64KB cache; 1.5MB embedded flash; plus memory management unit with buffer |
| MPC5554 | e200z6 core | L1 (U-Cache): 32KB; L2: 64KB cache; 2MB embedded flash; plus memory management unit with buffer |
| MPC5561 | e200z6 core | L1 (U-Cache): 32KB; L2: 192KB cache; 1MB embedded flash; plus memory management unit with buffer |
| MPC5565 | e200z6 core | L1 (U-Cache): 8KB; L2: 64KB cache; 2MB embedded flash; plus memory management unit with buffer |
| MPC5566 | e200z6 core | L1 (U-Cache): 32KB; L2: 128KB cache; 3MB embedded flash; plus memory management unit with buffer |
| MPC5567 | e200z6 core | L1 (U-Cache): 8KB; L2: 64KB cache; 2MB embedded flash; plus memory management unit with buffer |
| MPC7410 | G4/e600 core | 32 KB instruction cache / 32 KB data cache; L2 cache: 256 KB to 1 MB |
| MPC7445 | G4/e600 core | 32 KB instruction cache / 32 KB data cache; L2 cache: 256 KB to 1 MB |
| MPC7455 | G4/e600 core | 32 KB instruction cache / 32 KB data cache; L2 cache: 256 KB to 1 MB |
| MPC7447 | G4/e600 core | 32 KB instruction cache / 32 KB data cache; L2 cache: 256 KB to 1 MB |
| MPC7457 | G4/e600 core | 32 KB instruction cache / 32 KB data cache; L2 cache: 256 KB to 1 MB |
| MPC7447A | G4/e600 core | 32 KB instruction cache / 32 KB data cache; L2 cache: 256 KB to 1 MB |
| MPC7448 | G4/e600 core | 32 KB instruction cache / 32 KB data cache; L2 cache: 256 KB to 1 MB |
| MPC823 | 8xx core | 2 KB instruction cache / 1 KB data cache |
| MPC823E | 8xx core | 16 KB instruction cache / 8 KB data cache |
| MPC850 | 8xx core | 2 KB instruction cache / 1 KB data cache |
| MPC852T | 8xx core | 4 KB instruction cache / 4 KB data cache |
| MPC853T | 8xx core | 4 KB instruction cache / 4 KB data cache |
| MPC855T | 8xx core | 4 KB instruction cache / 4 KB data cache |
| MPC857DSL | 8xx core | 4 KB instruction cache / 4 KB data cache |
| MPC857T | 8xx core | 4 KB instruction cache / 4 KB data cache |
| MPC859DSL | 8xx core | 16 KB instruction cache / 8 KB data cache |
| MPC859T | 8xx core | 4 KB instruction cache / 4 KB data cache |
| MPC860 | 8xx core | 16 KB instruction cache / 8 KB data cache |
| MPC860P | 8xx core | 16 KB instruction cache / 8 KB data cache |
| MPC862 | 8xx core | 16 KB instruction cache / 8 KB data cache |
| MPC866 | 8xx core | 16 KB instruction cache / 8 KB data cache |
| MPC870 | 8xx core | 8 KB instruction cache / 8 KB data cache |

| Model | Core | Cache |
|---|---|---|
| MPC875 | 8xx core | 8 KB instruction cache / 8 KB data cache |
| MPC880 | 8xx core | 8 KB instruction cache / 8 KB data cache |
| MPC885 | 8xx core | 8 KB instruction cache / 8 KB data cache |
| MPC8247 | 603e core | 16 KB instruction cache / 16 KB data cache |
| MPC8248 | 603e core | 16 KB instruction cache / 16 KB data cache |
| MPC8250 | G2 core (603e der.) | 16 KB instruction cache / 16 KB data cache |
| MPC8255 | G2 core (603e der.) | 16 KB instruction cache / 16 KB data cache |
