# Morris, Nichols, Arsht & Tunnell llp

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347

302 658 9200
302 658 3989 Fax

**Mary B. Graham**
302.351.9199
mgraham@mnat.com

August 9, 2007

**VIA E-FILING**

The Honorable Joseph J. Farnan, Jr.
United States District Court
Federal Building
844 King Street
Wilmington, DE 19801

      Re:    *ProMOS Technologies, Inc. v. Freescale Semiconductor, Inc.*
            C.A. No. 06-788 (JJF)

Dear Judge Farnan:

      We have ProMos's "emergency" email of August 6 regarding document production. Contrary to its representations, there is no emergency requiring the Court's attention, ProMOS has no cause to complain even on a non-emergency basis, and it wrongly accuses Freescale. Freescale has produced, and is in the process of producing, all information complained about by ProMOS. ProMOS's complaint at bottom is one of timing, i.e. that Freescale has not produced all its documents on accused products relating to two of the patents in suit (the Chan patents) or a Rule 30(b)(6) witness on those documents quickly enough given the upcoming document production date of August 15. If the timing of Freescale's production of documents and a witness were a problem for ProMOS, however, it is entirely of ProMOS's own making because of its failure until July 6 to provide a meaningful scope to the Chan document discovery such that Freescale could begin serious collection of those documents. But the timing is not a problem because Freescale in fact has been able since then, in a reasonable timeframe, to collect and produce documents on a rolling basis and in fact discovery does not close until January 21, 2008.

      ProMOS's recitation of the history of the Chan-related discovery is not accurate. The actual history is that the parties had a dispute because ProMOS persisted in seeking broad discovery on virtually Freescale's entire product line. In particular, ProMOS's original document requests covered Freescale products of any kind using a cache memory in any way, even though the Chan patents do not claim all uses of a cache memory. To give meaning to our representation that this request was unduly burdensome, we note that Freescale is a manufacturer

The Honorable Joseph J. Farnan, Jr.
August 9, 2007
Page 2

of embedded semiconductor solutions for cars, phones, networks and other applications with a product line of over 220 different microprocessor products, most of which have a cache memory of some sort.[1]  The request was overbroad because the Chan patents are very limited:  the claims are directed to a cache memory apparatus having a particular structure and functionality, or to "computer systems" containing (among other things) that particular Chan cache memory in combination with a cache controller configured in a special manner.  Because cache memories were so well-known, Chan had a difficult time convincing the PTO to grant the two Chan patents, and only succeeded by severely limiting the reach of the claims to the particular structure and functionality.

    Freescale repeatedly met and conferred with ProMOS in an effort to narrow the scope of ProMOS's requests to products in some way actually related to the Chan patent claims, as Freescale was fully willing to produce relevant documents.  (Indeed, Freescale produced documents for the roughly 50 products ProMOS in the first instance identified as accused, and documents relating to the other patent in suit, so it is facially wrong for ProMOS to suggest that Freescale has been obstructive and unwilling to provide discovery.)  For months, Freescale requested that ProMOS either specifically identify the remaining Chan-accused products (which ProMOS could do from the extensive technical documentation on Freescale's website, just as ProMOS apparently had done for the 50) or provide criteria reasonably related to the Chan structure and functionality which Freescale could then use to identify products.  Although ProMOS seemed to agree to narrow the requests, it failed to do so for months.  It was not until July 6, just before filing its (improper) motion to compel, that ProMOS provided a complete list of accused products, identifying 95 more.  (On July 6, ProMOS filed a motion when, as now, it had no basis to do so – there can have been no legitimate reason for ProMOS to have filed a motion to compel documents on accused products when it only finally gave a complete list of the accused products hours before filing its motion.[2])

    Since July 6, Freescale has been diligently collecting, from around the world, critical technical documents for the remaining newly identified products and has been producing them on a rolling basis.  To date, Freescale has produced critical technical documents for almost 100 of the 144 products accused of infringement.  If ProMOS had timely identified the products it was accusing of infringement, instead of waiting until six weeks before the document production date, Freescale's production of documents now would have been complete. As far as RTL code, Freescale has always been willing to make RTL code available pursuant to the terms

---

[1] Its product lines include over 53 semiconductor product classes, 34 of which are microprocessor product classes.  Each microprocessor product class comprises a number of product families, and each microprocessor product family contains many different microprocessor products.

[2] ProMOS's motion covered both the 95 products it identified the day of its motion, as well as the earlier 45, even though Freescale had said that it would complete production on July 6, which it in fact did, of the critical documents for the 45.

The Honorable Joseph J. Farnan, Jr.
August 9, 2007
Page 3

of the protective order and agreed during the July 20 meet-and-confer between the parties that RTL code could be made available promptly after Freescale completed its production of the critical technical documents. ProMOS withdrew its meritless motion to compel with full knowledge of this condition.[3]

ProMOS's Rule 30(b)(6) deposition notice had the same overly broad reach as its document requests, seeking testimony on virtually every Freescale product made since 2000, and moreover, testimony both on documents and technical aspects. We asked ProMOS to narrow its topics, both in terms of the products and the type of testimony, but ProMOS did not entertain the idea of narrowing the scope until the July 20 meet-and-confer teleconference at which time it stated its desire to limit the scope to obtaining basic information about the types of technical documents maintained by Freescale. Freescale agreed to make witnesses available to testify regarding the narrowed scope as soon as possible given witness and counsel's schedules, and notified Freescale on August 3 that it could make witnesses available for a deposition on August 15 in Austin, Texas where witnesses reside.

Accordingly, Freescale submits that there is no reason for emergency intervention by the Court. The parties should simply proceed as they agreed during the July 20 meet-and-confer teleconference. And they should continue to meet and confer, rather than looking to the Court to resolve issues that the parties are fully capable of resolving themselves, and in fact have resolved.

Respectfully,

*/s/ Mary B. Graham*

Mary B. Graham (#2256)

---

[3] Freescale told ProMOS that it would be willing to produce as promptly as reasonably possible RTL code for inspection under the terms of the Protective Order once ProMOS represented, after looking at the critical documents, that it in fact needed the RTL code. As this Court is aware, such code is not something that any company wants to produce unless it is really required for the case. Freescale was and is fully willing to produce RTL code, but has wanted to make sure that ProMOS actually believes it needed the code for specific products, as opposed to just producing the code for all accused Freescale products because ProMOS *might* need it. Freescale had understood that ProMOS was agreeable to limiting the production of RTL code to representative Freescale products since many of the accused products share the same processor core and the relevant portions of the RTL code would be duplicative among the products that share the same processor core. This is the kind of thing that the parties are fully capable of working out, and should work out, without burdening the Court with unnecessary motion practice of any kind, let alone "emergency" practice.

The Honorable Joseph J. Farnan, Jr.
August 9, 2007
Page 4

MBG/dam
cc:   Dr. Peter Dalleo, Clerk (via e-filing and hand delivery)
      John G. Day, Esquire (via email)
      Sten A. Jensen, Esquire (via email)
      David L. Witcoff, Esquire (via email)
1202653