# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

PROMOS TECHNOLOGIES, INC.,                )

              Plaintiff,               )

v.                                        )

FREESCALE SEMICONDUCTOR, INC.,            )

              Defendant.               )

**REDACTED**
**PUBLIC VERSION**

C.A. No. 06-788-JJF

---

## PLAINTIFF PROMOS TECHNOLOGIES, INC.'S MOTION TO COMPEL DEFENDANT FREESCALE SEMICONDUCTOR, INC. TO PRODUCE TECHNICAL AND DAMAGES-RELATED DOCUMENTS RELATING TO ACCUSED PRODUCTS AND TO APPEAR FOR DOCUMENT-RELATED DEPOSITION

*Of Counsel*:

William H. Wright
Hogan & Hartson LLP
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
Telephone: (310) 785-4672
Facsimile: (31) 785-4601
E-Mail: whwright@hhlaw.com

Steven J. Routh
Sten A. Jensen
Hogan & Hartson LLP
555 Thirteenth Street, NW
Washington, DC 20004
Telephone: (202) 637-6472
Facsimile: (202) 637-5910
E-Mail:sjrouth@hhlaw.com
sajensen@hhlaw.com

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
Telephone: (302) 654-1888
Telecopier: (302) 654-2067
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Plaintiff*
*ProMOS Technologies, Inc.*

Dated: August 23, 2007
183518.1

Pursuant to Rules 30, 34 and 37 of the Federal Rules of Civil Procedure and Local Rule 37.1, Plaintiff ProMOS Technologies, Inc. ("ProMOS") respectfully moves the Court for an order compelling defendant Freescale Semiconductor, Inc. ("Freescale") to (i) produce circuit diagrams, layout diagrams, schematics, RTL documentation and/or other documents showing the design and layout of each of the products accused of infringement, as well as long overdue damages-related documents; and (ii) appear for a Rule 30(b)(6) deposition in Delaware first noticed by ProMOS on July 3, 2007 for the purpose of obtaining basic information about the types of technical documents maintained by Freescale relating to the accused products.

Notwithstanding the August 15, 2007 close of document discovery and the recent representation of Freescale's counsel that Freescale has completed production of all "critical" technical documents for all accused products, Freescale has failed to produce any technical documents showing in detail the design and layout of the accused products, including but not limited to circuit diagrams, 1/ schematics, or RTL documentation, 2/ as well as a number of critical damages-related documents. Moreover, although Freescale has agreed to make RTL documentation available to ProMOS, it has taken the position that it will do so only pursuant to the draconian restrictions (i.e., ProMOS will have access to the materials only on a single off-line

---

1/    A circuit diagram is a drawing that uses standardized symbols to depict the connections between components of an electrical device. They are used by companies that manufacture and sell semiconductors and similar devices, and tend to be lengthy documents in light of the amount of circuitry in an integrated circuit. For example, in a proceeding filed by Freescale against ProMOS in the Eastern District of Texas, many of the circuit diagrams produced by ProMOS are approximately 200 pages each. Even when semiconductor manufacturers do not maintain hard copies of circuit diagrams of some or all of their products, they either maintain electronic versions of such diagrams or electronic records (such as RTL documentation, discussed below) that allows them to generate circuit diagrams that depict the connections between components within a chip.

2/    RTL documentation is a human-readable text format of the circuit schematic which describes the structure of a circuit and the timing of interactions between elements with the circuit. With access to the proper software, a person skilled in the art can instruct a computer to perform functions on the RTL documentation such as printing or generating illustrations or representations of the circuit such as circuit diagrams.

computer at Jones Day's Cleveland office and will not be able to make electronic copies) of Paragraph 4 of the Protective Order, which by definition apply only to "computer code" and therefore have no relevance here. In addition, Freescale has stonewalled ProMOS's attempts to uncover evidence supporting ProMOS's position that Freescale has failed to meet its discovery obligations with respect to the production of technical documents. Specifically, Freescale has twice refused to appear for a Rule 30(b)(6) deposition in Delaware first noticed by ProMOS on July 3, 2007 for the purpose of exploring the types of technical documents maintained by Freescale for the accused products. By dragging its feet in scheduling the deposition over the course of the past two and a half months, Freescale has managed to avoid appearing for the deposition at any time during the document discovery period. Enough is enough. Absent Court intervention requiring Freescale to comply with its most basic discovery obligations, including appearing for a Rule 30(b)(6) document-oriented deposition and producing the long-overdue technical and damages documents, ProMOS will be prejudiced in preparing its case for trial.

## PROCEDURAL BACKGROUND

On December 22, 2006, ProMOS filed this action against Freescale, a manufacturer of semiconductors, alleging infringement of three of ProMOS's patents: U.S. Patent No. 5,488,709 entitled "Cache Including Decoupling Register Circuits" ("the '709 patent"), U.S. Patent No. 5,732,241 entitled "Random Access Cache Memory Controller and System" ("the '241 patent"), and U.S. Patent No. 6,670,267 entitled "Formation of Tungsten-Based Interconnect Using Thin Physically Vapor Deposited Titanium Nitride Layer" ("the '267 patent"). Both the '709 patent and the '241 patent involve cache memory, a supplementary memory system that temporarily stores frequently-used instructions and data for quicker processing by the central processor of a computer (the '709 patent and the '241 patent are referred to collectively herein as the "cache memory

patents"). Specifically, the '709 patent is directed toward cache memory including decoupling register circuits, and the '241 patent is directed toward a random access cache memory controller and system. The '267 patent is directed toward a method for manufacturing semiconductors using titanium nitride. This motion does not present any issues relating to the '267 patent.

## 1. Freescale's Deficient Document Production

The Scheduling Order entered in this case required the parties to complete document production by August 15, 2007. With that deadline firmly in mind, ProMOS served its first set of document requests on Freescale on April 12, 2007 – over four months ago. A copy of those requests is attached hereto as Exhibit A. In relevant part, the requests seek basic technical documents necessary for ProMOS to present its infringement case at trial, including circuit diagrams (Request Nos. 46-49), drawings, schematics, and specifications (Request Nos. 27-30), reference and user manuals (Request No. 32), and manufacturing drawings (Request Nos. 33-37) of Freescale Products. ProMOS's requests specifically defined the term "Freescale Products" to include (i) "microcontrollers, microprocessors, processors, digital signal processors, controller cores, processor cores and all other components or goods you manufacture or market for sale or sell in any way that use, incorporate, work with or rely on cache memory"; (ii) "systems, components, products and goods that use, incorporate work with or rely on microcontrollers, microprocessors, processors, digital signal processors, controller cores, processor cores or other components or goods that use, incorporate, work with or rely on cache memory"; and (iii) "integrated circuits and semiconductor products that incorporate one or more conductors that includes a layer of tungsten overlying a layer of titanium nitride, such conductors including, but

not limited to, those formed using Damascene and dual Damascene processes." Ex. A at 5. 3/ The

requests also sought basic damages-related documents, including documents relating to pricing,

costs, profit margins, distributors, resellers, and customers. (Request Nos. 93, 97, 98, 101, 102,

and 103).

Freescale served its responses to ProMOS's document requests on May 17, 2007. A copy

of Freescale's responses is attached hereto as Exhibit B. Freescale objected to the vast majority of

the requests by stating:

> Freescale objects to this document request as premature because ProMOS has not
> provided Freescale with sufficient information concerning its allegations (*e.g.*, the
> identity of the accused Freescale products *and an explanation of ProMOS's
> infringement contentions*) to permit Freescale to respond with information regarding
> relevant Freescale products.

Id. (emphasis added). With regard to ProMOS's request for circuit diagrams, Freescale asserted

objections but agreed to produce non-privileged responsive documents. Id. (Responses to Request

Nos. 46-49). In response to other requests for technical documents, Freescale asserted a number of

objections and stated that "Freescale will supplement its response within a reasonable time frame

upon receiving sufficient information from ProMOS regarding its allegations to allow Freescale to

respond with information regarding relevant Freescale products." Id. (Responses to Request Nos.

27-30).

Notwithstanding Freescale's suggestion to the contrary, at the time Freescale responded to

ProMOS's document requests, ProMOS already had provided Freescale with detailed information

regarding the accused products and its infringement allegations. As noted above, the document

requests themselves define the term "Freescale Product" to mean any product that uses,

---

3/      The first two prongs of the definition of Freescale Products are relevant to this motion as they seek
information relating to products that use cache memory – the subject matter of the '709 and '241 patents.
The third prong of the definition is not relevant to this motion as it seeks information on products
manufactured using the inventions claimed in the '267 patent.

incorporates, works with, or relies on cache memory. Ex. A at 5. It should have been fairly easy for Freescale to generate a list of specific products from this definition. Moreover, before Freescale even responded to ProMOS's document requests, ProMOS served its May 14, 2007 answers to Freescale's First Set of Interrogatories, a copy of which are attached hereto as Exhibit C. In these answers, ProMOS provided Freescale with specific information regarding its infringement allegations, including a list of exemplary accused products and detailed Powerpoint presentations reading the claims of the patents onto representative accused products. 4/ In addition, in an effort to narrow the issues in dispute on July 6, 2007, ProMOS went the extra step of providing Freescale with a specific list of Freescale products that appeared to meet this definition based on publicly available information. Exhibit D. Because the list merely recites those Freescale products that use, incorporate, work with, or rely on cache memory, there is no reason why Freescale could not have generated this same list on its own at any time prior to July 6, 2007.

Nonetheless, Freescale continued to drag its feet on producing documents reflecting the design or layout of the accused products. Indeed, until August 20, 2007, the only "technical" documents relating to the cache memory patents that ProMOS had received from Freescale were

---

4/     ProMOS's interrogatory answers stated as follows: "Freescale infringes the '709 patent through its MPC 7450 RISC microprocessor and similar processors including MPC 7448, MPC 7447A, MPC 7457, MPC 7455, MPC 7451, MPC 7450, MPC 7447, MPC 7445, MPC 7441. Other infringing processors include the e500 and e600 cores and processors and systems that include those cores as well as the products identified as the PowerQUICC II and Power QUICC III processors. The i.MX31 processor infringes the '709 patent." Ex. C (Answer to Interrogatory No. 1). With regard to the '241 patent, ProMOS asserted: "Freescale infringes the '241 patent through its i.MX31 processor, MC 68060, MC68LC060 and MC68EC60 processors, the ColdFire processors identified as the MCF548x processor, and the ColdFire V4e, V5 and V5E processors." Id. ProMOS also provided Freescale with detailed Powerpoint presentations showing how certain of the independent claims of the patents-in-suit read on representative Freescale products. See Attachments to Exhibit C. ProMOS specifically stated in its interrogatory answers that "the foregoing listing is exemplary, and ProMOS believes that other past and present Freescale products infringe [the cache memory patents-in-suit]. Additional information in that regard is in the exclusive possession of Freescale. Accordingly, ProMOS reserves the right to supplement this response as discovery progresses." Ex. C (Answer to Interrogatory No. 1).

publicly-available user manuals (available on Freescale's website)


## REDACTED


Critically absent from Freescale's production are any circuit diagrams, layout diagrams, schematics, RTL documentation, or other detailed drawings of any of its cache memory systems.

On July 6, 2007, frustrated by months of unsuccessful discovery conferences with Freescale's counsel on this topic, ProMOS filed a motion to compel with the Court seeking to require Freescale to produce basic technical documents responsive to its discovery requests. In a letter dated July 10, 2007 and a discovery conference dated July 20, 2007, Freescale's counsel requested that ProMOS agree to withdraw the motion to compel, representing that Freescale maintains only three types of so-called "critical" technical documents relating to the accused products: (i) publicly available product manuals; (ii) purportedly confidential workbooks/manuals; and (iii) RTL documentation. As an inducement to get ProMOS to withdraw the motion to compel, Freescale's counsel also represented that Freescale would produce all three categories of these so-called "critical" technical documents for all accused products by August 3, 2007 (or, at the latest, for some accused products by August 10, 2007).

RTL documentation is a human-readable text format of the circuit schematic which describes the structure of a circuit and the timing of interactions between elements with the circuit. Exhibit E (Declaration of J. McAlexander). With access to the proper software, a person

skilled in the art can instruct a computer to perform functions on the RTL documentation such as printing or generating illustrations or representations of the circuit such as circuit diagrams. Id. Thus, if provided sufficiently meaningful RTL documentation, ProMOS expects to be able to use the RTL documentation to generate the circuit diagrams and schematics that Freescale has to date refused to produce. Based on the express representations by Freescale's counsel, and not wanting to unnecessarily involve the Court in what should have been Freescale's rote compliance with its discovery obligations, ProMOS withdrew its motion to compel on July 23, 2007.

With the threat of the motion to compel lifted, however, Freescale began to backpedal on its agreement. On August 3, 2007, Freescale's counsel notified ProMOS's counsel by e-mail that the only technical documents that would be produced on that day would be manuals and workbooks relating to one type of processor – the Coldfire processor – and that Freescale would be producing "more" technical documents on August 10, 2007. In that same communication, Freescale's counsel also notified ProMOS that Freescale intended to withhold from production all RTL documentation for all of its products until after Freescale completed the remainder of its technical document production at some unspecified date. Moreover, Freescale has taken the position that it will only make the RTL documentation available pursuant to the severely restrictive provisions of Paragraph 4 of the Protective Order. On its face, Paragraph 4 applies only to "computer code" and therefore has no applicability to RTL documentation, which merely contains information about the design of the circuit and unlike computer code, does not instruct the computer to perform any functions. Ex. E (Declaration of J. McAlexander), F (Protective Order). Pursuant to the production method insisted upon by Freescale's counsel, ProMOS's counsel would be required to view the RTL documentation only on a single computer located in Freescale's office and would not be able to make electronic copies of the RTL documentation, and therefore would

not have easy ability to generate the circuit diagrams and schematics to which ProMOS is entitled. Ex. F ¶ 4 .

Finally, notwithstanding the August 15, 2007 close of document discovery, Freescale has yet to produce any profit information, pricing information, cost information, or information about its customers and resellers. Freescale should have produced these basic damages-related documents months ago, and in any event before the close of document discovery.

## 2.    Freescale's Refusal to Appear for a Properly-Noticed Rule 30(b)(6) Deposition

On June 29, 2007, ProMOS notified Freescale by letter that it intended to issue a notice of Rule 30(b)(6) deposition for the purpose of obtaining basic information "regarding the designs and technical documentation for cache memories in Freescale products." Exhibit G. ProMOS indicated that it believed "such a deposition is necessary to ensure the completeness of Freescale's responses to outstanding discovery requests, to assist in formulating possible additional written discovery, and to respond to your request for a more complete listing of Freescale products that infringe the Chan patents." Id. In the same letter, ProMOS requested that Freescale provide it with dates upon which its witnesses were available for the deposition during the week of July 16, 2007. Id. Freescale's counsel failed to respond to (or even acknowledge) this request.

Not having heard back from Freescale's counsel, on July 3, 2007, ProMOS issued a Rule 30(b)(6) notice of deposition seeking basic information regarding the technical documents maintained by Freescale. Exhibit H. The notice referenced six basic deposition topics:

- (i)    documents maintained by Freescale that evidence the design and/or features of cache memories contained in Freescale Products;
- (ii)    documents maintained by Freescale that evidence how cache memories are accessed in and/or used in Freescale Products;
- (iii)    documents maintained by Freescale that evidence the design and/or features of cache memory controllers contained in Freescale Products;
- (iv)    features associated with cache memories contained in Freescale Products;

(v)    features associated with cache memory controllers contained in Freescale Products; and

(vi)   any website maintained by Freescale and any information set forth therein that discloses features associated with cache memories or cache memory controllers contained in Freescale Products.

Id.

In the weeks following receipt of the 30(b)(6) notice, Freescale indicated that in their view the deposition was unnecessary – since Freescale's counsel already had stated what documents Freescale maintained – and that two of the topics were too broad. But it was not until July 16, 2007 that Freescale flatly asserted that it would not produce any witnesses at all on July 20, 2007. Even then, Freescale merely asserted that the deposition would not go forward as noticed without offering any alternative dates for the deposition. On a July 20, 2007 discovery conference, ProMOS offered to reschedule the deposition for any date in July, and even offered to take the deposition in Texas if the deposition went forward before August 1, 2007. Freescale refused to provide alternate dates anytime during the month of July, asserting that it intended to identify at least 20 different witnesses responsive to the notice because a different witness would have to speak to the documents that might exist for each of the more than 20 different product families.

Finally, on August 3, 2007, after much prompting from ProMOS, Freescale provided ProMOS with a single proposed deposition date for the deposition: August 15, the last day of document discovery and over six weeks after ProMOS's original notice of what was supposed to be a simple document deposition. Exhibit I. However, Freescale proposed that the deposition go forward in Austin, Texas, because that would be most convenient for the single witness (or possibly two witnesses) that it intended to offer (reduced without explanation from the 20 witnesses that Freescale's counsel previously had said would be necessary). Id. That same day, ProMOS served Freescale with a Second Notice of Rule 30(b)(6) Deposition containing topics that were identical to those set forth in the July 3, 2007 notice of deposition. Exhibit J. Given that

9

Freescale had previously rejected ProMOS's offer to take the deposition in Texas so long as it took place sometime during the month of July, ProMOS used the default mechanism of noticing the deposition for Delaware, the jurisdiction in which Freescale had voluntarily filed its counterclaims.

Freescale refused to appear for the deposition, however, stating that it would not make its witness available in Delaware and instead insisting that the deposition proceed in Austin, Texas. On August 13, 2007, Freescale went a step further and insisted that the deposition not only take place in Austin, but moreover that it be scheduled for some time in mid-September – two and a half months after the initial deposition notice was served – so that it could coincide with an as-yet unscheduled mediation session between the parties in Plano, Texas – more than 200 miles from Austin. Exhibit K. When ProMOS pointed out to Freescale that this proposal made no sense, Freescale then asserted that a mid-September deposition was necessary because the single witness that it intended to offer would be on vacation until that time. In sum, Freescale has used a constantly-shifting series of rationales for avoiding the deposition – the breadth of the topics, the number of deponents that would be required, the location, and now the timing of the deposition – to avoid producing a witness in response to the July 3, 2007 or the August 3, 2007 notices of deposition anytime during the document discovery period.

ProMOS has bent over backwards to avoid involving the Court in this dispute. The parties held telephone conferences relating to these issues on May 23, 2007, June 28, 2007, July 5, 2007, July 20, 2007, July 26, 2007, August 8, 2007, and August 17, 2007. ProMOS also wrote letters to Freescale's counsel regarding these disputes on May 18, 2007, June 25, 2007, June 29, 2007, July 12, 2007, July 30, 2007, August 9, 2007, August 13, 2007, and August 20, 2007. ProMOS even went so far as to withdraw its previously-filed motion to compel based on representations made by

Freescale's counsel on a conference call on July 20, 2007 regarding a timeline for production of some of the documents sought in this motion – representations that Freescale failed to live up to. Notwithstanding having spent a great deal of time seeking an amicable resolution of this issue, ProMOS has been unable to secure Freescale's compliance with the notice of deposition or to induce Freescale to produce circuit diagrams, schematics or other meaningful technical documents. Because Freescale will have to produce these documents eventually, the apparent motive for Freescale's refusal to produce them is that Freescale is hoping to delay discovery in this proceeding to ensure that the Texas case proceeds as far in advance of this case as possible.

## ARGUMENT

The Federal Rules of Civil Procedure provide for "a broad scope of discovery." Novartis Pharmaceuticals Corp. v. Eon Labs Mfg., Inc., 206 F.R.D. 392, 394 (D. Del. 2002); accord Block Drug Co., Inc. v. Sedona Labs., Inc., No. Civ. A. 06-350, 2007 WL 1183828, *1 (D. Del. Apr. 19, 2007) ("discovery is to be liberally allowed"); Corning Inc. v. SRU Biosystems, LLC, 223 F.R.D. 191, 193 (D. Del. 2004) ("it is well recognized that the federal rules allow broad and liberal discovery") (granting motion to compel); Advanced Med. Optics, Inc. v. Alcon Inc., No. Civ. A. 03-1095-KAJ, 2004 WL 1877724, *2 (D. Del. Aug. 18, 2004) ("The broad scope of discovery under the Federal Rules of Civil Procedures is well-known.") (granting motion to compel discovery into sales of non-accused products). Thus, "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." F.R.C.P. 26(b)(1). Relevance "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." Pitney Bowes, Inc. v. Kern Int'l, Inc., 239 F.R.D. 62, 65 (D. Conn. 2006). The party receiving a request

must not only produce information that is admissible as evidence, but also information which "appears reasonably calculated to lead to the discovery of admissible evidence." Id.; see also Advanced Med. Optics, Inc. 2004 WL 1877724 at *2 ("Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."). "'Reasonably calculated' in Rule 26 means 'any possibility that the information sought may be relevant to the subject matter of the action.'" Pitney Bowes, Inc. v. Kern Int'l, Inc., 239 F.R.D. 62, 65 (D. Conn. 2006).

Moreover, "[i]n patent cases there is a substantial policy for a 'broad type of discovery and duty of full disclosure' in order to reduce the 'maximum amount of evidence." Ropak Corp. v. Plastican, Inc., No. 04 C 5422, 2006 WL 1005406 (N.D. Ill. Apr. 17, 2006). Thus, a party cannot simply refuse to produce discovery because it believes that the documents already produced – in this case publicly-available users manuals produced to date by Freescale – may be sufficient to explain the accused products at a general level, especially when other documents in the party's possession – circuit diagrams and RTL documentation – would allow for more efficient and definitive proof of infringement at trial.

**I.    This Court Should Compel Freescale to Product Technical Documents Relating to the Accused Products - Including Circuit Diagrams, Schematics, and RTL Documentation – as Well as Long Overdue Damages-Related Documents.**

Freescale also should be compelled to produce basic technical documents showing the specific design and layout of the accused products, as well as profit, pricing, cost, customer and other damages-related documents. Although Freescale has asserted that as of August 20, 2007, it has completed production of the "critical technical documents," Freescale has failed to produce any circuit diagrams, schematics, RTL documentation, or other documents that show the specific design and layout of its products. While the publicly available user manuals and the other

materials produced to date confirm ProMOS's allegations of infringement, circuit diagrams and their equivalents contain more detailed information regarding the design and layout of the accused products that will permit ProMOS to prove its infringement case at trial more efficiently and more definitively. See Pitney Bowes, 239 F.R.D. at 65 ("the technical specifications in drawings related to … the accused devices at issue in the case [are] not only directly and highly relevant, but indeed are critical to the infringement claims asserted in the case."); Cornell Research Foundation, Inc. v. Hewlett Packard Co., 223 F.R.D. 55, 74 (N.D.N.Y. 2003) (same); see also Laitram Corp. v. NEC Corp., 62 F.3d 1388, 1395 (Fed. Cir. 1995) (holding that substantial evidence supported jury's finding of infringement where plaintiff's expert walked through comparison of patent claims to defendant's circuit diagrams).

Freescale has asserted that it does not maintain hard copies of circuit diagrams or schematics, and rather that design information relating to the accused products is stored in computer aided design ("CAD") databases at Freescale's facilities. To begin with, as set forth above, Freescale has denied ProMOS the opportunity to test this assertion at a Rule 30(b)(6) deposition. Moreover, as explained in the declarations of Freescale's own expert and outside counsel submitted in another lawsuit and attached hereto as Exhibits L and M, Freescale (like any other circuit designer) almost certainly has the capability of generating detailed circuit diagrams and schematics from such databases, and should be able to do so without undue effort or burden. Id.; see also Exhibit E. If Freescale is unwilling to generate the circuit diagrams or schematics from the electronic databases, then ProMOS should be provided access to Freescale's computer systems so that ProMOS's experts and counsel may review and copy the design information that is provided to and stored in the machines. This approach has been sanctioned by district courts under similar circumstances. See, e.g., Cornell Research Foundation, Inc. v. Hewlett Packard Co., 223

F.R.D. 55, 74-75 (N.D.N.Y. 2003) (permitting plaintiff's expert in patent infringement case relating to computer processor instruction issuing system to visit defendant's facility to review technical specifications in their electronic format because the schematics to which the plaintiff sought electronic access were "critical to the question of infringement"). Moreover, the declarations signed by Freescale's own counsel and expert witness make clear that if ProMOS's expert witnesses were permitted access to Freescale's electronic design database, they would be able to generate circuit diagrams and schematics using Freescale's existing software without undue effort or burden. Ex. L and M.

In addition, Freescale should be compelled to produce RTL documentation in a format that ProMOS can use to generate schematics and circuit diagrams. Freescale's current position is that it will only make RTL documentation available pursuant to Paragraph 4 of the Protective Order, Exhibit N, which means that ProMOS's counsel will be required to view (but not electronically copy) the documentation during business hours on a single off-line computer located in Jones Day's office. Exhibit F ¶ 4. But Paragraph 4 of the Protective Order by its very terms only applies to "source, object, machine, or other such computer code." Id. As set forth more fully in the declaration attached hereto as Exhibit E, computer code is comprised of lines of instructions; each line of which instructs the computer to perform some function. In contrast, RTL is human-readable language used to describe the structure of a circuit and the timing of interactions between elements with the circuit. A user may instruct a computer to perform functions on the RTL documentation (such as printing or generating circuit diagrams or other illustrations of the circuit), just as it may instruct a computer to add columns of numbers, but the RTL documentation of a circuit itself does not command a computer to do anything. RTL documentation just describes the circuit. Id. There is no reason, then, why ProMOS should be required to travel to Jones Day's

14

office in Cleveland to review the RTL documentation or for any of the other heightened

protections of Paragraph 4 to apply to RTL documentation. Rather, Freescale should be compelled

to produce the RTL documentation produced pursuant to the normal protections of the Protective

Order. That is particularly true because, during the early stages of the parties' negotiation of an

agreed protective order, ProMOS raised concerns about the burdens that might be imposed by

paragraph 4. Counsel for Freescale sought to allay those concerns in part by agreeing with

ProMOS that "computer code" was not likely to be a source of significant evidence in this case.

Now, having failed for months to produce critical technical documents in the form that ProMOS

expects they are maintained (or could be generated) at Freescale's facilities, Freescale is

attempting to use the restrictions of paragraph 4 of the Protective Order to place further

unnecessary burdens on ProMOS's ability to prosecute this case.

