IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PROMOS TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-788 (JJF) |
| | ) | |
| FREESCALE SEMICONDUCTOR, INC., | ) | **EXHIBIT D CONFIDENTIAL** |
| | ) | **FREESCALE INFORMATION** |
| Defendant. | ) | **FILED SEPARATELY UNDER SEAL** |
| | ) | |

## REPLY BRIEF IN SUPPORT OF FREESCALE'S MOTION TO COMPEL PROMOS TO PROVIDE INFRINGEMENT CONTENTIONS AND LICENSING INFORMATION

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Mary B. Graham (#2256)
James W. Parrett, Jr. (#4292)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
302.658.9200

*Attorneys for Freescale Semiconductor, Inc.*

OF COUNSEL:

David L. Witcoff
Kevin P. Ferguson
John M. Michalik
JONES DAY
77 West Wacker
Chicago, IL 60601-1692
312.782.3939

F. Drexel Feeling
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH 44114-1190
216.586.3939

Dated: September 17, 2007

## TABLE OF CONTENTS

Page

INTRODUCTION:  WHERE WE ARE AND PROPOSED PATH FORWARD .........................1

I.    PROMOS SHOULD BE COMPELLED TO PROVIDE ITS
      INFRINGEMENT CONTENTIONS NOW. ...........................................................4

      A.    PROMOS HAS AMPLE INFORMATION FOR
            FRAMING INFRINGEMENT CONTENTIONS. ....................................4

      B.    PROMOS'S EXCUSE ABOUT RTL CODE IS A
            DEFLECTION. ..........................................................................................7

      C.    FORTIN INFRINGEMENT CONTENTIONS. ........................................13

II.   PROMOS SHOULD PRODUCE LICENSING INFORMATION. .......................14

CONCLUSION...................................................................................................................15

## INTRODUCTION:  WHERE WE ARE AND PROPOSED PATH FORWARD

ProMOS confirms in its answering brief that ProMOS has ample information for providing meaningful infringement contentions, if its infringement allegations had a good faith basis.  Its failure, therefore, to provide infringement contentions while burdening Freescale with vast irrelevant discovery to create a purported record of discovery abuse when Freescale predictably balked, speaks volumes.  Either ProMOS can generate infringement contentions to support its allegations but seeks trial by ambush, or it cannot generate them and seeks a deflection.

ProMOS's continued accusations against Freescale of "stonewalling" (p. 6), made even more stridently in its reply brief on its motion to compel (D.I. 63), are baseless and ignore or rewrite the actual record.  Freescale is not at fault for where things stand in discovery.  Freescale properly declined to open its doors to massive technical discovery of all its products having a cache.  Once ProMOS finally narrowed the scope of its discovery on July 6, over two months late, and even though Freescale believed ProMOS was continuing to seek a significant amount of irrelevant information,[1] Freescale diligently produced technical documents, including the RTL code that ProMOS claims to be so important.  It is telling that, while ProMOS has devoted numerous pages of briefing to accusations about the RTL code, it nowhere puts any meat on the bones to explain why the kind of information it already has does not provide all the details it might need.

---

[1]    Incredibly, ProMOS argues that it is entitled to burden Freescale with whatever discovery ProMOS wants, stating that it is entitled to "discovery without a need to prove the relevance" (D.I. 65 at 11).

Although Freescale questions ProMOS's need for RTL code, Freescale properly produced RTL code to ProMOS for the components-at-issue in this case pursuant to the Federal Rules. ProMOS's complaints about the RTL code production could have, and should have, been addressed in a meaningful, personal meet-and-confer session. ProMOS, however, until recently, has repeatedly refused to discuss this issue with Freescale, preferring instead to generate letters with lists of purported problems, which are not designed to solve actual problems, if any. As Freescale has told ProMOS orally and by letter, Freescale stands ready to have such a discussion, and then to reproduce the RTL code, to the extent it reasonably can, in a way that addresses ProMOS's concerns about formatting and files.

ProMOS already has a way under the negotiated protective order to generate the schematics it wants from Freescale's RTL code, and Freescale has told ProMOS that it will do everything reasonable to facilitate ProMOS's review for that purpose. But ProMOS apparently is not interested in doing so.

Freescale appreciates that the Court has been placed in a difficult situation in trying to determine what has gone wrong in discovery, and presumably simply wants to set a course that is reasonable and practical for getting the case to trial. At this point, with the opening briefs on claim construction due in only five weeks (on October 23, 2007), Freescale is concerned that meeting that date is not practical, given that no meaningful step has been taken leading to the designation by ProMOS of a reasonable number of patent claims (presently all claims of all patents are in play, or 106 claims), and the parties are not in a position to identify claim terms in dispute for any claims (if there were a reasonable number of claims). Accordingly, Freescale makes the following suggestions for a path forward.

