## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PROMOS TECHNOLOGIES, INC., | ) | **REDACTED** |
| | ) | **PUBLIC VERSION** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-788-JJF |
| | ) | |
| FREESCALE SEMICONDUCTOR, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF PROMOS TECHNOLOGIES, INC.'S
## REPLY BRIEF IN SUPPORT OF ITS MOTION TO COMPEL

Freescale's Opposition to ProMOS's Motion to Compel ("Freescale Opp.") repeatedly

represents that Freescale already has complied with all of its discovery obligations, including by

producing all relevant technical documents. Freescale Opp. at 1-2, 9, 11, 12. That is simply not

the case. In fact, on the same day that Freescale's counsel filed that Opposition brief, last Friday

September 7, they sent a letter to ProMOS' counsel that effectively acknowledged the deficiencies

in Freescale's production of technical documents and proposed "starting over" with a "fresh

production" by Freescale of the key technical documents – referred to as "RTL documents"— that

Freescale has been dragging its feet in producing for the past several months. The accompanying

Declaration of expert witness Robert Wedig confirms in detail that Freescale indeed has continued

to play games in discovery and still has not produced the key RTL documents or any other similar

technical documents that provide detailed descriptions of the accused products. Accordingly, it

hard to imagine how or why Freescale has represented to this Court that it already had produced its

technical documents, including RTL documents, even before ProMOS filed its Motion to Compel.

Id.

As ProMOS explained in its Motion to Compel, and as explained further below and in the accompanying Declaration of Robert Wedig, Freescale has failed to provide ProMOS with any of the documents that are most critical to the issue of infringement of two of the three patents asserted in this case: design information showing in detail the layout and functioning of the accused products, either in the form of circuit diagrams or the raw data underlying the circuit diagrams. Without producing those materials – by providing ProMOS either with direct access to Freescale's computer assisted design ("CAD") database or with electronic copies of the relevant RTL documentation so that ProMOS's experts may meaningfully review that documentation and generate circuit diagrams themselves – Freescale cannot possibly be deemed to have fulfilled its discovery obligations.  In its Opposition, Freescale seeks to defend its sorry record of noncompliance with discovery obligations by making a number of scattershot arguments, none of which justifies its discovery misconduct or explains why ProMOS's motion should not be granted.

First, Freescale attempts to deflect the blame for its own dilatory discovery conduct by reproaching ProMOS for not sooner performing the ministerial task of generating a list of Freescale's own products that contain cache memory – something that Freescale easily could and should have done on its own as soon as it received ProMOS's discovery requests in mid-April.

Freescale then wrongly suggests that it should be exempted from providing ProMOS access to design information stored electronically on its CAD databases because it claims not to have generated and/or maintained circuit diagrams that admittedly can be generated using that design information – ignoring the fact that under the rules governing electronic discovery, the electronic design information itself is discoverable, whether or not Freescale has already generated and/or maintained circuit diagrams.

`

Next, Freescale argues that it should not be required to produce RTL documentation pursuant to the "highly confidential" provisions of the Protective Order because it asserts the materials are, ironically, truly highly confidential. However, Freescale has failed to demonstrate that the "highly confidential" protections of the Protective Order fail to address its confidentiality concerns. Moreover, the circumstances under which Freescale has made the RTL materials available have been exceedingly draconian, making clear that Freescale is attempting to use the restrictions of Paragraph 4 to interfere with ProMOS's ability to prepare its case for trial.

Freescale further asks this Court to endorse Freescale's refusal to comply with notices of deposition and its blanket refusal to agree to appear for a Rule 30(b)(6) deposition in this District, instead insisting that depositions of its employees take place at their principal place of business in Texas. The Rule 30(b)(6) deposition for which Freescale has failed to appear is a simple document deposition aimed at getting to the bottom of what technical documents Freescale maintains with respect to the design of its products containing cache memories. The motivation for Freescale's refusal to produce a Rule 30(b)(6) deponent on topics relating to technical documents is apparent from Freescale's more recent conduct in belatedly producing RTL documents in an unduly restricted and clearly deficient manner: Freescale has made a concerted effort to avoid and delay discovery both of technical design information regarding the accused products and of the contorted manner in which it has maintained and produced any such information.