| MPC8260 | G2 core (603e der.) | 16 KB instruction cache / 16 KB data cache |
| MPC8264 | G2 core (603e der.) | 16 KB instruction cache / 16 KB data cache |
| MPC8265 | G2 core (603e der.) | 16 KB instruction cache / 16 KB data cache |
| MPC8266 | G2 core (603e der.) | 16 KB instruction cache / 16 KB data cache |
| MPC8270 | 603e core | 16 KB instruction cache / 16 KB data cache |
| MPC8271 | 603e core | 16 KB instruction cache / 16 KB data cache |
| MPC8272 | 603e core | 16 KB instruction cache / 16 KB data cache |
| MPC8275 | 603e core | 16 KB instruction cache / 16 KB data cache |
| MPC8280 | 603e core | 16 KB instruction cache / 16 KB data cache |
| MPC8313 | e300 core | 16 KB instruction cache / 16 KB data cache |
| MPC8313E | e300 core | 16 KB instruction cache / 16 KB data cache |
| MPC8321 | e300c2 core | 16 KB instruction cache / 16 KB data cache |
| MPC8321E | e300c2 core | 16 KB instruction cache / 16 KB data cache |
| MPC8323 | e300c2 core | 16 KB instruction cache / 16 KB data cache |
| MPC8323E | e300c2 core | 16 KB instruction cache / 16 KB data cache |
| MPC8343E | e300 core | 32 KB instruction cache / 32 KB data cache |
| MPC8347E | e300 core | 32 KB instruction cache / 32 KB data cache |
| MPC8349E | e300 core | 32 KB instruction cache / 32 KB data cache |
| MPC8358E | e300 core | 32 KB instruction cache / 32 KB data cache |
| MPC8360E | e300 core | 32 KB instruction cache / 32 KB data cache |
| MPC8533E | e500 v2 core | 32 KB instruction cache / 32 KB data cache; L2 cache: 256 KB |
| MPC8540 | e500 core | 32 KB instruction cache / 32 KB data cache; L2 cache: 256 KB |
| MPC8541E | e500 core | 32 KB instruction cache / 32 KB data cache; L2 cache: 256 KB |
| MPC8543E | e500 core | 32 KB instruction cache / 32 KB data cache; L2 cache: 256 KB |
| MPC8544E | e500 core | 32 KB instruction cache / 32 KB data cache; L2 cache: 256 KB |
| MPC8545E | e500 core | 32 KB instruction cache / 32 KB data cache; L2 cache: 512 KB |
| MPC8547E | e500 core | 32 KB instruction cache / 32 KB data cache; L2 cache: 512 KB |
| MPC8548E | e500 core | 32 KB instruction cache / 32 KB data cache; L2 cache: 512 KB |
| MPC8555E | e500 core | 32 KB instruction cache / 32 KB data cache; L2 cache: 256 KB |
| MPC8560 | e500 core | 32 KB instruction cache / 32 KB data cache; L2 cache: 256 KB |
| MPC8567E | e500 core | 32 KB instruction cache / 32 KB data cache; L2 cache: 512 KB |
| MPC8568E | e500 core | 32 KB instruction cache / 32 KB data cache; L2 cache: 512 KB |
| MPC8641 | e600 core | 1 MB L2 cache, 32 KB instruction cache / 32 KB data cache; Dual 64-bit DDR and DDR2 memory controllers |
| MPC8641D | Dual e600 core | 1 MB L2 cache per core; 32 KB instruction cache / 32 KB data cache; Dual 64-bit DDR and DDR2 memory controllers |
| MCF5206e | ColdFire V2 | 4KB I-Cache; 8 KB SRAM |

| | | |
|---|---|---|