Freescale also is long overdue on producing certain basic damages-related documents,

including profit information, pricing information, cost data, and information regarding Freescale's

customers and resellers for the accused products. There simply is no reason why Freescale could

not have produced these materials before the close of document discovery, and Freescale should be

compelled to produce them immediately. On June 25, 2007 and again on July 30, 2007, ProMOS

notified Freescale that it had failed to produce a large number of documents necessary for a

damages analysis, including the following:

- Current and historical price lists for each Freescale Product;
- Documents reflecting costs (fixed and variable), gross profit, and net profit for each Freescale Product manufactured, sold or offered for sale from 2000 through the present, including projections through 2012;
- Summary documents categorized by year and product type and name regarding gross expenses incurred in the manufacture, distribution or sale of Freescale Products;
- Documents showing by month and calendar year for each year since 2000 the number of each model of Freescale Product manufactured, used or distributed in the United States;

- Sales, distribution or importation agreements entered into by Freescale relating to each Freescale Product;

- Documents sufficient to show Freescale's distributors, resellers and customers for each Freescale Product;

- Documents relating to purchase orders and/or specifications received from customers or potential customers for each Freescale Product, including all drawings;

- Documents relating to market shares for Freescale and its competitors for each Freescale Product;

- Documents sufficient to show the first sale of each Freescale Product;

- Summary documents identifying the distributors and retailers to whom you have sold each Freescale Product from 2000 through the present, including name, address, products sold by model number, number of units sold, date of sale, date of shipment, and sales price; and

- Drafts, proposals, and final copies of advertising, sales, or promotional literature, including those specified in Request No. 107.

On August 7, 2007, Freescale responded to ProMOS's July 30, 2007 letter by promising to produce responsive information, but as of the filing of this motion, Freescale had produced only a few pages of revenue and margin projections for specified Freescale Products. ProMOS is still waiting on price information, cost information, profit information, and the other damages-related information described above.

II.    **This Court Also Should Compel Freescale – a Delaware Corporation that has Asserted Counterclaims in this Case – to Produce a Rule 30(b)(6) Witness for Deposition as Noticed to Explain the Documentation It Maintains Regarding the Accused Products**

Freescale also should be compelled to promptly produce a Rule 30(b)(6) witness in Delaware to testify about the six topics listed in ProMOS's July 3 and August 3 deposition notices. While ProMOS remains willing to work with Freescale to agree upon a mechanism for selecting the location of other depositions in this case in a manner that is fair to both parties, given Freescale's recalcitrance in connection with this particular deposition and the impact it has had upon ProMOS's ability to obtain the technical documents it needed during the document discovery

16

period, Freescale should be compelled to produce witnesses in Delaware in response to the Rule 30(b)(6) deposition notice that ProMOS served on July 3 and again on August 3.

Any other result would reward Freescale for its gamesmanship and stonewalling tactics, which include the following:

- ignoring a June 29 letter requesting a list of dates during the week of July 16 that Freescale could be available for a Rule 30(b)(6) document deposition;

- failing to respond to a July 3 notice of deposition to be held on July 20 for two weeks, and then on July 16 merely asserting that the deposition would not go forward as noticed but failing to offer alternative dates for the deposition;

- refusing to provide any dates for the deposition during the month of July, even though ProMOS offered to take the deposition in Texas if it could proceed before the end of the month;

- attempting to justify its unreasonably delay in responding to the notice by insisting that the deposition topics were too broad and that they would require Freescale to prepare and produce 20 witnesses from around the world because Freescale would have to produce a different witnesses to talk about the documents for each of the more than 20 different product families, and then, having achieved the desired delay, backpedaling and suggesting that all of the topics could be covered by one or perhaps two witnesses;

- refusing to appear for a deposition in Delaware – on August 15 or any other date – even though Freescale filed counterclaims in this jurisdiction;

- suggesting that it would make sense to hold the deposition in Austin, Texas in mid-September to coincide with an as-yet unscheduled mediation session which will take place in Plano, Texas, over 200 miles away from Austin; and

- most recently, insisting that the (now single) witness that it intends to offer will be on vacation until mid-September.

Moreover, this Court should require Freescale to put forward a witness promptly – within 10 days of this Court's ruling – because Freescale has had since July 3, 2007 to prepare witness(es) to speak to the topics listed in the notice of deposition.

### III.    This Court Should Award ProMOS its Attorneys' Fees and Costs as a Sanction for Freescale's Dilatory Conduct

Finally, pursuant to Rules 16(f) and 37(a)(4), ProMOS respectfully requests that the Court impose appropriate sanctions, including but not limited to costs and attorney's fees associated with preparing this motion and conferring with Freescale in connection with the issues raised herein. Under Rule 37(a)(4), a party that unsuccessfully resists a motion to compel discovery must pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney's fees, unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust. Rule 37(a)(4); see also Liafail, Inc. v. Learning 2000, Inc., 2003 WL 722199, *7 (D. Del. March 3, 2003). There can be no "substantial justification" for Freescale's failure to live up to its discovery obligations. While Freescale has maintained in the past that it could not have produced technical or damages-related documents regarding the accused products until ProMOS provided Freescale with the list of Freescale products containing cache memory systems on July 6, 2007, nothing could be further from the truth. In order to create that list, ProMOS simply reviewed Freescale's website and identified all products containing cache memories that fit within the definition of "Freescale Product" set forth in ProMOS's discovery requests. There is no reason why Freescale could not have done the same thing on its own as soon as it received ProMOS's discovery requests in mid-April.

18

**CONCLUSION**

For the foregoing reasons, Plaintiff ProMOS Technologies, Inc. respectfully requests that the Court GRANT its Motion to Compel Defendant Freescale Semiconductors, Inc. to Appear for Document-Related Deposition and Produce Technical and Damages-Related Documents Relating to Accused Products.

**STATEMENT PURSUANT TO LOCAL RULE 7.1.1**

Pursuant to Local Rule 7.1.1, counsel for ProMOS has made a reasonable effort to reach agreement with counsel for Freescale on the matters set forth in this motion. Although the parties have worked together in good faith and have resolved a number of issues relating to alleged discovery deficiencies in the discovery responses of both sides, Freescale has failed to produce the technical documents that are the subject of this motion or to appear for the deposition as noticed.

ASHBY & GEDDES

/s/ *John G. Day*

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
Telephone: (302) 654-1888
Telecopier: (302) 654-2067
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Plaintiff*
*ProMOS Technologies, Inc.*

19

*Of Counsel*:

William H. Wright
Hogan & Hartson LLP
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
Telephone: (310) 785-4672
Facsimile: (31) 785-4601
E-Mail: whwright@hhlaw.com

Steven J. Routh
Sten A. Jensen
Hogan & Hartson LLP
555 Thirteenth Street, NW
Washington, DC 20004
Telephone: (202) 637-6472
Facsimile: (202) 637-5910
E-Mail:sjrouth@hhlaw.com
sajensen@hhlaw.com

Dated:  August 23, 2007
183518.1

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

PROMOS TECHNOLOGIES, INC.,                    )
                                              )
                         Plaintiff,        )          C.A. No. 06-788-JJF
                                              )
        v.                                  )
                                              )
FREESCALE SEMICONDUCTOR, INC.,                )
                                              )
                      Defendant.       )

**PLAINTIFF PROMOS TECHNOLOGIES, INC.'S**
**FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS**
**FROM DEFENDANT FREESCALE SEMICONDUCTOR, INC. (Nos. 1-117)**

       Pursuant to Rules 34 and 26 of the Federal Rules of Civil Procedure, Plaintiff

ProMOS Technologies, Inc. ("ProMOS") hereby requests that defendant Freescale

Semiconductor, Inc. ("Freescale")  produce for inspection and/or copying the following

documents and things at the offices of Hogan & Hartson, LLP, Columbia Square, 555 13th Street,

N.W., Washington, D.C., 20004, or such other mutually agreed upon location, within thirty (30)

days of the date of service of these requests.

## DEFINITIONS

       1.      The terms "Plaintiff" and "ProMOS" refer to ProMOS Technologies, Inc., and its

officers, agents, employees, and representatives.

       2.      The terms "Defendant," "you," "your," and "Freescale" refer to Defendant

Freescale Semiconductor, Inc., including but not limited to its divisions, subsidiaries, directors,

agents, representatives, attorneys and employees, and any predecessor in interest.

       3.      The term "Complaint" means the Complaint and any amended Complaints filed by

Plaintiff in this action.

4.    The term "Answer" means the Answer and Affirmative Defenses, or any amendments thereto, filed by Defendant in this action.  Whenever a request refers to or quotes from the Answer, all words in the request have the same meaning as in the Answer.

5.    The term "Counterclaims" means the Counterclaims, or any amendments thereto, filed by Defendant in this action.  Whenever a request refers to or quotes from the Counterclaims, all words in the request have the same meaning as in the Counterclaims.

6.    The term "document" as used herein is employed in the broadest possible sense under Rule 34 and includes, but is not limited to, any printed, written, recorded, taped, electronic (including e-mail and deleted electronic media that is recoverable in any form), graphic, or other tangible matter from whatever source, however produced or reproduced, whether in draft or otherwise, whether sent or received or neither, including the original, all amendments and addenda and any non-identical copy (whether different from the original because of notes made on or attached to such copy or otherwise ) of any and all writings, correspondence, letters, telegraphs, telex communicants, cables, notes, notations, papers, newsletters, memoranda, interoffice communications, e-mails, releases, agreements, contracts, books, pamphlets, studies, minutes of meetings, recordings or other memorials of any type of personal or telephone conversations, meetings or conferences, reports, analyses, test results, examinations, evaluations, estimates, projections, forecasts, receipts, statements, accounts, books of account, diaries, calendars, desk pads, appointment books, stenographer's notebooks, transcripts, ledgers, registers, worksheets, journals, statistical records, cost sheets, summaries, lists, tabulations, digests, canceled or uncanceled checks or drafts, vouchers, charge slips, invoices, purchase orders, hotel charges, accountant's reports, financial statements, newspapers, periodicals or magazine materials, and any materials underlying, supporting, or used in the preparation of any

documents. The term "document(s)" also specifically includes any records stored on computer tape or computer disk or otherwise stored by or in a computer, including telephone voice mail or electronic mail, whether or not a hard copy (i.e., paper copy) of the document is or was at any time in existence. A document includes all documents appended thereto. The documents requested shall include all marked copies. A "marked copy" is any document containing any writing or any markings of any kind in the text, in the margins, or on the reverse side of the document.

7.     The term "person(s)" includes any natural person, corporation, partnership, association, joint venture, sole proprietorship, firm, business enterprise, governmental or quasi-governmental body or agency, or legal entity of any type, and includes both the singular and plural.

8.     The term "communications" means all oral, visual, or other sensory means of transmitting information, messages, or statements, including but not limited to correspondence, letters, memoranda, e-mails (with any attachment(s)), meeting minutes, transcripts of telephone conversations, and presentations.

9.     The terms or phrases "relating to," "relate(s)," or "related to" includes, but is not limited to, constituting, comprising, consisting of, containing, setting forth, describing, discussing, citing, regarding, pertaining to, mentioning, proposing, showing, disclosing, containing, analyzing, explaining, summarizing, supporting, evidencing, authorizing, concerning, embodying, reflecting, identifying, incorporating, considering, recommending, continuing, enumerating, dealing with, commenting on, referring to directly or indirectly, dealing with, responding to, or in any way logically or factually relevant to the matter described in the request.

10.     The term "date" means the exact day, month and year, if ascertainable, or, if not, the best available approximation, including relationship to other events.

11.     The terms "and" as well as "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these requests any documents that otherwise would be construed to be outside their scope.

12.     The terms "ProMOS patents," "ProMOS patents-in-suit," and "patents-in-suit," mean United States Letters Patent No. 5,488,709 ("the '709 patent") entitled "Cache Including Decoupling Register Circuits;" United States Letters Patent No. 5,732,241 ("the '241 patent") entitled "Random Access Cache Memory Controller and System;" and United States Letters Patent No. 6,670,267 ("the '267 patent") entitled "Formation of Tungsten-Based Interconnect Using Thin Physically Vapor Deposited Titanium Nitride Layer."

13.     With respect to the '709 patent and the '241 patent, the term "inventor" shall mean Alfred K. Chan.  With respect to the '267 patent, the term "inventor" shall mean Vincent Fortin.  The term "inventors" shall mean Messrs. Chan and Fortin together.

14.     The term "infringement" shall be defined broadly to include direct, contributory and induced infringement under the applicable laws.

15.     The term "market," as a verb, shall mean to sell, lease, license, exhibit or distribute; or to offer to sell, lease, license, exhibit or distribute.

16.     The term "sale" means and refers to any exchange of goods, services or other property for value and includes transferring goods to another party on a consignment basis, regardless of whether title has passed.

17.     As used herein, "prior art" includes any reference or subject matter set forth in or relevant under 35 U.S.C. § 102 and 35 U.S.C. § 103.

18.     The term "Freescale Product(s)" includes: microcontrollers, microprocessors, processors, digital signal processors, controller cores, processor cores and all other components or goods you manufacture or market for sale or sell in any way that use, incorporate, work with or rely on cache memory; systems, components, products and goods that use, incorporate work with or rely on microcontrollers, microprocessors, processors, digital signal processors, controller cores, processor cores or other components or goods that use, incorporate, work with or rely on cache memory; and integrated circuits and semiconductor products that incorporate one or more conductors that includes a layer of tungsten overlying a layer of titanium nitride, such conductors including, but not limited to, those formed using Damascene and dual Damascene processes.

## **INSTRUCTIONS**

1.     In responding to these requests, you shall furnish all documents that are in your possession, custody, or control; or are within the possession, custody, or control of your officers, directors, employees, agents, representatives, present or former contractors, consultants, investigators, or attorneys; or otherwise available to you, regardless of whether documents are possessed directly by you, or any parent, subsidiary or affiliated corporation, or any of such entity's officers, directors, employees, agents, representatives, present or former contractors, consultants, investigators or attorneys.

2.     Organize and label each document or set of documents, indicating by number the request to which the document(s) relates. In your written response, provide the document production (i.e. "Bates") number(s) for document(s) responsive to each request.

3.     Electronic and computerized information must be produced in an intelligible format or together with a description of the system from which it was derived sufficient to permit rendering of the materials intelligible.

4.      If any document responding to all or any part of this Request is not currently available, include a statement to that effect and furnish whatever documents are available. Include in your statement when such documents were most recently in your possession or subject to your control and what disposition was made of them, identifying the name, job title, and the last known address of each person currently in possession or control of such documents.  If any of such documents were destroyed, identify the name, job title and the last known business address of each person who directed that the documents be destroyed, and state the reasons the documents were destroyed.  If you do not have a document responsive to a request, but you know of person(s) or organization(s) who may have all or any portion of the document, then all such information, including names, addresses, and telephone numbers, shall be disclosed in your written response.

5.      If any document or portion of any document covered by this Request for Production is withheld from production due to a claim of privilege, protection, or other grounds for non-disclosure, furnish a list of all such documents withheld that provides the following information: (a) the "Bates" number(s); (b) the identity of the person(s) who prepared or authorized the preparation of the document and, if applicable, the person(s), addresses, and organization  to whom the document was sent or shown; (c) the date (or your best approximation thereof) on which the document was prepared; (d) a description of the type of document (e.g., letter, ledger, etc.); (e) the subject matter of the document; (f) a brief reason why the document is claimed to be privileged, protected, or subject to non-disclosure; and (g) the paragraph(s) of this Request to which the document responds.

6.      This Request is continuing and requires, to the extent authorized by Rule 26(e) of the Federal Rules of Civil Procedure, production of any additional responsive documents that

may be located or acquired by you or your employees after the date of your original production.

7.    Unless otherwise indicated in a particular request, the relevant time period for each Request shall be from January 1, 2000, to the present.

## SPECIFIC REQUESTS FOR PRODUCTION

**REQUEST NO. 1:**

All documents identified, requested to be identified, relied upon, reviewed, or consulted in responding to Plaintiff's First Set of Interrogatories to Defendant.

**REQUEST NO. 2:**

All written policies, procedures and guidelines related to Freescale's computers, computer systems, electronic data and electronic media that hold, contain, save, or manage documents, including, but not limited to, (a) back up tape rotation schedules; (b) electronic data retention, preservation and destruction schedules; (c) employee use of company computers and data; (d) file naming conventions and standards; (e) diskette, CD, DVD, and other removable media labeling standards; and (e) e-mail storage (i.e., limitations on mailbox sizes and storage locations).

**REQUEST NO. 3:**

Documents sufficient to show your document retention and/or destruction policies and/or practices from 2000 to the present.

**REQUEST NO. 4:**

Organizational charts for all of your Information Technology-related or Information Services-related departments or divisions.

**REQUEST NO. 5:**

Documents sufficient to show your past and present organizational and operational structure, including all divisions or subsidiaries, entities owned or controlled by

Freescale, affiliates, predecessors or successors in interest, whether in the United States, or anywhere else in the world, and the identity of the officers and managers of each such entity.

**REQUEST NO. 6:**

All documents that identify present employees, past employees, consultants, and contract employees, whether full or part time, whose responsibilities or assignment include work relating to the conception, design, development, manufacture, analysis, testing, marketing, sales or repair of each Freescale Product, including but not limited to, organizational charts and telephone or email directories.

**REQUEST NO. 7:**

All documents that identify present employees, past employees, consultants, and contract employees, whether full or part time, whose responsibilities or assignment include work relating to the conception, design, development, manufacture, analysis, testing, marketing, sales or repair of each cache memory used with or in, incorporated in or relied on by a Freescale Product, including but not limited to, organizational charts and telephone or email directories.

**REQUEST NO. 8:**

All documents that identify present employees, past employees, consultants, and contract employees, whether full or part time, whose responsibilities or assignment include work relating to the conception, design, development, manufacture, analysis, testing, marketing, sales or repair of any register(s) used in writing, reading, buffering or accessing data from or to each cache memory used with or in, incorporated in or relied on by a Freescale Product, including but not limited to, organizational charts and telephone or email directories.

**REQUEST NO. 9:**

All documents that identify present employees, past employees, consultants, and

contract employees, whether full or part time, whose responsibilities or assignment include work relating to the conception, design, development, manufacture, analysis, testing, marketing, sales or repair of each cache controller used with or in, incorporated in or relied on by a Freescale Product, including but not limited to, organizational charts and telephone or email directories.

**REQUEST NO. 10:**

All documents that identify present employees, past employees, consultants, and contract employees, whether full or part time, whose responsibilities or assignment include work relating to the conception, design, development, manufacture, analysis, testing, marketing, sales or repair of each process for forming conductors that include a layer of tungsten overlying a layer of titanium nitride used with or in, incorporated in or relied on by a Freescale Product, including but not limited to, organizational charts and telephone or email directories.

**REQUEST NO. 11:**

Documents sufficient to identify, describe, illustrate, or depict names and/or functions of subsidiaries, departments, or divisions that were involved in any manner in the conception, design, development, manufacture, analysis, testing, marketing, sales or repair of any Freescale Product.

**REQUEST NO. 12:**

Documents sufficient to identify, describe, illustrate, or depict names and/or functions of subsidiaries, departments, or divisions that were involved in any manner in the conception, design, development, manufacture, analysis, testing, marketing, sales or repair of each cache memory used with, incorporated in or relied on by any Freescale Product.

**REQUEST NO. 13:**

Documents sufficient to identify, describe, illustrate, or depict names and/or

functions of subsidiaries, departments, or divisions that were involved in any manner in the conception, design, development, manufacture, analysis, testing, marketing, sales or repair of any register(s) used in writing, reading, buffering or accessing data from or to each cache memory used with or in, incorporated in or relied on by a Freescale Product.

**REQUEST NO. 14:**

Documents sufficient to identify, describe, illustrate, or depict names and/or functions of subsidiaries, departments, or divisions that were involved in any manner in the conception, design, development, manufacture, analysis, testing, marketing, sales or repair of each cache controller used with or in, incorporated in or relied on by a Freescale Product.

**REQUEST NO. 15:**

Documents sufficient to identify, describe, illustrate, or depict names and/or functions of subsidiaries, departments, or divisions that were involved in any manner in the conception, design, development, manufacture, analysis, testing, marketing, sales or repair of each process for forming conductors that include a layer of tungsten overlying a layer of titanium nitride used with or in, incorporated in or relied on by a Freescale Product.

**REQUEST NO. 16:**

All documents relating to third parties contracted, consulted, hired and/or retained that worked with Freescale or worked with another third party on Freescale's behalf on the conception, design, development, implementation, testing and manufacturing of each version of each model of Freescale Product, including but not limited to, contracts, contract proposals, Requests for Proposals (RFPs), solicitations, queries, investigations, and capability studies.

**REQUEST NO. 17:**

All documents relating to third parties contracted, consulted, hired and/or retained

that worked with Freescale or worked with another third party on Freescale's behalf on the conception, design, development, implementation, testing and manufacturing of each version of each cache memory used with, incorporated in or relied on by any Freescale Product, including but not limited to, contracts, contract proposals, Requests for Proposals (RFPs), solicitations, queries, investigations, and capability studies.

**REQUEST NO. 18:**

   All documents relating to third parties contracted, consulted, hired and/or retained that worked with Freescale or worked with another third party on Freescale's behalf on the conception, design, development, implementation, testing and manufacturing of each version of each register(s) used in writing, reading, buffering or accessing data from or to each cache memory used with, incorporated in or relied on by a Freescale Product, including but not limited to, contracts, contract proposals, Requests for Proposals (RFPs), solicitations, queries, investigations, and capability studies.

**REQUEST NO. 19:**

   All documents relating to third parties contracted, consulted, hired and/or retained that worked with Freescale or worked with another third party on Freescale's behalf on the conception, design, development, implementation, testing and manufacturing of each version of each cache controller used with, incorporated in or relied on by a Freescale Product, including but not limited to, contracts, contract proposals, Requests for Proposals (RFPs), solicitations, queries, investigations, and capability studies.

**REQUEST NO. 20:**

   All documents relating to third parties contracted, consulted, hired and/or retained that worked with Freescale or worked with another third party on Freescale's behalf on the

conception, design, development, implementation, testing and manufacturing of each version of each process for forming conductors that include a layer of tungsten overlying a layer of titanium nitride used with or in, incorporated in or relied on by a Freescale Product, including but not limited to, contracts, contract proposals, Requests for Proposals (RFPs), solicitations, queries, investigations, and capability studies.

**REQUEST NO. 21:**

Your annual reports, prospectuses, proxy statements and Form 10-K and Form 10-Q reports for the years 2000 to the present.

**REQUEST NO. 22:**

All documents relating to design reviews and design review meetings, including but not limited to, all notes, minutes, reports, action item lists and management summaries, relating to each version of each model of Freescale Product.

**REQUEST NO. 23:**

All documents relating to design reviews and design review meetings, including but not limited to, all notes, minutes, reports, action item lists and management summaries, relating to each version of each cache memory used with, incorporated in or relied on by any Freescale Product.

**REQUEST NO. 24:**

All documents relating to design reviews and design review meetings, including but not limited to, all notes, minutes, reports, action item lists and management summaries, relating to each version of each register(s) used in writing, reading, buffering or accessing data from or to each cache memory used with, incorporated in or relied on by a Freescale Product.

**REQUEST NO. 25:**

All documents relating to design reviews and design review meetings, including but not limited to, all notes, minutes, reports, action item lists and management summaries, relating to each version of each cache controller used with, incorporated in or relied on by a Freescale Product.

**REQUEST NO. 26:**

All documents relating to design reviews and design review meetings, including but not limited to, all notes, minutes, reports, action item lists and management summaries, relating to each version of each process for forming conductors that include a layer of tungsten overlying a layer of titanium nitride used with or in, incorporated in or relied on by a Freescale Product.

**REQUEST NO. 27:**

All documents relating to drawings, schematics, blueprints, manufacturing specifications, engineering specifications, design specifications, product test specifications, part specifications, assembly specifications and other documents relating to the design, development, or manufacture of any Freescale Product.

**REQUEST NO. 28:**

All documents relating to drawings, schematics, blueprints, manufacturing specifications, engineering specifications, design specifications, product test specifications, part specifications, assembly specifications and other documents relating to the design, development, or manufacture of each cache memory used with, incorporated in or relied on by any Freescale Product.

**REQUEST NO. 29:**

All documents relating to drawings, schematics, blueprints, manufacturing specifications, engineering specifications, design specifications, product test specifications, part specifications, assembly specifications and other documents relating to the design, development, or manufacture of each register(s) used in writing, reading, buffering or accessing data from or to each cache memory used with, incorporated in or relied on by a Freescale Product.

**REQUEST NO. 30:**

All documents relating to drawings, schematics, blueprints, manufacturing specifications, engineering specifications, design specifications, product test specifications, part specifications, assembly specifications and other documents relating to the design, development, or manufacture of each cache controller used with, incorporated in or relied on by a Freescale Product.

**REQUEST NO. 31:**

All documents relating to drawings, schematics, blueprints, manufacturing specifications, engineering specifications, design specifications, product test specifications, part specifications, assembly specifications and other documents relating to the design, development, or manufacture of each process for forming conductors that include a layer of tungsten overlying a layer of titanium nitride used with or in, incorporated in or relied on by a Freescale Product.

**REQUEST NO. 32:**

All versions of operation manuals, repair manuals, or user manuals for any Freescale Product.

**REQUEST NO. 33:**

All manufacturing and/or production drawings for any Freescale Product,

including but not limited to hardware drawings, engineering drawings, assembly drawings, and blueprints.

**REQUEST NO. 34:**

All manufacturing and/or production drawings for each cache memory used with, incorporated in or relied on by any Freescale Product, including but not limited to hardware drawings, engineering drawings, assembly drawings, and blueprints.

**REQUEST NO. 35:**

All manufacturing and/or production drawings for each register(s) used in writing, reading, buffering or accessing data from or to each cache memory used with, incorporated in or relied on by a Freescale Product, including but not limited to hardware drawings, engineering drawings, assembly drawings, and blueprints.

**REQUEST NO. 36:**

All manufacturing and/or production drawings for each cache controller used with, incorporated in or relied on by a Freescale Product, including but not limited to hardware drawings, engineering drawings, assembly drawings, and blueprints.

**REQUEST NO. 37:**

All manufacturing and/or production drawings for each process for forming conductors that include a layer of tungsten overlying a layer of titanium nitride used with or in, incorporated in or relied on by a Freescale Product.

**REQUEST NO. 38:**

All documents relating to the conception, engineering, design, research, development, manufacture, testing, use, repair and/or operation of each version of each model of Freescale Product, including but not limited to specifications, schematics, block diagrams, data

sheets, layouts, databases, depictions, photographs, simulations, test results, manuals, journals, notes, notebooks, communications, and correspondence.

**REQUEST NO. 39:**

All documents relating to the conception, engineering, design, research, development, manufacture, testing, use, repair and/or operation of each version of each cache memory used with, incorporated in or relied on by any Freescale Product, including but not limited to specifications, schematics, block diagrams, data sheets, layouts, databases, depictions, photographs, simulations, test results, manuals, journals, notes, notebooks, communications, and correspondence.

**REQUEST NO. 40:**

All documents relating to the conception, engineering, design, research, development, manufacture, testing, use, repair and/or operation of each version of each register(s) used in writing, reading, buffering or accessing data from or to each cache memory used with, incorporated in or relied on by a Freescale Product, including but not limited to specifications, schematics, block diagrams, data sheets, layouts, databases, depictions, photographs, simulations, test results, manuals, journals, notes, notebooks, communications, and correspondence.

**REQUEST NO. 41:**

All documents relating to the conception, engineering, design, research, development, manufacture, testing, use, repair and/or operation of each version of each cache controller used with, incorporated in or relied on by a Freescale Product, including but not limited to specifications, schematics, block diagrams, data sheets, layouts, databases, depictions, photographs, simulations, test results, manuals, journals, notes, notebooks, communications, and correspondence.