First, we suggest that the Court order ProMOS, within seven calendar days of the hearing, to provide element-by-element claim readings for all accused claims and product groups based on the technical information it presently has. Freescale will then follow 21 calendar days thereafter with noninfringement charts at a comparable level of detail (roughly October 23).

Second, we suggest that the Court extend the dates for the briefing on claim construction by roughly three weeks, which would hopefully still allow the Court to hold the Markman hearing as scheduled on December 14, 2007, if the Court were willing to have less time before the hearing to review the briefing. Thus, we would ask that opening claim construction briefs be due on November 16, and reply briefs on December 3. We also suggest that the parties exchange the claim terms they believe are in dispute five calendar days following Freescale's provision of its noninfringement charts and then meet and confer to try to reduce the number of such terms to reduce the potential burden on the Court. Ten business days after the exchange of proposed terms for construction, the parties should exchange proposed constructions for each identified term and then meet and confer to try to reach an agreement on constructions.

Third, in the meantime, Freescale will produce its RTL code for each of the accused processor cores using its best reasonable efforts to address ProMOS's concerns about any issues with the format or files, subject to the provisions of paragraph 4 of the protective order governing the production of such code (and subject to the convenience offers Freescale made in its letter of September 14, 2007, attached as Exhibit A). Freescale will also allow ProMOS to print schematics that it wants from the RTL code at the inspection site at Jones Day, subject to allowing Freescale to stamp (as highly confidential, not as code, and with bates numbers) and copy the documents. We also suggest that the Court require that: (1) the parties orally discuss, with appropriate technically knowledgeable people the concerns that ProMOS

- 3 -

may have about particular formatting and files, and how the parties can best reasonably resolve those concerns; (2) that such discussions take place within seven calendar days following the hearing; (3) that Freescale provide the RTL code within ten calendar days following those discussions in accordance with their resolution; and (4) that ProMOS supplement, if necessary, its infringement contentions within 21 calendar days following the reproduction of the RTL code. A proposed form of order is attached (Exhibit B).

I.      PROMOS SHOULD BE COMPELLED TO PROVIDE ITS INFRINGEMENT CONTENTIONS NOW.

   A.      PROMOS HAS AMPLE INFORMATION FOR FRAMING INFRINGEMENT CONTENTIONS.

       As our opening brief noted, ProMOS at the outset of discovery provided infringement contentions for two processor cores for claim 1 of each of the two Chan patents. Its brief characterizes those as "80-some pages of detailed infringement contentions relating to the Chan patents" "reading claim 1 of each of the Chan patents onto representative Freescale products," which "identify, on an element-by-element basis, specific infringing aspects of the representative products and tie each element of the asserted claim to the specific part, process or function of the accused product" (pp. 3, 6). ProMOS's brief admits that it was able (assuming it had a basis for its allegations of infringement) to provide these "specific," "element-by-element" readings based on the publicly-available technical material on Freescale's website (p. 8). Thus, by its own admission, ProMOS could have provided detailed contentions for all the asserted claims and accused products even at the outset of the case with the considerable material it already had available.

       Moreover, since then, Freescale has provided substantial additional technical material that ProMOS could and should be using. Freescale's production of 90,000 pages of

technical material includes some 30,000 – 35,000 pages of technical material not available on its website.[2]   There is no legitimate reason ProMOS could not use all this material to provide infringement contentions.

For example, ProMOS has not provided infringement contentions for the accused e300 processor core, even though it has had available from the website user manual a block diagram depicting the architecture of the core (Exhibit C) and, as produced in discovery, a detailed schematic in a Freescale reference manual depicting the microarchitecture of the entire cache of the e300 (Exhibit D).[3]   The block diagram of the e300 architecture of the core is as detailed as the diagrams ProMOS used for its "detailed," initial infringement contentions (Exhibit B of D.I. 59).   The further diagram of the internal workings of the cache (Exhibit D) provides ProMOS with *more* information than it had when creating its earlier infringement contentions, and there is no legitimate reason why ProMOS could not have provided long ago a "specific," "element-by-element" reading for the e300.   The production of Exhibit C during discovery, and other documents attached as Exhibit D, are but examples of the detailed technical information Freescale produced beyond the website material and which ProMOS has had at its disposal.   ProMOS's representation that, until it prints out schematics from the RTL code, it "will have obtained no new information about the design or layout of the accused products

---

[2]   Although we disagree with ProMOS's allegations regarding its withdrawn motion to compel, we will not address that issue here, as further debate will not help the Court resolve the issues-at-hand.