Finally, because Freescale's discovery abuses have severely prejudiced ProMOS – both by delaying discovery and by forcing ProMOS to incur substantial attorneys' fees and expert fees in seeking to compel Freescale to comply with its discovery obligations – ProMOS should be provided its costs and expenses, including fees, incurred in seeking the discovery and in preparing both motions.

1.    **Freescale Intentionally Has Been Dragging its Feet in Discovery for Months.**

Freescale's Opposition misleadingly suggests that while ProMOS's discovery requests initially sought "broad discovery on virtually Freescale's entire product line," Freescale Opp. at 4, ProMOS shifted tactics on July 6, 2007 and narrowed the scope of discovery down to 95 products. Freescale Opp. at 7. That is not the case. To begin with, ProMOS's initial document requests, served in mid-April, were not overly broad. They appropriately defined "Freescale Products" as any products using, incorporating, or working with cache memory. Exhibit A to ProMOS's Motion to Compel at 5. Contrary to Freescale's broad-sweeping assertions, the mere fact that cache memory has existed in the prior art does not mean that some or all of Freescale's cache memory products do not infringe the patents in suit. Freescale seeks to avoid complying with its discovery obligations by taking self-serving positions on the scope of the claims, and then confining the scope of discovery to its narrow reading of the claims. Freescale Opp. at 4-6. That is not how the discovery process works, particularly where, as in this case, the document discovery period closes long before the Court has the chance to receive claim construction briefs, hold a Markman hearing, and issue a claim construction ruling. If Freescale's conduct were to be condoned, then every defendant could sidestep its discovery obligations by asserting that none of its products meet its own narrow reading of the claims.

Moreover, rather than narrowing the products in dispute, ProMOS's July 6, 2007 list did no more than delineate by product number the specific Freescale products that contain cache memories and therefore that ProMOS believed met the definition of "Freescale Products" spelled out in ProMOS's discovery requests. The scope of products covered by the July 6, 2007 list was no more – and no less – than the scope of products covered by the definition of "Freescale Products" in ProMOS's mid-April document requests. There is no reason that Freescale could not

have generated the exact same list – and likely an even more accurate one – in mid-April as soon as it received the discovery requests. Freescale simply chose not to perform the ministerial exercise of identifying its products that met the definitions in ProMOS's discovery requests, instead taking the obstructionist position that it would not produce technical documents for <u>any</u> products not specifically identified by ProMOS. Because Freescale has more information about its own products than ProMOS, the burden should not fall on ProMOS to identify Freescale products containing cache memories, nor should Freescale be permitted to evade compliance with its discovery obligations until after ProMOS attempts to do so. For these reasons, Freescale's assertion that it was unable to produce technical or financial documents until after July 6, 2007 is flat out wrong.

In any event, regardless of the state of events prior to July 6, 2007, there is no dispute that Freescale has had that list of specific products for two and a half months, and yet still has failed to comply with its discovery obligations. Although Freescale did produce some user manuals and reference manuals for the products contained on the July 6, 2007 list, it has yet to provide ProMOS with meaningful access to design information or complete information on damages for any of those products.

Along the same lines, Freescale's suggestion that ProMOS's agreement to withdraw the previous motion to compel somehow proves that the motion was "premature and not supported," Freescale Opp. at 4 n.1, is outright offensive. Freescale's counsel caused ProMOS's counsel to withdraw the motion by making express promises regarding Freescale's willingness to produce technical documents in a timely manner – promises which Freescale ignored as soon as ProMOS withdrew the motion to compel. Indeed, the mere fact that Freescale has yet to produce circuit design information in any meaningful way makes clear that the initial motion was warranted.

2.   **The Court Should Compel Freescale to Generate and Produce Circuit Diagrams and To Permit ProMOS's Experts Meaningful Review of the Design-Related Materials on the CAD Databases.**

Freescale's Opposition is very carefully worded.  Nowhere does Freescale state that it is incapable of generating circuit diagrams or that it has not done so.  Instead, Freescale seems to be taking the position that because it "does not typically" maintain circuit diagrams in paper form, Freescale Opp. at 9, it has no obligation to (a) generate circuit diagrams from the data it admittedly maintains, or (b) produce the underlying data or allow ProMOS's experts to inspect that data to generate circuit diagram printouts.  Freescale's position is contrary to the Federal Rules.