| MCF5207 | ColdFire V2 | 8KB I/D-Cache; 16KB SRAM |
| MCF5208 | ColdFire V2 | 8KB I/D-Cache; 16KB SRAM |
| MCF5211 | ColdFire V2 | 16KB SRAM; 128 KB Embedded Flash memory (No cache?) |
| MCF5212 | ColdFire V2 | 32KB SRAM; 256 KB Embedded Flash memory (No cache?) |
| MCF5213 | ColdFire V2 | 32KB SRAM; 256 KB Embedded Flash memory (No cache?) |
| MCF5214 | ColdFire V2 | 2KB I-Cache; 64KB SRAM; 256 KB Embedded Flash memory |
| MCF5216 | ColdFire V2 | 2KB I-Cache; 64KB SRAM; 512 KB Embedded Flash memory |
| MCF5232 | ColdFire V2 | 8KB configurable I/D-Cache; 64KB SRAM |
| MCF5233 | ColdFire V2 | 8KB configurable I/D-Cache; 64KB SRAM |
| MCF5234 | ColdFire V2 | 8KB configurable I/D-Cache; 64KB SRAM |
| MCF5235 | ColdFire V2 | 8KB configurable I/D-Cache; 64KB SRAM |
| MCF5249 | ColdFire V2 | 8KB I/D-Cache; 96KB SRAM |
| MCF5270 | ColdFire V2 | 8KB configurable Cache; 64KB SRAM |
| MCF5271 | ColdFire V2 | 8KB configurable Cache; 64KB SRAM |
| MCF5272 | ColdFire V2 | 1KB I-Cache; 4KB SRAM |
| MCF5274 | ColdFire V2 | 16KB configurable Cache; 64KB SRAM |
| MCF5274L | ColdFire V2 | 16KB configurable Cache; 64KB SRAM |
| MCF5275 | ColdFire V2 | 16KB configurable Cache; 64KB SRAM |
| MCF5275L | ColdFire V2 | 16KB configurable Cache; 64KB SRAM |
| MCF5280 | ColdFire V2 | 2KB I-Cache; 64KB SRAM |
| MCF5281 | ColdFire V2 | 2KB I-Cache; 64KB SRAM; 256 KB Embedded Flash memory |
| MCF5282 | ColdFire V2 | 2KB I-Cache; 64KB SRAM; 512 KB Embedded Flash memory |
| MCF5307 | ColdFire V3 | 8KB unified Cache; 4KB SRAM |
| MCF5327 | ColdFire V3 | 16KB I/D-Cache; 32KB SRAM |
| MCF5328 | ColdFire V3 | 16KB I/D-Cache; 32KB SRAM |
| MCF5329 | ColdFire V3 | 16KB I/D-Cache; 32KB SRAM |
| MCF5372 | ColdFire V3 | 16KB I/D-Cache; 32KB SRAM |
| MCF5372L | ColdFire V3 | 16KB I/D-Cache; 32KB SRAM |
| MCF5373 | ColdFire V3 | 16KB I/D-Cache; 32KB SRAM |
| MCF5373L | ColdFire V3 | 16KB I/D-Cache; 32KB SRAM |
| MCF5407 | ColdFire V4 | 16KB I-Cache; 8KB D-Cache; 4KB SRAM |
| MCF5470 | ColdFire V4e | 32KB I-Cache; 32KB D-Cache; 32KB SRAM |
| MCF5471 | ColdFire V4e | 32KB I-Cache; 32KB D-Cache; 32KB SRAM |
| MCF5472 | ColdFire V4e | 32KB I-Cache; 32KB D-Cache; 32KB SRAM |
| MCF5473 | ColdFire V4e | 32KB I-Cache; 32KB D-Cache; 32KB SRAM |
| MCF5474 | ColdFire V4e | 32KB I-Cache; 32KB D-Cache; 32KB SRAM |
| MCF5475 | ColdFire V4e | 32KB I-Cache; 32KB D-Cache; 32KB SRAM |
| MCF5480 | ColdFire V4e | 32KB I-Cache; 32KB D-Cache; 32KB SRAM |
| MCF5481 | ColdFire V4e | 32KB I-Cache; 32KB D-Cache; 32KB SRAM |
| MCF5482 | ColdFire V4e | 32KB I-Cache; 32KB D-Cache; 32KB SRAM |
| MCF5483 | ColdFire V4e | 32KB I-Cache; 32KB D-Cache; 32KB SRAM |
| MCF5484 | ColdFire V4e | 32KB I-Cache; 32KB D-Cache; 32KB SRAM |
| MCF5485 | ColdFire V4e | 32KB I-Cache; 32KB D-Cache; 32KB SRAM |
| MC68060 | MC68060 | Dual 8KB on-chip Caches |

| | |
|---|---|
| MC68LC060 | Dual 8KB on-chip Caches |