**REQUEST NO. 42:**

All documents relating to the conception, engineering, design, research, development, manufacture, testing, use, repair and/or operation of each process for forming conductors that include a layer of tungsten overlying a layer of titanium nitride used with or in, incorporated in or relied on by a Freescale Product, including but not limited to specifications, schematics, block diagrams, data sheets, layouts, databases, depictions, photographs, simulations, test results, manuals, journals, notes, notebooks, communications, and correspondence.

**REQUEST NO. 43:**

For each Freescale Product, documents sufficient to show the place and process of manufacture, models manufactured, units manufactured, and destination of units manufactured.

**REQUEST NO. 44:**

To the extent not produced in response to any other request, all reference designs and schematics relating to each version of each model of Freescale Product.

**REQUEST NO. 45:**

All pictures or photographs of Freescale Products, including but not limited to any die or portion of any die.

**REQUEST NO. 46:**

Circuit diagrams for each version of each model of Freescale Product.

**REQUEST NO. 47:**

Circuit diagrams for each version of each cache memory used with, incorporated in or relied on by any Freescale Product.

**REQUEST NO. 48:**

Circuit diagrams for each version of each register(s) used in writing, reading,

- 17 -

buffering or accessing data from or to each cache memory used with, incorporated in or relied on by a Freescale Product.

**REQUEST NO. 49:**

        Circuit diagrams for each version of each cache controller used with, incorporated in or relied on by a Freescale Product.

**REQUEST NO. 50:**

        Process flows and process recipes for each version of each model of Freescale Product.

**REQUEST NO. 51:**

        Process flows and process recipes for each version of each process for forming conductors that include a layer of tungsten overlying a layer of titanium nitride used with or in, incorporated in or relied on by a Freescale Product.

**REQUEST NO. 52:**

        All documents relating to source code, object code, pseudo code, flow charts or design specifications of the circuit diagrams, Verilog code and/or VHDL code, and reticle layout code for each version of each model of Freescale Product.

**REQUEST NO. 53:**

        All documents relating to source code, object code, pseudo code, flow charts or design specifications of the circuit diagrams, Verilog code and/or VHDL code, and reticle layout code for each version of each cache memory used with, incorporated in or relied on by any Freescale Product.

**REQUEST NO. 54:**

        All documents relating to source code, object code, pseudo code, flow charts or

design specifications of the circuit diagrams, Verilog code and/or VHDL code, and reticle layout

code for each version of each register(s) used in writing, reading, buffering or accessing data

from or to each cache memory used with, incorporated in or relied on by a Freescale Product.

**REQUEST NO. 55:**

All documents relating to source code, object code, pseudo code, flow charts or

design specifications of the circuit diagrams, Verilog code and/or VHDL code, and reticle layout

code for each version of each cache controller used with, incorporated in or relied on by a

Freescale Product.

**REQUEST NO. 56:**

Documents sufficient to identify the date of all revisions to circuit diagrams,

source code, Verilog code and/or VHDL code, and reticle layout code for each version of each

model of Freescale Product.

**REQUEST NO. 57:**

All documents relating to the operation of each version of each model of

Freescale Product.

**REQUEST NO. 58:**

All documents relating to the operation of each version of each cache memory

used with, incorporated in or relied on by any Freescale Product.

**REQUEST NO. 59:**

All documents relating to the operation of each version of each register(s) used in

writing, reading, buffering or accessing data from or to each cache memory used with,

incorporated in or relied on by a Freescale Product.

**REQUEST NO. 60:**

All documents relating to the operation of each version of each cache controller used with, incorporated in or relied on by a Freescale Product.

**REQUEST NO. 61:**

All engineering change orders or notices for each version of each model of Freescale Products.

**REQUEST NO. 62:**

Documents sufficient to show the device and system architecture of each version of each model of Freescale Product.

**REQUEST NO. 63:**

All documents relating to comparative testing of each version of each model of Freescale Products.

**REQUEST NO. 64:**

All prototypes and models of Freescale Products, from initial prototype to commercial and/or production models made from 2000 to the present.

**REQUEST NO. 65:**

Complete copies of all licenses or agreements to which you are a party, including but not limited to cross-licenses, inter-company agreements, settlements, covenants not to enforce or releases that relate in any way to integrated circuit manufacturing, microprocessor, microcontroller, DRAM, SDRAM or memory technologies.

**REQUEST NO. 66:**

All documents that refer to, discuss, evidence, mention or constitute any contracts or license agreements, including drafts, in which Freescale has licensed, or licenses, or

considering licensing products, technology or patents from or to third parties relating to microprocessor, microcontroller, processor or memory technologies.

**REQUEST NO. 67:**

All documents relating to your policies on licensing or cross-licensing patents, know-how or technology.

**REQUEST NO. 68:**

Documents sufficient to identify any third parties that manufacture any Freescale Products.

**REQUEST NO. 69:**

All articles, speeches, presentations or interviews, both internal and external, that have been written and/or given by your employees, officers, directors or other of your representatives relating to Freescale Products.

**REQUEST NO. 70:**

All press releases from 2000 to the present relating to Freescale Products.

**REQUEST NO. 71:**

All documents relating to ProMOS or the patents-in-suit, including but not limited to documents that relate to your first awareness of any of the patents-in-suit and your earliest notice of potential infringement of any of the patents-in-suit.

**REQUEST NO. 72:**

All documents relating to communications exchanged between you and any third party relating to the patents-in-suit, this lawsuit and/or ProMOS.

**REQUEST NO. 73:**

Each Freescale meeting agenda, corporate minutes or minutes of meetings relating to the patents-in-suit, this lawsuit and/or ProMOS products.

**REQUEST NO. 74:**

All documents relating to any effort by Freescale or anyone else on its behalf to design, redesign, commercialize or modify any Freescale Product in view of the patents-in-suit.

**REQUEST NO. 75:**

All documents relating to any attempt by Freescale or anyone on its behalf to design around and/or avoid infringement of the patents-in-suit by any Freescale Product.

**REQUEST NO. 76:**

All documents related or referring to any ProMOS patent.

**REQUEST NO. 77:**

All documents relating to your evaluation, analysis, or consideration of the patents in-suit, including but not limited to any reverse engineering or testing performed on any Freescale Product.

**REQUEST NO. 78:**

All documents relating to your consideration of whether or not to obtain a license from ProMOS for the patents-in-suit.

**REQUEST NO. 79:**

All documents found or identified during any enforceability, prior art or invalidity searches, or any other studies relating to the patents-in-suit, including any copies of patents, publications, or other prior art identified during such searches or studies.

**REQUEST NO. 80:**

All documents that relate, support, or contradict Freescale's assertion that the patents-in-suit are invalid for any reason, including but not limited to anticipation or obviousness.

**REQUEST NO. 81:**

All documents that Freescale contends constitute prior art to the patents-in-suit.

**REQUEST NO. 82:**

All documents that relate, support, or contradict Freescale's assertion that the patents-in-suit are unenforceable.

**REQUEST NO. 83:**

All opinion letters, memoranda, or other documents relating to your contentions on validity/invalidity, infringement/non-infringement, or enforceability/unenforceability of the patents-in-suit.

**REQUEST NO. 84:**

All documents supporting, refuting or relating in any way to the affirmative defenses or counterclaims set forth in your Answer to the Complaint.

**REQUEST NO. 85:**

All documents relating to any contention by you that your products do not infringe the patents-in-suit, including but not limited to documents relating to the interpretation, scope, and meaning of the claims in any of the patents-in-suit.

**REQUEST NO. 86:**

All opinions of counsel obtained with respect to infringement, validity, or enforceability of the patents-in-suit upon which you intend to rely at trial to defend against claims of willful infringement, inducement to infringe, or contributory infringement.

**REQUEST NO. 87:**

All communications or opinions of officers, directors and/or employees of yours with respect to infringement, validity, or enforceability of the patents-in-suit or regarding any licensing negotiations with ProMOS.

**REQUEST NO. 88:**

Documents sufficient to show by month or calendar quarter for each year since 2000 the number of each version of each model of Freescale Product manufactured, used, sold or distributed in the United States.

**REQUEST NO. 89:**

Documents sufficient to show by month or calendar quarter for each year since 2000 the volume of sales in dollars from the sale or distribution of each version of each model of Freescale Product.

**REQUEST NO. 90:**

All projections, forecasts, business plans, strategic plans, fiscal plans, marketing plans or sales plans relating to the sale of Freescale Products from 2000 to the present, including documents containing projections through calendar year 2012.

**REQUEST NO. 91:**

All documents relating to the means by which sales or sales information relating to each version of each model of Freescale Product is maintained and tracked by or on behalf of Freescale.

**REQUEST NO. 92:**

All versions of all part number decoders or legends for each version of each model of Freescale Product.

**REQUEST NO. 93:**

Current and historical price lists for each version of each model of Freescale Product.

**REQUEST NO. 94:**

All documents relating to returns of, or complaints, dissatisfaction, negative comments, unfavorable opinions or suggestions for improvement regarding each version of each model of Freescale Products.

**REQUEST NO. 95:**

All documents relating to favorable, positive, commendatory, or complimentary feedback, comments or opinions regarding each version of each model of Freescale Products.

**REQUEST NO. 96:**

All documents relating to favorable, positive, commendatory, or complimentary feedback, comments or opinions regarding any ProMOS product.

**REQUEST NO. 97:**

All documents relating to sales, distribution or importation agreements entered into between Freescale and any third party for each version of each model of Freescale Product.

**REQUEST NO. 98:**

Documents sufficient to show each of your distributors, resellers and customers of each version of each model of Freescale Product.

**REQUEST NO. 99:**

All documents relating to purchase orders and/or specifications received from customers or potential customers for each version of each model of Freescale Product, including all drawings and information received therewith.

**REQUEST NO. 100:**

All documents relating to market shares for Freescale and its competitors for each of the Freescale Products.

**REQUEST NO. 101:**

Summary documents categorized by year and by product type and name regarding the following: (1) Freescale's total unit and dollar volumes for Freescale Products manufactured, sold, or offered for sale by you from 2000 to the present, including projections through calendar year 2012; and (2) revenues, costs (fixed and variable), gross profit, and net profit for all such products manufactured, sold or offered for sale by you from 2000 to the present, including projections through calendar year 2012.

**REQUEST NO. 102:**

Summary documents categorized by year and by product type and name regarding gross expenses, including but not limited to direct labor costs, direct manufacturing costs, selling costs, variable overhead costs, incurred in the manufacture, distribution, or sale of Freescale Products from 2000 to the present, including projections through calendar year 2012.

**REQUEST NO. 103:**

Documents sufficient to show the date of the first sale of each Freescale Product.

**REQUEST NO. 104:**

Summary documents identifying the distributors and retailers to whom you have sold each Freescale Product from 2000 through the present, including the name, address, product(s) sold by model number, number of units sold, date of sale, date of shipment, and sales price.

**REQUEST NO. 105**:

Financial statements, including profit and loss statements, income statements, balance sheets, statements of cash flow, statements of retained earnings, and notes thereto for Freescale and any of its affiliates, divisions, subsidiaries, or parent companies.

**REQUEST NO. 106:**

All documents relating to market, industry or consumer studies, surveys, or analyses of any Freescale Product and/or any competitor's product.

**REQUEST NO. 107:**

All drafts, proposals, and final copies of advertising, sales, or promotional literature, including but not limited to television and print media advertising, brochures and trade show promotional material, catalogues, price lists, sell sheets, product descriptions, sales literature, drawings, videotapes, audio tapes, electronic media, or photographs for advertising, point-of-sale commercials, or other promotional material for Freescale Products.

**REQUEST NO. 108:**

All memoranda, correspondence, bulletins, newsletters, or other documents that currently or since 2000 have been distributed to, made available to, received from, or drafted by your present or former employees engaged in marketing or sales functions relating to Freescale Products.

**REQUEST NO. 109:**

All documents prepared by, provided by, sent to, or received from your advertising agencies or public relations firms relating to any Freescale Product.

**REQUEST NO. 110:**

All documents that you may introduce as exhibits at the trial of this matter.

**REQUEST NO. 111:**

All documents identifying by name, company, address and title, all third parties hired by you or your counsel to investigate the above-captioned litigation, ProMOS, the patents-in-suit, or any ProMOS products.

**REQUEST NO. 112:**

Ten samples of each Freescale Product.

**REQUEST NO. 113:**

Any and all witness statements taken in connection with this litigation.

**REQUEST NO. 114:**

All documents provided to any person(s) that you expect to call as an expert witness at trial.

**REQUEST NO. 115:**

All documents relied upon by any person(s) that you expect to a call as an expert witness at trial in forming the opinion(s) as to which the person(s) will or may testify.

**REQUEST NO. 116:**

All documents relating to each person you employ, have employed, or have retained as an expert, including but not limited to curriculum vitae, resumes, retention agreements, letters, statements, and communications.

**REQUEST NO. 117:**

All documents on which you intend to rely for and/or that might be relevant to a reasonable royalty analysis or calculation using the so-called *Georgia Pacific* factors.

ASHBY & GEDDES

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
Telephone: (302) 654-1888
Telecopier: (302) 654-2067
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Plaintiff ProMOS Technologies, Inc.*

*Of Counsel*:

William H. Wright
HOGAN & HARTSON LLP
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
Telephone: (310) 785-4672
Facsimile: (31) 785-4601

Steven J. Routh
Sten A. Jensen
HOGAN & HARTSON LLP
555 Thirteenth Street, NW
Washington, DC 20004
Telephone: (202) 637-6472
Facsimile: (202) 637-5910

Dated: April 12, 2007
179643.1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 12th day of April, 2007, the attached **PLAINTIFF PROMOS TECHNOLOGIES, INC.'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS FROM DEFENDANT FREESCALE SEMICONDUCTOR, INC. (Nos. 1-117)** was served upon the below-named counsel of record at the address and in the manner indicated:

Mary B. Graham, Esquire                         <u>HAND DELIVERY</u>
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347

Jason W. Cook, Esquire                        <u>VIA FEDERAL EXPRESS</u>
Jones Day
2727 North Harwood Street
Dallas, TX 75201-1515

Kevin P. Ferguson, Esquire                   <u>VIA FEDERAL EXPRESS</u>
Jones Day
77 West Wacker
Chicago, IL 60601-1692

F. Drexel Feeling, Esquire                    <u>VIA FEDERAL EXPRESS</u>
Jones Day
North Point
901 Lakeside Avenue
Cleveland, OH 44114-1190

Lauren E. Maguire

177267.1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PROMOS TECHNOLOGIES, INC.,           )
                                     )
                Plaintiff,           )          C.A. No. 06-788-JJF
                                     )
        v.                           )
                                     )
FREESCALE SEMICONDUCTOR, INC.,       )
                                     )
                Defendant.           )

## NOTICE OF SERVICE

The undersigned hereby certifies that on the 12th day of April, 2007, **PLAINTIFF**

**PROMOS TECHNOLOGIES, INC.'S FIRST SET OF REQUESTS FOR PRODUCTION**

**OF DOCUMENTS AND THINGS FROM DEFENDANT FREESCALE**

**SEMICONDUCTOR, INC. (Nos. 1-117)** was served upon the following counsel of record at

the address and in the manner indicated:


Mary B. Graham, Esquire                          HAND DELIVERY
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347

Jason W. Cook, Esquire                           VIA FEDERAL EXPRESS
Jones Day
2727 North Harwood Street
Dallas, TX  75201-1515

Kevin P. Ferguson, Esquire                       VIA FEDERAL EXPRESS
Jones Day
77 West Wacker
Chicago, IL  60601-1692

F. Drexel Feeling, Esquire                       VIA FEDERAL EXPRESS
Jones Day
North Point
901 Lakeside Avenue
Cleveland, OH  44114-1190

ASHBY & GEDDES

/s/ *Lauren E. Maguire*

_____
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
Telephone: (302) 654-1888
Facsimile: (302) 654-2067
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Plaintiff*
*ProMOS Technologies, Inc.*

*Of Counsel*:

Steven J. Routh
Sten A. Jensen
HOGAN & HARTSON LLP
555 Thirteenth Street, NW
Washington, DC  20004
Telephone:  (202) 637-5600
Facsimile:  (202) 637-5910

William H. Wright
HOGAN & HARTSON LLP
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA  90067
Telephone:  (310) 785-4600

Dated:  April 12, 2007
177270.1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 12th day of April, 2007, the attached **NOTICE OF SERVICE**

was served upon the below-named counsel of record at the address and in the manner indicated:

Mary B. Graham, Esquire                                    <u>HAND DELIVERY</u>
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347

Jason W. Cook, Esquire                                    <u>VIA FEDERAL EXPRESS</u>
Jones Day
2727 North Harwood Street
Dallas, TX  75201-1515

Kevin P. Ferguson, Esquire                               <u>VIA FEDERAL EXPRESS</u>
Jones Day
77 West Wacker
Chicago, IL  60601-1692

F. Drexel Feeling, Esquire                               <u>VIA FEDERAL EXPRESS</u>
Jones Day
North Point
901 Lakeside Avenue
Cleveland, OH  44114-1190

/s/ *Lauren E. Maguire*
_____
Lauren E. Maguire

## Discovery Documents

### 1:06-cv-00788-JJF Promos Technologies Inc. v. Freescale Semiconductor Inc.

PATENT

### U.S. District Court

### District of Delaware

## Notice of Electronic Filing

The following transaction was entered by Maguire, Lauren on 4/12/2007 at 12:33 PM EDT and filed on 4/12/2007

| | |
|---|---|
| **Case Name:** | Promos Technologies Inc. v. Freescale Semiconductor Inc. |
| **Case Number:** | 1:06-cv-788 |
| **Filer:** | Promos Technologies Inc. |
| **Document Number:** | 13 |

**Docket Text:**
NOTICE OF SERVICE of First Set of Requests for Production of Documents and Things From Defendant Freescale Semiconductor, Inc. (Nos. 1-117) by Promos Technologies Inc..(Maguire, Lauren)

**1:06-cv-788 Notice has been electronically mailed to:**

Steven J. Balick    sbalick@ashby-geddes.com, dfioravanti@ashby-geddes.com, jday@ashby-geddes.com, lmaguire@ashby-geddes.com, mkipp@ashby-geddes.com, nlopez@ashby-geddes.com, rgamory@ashby-geddes.com, tlydon@ashby-geddes.com

John G. Day    jday@ashby-geddes.com, dfioravanti@ashby-geddes.com, dharker@ashby-geddes.com, lmaguire@ashby-geddes.com, mkipp@ashby-geddes.com, nlopez@ashby-geddes.com, rgamory@ashby-geddes.com, sbalick@ashby-geddes.com, tlydon@ashby-geddes.com

Mary B. Graham    dmyers@mnat.com, mbgefiling@mnat.com

**1:06-cv-788 Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=4/12/2007] [FileNumber=371463-0]
[acbbc4b7c0f3a0515c74f3c0fb52d6c79b9d44fb2c95ab00ddc61e2aaa9c018ef8dd
8650c9e18262136e92d84362e5a068e50e5dd2348c96a15d098a662514d2]]

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PROMOS TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-788 (JJF) |
| | ) | |
| FREESCALE SEMICONDUCTOR, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT FREESCALE'S RESPONSE TO PLAINTIFF PROMOS TECHNOLOGIES, INC.'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS FROM DEFENDANT FREESCALE SEMICONDUCTOR, INC. (NOS. 1-117)

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendant Freescale Semiconductor, Inc. ("Freescale") responds as follows to Plaintiff ProMOS Technologies, Inc.'s First Set Of Requests For Production Of Documents And Things From Defendant Freescale Semiconductor, Inc. (Nos. 1-117), served by ProMOS Technologies, Inc. ("ProMOS") on April 12, 2007.

## GENERAL OBJECTIONS

1.     Freescale objects to these document requests as premature, overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products, the identity of the asserted claims, and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with relevant information. Where appropriate, Freescale will supplement its responses within a reasonable time frame upon receiving sufficient information from ProMOS regarding its allegations to allow Freescale to

respond meaningfully thereto. In this regard, Freescale acknowledges that it just received ProMOS's interrogatory responses that purport to contain some of the missing information identified above, and Freescale is in the process of evaluating those responses.

2.    Freescale's Specific Objections to each document request are in addition to the General Objections set forth in this section. These General Objections form a part of the response to each and every document request and are set forth here to avoid the duplication and repetition of restating them for each response. The absence of a reference to a General Objection in each response to a particular document request does not constitute a waiver of any General Objection with respect to that document request. All responses are made subject to and without waiver of Freescale's General and Specific Objections. By making a Specific Objection to a particular document request, Freescale does not imply that that Specific Objection is not applicable in response to any other document request, nor that the General Objections are not applicable to that document request. A statement in these responses that responsive documents will be produced should not be taken to mean that any such documents actually exist, but only that, if they exist and can be located through a reasonable search of Freescale's records, they will be produced. Any documents to be produced will be produced for review at a mutually agreeable and convenient time and place.

3.    A partial answer to any document request which has been objected to in whole or in part is not a waiver of the objection. By asserting various objections, Freescale does not waive other objections that may become applicable.

4.    Freescale objects to these document requests to the extent they request information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, law, rule, or immunity. Should any response by Freescale

- 2 -

include such privileged or protected information, such disclosure is inadvertent and shall not constitute a waiver of any applicable privilege or immunity, of any other ground for objecting to discovery with respect to such response, or of Freescale's right to object during this litigation or otherwise to the use of such response.

5.      Freescale objects to these document requests to the extent they are inconsistent with, enlarge upon, or exceed the scope of discovery permitted by the Federal Rules of Civil Procedure, the Local Rules of the District of Delaware, or the parties' proposed Rule 16 Scheduling Order submitted to the Court on May 4, 2007.  Freescale also objects to these document requests to the extent they are contrary to or inconsistent with any Court order in this litigation.

6.      Freescale objects to these document requests to the extent they seek information not relevant to any issue in this case and to the extent they are not reasonably calculated to lead to the discovery of admissible evidence.

7.      Freescale objects to these document requests as overly broad and unduly burdensome to the extent they purport to require production of information, documents, or things not in the possession, custody, or control of Freescale.

8.      Freescale objects to these document requests to the extent they seek information obtainable from some other source (including, but not limited to, a public source) that is more convenient, less burdensome, or less expensive.

9.      Freescale objects to these document requests to the extent they seek information and documents obtained by Freescale from a third party pursuant to a nondisclosure and/or confidentiality agreement the terms of which prohibit Freescale from disclosing,

producing, revealing, and/or divulging such information and documents to any other party, including ProMOS.

       10.    Freescale objects to these document requests to the extent they prematurely seek information or opinions to be provided by expert witnesses.

       11.    Freescale's responses to these document requests are made without in any way waiving (a) the right to object to the use of any information, documents, or things provided herein as evidence in any subsequent proceeding in this action or any other action on the grounds of competency, relevancy, materiality, privilege, or other grounds of admissibility; and (b) the right to object on any ground to other discovery requests involving or relating to the subject matter of these document requests. Furthermore, Freescale is providing responses herein in an effort to expedite discovery in this action and not as an indication or admission by Freescale of the relevancy, materiality, or admissibility thereof, and Freescale hereby reserves all objections to Plaintiff's use of such responses.

       12.    Freescale objects to the definition of "Freescale" as set forth in paragraph 2 of the definitions set forth in ProMOS's First Set of Document Requests to the extent it purports to impose discovery obligations on persons or entities other than the parties to this lawsuit. Subject to and without waiving its objection to this definition, Freescale will respond to a request for production using any such defined term by diligently conducting its investigation and responding to discovery in light of those persons affiliated with Freescale during the relevant time period who are likely to have information relevant to the subject matter of this action, but without assuming any obligation to determine all of the information required under ProMOS's definition.

13.     Freescale objects to these document requests to the extent they purport to require Freescale to produce and/or identify "all" documents relating to a specific or general subject to the extent that these document requests are overly broad, unduly burdensome, purport to require Freescale to interview all of its employees and search all of its files worldwide, and seek information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence.  Freescale will make a reasonable inquiry of those employees whom, and a reasonable search of those files which, it reasonably believes may provide relevant, responsive, and non-duplicative information and documents.

14.     Freescale's responses hereto are based on Freescale's present knowledge, information, and belief.  As discovery and Freescale's investigation are ongoing, Freescale reserves the right to supplement these responses.

15.     Freescale repeats and incorporates herein the General Objections included in Defendant Freescale's Response To Plaintiff ProMOS Technologies, Inc.'s First Set Of Interrogatories To Defendant Freescale Semiconductor, Inc. (Nos. 1-14).

## REQUEST NO. 1:

All documents identified, requested to be identified, relied upon, reviewed, or consulted in responding to Plaintiff's First Set of Interrogatories to Defendant.

## RESPONSE:

In addition to its General Objections, Freescale objects to this document request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

**REQUEST NO. 2:**

All written policies, procedures and guidelines related to Freescale's computers, computer systems, electronic data and electronic media that hold, contain, save, or manage documents, including, but not limited to, (a) back up tape rotation schedules; (b) electronic data retention, preservation and destruction schedules; (c) employee use of company computers and data; (d) file naming conventions and standards; (e) diskette, CD, DVD, and other removable media labeling standards; and (e) e-mail storage (i.e., limitations on mailbox sizes and storage locations.)

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as vague, overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent it requests documents regarding "all written policies, procedures and guidelines" and "employee use of computers and data."

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

**REQUEST NO. 3:**

Documents sufficient to show your document retention and/or destruction policies and/or practices from 2000 to the present.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request to the extent it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request to the extent such documents relate to the documents at issue in this lawsuit.

**REQUEST NO. 4:**

Organizational charts for all of your Information Technology-related or Information Services-related departments or divisions.

**RESPONSE:**

   In addition to its General Objections, Freescale objects to this document request as vague, overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent it requires this information for "all of your Information Technology-related or Information Services-related departments or divisions" and is not directed to identifying relevant Freescale personnel and business operations.

   Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

**REQUEST NO. 5:**

Documents sufficient to show your past and present organizational and operational structure, including all divisions or subsidiaries, entities owned or controlled by Freescale, affiliates, predecessors or successors in interest, whether in the United States, or anywhere else in the world, and the identity of the officers and managers of each such entity.

**RESPONSE:**

   In addition to its General Objections, Freescale objects to this document request as vague, overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent it requires this information for all of Freescale "anywhere…in the world" and is not directed to identifying relevant Freescale personnel and business operations.

   Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

**REQUEST NO. 6:**

All documents that identify present employees, past employees, consultants and contract employees, whether full or part time, whose responsibilities or assignment include work relating to the conception, design, development, manufacture, analysis, testing, marketing, sales or repair of each Freescale Product, including but not limited to, organizational charts and telephone or email directories.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party. Freescale objects to this request to the extent it requests information protected by the attorney-client privilege and/or the attorney work product doctrine.