[3]   Exhibits C and D are but one example showing how ProMOS's assertions about the lack of technically detailed documentation produced by Freescale (e.g. "[c]ritically absent from Freescale's production are any circuit diagrams or schematics of any of its cache memory systems that show the design or layout of the accused products in any amount of detail." (p. 4)) are wrong.   Exhibit C is a detailed system block diagram and Exhibit D plainly is a schematic of the cache memory of the e300.   These are at least as detailed as the schematics in the Chan Patents, and so should be sufficient.

through discovery" (p. 7, n.2) is another one of the many statements in ProMOS's brief that are not correct.

ProMOS argues, however, that it should not have to provide contentions now based on the detailed information it has because it might later supplement its contentions "if necessary" "*after* receiving and reviewing the circuit diagrams and detailed design information to which it is entitled" (p. 5) (original emphasis). ProMOS suggests the possible need for supplementation because its contentions now might have "assumptions" and be "less precise" and that it might later have to "backtrack" (p. 6, n.1). Often in patent cases, a plaintiff will supplement its infringement contentions as a result of additional discovery, and ProMOS may do that later, if appropriate. But the possibility of later supplementation has never been a reason for a plaintiff in Delaware to refuse to provide infringement contentions until no stone has been left unturned. In that regard, we note that ProMOS has never really explained why the RTL code will add anything to its analysis, and indeed, its reservations that it may not need to supplement is telling.

ProMOS further argues that it would be a "waste of time" for it to provide now the 1092 additional claim charts necessary to support its claims of infringement, as though its lack of infringement contentions, particularly on such a grand scale, have no implications for the litigation of the case and the work Freescale needs to do in discovery. At one point, ProMOS even argues that it should not have to provide "full" contentions until expert reports and testimony (p. 4); and it also seems to suggest that it should have to provide contentions only for independent claims (p. 8). ProMOS was required to have a good faith basis for its allegations, and it was required thereafter in discovery to come forward with support for those allegations. Freescale needs to know ProMOS's contentions to know which claims, whether independent or

dependent, and products are actually going to be in issue, to identify all the prior art it may need, and to frame its own responsive contentions. Critically, the process for claim construction cannot even begin until after ProMOS has provided its contentions because, until then, the parties cannot possibly begin to identify the claim terms in dispute.[4] The schedule for claim construction proceedings calls for the parties to provide opening briefs in only five weeks on October 23, 2007 and answering briefs two weeks later on November 7. Given that ProMOS is making, by its own count, 1092 allegations of infringement as to which it has yet to give Freescale any information about ProMOS's infringement contentions, and that the date by which ProMOS will actually provide those contentions may still be weeks away even if ProMOS is ordered now to provide contentions, it is hard to see how the parties can possibly meet that schedule.

**B.    PROMOS'S EXCUSE ABOUT RTL CODE IS A DEFLECTION.**

Despite having serious questions about the relevance or ProMOS's need for it (which ProMOS has not explained), Freescale produced the RTL code which, until ProMOS's recent complaints, Freescale thought ProMOS wanted. Specifically, Freescale endeavored to produce the RTL code that it maintains for the cache-related components at issue in this case in native format. The code was in human-readable form, was text-searchable, and was easily reviewed merely by clicking on the file and reviewing it in any text editor (e.g., Microsoft

---

[4]    Although Freescale's counsel informed ProMOS's counsel that it was willing to discuss a schedule to exchange proposed terms for construction and proposed constructions, Freescale's counsel did not tell ProMOS's counsel that it would get back to it with suggested dates as argued by ProMOS (p. 12). To the contrary, Freescale's counsel informed ProMOS's counsel that it could not identify terms for construction until ProMOS provided infringement contentions for each of the asserted claims.

Word).  As such, Freescale complied with its production obligations under Rule 34 of the Federal Rules of Civil Procedure.