First, Freescale wrongly asserts that it should be absolved from producing electronic data stored in its CAD databases relating to the design of the accused products simply because that information has not yet been used by Freescale to generate or print actual circuit diagrams.  Freescale Opp. at 9.  Freescale's argument misses the mark.  Rule 34(a) of the Federal Rules of Civil Procedure imposes upon parties an obligation to product for inspection not just "documents" in their traditional sense but also:

> *electronically stored information* – including  writings, drawings, graphs, charts, photographs, sound recordings, images, and *other data or data compilations stored in any medium from which information can be obtained…*"

Rule 34(a).  The Advisory Committee Notes to the 2006 amendment indicate that "electronically stored information may exist in dynamic databases and other forms far different from fixed expression on paper."  They also note, "Rule 34(a) is amended to confirm that discovery of electronically stored information stands on equal footing with discovery of paper documents."   In light of the plain mandates of Rule 34, there simply is no basis for Freescale's assertion that it need not produce the electronic design information contained on its CAD databases merely because such data has not yet been converted into circuit diagrams and printed out on paper.

Second, if Freescale is unable to generate circuit diagrams without input from ProMOS about the parameters of the diagrams (as suggested on pages 9-10 of Freescale's Opposition), then ProMOS's experts should be provided access to Freescale's computer systems so that they may review and analyze the design information that is provided to and stored in the machines, and generate circuit diagrams according to the parameters they deem appropriate. That is the method that is preferred by ProMOS, rather than having Freescale generate the diagrams, and that is the method mandated by the Federal Rules of Procedure. Alternatively, ProMOS's experts should at least be given electronic copies of the RTL documentation and any other design information or programs maintained by Freescale, pursuant to the "highly confidential" provisions of the Protective Order, as discussed below.

3. **Freescale Should Be Compelled to Provide ProMOS With Electronic Copies of the RTL Documentation for All Freescale Products in the Format and Organizational Manner in Which They Are Ordinarily Created, Used, and Maintained**

Freescale's assertion that it already has produced its RTL documentation is flat out wrong. Freescale Opp. at 9. Moreover, Freescale's assertion is truly remarkable given that on the same day that it filed is Opposition, Freescale's counsel effectively admitted that there were serious deficiencies in the RTL documentation that it made available in its Cleveland offices and that Freescale would be willing to "start over" in its production of that documentation. Exhibit C.

As set forth in greater detail below, and as acknowledged by its own counsel, Freescale has yet to make any RTL documentation available to ProMOS in any usable way. Instead, Freescale has made a limited number of RTL materials for some, but not all, of the Freescale Products available on a single off-line laptop at Jones Day's offices in Cleveland. Freescale has refused to permit ProMOS to bring a printer into the conference room where the laptop is located, and instead has insisted that all print requests be filtered through Freescale's counsel. Amazingly, however,

Freescale's counsel has ignored every single request made by ProMOS's counsel to date that it print specific documents; indeed, Freescale's counsel has yet to produce a single printout of any of the materials requested by ProMOS's counsel or experts. Even more amazingly, when ProMOS's counsel specifically advised Freescale's counsel that it wished to obtain a printout of one of the documents so that it could attach it to a brief filed with this Court on September 7, 2007 for purposes of showing the Court the type of materials that are in dispute, Exhibit B hereto, Freescale's counsel simply ignored that request. Freescale's refusal to print the relevant information has directly interfered with ProMOS's ability to present its arguments to this Court. It is not hard to imagine that this problem would be magnified ten-fold if ProMOS were required to go through Freescale in order to obtain copies of documents for use at depositions and at trial. The self-serving and unfair manner in which Freescale has insisted upon conducting the production of RTL materials to date suggests that Freescale may be attempting to use the restrictions of Paragraph 4 of Protective Order to interfere with ProMOS's ability to prepare its case for trial.