| MC68EC060 | Dual 8KB on-chip Caches |
| i.MX1 (MC9328MX1) | 16KB instruction Cache, 16KB data Cache |
| i.MX21 | 16KB instruction Cache, 16KB data Cache |
| i.MX21S | 16KB instruction Cache, 16KB data Cache |
| i.MX27 | 16KB instruction Cache, 16KB data Cache |
| i.MX31 | 16KB instruction Cache, 16KB data Cache; L2: 128 KB unified Cache |
| i.MX31L | 16KB instruction Cache, 16KB data Cache; L2: 128 KB unified Cache |
| i.MXL | 16KB instruction Cache, 16KB data Cache |
| i.MXS | 16KB instruction Cache, 16KB data Cache |
| MSC8144 | Four 800 MHz/1 GHz StarCore SC3400 DSP extended cores | Four 16-Kbyte L1 instruction cache (one per core); Four 32-Kbyte L1 data cache (one per core); One 128-Kbyte shared L2 instruction cache; One 512-Kbyte shared M2 memory for critical data and temporary data buffering; 10 Mbytes of 128-bit wide shared M3 memory |
| MSC8144E | Four 800 MHz/1GHz StarCore SC3400 DSP core subsystems | Four 16-Kbyte L1 instruction cache (one per core); Four 32-Kbyte L1 data cache (one per core); One 128-Kbyte shared L2 instruction cache; One 512-Kbyte shared M2 memory for critical data and temporary data buffering; 10 Mbytes of 128-bit wide shared M3 memory |
| MSC8144EC | Four 800 MHz/1GHz StarCore SC3400 DSP core subsystems | Four 16-Kbyte L1 instruction cache (one per core); Four 32-Kbyte L1 data cache (one per core); One 128-Kbyte shared L2 instruction cache; One 512-Kbyte shared M2 memory for critical data and temporary data buffering; 10 Mbytes of 128-bit wide shared M3 memory |
| MSC7110 | SC1400 core | 64 KB of SRAM memory, a 16 KB 16-way Instruction Cache |
| MSC7112 | SC1400 core | 192 KB of SRAM memory, a 16 KB 16-way Instruction Cache |
| MSC7113 | SC1400 core | 192 KB of SRAM memory, a 16 KB 16-way Instruction Cache |
| MSC7115 | SC1400 core | 384 KB of SRAM memory, a 16 KB 16-way Instruction Cache |
| MSC7116 | SC1400 core | 384 KB of SRAM memory, a 16 KB 16-way Instruction Cache |
| MSC7118 | SC1400 core | 448 KB of SRAM memory, a 16 KB 16-way Instruction Cache |
| MSC7119 | SC1400 core | 448 KB of SRAM memory, a 16 KB 16-way Instruction Cache |
| MSC7120 | e300 core | 16 KB instruction cache and a 16 KB data cache |
| DSP56301 | DSP56300 core | 1024–4096 x 24-bit Program RAM (optional configurations)with 1024 x 24-bit Instruction Cache (if enabled); 2048/3072 x 24-bit X Data RAM (optional configuration); 2048/3072 x 24-bit Y data RAM (optional configuration) |
| DSP56311 | DSP56300 core | 128 K x 24-bit on-chip RAM total; Program RAM, instruction cache, X data RAM, and Y data RAM sizes are variable |
| DSP56321 | DSP56300 core | 192 K x 24-bit on-chip RAM total; Program RAM, instruction cache, X data RAM, and Y data RAM sizes are variable |
| DSP56L307 | DSP56300 core | 64 K x 24 on-chip RAM total; Program RAM, instruction cache, X data RAM, and Y data RAM sizes are programmable; 192 x 24-bit bootstrap ROM |