**REQUEST NO. 7:**

All documents that identify present employees, past employees, consultants, and contract employees, whether full or part time, whose responsibilities or assignment include work relating to the conception, design, development, manufacture, analysis, testing, marketing, sales or repair of each cache memory used with or in, incorporated in or relied on by a Freescale Product, including but not limited to, organizational charts and telephone or email directories.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party. Freescale objects to this request to the extent it requests information protected by the attorney-client privilege and/or the attorney work product doctrine. Freescale objects to this request to the extent it is duplicative of Request No. 6.

**REQUEST NO. 8:**

All documents that identify present employees, past employees, consultants, and contract employees, whether full or part time, whose responsibilities or assignment include work relating to the conception, design, development, manufacture, analysis, testing, marketing, sales or repair of any register(s) used in writing, reading, buffering or accessing data from or to each cache memory used with or in, incorporated in or relied on by a Freescale Product, including but not limited to, organizational charts and telephone or email directories.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation

of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party. Freescale objects to this request to the extent it requests information protected by the attorney-client privilege and/or the attorney work product doctrine. Freescale objects to this request to the extent it is duplicative of Request No. 6.

## REQUEST NO. 9:

All documents that identify present employees, past employees, consultants, and contract employees, whether full or part time, whose responsibilities or assignment include work relating to the conception, design, development, manufacture, analysis, testing, marketing, sales or repair of each cache controller used with or in, incorporated in or relied on by a Freescale Product, including but not limited to, organizational charts and telephone or email directories.

## RESPONSE:

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of

infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it

requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter

of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by

either party.  Freescale objects to this request to the extent it requests information protected by

the attorney-client privilege and/or the attorney work product doctrine.  Freescale objects to this

request to the extent it is duplicative of Request No. 6.

## REQUEST NO. 10:

All documents that identify present employees, past employees, consultants, and contract
employees, whether full or part time, whose responsibilities or assignment include work relating
to the conception, design, development, manufacture, analysis, testing, marketing, sales or repair
of each process for forming conductors that include a layer of tungsten overlying a layer of
titanium nitride used with or in, incorporated in or relied on by a Freescale Product, including but
not limited to, organizational charts and telephone or email directories.

## RESPONSE:

In addition to its General Objections, Freescale objects to this document request

as premature because ProMOS has not provided Freescale with sufficient information

concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation

of ProMOS's infringement contentions) to permit Freescale to respond with information

regarding relevant Freescale products.  Freescale objects to this request as overly broad, unduly

burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor

reasonably calculated to lead to the discovery of admissible evidence to the extent the term

"Freescale Product" is not properly limited in time with respect to any products accused of

infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it

requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter

of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by

either party.  Freescale objects to this request to the extent it requests information protected by

the attorney-client privilege and/or the attorney work product doctrine. Freescale objects to this request to the extent it is duplicative of Request No. 6.

## REQUEST NO. 11:

Documents sufficient to identify, describe, illustrate, or depict names and/or functions of subsidiaries, departments, or divisions that were involved in any manner in the conception, design, development, manufacture, analysis, testing, marketing, sales or repair of any Freescale Product.

## RESPONSE:

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003. Freescale objects to this request to the extent it requests information protected by the attorney-client privilege and/or the attorney work product doctrine.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

## REQUEST NO. 12:

Documents sufficient to identify, describe, illustrate, or depict names and/or functions of subsidiaries, departments, or divisions that were involved in any manner in the conception, design, development, manufacture, analysis, testing, marketing, sales or repair of each cache memory used with, incorporated in or relied on by any Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003. Freescale objects to this request to the extent it requests information protected by the attorney-client privilege and/or the attorney work product doctrine. Freescale objects to this request to the extent it is duplicative of Request No. 11.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

**REQUEST NO. 13:**

Documents sufficient to identify, describe, illustrate, or depict names and/or functions of subsidiaries, departments, or divisions that were involved in any manner in the conception, design, development, manufacture, analysis, testing, marketing, sales or repair of any register(s) used in writing, reading, buffering or accessing data from or to each cache memory used with or in, incorporated in or relied on by a Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information

- 13 -

regarding relevant Freescale products.  Freescale objects to this request as overly broad, unduly

burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor

reasonably calculated to lead to the discovery of admissible evidence to the extent the term

"Freescale Product" is not properly limited in time with respect to any products accused of

infringing the Fortin patent, which did not issue until December 30, 2003.  Freescale objects to

this request to the extent it requests information protected by the attorney-client privilege and/or

the attorney work product doctrine.  Freescale objects to this request to the extent it is duplicative

of Request No. 11.

Without waiving any and subject to all of the foregoing objections, Freescale will

produce non-privileged documents in its possession responsive to this request.

## REQUEST NO. 14:

Documents sufficient to identify, describe, illustrate, or depict names and/or functions of
subsidiaries, departments, or divisions that were involved in any manner in the conception,
design, development, manufacture, analysis, testing, marketing, sales or repair of each cache
controller used with or in, incorporated in or relied on by a Freescale Product.

## RESPONSE:

In addition to its General Objections, Freescale objects to this document request

as premature because ProMOS has not provided Freescale with sufficient information

concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation

of ProMOS's infringement contentions) to permit Freescale to respond with information

regarding relevant Freescale products.  Freescale objects to this request as overly broad, unduly

burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor

reasonably calculated to lead to the discovery of admissible evidence to the extent the term

"Freescale Product" is not properly limited in time with respect to any products accused of

infringing the Fortin patent, which did not issue until December 30, 2003.  Freescale objects to

- 14 -

this request to the extent it requests information protected by the attorney-client privilege and/or the attorney work product doctrine. Freescale objects to this request to the extent it is duplicative of Request No. 11.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

**REQUEST NO. 15:**

Documents sufficient to identify, describe, illustrate, or depict names and/or functions of subsidiaries, departments, or divisions that were involved in any manner in the conception, design, development, manufacture, analysis, testing, marketing, sales or repair of each process for forming conductors that include a layer of tungsten overlying a layer of titanium nitride used with or in, incorporated in or relied on by a Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003. Freescale objects to this request to the extent it requests information protected by the attorney-client privilege and/or the attorney work product doctrine. Freescale objects to this request to the extent it is duplicative of Request No. 11.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

**REQUEST NO. 16:**

All documents relating to third parties contracted, consulted, hired and/or retained that worked with Freescale or worked with another third party on Freescale's behalf on the conception, design, development, implementation, testing and manufacturing of each version of each model of Freescale Product, including but not limited to, contracts, contract proposals, Requests for Proposals (RFPs), solicitations, queries, investigations, and capability studies.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party. Freescale objects to this request to the extent it requests information protected by the attorney-client privilege and/or the attorney work product doctrine. Freescale objects to this request to the extent it requests documents not in Freescale's possession, custody, or control.

**REQUEST NO. 17:**

All documents relating to third parties contracted, consulted, hired and/or retained that worked with Freescale or worked with another third party on Freescale's behalf on the conception, design, development, implementation, testing and manufacturing of each version of each cache memory used with, incorporated in or relied on by any Freescale Product, including but not limited to, contracts, contract proposals, Requests for Proposals (RFPs), solicitations, queries, investigations, and capability studies.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products.  Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.  Freescale objects to this request to the extent it requests information protected by the attorney-client privilege and/or the attorney work product doctrine.  Freescale objects to this request to the extent it requests documents not in Freescale's possession, custody, or control. Freescale objects to this request to the extent it is duplicative of Request No. 16.

**REQUEST NO. 18:**

All documents relating to third parties contracted, consulted, hired and/or retained that worked with Freescale or worked with another third party on Freescale's behalf on the conception, design, development, implementation, testing and manufacturing of each version of each register(s) used in writing, reading, buffering or accessing data from or to each cache memory used with, incorporated in or relied on by a Freescale Product, including but not limited to, contracts, contract proposals, Requests for Proposals (RFPs), solicitations, queries, investigations, and capability studies.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information

concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party. Freescale objects to this request to the extent it requests information protected by the attorney-client privilege and/or the attorney work product doctrine. Freescale objects to this request to the extent it requests documents not in Freescale's possession, custody, or control. Freescale objects to this request to the extent it is duplicative of Request No. 16.

## REQUEST NO. 19:

All documents relating to third parties contracted, consulted, hired and/or retained that worked with Freescale or worked with another third party on Freescale's behalf on the conception, design, development, implementation, testing and manufacturing of each version of each cache controller used with, incorporated in or relied on by a Freescale Product, including but not limited to, contracts, contract proposals, Requests for Proposals (RFPs), solicitations, queries, investigations, and capability studies.

## RESPONSE:

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly

burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Products" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.  Freescale objects to this request to the extent it requests information protected by the attorney-client privilege and/or the attorney work product doctrine.  Freescale objects to this request to the extent it requests documents not in Freescale's possession, custody, or control. Freescale objects to this request to the extent it is duplicative of Request No. 16.

## REQUEST NO. 20:

All documents relating to third parties contracted, consulted, hired and/or retained that worked with Freescale or worked with another third party on Freescale's behalf on the conception, design, development, implementation, testing and manufacturing of each version of each process for forming conductors that include a layer of tungsten overlying a layer of titanium nitride used with or in, incorporated in or relied on by a Freescale Product, including but not limited to, contracts, contract proposals, Requests for Proposals (RFPs), solicitations, queries, investigations, and capability studies.

## RESPONSE:

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products.  Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of

infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it

requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter

of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by

either party.  Freescale objects to this request to the extent it requests information protected by

the attorney-client privilege and/or the attorney work product doctrine.  Freescale objects to this

request to the extent it requests documents not in Freescale's possession, custody, or control.

Freescale objects to this request to the extent it is duplicative of Request No. 16.

**REQUEST NO. 21:**

Your annual reports, prospectuses, proxy statements from Form 10-K and Form 10-Q reports for
the years 2000 to present.

**RESPONSE:**

In addition to its General objections, Freescale objects to this document request as

overly broad, unduly burdensome, and seeking information neither relevant to the subject matter

of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence.

Freescale objects to this request as unduly burdensome to the extent that the requested

information is publicly available and could be obtained by ProMOS just as easily as Freescale.

Without waiving any and subject to all of the foregoing objections, Freescale will

produce non-privileged documents in its possession responsive to this request.

**REQUEST NO. 22:**

All documents relating to design reviews and design review meetings, including but not limited
to, all notes, minutes, reports, action item lists and management summaries, relating to each
version of each model of Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request

as premature because ProMOS has not provided Freescale with sufficient information

concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.

**REQUEST NO. 23:**

All documents relating to design reviews and design review meetings, including but not limited to, all notes, minutes, reports, action item lists and management summaries, relating to each version of each cache memory used with, incorporated in or relied on by any Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter

of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.  Freescale objects to this request to the extent it is duplicative of Request No. 22.

**REQUEST NO. 24:**

All documents relating to design reviews and design review meetings, including but not limited to, all notes, minutes, reports, action item lists and management summaries, relating to each version of each register(s) used in writing, reading, buffering and accessing data from or to each cache memory used with, incorporated in or relied on by Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products.  Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.  Freescale objects to this request to the extent it is duplicative of Request No. 22.

**REQUEST NO. 25:**

All documents relating to design reviews and design review meetings, including but not limited to, all notes, minutes, reports, action item lists and management summaries, relating to each version of each cache controller used with, incorporated in or relied on by a Freescale Product.

**RESPONSE:**

        In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party. Freescale objects to this request to the extent it is duplicative of Request No. 22.

**REQUEST NO. 26:**

All documents relating to design reviews and design review meetings, including but not limited to, all notes, minutes, reports, action item lists and management summaries, relating to each version of each process for forming conductors that include a layer of tungsten overlying a layer of titanium nitride used with or in, incorporated in or relied on by a Freescale Product.

**RESPONSE:**

        In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor

reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.  Freescale objects to this request to the extent it is duplicative of Request No. 22.

## REQUEST NO. 27:

All documents relating to drawings, schematics, blueprints, manufacturing specifications, engineering specifications, design specifications, product test specifications, part specifications, assembly specifications and other documents relating to the design, development, or manufacture of any Freescale Product.

## RESPONSE:

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products.  Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.

Without waiving any and subject to all of the foregoing objections, Freescale will supplement its response within a reasonable time frame upon receiving sufficient information from ProMOS regarding its allegations to allow Freescale to respond with information regarding relevant Freescale products.

## REQUEST NO. 28:

All documents relating to drawings, schematics, blueprints, manufacturing specifications, engineering specifications, design specifications, product test specifications, part specifications, assembly specifications and other documents relating to the design, development, or manufacture of each cache memory used with, incorporated in or relied on by any Freescale Product.

## RESPONSE:

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party. Freescale objects to this request to the extent it is duplicative of Request No. 27.

Without waiving any and subject to all of the foregoing objections, Freescale will supplement its response within a reasonable time frame upon receiving sufficient information

from ProMOS regarding its allegations to allow Freescale to respond with information regarding relevant Freescale products.

**REQUEST NO. 29:**

All documents relating to drawings, schematics, blueprints, manufacturing specifications, engineering specifications, design specifications, product test specifications, part specifications, assembly specifications and other documents relating to the design, development, or manufacturing of each register(s) used in writing, reading, buffering or accessing data from or to each cache memory used with, incorporated in or relied on by a Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party. Freescale objects to this request to the extent it is duplicative of Request No. 27.

Without waiving any and subject to all of the foregoing objections, Freescale will supplement its response within a reasonable time frame upon receiving sufficient information from ProMOS regarding its allegations to allow Freescale to respond with information regarding relevant Freescale products.

**REQUEST NO. 30:**

All documents relating to drawings, schematics, blueprints, manufacturing specifications, engineering specifications, design specifications, product test specifications, part specifications, assembly specifications and other documents relating to the design, development, or manufacture of each cache controller used with, incorporated in or relied on by a Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party. Freescale objects to this request to the extent it is duplicative of Request No. 27.

Without waiving any and subject to all of the foregoing objections, Freescale will supplement its response within a reasonable time frame upon receiving sufficient information from ProMOS regarding its allegations to allow Freescale to respond with information regarding relevant Freescale products.

**REQUEST NO. 31:**

All documents relating to drawings, schematics, blueprints, manufacturing specifications, engineering specifications, design specifications, product test specifications, part specifications, assembly specifications and other documents relating to the design, development, or manufacture

of each process for forming conductors that include a layer of tungsten overlying a layer of titanium nitride used with or in, incorporated in or relied on by a Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party. Freescale objects to this request to the extent it is duplicative of Request No. 27.

Without waiving any and subject to all of the foregoing objections, Freescale will supplement its response within a reasonable time frame upon receiving sufficient information from ProMOS regarding its allegations to allow Freescale to respond with information regarding relevant Freescale products.

**REQUEST NO. 32:**

All versions of operation manuals, repair manuals, or user manuals for any Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information

- 28 -

concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.

## REQUEST NO. 33:

All manufacturing and/or production drawings for any Freescale Product, including but not limited to hardware drawings, engineering drawings, assembly drawings, and blueprints.

## RESPONSE:

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter

of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.

Without waiving any and subject to all of the foregoing objections, Freescale will supplement its response within a reasonable time frame upon receiving sufficient information from ProMOS regarding its allegations to allow Freescale to respond with information regarding relevant Freescale products.

**REQUEST NO. 34:**

All manufacturing and/or production drawings for each cache memory used with, incorporated in or relied on by any Freescale Product, including but not limited to hardware drawings, engineering drawings, assembly drawings, and blueprints.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party. Freescale objects to this request to the extent it is duplicative of Request No. 33.

Without waiving any and subject to all of the foregoing objections, Freescale will supplement its response within a reasonable time frame upon receiving sufficient information

from ProMOS regarding its allegations to allow Freescale to respond with information regarding

relevant Freescale products.

## REQUEST NO. 35:

All manufacturing and/or production drawings for each register(s) used in writing, reading, buffering or accessing data from or to each cache memory used with, incorporated in or relied on by a Freescale Product, including but not limited to hardware drawings, engineering drawings, assembly drawings, and blueprints.

## RESPONSE:

In addition to its General Objections, Freescale objects to this document request

as premature because ProMOS has not provided Freescale with sufficient information

concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation

of ProMOS's infringement contentions) to permit Freescale to respond with information

regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly

burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor

reasonably calculated to lead to the discovery of admissible evidence to the extent the term

"Freescale Product" is not properly limited in time with respect to any products accused of

infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it

requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter

of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by

either party. Freescale objects to this request to the extent it is duplicative of Request No. 33.

Without waiving any and subject to all of the foregoing objections, Freescale will

supplement its response within a reasonable time frame upon receiving sufficient information

from ProMOS regarding its allegations to allow Freescale to respond with information regarding

relevant Freescale products.

## REQUEST NO. 36:

All manufacturing and/or production drawings for each cache controller used with, incorporated in or relied on by a Freescale Product, including but not limited to hardware drawings, engineering drawings, assembly drawings, and blueprints.

## RESPONSE:

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party. Freescale objects to this request to the extent it is duplicative of Request No. 33.

Without waiving any and subject to all of the foregoing objections, Freescale will supplement its response within a reasonable time frame upon receiving sufficient information from ProMOS regarding its allegations to allow Freescale to respond with information regarding relevant Freescale products.

## REQUEST NO. 37:

All manufacturing and/or production drawings for each process for forming conductors that include a layer of tungsten overlying a layer of titanium nitride used with or in, incorporated in or relied on by a Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party. Freescale objects to this request to the extent it is duplicative of Request No. 33.

Without waiving any and subject to all of the foregoing objections, Freescale will supplement its response within a reasonable time frame upon receiving sufficient information from ProMOS regarding its allegations to allow Freescale to respond with information regarding relevant Freescale products.

**REQUEST NO. 38:**

All documents relating to the conception, engineering, design, research, development, manufacture, testing, use, repair and/or operation of each version of each model of Freescale Product, including but not limited to specifications, schematics, block diagrams, data sheets, layouts, databases, depictions, photographs, simulations, test results, manuals, journals, notes, notebooks, communications, and correspondence.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information

concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party. Freescale objects to this request as duplicative of previous document requests.

Without waiving any and subject to all of the foregoing objections, Freescale will supplement its response within a reasonable time frame upon receiving sufficient information from ProMOS regarding its allegations to allow Freescale to respond with information regarding relevant Freescale products.

### REQUEST NO. 39:

All documents relating to the conception, engineering, design, research, development, manufacture, testing, use, repair and/or operation of each version of each cache memory used with, incorporated in relied on by any Freescale Product, including but not limited to specifications, schematics, block diagrams, data sheets, layouts, databases, depictions, photographs, simulations, test results, manuals, journals, notes, notebooks, communications, and correspondence.

### RESPONSE:

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information

regarding relevant Freescale products.  Freescale objects to this request as overly broad, unduly

burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor

reasonably calculated to lead to the discovery of admissible evidence to the extent the term

"Freescale Product" is not properly limited in time with respect to any products accused of

infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it

requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter

of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by

either party.  Freescale objects to this request to the extent it is duplicative of Request No. 38.

Without waiving any and subject to all of the foregoing objections, Freescale will

supplement its response within a reasonable time frame upon receiving sufficient information

from ProMOS regarding its allegations to allow Freescale to respond with information regarding

relevant Freescale products.

## REQUEST NO. 40:

All documents relating to the conception, engineering, design, research, development, manufacture, testing, use, repair and/or operation of each version of each register(s) used in writing, reading, buffering or accessing data from or to each cache memory used with, incorporated in or relied on by a Freescale Product, including but not limited to specifications, schematics, block diagrams, data sheets, layouts, data bases, depictions, photographs, simulations, test results, manuals, journals, notes, notebooks, communications, and correspondence.

## RESPONSE:

In addition to its General Objections, Freescale objects to this document request

as premature because ProMOS has not provided Freescale with sufficient information

concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation

of ProMOS's infringement contentions) to permit Freescale to respond with information

regarding relevant Freescale products.  Freescale objects to this request as overly broad, unduly

burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor

reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party. Freescale objects to this request to the extent it is duplicative of Request No. 38.

Without waiving any and subject to all of the foregoing objections, Freescale will supplement its response within a reasonable time frame upon receiving sufficient information from ProMOS regarding its allegations to allow Freescale to respond with information regarding relevant Freescale products.

## REQUEST NO. 41:

All documents relating to the conception, engineering, design, research, development, manufacture, testing, use, repair and/or operation of each version of each cache controller used with, incorporated in or relied on by a Freescale Product, including but not limited to specifications, schematics, block diagrams, data sheets, layouts, databases, depictions, photographs, simulations, test results, manuals, journals, notes, notebooks, communications, and correspondence.

## RESPONSE:

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of

infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it

requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter

of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by

either party.  Freescale objects to this request to the extent it is duplicative of Request No. 38.

Without waiving any and subject to all of the foregoing objections, Freescale will

supplement its response within a reasonable time frame upon receiving sufficient information

from ProMOS regarding its allegations to allow Freescale to respond with information regarding

relevant Freescale products.

## REQUEST NO. 42:

All documents relating to the conception, engineering, design, research, development, manufacture, testing, use, repair and/or operation of each process for forming conductors that include a layer of tungsten overlying a layer of titanium nitride used with or in, incorporated in or relied on by a Freescale Product, including but not limited to specifications, schematics, block diagrams, data sheets, layouts, databases, depictions, photographs, simulations, test results, manuals, journals, notes, notebooks, communications, and correspondence.

## RESPONSE:

In addition to its General Objections, Freescale objects to this document request

as premature because ProMOS has not provided Freescale with sufficient information

concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation

of ProMOS's infringement contentions) to permit Freescale to respond with information

regarding relevant Freescale products.  Freescale objects to this request as overly broad, unduly

burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor

reasonably calculated to lead to the discovery of admissible evidence to the extent the term

"Freescale Product" is not properly limited in time with respect to any products accused of

infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it

requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter

of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.  Freescale objects to this request to the extent it is duplicative of Request No. 38.

Without waiving any and subject to all of the foregoing objections, Freescale will supplement its response within a reasonable time frame upon receiving sufficient information from ProMOS regarding its allegations to allow Freescale to respond with information regarding relevant Freescale products.

**REQUEST NO. 43:**

For each Freescale Product, documents sufficient to show the place and process of manufacture, models manufactured, units manufactured, and destination of units manufactured.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products.  Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

**REQUEST NO. 44:**

To the extent not produced in response to any other request, all reference designs and schematics relating to each version of each model of Freescale Product.

- 38 -

**RESPONSE:**

Freescale incorporates its objections to the extent this request repeats and overlaps with any information or documents responsive "to any other request." In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.

Without waiving any and subject to all of the foregoing objections, Freescale will supplement its response within a reasonable time frame upon receiving sufficient information from ProMOS regarding its allegations to allow Freescale to respond with information regarding relevant Freescale products.

**REQUEST NO. 45:**

All pictures or photographs of Freescale Products, including but not limited to any die or portion of any die.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information

concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products.  Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Products" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.  Freescale objects to this response the extent it is duplicative of Request Nos. 38-42.

**REQUEST NO. 46:**

Circuit diagrams for each version of each model of Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products.  Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

**REQUEST NO. 47:**

Circuit diagrams for each version of each cache memory used with, incorporated in or relied on by any Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003. Freescale objects to this request to the extent it is duplicative of Request No. 46.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

**REQUEST NO. 48:**

Circuit diagrams for each version of each register(s) used in writing, reading, buffering or accessing data from or to each cache memory used with, incorporated in or relied on by a Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information

regarding relevant Freescale products.  Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003.  Freescale objects to this request to the extent it is duplicative of Request No. 46.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

**REQUEST NO. 49:**

Circuit diagrams for each version of each cache controller used with, incorporated in or relied on by a Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products.  Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003.  Freescale objects to this request to the extent it is duplicative of Request No. 46.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

**REQUEST NO. 50:**

Process flows and process recipes for each version of each model of Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

**REQUEST NO. 51:**

Process flows and process recipes for each version of each process for forming conductors that include a layer of tungsten overlying a layer of titanium nitride used with or in, incorporated in or relied on by a Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor

reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003. Freescale objects to this request to the extent it is duplicative of Request No. 50.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

## REQUEST NO. 52:

All documents relating to source code, object code, pseudo code, flow charts or design specifications of the circuit diagrams, Verilog code and/or VHDL code, and reticle layout code for each version of each model of Freescale Product.

## RESPONSE:

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.

**REQUEST NO. 53:**

All documents relating to source code, object code, pseudo code, flow charts or design specifications of the circuit diagrams, Verilog code and/or VHDL code, and reticle layout code for each version of each cache memory used with, incorporated in or relied on by any Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party. Freescale objects to this request to the extent it is duplicative of Request No. 52.

**REQUEST NO. 54:**

All documents relating to source code, object code, pseudo code, flow charts or design specifications of the circuit diagrams, Verilog code and/or VHDL code, and reticle layout code for each version of each register(s) used in writing, reading, buffering or accessing data from or to each cache memory used with, incorporated in or relied on by a Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation

of ProMOS's infringement contentions) to permit Freescale to respond with information

regarding relevant Freescale products.  Freescale objects to this request as overly broad, unduly

burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor

reasonably calculated to lead to the discovery of admissible evidence to the extent the term

"Freescale Product" is not properly limited in time with respect to any products accused of

infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it

requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter

of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by

either party.  Freescale objects to this request to the extent it is duplicative of Request No. 52.

## REQUEST NO. 55:

All documents relating to source code, object code pseudo code, flow charts or design
specifications of the circuit diagrams, Verilog code and/or VHDL code, and reticle layout  code
for each version of each cache controller used with, incorporated in or relied on by a Freescale
Product.

## RESPONSE:

In addition to its General Objections, Freescale objects to this document request

as premature because ProMOS has not provided Freescale with sufficient information

concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation

of ProMOS's infringement contentions) to permit Freescale to respond with information

regarding relevant Freescale products.  Freescale objects to this request as overly broad, unduly

burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor

reasonably calculated to lead to the discovery of admissible evidence to the extent the term

"Freescale Product" is not properly limited in time with respect to any products accused of

infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it

requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter

of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party. Freescale objects to this request to the extent it is duplicative of Request No. 52.

**REQUEST NO. 56:**

Documents sufficient to identify the date of all revisions to circuit diagrams, source code, Verilog code and/or VHDL code, and reticle layout code for each version of each model of Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003.

**REQUEST NO. 57:**

All documents relating to the operation of each version of each model of Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor

reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.

Without waiving any and subject to all of the foregoing objections, Freescale will supplement its response within a reasonable time frame upon receiving sufficient information from ProMOS regarding its allegations to allow Freescale to respond with information regarding relevant Freescale products.

## REQUEST NO. 58:

All documents relating to the operation of each version of each cache memory used with, incorporated in or relied on by any Freescale Product.

## RESPONSE:

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter

of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party. Freescale objects to this request to the extent it is duplicative of Request No. 57.

Without waiving any and subject to all of the foregoing objections, Freescale will supplement its response within a reasonable time frame upon receiving sufficient information from ProMOS regarding its allegations to allow Freescale to respond with information regarding relevant Freescale products.

**REQUEST NO. 59:**

All documents relating to the operation of each version of each register(s) used in writing, reading, buffering or accessing data from or to each cache memory used with, incorporated in or relied on by a Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party. Freescale objects to this request to the extent it is duplicative of Request No. 57.