One problem that Freescale has had, however, is that ProMOS keeps changing its RTL code requests.  (*See,* e.g., Exhibit A).  Even now, ProMOS appears to be seeking RTL code for the entirety of the accused products, as opposed to just the cache-related components of the processor core.  It is difficult to resolve this issue when, as here, ProMOS had refused to orally discuss this situation with us, preferring instead to generate letter after letter to attach to its briefs.[5]

As for any unintended technical glitches in the production that may have arisen when Freescale transferred the RTL code from its computer systems to the stand-alone laptop required under the Protective Order, Freescale has been able to investigate and correct them on the spot the few times that ProMOS so advised us during its initial inspection of the RTL code. (*Id.*)  However, ProMOS did not tell Freescale about the other technical glitches it now claims exist (D.I. 65), again apparently preferring to write letters rather than solve any perceived problems.

As we hope the Court will appreciate, a mammoth effort is required to locate and produce for inspection RTL code for all of the accused products ProMOS alleges infringe the Chan patents.  That is why when ProMOS started complaining about the production, Freescale repeatedly offered to discuss the situation to see if the parties could agree upon the scope and logistics of the production and, by so doing, put this matter behind us and allow the parties (and

---

[5]    ProMOS's reply brief (D.I. 65) failed to attach Freescale's letter of September 14 (received before it filed its brief) which addressed ProMOS's issues about the production of RTL code.

the Court) to examine the merits of ProMOS's infringement allegations. ProMOS's refusal to try to reach such an agreement has made this task much more difficult and imposed an unnecessary burden on this Court.

In arguing in effect that it should not have to provide any infringement contentions until it has received and reviewed every possible piece of detailed information that might exist, or which could be created from the RTL code, ProMOS makes a number of accusations about Freescale's production of RTL code. ProMOS's conduct shows it to be more interested in creating a record of alleged discovery abuses than actually identifying and receiving the schematics it vaguely claims it needs.

First, as previously discussed, the timing of the production of the RTL code was a result of ProMOS having refused to come to agreement on a reasonable scope of discovery, and instead having persisted for months on a blanket request for discovery of all products with a cache (D.I. 60). It also persisted in asking Freescale to generate (undefined) schematics, when that was not a task that Freescale could have undertaken (and certainly was not required to undertake). (D.I. 64 at 9-10). To the extent Freescale did not produce schematics that is because the schematics do not exist at Freescale and therefore are not 'electronically stored information' as argued by ProMOS in its reply in support of its motion to compel (D.I. 65 at 6). As Freescale's answering brief in opposition to ProMOS's motion to compel sets out, obtaining schematics is not simply an automatic "conversion" (*Id.*) as ProMOS suggests. Rather, in order to generate the schematics sought by ProMOS, RTL code must be run through software and various parameters must be specified. (D.I. 64 at 9-10) Freescale is under no obligation to create documents, and would not want to do so only to have ProMOS complain later about Freescale's choice of parameters.

- 9 -

The protective order specifically provides a mechanism for ProMOS to generate and obtain copies of schematics from the RTL code produced by Freescale.[6] It is ProMOS's failure to avail itself of that mechanism that has caused it not to have generated schematics. ProMOS's argument that Freescale was in effect asking ProMOS to propound discovery confined to Freescale's view of what might meet the limitations of the Chan patent and therefore Freescale was looking to produce no discovery (p. 11) is wrong. Freescale never suggested that the issue of infringement be decided at the discovery stage. It simply asked, repeatedly, that ProMOS limit the scope of discovery to something reasonably related to the Chan patent claims rather than all Freescale products having a cache. (D.I. 64 at 6-7). Freescale suggested two ways that this could be done, either by ProMOS identifying accused products or by ProMOS's providing some descriptive categories as is often done in patent cases where the plaintiff (unlike here) does not have publicly available to it information that would allow it to identify specific products. Freescale even itself suggested categories (Exhibit A to D.I. 64, p. 3), which demonstrates that ProMOS again is making unsupported and erroneous statements to support its misdirected accusations of discovery abuses.[7]

Indeed, without providing infringement contentions, ProMOS continues to insist that Freescale produce irrelevant information. For example, the Chan patents require bi-

---

[6]     Freescale's answering brief in response to ProMOS's motion to compel explains how RTL code could be used by ProMOS to generate any particular, additional schematics it might want. (D.I. 64, p. 10).

[7]     ProMOS's example that Freescale would have interpreted "port," one of the claim terms, if it were used to help define categories of products, in a way that ProMOS would not have known how Freescale was selecting products (p. 11), makes no sense. ProMOS did not need to use categories that incorporated all the claim terms such as port (or that limited it to such terms), or if it did use that term, it could readily have given a meaning to it that Freescale would have been willing to work with for purposes of discovery (although not necessarily claim construction).

directional data flow between the cache and the processor and between the cache and the main memory. On the other hand, instructions flow in a single direction in products with only an i-cache. Although Freescale has explained to ProMOS that there is no legitimate basis for how the i-cache products can infringe, ProMOS continues to insist that Freescale produce documents on such products without providing any substantive response as to how such products could possibly infringe under any theory.