A.    **Paragraph 4 of the Protective Order Does Not (And Indeed Should Not) Apply to RTL Documentation**

As explained in ProMOS's motion and in the Declaration attached to the opening brief, RTL documentation does not qualify as "computer code" so as to invoke the protections of Paragraph 4. In response to this point, Freescale makes a strained argument: it admits that Mr. McAlexander "draws a distinction between RTL … and 'computer code'" in paragraph 6 of his Declaration, but then suggests that his failure to state the precise phrase: "RTL code is not computer code" somehow should be taken as an admission that RTL and computer code are one and the same. Freescale Opp. at 13. Freescale's effort to contort the words used in the Declaration cannot alter their plain meaning: that RTL documentation and computer code are different beasts. Ex. E to ProMOS's Opening Brief, Declaration of Joseph McAlexander ¶ 6.

8

Freescale also is wrong to suggest that "ProMOS knew that Freescale considered RTL code to be covered by Paragraph 4 and then subsequently agreed to this provision." Freescale Opp. at 13. As noted in ProMOS's motion, Freescale's counsel represented to ProMOS's counsel that it did not believe that Paragraph 4 would even be an issue in this lawsuit. At best, the parties had a different understanding of what would and would not be covered by Paragraph 4 of the Protective Order. More importantly, ProMOS certainly did not understand during the protective order negotiations that Freescale would refuse to produce circuit diagrams and would instead attempt to produce critical technical documents *only* pursuant to the restrictive provisions of Paragraph 4 of the draft Protective Order. If the Protective Order is read to allow such a result, that would be directly contrary to Freescale's counsel's acknowledgement during the protective order negotiations that "computer code" was not likely to be a source of discovery in this case or in the pending case in the Eastern District of Texas in which Freescale sued ProMOS.

Most importantly, regardless of the parties' different positions and understandings regarding how Paragraph 4 applies to RTL documentation, this Court has the power to clarify its Protective Order at any time, and it should do so now. See Protective Order ¶¶ 37-38 (making explicit that the parties may apply to the Court at any time "to relax or rescind the restrictions of this Order when convenience or necessity requires" and that the Court retains the power "to amend this Order as the Court deems appropriate."). The delay, expense, and difficulties that Freescale has imposed on ProMOS by hiding behind the purported protections of Paragraph 4, set forth more fully below, necessitate that this Court clarify the Protective Order to make explicit that Paragraph 4 does not apply to design information such as RTL documentation. 1

---

1    Freescale asserts that RTL documentation is "highly-sensitive" and that "if the code fell into the hands of any of Freescale's competitors, they would be able to manufacture products identical to Freescale's." Freescale Opp. at 12. But that is true of any design-related information, including circuit diagrams (which are, after all, just another form in which the very same design data appears). Nonetheless,

**B.     Freescale's "Production" of RTL Documentation Has Been Utterly Useless to ProMOS**

Since filing its motion to compel, ProMOS's counsel and experts have spent three full days at Jones Day's offices in Cleveland reviewing the RTL materials made available by Freescale. Given the limited and draconian manner in which Freescale has made the RTL materials available, ProMOS's ability to get anything meaningful out of Freescale's purported "production" of RTL documentation is negligible, at best.  Upon our completion of those three days of review, and after we established the extensive deficiencies in Freescale's production of RTL documentation, Freescale's counsel admitted in writing that the parties really should be "starting over" with a "fresh production of RTL code for inspection."  Exhibit C.  All of Freescale's arguments about compliance with its discovery obligations must be read in light of that admission and that undisputed reality: Freescale *still* has not provided ProMOS with detailed design documents relating to its cache memory products, five months after production of those documents was due.

First, Freescale took the position that ProMOS's counsel and experts must travel to Cleveland to review the materials on a single off-line laptop at Jones Day's office.  That position not only is expensive for ProMOS and a tremendous burden for its experts and lawyers, who have other commitments that prevent them from spending more than a day or two at a time in Cleveland, but it also undermines meaningful review and use of the documents as well as ProMOS's ability to prepare its case for trial.  ProMOS's experts have estimated that, given the serious problems with Freescale's production of RTL documentation outlined below, it would take many weeks, if not

---

parties routinely produce copies of circuit diagrams in patent cases pursuant to the "highly confidential – outside counsel only" protections of Protective Orders. Indeed, ProMOS produced hundreds of pages of its own circuit diagrams pursuant to an identical protective order in the parallel case proceeding in the Eastern District of Texas. Freescale has not argued – nor could it – that the "highly confidential – outside counsel only" provisions of the Protective Order are insufficient to protect Freescale from the competitive harm about which it is concerned.

months, of full 9-hour days to review and synthesize the RTL materials in Cleveland.  Exhibit A (Declaration of Robert Wedig) ¶ 12.  It simply does not make sense for them to have to spend the next few months in Cleveland to obtain access to Freescale's design information that is comparable to what ProMOS has sent to Freescale by Federal Express in the Texas case brought by Freescale against ProMOS.  See Footnote 1, *infra*.