Without waiving any and subject to all of the foregoing objections, Freescale will supplement its response within a reasonable time frame upon receiving sufficient information

from ProMOS regarding its allegations to allow Freescale to respond with information regarding relevant Freescale products.

**REQUEST NO. 60:**

All documents relating to the operation of each version of each cache controller used with, incorporated in or relied on by a Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party. Freescale objects to this request to the extent it is duplicative of Request No. 57.

Without waiving any and subject to all of the foregoing objections, Freescale will supplement its response within a reasonable time frame upon receiving sufficient information from ProMOS regarding its allegations to allow Freescale to respond with information regarding relevant Freescale products.

**REQUEST NO. 61:**

All engineering change orders or notices for each version of each model of Freescale Products.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Products" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.

**REQUEST NO. 62:**

Documents sufficient to show the device and system architecture of each version of each model of Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term

"Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

**REQUEST NO. 63:**

All documents relating to comparative testing of each version of each model of Freescale Products.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Products" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.

**REQUEST NO. 64:**

All prototypes and models of Freescale Products, from initial prototype to commercial and/or production models made from 2000 to the present.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Products" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.

**REQUEST NO. 65:**

Complete copies of all licenses or agreements to which you are a party, including but not limited to cross-licenses, inter-company agreements, settlements, covenants not to enforce or releases that relate in any way to integrated circuit manufacturing, microprocessor, microcontroller, DRAM, SDRAM or memory technologies.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Freescale objects to this document request to the extent it requests "[a]ll licenses or agreements" and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.

Without waiving any and subject to all of the foregoing objections, Freescale responds that most, if not all, of its license agreements contain confidentiality provisions that require Freescale to obtain the consent of the other party prior to disclosing the contents of the agreement. Freescale is in the process of contacting these other parties and will produce relevant, responsive agreements after it receives consent to do so.

## REQUEST NO. 66:

All documents that refer to, discuss, evidence, mention or constitute any contracts or license agreements, including drafts, in which Freescale has licensed, or licenses, or considering licensing products, technology or patents from or to third parties relating to microprocessor, microcontroller, processor or memory technologies.

## RESPONSE:

In addition to its General Objections, Freescale objects to this document request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Freescale objects to this document request to the extent it requests "[a]ll documents" relating to all Freescale licenses and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.

Without waiving any and subject to all of the foregoing objections, Freescale responds that most, if not all, of its license agreements contain confidentiality provisions that require Freescale to obtain the consent of the other party prior to disclosing the contents of the agreement. Freescale is in the process of contacting these other parties and will produce relevant, responsive agreements after it receives consent to do so.

## REQUEST NO. 67:

All documents relating to your policies on licensing or cross-licensing patents, know-how or technology.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent it requests "[a]ll documents" relating to licensing of "know-how or technology" and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party. Freescale objects to the undefined terms "policies" and "know-how or technology" as vague and ambiguous.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

**REQUEST NO. 68:**

Documents sufficient to identify any third parties that manufacture any Freescale Products.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Products" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003. Freescale objects to

this document request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine.

Without waiving any and subject to all of the foregoing objections, Freescale responds that it is not presently aware of any non-privileged, relevant, and responsive documents, but if Freescale becomes aware of any such documents it will produce them.

**REQUEST NO. 69:**

All articles, speeches, presentations or interviews, both internal and external, that have been written and/or given by your employees, officers, directors or other of your representatives relating to Freescale Products.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Products" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.

**REQUEST NO. 70:**

All press releases from 2000 to the present relating to Freescale Products.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Products" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.

**REQUEST NO. 71:**

All documents relating to ProMOS or the patents-in-suit, including but not limited to documents that relate to your first awareness of any of the patents-in-suit and your earliest notice of potential infringement of any of the patents-in-suit.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

**REQUEST NO. 72:**

All documents relating to communications exchanged between you and any third party relating to the patents-in-suit, this lawsuit and/or ProMOS.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent it requests "[a[ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

**REQUEST NO. 73:**

Each Freescale meeting agenda, corporate minutes or minutes of meetings relating to the patents-in-suit, this lawsuit and/or ProMOS products.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent it requests documents

from "each" meeting relating to ProMOS and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.

Without waiving any and subject to all of the foregoing objections, Freescale responds that it is not presently aware of any non-privileged, relevant, and responsive documents, but if Freescale becomes aware of any such documents it will produce them.

**REQUEST NO. 74:**

All documents relating to any effort by Freescale or anyone else on its behalf to design, redesign, commercialize or modify any Freescale Product in view of the patents-in-suit.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic on the grounds that it purports to require Freescale to interview all of its employees and search all of its files worldwide. Freescale objects to this request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine.

**REQUEST NO. 75:**

All documents relating to any attempt by Freescale or anyone on its behalf to design around and/or avoid infringement of the patents-in-suit by any Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature under the parties' proposed Rule 16 Scheduling Order, because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products, the identity of the asserted claims, and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products, and because the Court has not yet construed any of the claims of any of the Patents-in-Suit. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic on the grounds that it purports to require Freescale to interview all of its employees and search all of its files worldwide. Freescale objects to this request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine.

**REQUEST NO. 76:**

All documents related or referring to any ProMOS patent.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent it requests "[a]ll

documents" relating to "any ProMOS patent" and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.

   Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession related to the Patents-in-Suit.

**REQUEST NO. 77:**

All documents relating to your evaluation, analysis, or consideration of the patents-in-suit, including but not limited to any reverse engineering or testing performed on any Freescale Product.

**RESPONSE:**

   In addition to its General Objections, Freescale objects to this document request as premature under the parties' proposed Rule 16 Scheduling Order, because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products, the identity of the asserted claims, and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products, and because the Court has not yet construed any of the claims of any of the Patents-in-Suit.  Freescale objects to this request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine.

**REQUEST NO. 78:**

All documents relating to your consideration of whether or not to obtain a license from ProMOS for the patents-in-suit.

**RESPONSE:**

   In addition to its General Objections, Freescale objects to this document request as premature under the parties' proposed Rule 16 Scheduling Order, because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the

accused Freescale products, the identity of the asserted claims, and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products, and because the Court has not yet construed any of the claims of any of the Patents-in-Suit.  Freescale objects to this request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine.

**REQUEST NO. 79:**

All documents found or identified during any enforceability, prior art or invalidity searches, or any other studies relating to the patents-in-suit, including any copies of patents, publications, or other prior art identified during such searches or studies.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

**REQUEST NO. 80:**

All documents that relate, support, or contradict Freescale's assertion that the patents-in-suit are invalid for any reason, including but not limited to anticipation or obviousness.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine.  Freescale object to this request as overly broad and unduly burdensome to the extent it requests "[a]ll documents" relating to the requested topic on the grounds that it purports to require Freescale to interview all of its employees and search all of its files worldwide.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

**REQUEST NO. 81:**

All documents that Freescale contends constitute prior art to the patents-in suit.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as overly broad and unduly burdensome to the extent it requests "[a]ll documents" relating to the requested topic on the grounds that it purports to require Freescale to interview all of its employees and search all of its files worldwide.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

**REQUEST NO. 82:**

All documents that relate, support, or contradict Freescale's assertion that the patents-in-suit are unenforceable.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Freescale objects to this document request as overly broad and unduly burdensome to the extent it requests "[a]ll documents" relating to the requested topic on the grounds that it purports to require Freescale to interview all of its employees and search all of its files worldwide. Freescale objects to this request to the extent it seeks documents outside of the possession, custody, or control of Freescale.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

**REQUEST NO. 83:**

All opinion letters, memoranda, or other documents relating to your contentions on validity/invalidity, infringement/non-infringement, or enforceability/unenforceability of the patents-in-suit.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature under the parties' proposed Rule 16 Scheduling Order, because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products, the identity of the asserted claims, and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products, and because the Court has not yet construed any of the claims of any of the Patents-in-Suit. Freescale objects to this request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine.

**REQUEST NO. 84:**

All documents supporting, refuting or relating in any way to the affirmative defenses or counterclaims set forth in your Answer to the Complaint.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Freescale objects to this document request as overly broad and unduly burdensome to the extent it requests "[a]ll documents" relating to the requested topic on the grounds that it purports to require Freescale to interview all of its employees and search all of its files worldwide.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

**REQUEST NO. 85:**

All documents relating to any contention by you that your products do not infringe the patents-in-suit, including but not limited to documents relating to the interpretation, scope, and meaning of the claims in any of the patents-in-suit.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Freescale objects to this document request as overly broad and unduly burdensome to the extent it requests "[a]ll documents" relating to the requested topic on the grounds that it purports to require Freescale to interview all of its employees and search all of its files worldwide.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

**REQUEST NO. 86:**

All opinions of counsel obtained with respect to infringement, validity, or enforceability of the patents-in-suit upon which you intend to rely at trial to defend against claims of willful infringement, inducement to infringe, or contributory infringement.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine.

**REQUEST NO. 87:**

All communications or opinions of officers, directors and/or employees of yours with respect to infringement, validity, or enforceability of the patents-in-suit or regarding any licensing negotiations with ProMOS.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

**REQUEST NO. 88:**

Documents sufficient to show by month or calendar quarter for each year since 2000 the number of each version of each model of Freescale Product manufactured, used, sold or distributed in the United States.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited to products made, used, offered for sale, or sold within the United States, or imported into the United States, and, with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, is not properly limited in time.

**REQUEST NO. 89:**

Documents sufficient to show by month or calendar quarter for each year since 2000 the volume of sales in dollars from the sale or distribution of each version of each model of Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited to products made, used, offered for sale, or sold within the United States, or imported into the United States, and, with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, is not properly limited in time.

Freescale will supplement its response within a reasonable time frame upon receiving sufficient information from ProMOS regarding its allegations to allow Freescale to respond with the requested information regarding relevant Freescale products.

**REQUEST NO. 90:**

All projections, forecasts, business plans, strategic plans, fiscal plans, marketing plans or sales plans relating to the sale of Freescale Products from 2000 to the present, including documents containing projections through calendar year 2012.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly

burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited to products made, used, offered for sale, or sold within the United States, or imported into the United States, and, with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, is not properly limited in time, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.

**REQUEST NO. 91:**

All documents relating to the means by which sales or sales information relating to each version of each model of Freescale Product is maintained and tracked by or on behalf of Freescale.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited to products made, used, offered for sale, or sold within the United States, or imported into the United States, and, with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, is not properly limited in time, and to the extent it requests "[a]ll documents" relating to the requested

topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.

**REQUEST NO. 92:**

All versions of all part number decoders or legends for each version of each model of Freescale Product.

**RESPONSE:**

       In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products.  Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003.

**REQUEST NO. 93:**

Current and historical price lists for each version of each model of Freescale Product.

**RESPONSE:**

       In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products.  Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor

reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited to products made, used, offered for sale, or sold within the United States, or imported into the United States, and, with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, is not properly limited in time.

## REQUEST NO. 94:

All documents relating to returns of, or complaints, dissatisfaction, negative comments, unfavorable opinions or suggestions for improvement regarding each version of each model of Freescale Products.

## RESPONSE:

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Products" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.

## REQUEST NO. 95:

All documents relating to favorable, positive, commendatory, or complimentary feedback, comments or opinions regarding each version of each model of Freescale Products.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Products" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.

**REQUEST NO. 96:**

All documents relating to favorable, positive, commendatory, or complimentary feedback, comments or opinions regarding any ProMOS product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as overly broad and unduly burdensome to the extent it seeks documents outside of the possession, custody, or control of Freescale and to the extent that the requested information is publicly available and could be obtained by ProMOS just as easily as Freescale. Freescale objects to this  request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent  that it seeks "all documents" relating to "any ProMOS

product" and to the extent it not limited to the subject matter of the claims or defenses raised in the lawsuit by either party.

Without waiving any and subject to all of the foregoing objections, Freescale responds that it is not presently aware of any non-privileged, relevant, and responsive documents, but if Freescale becomes aware of any such documents it will produce them.

**REQUEST NO. 97:**

All documents relating to sales, distribution or importation agreements entered into between Freescale and any third party for each version of each model of Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003.

**REQUEST NO. 98:**

Documents sufficient to show each of your distributors, resellers and customers of each version of each model of Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation

of ProMOS's infringement contentions) to permit Freescale to respond with information

regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly

burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor

reasonably calculated to lead to the discovery of admissible evidence to the extent the term

"Freescale Product" is not properly limited in time with respect to any products accused of

infringing the Fortin patent, which did not issue until December 30, 2003.

**REQUEST NO. 99:**

All documents relating to purchase orders and/or specifications received from customers or
potential customers for each version of each model of Freescale Product, including all drawings
and information received therewith.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request

as premature because ProMOS has not provided Freescale with sufficient information

concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation

of ProMOS's infringement contentions) to permit Freescale to respond with information

regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly

burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor

reasonably calculated to lead to the discovery of admissible evidence to the extent the term

"Freescale Product" is not properly limited to products made, used, offered for sale, or sold

within the United States, or imported into the United States, and, with respect to any products

accused of infringing the Fortin patent, which did not issue until December 30, 2003, is not

properly limited in time.

**REQUEST NO. 100:**

All documents relating to market shares for Freescale and its competitors for each of the
Freescale Products.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Products" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party. Freescale objects to this request as overly broad and unduly burdensome to the extent it seeks documents outside of the possession, custody, or control of Freescale and to the extent that the requested information is publicly available and could be obtained by ProMOS just as easily as Freescale.

Without waiving any and subject to all of the foregoing objections, Freescale will produce any non-privileged documents in its possession responsive to this request.

**REQUEST NO. 101:**

Summary documents categorized by year and by product type and name regarding the following: (1) Freescale's total unit and dollar volumes for Freescale Products manufactured, sold, or offered for sale by you from 2000 to the present, including projections through calendar year 2012; and (2) revenues, costs (fixed and variable), gross profit, and net profit for all such products manufactured, sold or offered for sale by you from 2000 to the present, including projections through calendar year 2012.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited to products made, used, offered for sale, or sold within the United States, or imported into the United States, and, with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, is not properly limited in time.

**REQUEST NO. 102:**

Summary documents categorized by year and by product type and name regarding gross expenses, including but not limited to direct labor costs, direct manufacturing costs, selling costs, variable overhead costs, incurred in the manufacture, distribution, or sale of Freescale Products from 2000 to the present, including projections through calendar year 2012.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term

"Freescale Product" is not properly limited to products made, used, offered for sale, or sold within the United States, or imported into the United States, and, with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, is not properly limited in time.

## REQUEST NO. 103:

Documents sufficient to show the date of the first sale of each Freescale Product.

## RESPONSE:

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited to products made, used, offered for sale, or sold within the United States, or imported into the United States, and, with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, is not properly limited in time.

## REQUEST NO. 104:

Summary documents identifying the distributors and retailers to whom you have sold each Freescale Product from 2000 through the present, including the name, address, products(s) sold by model number, number of units sold, date of sale, date of shipment, and sales price.

## RESPONSE:

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information

concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products.  Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited to products made, used, offered for sale, or sold within the United States, or imported into the United States, and, with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, is not properly limited in time.

**REQUEST NO. 105:**

Financial statements, including profit and loss statements, income statements, balance sheets, statements of cash flow, statements of retained earnings, and notes thereto for Freescale and any of its affiliates, divisions, subsidiaries, or parent companies.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the subject matter of the claims or defenses raised in the lawsuit by either party.

**REQUEST NO. 106:**

All documents relating to market, industry or consumer studies, surveys, or analyses of any Freescale Product and/or any competitor's product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as overly broad and unduly burdensome to the extent it seeks documents outside of the

possession, custody, or control of Freescale.  Freescale objects to this request as overly broad,

unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit

nor reasonably calculated to lead to the discovery of admissible evidence to the extent it is not

limited to the subject matter of the claims or defenses raised in the lawsuit by either party.

Freescale objects to this request as unduly burdensome to the extent that the requested

information is publicly available and could be obtained by ProMOS just as easily as Freescale.

Without waiving any and subject to all of the foregoing objections, Freescale will

produce non-privileged documents in its possession responsive to this request.

## REQUEST NO. 107:

All drafts, proposals, and final copies of advertising, sales, or promotional literature, including
but not limited to television and print media advertising, brochures and trade show promotional
material, catalogues, price lists, sell sheets, product descriptions, sales literature, drawings,
videotapes, audio tapes, electronic media, or photographs for advertising, point-of-sale
commercials, or other promotional material for Freescale Products.

## RESPONSE:

In addition to its General Objections, Freescale objects to this document request

as premature because ProMOS has not provided Freescale with sufficient information

concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation

of ProMOS's infringement contentions) to permit Freescale to respond with information

regarding relevant Freescale products.  Freescale objects to this request as overly broad, unduly

burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor

reasonably calculated to lead to the discovery of admissible evidence to the extent the term

"Freescale Products" is not properly limited in time with respect to any products accused of

infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it

requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter

of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.

**REQUEST NO. 108:**

All memoranda, correspondence, bulletins, newsletters, or other documents that currently or since 2000 have been distributed to, made available to, received from, or drafted by your present or former employees engaged in marketing or sales functions relating to Freescale Products.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Products" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.

**REQUEST NO. 109:**

All documents prepared by, provided by, sent to, or received from your advertising agencies or public relations firms relating to any Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information

concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.

## REQUEST NO. 110:

All documents that you may introduce as exhibits at the trial of this matter.

## RESPONSE:

In addition to its General Objections, Freescale objects to this document request as premature. Freescale objects to this request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request in accordance with the Federal Rules of Civil Procedure and the Court's orders.

## REQUEST NO. 111:

All documents identifying by name, company, address and title, all third parties hired by you and your counsel to investigate the above-captioned litigation, ProMOS, the patents-in-suit, or any ProMOS products.

**RESPONSE:**

        In addition to its General Objections, Freescale objects to this document request as premature. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the subject matter of the claims or defenses raised in the lawsuit by either party. Freescale objects to this request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine.

        Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request in accordance with the Federal Rules of Civil Procedure and the Court's orders.

**REQUEST NO. 112:**

Ten samples of each Freescale Product.

**RESPONSE:**

        In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003.

**REQUEST NO. 113:**

Any and all witness statements taken in connection with this litigation.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Freescale objects to this request as vague and ambiguous to the extent it requests all "witness statements." As Freescale interprets that term, Freescale responds that it is not presently aware of any non-privileged, relevant, and responsive documents, but if Freescale becomes aware of any such documents it will produce them.

**REQUEST NO. 114:**

All documents provided to any person(s) that you expect to call as an expert witness at trial.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the subject matter of the claims or defenses raised in the lawsuit by either party.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request in accordance with the Federal Rules of Civil Procedure and the Court's orders.

**REQUEST NO. 115:**

All documents relied upon by any person(s) that you expect to a call as an expert witness at trial in forming the opinion(s) as to which the person(s) will or may testify.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Freescale objects to this document request as premature.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request in accordance with the Federal Rules of Civil Procedure and the Court's orders.

**REQUEST NO. 116:**

All documents relating to each person you employ, have employed, or have retained as an expert, including but not limited to curriculum vitae, resumes, retention agreements, letters, statements, and communications.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the subject matter of the claims or defenses raised in the lawsuit by either party.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request in accordance with the Federal Rules of Civil Procedure and the Court's orders.

**REQUEST NO. 117:**

All documents on which you intend to rely for and/or that might be relevant to a reasonable royalty analysis or calculation using the so-called *Georgia Pacific* factors.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature.  Freescale objects to this request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request in accordance with the Federal Rules of Civil Procedure and the Court's orders.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Mary B. Graham*

———————————————————————
Mary B. Graham (#2256)
James W. Parrett, Jr. (#4292)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
302.658.9200

*Attorneys for Freescale Semiconductor, Inc.*

OF COUNSEL:

David L. Witcoff
Kevin P. Ferguson
John M. Michalik
JONES DAY
77 West Wacker
Chicago, IL  60601-1692
312.782.3939

F. Drexel Feeling
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH  44114-1190
216.586.3939

Dated:  May 17, 2007
830702

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on May 17, 2007, true and correct copies of the foregoing were caused to be served upon the following individuals in the manner indicated:

<u>**BY E-MAIL AND HAND DELIVERY**</u>

John G. Day, Esquire
Steven J. Balick, Esquire
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
Wilmington, DE  19899

**jday@ashby-geddes.com**
**sbalick@ashby-geddes.com**

<u>**BY E-MAIL AND FEDERAL EXPRESS**</u>

Sten A. Jensen, Esquire
HOGAN & HARTSON LLP
555 Thirteenth Street, NW
Washington, DC  20004

**sajensen@hhlaw.com**

<u>**BY E-MAIL**</u>

Steven J. Routh, Esquire
HOGAN & HARTSON LLP
**sjrouth@hhlaw.com**

William H. Wright, Esquire
HOGAN & HARTSON LLP
**whwright@hhlaw.com**

William C. Gooding, Esquire
GOODING & CRITTENDEN, L.L.P.
**billgooding@gooding-crittenden.com**

*/s/ Mary B. Graham*
_____
Mary B. Graham (#2256)

# EXHIBIT C

# REDACTED

# EXHIBIT D

# FreeScale Processors

| Product | Core |
|---|---|
| MPC5200 | 603e core |
| MPC5200B | 603e core |
| MPC5510 | e200z1 core, optional secondary e200z0 core |
| MPC5533 | e200z3 core |
| MPC5534 | e200z3 core |
| MPC5553 | e200z6 core |
| MPC5554 | e200z6 core |
| MPC5561 | e200z6 core |
| MPC5565 | e200z6 core |
| MPC5566 | e200z6 core |
| MPC5567 | e200z6 core |
| MPC7410 | G4/e600 core |
| MPC7445 | G4/e600 core |
| MPC7455 | G4/e600 core |
| MPC7447 | G4/e600 core |
| MPC7457 | G4/e600 core |
| MPC7447A | G4/e600 core |
| MPC7448 | G4/e600 core |
| MPC823 | 8xx core |
| MPC823E | 8xx core |
| MPC850 | 8xx core |
| MPC852T | 8xx core |
| MPC853T | 8xx core |
| MPC855T | 8xx core |
| MPC857DSL | 8xx core |
| MPC857T | 8xx core |

| | |
|---|---|
| MPC859DSL | 8xx core |
| MPC859T | 8xx core |
| MPC860 | 8xx core |
| MPC860P | 8xx core |
| MPC862 | 8xx core |
| MPC866 | 8xx core |
| MPC870 | 8xx core |
| MPC875 | 8xx core |
| MPC880 | 8xx core |
| MPC885 | 8xx core |
| MPC8247 | 603e core |
| MPC8248 | 603e core |
| MPC8250 | G2 core (603e der.) |
| MPC8255 | G2 core (603e der.) |
| MPC8260 | G2 core (603e der.) |
| MPC8264 | G2 core (603e der.) |
| MPC8265 | G2 core (603e der.) |
| MPC8266 | G2 core (603e der.) |
| MPC8270 | 603e core |
| MPC8271 | 603e core |
| MPC8272 | 603e core |
| MPC8275 | 603e core |
| MPC8280 | 603e core |
| MPC8313 | e300 core |
| MPC8313E | e300 core |
| MPC8321 | e300c2 core |
| MPC8321E | e300c2 core |
| MPC8323 | e300c2 core |
| MPC8323E | e300c2 core |
| MPC8343E | e300 core |
| MPC8347E | e300 core |
| MPC8349E | e300 core |
| MPC8358E | e300 core |
| MPC8360E | e300 core |
| MPC8533E | e500 v2 core |
| MPC8540 | e500 core |
| MPC8541E | e500 core |

| | |
|---|---|
| MPC8543E | e500 core |
| MPC8544E | e500 core |
| MPC8545E | e500 core |
| MPC8547E | e500 core |
| MPC8548E | e500 core |
| MPC8555E | e500 core |
| MPC8560 | e500 core |
| MPC8567E | e500 core |
| MPC8568E | e500 core |
| | |
| MPC8641 | e600 core |
| | |
| MPC8641D | Dual e600 core |
| MCF5206e | ColdFire V2 |
| MCF5207 | ColdFire V2 |
| MCF5208 | ColdFire V2 |
| MCF5211 | ColdFire V2 |
| MCF5212 | ColdFire V2 |
| MCF5213 | ColdFire V2 |
| MCF5214 | ColdFire V2 |
| MCF5216 | ColdFire V2 |
| MCF5232 | ColdFire V2 |
| MCF5233 | ColdFire V2 |
| MCF5234 | ColdFire V2 |
| MCF5235 | ColdFire V2 |
| MCF5249 | ColdFire V2 |
| MCF5270 | ColdFire V2 |
| MCF5271 | ColdFire V2 |
| MCF5272 | ColdFire V2 |
| MCF5274 | ColdFire V2 |
| MCF5274L | ColdFire V2 |
| MCF5275 | ColdFire V2 |
| MCF5275L | ColdFire V2 |
| MCF5280 | ColdFire V2 |
| MCF5281 | ColdFire V2 |
| MCF5282 | ColdFire V2 |
| MCF5307 | ColdFire V3 |

| | |
|---|---|
| MCF5327 | ColdFire V3 |
| MCF5328 | ColdFire V3 |
| MCF5329 | ColdFire V3 |
| MCF5372 | ColdFire V3 |
| MCF5372L | ColdFire V3 |
| MCF5373 | ColdFire V3 |
| MCF5373L | ColdFire V3 |
| MCF5407 | ColdFire V4 |
| MCF5470 | ColdFire V4e |
| MCF5471 | ColdFire V4e |
| MCF5472 | ColdFire V4e |
| MCF5473 | ColdFire V4e |
| MCF5474 | ColdFire V4e |
| MCF5475 | ColdFire V4e |
| MCF5480 | ColdFire V4e |
| MCF5481 | ColdFire V4e |
| MCF5482 | ColdFire V4e |
| MCF5483 | ColdFire V4e |
| MCF5484 | ColdFire V4e |
| MCF5485 | ColdFire V4e |
| MC68060 | MC68060 |
| MC68LC060 | MC68060 |
| MC68EC060 | MC68060 |
| i.MX1 (MC9328MX1) | ARM920T core |
| i.MX21 | ARM926EJ-S core |
| i.MX21S | ARM926EJ-S core |
| i.MX27 | ARM926EJ-S core |
| i.MX31 | ARM1136JF-S core |
| i.MX31L | ARM1136JF-S core |
| i.MXL | ARM920T core |
| i.MXS | ARM920T core |
| MSC8144 | Four 800 MHz/1 GHz StarCore SC3400 DSP extended cores |
| MSC8144E | Four 800 MHz/1GHz StarCore SC3400 DSP core subsystems |

| | |
|---|---|
| MSC8144EC | Four 800 MHz/1GHz StarCore SC3400 DSP core subsystems |
| MSC7110 | SC1400 core |
| MSC7112 | SC1400 core |
| MSC7113 | SC1400 core |
| MSC7115 | SC1400 core |
| MSC7116 | SC1400 core |
| MSC7118 | SC1400 core |
| MSC7119 | SC1400 core |
| MSC7120 | e300 core |
| DSP56301 | DSP56300 core |
| DSP56311 | DSP56300 core |
| DSP56321 | DSP56300 core |
| DSP56L307 | DSP56300 core |