Second, Freescale has properly insisted on adherence to the protections of the protective order which apply to "computer code," including RTL code.[8]  (D.I. 64 at 12-17). ProMOS's reply brief (D.I. 65, at 9-10) reveals that what ProMOS really wants is a modification of the protective order for computer code such as RTL code, but rather than filing a motion to modify, ProMOS is burying this informal request in a reply brief to a motion to compel.[9]  When negotiating the protective order, Freescale's counsel never told ProMOS's counsel that code would not be an issue, as ProMOS claims. Rather Freescale's counsel told ProMOS's counsel during those negotiations that Freescale did not know what ProMOS was going to request in discovery, but that if they asked for RTL code, we would produce it under the computer code provisions as computer code. ProMOS did not debate that RTL code was computer code, and then agreed to the terms of the protective order treating all "computer code" under the special

---

[8]    In the declaration of Dr. Wedig submitted by ProMOS in support of its reply brief to its motion to compel, unlike the litigation-induced terminology used by ProMOS, Dr. Wedig does not refer to the RTL code produced by Freescale as "RTL documentation," but as "RTL-related materials."

[9]    To facilitate ProMOS's review of the RTL code, without its need to travel to Cleveland, Freescale has offered to make the RTL code available for inspection in either the Jones Day Washington D.C. office (where ProMOS's counsel is located), the Jones Day Los Angeles office (where ProMOS's expert is located), or any other Jones Day office in the United States ProMOS requests. (Exhibit A at 2).

provisions of paragraph 4. As sensitive as schematics can be, RTL code itself is much more sensitive because it can be used to replicate products with minimal effort. This is the reason Freescale insisted from the outset that the RTL code had to be treated just like any other code.

As far as Freescale's refusal to allow ProMOS to print copies other than as allowed under the protective order, Freescale objected to printing the RTL code itself outside the source code provision.[10] Freescale did not object to the printing of schematics generated from the code, which are covered by the other, non-code "highly-confidential" provisions of the protective order.

Third, the biggest problem in the production of RTL code is that ProMOS has seemed more intent on finding purported problems than actually using the code to obtain technical information. On the two occasions when ProMOS has inspected code, counsel for Freescale asked if there were any problems. During the first inspection, ProMOS identified two problems, which were resolved on the spot in a manner of minutes. After resolving those two issues, Freescale's counsel asked a few more times if there were any other problems, and ProMOS indicated that everything was fine. Only several days later, out of the blue, did ProMOS send a letter (not calling) stating that there in fact had been various problems. Then when ProMOS's expert returned on Friday, September 7, counsel for Freescale again asked ProMOS's counsel if we could have a call with her and the experts in order try to identify and resolve any problems they might perceive. ProMOS's refused, and instead sent another letter the

---

[10]     Contrary to ProMOS's complaints regarding any alleged failure by Freescale to print files, ProMOS instructed Freescale not to print any files without a formal request (Exhibit A at 3). Freescale responded to the one file ProMOS formally requested be printed stating that it would be produced once ProMOS identified where the copy would be maintained, as required by the protective order. (*Id.*)

following week on September 12 detailing issues that might well have been resolved on the spot at the inspection, had they been raised there in an atmosphere conducive to working things out.[11] Thus when ProMOS's expert avers that his inspection on September 7 was of "little or no value," ProMOS has only itself to blame. In fact, the "value" that ProMOS apparently wanted was to document alleged failures rather than to make use of the code; otherwise ProMOS would have engaged in actual discussions as Freescale proposed.

C.    FORTIN INFRINGEMENT CONTENTIONS.

ProMOS complains that Freescale raised the issue of ProMOS's contentions relating to Fortin, when ProMOS had committed to providing supplemental contentions by September 17. As noted in our opening brief, we only did so in order to preserve the ability to have the issue heard if the contentions were inadequate. Given the short time frame until claim construction, it was essential that Freescale do this, because there likely would not be another opportunity to address any issues with the court before claim construction.

ProMOS also complains that Freescale asked that it be required to provide contentions on indirect infringement. But until its brief, ProMOS had never stated that it was no longer asserting indirect infringement, which it pled in its complaint. ProMOS also complains that we raise certain other interrogatories, but those relate specifically to the issue of infringement of the Fortin patent and Freescale needs contentions addressed to the issues raised in those interrogatories.