Second, ProMOS's experts' work has been significantly hindered by the fact that they are being required to review the materials on a single screen on an off-line laptop provided by Freescale, without the ability to print or copy any of the materials.  Id. ¶ 4.  Although ProMOS's counsel asked that a printer be made available, or that ProMOS be permitted to bring a printer with it to the review, Freescale's counsel has taken the position that no printer is permitted in the review room and instead that any print requests must be filtered through Freescale's counsel.  Because of this set-up, there is no way for ProMOS's experts to review two different modules in the same product at the same time, or to review the modules of different products in order to compare them.  Id.  Moreover, Freescale's refusal to allow them access to a printer makes it difficult if not impossible for ProMOS's experts to generate any meaningful work product out of their review.  Perhaps most egregiously, ProMOS has made several print requests, all of which Freescale's counsel has simply ignored.  These include (i) an oral request on September 1, 2007 that Freescale print all of the indexes from each of the files so that ProMOS's experts could use the indexes during their review on September 7, 2007; and (ii) a request on September 5, 2007 that Freescale print a specific file that ProMOS's counsel wanted to attach to a filing with the Court on September 6, 2007.  Exhibit B.  Freescale's refusal to print these documents – or even to acknowledge the requests – not only has interfered with ProMOS's experts' ability to review the materials but also has interfered with ProMOS's ability to present our case to the Court.  It is not

hard to imagine that this problem would be magnified ten-fold if ProMOS were required to go through Freescale for printing when the parties are preparing for depositions and for trial.

Third, Freescale's production related to only 12 processors, Id. ¶ 6, and yet Freescale has informed the Court that there are at least 21 different processors that are covered by ProMOS's July 6, 2007 list. Freescale has failed to state whether, and when, it intends to provide RTL documentation for the remaining products.

Fourth, for many of the processors as to which Freescale did provide some documentation, it did not provide materials covering the entire chip. Indeed, in some instances, Freescale produced RTL documentation relating only to the i-cache, a part that Freescale has repeatedly insisted is not even relevant to the infringement analysis. As noted in the attached Declaration of Robert Wedig, the materials made available by Freescale did not include the data cache, the cache controller, the memory controller or the chip interface -- all of which are relevant to a proper infringement analysis of the two circuit patents asserted in this case. Exhibit A ¶ 10. Indeed, ProMOS's counsel needs access to the RTL materials for the entire chip in order to understand how the cache portions of the chip interact with the rest of the chip. Id.

Fifth, the laptop computer provided by Freescale did not have appropriate software for conducting the review. ProMOS was not provided with any of the Verilog software programs that would be necessary to review, analyze and convert the RTL documentation into circuit diagrams. Id. ¶ 7. Instead, the only program made available to ProMOS's experts for reviewing the materials was Microsoft Word. Engineers do not create or use RTL documentation in Microsoft Word. Id. Instead, they use Verilog programs that are specifically designed to work with the RTL documentation. Freescale's assertion that the Protective Order requires ProMOS's counsel to bring such software with it to the review is wrong. Even assuming that Paragraph 4 of the

Protective Order applied, that paragraph requires the producing party to make the relevant materials available on a computer "that contains appropriate software for reviewing the Code." Protective Order ¶ 4.  Microsoft Word simply is not appropriate for reviewing RTL document. Exhibit A ¶ 7.  The portion of the Protective Order that Freescale relies upon allows, but does not require, ProMOS to bring its own software to assist in conducting the review, but that language does not relieve Freescale of the obligation to make RTL documentation available on a computer that contains "appropriate software" for viewing it, as expressly set forth in Paragraph 4 of the Protective Order.