Description
16 KB instruction cache / 16 KB data cache
16 KB instruction cache / 16 KB data cache

L1: 1MB or 512 KB embedded flash; plus memory management unit with buffer
L1: 48KB cache, 768KB embedded flash; plus memory management unit with buffer
L1: 64KB cache; 1MB embedded flash; plus memory management unit with buffer

L1 (U-Cache): 8KB; L2: 64KB cache; 1.5MB embedded flash; plus memory management unit with buffer

L1 (U-Cache): 32KB; L2: 64KB cache; 2MB embedded flash; plus memory management unit with buffer

L1 (U-Cache): 32KB; L2: 192KB cache; 1MB embedded flash; plus memory management unit with buffer
L1 (U-Cache): 8KB; L2: 64KB cache; 2MB embedded flash; plus memory management unit with buffer

L1 (U-Cache): 32KB; L2: 128KB cache; 3MB embedded flash; plus memory management unit with buffer
L1 (U-Cache): 8KB; L2: 64KB cache; 2MB embedded flash; plus memory management unit with buffer
32 KB instruction cache / 32 KB data cache; L2 cache: 256 KB to 1 MB
32 KB instruction cache / 32 KB data cache; L2 cache: 256 KB to 1 MB
32 KB instruction cache / 32 KB data cache; L2 cache: 256 KB to 1 MB
32 KB instruction cache / 32 KB data cache; L2 cache: 256 KB to 1 MB
32 KB instruction cache / 32 KB data cache; L2 cache: 256 KB to 1 MB
32 KB instruction cache / 32 KB data cache; L2 cache: 256 KB to 1 MB
32 KB instruction cache / 32 KB data cache; L2 cache: 256 KB to 1 MB
2 KB instruction cache / 1 KB data cache
16 KB instruction cache / 8 KB data cache
2 KB instruction cache / 1 KB data cache
4 KB instruction cache / 4 KB data cache
4 KB instruction cache / 4 KB data cache
4 KB instruction cache / 4 KB data cache
4 KB instruction cache / 4 KB data cache
4 KB instruction cache / 4 KB data cache
4 KB instruction cache / 4 KB data cache

16 KB instruction cache / 8 KB data cache
16 KB instruction cache / 8 KB data cache
4 KB instruction cache / 4 KB data cache
16 KB instruction cache / 8 KB data cache
16 KB instruction cache / 8 KB data cache
16 KB instruction cache / 8 KB data cache
8 KB instruction cache / 8 KB data cache
8 KB instruction cache / 8 KB data cache
8 KB instruction cache / 8 KB data cache
8 KB instruction cache / 8 KB data cache
16 KB instruction cache / 16 KB data cache
16 KB instruction cache / 16 KB data cache
16 KB instruction cache / 16 KB data cache
16 KB instruction cache / 16 KB data cache
16 KB instruction cache / 16 KB data cache
16 KB instruction cache / 16 KB data cache
16 KB instruction cache / 16 KB data cache
16 KB instruction cache / 16 KB data cache
16 KB instruction cache / 16 KB data cache
16 KB instruction cache / 16 KB data cache
16 KB instruction cache / 16 KB data cache
16 KB instruction cache / 16 KB data cache
16 KB instruction cache / 16 KB data cache
16 KB instruction cache / 16 KB data cache
16 KB instruction cache / 16 KB data cache
16 KB instruction cache / 16 KB data cache
16 KB instruction cache / 16 KB data cache
16 KB instruction cache / 16 KB data cache
16 KB instruction cache / 16 KB data cache
16 KB instruction cache / 16 KB data cache
32 KB instruction cache / 32 KB data cache
32 KB instruction cache / 32 KB data cache
32 KB instruction cache / 32 KB data cache
32 KB instruction cache / 32 KB data cache
32 KB instruction cache / 32 KB data cache
32 KB instruction cache / 32 KB data cache; L2 cache: 256 KB
32 KB instruction cache / 32 KB data cache; L2 cache: 256 KB
32 KB instruction cache / 32 KB data cache; L2 cache: 256 KB

32 KB instruction cache / 32 KB data cache; L2 cache: 256 KB
32 KB instruction cache / 32 KB data cache; L2 cache: 256 KB
32 KB instruction cache / 32 KB data cache; L2 cache: 512 KB
32 KB instruction cache / 32 KB data cache; L2 cache: 512 KB
32 KB instruction cache / 32 KB data cache; L2 cache: 512 KB
32 KB instruction cache / 32 KB data cache; L2 cache: 256 KB
32 KB instruction cache / 32 KB data cache; L2 cache: 256 KB
32 KB instruction cache / 32 KB data cache; L2 cache: 512 KB
32 KB instruction cache / 32 KB data cache; L2 cache: 512 KB

1 MB L2 cache; 32 KB instruction cache / 32 KB data cache; Dual 64-bit DDR and DDR2 memory controllers
1 MB L2 cache per core; 32 KB instruction cache / 32 KB data cache; Dual 64-bit DDR and DDR2 memory controllers

4KB I-Cache, 8 KB SRAM
8KB I/D-Cache; 16KB SRAM
8KB I/D-Cache; 16KB SRAM
16KB SRAM; 128 KB Embedded Flash memory (No cache?)
32KB SRAM; 256 KB Embedded Flash memory (No cache?)
32KB SRAM; 256 KB Embedded Flash memory (No cache?)
2KB I-Cache; 64KB SRAM; 256 KB Embedded Flash memory
2KB I-Cache; 64KB SRAM; 512 KB Embedded Flash memory
8KB configurable I/D-Cache; 64KB SRAM
8KB configurable I/D-Cache; 64KB SRAM
8KB configurable I/D-Cache; 64KB SRAM
8KB configurable I/D-Cache; 64KB SRAM
8KB I/D-Cache; 96KB SRAM
8KB configurable Cache; 64KB SRAM
8KB configurable Cache; 64KB SRAM
1KB I-Cache; 4KB SRAM
16KB configurable Cache; 64KB SRAM
16KB configurable Cache; 64KB SRAM
16KB configurable Cache; 64KB SRAM
16KB configurable Cache; 64KB SRAM
2KB I-Cache; 64KB SRAM
2KB I-Cache; 64KB SRAM; 256 KB Embedded Flash memory
2KB I-Cache; 64KB SRAM; 512 KB Embedded Flash memory
8KB unified Cache; 4KB SRAM

16KB I/D-Cache; 32KB SRAM

16KB I/D-Cache; 32KB SRAM

16KB I/D-Cache; 32KB SRAM

16KB I/D-Cache; 32KB SRAM

16KB I/D-Cache; 32KB SRAM

16KB I/D-Cache; 32KB SRAM

16KB I/D-Cache; 32KB SRAM

16KB I-Cache; 8KB D-Cache; 4KB SRAM

32KB I-Cache; 32KB D-Cache; 32KB SRAM

32KB I-Cache; 32KB D-Cache; 32KB SRAM

32KB I-Cache; 32KB D-Cache; 32KB SRAM

32KB I-Cache; 32KB D-Cache; 32KB SRAM

32KB I-Cache; 32KB D-Cache; 32KB SRAM

32KB I-Cache; 32KB D-Cache; 32KB SRAM

32KB I-Cache; 32KB D-Cache; 32KB SRAM

32KB I-Cache; 32KB D-Cache; 32KB SRAM

32KB I-Cache; 32KB D-Cache; 32KB SRAM

32KB I-Cache; 32KB D-Cache; 32KB SRAM

32KB I-Cache; 32KB D-Cache; 32KB SRAM

32KB I-Cache; 32KB D-Cache; 32KB SRAM

Dual 8KB on-chip Caches

Dual 8KB on-chip Caches

Dual 8KB on-chip Caches

16KB Instruction Cache, 16KB data Cache

16KB Instruction Cache, 16KB data Cache

16KB Instruction Cache, 16KB data Cache

16KB Instruction Cache, 16KB data Cache

16KB Instruction Cache, 16KB data Cache; L2: 128 KB unified Cache

16KB Instruction Cache, 16KB data Cache; L2: 128 KB unified Cache

16KB Instruction Cache, 16KB data Cache

16KB Instruction Cache, 16KB data Cache

Four 16-Kbyte L1 instruction cache (one per core); Four 32-Kbyte L1 data cache (one per core); One 128-Kbyte shared L2 instruction cache; One 512-Kbyte shared M2 memory for critical data and temporary data buffering; 10 Mbytes of 128-bit wide shared M3 memory

Four 16-Kbyte L1 instruction cache (one per core); Four 32-Kbyte L1 data cache (one per core); One 128-Kbyte shared L2 instruction cache; One 512-Kbyte shared M2 memory for critical data and temporary data buffering; 10 Mbytes of 128-bit wide shared M3 memory

Four 16-Kbyte L1 instruction cache (one per core); Four 32-Kbyte L1 data cache (one per core); One 128-Kbyte shared L2 instruction cache; One 512-Kbyte shared M2 memory for critical data and temporary data buffering; 10 Mbytes of 128-bit wide shared M3 memory

64 KB of SRAM memory, a 16 KB 16-way Instruction Cache

192 KB of SRAM memory, a 16 KB 16-way Instruction Cache

192 KB of SRAM memory, a 16 KB 16-way Instruction Cache

384 KB of SRAM memory, a 16 KB 16-way Instruction Cache

384 KB of SRAM memory, a 16 KB 16-way Instruction Cache

448 KB of SRAM memory, a 16 KB 16-way Instruction Cache

448 KB of SRAM memory, a 16 KB 16-way Instruction Cache

16 KB instruction cache and a 16 KB data cache

1024-4096 x 24-bit Program RAM (optional configurations) with 1024 x 24-bit Instruction Cache (if enabled); 2048/3072 x 24-bit X data RAM (optional configuration); 2048/3072 x 24-bit Y data RAM (optional configuration)

128 K x 24-bit on-chip RAM total; Program RAM, instruction cache, X data RAM, and Y data RAM sizes are variable

192 K x 24-bit on-chip RAM total; Program RAM, instruction cache, X data RAM, and Y data RAM sizes are variable

64 K x 24 on-chip RAM total; Program RAM, instruction cache, X data RAM, and Y data RAM sizes are programmable; 192 x 24-bit bootstrap ROM

# EXHIBIT E

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

PROMOS TECHNOLOGIES, INC., )
 )
 Plaintiff, )
 )
 v. ) Civil Action No. 06-788 (JJF)
 )
FREESCALE SEMICONDUCTOR, INC., )
 )
 Defendant. )

**DECLARATION OF JOSEPH MCALEXANDER**

I, Joseph McAlexander, declare as follows:

1. I make this Declaration based on personal knowledge, I am over the age of 18, and I am competent to testify on the matters set forth herein.

2. My educational and professional background is as follows:

3. I am a Registered Professional Engineer and hold a Bachelor of Science degree in Electrical Engineering from North Carolina State University. I have been associated with the integrated circuit and electronics industry as a designer and consultant for the last 34 years and have been awarded twenty U.S. Patents and a number of foreign patents for my contributions.

4. I have expertise in the field of integrated circuit design and am employed by McAlexander Sound, Inc. My professional work experience includes fourteen years of employment as a circuit designer and manager at Texas Instruments, one of the world's leading integrated circuit manufacturers. Additionally, I have taught courses on solid state device physics and circuit design techniques.

5. Based on over 34 years of experience, training, and knowledge of the practices of others in the industry, I would expect that Freescale maintains circuit design and layout information in an electronic design database. Circuit designers routinely use electronic design

databases to design, revise, test, and modify circuit designs. Based on my knowledge of such databases, Freescale almost certainly has the capability of generating detailed circuit diagrams and schematics from such databases; and I would expect that Freescale would be able to access such databases for the purpose of printing circuit diagrams and schematics without undue effort or burden. Similarly, if ProMOS's expert witnesses were permitted access to Freescale's electronic design database, I would expect that they would be able to generate circuit diagrams and schematics using Freescale's existing software without undue effort or burden.

6.     Register Transfer Language ("RTL") is a hardware description language used to describe the registers of a system and the transfer of data or other information between the registers. RTL can be used to describe the architecture or structure of a circuit and the timing of interactions between elements with the circuit. A user may instruct a computer to perform functions on the RTL documentation (such as printing or generating illustrations or representations of the circuit, like circuit diagrams), but the RTL documentation of a circuit itself does not command a computer to do anything. In contrast, computer code is comprised of lines of instructions that instruct the computer to perform some function.

I declare under penalty of perjury, under the laws of the United States of America that the foregoing is true and correct and based upon my personal knowledge.

Date: <u>August 22, 2007</u>

Joseph McAlexander

# EXHIBIT F

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PROMOS TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-788 (JJF) |
| | ) | |
| FREESCALE SEMICONDUCTOR, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## STIPULATED PROTECTIVE ORDER

To expedite the flow of discovery materials, to facilitate the prompt resolution of disputes over confidentiality of discovery materials, to adequately protect information the parties are entitled to keep confidential, to ensure that only materials the parties are entitled to keep confidential are subject to such treatment, and to ensure that the parties are permitted reasonably necessary uses of such materials in preparation for and in the conduct of trial, pursuant to Fed. R. Civ. P. 26(c), it is hereby **ORDERED THAT:**

## CONFIDENTIAL INFORMATION SUBJECT TO THIS ORDER

1.      For purposes of this Order, "PROTECTED INFORMATION" is any information designated, in proper accordance with this Order, as CONFIDENTIAL INFORMATION and/or CONFIDENTIAL INFORMATION – OUTSIDE ATTORNEYS' EYES ONLY.   Any PROTECTED INFORMATION obtained by any party from any person pursuant to discovery in this litigation may be used only for purposes of preparation and litigation in this matter.

2.      "CONFIDENTIAL INFORMATION" shall mean all information or material, and any copies thereof, that is produced for or disclosed to a receiving party, that a producing party, including any party to this action and any non-party producing information or material

voluntarily or pursuant to a subpoena or a court order, considers to constitute or to contain trade secrets or other confidential research, development, technical, financial, or commercial information, whether embodied in physical objects, documents, or the factual knowledge of persons; and that has been so designated by the producing party.    PROTECTED INFORMATION designated CONFIDENTIAL INFORMATION and information contained therein shall be available only to counsel for the parties, technical advisers who are assisting them, data processing vendors, graphics and trial consultants, court reporters, and court personnel, under the terms outlined for those groups of persons under Paragraphs 12-19 below. Moreover, any party witness or third-party witness may be shown at a deposition, or examined on, any document containing material designated "CONFIDENTIAL" if it appears from the face of the document that the witness authored or previously received a copy of it, or if specific documentary or testimonial evidence of that witness or others indicates that the document was communicated to or from the witness, or if the producing party so agrees.

      3.    "CONFIDENTIAL    INFORMATION"    may    be    additionally    designated "OUTSIDE ATTORNEYS' EYES ONLY."  The OUTSIDE ATTORNEYS' EYES ONLY designation is reserved for CONFIDENTIAL INFORMATION that constitutes proprietary financial, sales, or technical data or commercially sensitive competitive information, such as patent licenses or documents relating to patent licenses, including CONFIDENTIAL INFORMATION obtained from a non-party pursuant to a current Nondisclosure Agreement ("NDA"), strategic plans, source code listing (and descriptions of their operation), object code listings (and descriptions of their operation), integrated circuit diagrams and settlement agreements or settlement communications, the disclosure of which is likely to cause harm to the competitive position of the producing party.    PROTECTED    INFORMATION    designated

CONFIDENTIAL INFORMATION – OUTSIDE ATTORNEYS' EYES ONLY and information contained therein shall be available only to outside counsel of record for the parties ("Outside Counsel of Record"), technical advisers who are assisting them, data processing vendors, graphics and trial consultants, court reporters, and court personnel, under the terms outlined for these groups of persons under Paragraphs 12-19 below.  Moreover, any party witness or third-party witness may be shown at a deposition, or examined on, any document containing material designated "CONFIDENTIAL INFORMATION – OUTSIDE ATTORNEYS' EYES ONLY" if it appears from the face of the document that the witness authored or previously received a copy of it, or if specific documentary or testimonial evidence of that witness or others indicates that the document was communicated to or from the witness, or if the producing party so agrees.

    4.    If a party is required to produce source, object, machine, or other such computer code ("Code"), it must do so in electronically searchable form and under the terms of this paragraph.  When such Code is exchanged, it will be handled in accordance with the "CONFIDENTIAL INFORMATION – OUTSIDE ATTORNEYS' EYES ONLY" designation, except that no electronic copies of the Code will be permitted.  The producing party shall produce Code by copying it in an electronically-searchable format to a stand-alone, non-networked (with all wireless functionality disabled or removed) laptop or desktop that contains appropriate software for reviewing the Code.  The laptop/desktop containing the Code will then be maintained by the producing party's Outside Counsel of Record, who will maintain the laptop/desktop at its offices.  If the requesting party wants to use specific software to view the Code, it must provide the producing party's Outside Counsel of Record with such software and certify that it has obtained all necessary licenses for such use.  If the requesting party is not willing to provide both the software and certification of license, then the producing party is not

obligated to provide any software identified by the requesting party. The producing party's Outside Counsel of Record will provide access to the Code upon written request of the requesting party, but in no case later than by the fifth business day following receipt of the written request, unless agreed by both parties. Access will be provided during normal business hours (9:00 a.m. to 5:00 p.m.), unless the parties set different hours. While the Code is maintained in the laptop/desktop, it will be handled in accordance with the "CONFIDENTIAL INFORMATION – OUTSIDE ATTORNEYS' EYES ONLY" designation, except that no electronic copies of the Code will be permitted. If the requesting party wishes to make a copy of certain limited portions of Code, such as routines or sub-routines, only one paper copy of those limited portions will be allowed on watermarked paper. The requesting party must maintain said paper copy under lock and key and must provide the producing party with advance notice of where the paper copy will be maintained. The requesting party will not be allowed to make or remove any wholesale copies of the Code from the laptop/desktop. No party shall disclose, carry, send, or transmit, or allow to be disclosed, carried, sent, or transmitted, in any manner, via electronic means or otherwise, any Code, including any summary, compilation, or copy of any portion thereof, outside the boundaries of the United States of America; provided, however, if a requesting party believes compelling circumstances have arisen requiring that party's Outside Counsel of Record to hand-carry out of the United States, or to access on a secure web site from outside of the United States, the producing party's Code, the requesting party will notify the producing party at least three (3) business days in advance and the producing party will consider reasonable protective measures that the Court can enforce to allow the requesting party's Outside Counsel of Record to so hand-carry or access the producing party's Code under the

circumstances presented.  If the parties cannot agree on such reasonable protective measures, the requesting party shall seek relief from the Court.

     5.    The following information is not PROTECTED INFORMATION:

       a.    any information that at the time of disclosure to a receiving party is in the public domain;

       b.    any information that, after its disclosure to a receiving party, becomes part of the public domain as a result of publication not involving a violation of this Order;

       c.    any information that the receiving party can show by dated written records was already known to it prior to the disclosure;

       d.    any information that the receiving party can show by dated written records was received by it after the disclosure from a source who obtained the information lawfully and under no obligation of confidentiality to the producing party; and

       e.    any information which the receiving party can show by dated written records was independently developed by it after the time of disclosure by personnel who have not had access to the producing party's PROTECTED INFORMATION.

## DESIGNATION OF PROTECTED INFORMATION

     6.    Any document or tangible thing containing or including any PROTECTED INFORMATION may be designated as such by the producing party by marking it as CONFIDENTIAL INFORMATION and/or CONFIDENTIAL INFORMATION – OUTSIDE ATTORNEYS' EYES ONLY prior to or at the time copies are furnished to the receiving party.

7.     Any deposition transcript containing or including any PROTECTED INFORMATION may be designated as such by any party either by stating on the record during the deposition that the transcript should be marked as CONFIDENTIAL INFORMATION and/or CONFIDENTIAL INFORMATION – OUTSIDE ATTORNEYS' EYES ONLY or by making such a designation within fourteen (14) calendar days after the designating party first receives a formal copy of the transcript from the deposition service.  If no designation is made on the record of a deposition, the original and all copies of any deposition transcript shall be treated as CONFIDENTIAL INFORMATION – OUTSIDE ATTORNEYS' EYES ONLY for a period of fourteen (14) calendar days after the party defending the deposition first receives a formal copy of the same transcript from the deposition service.  To maintain confidentiality thereafter, any party may designate a deposition transcript or a portion thereof with the appropriate PROTECTED INFORMATION designation before or during the fourteen (14) day time period, and any portions so designated shall thereafter be treated in accordance with the terms of this Order.

8.     All PROTECTED INFORMATION not reduced to documentary, tangible, or physical form, or that cannot be conveniently designated as set forth in Paragraphs 5-7, shall be designated by the producing party by informing the receiving party of the designation in writing.

9.     Any documents (including physical objects) made available for initial inspection by counsel for the receiving party prior to producing copies of selected items shall initially be considered, as a whole, to constitute CONFIDENTIAL INFORMATION – OUTSIDE ATTORNEYS' EYES ONLY and shall be subject to this Order.  Thereafter, the producing party shall have a reasonable time to review and designate the appropriate documents with the

appropriate PROTECTED INFORMATION designation prior to furnishing copies to the receiving party.

## NO WAIVER OF PRIVILEGE

10.     Inspection or production of documents (including physical objects) shall not constitute a waiver of the attorney-client privilege or work product immunity or any other applicable privilege if, as soon as reasonably possible after the producing party becomes aware of any inadvertent or unintentional disclosure, the producing party designates any such documents as within the attorney-client privilege or work product immunity or any other applicable privilege and requests return of those documents to the producing party.  Upon request by the producing party, the receiving party immediately shall return all copies of inadvertently produced documents.  In no case will the return of requested documents be delayed or refused by reason of a party's objection to said designation or by the filing of a motion to compel, nor may such motion assert as a ground for production the fact of the inadvertent production.  Nothing herein shall prevent the receiving party from challenging the propriety of the attorney-client privilege or work product immunity or other applicable privilege designation by seeking relief from the Court, after returning all copies of the inadvertently-produced documents.

## DISCOVERY RULES REMAIN UNCHANGED

11.     Nothing herein shall alter or change in any way the discovery provisions of the Federal Rules of Civil Procedure.  Identification of any individual pursuant to this Protective Order does not make that individual available for deposition or any other form of discovery outside the restrictions and procedures of the Federal Rules of Civil Procedure, the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware, and the Court's Rule 16 Scheduling Order.

## PERSONS AUTHORIZED TO RECEIVE PROTECTED INFORMATION

12.    PROTECTED INFORMATION may be disclosed to Outside Counsel of Record, Designated In-House Counsel, Technical Advisers, Data Processing Vendors, and Graphics/Trial Consultants, as defined and subject to the conditions below.  Nothing, however, shall prevent Outside Counsel of Record from giving legal advice to their clients based on PROTECTED INFORMATION that is designated as such pursuant to this Order, provided that the substance of such PROTECTED INFORMATION is not disclosed to their clients.

13.    PROTECTED INFORMATION may be disclosed to the Court and members of the staff of the Court whose functions necessitate access to said PROTECTED INFORMATION.

### Counsel

14.    Counsel for a receiving party shall have access to the producing party's PROTECTED INFORMATION, subject to any CONFIDENTIAL INFORMATION – OUTSIDE ATTORNEYS' EYES ONLY designations.   The term "counsel" for CONFIDENTIAL INFORMATION shall mean law firms of record for the parties, including both outside and 2 designated in-house counsel, and including supporting clerical personnel employed by the attorneys, such as paralegals, legal translators, legal secretaries, legal clerks, and shorthand reporters.  Each designated in-house counsel shall be identified in Exhibit B and each such person will complete and sign a copy of the Confidentiality Agreement that is attached hereto as Exhibit A, and each such completed form shall be transmitted to counsel for the other parties prior to the disclosure of any PROTECTED INFORMATION to designated in-house counsel.  Prior to entry of this Protective Order, the parties will exchange, in the form of Exhibit B hereto, and agree upon the names of two individuals from each side who shall be considered as "in-house counsel" for purposes of this Protective Order.  For PROTECTED INFORMATION designated CONFIDENTIAL INFORMATION – OUTSIDE ATTORNEYS' EYES ONLY, the

term "OUTSIDE ATTORNEY" shall exclude in-house counsel and in-house personnel, and mean only Outside Counsel of Record in this matter and supporting clerical personnel employed by the attorneys of Outside Counsel of Record, such as paralegals, legal translators, legal secretaries, legal clerks, and shorthand reporters.

## Technical Advisers

15.    PROTECTED INFORMATION of a producing party may be furnished and disclosed to technical advisers, subject to the requirements of Paragraphs 1-4 and Paragraph 14. The term "technical adviser" means any person (and supporting personnel) including but not limited to a proposed expert witness, consulting expert, or other consultant with whom counsel may deem it necessary to consult concerning technical, financial, or other aspects of this case for the preparation or trial thereof. Notwithstanding any other provision in this Order, a receiving party shall not disclose PROTECTED INFORMATION to a technical adviser, even if that person is entitled to receive PROTECTED INFORMATION under another provision of this Order, until the receiving party has complied with the requirements of Paragraph 16.

16.    Should a receiving party find it necessary for maintaining, defending, or evaluating this litigation to disclose a producing party's PROTECTED INFORMATION to a technical adviser, the receiving party shall first give written notice to the producing party. The party desiring to disclose the producing party's PROTECTED INFORMATION to a technical adviser shall provide the curriculum vitae of the technical adviser and shall include the following information about the technical adviser in the written notice:

            a.      business address;

            b.      business title;

            c.      business or profession;

    d.    any previous or current relationship (personal or professional) with any of the parties; and

    e.    a list of other cases in which the technical adviser has testified (at trial or deposition), and all companies with which the technical adviser has consulted or by which the technical adviser has been employed, within the last four years.

A party who receives a completed Exhibit A form from a technical adviser shall have seven (7) business days after such notice is received to object in writing. No PROTECTED INFORMATION of the producing party shall be disclosed to the technical adviser until after expiration of the foregoing notice period. If, however, during the notice period a party serves written objections upon the party desiring to disclose PROTECTED INFORMATION to the technical adviser, there shall be no disclosure of PROTECTED INFORMATION to the technical adviser pending resolution of the objections. The party objecting to disclosure of PROTECTED INFORMATION to the technical adviser shall explain the basis of its objections in writing. Consent to the disclosure of PROTECTED INFORMATION to the technical adviser shall not be unreasonably withheld. If a party objects to the disclosure of PROTECTED INFORMATION to a technical adviser, the proposing party shall have five (5) business days to respond to the objections. The objecting party shall then have five (5) business days after the proposing party's responses are served to seek relief from the Court and seek disqualification of the technical adviser or other appropriate relief, if the parties cannot come to an agreement. If the objecting party fails to object to the proposed technical adviser within the initial seven (7) business day period, then any objection to the technical adviser is waived, and the PROTECTED INFORMATION may thereafter be disclosed to the technical adviser. No document designated

- 10 -

by a producing party as PROTECTED INFORMATION shall be disclosed by a receiving party to a technical adviser until after the technical adviser has signed the Confidentiality Agreement appended hereto as Exhibit A stating that he or she has read and understands this Order and agrees to be bound by its terms.