---

[11]    For example, Dr. Wedig stated in his declaration that he was unable to open a tar file for the e300c2 core (Exhibit A to D.I. 65, ¶ 11c), yet when the same issue arose during ProMOS's prior inspection, the issue was resolved in minutes.

Finally, ProMOS raises the issue of PACVD as providing the basis for its continued assertion of the Fortin patent against Freescale's CVD processes. Without arguing the merits of ProMOS's argument, it is worth noting that ProMOS's brief is its first attempt to identify to Freescale its basis for asserting the Fortin patent against Freescale's HiP7 and HiP8 CVD processes, something it could have and should have done at the outset of the litigation in response to Freescale's Interrogatory No. 1.

## II.    PROMOS SHOULD PRODUCE LICENSING INFORMATION.

Similar to ProMOS's refusal to provide its infringement contentions, ProMOS is refusing to provide Freescale with information regarding the alleged prior licensing of the patents-in-suit again to create a trial by ambush. Although ProMOS contends that the patents-in-suit previously have been licensed, ProMOS has failed to set forth its complete factual basis for such contention in response to interrogatory no. 9 or to produce all documents relating to the licensing by any person or entity of the patents-in-suit. ProMOS claims that MVI, the prior owner of the patents-in-suit, and not ProMOS, is in possession of the license agreements. But it appears that ProMOS intends to obtain these documents from MVI and use them at trial. Although ProMOS acknowledges that it will not be permitted to introduce such evidence at trial if it is not produced during discovery, ProMOS should not be allowed to delay and later blindside Freescale with the production of this information. If ProMOS intends to, and has the ability to, obtain this information from MVI, ProMOS should do so now.

<u>CONCLUSION</u>

For the foregoing reasons and the reasons set forth in Freescale's opening brief, Freescale's motion to compel should be granted and the Court should enter an order in the form of Exhibit B attached hereto.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Mary B. Graham*

Mary B. Graham (#2256)
James W. Parrett, Jr. (#4292)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
302.658.9200

*Attorneys for Freescale Semiconductor, Inc.*

OF COUNSEL:

David L. Witcoff
Kevin P. Ferguson
John M. Michalik
JONES DAY
77 West Wacker
Chicago, IL  60601-1692
312.782.3939

F. Drexel Feeling
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH  44114-1190
216.586.3939

Dated:  September 17, 2007
1231826

## CERTIFICATE OF SERVICE

I hereby certify that on September 17, 2007, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to the following:

> John G. Day, Esquire
> Steven J. Balick, Esquire
> ASHBY & GEDDES

Additionally, I hereby certify that true and correct copies of the foregoing were caused to be served on September 17, 2007 upon the following individuals in the manner indicated:

**BY E-MAIL AND HAND DELIVERY**

John G. Day, Esquire
Steven J. Balick, Esquire
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
Wilmington, DE 19899

**jday@ashby-geddes.com**
**sbalick@ashby-geddes.com**

**BY E-MAIL**

Steven J. Routh, Esquire
HOGAN & HARTSON LLP
**sjrouth@hhlaw.com**

William H. Wright, Esquire
HOGAN & HARTSON LLP
**whwright@hhlaw.com**

William C. Gooding, Esquire
GOODING & CRITTENDEN, L.L.P.
**billgooding@gooding-crittenden.com**

Sten A. Jensen, Esquire
HOGAN & HARTSON LLP
**sajensen@hhlaw.com**

*/s/ Mary B. Graham*

_____
Mary B. Graham (#2256)

789672

EXHIBIT A

# JONES DAY

NORTH POINT • 901 LAKESIDE AVENUE • CLEVELAND, OHIO 44114-1190
TELEPHONE: (216) 586-3939 • FACSIMILE: (216) 579-0212

Direct Number:  (216) 586-7199
f.dfeeling@jonesday.com

JP618219
878247-615013

September 14, 2007

<u>VIA EMAIL</u>

Susan Cook, Esq.
Hogan & Hartson LLP
555 Thirteenth Street, NW
Washington, DC  20004
smcook@hhlaw.com

Re:    *ProMOS Technologies v. Freescale Semiconductor, Inc.*

Dear Susan:

This is in reply to your September 12 letter about RTL code in which you raise some specific concerns about the RTL files as produced to you last Friday and other more general concerns about your ability to access the code conveniently.

Freescale disagrees with many of the comments in your September 12 letter.  The problems ProMOS claims to be having are no doubt exacerbated by its refusal to discuss these issues live with us instead of launching another one of its letter-writing campaigns.