**REDACTED**

**REDACTED**

In addition to the foregoing, ProMOS's expert identified a preliminary list of specific problems associated with the files for each processor which is set forth in his Declaration, attached hereto as Exhibit A. As a result of the foregoing, ProMOS's expert has opined that his work in reviewing Freescale's production to date has been "of little or no value to [his] work in this matter, other than to identify the flawed nature of the production itself." Id. ¶ 12.

In light of the many serious problems experienced with Freescale's "production," and considering the extraordinary amount of time and money that ProMOS has expended in good faith trying to obtain meaningful access to Freescale's design files, Freescale should be compelled to provide ProMOS with electronic copies of its RTL documentation – in the precise form and hierarchy in which it is ordinarily created, used, and maintained by Freescale – pursuant to the "highly confidential" protections of the Protective Order, rather than insisting upon review at Jones Day. ProMOS should also be awarded its costs and attorneys fees incurred in seeking Freescale's compliance with its discovery obligations.

4.    **Freescale Should be Compelled to Produce Long Overdue Damages-Related Documents**

Freescale also is long overdue on producing certain basic damages-related documents, including profit information, pricing information, cost data, and information regarding Freescale's customers and resellers for the accused products. Although Freescale suggests that it could not begin gathering responsive documents until it received ProMOS's July 6, 2007 list of Freescale products that contain cache memories, as noted above, there was nothing prohibiting Freescale

from identifying its own cache-memory containing products in mid-April when it received the document requests. Freescale therefore should be compelled to immediately produce all of the damages-related documents within the categories identified in ProMOS's Opening Brief.

**5.     Freescale Should be Compelled to Produce a Rule 30(b)(6) Witness for Deposition as Noticed to Explain the Documentation It Maintains Regarding the Accused Products**

Freescale also should be compelled to produce a Rule 30(b)(6) witness in Delaware to testify about the six topics listed in ProMOS's July 3 and identical August 3 deposition notices. Freescale represents to the Court that it is willing to permit the Rule 30(b)(6) deposition to go forward, Freescale Opp. at 17, but it neglects to mention that its willingness to proceed was conditioned upon the deposition taking place in Texas for its own convenience.

The parties have had extensive discussions in an effort to reach an agreement concerning the locations for depositions in both this case and in Freescale's Texas case against ProMOS. Those discussions are ongoing and obviously involve issues relating in part to an action not before this Court. In the meantime, discovery and depositions must go forward in this action. Notices for two depositions have been served in this case. On August 16, Freescale served a Rule 30(b)(6) Notice of Deposition on ProMOS, and ProMOS is complying with that Notice by bringing a witness from Taiwan to Delaware (as requested by Freescale in the Notice) for deposition on October 1, 2007. At the same time, Freescale, after ignoring ProMOS's July 3 Notice of Deposition for weeks, has flatly and persistently refused to produce a witness in Delaware under any circumstances.

This Court should order Freescale – a Delaware corporation that has initiated counterclaims against ProMOS in this Court – to produce witnesses for deposition in Delaware without further obstruction or delay. Unless and until the parties arrive at an agreement regarding the location of depositions, Freescale should not be permitted to require ProMOS deponents, many

of whom live and work in Taiwan, to travel half way around the world for depositions, while at the same time refusing to have its own deponents leave the State of Texas to give testimony in this case.

**6.    This Court Should Award ProMOS its Attorneys' Fees and Costs as a Sanction for Freescale's Dilatory Conduct**

Finally, pursuant to Rules 16(f) and 37(a)(4), ProMOS respectfully requests that the Court impose appropriate sanctions, including but not limited to costs and attorney's fees associated with preparing this motion and conferring with Freescale in connection with the issues raised herein. Under Rule 37(a)(4), a party that unsuccessfully resists a motion to compel discovery must pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney's fees, unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust. Rule 37(a)(4); see also Liafail, Inc. v. Learning 2000, Inc., 2003 WL 722199, *7 (D. Del. March 3, 2003). There can be no "substantial justification" for Freescale's failure to live up to its discovery obligations.