17.     No party will seek discovery from a non-testifying technical adviser disclosed under this Protective Order simply because they have been disclosed under the Protective Order or without good cause by the party seeking the discovery.

### Data Processing Vendors, Copy Vendors, and Graphics/Trial Consultants

18.     PROTECTED INFORMATION of a producing party may be furnished and disclosed, subject to the provisions of Paragraphs 1-4 and 14, to data processing vendors; copy vendors and/or graphics or design services retained by counsel for purposes of preparing demonstrative or other exhibits for deposition, trial, or other court proceedings in this action; and/or non-technical jury or trial consulting services, including mock jurors, retained by counsel. The term "data processing vendor" means any person (and supporting personnel) who is a member or staff of an outside data entry or data processing entity, copying service entity, and/or graphics or design service entity employed or retained by a receiving party or its counsel.

19.     Should counsel for a receiving party find it necessary for maintaining, defending, or evaluating this litigation to disclose a producing party's PROTECTED INFORMATION to any of the persons or services described in Paragraph 18, counsel for the receiving party shall first obtain from that person or a person on behalf of that service a Confidentiality Agreement, in the form attached hereto as Exhibit A, stating that the person has read and understands this Order and agrees to be bound by its terms.  Such written agreement shall be retained by counsel for the receiving party, but need not be disclosed to the producing party.

## CHALLENGES TO PROTECTED INFORMATION DESIGNATIONS

20.     The parties will use reasonable care when designating documents or information as PROTECTED INFORMATION.  Nothing in this Order shall prevent a receiving party from contending that any or all documents or information designated as PROTECTED INFORMATION have been improperly designated.  A receiving party may at any time request that the producing party cancel or modify the PROTECTED INFORMATION designation with respect to any document or information contained therein.

21.     A party shall not be obligated to challenge the propriety of a PROTECTED INFORMATION designation at the time made, and a failure to do so shall not preclude a subsequent challenge thereto.  Such a challenge shall be written, shall be served on counsel for the producing party, and shall particularly identify the documents or information that the receiving party contends should be differently designated.  The parties shall use their best efforts to resolve disputes promptly and informally.

22.     If an agreement under Paragraphs 20-21 cannot be reached, the receiving party shall request that the Court cancel or modify a PROTECTED INFORMATION designation.  The producing party bears the burden to demonstrate that the document(s) at issue is properly designated.

23.     The receiving parties will treat all information as it is designated by the producing party until the parties reach an agreement under Paragraphs 20-21 or until the Court cancels or modifies the designation.

## LIMITATIONS ON THE USE OF PROTECTED INFORMATION

24.     PROTECTED INFORMATION shall be held in confidence by each person to whom it is disclosed, shall be used only for the purpose of conducting this litigation, and shall not be disclosed to any person who is not entitled to receive such information as herein provided.

All produced PROTECTED INFORMATION shall be carefully maintained so as to preclude access by persons who are not entitled to receive such information. No PROTECTED INFORMATION designated as "OUTSIDE ATTORNEYS' EYES ONLY", including any summary, compilation, or copy of any portion thereof, shall be, or shall be allowed to be, disclosed, carried, sent, or transmitted in any manner, via electronic means or otherwise, outside the boundaries of the United States of America; provided, however, if a requesting party believes compelling circumstances have arisen requiring that party's Outside Counsel of Record to hand-carry out of the United States, or to access on a secure web site from outside of the United States, the producing party's PROTECTED INFORMATION designated as "OUTSIDE ATTORNEYS' EYES ONLY", the requesting party will notify the producing party at least three (3) business days in advance and the producing party will consider reasonable protective measures that the Court can enforce to allow the requesting party's Outside Counsel of Record to so hand-carry or access the producing party's PROTECTED INFORMATION under the circumstances presented. If the parties cannot agree on such reasonable protective measures, the requesting party shall seek relief from the Court.

25.    All transcripts of depositions, exhibits, answers to interrogatories, pleadings, briefs, and other documents submitted to the Court that have been designated with the appropriate PROTECTED INFORMATION designation or that contain information so designated, shall be filed in accordance with the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware and the Court's guidelines for electronic filing of documents under seal, or if otherwise submitted to the Court, in a sealed envelope or other appropriate sealed container that is labeled with the title of this matter, an indication of the nature of its contents, the words "CONFIDENTIAL PROTECTED

INFORMATION – UNDER PROTECTIVE ORDER," and a statement substantially in the following form:

> This envelope contains confidential PROTECTED INFORMATION filed in this case by (name of party) and is not to be opened nor the contents thereof be displayed or revealed except by order of the Court presiding over this matter.

26.    Nothing in this Order shall prohibit the transmission or communication of PROTECTED INFORMATION between or among qualified recipients of that information

    a.    by hand-delivery;

    b.    in sealed envelopes or containers via mail or an established freight, delivery, or messenger service; or

    c.    by telephone, telegraph, facsimile, or other electronic transmission system where, under the circumstances, there is no reasonable likelihood that the transmission will be intercepted or misused by any person who is not a qualified recipient,

except that any transmission or communication of Code as defined in Paragraph 4 shall be governed strictly by the provisions provided for therein.

27.    PROTECTED INFORMATION shall not be copied or otherwise reproduced by a receiving party, except for transmission to qualified recipients, without the written permission of the producing party, or, in the alternative, by further order of the Court. Nothing herein shall, however, restrict a qualified recipient from making working copies, abstracts, digests, and analyses of PROTECTED INFORMATION for use in connection with this litigation and such working copies, abstracts, digests, and analyses shall be deemed PROTECTED INFORMATION under the terms of this Order. Any abstract, digest, summary, or analysis that incorporates information designated PROTECTED INFORMATION shall bear the same designation as the

original source material.  Nor shall this Order restrict any qualified recipient from drafting or generating any correspondence referencing PROTECTED INFORMATION to any other qualified recipient for transmission pursuant to the restrictions in Paragraph 26, provided such correspondence bears the same PROTECTED INFORMATION designation as the original source material and provided such correspondence is thereafter treated in accordance with the terms of this Order.

28.    Nothing herein shall restrict a qualified recipient from converting or translating PROTECTED INFORMATION, with the exception of Code as that term is defined in Paragraph 4, above, into machine readable form for incorporation into a data retrieval system used in connection with this action, provided that access to PROTECTED INFORMATION, in whatever form stored or reproduced, shall be limited to qualified recipients.

## TREATMENT OF MATERIALS FROM OTHER LITIGATION

29.    Discovery materials produced in other litigation, which were designated as having some form of confidentiality under protective orders in the other litigation, shall unless otherwise agreed be deemed PROTECTED INFORMATION and shall be governed by the Protective Order if produced in this litigation; provided, however, that anyone who had access to a document or information under the other protective order shall continue to have such access notwithstanding anything appearing to the contrary herein.

## CROSS-USE OF MATERIALS FROM CONCURRENT LITIGATION BETWEEN THE PARTIES

30.    All materials (including but not limited to discovery materials, deposition and trial testimony, pleadings, and Orders) produced or created in this action shall be deemed produced or created in the other action co-pending between the parties (*i.e.*, Case No. 4:06-cv-491 RAS (E.D.

Tex.)) and the use of such materials in the other action shall be subject to the limitations and restrictions present in the Protective Order in that action.

## NON-PARTY USE OF THIS PROTECTIVE ORDER

31.    A non-party producing information or material voluntarily or pursuant to a subpoena or a court order may designate material or information with the appropriate PROTECTED INFORMATION designation pursuant to the terms of this Protective Order.

32.    A non-party's use of this Protective Order to protect its PROTECTED INFORMATION does not entitle that non-party to access PROTECTED INFORMATION produced by any party or other non-party in this case.

## MISCELLANEOUS PROVISIONS

33.    All PROTECTED INFORMATION is subject to a Prosecution Bar.  Any person who receives any PROTECTED INFORMATION shall not prosecute or prepare any patent application on behalf of any party to this action relating to the disclosed technology from the time of receipt of such information through and including two (2) years following the entry of a final non-appealable judgment or order or the complete settlement of all claims against all parties in this action.  In addition, any person subject to the "Prosecution Bar" of this Paragraph shall not have any substantive involvement in the prosecution of any such application filed, or claiming priority from any such application filed, prior to two (2) years following the entry of a final non-appealable judgment or order or the complete settlement of all claims against all parties in this action.  The Court and any Court personnel are expressly excluded and not subject to the "Prosecution Bar" of this Paragraph.

34.    Any notice requirement herein may be waived, in whole or in part, but only by a writing signed by an attorney of record for the party against whom such waiver will be effective.

35.    Nothing in this Order shall restrict a party or non-party from using its own PROTECTED INFORMATION in any manner.

36.    Within sixty (60) calendar days after the entry of a final non-appealable judgment or order, or the complete settlement of all claims asserted between the parties in this action, each of the parties shall, at its option, either return to the producing party or destroy all physical objects and documents which embody PROTECTED INFORMATION, and shall return or destroy in whatever form stored or reproduced, all other physical objects and documents, including but not limited to, correspondence and memoranda, which contain or refer to PROTECTED INFORMATION; provided, that all PROTECTED INFORMATION, not embodied in physical objects and documents, shall remain subject to this Order. Notwithstanding the foregoing, each party's Outside Counsel of Record may retain archival copies of all attorney work product, correspondence, expert reports, deposition and trial transcripts and exhibits, papers filed with the Court (including exhibits), and discovery responses (but not document production) exchanged by the parties. Any PROTECTED INFORMATION included in the archival copy shall remain subject to the provisions of this Order.

37.    This Order is entered without prejudice to the right of any party to apply to the Court at any time for additional protection or to relax or rescind the restrictions of this Order when convenience or necessity requires.

38.    The United States District Court for the District of Delaware is responsible for the interpretation and enforcement of this Protective Order. All disputes concerning PROTECTED INFORMATION produced under the protection of this Protective Order shall be resolved by the United States District Court for the District of Delaware. The Court retains jurisdiction even

after the termination of this action to enforce this Order and to amend this Order as the Court

deems appropriate.


ASHBY & GEDDES

*/s/ John G. Day*
_____
Steven J. Balick (#2114)
John G. Day (#2403)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
302.654.1888

*Attorneys for ProMOS Technologies, Inc.*

Dated: July 25, 2007

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ James W. Parrett, Jr.*
_____
Mary B. Graham (#2256)
James W. Parrett, Jr. (#4292)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
302.658.9200

*Attorneys for Freescale Semiconductor, Inc.*


Entered on this the ____ day of _____, 2007.


_____
United States District Judge


981774

**EXHIBIT A**

## IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PROMOS TECHNOLOGIES, INC.,      )
                                          )
          Plaintiff,        )
                                          )
        v.                    )        C.A. No. 06-788 (JJF)
                                          )
FREESCALE SEMICONDUCTOR, INC.,   )
                                          )
          Defendant.      )
                                          )

## CONFIDENTIALITY AGREEMENT

I, _____, declare under penalty of perjury that:

1.    I reside at _____;

2.    My present employer is _____;

3.    My present business address is _____;

4.    My present occupation or job description is _____;

5.    I have been engaged as a _____

on behalf of _____ in the preparation and conduct of the above-

captioned litigation.

6.    I am fully familiar with and agree to comply with and be bound by the provisions

of the Stipulated Protective Order (the "Order") dated _____, 200__ (and whose

definitions are incorporated herein), and I attest to my understanding that access to information

designated as PROTECTED INFORMATION may be provided to me and that such access shall

be pursuant to the terms and conditions and restrictions of the Order. I understand and

acknowledge that failure to comply with the Order could expose me to sanctions and punishment in the nature of contempt.

7.      I understand that I am to retain all copies of any PROTECTED INFORMATION in a secure manner, and that all copies are to remain in my personal custody until this action is terminated or until I have completed my assigned duties, whichever occurs earlier, whereupon the copies and any writings prepared by me containing any Confidential Information are to be returned to counsel who provided me with such material.

8.      I will not divulge to persons other than those specifically authorized by said Order, and will not copy or use except solely for the purpose of this action, any PROTECTED INFORMATION obtained pursuant to said Order, except as provided in said Order.  I also agree to notify any stenographic or clerical personnel who are required to assist me of the terms of said Order.

9.      I further agree to submit to the jurisdiction of the United States District Court for the District of Delaware for the purpose of enforcing the terms of the Order, even if such enforcement proceedings occur after this action is terminated.

10.      I state under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on _____, 200__.


Signature: _____

981774

## EXHIBIT B

### Designated In-House Counsel

**For Freescale**

1.      Name: _____              Title: _____

2.      Name: _____              Title: _____

**For ProMOS**

1.      Name: _____              Title: _____

2.      Name: _____              Title: _____

981774

**MKipp**

| | |
|---|---|
| **From:** | ded_nefreply@ded.uscourts.gov |
| **Sent:** | Wednesday, July 25, 2007 10:25 AM |
| **To:** | ded_ecf@ded.uscourts.gov |
| **Subject:** | Activity in Case 1:06-cv-00788-JJF Promos Technologies Inc. v. Freescale Semiconductor Inc. Proposed Order |

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.

***NOTE TO PUBLIC ACCESS USERS*** You may view the filed documents once without charge. To avoid later charges, download a copy of each document during this first viewing.

### U.S. District Court

### District of Delaware

**Notice of Electronic Filing**

The following transaction was entered by Parrett, James on 7/25/2007 at 10:25 AM EDT and filed on 7/25/2007

**Case Name:**    Promos Technologies Inc. v. Freescale Semiconductor Inc.
**Case Number:**    1:06-cv-788
**Filer:**    Freescale Semiconductor Inc.
**Document Number:** 37

**Docket Text:**
PROPOSED ORDER Stipulated Protective Order by Freescale Semiconductor Inc.. (Parrett, James)

**1:06-cv-788 Notice has been electronically mailed to:**

Steven J. Balick    sbalick@ashby-geddes.com, dfioravanti@ashby-geddes.com, jday@ashby-geddes.com, lmaguire@ashby-geddes.com, mkipp@ashby-geddes.com, nlopez@ashby-geddes.com, rgamory@ashby-geddes.com, tlydon@ashby-geddes.com

John G. Day    jday@ashby-geddes.com, dfioravanti@ashby-geddes.com, dharker@ashby-geddes.com, lmaguire@ashby-geddes.com, mkipp@ashby-geddes.com, nlopez@ashby-geddes.com, rgamory@ashby-geddes.com, sbalick@ashby-geddes.com, tlydon@ashby-geddes.com

Mary B. Graham    dmyers@mnat.com, mbgefiling@mnat.com

**1:06-cv-788 Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=7/25/2007] [FileNumber=420102-0] [b35567fe31cbb3f28be305a4e8cc998a5eaa75fb742911e632e92962107a16f38e2a a174c1af22f70827a510995ae963e9ec7603317bd3a1055a2b9c5c0f1637]]

# EXHIBIT G

# HOGAN & HARTSON

Hogan & Hartson LLP
Columbia Square
555 Thirteenth Street, NW
Washington, DC 20004
+1.202.637.5600 **Tel**
+1.202.637.5910 **Fax**

**www.hhlaw.com**

June 29, 2007

Sten A. Jensen
(202) 637-6465
sajensen@hhlaw.com

**BY ELECTRONIC MAIL**

Kevin Ferguson
Jones Day
77 West Wacker
Chicago, Illinois 60601-1692
E-mail: dlwitcoff@JonesDay.com

RE:    <u>**ProMOS Technologies, Inc. v. Freescale Semiconductor, Inc.,**</u> No. 06-788 (JJF) (D. Del.)

Dear Kevin:

Following up on the meet and confer discussions we had yesterday, we would like to plan to conduct a Rule 30(b)(6) deposition during the week of July 16 to obtain information regarding the designs and technical documentation for cache memories in Freescale products. We believe such a deposition is necessary to ensure the completeness of Freescale's responses to outstanding discovery requests, to assist in formulating possible additional written discovery, and to respond to your request for a more compete listing of Freescale products that infringe the Chan patents. Accordingly, this deposition must go forward at this time to ensure that written discovery is completed in a timely manner.

We will serve a Rule 30(b)(6) notice early next week, but I wanted to give you advance notice so that you can let us know which dates work best for Freescale during the week of July 16. If there are no dates during the week of July 16 that work for Freescale, then we will do the deposition on July 13 (based on your representation that Freescale will supplement its technical document production with respect to the Chan patents on or about July 9). We will notice the deposition for Wilmington, Delaware, and will expect it to go forward there. However, if you would prefer to hold the deposition at Freescale's place of business, so that the designated deponent(s) may access documents and other information if needed to answer questions during the deposition, we can discuss changing the deposition site to that location.

Sincerely,

Sten Jensen

# EXHIBIT H

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

PROMOS TECHNOLOGIES, INC.,

       Plaintiff,

       v.

FREESCALE SEMICONDUCTOR, INC.,

       Defendant.

Civil Action No. 06-788 (JJF)

## NOTICE OF DEPOSITION PURSUANT TO RULE 30(b)(6)

PLEASE TAKE NOTICE that Plaintiff ProMOS Technologies, Inc., will take the

deposition of Defendant Freescale Semiconductor, Inc. ("Freescale"), pursuant to Fed. R. Civ. P.

30(b)(6), on the topics set forth in Exhibit A hereto, beginning at 9:00 a.m. on July 20, 2007, at

the offices of Ashby & Geddes, 500 Delaware Avenue, 8th Floor, Wilmington, DE 19899. The

deposition will be recorded stenographically and by videotape.

Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Freescale shall

designate one or more officers, directors, managing agents, or other individuals to testify on its

behalf as to matters known or reasonably known to Freescale regarding the topics set forth below.

If more than one person is so designated, Freescale shall set forth in advance of the deposition

the topic(s) or area(s) on which each designee will provide testimony.

## Definitions And Instructions

1.     The term "Freescale" shall mean Freescale Semiconductor, Inc., and any parent,

subsidiaries, divisions, affiliates, and/or branches of the foregoing entities, any wholly or partly

owned entities of the foregoing, any and all predecessors and successors thereof, and any entities

acting or purporting to act for or on behalf of, or who are subject to the direction or control of,

any of the foregoing entities, including agents, employees, officers, directors, attorneys,

consultants, contractors, subcontractors and representatives.

2.    The term "document" will have the same meaning as that term is given in the "Definitions" section of ProMOS Technology Inc.'s First Request for Production of Documents served April 12, 2007.

3.    The term Freescale Product(s) will have the same meaning as that term is given in the "Definitions" section of ProMOS Technology Inc.'s First Request for Production of Documents served April 12, 2007.

## Topics For Examination At Deposition

1.    Documents maintained by Freescale that evidence the design and/or features of cache memories contained in Freescale Products.

2.    Documents maintained by Freescale that evidence how cache memories are accessed in and/or used in Freescale Products.

3.    Documents maintained by Freescale that evidence the design and/or features of cache memory controllers contained in Freescale Products.

4.    Features associated with cache memories contained in Freescale Products.

5.    Features associated with cache memory controllers contained in Freescale Products.

6.    Any website maintained by Freescale and any information set forth therein that discloses features associated with cache memories or cache memory controllers contained in Freescale Products.

ASHBY & GEDDES

_____/S/_____
Steven J. Batlick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
Telephone: (302) 654-1888
Telecopier: (302) 654-2067
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Plaintiff*
*ProMOS Technologies, Inc.*

*Of Counsel*:

William H. Wright
Hogan & Hartson LLP
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
Telephone: (310) 785-4672
Facsimile: (31) 785-4601
E-Mail: whwright@hhlaw.com

Steven J. Routh
Sten A. Jensen
Hogan & Hartson LLP
555 Thirteenth Street, NW
Washington, DC  20004
Telephone: (202) 637-6472
Facsimile: (202) 637-5910
E-Mail:sjrouth@hhlaw.com
sajensen@hhlaw.com

Dated:  July 3, 2007

# EXHIBIT I

MKipp

**From:** F. Drexel Feeling [f.dfeeling@JonesDay.com]
**Sent:** Friday, August 03, 2007 12:04 PM
**To:** Cook, Susan M.
**Cc:** Snodgrass, Clarence W.; David L. Witcoff; Kevin P. Ferguson; Jensen, Sten A.; Routh, Steven J.; Wright, William H.; Mary Graham
**Subject:** Re:

PM counsel,

I can now confirm that Freescale will produce a 30(b)(6) witness on August 15 in Austin, Texas.  I will be available on Monday to discuss the details.

Drexel

-------------------
This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege. If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.
-------------------

> From: F. Drexel Feeling
> Sent: 08/03/2007 08:10 AM EDT
> To: Cook, Susan M." <SMCook@HHLAW.com>
> Cc: Snodgrass, Clarence W." <CWSnodgrass@HHLAW.com>; David Witcoff; Kevin Ferguson; Jensen, Sten A." <SAJensen@HHLAW.com>; Routh, Steven J." <SJRouth@HHLAW.com>; Wright, William H." <WHWright@HHLAW.com>; MGraham@MNAT.com
> Subject: Re:

PM counsel,

I am surprised by the number of inaccuracies in the emails transmitted by Ms. Cook over the past week, including those in the attached email.  I will not respond point by point to the inaccuracies as such an exercise would not be fruitful.  However, if this pattern of misrepresented oral conversations involving Ms. Cook continues, we will have to insist that all future discussions with Ms. Cook take place in writing.

We will produce critical documents for the Coldfire products today and no RTL code.  As we discussed during the meet and confer on July 20, RTL code will be made available pursuant to the terms of the protective order after the production of all of the critical documents has been completed.  We plan on producing more critical documents on August 10.

We are working on establishing a 30(b)(6) deposition date and will contact you as soon as we can regarding the date.

F. Drexel Feeling
Jones Day
901 Lakeside Ave.
Cleveland, OH  44114
Ph: 216-586-7199
fax: 216-579-0212
email:  f.dfeeling@jonesday.com

8/23/2007

```
"Cook, Susan M."
<SMCook@HHLAW.com
>                              To
               "David L. Witcoff"
               <dlwitcoff@JonesDay.com>, "Kevin P.
08/02/2007 02:25       Ferguson"
PM             <kpferguson@JonesDay.com>,
               f.dfeeling@JonesDay.com
                         cc
               "Wright, William H."
               <WHWright@HHLAW.com>, "Routh,
               Steven J." <SJRouth@HHLAW.com>,
               "Jensen, Sten A."
               <SAJensen@HHLAW.com>, "Snodgrass,
               Clarence W."
               <CWSnodgrass@HHLAW.com>
                      Subject
```

David, Kevin and Drexel:

We understand that you will be producing half of the remaining technical documents tomorrow and that this production will include RTL code, which we have requested for all Freescale Products.  Please send the production disk by overnight mail, early morning priority delivery to Clarence Snodgrass in our LA office.

We also understand that by tomorrow you will be providing us with firm dates for the 30(b)(6) deposition, which we understand will take place around August 15th.  We would like to set up a call tomorrow to discuss any loose ends relating to the document production and to finalize the arrangements for the deposition.  To that end, please let us know your availability for a conference call tomorrow between 10 AM and 1 PM or 2 PM and the end of the day (East Coast Time).

Susan

This electronic message transmission contains information from this law firm which may be confidential or privileged. The information is intended to be for the use of the individual or entity named above. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited.

If you have received this electronic transmission in error, please notify us by telephone (+1-202-637-5600) or by electronic mail (PostMaster@HHLAW.COM) immediately.

==========

This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege. If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.

==========

# EXHIBIT J

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PROMOS TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 06-788-JJF |
| | ) | |
| v. | ) | |
| | ) | |
| FREESCALE SEMICONDUCTOR, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## SECOND NOTICE OF DEPOSITION PURSUANT TO RULE 30(b)(6)

PLEASE TAKE NOTICE that Plaintiff ProMOS Technologies, Inc., will take the

deposition of Defendant Freescale Semiconductor, Inc. ("Freescale"), pursuant to Fed. R. Civ. P.

30(b)(6), on the topics set forth herein, beginning at 9:00 a.m. on August 15, 2007, at the offices

of Ashby & Geddes, 500 Delaware Avenue, 8th Floor, Wilmington, DE 19899. The deposition

will be recorded stenographically and by videotape.

The information set forth below is identical to that provided to Freescale in the Notice of

Deposition served on Freescale on July 3, 2007 for a deposition scheduled July 20, 2008.

Freescale failed to comply with that first Notice of Deposition, notwithstanding the stated

willingness of ProMOS Technology Inc. ("ProMOS") to accommodate any request to reschedule

the deposition at a time and place convenient to Freescale any time in the month of July 2007.

As a result of Freescale's ongoing failure to comply with its discovery obligations, ProMOS will

insist on strict compliance with this Notice of Deposition and with the Federal Rules of Civil

Procedure.

Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Freescale shall

designate one or more officers, directors, managing agents, or other individuals to testify on its

behalf as to matters known or reasonably known to Freescale regarding the topics set forth below.

If more than one person is so designated, Freescale shall set forth in advance of the deposition the topic(s) or area(s) on which each designee will provide testimony.

## Definitions And Instructions

1.      The term "Freescale" shall mean Freescale Semiconductor, Inc., and any parent, subsidiaries, divisions, affiliates, and/or branches of the foregoing entities, any wholly or partly owned entities of the foregoing, any and all predecessors and successors thereof, and any entities acting or purporting to act for or on behalf of, or who are subject to the direction or control of, any of the foregoing entities, including agents, employees, officers, directors, attorneys, consultants, contractors, subcontractors and representatives.

2.      The term "document" will have the same meaning as that term is given in the "Definitions" section of ProMOS Technology Inc.'s First Request for Production of Documents served April 12, 2007.

3.      The term Freescale Product(s) will have the same meaning as that term is given in the "Definitions" section of ProMOS Technology Inc.'s First Request for Production of Documents served April 12, 2007.

## Topics For Examination At Deposition

1.      Documents maintained by Freescale that evidence the design and/or features of cache memories contained in Freescale Products.

2.      Documents maintained by Freescale that evidence how cache memories are accessed in and/or used in Freescale Products.

3.      Documents maintained by Freescale that evidence the design and/or features of cache memory controllers contained in Freescale Products.

4.      Features associated with cache memories contained in Freescale Products.

2

5.     Features associated with cache memory controllers contained in Freescale Products.

6.     Any website maintained by Freescale and any information set forth therein that discloses features associated with cache memories or cache memory controllers contained in Freescale Products.