For example, while we appreciate your letter's effort to identify concerns about specific files and ProMOS's expert's desire to have the code produced in a certain way (with a hierarchical organization, not compressed and in ".v format"), these are matters that could have been discussed when your technically knowledgeable expert and patent agent were here last week and would more productively have been handled that way.  Indeed, two weeks ago when you were in Cleveland reviewing code you identified a file for the SC3400 that was in an archive file format (.tar), and we unpacked the file thereby resolving the issue on the spot to your satisfaction in a matter of minutes.  We could have attempted to address concerns raised in this letter in a similar expeditious manner.

Another problem has been that ProMOS's RTL code requests keep changing.  Therefore, as I also told you last week, to avoid any potential future disputes, and even though Freescale disputes the relevance of much of what ProMOS now appears to be demanding, Freescale will produce the current RTL code for each accused processor core that is within Freescale's possession, custody, or control, subject to obtaining third party consent.  To the extent third party consent is required prior to producing any portion of the RTL code, Freescale will promptly seek such consent.

CLI-1550561v1

ATLANTA • BEIJING • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • FRANKFURT • HONG KONG • HOUSTON
IRVINE • LONDON • LOS ANGELES • MADRID • MILAN • MOSCOW • MUNICH • NEW DELHI • NEW YORK • PARIS • PITTSBURGH
SAN DIEGO • SAN FRANCISCO • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

September 14, 2007
Page 2


Your letter at times refers to RTL code for an entire chip.  We assume that you are not actually intending to request the RTL code for the entire chip given that ProMOS has previously requested RTL code for only the cache related components of the processor core, but if this was not a mistake and ProMOS actually is requesting RTL code for more than the processor core, please explain why the RTL code for the entire processor core is not sufficient.  We will look into and hopefully be able to address all the specific concerns of your letter in our re-production of the code (or tell you why your request is not feasible or is incorrect), but without the ability to talk, there may be further misunderstandings.  However, since you have elected to proceed with the letter approach, we will do our best to work with that.  In any event, we will not produce the code a third time.

In addition, as is already clear in the record, Freescale does not agree that RTL code should be treated under the highly confidential designation of the protective order and Freescale will continue to insist upon adherence to the terms of the protective order that ProMOS agreed to.  As discussed in our motion papers currently before the Court, Freescale's RTL code is among the most highly-sensitive information at Freescale, which is why we insist on adherence to the terms of the Stipulated Protective Order.  However, we are certainly willing to address your concerns about convenience and to facilitate ProMOS's review of the RTL code.  Thus, Freescale will make the code available for inspection in either the Jones Day Washington, D.C. office (where you are located), the Jones Day Los Angeles office (where your expert is located), or any other Jones Day office in the United States you designate.[1]  (We assume that if there is a need for Freescale to inspect any code of ProMOS that ProMOS will extend the same courtesy to Freescale.)  Likewise, we are willing to work with you and your expert to facilitate review of more than one module at a time.[2]

The stipulated protective order addresses your request for the use of Verilog software programs with the RTL code.  Paragraph 4 of the stipulated protective order states in pertinent part:

> If the requesting party [ProMOS] wants to use specific software to
> view the Code, it must provide the producing party's Outside
> Counsel of Record with such software and certify that it has
> obtained all necessary licenses for such use.  If the requesting party
> is not willing to provide both the software and certification of

---

[1]    We initially made the RTL code available in Cleveland so we could more expeditiously address any technical issues that arose, such as the one related to the SC3400 code described above.

[2]    We are not sure why the expert could not have looked at two modules at the same time on one screen, as he could merely have opened two windows and configured them side-by-side on the screen.  This is another example of an issue that we would have been happy to discuss (had you been willing) when he was here.  But in any event, if having two screens will help the expert review two modules side-by-side, we will endeavor to provide that.

JONES DAY

September 14, 2007
Page 3

> license, then the producing party is not obligated to provide any
> software identified by the requesting party.

Pursuant to paragraph 4, we will load any properly licensed Verilog software programs you obtain on the laptop containing the RTL code, allow you to generate and print whatever schematics you desire, and provide copies of those schematics to you after we have marked the schematic pages with the appropriate bates designation and confidentiality legend.