While Freescale has maintained that it could not have produced technical or damages-related documents regarding the accused products until ProMOS provided Freescale with the list of Freescale products containing cache memory systems on July 6, 2007, that excuse simply does not hold water. In order to create that list, ProMOS simply reviewed Freescale's website and identified all products containing cache memories that fit within the definition of "Freescale Product" set forth in ProMOS's discovery requests. There is no reason why Freescale could not have done the same thing on its own as soon as it received ProMOS's discovery requests in mid-April. Similarly inexcusable has been Freescale's refusal to produce a witness in this forum for a simply Rule 30(b)(6) document deposition that was noticed nearly three months ago. Such conduct warrants the imposition of sanctions by the Court.

# CONCLUSION

For the foregoing reasons, and those set forth in its Opening Brief, plaintiff ProMOS Technologies, Inc. respectfully requests that the Court GRANT its Motion to Compel and award ProMOS's its costs and attorneys' fees.

ASHBY & GEDDES

/s/ *John G. Day*
_____
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
Telephone: (302) 654-1888
Telecopier: (302) 654-2067
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Plaintiff*
*ProMOS Technologies, Inc.*

*Of Counsel*:

William H. Wright
Hogan & Hartson LLP
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
Telephone: (310) 785-4672
Facsimile: (31) 785-4601
E-Mail: whwright@hhlaw.com

Steven J. Routh
Sten A. Jensen
Hogan & Hartson LLP
555 Thirteenth Street, NW
Washington, DC  20004
Telephone: (202) 637-6472
Facsimile: (202) 637-5910
E-Mail:sjrouth@hhlaw.com
sajensen@hhlaw.com

Dated:  September 14, 2007
184154.1

# EXHIBIT A

**REDACTED**

# EXHIBIT B

# REDACTED

# EXHIBIT C

# JONES DAY

NORTH POINT · 901 LAKESIDE AVENUE · CLEVELAND, OHIO 44114-1190

TELEPHONE: (216) 586-3939 · FACSIMILE: (216) 579-0212

Direct Number: (216) 586-7199
f.dfeeling@jonesday.com

JP618219
878247-615013

September 7, 2007

<u>VIA EMAIL</u>

Susan Cook, Esq.
Hogan & Hartson LLP
555 Thirteenth Street, NW
Washington, DC 20004
smcook@hhlaw.com

Re:    *ProMOS Technologies v. Freescale Semiconductor, Inc.*

Dear Susan:

This is in partial reply to your September 5 letter regarding the production of RTL code. As I advised earlier today during our telephone conversation, and as set forth in our letter from yesterday, we do not completely understand ProMOS's complaints regarding Freescale's production of RTL code or what ProMOS is really looking for. Nevertheless, as I also mentioned today, in an effort to alleviate any legitimate concerns or disputes ProMOS might have regarding the RTL code, Freescale is willing to consider starting over and providing a fresh production of RTL code for inspection.

Because we obviously do not want to produce code for a third time, we had hoped to talk to you to see if we could reach an agreement about what and how the RTL code should be produced. We thus were very disappointed that you declined our suggestion that we have a conference call today which would include your experts who were already onsite in Cleveland reviewing the RTL code. Our thought was that, by including your experts, we could have a more meaningful discussion. In particular, we had thought that this would ensure that you and your experts could specifically identify all of ProMOS's points of concern regarding the RTL code and provide input regarding which portions of, and how, the RTL code should be loaded onto a laptop to alleviate those concerns. (For example, we believed we had produced the scope of RTL code that ProMOS had requested. Thus, we need to understand better exactly what portions of the RTL code ProMOS wants and, to that end and if it would get this behind us faster, we would even be willing to recommend to Freescale that it produce the RTL code for the entire cores, as opposed merely to portions thereof.)

The bottom line is, as I advised you earlier today, we have no desire to repeat the production of RTL code again. We want to make a final production of RTL code that is reasonable and acceptable to all parties and move forward.

CLI-1549313v1

**JONES DAY**

September 7, 2007
Page 2

We still remain willing to work with you regarding our production of RTL code. Therefore, we ask that you to propose a time early next week during which we can try to work out all of the issues relating to the production of RTL code. The sooner we speak, the sooner we can provide a production of RTL code that overcomes your concerns. In any event, if we do not hear back from you on this issue by close of business Tuesday of next week, we will do our best to guess at what your concerns are and begin preparations to produce the RTL code one final time.

Very truly yours,

F. Drexel Feeling

CLI-1549313v1