ASHBY & GEDDES

/s/ *John G. Day*
_____
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
Telephone: (302) 654-1888
Telecopier: (302) 654-2067
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Plaintiff*
*ProMOS Technologies, Inc.*

*Of Counsel*:

William H. Wright
Hogan & Hartson LLP
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
Telephone: (310) 785-4672
Facsimile: (31) 785-4601
E-Mail: whwright@hhlaw.com

Steven J. Routh
Sten A. Jensen
Hogan & Hartson LLP
555 Thirteenth Street, NW
Washington, DC  20004
Telephone: (202) 637-6472
Facsimile: (202) 637-5910
E-Mail:sjrouth@hhlaw.com
sajensen@hhlaw.com

Dated:  August 3, 2007
182871.1

4

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 3rd day of August, 2007, the attached **SECOND NOTICE OF**

**DEPOSITION PURSUANT TO RULE 30(b)(6)** was served upon the below-named counsel of

record at the address and in the manner indicated:

Mary B. Graham, Esquire                                   <u>VIA ELECTRONIC MAIL</u>
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347

Stacey L. Garrett, Esquire                                 <u>VIA ELECTRONIC MAIL</u>
Jones Day
2727 North Harwood Street
Dallas, TX  75201-1515

Kevin P. Ferguson, Esquire                               <u>VIA ELECTRONIC MAIL</u>
Jones Day                                                          <u>and FEDERAL EXPRESS</u>
77 West Wacker
Chicago, IL  60601-1692

F. Drexel Feeling, Esquire                               <u>VIA ELECTRONIC MAIL</u>
Jones Day
North Point
901 Lakeside Avenue
Cleveland, OH  44114-1190

Clyde M. Siebman, Esquire                               <u>VIA ELECTRONIC MAIL</u>
Siebman, Reynolds, Burg & Phillips, LLP
Federal Courthouse Square
300 North Travis Street
Sherman, TX  75090


                                        */s/ John G. Day*
                                        _____
                                        John G. Day

177267.1

## Discovery Documents

### 1:06-cv-00788-JJF Promos Technologies Inc. v. Freescale Semiconductor Inc.

PATENT, PaperDocuments

### U.S. District Court

### District of Delaware

## Notice of Electronic Filing

The following transaction was entered by Day, John on 8/3/2007 at 5:27 PM EDT and filed on 8/3/2007

**Case Name:**       Promos Technologies Inc. v. Freescale Semiconductor Inc.

**Case Number:**     1:06-cv-788

**Filer:**           Promos Technologies Inc.

**Document Number:** 43

**Docket Text:**

NOTICE to Take Deposition of Freescale Semiconductor, Inc. on August 15, 2007 by Promos Technologies Inc..(Day, John)

**1:06-cv-788 Notice has been electronically mailed to:**

Steven J. Balick    sbalick@ashby-geddes.com, dfioravanti@ashby-geddes.com, jday@ashby-geddes.com, lmaguire@ashby-geddes.com, mkipp@ashby-geddes.com, nlopez@ashby-geddes.com, rgamory@ashby-geddes.com, tlydon@ashby-geddes.com

John G. Day    jday@ashby-geddes.com, dfioravanti@ashby-geddes.com, dharker@ashby-geddes.com, lmaguire@ashby-geddes.com, mkipp@ashby-geddes.com, nlopez@ashby-geddes.com, rgamory@ashby-geddes.com, sbalick@ashby-geddes.com, tlydon@ashby-geddes.com

Mary B. Graham    dmyers@mnat.com, mbgefiling@mnat.com

**1:06-cv-788 Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document

**Original filename:**n/a

**Electronic document Stamp:**

[STAMP dcecfStamp_ID=1079733196 [Date=8/3/2007] [FileNumber=424990-0]
[35f9a74aac2d0592fa11259732656c3f6987183c6919dd9898df1a44f6ec11ceb71c6
c37ee162d164f6f15bd955338a61833820c52a10139110e2e636efb89a1]]

# EXHIBIT K

# JONES DAY

NORTH POINT • 901 LAKESIDE AVENUE • CLEVELAND, OHIO 44114-1190
TELEPHONE: (216) 586-3939 • FACSIMILE: (216) 579-0212

Direct Number: (216) 586-7199
f.dfeeling@jonesday.com

JP618219
878247-615013

August 13, 2007

<u>VIA EMAIL</u>

Susan Cook, Esq.
Hogan & Hartson LLP
555 Thirteenth Street, NW
Washington, DC 20004
smcook@hhlaw.com

Re:    <u>*ProMOS Technologies v. Freescale Semiconductor, Inc.*</u>

Dear Susan:

This letter is further in response to your letter of August 9 regarding the noticed Rule 30(b)(6) deposition. We have not heard from you regarding ProMOS's support for its apparently inflexible position that the requested deposition <u>must</u> go forward in Delaware as opposed to anywhere else in the United States, as we requested in our letter of August 10 to you, and still await ProMOS's response.

As we communicated to you in our letter of August 10 and in our prior letters, Freescale was prepared to produce on August 15, in Austin, Texas, witness(es) to be deposed regarding the deposition scope that was agreed-upon by the parties during the July 20 meet-and-confer teleconference. We believed, and continue to believe, that Austin is the most reasonable location for this particular deposition because: (1) the lawyers for both parties would have to travel regardless of whether the deposition is taken in Delaware or Texas; (2) the witness(es) are located in Austin; and (3) the deposition was scheduled for shortly before the scheduled August 17 mediation session in Texas and, therefore, the lawyers were required to travel to Texas in any event for the mediation (obviously more reasonable than requiring the attorneys to make a side trip to Delaware for the deposition and then fly to Texas the next day for the mediation). Nevertheless, in view of ProMOS's election not to take this deposition in Austin on August 15, Freescale has released the witness(es) from their August 15 commitment and will not produce a witness in Delaware on August 15.

Freescale wants to be reasonable regarding rescheduling the 30(b)(6) document deposition to include the expanded deposition scope desired by ProMOS[1], and suggests that the

---

[1] ProMOS has represented to both Freescale and the Court that deposition topics 1-6 are not designed to elicit technical information but instead are "for the purpose of obtaining basic information about the types of technical documents maintained by Freescale, including whether Freescale has circuit diagrams or their equivalents" as recited in its August 6 e-mail correspondence to Judge Farnan. Therefore, based on ProMOS's representations
CLI-1541913v1

JONES DAY

August 13, 2007
Page 2

parties consider rescheduling the deposition for Texas either shortly before or shortly after the next scheduled mediation session, as you offered in your August 9 letter to Marc Blackman regarding Freescale's noticed 30(b)(6) deposition to ProMOS in the E.D. Texas patent case. Freescale is also willing to consider other mutually convenient dates either before or after the next scheduled mediation session.

    Please advise whether ProMOS would like to take this deposition in Austin shortly before or shortly after the next scheduled mediation session, or whether ProMOS would like Freescale to check for other potential deposition dates.

        Very truly yours,

        F. Drexel Feeling

_____
(continued…)

regarding deposition scope, Freescale will make witness(es) available on deposition topics 1-6 who will be prepared to testify at a high level regarding the cache related structure in the accused products and the types of technical documents generated by Freescale that describe the cache related structures, and not regarding technical aspects of the accused products.

CLI-1541913v1

# EXHIBIT L

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MOTOROLA, INC. and<br>FREESCALE SEMICONDUCTOR, INC.,<br>Plaintiffs,<br><br>v.<br><br>MICRON TECHNOLOGY, INC.<br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CAUSE NO. A-04-CA-007-LY<br>(Consolidated with A-04-CA-390-LY) |
| MICRON TECHNOLOGY, INC.,<br>Plaintiff,<br><br>v.<br><br>MOTOROLA, INC.,<br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§ | |

**DECLARATION OF BRETT HETZBERG IN SUPPORT OF PLAINTIFF FREESCALE'S MOTION TO COMPEL PRODUCTION OF CHIP DESIGN DATABASES IN NATIVE ELECTRONIC FORM**

I, Brett Hertzberg, hereby declare as follows:

1. I am an attorney with the firm of Merchant & Gould, P.C., counsel for Plaintiffs Motorola, Inc. and Freescale Semiconductor, Inc., in the captioned matter, and I submit this declaration in conjunction with Plaintiff Freescale's Reply to Micron Technology, Inc.'s Opposition to Motion to Compel Production of Chip Design Databases in Native Electronic Form.

2. I am a trained circuit designer. I was an Electrical Engineer for TLSI, Inc., working on the design, test and manufacturing of custom mixed analog/digital application specific integrated circuits (ASICs). I also worked for the Grumman Aerospace Corporation as an Electrical Engineer in varying research areas, including: ASIC design, hybrid microelectronic

circuit design, microprocessor system design, and software engineering. In addition, I have the following academic credentials: a Master of Science (MS) in Electrical Engineering (EE) and a Master of Science (MS) in Electro-physics (EP), both from Polytechnic University, and a Bachelor of Science (BS, dual major) in Electrical and Computer Engineering (ECE) and Computer Science (CS) from Clarkson University.

     3.     Micron asserts that it has produced "over 53,000 pages" of technical documents on page 3 of its Opposition to Plaintiff Freescale's Motion to Compel, which is equal to about 2-3 gigabytes of information.

     4.     Based on the calculation that 53,000 pages is equal to about 2-3 gigabytes of information, 10 to 200 Gigabytes is approximately 177,000-5,300,000 printed pages.

     5.     The paper schematics that Micron produced are unusable for proving infringement based on their poor print quality. Most of the schematics produced are in a typeface so small that they are barely readable with a magnifying glass. Examples of the small typeface are attached hereto as **Exhibit A,** which contains true and correct copies of a schematics Micron produced (Bates Nos. MIC 004050, 002317, 002320) showing the microscopic print in varying degrees. The signal names on these documents are so unclear they are nearly impossible to read.

     6.     Many of the schematics produced by Micron are illegible to the extent they are not readable even with a microscope. Attached hereto as **Exhibit B** is a true and correct copy of a schematic Micron produced (Bates No. MIC 004117), which is so illegible a microscope would not assist in the reading of the document.

     7.     Other schematics appear to have been printed from "layered" text because some printed text is superimposed over other printed text, thus obscuring the information. Attached

hereto as **Exhibit C** are true and correct copies of schematics Micron produced (Bates Nos. MIC 002453, 002461), which show text in multiple layers. It is impossible to read the text when it overlaps other text.

8.     Other schematics lack page numbers, which indicates that the schematic has likely been redacted. Attached hereto as **Exhibit D** are true and correct copies of two schematic pages Micron produced (Bates Nos. MIC003839-3840), which contain missing page numbers. It is not common for designs that have been sold not to contain page numbers. Also, the print on these pages, like nearly every other schematic page, is microscopic.

9.     Some of the schematics are demonstrably incomplete inasmuch as they appear to be missing low-level output buffer circuitry. Such low-level schematics could depict the actual implantation of the output buffer circuitry that is necessary to determine infringement of the McMahan and Farhang patent(s).

10.     Many of Freescale's attorneys, including myself, are trained circuit designers. Our education and training as circuit designers allows us the ability to analyze semiconductor schematics. We have been unable to analyze the schematics produced by Micron because of their illegibility and poor print quality. It has been impossible to properly analyze the paper schematics that Micron has produced. In any event, even if Micron were to produce legible and complete schematics (which would prove they have ready access to electronic design databases), we still need access to the electronic databases because:

        a) modern circuit designs contain millions of transistors,

        b) circuit designers (like myself) do not work with paper sheet schematics since they contain such a large number of transistors that the paper schematics are near impossible to work with,

c) modern circuits are designed using a hierarchical methodology because the designs are so numerous in transistor count,

d) circuit designers routinely design their own physical structures that are identified with a particular block in the hierarchy because the physical structures are critical to the design,

e) circuit designers routinely trace the signal paths of the schematics through the hierarchical design to the physical structures,

f) circuit designers typically simulate the performance of the circuit with software links between the circuit schematic and the simulation output,

g) the physical structures employed in the circuit blocks are logically tied to the corresponding schematic through software links in the CAD system,

h) the hierarchical pages of the circuit design are logically tied together through software links in the CAD system,

i) paper schematics destroy the ability to efficiently navigate through the hierarchies of the circuit design since the software links are destroyed,

j) paper schematics disconnect the physical structures in the CAD layout from the schematics since the software links are destroyed,

k) the **only** reasonable way to navigate through the hierarchy of the design, trace signal paths, evaluate simulations, and evaluate the physical structures of the design is using an electronically traceable computer aided design (CAD) system that includes all of the software links, and

l) an unreasonable burden is created by reducing the circuit designs to paper form.

11.    M&G generated a list of around 300 accused products from a review of datasheets and other technical information on existing products listed on Micron's website in April of 2004, and further products that remain listed on Micron's website in November of 2004. Based on the fact that these products were in production as recently as November 2004, in conjunction with over 10 years of knowledge, skill, experience, training and education in circuit design, I find it highly likely that Micron has existing design databases for the accused products that are readily accessible without undue burden.

a) In my experience, design databases for existing products must be, and in fact, are frequently accessed by circuit designers for purposes of revising, debugging, testing, evaluating, and modifying designs.

b) For products that are currently in production, I expect that all of the designs, schematics, simulations, and all other related databases/files are still accessible on Micron's current system.

c) For products that have recently left production, or have been recently modified, I expect that these older designs, schematics, simulations, and other related databases/files are in a format that can be easily retrieved onto their existing computer systems without any undue burden.

d) Moreover, I expect that unique designs, schematics, simulations, and other related databases/files do not exist for common product families such that not every identified accused product need have its own unique archival media (tapes, CDs, DVDs, etc.).

12.    Based on over 10 years of knowledge, skill, experience, training and education in circuit design, and in consideration of all of the above-stated reasons, I find Micron's estimate of 430 man-days of work to furnish access to this information to be inflated. I believe a more

reasonable estimate to be approximately one half-hour of time per unique design to locate any

pertinent archival media, and an additional one half-hour of time to restore each unique design to

Micron's computer system from the archival media. Presuming each and every unique design is

currently archived, it is expected that approximately 150 hours of time is needed to retrieve all of

the relevant archival media to Micron's computer systems.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: _Nov 8 2004_       By: _____

Brett Hertzberg

# EXHIBIT M

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MOTOROLA, INC. and | § | |
| FREESCALE SEMICONDUCTOR, INC., | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CAUSE NO. A-04-CA-007-LY |
| | § | (Consolidated with A-04-CA-390-LY) |
| MICRON TECHNOLOGY, INC. | § | |
| Defendant. | § | |

| | | |
|---|---|---|
| MICRON TECHNOLOGY, INC., | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| MOTOROLA, INC., | § | |
| Defendant. | § | |

## SUPPLEMENTAL DECLARATION OF DAVID TAYLOR IN SUPPORT OF PLAINTIFF FREESCALE'S MOTION TO COMPEL PRODUCTION OF CHIP DESIGN DATABASES IN NATIVE ELECTRONIC FORM

I, David Taylor, hereby declare as follows:

1.      I am the owner of Taylor Consulting through which I provide consulting services in the area of product development of DRAMs, SRAMs, PLDs, and Flash EEPROMS, as well as the area of patent infringement analysis, competition analysis, and reverse engineering.

2.      I earned by Bachelor of Science in Electrical Engineering from the Citadel in 1970 and a Masters of Science in Electrical Engineering from Stanford University in 1972.

3.      I have spent more than thirty years in the field of electrical engineering, primarily devoted to the semiconductor industry as a design engineer, product engineer, design manager, and consulting engineer. I have designed or directly supervised the design of approximately



EXHIBIT
9

seventy-five semiconductor products, the majority of which have been related to memory, such as DRAM.

4.      When I consulted for Mosel-Vitelic in a patent litigation against Micron in 1998, I conducted a review of Micron's Physical Database and Simulation Databases at Micron's principal place of business in Boise, Idaho.  During the review, I asked Micron employees to retrieve files from its design databases, which it accomplished quickly and with minimal burden to Micron.   With one exception, a single employee was able to load the files and answer my questions.  I reviewed 2-3 simulation database designs per day.  The exception was a simulation design database that did not link properly, and took less than four hours to fix and load.

5.      Based on my 30 years of knowledge, skill, experience, training and education in circuit design, as well as my previous access to these design databases, Micron likely has existing design databases that are readily accessible without undue burden to Micron for products designed in the past 2-3 years.  In my experience, design databases for existing products must be, and in fact, are frequently accessed by chip designers for purposes of revising, debugging and modifying the designs.  I estimate that an existing database can be loaded in a half an hour to an hour, and multiple databases can be loaded simultaneously.

6.      Based on my 30 years of knowledge, skill, experience, training and education in circuit design, as well as my previous access to these design databases, archival files for physical design databases can be retrieved and accessed with minimal burden.  These databases are likely stored on tape, CD or DVD, and can be loaded to a computer terminal in a half an hour to an hour.   Simulation design databases include links to other databases.  If all of the files are properly linked, the simulation design database can be loaded in a half hour to an hour.  At times,

the simulation design databases may not properly link. When this occurs, a designer may fix the links. I estimate that these links can be generated and the database loaded in less than four hours.

7.    Based on my 30 years of knowledge, skill, experience, training and education in circuit design, as well as my previous access to these design databases, I find Micron's estimate of 430 man-days of work to furnish access to this information to be inflated. I believe the majority of the design databases can be loaded in less than an hour and that a review of the design databases will likely take 1-2 hours each. Additionally, it is likely that many of the databases share the same designs, which will reduce the total review time.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: _Nov 8, 2004_      By: _David Taylor_
                             David Taylor

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MOTOROLA, INC. and | § | |
| FREESCALE SEMICONDUCTOR, INC., | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CAUSE NO. A-04-CA-007-LY |
| | § | (Consolidated with A-04-CA-390-LY) |
| MICRON TECHNOLOGY, INC. | § | |
| Defendant. | § | |

| | | |
|---|---|---|
| MICRON TECHNOLOGY, INC., | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| MOTOROLA, INC., | § | |
| Defendant. | § | |

## <u>DECLARATION OF DAVID TAYLOR IN SUPPORT OF PLAINTIFF FREESCALE'S MOTION TO COMPEL PRODUCTION OF CHIP DESIGN DATABASES IN NATIVE ELECTRONIC FORM</u>

I, David Taylor, hereby declare as follows:

1.  I am the owner of Taylor Consulting through which I provide consulting services in the areas of patent infringement analysis, competition analysis, and reverse engineering relating to DRAMs, SRAMs, PLDs, and Flash EEPROMS.

2.  I earned a Bachelor of Science in Electrical Engineering from the Citadel in 1970 and a Masters of Science in Electrical Engineering from Stanford University in 1972.

3.  I have spent more than thirty years in the field of electrical engineering, primarily devoted to the semiconductor industry as a design engineer, product engineer, design manager, and consulting engineer. I have designed or directly supervised the design of approximately


EXHIBIT
10

seventy-five semiconductor products, the majority of which have been related to memory, such as DRAM.

4.      DRAM chips are not designed on paper, nor do engineers edit, manipulate, view or analyze their design files on paper.  The circuit design files are simply too large and too complex -- they often contain many millions of transistors.  There are three primary types of electronic design databases for DRAM chips:  (1) a Schematic Database; (2) a Physical Database also called "Layouts," and (3) a Simulation Database with input files.

5.      The Schematic Database contains a logical (rather than physical) view of the components of a DRAM chip and illustrates how they are connected together using graphical symbols to depict the various components. Because modern DRAM chips are incredibly complex with millions of transistors and many layers, the schematic database includes hierarchical maps that store the interrelationship between the chip layers and the circuit components.

6.      The Physical Database shows a top down view of the actual physical structure of the chip, including the number of transistors, where they are physically located, and the wiring that connects the millions of transistors together.  The layouts also teach the physical relationship of the circuits and the circuit elements not shown in schematics, such as parasitic elements (capacitance and resistance) defined by a wire length and width.  These parasitic elements are first order design variables in a modern DRAM.

7.      The Simulation Database links the physical layouts to technology files containing profiles of the circuit elements and links the transistors in the circuit schematics to transistor models to simulate the actual timing and performance of the DRAM chip.  Chip designers use the Simulation Database to test chip designs to make sure that they work before they invest a

substantial amount of money to have a set of masks made to fabricate the actual chip. Semiconductor fabricators strive for perfection in their simulations, which predict timing and performance with a very high degree of accuracy. A critical part of the simulation database is the input files which include the variables that have been tested for each chip.

8.     It is often necessary to understand how signals are transmitted from one component to another through a DRAM chip. Tracing signals in the electronic databases, such as the Physical Database and the Schematic Database is made simple and quick through the use of an electronic probe which highlights the signal at issue at every layer of the chip. Tracing a signal on a paper schematics or layouts, on the other hand, is very laborious and may take days depending upon the size and complexity of the chip.

9.     Most modern DRAM design databases employ electronic links between the physical view (layout) and the schematic circuit representation and the transistor models because modern designs are typically so complicated that the designs are prohibitively hard to understand without the various representation and electronic links.

10.     In my experience, it takes a significantly longer time to review paper schematics than an electronic Schematic Database. Although review time varies depending upon the complexity of the chip and type of review, I would estimate very generally that every hour of review of an electronic schematic database will take a day of review of paper schematics.

11.     Because the design databases are very large and use proprietary software, there are logistical issues that need to be considered when producing these databases in connection with litigation. When I worked for Mosel-Vitelic in a patent litigation against Micron in 1998, I conducted a review of the Simulation Databases and physical plots of portions of the accused chips at Micron's principal place of business in Boise, Idaho. Micron assigned a person who was

Case 1:04-cv-00007-LY   Document 64   Filed 11/08/2004   Page 36 of 44

knowledgeable about its design databases to give me a half day of training on its system and then made that person available to assist me. I had the option of running queries myself or having the assigned person act at my direction. The person Micron assigned was very capable and did not appear to know about the litigation. Micron set up a workstation in a private room with a printer where I worked for several days to get the technical information that I needed. This worked out very well and was an efficient way for Mosel-Vitelic to get technical discovery from Micron. I believe a similar arrangement would work well in this lawsuit.

12.    I have reviewed Freescale's following patents:

a.    U.S. Patent No. 5,859,541 titled "Data Processor Having an Output Terminal with Selectable Output Impedances" ("McMahan Patent");

b.    U.S. Patent No. 5,367,494 titled "Randomly Accessible Memory Having Time Overlapping Memory Accesses ("Shebanow Patent");

c.    U.S. Patent No. 5,606,275 titled "Buffer Circuit Having Variable Output Impedance" ("Farhang Patent"); and

d.    U.S. Patent No. 5,798,937 titled "Method and Apparatus for Forming Redundant Vias Between Conductive Layers of an Integrated Circuit" ("Bracha Patent").

13.    It is my opinion that the following documents (paper and electronic) are needed to conclusively determine whether Micron infringes each of these Freescale Patents:

a.    McMahan Patent:

• The Schematic Database and workstation environment for each accused product to show output buffers with electronically traceable signal paths for control logic and selection mechanisms for enabling/disabling

operation of components related to output buffers coupled to an output pin;

- The Physical Database and workstation environment for each accused product to show actual transistors used to implement the output buffers and related control logic/selection mechanism, including electronically traceable signal paths;

- The Simulation Database and workstation environment for each accused product to determine operating modes, and selection mechanisms; and

- Paper Schematics with hierarchical maps and indices to show output buffers with related control logic and selection mechanisms for enabling/disabling operation of components related to output buffers coupled to an output pin, including signal paths.

b.  Shebanow Patent:

- The Schematic Database and workstation environment for each accused product to show all memory storage elements, address and data signal decoders, control, address, and data latches, and logic means coupled to latches, including electronically traceable signals;

- The Physical Database and workstation environment for each accused product to show latch circuits used in memory banks, including electronically traceable signals;

- The Simulation Database and workstation environment for each accused product to determine whether the claimed concurrent access of multiple memory banks is present in Micron's products; and

- Paper Schematics with hierarchical maps to show all memory storage elements, address and data signal decoders, control, address, and data latches, including signal paths.

c.    Farhang Patent:

- The Schematic Database and workstation environment for each accused product to show any analog-to-digital converter mechanisms coupled to a control electrode of an output driver circuit, including electronically traceable signals;

- The Physical Database and workstation environment for each accused product to show binary-weighted output transistors of the output driver circuit, including electronically traceable signals; and

- The Simulation Database and workstation environment for each accused product to show calibration, adjustment, or other processes for the adjustment of output driver circuits; and

- Paper Schematics with hierarchical maps to show any analog-to-digital converter mechanisms coupled to a control electrode of an output driver circuit, including signal paths.

d.    Bracha Patent:

- The Physical Database and workstation environment for each accused product to show locations of redundant vias and where in the design flow the vias are made redundant, including electronically traceable signal paths; and

- Software including pre-processing, post-processing, batch, script, and other software-related mechanisms employed for evaluation, placement, and/or removal of vias.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:  10 - 11 - 04                    By: _____

David Taylor

# EXHIBIT N

# JONES DAY

NORTH POINT · 901 LAKESIDE AVENUE · CLEVELAND, OHIO 44114-1190
TELEPHONE: (216) 586-3939 · FACSIMILE: (216) 579-0212

Direct Number:  (216) 586-7199
f.dfeeling@jonesday.com

JP618219                            August 21, 2007
878247-615013

<u>VIA EMAIL</u>

Susan Cook, Esq.
Hogan & Hartson LLP
555 Thirteenth Street, NW
Washington, DC  20004
smcook@hhlaw.com

Re:    <u>*ProMOS Technologies v. Freescale Semiconductor, Inc.*</u>

Dear Susan:

This is in reply to your letter of August 20.  Please be advised that ProMOS should have all of the critical documents for the accused Freescale products.  Also, please be advised that the RTL code for the accused products is available for inspection pursuant to Paragraph 4 of the Stipulated Protective Order at the Jones Day Cleveland office.  Please let me know who will be coming to inspect the code and on what dates so that I may arrange for building clearance.

Freescale provided to ProMOS the documents that exist in the usual course of business that show the structure and operation of the relevant circuits of the accused products.  Your suggestion, with which we disagree, that ProMOS should be allowed access to Freescale's computer systems to "generate [] circuit diagrams and schematics" (even if the ability to generate such documents existed) because Freescale "repeatedly refused to produce"[1] such generated documents is wrong and makes no sense.  Preliminarily, a party is under no obligation to create documents in response to a discovery request.  To the extent a circuit diagram or schematic for a particular product existed, it was produced.  Moreover, RTL code is primarily used in the design of complex systems instead of circuit diagrams and schematics.  This is the use that Freescale makes of RTL code.  Thus, it is understandable why an abundance of circuit diagrams and schematics do not exist for the accused Freescale products.  And it should also be understandable why Freescale is not in a position to generate unspecified "schematics" that ProMOS might want, given that Freescale has no reason to generate schematics from RTL code (assuming it could be done) for cache memory in the ordinary course of its business, as it is not in the

---

[1]  In the future, we'd prefer that you not be so quick to falsely accuse Freescale of "repeatedly refus[ing] to produce" that which you acknowledge must not exist.  Your statement that one must "generate the circuit diagrams and schematics" acknowledges that the circuit diagrams and schematics do not exist and, consequently, must be generated.

CLI-1544284

JONES DAY

August 21, 2007
Page 2

business of designing cache memory.  Of course, ProMOS's expert may examine the RTL code
for details on the accused Freescale products and generate schematics if that is possible.

Very truly yours,

F. Drexel Feeling