Regarding your request for printed copies of a single file, as you may recall, when you inspected the RTL code in Cleveland on August 31, you instructed that ProMOS would send a letter detailing its formal printing request. Freescale waited for ProMOS's formal request, as you instructed, before printing anything. As far as I am aware the only formal printing request we received was for a single file to be printed. We remain prepared to send to you via overnight delivery a single printed copy of the file, pursuant to the terms of paragraph 4 of the protective order, which states in pertinent part that ProMOS's outside counsel "must maintain the paper copy under lock and key and *must provide the producing party with advance notice of where the paper copy will be maintained*." (emphasis added). As soon as you provide advance notice of where the paper copy will be maintained under lock and key, we will send a single printed copy of the file to you. If ProMOS truly wants a copy of the file to be filed with the Court, please let us know and Freescale will lodge a copy of that file with the Court under seal.

Finally, regarding your question concerning the number of cores, the products identified in ProMOS's list of accused products utilize 19 classes of processor cores (rather than the 21 previously estimated). Of the 19 processor cores, RTL code for 11 of the cores were produced. RTL code for one core was produced twice. Of the remaining processor cores, Freescale has not located RTL code for two of the cores, the e200z6 and MC68060 cores. Freescale is still looking for this and if it is located, it will be produced. As you know, the e200z3 does not have a cache, and ProMOS removed products incorporating it from the accused product list. Two of the remaining processor cores, the e200z0 and e200z1, also lack a cache of any kind. The final three cores were designed by ARM Ltd., and ARM Ltd. owns the intellectual property for those cores. Pursuant to a non-disclosure agreement with ARM Ltd., ProMOS has in its possession RTL code for one of the three accused ARM cores, the ARM926EJ-S core, but does not have in its possession, custody, or control, RTL code for the remaining two accused ARM processor cores. Freescale is seeking consent from ARM for the production of ARM's RTL code for the ARM926EJ-S core.

JONES DAY

September 14, 2007
Page 4


     As you can tell, Freescale is committed to removing any excuses that ProMOS claims will further prevent an examination of ProMOS's infringement claims on the merits.  If you have any additional questions or concerns regarding the matter, please feel free to contact me.


                             Very truly yours,

                             F. Drexel Feeling

cc:    David L. Witcoff, Esq.
       Mary B. Graham, Esq.
       Karl M. Maersch, Esq.

EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PROMOS TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-788 (JJF) |
| | ) | |
| FREESCALE SEMICONDUCTOR, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## [PROPOSED] ORDER

Having considered the parties' cross motions to compel, IT IS HEREBY ORDERED this ___ day of _____, 2007 that:

(1)    Within seven calendar days of the September 21, 2007 motion hearing, ProMOS shall provide element-by-element claim readings for all accused claims and product groups based on the technical information it presently has. Freescale shall then have 21 calendar days after service of ProMOS's claim readings to thereafter provide noninfringement charts at a comparable level of detail.

(2)    The parties shall exchange the claim terms they believe are in dispute five calendar days following Freescale's provision of its noninfringement charts and then meet and confer to try to reduce the number of such terms. Ten calendar days after the exchange of proposed terms for construction, the parties shall exchange proposed constructions for each identified term and then meet and confer to try to reach an agreement on constructions.

(3)    The dates for briefing on claim construction are extended such that opening claim construction briefs shall be due on November 16, 2007 and reply briefs shall be due on December 3, 2007.

(4)    Freescale, as it agreed to do, shall produce its RTL code for each of the accused processor cores using its best reasonable efforts to address ProMOS's concerns about any issues with the format or files, subject to the provisions of paragraph 4 of the protective order governing the production of such code.  Freescale, as it has also agreed to do, shall allow ProMOS to print schematics that ProMOS wants from the RTL code at the inspection site at Jones Day, subject to allowing Freescale to stamp the documents in accordance with the protective order (as highly confidential, not as code, and with bates numbers) and to copy the documents.

(5)    In order to facilitate the production of RTL code:

(a)    the parties shall orally discuss, with appropriate technically knowledgeable people, any concerns that ProMOS may have about particular formatting and files, and how the parties can best reasonably resolve those concerns;

(b)    such discussions shall take place within seven calendar days following the hearing;

(c)    Freescale shall provide the RTL code within ten calendar days following those discussions in accordance with their resolution; and

(d)    ProMOS shall supplement, if necessary, its infringement contentions within 21 calendar days following the re-production of the RTL code.

_____
UNITED STATES DISTRICT JUDGE

1235103

- 2 -

EXHIBIT C

**Overview**

Figure 1-1 shows a block diagram of the e300c1 core.



**Figure 1-1. e300c1 Core Block Diagram**

FSI Del00011943

EXHIBIT D

CONFIDENTIAL EXHIBIT