IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PROMOS TECHNOLOGIES, INC.,           )
                                     )
            Plaintiff,               )
                                     )
     v.                              )          C.A. No. 06-788 (JJF)
                                     )
FREESCALE SEMICONDUCTOR, INC.,       )
                                     )
            Defendant.               )
_____)

**APPENDIX TO FREESCALE'S OPENING CLAIM CONSTRUCTION BRIEF
VOLUME IV; EXHIBITS RELATING TO THE CHAN PATENTS
CHAN FILE HISTORIES AND DICTIONARIES**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Mary B. Graham (#2256)
James W. Parrett, Jr. (#4292)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
302.658.9200

OF COUNSEL:                          *Attorneys for Freescale Semiconductor, Inc.*

David L. Witcoff
Kevin P. Ferguson
John M. Michalik
JONES DAY
77 West Wacker
Chicago, IL  60601-1692
312.782.3939

F. Drexel Feeling
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH  44114-1190
216.586.3939

Dated:  November 6, 2007

**TABLE OF EXHIBITS**

| EXHIBIT | DESCRIPTION |
|---------|-------------|
| 8 | '071 abandoned application paper 5 |
| 9 | Paper 6 from '709 File History |
| 10 | Paper 8 from '709 File History |
| 11 | Paper 13 from '709 File History |
| 12 | Paper 8 from '709 File History |
| 13 | Paper 7 from '709 File History |
| 14 | Paper 10 from '709 File History |
| 15 | Paper 15 from '709 File History |
| 16 | Paper 5 from '241 File History |
| 17 | Paper 9 from '241 File History |
| 18 | Paper 17 from '241 File History |
| 19 | Paper 24 from '241 File History |
| 20 | Paper 2 from '241 File History |
| 21 | Paper 8 from '241 File History |
| 22 | Paper 12 from '241 File History |
| 23 | Paper 22 from '241 File History |
| 24 | Paper 25 from '241 File History |
| 25 | Paper 20 from '241 File History |
| 26 | IBM Dictionary of Computing (10th ed. 1993) excerpts |
| 27 | Microsoft Press Computer Dictionary (3d. ed. 1997) excerpts |
| 28 | The New IEEE Standard Dictionary of Electrical and Electronics Terms (5th ed. 1993) excerpts |

# EXHIBIT 8



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**

Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 07/546,071 | 06/27/90 | CHAN | A    M-1018-US |

EXAMINER
POPEK, J

| ART UNIT | PAPER NUMBER |
|---|---|
| 233 | 5 |

DATE MAILED: 04/08/91

DAVID H. CARROLL
SKJERVEN, MORRILL, MAC PHERSON,
FRANKLIN AND FRIEL
25 METRO DRIVE, STE. 700
SAN JOSE, CA  95110

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

☒ This application has been examined  ☐ Responsive to communication filed on_____  ☐ This action is made final.

A shortened statutory period for response to this action is set to expire ___3___ month(s), _____days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

**Part I   THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. ☒ Notice of References Cited by Examiner, PTO-892.
2. ☒ Notice re Patent Drawing, PTO-948.
3. ☐ Notice of Art Cited by Applicant, PTO-1449.
4. ☐ Notice of Informal Patent Application, Form PTO-152
5. ☐ Information on How to Effect Drawing Changes, PTO-1474.
6. ☐ _____

**Part II   SUMMARY OF ACTION**

1. ☒ Claims ___1 to 3___ are pending in the application.

   Of the above, claims _____ are withdrawn from consideration.

2. ☐ Claims _____ have been cancelled.

3. ☐ Claims _____ are allowed.

4. ☒ Claims ___1 to 3___ are rejected.

5. ☐ Claims _____ are objected to.

6. ☐ Claims _____ are subject to restriction or election requirement.

7. ☐ This application has been filed with informal drawings under 37 C.F.R. 1.85 which are acceptable for examination purposes.

8. ☐ Formal drawings are required in response to this Office action.

9. ☐ The corrected or substitute drawings have been received on _____. Under 37 C.F.R. 1.84 these drawings are ☐ acceptable; ☐ not acceptable (see explanation or Notice re Patent Drawing, PTO-948).

10. ☐ The proposed additional or substitute sheet(s) of drawings, filed on _____. has (have) been ☐ approved by the examiner; ☐ disapproved by the examiner (see explanation).

11. ☐ The proposed drawing correction, filed _____, has been ☐ approved; ☐ disapproved (see explanation).

12. ☐ Acknowledgement is made of the claim for priority under U.S.C. 119. The certified copy has ☐ been received ☐ not been received ☐ been filed in parent application, serial no. _____ ; filed on _____.

13. ☐ Since this application apppears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. ☐ Other

**EXAMINER'S ACTION**

PTOL-326 (Rev.9-89)

Serial Number 546,071                                    -2-

Art Unit 233B

Claims 1 to 3 are rejected under 35 U.S.C. § 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which applicant regards as the invention.

In claim 1, lines 2 to 4, it is not clear how the ports are coupled to the random access memory. Lines 8 to 10 are confusing. Does the output register resupply the received data back to the system port? In claim 2, the input register appears to be performing the same function as the output register as recited in lines 9 and 10 of claim 1. Does the input register provide the received data from the memory back to the system port? How is the input register coupled with the output register? In claim 3, line 4, "data" is not clear. Is applicant referring to the received data from the memory? On line 5, "data" is not clear. How is the data related to the received data of line 8 in claim 1?

The Abstract of the Disclosure is objected to because it is not limited to a single paragraph. Correction is required. See M.P.E.P. § 608.01(b).

Applicant is reminded of the proper language and format of an Abstract of the Disclosure.

The abstract should be in narrative form and generally limited to a single paragraph on a separate sheet within the range of 50 to 250 words. It is important that the abstract not exceed 250 words in length since the space provided for the abstract on the computer tape used by the printer is limited. The form and legal phraseology often used in patent claims, such

Serial Number 546,071                          -3-

Art Unit 233B


as "means" and "said", should be avoided.  The abstract should
describe the disclosure sufficiently to assist readers in
deciding whether there is a need for consulting the full patent
text for details.
     The language should be clear and concise and should not
repeat information given in the title.  It should avoid using
phrases which can be implied, such as, "The disclosure concerns,"
"The disclosure defined by this invention," "The disclosure
describes," etc.


J. Popek/mb
April 05, 1991
(703)308-3124

JOSEPH A. POPEK
PRIMARY EXAMINER
ART UNIT 233

EXHIBIT 9



**UNITED STATE : DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address : COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 07/678,912 | 04/01/91 | CHAN | A    M=1018=1P=US |

| EXAMINER |
|---|
| GOSSAGE, G |

E3M1/0909

B. NOEL KIVLIN
SKJERVEN, MORRILL, MACPHERSON,
FRANKLIN & FRIEL
25 METRO DRIVE, SUITE 700
SAN JOSE, CA 95110

| ART UNIT | PAPER NUMBER |
|---|---|
| 2312 | 6 |

This is a communication from the examiner in charge of your application.
CCMMISSIONER OF PATENTS AND TRADEMARKS

DATE MAILED:      09/09/93

---

☑ This application has been examined    ☑ Responsive to communication filed on _10-21-91_    ☐ This action is made final.

A shortened statutory period for response to this action is set to expire_____3_____ month(s), _____ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned.    35 U.S.C. 133

**Part I    THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. ☑ Notice of References Cited by Examiner, PTO-892.    2. ☑ Notice re Patent Drawing, PTO-948.
3. ☑ Notice of Art Cited by Applicant, PTO-1449. (2)    4. ☐ Notice of Informal Patent Application, Form PTO-152.
5. ☑ Information on How to Effect Drawing Changes, PTO-1474.    6. ☐ _____

**Part II    SUMMARY OF ACTION**

1. ☑ Claims _____1-18_____ are pending in the application.

    Of the above, claims _____ are withdrawn from consideration.

2. ☐ Claims _____ have been cancelled.

3. ☐ Claims _____ are allowed.

4. ☑ Claims _____1-18_____ are rejected.

5. ☐ Claims _____ are objected to.

6. ☐ Claims _____ are subject to restriction or election requirement.

7. ☑ This application has been filed with informal drawings under 37 C.F.R. 1.85 which are acceptable for examination purposes.

8. ☐ Formal drawings are required in response to this Office action.

9. ☐ The corrected or substitute drawings have been received on _____. Under 37 C.F.R. 1.84 these drawings
    are ☐ acceptable. ☐ not acceptable (see explanation or Notice re Patent Drawing, PTO-948).

10. ☐ The proposed additional or substitute sheet(s) of drawings, filed on _____ has (have) been ☐ approved by the
    examiner. ☐ disapproved by the examiner (see explanation).

11. ☐ The proposed drawing correction, filed on _____, has been ☐ approved. ☐ disapproved (see explanation).

12. ☐ Acknowledgment is made of the claim for priority under U.S.C. 119. The certified copy has ☐ been received ☐ not been received
    ☐ been filed in parent application, serial no. _____; filed on _____

13. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in
    accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. ☐ Other

**EXAMINER'S ACTION**

PTOL-326 (Rev. 9-89)

Serial No. 678912                              -2-

Art Unit · 2312


1.   The oath or declaration is defective.  A new oath or

declaration in compliance with 37 C.F.R. § 1.67(a) identifying

this application by its Serial Number and filing date is

required.  See M.P.E.P. §§ 602.01 and 602.02.

     The oath or declaration is defective because:

     It does not state that the person making the oath or
declaration has reviewed and understands the contents of the
specification, including the claims, as amended by any amendment
specifically referred to in the oath or declaration.

The phrase "including the claims" must be included.  Any

amendments made before the signing of the new oath or declaration

should also be acknowledged.

2.   The title of the invention is not descriptive.  A new title

is required that is clearly indicative of the invention to which

the claims are directed.  A suggestion for a new title is not

readily apparent to the Examiner.

3.   The Abstract of the Disclosure is objected to because it

should generally be limited to a single paragraph.  In lines 4-5

and 8, "The (the)" should be -- A(a) -- to avoid possible

antecedent problems.  [Note that abstract line numbers are given,

not page line numbers.]  In lines 19 and 21, -- random access --

should be inserted before "memory" for clarity.

     It also appears the second paragraph (lines 16-25) should be

moved after "transfers." in line 3.

     Additionally, in lines 3-4, '"demand word first" wrapped

around quad fetch order' is not fully understood.

Serial No. 678912                              -3-

Art Unit   2312


Correction is required.  See M.P.E.P. § 608.01(b).

4.   The numerous sheets/figures of drawings have not been
checked to the extent necessary to determine the presence of all
possible minor errors.  Applicant's cooperation is requested in
correcting any errors of which applicant may become aware in the
drawings.

Upon a quick review of the drawings, the following items
were noted and the drawings are objected to for the following
reasons:

In Figures 6 and 7, the dashed boxes 3167 and 4167 should be
descriptively labelled.  The box "245" should also be
descriptively labelled.

In Figures 8A, 8B and 8C, (at least) a representative one of
each of the different circuit "boxes" should be labelled for
clarity.  The darkened triangular symbol is also not sufficiently
clear.  The boxes I-IV are confusing and should be descriptively
labelled.

In Figure 12B, the "dangling" (not connected to the other
circuit elements) cycle/control unit should be separately
labelled ( -- Fig. 12c --) or output signals shown which
correspond to inputs to other circuits.  It is also not clear to
what the labels "SYSTEM (HOST) PORT" refer.

In Figure 13, the label "SYSTEM" is not clear ( -- SYSTEM
PORT --?).  The box 70 should be descriptively labelled.  One of

Serial No. 678912                          -4-

Art Unit   2312


the 4 boxes labelled "MS82C443" should be descriptively labelled.

In Figure 14, the boxes/circuits should be descriptively labelled.

In Figure 15, "MUPREG" should be -- MEM. UPDATE REG. -- for clarity.

In Figure 32, "with 4167" is not sufficiently clear.    A descriptive label should be added after "4167."

In Figure 53, the labels "tmi/thi", "thi1xI" and "thi1xU" are not sufficiently clear.  The label "Bram" is also not clear ( -- Burst RAM -- ?).  The labels "ttmiss" and "tlmiss" are also unclear, as are the labels (code?) within the steps.  The newly added labels ("assert brdy # ..." and "cache : assert ....") are not understood (to what do those labels refer or correspond?). Figures 54-56 are analogously unclear.

Similarly, in Figures 57-58, the labels "ctiout", "ctblout", etc. are not adequately clear.

Note that these are merely exemplary.  Applicant should carefully and completely review all of the figures to ensure that all possible errors are located and corrected.   The timing diagrams (Figures 16-31 e.g.), not specifically discussed above by the Examiner, should be carefully reviewed and corrected where appropriate.

Applicant is required to submit a proposed drawing correction in response to this Office action.  However,

Serial No. 678912                                    -5-

Art Unit  2312


correction of the noted defect can be deferred until the
application is allowed by the examiner.

    Also note MPEP 608.02 (r) and (v).

5.    The lengthy specification has not been checked to the extent
necessary to determine the presence of all possible minor errors.
Applicant's cooperation is requested in correcting any errors of
which applicant may become aware in the specification.

    The following items are specifically noted and the
specification objected to for the following reasons:

    On page 1, line 6, the status of the related copending
application should be updated.

    On page 2, line 21, and throughout the specification (and
drawings), the notation "#" is confusing as this
notation/labelling does not appear to have a well known or
commonly accepted meaning in the art (active low? complement of
the signal?).  An explanatory sentence should be inserted after
the first use of the symbol for clarity.

    On page 7, line 34 and throughout the specification (page
15, line 8; page 16, line 12 and page 43, line 1, by way of
example), there is no "Figure 8."  The term should be replaced
with -- Figures 8A, 8B and 8C -- (or simply -- Figure 8A --, --
Figure 8B --, etc.) where appropriate.

    On page 19, (approximately) lines 34-37, "associates with"
is awkward.  It appears -- is associated with -- is clearer.

Serial No. 678912                                    -6-

Art Unit   2312


On page 37, line 17, "controller" should be -- Controller --


Again, these are merely exemplary.  Applicant's cooperation
is again requested in locating and correcting all possible errors
to place the specification in proper idiomatic and grammatical
form.

6.   Claims 1-18 are rejected under 35 U.S.C. § 112, second
paragraph, as being indefinite for failing to particularly point
out and distinctly claim the subject matter which applicant
regards as the invention.

In claim 1, and therefore its dependent claims, "said data"
(line 9) has an unclear antecedent (see lines 6 and 8). Note the
clearer language of claim 4.  Also, in lines 6 and 8, "said
memory" may have an unclear antecedent.  It appears -- random
access -- should be inserted before "memory" in lines 6 and 8 for
clarity.  Also, in line 1, "memory cache" appears to read more
clearly as -- cache memory --.

In claim 2, the distinction between the "input latch ... for
... writing data" of claim 1 and the "input register ... for
furnishing data" (claim 2) is not sufficiently clear.  Note the
clearer language of claim 3, lines 1-3, for example.  Also
compare claim 2, lines 2-3 and claim 4, lines 5-7 (the
distinction between "furnishing" and "writing" is not entirely
clear).

Serial No. 678912                          -7-

Art Unit  2312

    Also in claim 4, line 1, it appears "memory cache" should be
-- cache memory --.  [The dependent claims should be similarly
amended.]  The distinction between the input register "furnishing
data" (claim 2) and "writing" data (claim 4) is not entirely
clear.  In line 14, "when" appears to read more clearly as --
that --.

    In claim 5, lines 4 and 7, "addressing" appears to read more
clearly as -- address --. Also, the wording "an address(ing)
signal (singular) corresponding to said ... data (plural)" is
confusing.  Should "an address(ing) signal" be changed (back)
to -- address signals --?

    In claim 6, -- random access -- should be inserted before
"memory" to avoid antecedent problems.

    In claim 10, line 3, "the" should be deleted.

    In claim 12, "(increments from) an address associated with a
first line of data to a subsequent line of data" is not clear.
Should -- an address associated with -- be inserted after "to" in
line 3?

    In claim 13, lines 3-4, "of data of said data" is not clear.
It is also not clear how "validating data" itself prevents the
writing of data into RAM.

    In claim 14, "includes" appears to read more clearly as --
stores --.

    In claim 15, line 2, "RAM" should be written out (or --

Serial No. 678912                              -8-

Art Unit  2312


(RAM) -- inserted after "memory" in claim 1, line 2).

In claim 17, it is not clear how a "memory 'has' a ...

bandwidth."

In claim 18, it is unclear how the memory itself performs a

read-modify-write operation.

7.   The following is a quotation of 35 U.S.C. § 103 which forms
the basis for all obviousness rejections set forth in this Office
action:

    A patent may not be obtained though the invention is not
    identically disclosed or described as set forth in section
    102 of this title, if the differences between the subject
    matter sought to be patented and the prior art are such that
    the subject matter as a whole would have been obvious at the
    time the invention was made to a person having ordinary
    skill in the art to which said subject matter pertains.
    Patentability shall not be negatived by the manner in which
    the invention was made.

    Subject matter developed by another person, which qualifies
    as prior art only under subsection (f) or (g) of section 102
    of this title, shall not preclude patentability under this
    section where the subject matter and the claimed invention
    were, at the time the invention was made, owned by the same
    person or subject to an obligation of assignment to the same
    person.

Claims 1-18 are rejected under 35 U.S.C. § 103 as being

unpatentable over applicant's admitted prior art in view of

Aichelmann, Jr. et al. or Watanabe, each taken separately.

Applicant's admitted prior art discloses that a memory

apparatus including a random access memory, a host port and a

system port was well known in the computer storage art at the

time the claimed invention was made, but does not disclose

coupling an input buffer/register and an output buffer/register

Serial No. 678912                              —9—
Art Unit   2312


to the memory in order to provide improved access and increased

operating speed.  Aichelmann, Jr. et al. or Watanabe, each taken

separately, similarly discloses a computer memory apparatus and

teaches coupling input and output buffers/registers to a dual

port cache for the desirable purpose of providing improved memory

acess and increased operating speed.  Accordingly, it would have

been readily obvious to a person of ordinary skill in the

computer storage art at the time the claimed invention was made

to utilize buffers/registers coupled to plural ports as taught by

Aichelmann, Jr. et al. or Watanabe, each taken separately, in the

well known memory of applicant's admitted prior art for the

desirable purpose of providing improved memory access and

increased operating speed.  The use of hit, miss and writeback

registers in conjunction with a cache memory was well known in

the memory art at the time the claimed invention was made and as

such does not <u>patentably</u> define the claimed invention over the

prior art ~~together~~.

8.    The prior art made of record and not relied upon is

considered pertinent to applicant's disclosure.

      Wilhite et al, Wallach et al. ('275 and '317) and Matick et

al. are cited as teaching cache memory arrangements similar to

the claimed invention.

9.    Any inquiry concerning this communication or earlier
communications from the examiner should be directed to Glenn
Gossage whose telephone number is (703) 305-3820.

Serial No. 678912                              -10-

Art Unit  2312


        Any inquiry of a general nature or relating to the status of
this application should be directed to the Group receptionist
whose telephone number is (703) 9600.


                                    GLENN GOSSAGE
                                    PRIMARY EXAMINER
                                    ART UNIT 2312

G. Gossage/kw
September 08, 1993

EXHIBIT 10



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address : COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 07/678,912 | 04/01/91 | CHAN          A | M-1018-1P-US |

GOSSAGE, EXAMINER

B3M1/0308

B. NOEL KIVLIN
SKJERVEN, MORRILL, MACPHERSON,
FRANKLIN & FRIEL
25 METRO DRIVE, SUITE 700
SAN JOSE, CA 95110

| ART UNIT | PAPER NUMBER |
|---|---|
| 2312 | 8 |

DATE MAILED: 03/08/94

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

☑ This application has been examined   ☑ Responsive to communication filed on *12-6-93*   ☐ This action is made final.

A shortened statutory period for response to this action is set to expire *3* month(s), _____ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned.   35 U.S.C. 133

**Part I    THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. ☑ Notice of References Cited by Examiner, PTO-892.   2. ☐ Notice re Patent Drawing, PTO-948.
3. ☐ Notice of Art Cited by Applicant, PTO-1449.   4. ☐ Notice of Informal Patent Application, Form PTO-152.
5. ☐ Information on How to Effect Drawing Changes, PTO-1474.   6. ☐ _____

**Part II    SUMMARY OF ACTION**

1. ☑ Claims *1-23* are pending in the application.

   Of the above, claims _____ are withdrawn from consideration.

2. ☐ Claims _____ have been cancelled.

3. ☐ Claims _____ are allowed.

4. ☑ Claims *1-23* are rejected.

5. ☐ Claims _____ are objected to.

6. ☐ Claims _____ are subject to restriction or election requirement.

7. ☐ This application has been filed with informal drawings under 37 C.F.R. 1.85 which are acceptable for examination purposes.

8. ☐ Formal drawings are required in response to this Office action.

9. ☐ The corrected or substitute drawings have been received on _____. Under 37 C.F.R. 1.84 these drawings are ☐ acceptable. ☐ not acceptable (see explanation or Notice re Patent Drawing, PTO-948).

10. ☐ The proposed additional or substitute sheet(s) of drawings, filed on _____ has (have) been ☐ approved by the examiner. ☐ disapproved by the examiner (see explanation).

11. ☑ The proposed drawing correction, filed on *12-6-93*, has been ☑ approved. ☐ disapproved (see explanation).

12. ☐ Acknowledgment is made of the claim for priority under U.S.C. 119. The certified copy has ☐ been received ☐ not been received ☐ been filed in parent application, serial no. _____; filed on _____

13. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. ☐ Other

**EXAMINER'S ACTION**

PTOL-326 (Rev. 9-89)

Serial Number: 07/678,912                                            -2-
Art Unit: 2312

1.   The oath or declaration is defective.  A new oath or
declaration in compliance with 37 C.F.R. § 1.67(a) identifying
this application by its Serial Number and filing date is
required.  See M.P.E.P. §§ 602.01 and 602.02.

     The oath or declaration is defective because:

     It does not state that the person making the oath or
declaration has reviewed and understands the contents of the
specification, including the claims, as amended by any amendment
specifically referred to in the oath or declaration.


     Applicant's arguments filed December 6, 1993 have been
considered but are not persuasive.  It is well understood that
the claims are a part of the application; however, 37 CFR 1.63
requires an explicit statement that the applicant has read and
understood the contents of the specification, including the
claims.  The person signing the oath or declaration must
recognize that what is being claimed is the subject matter that
the person regards as his or her invention pursuant to 35 U.S.C.
112.  See 1027 OG 9.  Strict adherence to the language of 37 CFR
1.63 is believed necessary.  This view was confirmed upon
consultation with several other experienced Examiners and
supervisors.

     [Note that applicant's remarks on page 12 of the response
filed December 6, 1993 regarding the filing of a new declaration
are not entirely understood and appear to be inconsistent with
the remarks on page 8 of the response.  Since a new declaration

Serial Number: 07/678,912                                          -3-
Art Unit: 2312

apparently was not filed, the remarks on page 12 have been

disregarded.]


2.    The title of the invention is not descriptive.  A new title

is required that is clearly indicative of the invention to which

the claims are directed.

      It appears "A Random Access Memory And Decoupling" should be

simply --Decoupling Register-- for clarity.  It is also noted

that the term "Dual Ported" is not entirely understood when read

in conjunction with claim 16.


3.    The Abstract of the Disclosure is objected to because it

does not provide a clear and concise summary of the disclosure.

It appears the paragraph deleted in the response filed December

6, 1993 [original abstract, (page) lines 19-28] should be

inserted after "transfers" in line 6 for clarity.  The following

changes are also suggested within that paragraph:  In lines 21

and 26, "latch" should be --register-- (note claim 1, line 6, for

example).  In lines 22 and 24, --random access-- should be

inserted before "memory."

      Additionally, in lines 8 and 11, "from the" should be --from

a--.  In lines 6-7, it is not readily apparent what is meant by "

"demand word first" wrapped around quad fetch order."

Serial Number: 07/678,912                                          -4-
Art Unit: 2312

Applicant should address each of these issues by way of
either amendment or argument.   Note the Office action mailed
September 9, 1993 at page 2, numbered paragraph 3.

Correction is required.   See M.P.E.P. § 608.01(b).


4.   The proposed drawing corrections filed on December 6, 1993
have been approved by the Examiner, subject to drafting review.

The drawings remain objected to, however, because in Figures
8A-8C, a representative one of each of the different circuit
"boxes" should be descriptively labelled for clarity.   Note
"boxes" 109, 110, 158, 150, 128, 124, 166, 119, 129, 120, and 113
in Figure 8A; "boxes" 114A-114D, 116A-116D and 118A-118D in
Figure 8B and "boxes" 122, 112 and 163 in Figure 8C by way of
example.   It may be necessary to place the reference numerals
outside the circuit "boxes."

In Figure 53, the deletion of the labels within the
different steps (302, 304, 306, 308 and 310, for example) is
confusing.   Descriptive labels should be (re)inserted for
clarity.   It also remains unclear to what the labels "assert:
brdy#..." and "cache:assert..." refer.   The significance of the
newly added brackets is also not clear.   The label "ads#" within
step 300 is also not adequately clear.   Figures 54-56 are
analogously unclear.

Serial Number: 07/678,912                                                    -5-
Art Unit: 2312

In Figures 57-58, the removal of descriptive labels within
the steps renders the Figures unclear and confusing.  Clear and
descriptive labels should be (re)inserted for clarity.

Again note that the numerous drawings have not been checked
to the extent necessary to determine the presence of all possible
minor errors.  Applicant's cooperation is requested in correcting
any errors of which applicant may become aware in the drawings.

Applicant is required to submit a proposed drawing
correction in response to this Office action.  However, actual
correction of the noted defect can be deferred until the
application is allowed by the examiner.
    Again note MPEP 608.02(r) and (v).  [Proposed drawing
corrections should be shown in red ink and submitted in a
separate letter addressed to the Office draftsman.]

5.   It is once again noted that the lengthy specification has
not been checked to the extent necessary to determine the
presence of all possible minor errors.  Applicant's cooperation
is requested in correcting any errors of which applicant may
become aware in the specification.
    The following objections are specifically noted:
Throughout the specification (note page 15, line; page 16, line
12 and page 43, line 1, by way of example only), the notation

Serial Number: 07/678,912                                                    -6-
Art Unit: 2312

"Figure 8" is not adequately clear.  In this regard, it is noted
that while the notation adopted by applicant in the response
filed December 6, 1993 (generally referring to "Figure 8") would
be acceptable to the Examiner, this notation would create
problems for the printer (should any patent issue based on this
application) since there is no figure labelled "Figure 8" (many
applications have been returned from the printer for just such
"errors").  Thus, the specification must be reviewed and each
reference to "Figure 8" replaced with a reference to --Figure 8A-
-, --Figure 8B--, --Figure 8C-- or --Figures 8A-8C-- where
appropriate to avoid confusion and prevent possible delays in
printing and issuance of any patent based on this application.

        On page 19, (approximately) lines 34-37, "associates with"
is awkward.  It appears --is associated with-- is clearer.  [Note
that the proposed amendment filed December 6, 1993 has NOT been
entered by the clerk since this portion of the specification is
single spaced and entry of the amendments is difficult and may
lead to printing errors.  The entire passage (lines 34-37) should
be deleted and replaced for clarity.]


6.    Claims 1-23 are rejected under 35 U.S.C. § 112, second
paragraph, as being indefinite for failing to particularly point
out and distinctly claim the subject matter which applicant
regards as the invention.

Serial Number: 07/678,912                                           -7-
Art Unit: 2312

In claim 13, it remains unclear how simply "validating data"
itself prevents the writing of data into RAM.  Note also the
previous Office action mailed September 9, 1993 at page 7, lines
19-21.

[It is also hereby expressly noted that while the difference
in language regarding the operation of the registers ("furnishing
(data)," "providing (data)" and "writing (data)" for example) is
not as precise as the Examiner might desire, upon a consideration
of the claim language in light of the specification, the claims
are deemed sufficiently clear to meet the statutory standard of
particularly pointing out and distinctly claiming the subject
matter which applicant regards as his invention.  Accordingly,
the 35 U.S.C. 112, second paragraph, rejection based on this
claim language (see the Office action mailed December 6, 1993 at
page 6, lines 18-24 and page 7, lines 3-5, for example) is hereby
withdrawn.]


7.   The following is a quotation of the appropriate paragraphs
of 35 U.S.C. § 102 that form the basis for the rejections under
this section made in this Office action:

    A person shall be entitled to a patent unless --
    (b) the invention was patented or described in a printed
    publication in this or a foreign country or in public use or
    on sale in this country, more than one year prior to the
    date of application for patent in the United States.

    (e) the invention was described in a patent granted on an
    application for patent by another filed in the United States
    before the invention thereof by the applicant for patent, or
    on an international application by another who has fulfilled
    the requirements of paragraphs (1), (2), and (4) of section

Serial Number: 07/678,912                                      -8-
Art Unit: 2312

    371(c) of this title before the invention thereof by the
applicant for patent.

    Claims 1, 2, 4, 6-8 and 13-15 are rejected under 35 U.S.C.
§ 102(b) as being anticipated by Malinowski.

    The broad claim language "reads on" the structure disclosed
by the reference. Here, the write registers 30 and 32 are input
registers and the read registers 40 and 42 constitute "output
registers." The outputs of the read registers and MUX 44 may be
broadly considered a "system" port, with the inputs to MUX 34 and
the write registers serving as the "host port." See Figures 1
and 2 and note also column 1, line 57 to column 2, line 53 and
column 3, lines 12-14.

8.    Claims 1-23 are rejected under 35 U.S.C. § 102(e) as being
anticipated by Sachs et al (U.S. '846).

    The reference discloses a cache memory apparatus as in the
claimed invention. See, for example, the cache random access
memory; the host processor port/bus and system port/bus; and the
CPU and system interfaces including input and output register
circuits shown in Figures 8, 20 and 21, as well as column 19,
lines 48+ and column 33, lines 27+. Note also that the mere
labelling of a register (such as an "update" or "miss (hit)"
register) without a recitation of its function or operation does
not render the claimed invention patentably distinct. The input
and output data and address registers disclosed in the reference
anticipate the registers as broadly set forth in the claims.

Serial Number: 07/678,912                                    -9-
Art Unit: 2312

9.    The prior art made of record and not relied upon is

considered pertinent to applicant's disclosure.

      Glier is cited as teaching a shared memory arrangement

including system and host ports as in the claimed invention.

      Cutts, Jr. et al is cited as teaching a data processing

system having a cache memory, read and write buffers/registers

and bypass "means" as in the claimed invention.

      Calle et al is cited as disclosing an input/output system

having a cache memory and bypass "means" similar to the claimed

invention.


10.  Any inquiry concerning this communication or earlier
communications from the examiner should be directed to Glenn
Gossage whose telephone number is (703) 305-3820.

      Any inquiry of a general nature or relating to the status of
this application should be directed to the Group receptionist
whose telephone number is (703) 305-9600.

                              GLENN GOSSAGE
                              PRIMARY EXAMINER
                              ART UNIT 2312

EXHIBIT 11



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**

Address : COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 07/678,912 | 04/01/91 | CHAN | A    M-1018-1P-US |

EXAMINER
GOSSAGE,H

E3M1/1122

B. NOEL KIVLIN
SKJERVEN, MORRILL, MACPHERSON,
FRANKLIN & FRIEL
25 METRO DRIVE, SUITE 700
SAN JOSE, CA 95110

| ART UNIT | PAPER NUMBER |
|---|---|
| 2312 | *13* |

DATE MAILED:    11/22/94

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

☑ This application has been examined    ☑ Responsive to communication filed on *8-11-94*    ☐ This action is made final.

A shortened statutory period for response to this action is set to expire **3** month(s), ────── days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

**Part I    THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. ☐ Notice of References Cited by Examiner, PTO-892.
2. ☐ Notice re Patent Drawing, PTO-948.
3. ☐ Notice of Art Cited by Applicant, PTO-1449.
4. ☐ Notice of Informal Patent Application, Form PTO-152
5. ☐ Information on How to Effect Drawing Changes, PTO-1474.
6. ☐ _____

**Part II    SUMMARY OF ACTION**

1. ☑ Claims *1-27* _____ are pending in the application.

   Of the above, claims _____ are withdrawn from consideration.

2. ☐ Claims _____ have been cancelled.

3. ☐ Claims _____ are allowed.

4. ☐ Claims _____ are rejected.

5. ☐ Claims _____ are objected to.

6. ☐ Claims _____ are subject to restriction or election requirement.

7. ☐ This application has been filed with informal drawings under 37 C.F.R. 1.85 which are acceptable for examination purposes.

8. ☐ Formal drawings are required in response to this Office action.

9. ☐ The corrected or substitute drawings have been received on _____. Under 37 C.F.R. 1.84 these drawings
   are ☐ acceptable; ☐ not acceptable (see explanation or Notice re Patent Drawing, PTO-948).

10. ☐ The proposed additional or substitute sheet(s) of drawings, filed on _____, has (have) been ☐ approved by the
    examiner; ☐ disapproved by the examiner (see explanation).

11. ☑ The proposed drawing correction, filed *8-11-94*, has been ☐ approved; ☐ disapproved (see explanation).

12. ☐ Acknowledgement is made of the claim for priority under U.S.C. 119. The certified copy has ☐ been received ☐ not been received
    ☐ been filed in parent application, serial no. _____; filed on _____

13. ☐ Since this application appppears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in
    accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. ☐ Other

**EXAMINER'S ACTION**

PTOL-326 (Rev.9-89)

Serial No. 678912                              -2-

Art Unit   2312


1.   Receipt is hereby acknowledged of the declaration filed
August 11, 1994, which declaration has been placed of record in
the file.  It is noted here that the substitute declaration was
signed December 23, 1993 after the application was amended in as<sup>an</sup>
amendment filed on September 9, 1993.  Although the substitute
declaration does not refer to the amendment, this does not appear
to be an explicit requirement under 37 CFR 1.63 and, thus, the
substitute declaration is deemed acceptable (the declaration
adequately identities the application to which it is directed).

2.   The Abstract of the Disclosure is objected to because in
(page) lines 7-8, it appears "A... system" should be -- The ...
apparatus -- for clarity and consistency.

     Also, the abstract should be rewritten as a single paragraph
including all changes made to date to avoid possible confusion
and mistake during the printing and issue process, should any
patent issue based on this application.

     Correction is required.  See M.P.E.P. § 608.01(b).

3.   The proposed drawing correction and/or the proposed
substitute sheets of drawings, filed on August 11, 1994 have been
approved by the Examiner, subject to drafting review.

     Applicant should submit a complete set of all proposed
changes to date to ensure that the Examiner and applicant are in
agreement on the changes to be made.  Again note MPEP 608.02(r)
and (v).

Serial No. 678912                              -3-

Art Unit  2312


        It is also noted that the label/designation "ads#" within

step 300 in Fig. 53 is not adequately clear.  It also is not

entirely clear to what the label "assert: brdy# ..." (near step

308 in Figure 53) refers.

        Clarification by way of explanation and/or amendment is

required. [Note that this issue was not adequately addressed in

applicant's remarks filed August 11, 1994 (at page 7).  See the

Office action mailed March 8, 1994 at page 4, lines 18-2.  Does

this refer to the cache?]

4.    The disclosure is objected to because of the following

informalities:

        On page 15, line 1, "if" should be -- of --.

        On page 43, line 1, "8" should be -- 8A-8C --.

        In claim 24, line 16, "a" should be -- an --.

  Appropriate correction is required.

5.    Claims 13 and 27 are rejected under 35 U.S.C. § 112, second

paragraph, as being indefinite for failing to particularly point

out and distinctly claim the subject matter which applicant

regards as the invention.

        In claim 13, it remains unclear how simply "validating data"

itself prevents the writing of data into RAM.  See also the

Office Action mailed March 8, 1994, at page 7, lines 1-4 and note

that no response was apparently made to this issue.

        In claim 27, the antecedents for "said input (output) data"

Serial No. 678912                                    -4-

Art Unit  2312


are not entirely clear since there is more than one input

(output) data set forth in claim 24.

6.    The following is a quotation of the appropriate paragraphs
of 35 U.S.C. § 102 that form the basis for the rejections under
this section made in this Office action:

> A person shall be entitled to a patent unless --
> (b) the invention was patented or described in a printed
> publication in this or a foreign country or in public use or
> on sale in this country, more than one year prior to the
> date of application for patent in the United States.
>
> (e) the invention was described in a patent granted on an
> application for patent by another filed in the United States
> before the invention thereof by the applicant for patent, or
> on an international application by another who has fulfilled
> the requirements of paragraphs (1), (2), and (4) of section
> 371(c) of this title before the invention thereof by the
> applicant for patent.

Claims 1, 2, 4, 6-8 and 13-15 are rejected under 35 U.S.C.

§ 102(b) as being anticipated by Malinowski.

Again, the broad claim language "reads on" the structure

disclosed by the reference.  Here, the write registers 30 and 32

are input registers and the read registers 40 and 42 constitute

"output registers."  The outputs of the read registers and MUX 44

may be broadly considered a "system" port, with the inputs to MUX 34

and the write registers serving as the "host port."  See Figures

1 and 2 and note also column 1, line 57 to column 2, line 53 and

column 3, lines 12-14.

7.    Claims 1-27 are rejected under 35 U.S.C. § 102(e) as being

anticipated by Sachs et al (U.S. '846).

Sachs et al (U.S. '846) discloses a cache memory apparatus

Serial No. 678912                                    -5-

Art Unit  2312


as in the claimed invention.  See, for example, the cache random

access memory; the host processor port/bus and system port/bus;

and the CPU and system interfaces including input and output

register circuits shown in Figures 8, 20 and 21, as well as

column 19, lines 48+ and column 33, lines 27+.  Note also that

the mere labelling of a register (such as an "update" or "miss

(hit)" register) without a recitation of its function or

operation does not render the claimed invention patentably

distinct.  The input and output data and address registers

disclosed in the reference anticipate the registers as broadly

set forth in the claims.

8.   Applicant's arguments filed August 11, 1994 have been

considered but are not persuasive.  While the Examiner recognizes

that the references do not depict the same embodiments as those

disclosed by applicant, the broad nature of the claim language is

such that the claims "read on" the structures shown by the

references as noted above.  Applicant has not adequately

addressed the explanation provided by the Examiner of how the

claimed "system port," "host port," "input registers," and

"output registers" are met by the references.  Again note that

the mere labelling of a register (such as an "update" register)

without a clear recitation of its function or operation does not

render the claimed invention patentably distinct.  The functional

language "the writing ... and ... providing of data ...

Serial No. 678912                              -6-

Art Unit  2312


`allowing' the host port to be decoupled" is not sufficient to

patentably define the claimed invention over the prior art.

9.    Any inquiry concerning this communication or earlier
communications from the examiner should be directed to Glenn
Gossage whose telephone number is (703) 305-3820.

      Any inquiry of a general nature or relating to the status of
this application should be directed to the Group receptionist
whose telephone number is (703) 305-9600.


                                        GLENN GOSSAGE
                                        PRIMARY EXAMINER
                                        ART UNIT 2312

G. Gossage/kw
November 21, 1994

# EXHIBIT 12

L:\M\1018\1P\O\PAMD.BNK                                POPEK                          PATENT

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicant:        Alfred K. Chan

Assignee:         MOS Electronics, Inc.

Title:            RANDOM ACCESS CACHE MEMORY

Serial No.:       07/678,912          Filed:  April 1, 1991

Examiner:                             Group Art Unit:  233

Attorney Docket No.:   M-1018-1P US

---------------------------------------------------------------

San Jose, California
October 18, 1991

COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D. C.   20231

PRELIMINARY AMENDMENT

Sir:

Please amend the above-identified application filed
April 1, 1991 as follows.


IN THE CLAIMS

Please amend Claims 1, 3, and 5 as follows:


1.    (Amended)  A memory cache apparatus comprising:

a random access memory;

a host port;

a system port;

an input latch coupled to said host port for
selectively writing data to said memory; and

an output register coupled to said system port for
receiving data from said memory and selectively furnishing
said data to [a selected one of said host port and] said
system port.


3.    (Amended)  An apparatus as in Claim 2, wherein said
input latch is a memory write register, said input register is

- 1 -

LAW OFFICES OF
SKJERVEN, MORRILL,
MacPHERSON, FRANKLIN
& FRIEL
25 METRO DRIVE
SUITE 700
SAN JOSE, CA 95110
(408) 283-1222
FAX (408) 283-1733

L:\W\1018\1P\O\PAMD.BNK                                                    PATENT

an update register, and said output register [comprises a read hold register for furnishing data to said host port and] is a write back register for furnishing data to said system port.

5.    (Amended)  The memory cache apparatus as recited in Claim 4 further comprising:

a miss address register coupled to said random access memory for storing [output] an addressing [signals] signal corresponding to said output data; and

a hit address register coupled to said miss address register for storing [input] an addressing [signals] signal corresponding to said input data.

Please add new Claims 6 - 18 as follows:

6.    (New)  The memory cache apparatus as recited in Claim 1 further comprising a second output register coupled to said random access memory and to said host port for furnishing data from said memory to said host port.

7.    (New)  The memory cache apparatus as recited in Claim 6 wherein said second output register is a read hold register.

8,    (New)  The memory cache apparatus as recited in Claim 6 wherein said input register can store a plurality of words of data.

9.    (New)  The memory cache apparatus as recited in Claim 8 further comprising means for masking the writing of selected words of data into said random access memory.

10.   (New)  The memory cache apparatus as recited in Claim

LAW OFFICES OF
SKJERVEN, MORRILL,
MACPHERSON, FRANKLIN
& FRIEL
25 METRO DRIVE
SUITE 700
SAN JOSE, CA 95110
(408) 283-1222
FAX (408 283-1233

- 2 -

L:\M\1018\1P\O\PAMD.BNK                                                    PATENT

1 further comprising a bypass path coupled between said host
port and said system port for directly allowing the passage of
data between said host port and said system port.

11.   (New) The memory cache apparatus as recited in Claim
5 further comprising a counter coupled to said miss address
register.

12.   (New)  The memory cache apparatus as recited in Claim
11 wherein said counter increments from an address associated
with a first line of data to a subsequent line of data.

13.   (New)  The memory cache apparatus as recited in Claim
2 further comprising means for validating data stored within
said input register to selectively prevent the writing of data
of said data stored within said input register into said random
access memory.

14.   (New)  The memory cache apparatus as recited in Claim
1 wherein said random access memory includes a plurality of
parity bits.

15.   (New)  The memory cache apparatus as recited in Claim
1 wherein said RAM is organized in a plurality of lines wherein
each of said lines comprises a plurality of word storage
locations, and wherein each of said word storage locations is
selectively writable.

16.   (New)  The memory cache apparatus as recited in Claim
1 wherein said random access memory is single ported.

17.   (New)  The memory cache apparatus as recited in Claim



LAW OFFICES OF
SKJERVEN, MORRILL,
MacPHERSON, FRANKLIN
& FRIEL
25 METRO DRIVE
SUITE 700
SAN JOSE, CA 95110
(408) 283-1222
FAX (408) 283-1833

- 3 -

L:\W\1018\1P\O\PAMD.BNK                                    PATENT

16 wherein said random access memory has a wider bandwidth than said host port and said system port.

18.    (New)   The memory cache apparatus as recited in Claim 1 wherein said random access memory performs a read-modify-write operation.

### REMARKS

Applicant requests the Examiner to amend Claims 1, 3 and 5 and to add Claims 6-18 as indicated above.  Examination and allowance of the pending claims is requested.

Respectfully submitted,

B. Noël Kivlin
Agent for Applicant
Reg. No. 33,929

I hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail in an envelope addressed to: Commissioner of Patents and Trademarks, Washington, D.C., 20231, on _10-18_ 19 _91_

_10-18-91_                    B. Noël Kivlin
Date of Signature            Agent for Applicant

LAW OFFICES OF
SKJERVEN, MORRILL,
MacPHERSON, FRANKLIN
& FRIEL
25 METRO DRIVE
SUITE 700
SAN JOSE, CA 95110
(408) 293-1222
FAX (408) 283-1233

- 4 -

EXHIBIT 13

$GP \ 2312$

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicant:    Alfred K. Chan

Assignee:    MOS Electronics, Corp.

Title:    RANDOM ACCESS CACHE MEMORY

Serial No:    07/678,912    Filed:  04-01-91

Examiner:    Glenn Gossage    Group Art Unit:  2312

Attorney Docket No:  M-1018-1P US

_____

San Jose, California
November 18, 1993

COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C.

AMENDMENT

Dear Sir:

Responsive to the Office Action mailed on September 9, 1993,
kindly amend the above-identified application as follows:

*In the Title:*

Please delete "CACHE".

Please add --DUAL PORTED CACHE INCLUDING A-- before "RANDOM".

Please add --AND DECOUPLING CIRCUITS-- after "MEMORY".

*In the Abstract:*

In line 4, change --The-- to "A".

In line 5, change --the-- to "a".

Please delete lines 19 - 28.

CS14031   12/23/93   07678912          19-2386  140  103        66.00CH

H:\PATENT\MOS\M-1018.1P\AMEND.                - 1 -

PATENT

## In the Drawings:

Please amend the drawings as shown in red on the attached sheets.

## In the Specification:

On page 1, line 6, please add --, now abandoned--after "1990".

On page 2, line 21, please add (a "#" indicates an active low signal throughout the specification) after "ads#".

On page 7, line 30, please add using a cache memory in accordance with the present invention after "computer system".

On page 7, line 32, please add using a cache memory in accordance with the present invention after "computer system".

On page 7, line 34, please change "Figure 8 is" to Figures 8A, 8B and 8C, which are generally referred to as Figure 8 throughout the specification, are

On page 19, line 34, please change "associates with" to --is associated with--.

On page 19, line 35, please change "associates with" to --is associated with--.

On page 19, line 36, please change "associates with" to --is associated with--.

On page 19, line 37, please change "associates with" to --is associated with--.

H:\PATENT\MOS\M-1018.1P\AMEND.                    - 2 -

PATENT

On page 37, line 17, please change "controller" to --Controller--.

On page 114, line 30, please change "57" to --58--.

### *In the Claims*:

Please amend claims 1 - 18 as follows:

1.    (Twice Amended)    A <u>cache</u> memory [cache] apparatus comprising:

        a random access memory;

        a host port;

5        a system port;

        a[n] <u>first</u> input <u>register</u> [latch coupled to said host port] for selectively writing data to said <u>random access</u> memory<u>, said first input register being coupled between said host port and said random access memory</u>; and

10    an output register [coupled to said system port] for receiving data from said <u>random access</u> memory and selectively <u>providing</u> [furnishing said] data to said system port<u>, said output register being coupled between said random access memory and said system port</u>.

2.    (Amended) An apparatus as in claim 1, further comprising a[n] <u>second</u> input register [connected to said system port] for [furnishing] <u>providing</u> data to said memory<u>, said second input register being coupled between said random access memory and said system port</u>.

3.    (Twice Amended) An apparatus as in Claim 2, wherein said <u>first</u> input [latch] <u>register</u> is a memory write register, said <u>second</u> input register is an update register, and said output register is a write back register for [furnishing] <u>providing</u> data

PATENT

5    to said system port.

4.    A cache memory [cache] apparatus comprising:
a random access memory;
a host port;
a system port;
5    an input register coupled to said random access memory for
          selectively writing input data to said random access
          memory; and
an output register coupled to said system port for receiving
          output data from said random access memory and
10          selectively furnishing said output data to said system
          port;
wherein said input data is [written into] provided to said
          random access memory from said input register at the same
          time [when] that said output data is provided by
15    [furnished to said system port from] said output register
          to said system port.

5.    (Twice Amended)  The cache memory [cache] apparatus as
recited in Claim 4 further comprising:
a miss address register coupled to said random access memory
          for storing an address[ing] signal corresponding to a
5          word of said output data; and
a hit address register coupled to said miss address register
          for storing an address[ing] signal corresponding to a
          word of said input data.

6.    (Amended)  The cache memory [cache] apparatus as recited
in Claim 1 further comprising a second output register coupled [to]
between said random access memory and [to] said host port for
[furnishing] providing data from said random access memory to said
5    host port.

PATENT

7.  (Amended) The <u>cache</u> memory [cache] apparatus as recited in Claim 6 wherein said second output register is a read hold register.

8.  (Amended) The <u>cache</u> memory [cache] apparatus as recited in Claim 6 wherein said <u>second</u> input register can store a plurality of words of data.

9.  (Amended) The <u>cache</u> memory [cache] apparatus as recited in Claim 8 further comprising means for masking [the] writing of selected words of data into said random access memory.

10.  (Amended) The <u>cache</u> memory [cache] apparatus as recited in Claim 1 further comprising a bypass path coupled between said host port and said system port for directly allowing [the] passage of data between said host port and said system port.

11.  (Amended) The <u>cache</u> memory [cache] apparatus as recited in Claim 10 further comprising a counter coupled to said miss address register.

12.  (Amended) The <u>cache</u> memory [cache] apparatus as recited in Claim 11 wherein said counter increments from an address associated with a first line of data to <u>an address associated with a subsequent line of data.</u>

13.  (Amended) The <u>cache</u> memory [cache] apparatus as recited in Claim 2 further comprising means for validating data stored within said <u>second</u> input register to selectively prevent the writing [of data] of said data stored within said <u>second</u> input register into said random access memory.

14.  (Amended)  The <u>cache</u> memory [cache] apparatus as recited

PATENT

in Claim 1 wherein said random access memory includes <u>storage for</u> a plurality of parity bits.

15. (Amended)  The <u>cache</u> memory [cache] apparatus as recited in Claim 1 wherein said [RAM] <u>random access memory</u> is organized in a plurality of lines wherein each of said lines comprises a plurality of word storage locations, and wherein each of said word storage locations is selectively writable.

16. The <u>cache</u> memory [cache] apparatus as recited in Claim 1 wherein said random access memory is single ported.

17. (Amended)  The <u>cache</u> memory [cache] apparatus as recited in Claim 16 wherein said random access memory [has] <u>is accessed with</u> a wider bandwidth than said host port and said system port.

18. (Amended)  The <u>cache</u> memory [cache] apparatus as recited in Claim 1 wherein said random access memory [performs] <u>is written using</u> a read-modify-write operation.

Please add the following new claims:

19.  (New) A cache memory apparatus comprising:
a random access memory;
a host port;
a system port;
a first input register for selectively writing input data to said random access memory, said first input register being coupled between said host port and said random access memory;
a first output register for selectively furnishing output data to said system port, said first output register being coupled between said random access memory and said system

PATENT

port, said input data being provided to said random
access memory from said first input register at the same
time that said output data is provided by said first
output register to said system port;

a second input register for providing second input data to
said random access memory, said second input register
being coupled between said random access memory and said
system port; and,

a second output register coupled between said random access
memory and said host port for providing second output
data from said random access memory to said host port,
said second input data being provided to said random
access memory from said second input register at the same
time that said second output data is provided by said
second output register to said system port.

20. (New) An apparatus as recited in claim 19 further
comprising a bypass path coupled between said host port and said
system port for directly allowing passage of data between said host
port and said system port.

21. (New) An apparatus as recited in Claim 19, wherein said
first input register is a memory write register, said second input
register is an update register, said first output register is a
write back register, and said second output register is a read hold
register.

22. (New) The cache memory apparatus as recited in Claim 19
wherein said second input register can store a plurality of words
of data.

23. (New) The cache memory apparatus as recited in Claim 21
further comprising means for masking writing of selected words of

PATENT

B8
Cont. data into said random access memory.

## REMARKS

The declaration has been set forth as being defective for not including the statement that the person making the declaration has reviewed and understands the contents of the specification, including the claims.  This rejection is respectfully traversed.

The inventor states in the declaration which was executed for the above-identified application, in part, that "I have reviewed and understand the contents of the above identified application . . . ."  An application, as set forth by 37 C.F.R. §1.51, includes "(1) a specification, including a claim or claims . . . . ." Accordingly, a declaration which sets forth that the inventor has reviewed and understands the contents of an application satisfies the requirement of 37 C.F.R. §1.63(b)(1).

Responsive to the Examiner's objection to the Title of the Invention, the Title has been amended to be more descriptive. Responsive to the Examiner's objection to the Abstract of the Disclosure, the Abstract of the Disclosure has been amended.

Responsive to the Examiner's objection to the drawings, the drawings have been amended to correct the objections set forth by the Examiner.  Regarding the Examiner's comment about the darkened triangular symbol, the application sets forth on pages 46 and 47 that the data path drivers are designated with solid triangular symbols.

Responsive to the Examiner's objection to the specification, the specification has been amended to correct the errors set forth by the Examiner.

PATENT

Claims 1 - 18 stand rejected under 35 U.S.C. §103 over "applicant's admitted prior art" in view of either Aichelmann, Jr. et al. or Watanabe.  This rejection is respectfully traversed.

The present invention relates to providing a cache memory system which decouples a main memory subsystem from a host data bus.  More specifically, the present invention, as set forth in independent claim 1, relates to a cache memory which includes a random access memory, a host port, a system port, an input register coupled between the host port and the random access memory and an output register coupled between the system port and the random access memory.  The input register selectively provides data to the random access memory.  The output register receives data from the random access memory and selectively provides the data to the system port.  By selectively providing the data to and from the random access memory, it is possible to effectively decouple to host port from the system port and thus to decouple the buses that are connected to these ports.  Independent claim 4 is of similar scope but adds the further limitation that the input data is provided to the random access memory from the input register at the same time that the output data is provided by the output register to the system port.  New independent claim 19 is of similar scope but adds the further limitations of a second input register which provides second input data to the random access memory and is coupled between the random access memory and the system port, a second output register which provides second output data to the host port and is coupled between the random access memory and the host port and a bypass path which is coupled between the host port and the system port for directly allowing passage of data between the host port and the system port.

The Background of the Invention section of the present application sets forth with reference to Figure 4 that it was known

PATENT

to provide an external cache which is connected to a local address
bus and a local data bus.  A cache controller, which determines
whether data corresponding to a particular address is resident in
the cache memory, is coupled to the local address bus as well as a
local control bus.  If the particular address is not resident in
the cache then the address and data are transferred via cache bus
buffers 32A and 32B, respectively, to system bus 34.  Cache bus
buffer/latches 32A and 32B are controlled by cache bus controller
36 which receives control information from cache controller 30.
This discussion does not set forth that a memory apparatus which
includes a host port and a system port is prior art.

    Watanabe discloses a cache memory having a dual ported tag
storage section which allows the cache to be independently
accessible by a processor as well as by another cache.  The dual
ported tag storage section saves tag addresses and valid tag
address information corresponding to respective data storage
locations in a data storage section of the cache and provides hit
indication signals to the data storage section of the cache.  One
of the ports of the dual ported tag storage section is coupled to
the processor and allows the processor to write to and read from
the data storage section of the cache memory.  The other port of
the dual ported tag section is coupled to a system bus and allows
determination of whether information which was updated by another
cache is stored in the cache memory by comparing the address tags
which are stored in the tag storage section.  If the information
was updated, then this storage location is invalidated by clearing
the valid tag address information which corresponds to this
address.  Such a system provides advantages in a multiprocessing
system in which each of the processors includes a respective
dedicated cache.  Watanabe also discloses as prior art a cache
memory which has a first I/O buffer that is coupled to a central
processing unit and another I/O buffer that is coupled to a system

PATENT

bus.  The I/O buffers temporarily hold data that is subsequently delivered to the processor, the main memory or the data storage section.

Aichelmann, Jr. et al. discloses an intermediate buffer memory which includes both a serial port which is coupled to lower levels of memory and a parallel port which is coupled to higher levels of memory.  The parallel port is coupled with a storage array via a parallel bank of AND gates which provide a chip select and read/write enabling.  The serial port is coupled to the storage array via a buffer which buffers the serial signal; the buffer is coupled in parallel to the store array.  Data transfers with the higher memory level are performed in parallel while data transfers with the lower memory level are performed in serial.  By using the buffer, data transfer between the serial port and the buffer may be performed concurrently with data transfer between the memory array and the parallel port.

The "cited prior art", Watanabe, and Aichelmann, Jr. et al. do not disclose or suggest, taken alone or combination, a cache memory which includes both an input register which is coupled between a host port and a random access memory and which selectively provides data to the random access memory and an output register which receives data from the random access memory and selectively provides the data to the system port, as required by independent claim 1.  Additionally, the "cited prior art", Watanabe, and Aichelmann, Jr. et al. do not disclose or suggest, taken alone or combination, the further limitation of the input data being provided to the random access memory from the input register at the same time that the output data is provided by the output register to the system port, as required by independent claim 4.  Additionally, the "cited prior art", Watanabe, and Aichelmann, Jr. et al. do not disclose or suggest, taken alone or combination, the

PATENT

further limitations of a second input register which provides second input data to the random access memory and is coupled between the random access memory and the system port, a second output register which provides second output data to the host port and is coupled between the random access memory and the host port and a bypass path which is coupled between the host port and the system port for directly allowing passage of data between the host port and the system port, all as required by new independent claim 19.

Claims 2, 3, 6 - 10, and 13 - 18 depend from claim 1 and are allowable with it. Claims 4, 11 and 12 depend from claim 4 and are allowable with it.

In summary, a new declaration has been filed to address the Examiner's objection to the Declaration. The Title, Specification, Drawings, and Abstract have been amended to address the Examiner's objections. Additionally, the rejection under 35 U.S.C. §103 over "the cited prior art" in view of Aichelmann, Jr. et al. or Watanabe has been traversed.

Accordingly, the application is now in condition for allowance, and such allowance is respectfully solicited.

Respectfully submitted,

Stephen A. Terrile
Attorney for Applicant(s)
Reg. No. 32,946

I hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail in an envelope addressed to: Commissioner of Patents and Trademarks, Washington, D.C., 20231, on December 2, 1993.

12/2/93
Date of Signature

Attorney for Applicant(s)

H:\PATENT\MOS\M-1018.1P\AMEND.                  - 12 -

EXHIBIT 14



## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicant:     Alfred K. Chan

Assignee:     MOS Electronics, Corp.

Title:     RANDOM ACCESS CACHE MEMORY

Serial No:     07/678,912          Filed:     04-01-91

Examiner:     Glenn Gossage          Group Art Unit:     2312

Attorney Docket No:     M-1018-1P US

**RECEIVED**

**AUG 2 6 1994**

**GROUP 2300**

---

San Jose, California
August 8, 1994

COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C.

### AMENDMENT

Dear Sir:

Responsive to the Office Action mailed on March 8, 1994, kindly amend the above-identified application as follows:

### *In the Title:*

Please change "A RANDOM ACCESS MEMORY AND DECOUPLING" to --DECOUPLING REGISTER--.

Please delete "DUAL PORTED"

P 30182  08/23/94  07678912

P 30183  08/23/94  07678912

19-2386  030  102     74.00CH

19-2386  030  102     88.00CH

### *In the Abstract:*

In line 6, after "transfers", please insert

--The memory cache apparatus includes a random access memory, a host port, and a system port. The memory cache apparatus further includes an input register connected to the host port for selectively writing data to the random access memory and an output register connected to the system port for receiving data from the random access memory and selectively furnishing the data to the

PATENT

host port or the system port.  In one embodiment, the input register is a memory write register, and the output register includes a read hold register and a write back register.

In lines 8 and 11, please change "from the" to --from a--.

In lines 6 and 7, please delete "In burst mode, a 'demand word first' wrapped around quad fetch order is supported."

## In the Drawings:

Please amend the Figs. 8A - 8C and Figs. 53 - 58 of the drawings as shown in red on the attached sheets.

## In the Specification:

On page 12, line 17, please change "Figure 8" to --Figures 8A-8C--.

On page 15, line 1, please change "Figure 8" to --Figures 8A-8C--.

On page 15, line 8, please change "Figure 8" to --Figures 8A-8C--.

On page 16, line 12, please change "Figure 8" to --Figures 8A-8C--.

On page 18, line 5, please change "Figure 8" to --Figures 8A-8C--.

On page 18, line 25, please change "Figure 8" to --Figures 8A-8C--.

On page 19, lines 34 - 37 please change
"BE3# associates with D<31:24>
BE2# associates with D<23:16>
BE1# associates with D<15:8>
BE0# associates with D<7:0>"

to

PATENT

BE3# is associated with D<31:24>
BE2# is associated with D<23:16>
BE1# is associated with D<15:8>
BE0# is associated with D<7:0>

On page 46, line 32, please change "Figure 8" to --Figures 8A-8C--.

*In the Claims:*

Please amend claims 1, 4 and 19 as follows:

1.   (Three Times Amended)    A cache memory apparatus comprising:

   a random access memory;

   a host port;

5  a system port;

   a first input register for selectively writing data to said
      random access memory, said first input register being
      coupled between said host port and said random access
      memory; and

10  an output register for receiving data from said random access
      memory and selectively providing data to said system
      port, said output register being coupled between said
      random access memory and said system port,
      the selective writing of data to said random access
15       memory and the selective providing of data to said
         system port allowing said host port to be decoupled
         from said system port.

4.    (Twice Amended) A cache memory apparatus comprising:

   a random access memory;

   a host port;

   a system port;

5  an input register coupled to said random access memory for
      selectively writing input data to said random access
      memory; and

PATENT

an output register coupled to said system port for receiving
output data from said random access memory and
10    selectively [furnishing] providing said output data to
said system port;

wherein said input data is provided to said random access
memory from said input register at the same time that
said output data is provided by said output register to
15    said system port, the selective writing of data to said
random access memory and the selective providing of data
to said system port allowing said host port to be
decoupled from said system port.

19.  (Amended) A cache memory apparatus comprising:
a random access memory;
a host port;
a system port;
5    a first input register for selectively writing input data to
said random access memory, said first input register
being coupled between said host port and said random
access memory;

a first output register for selectively furnishing output data
10    to said system port, said first output register being
coupled between said random access memory and said system
port, said input data being provided to said random
access memory from said first input register at the same
time that said output data is provided by said first
15    output register to said system port, the selective
writing of data to said random access memory and the
selective furnishing of data to said system port allowing
said host port to be decoupled from said system port;

a second input register for providing second input data to
20    said random access memory, said second input register
being coupled between said random access memory and said
system port; and,

PATENT



a second output register coupled between said random access memory and said host port for providing second output data from said random access memory to said host port, said second input data being provided to said random access memory from said second input register at the same time that said second output data is provided by said second output register to said system port.

Please add the following new claims:

24. (New) A cache memory apparatus comprising:

a random access memory;

a host port;

a system port;

5   a memory write register for selectively writing input data to said random access memory, said memory write register being coupled between said host port and said random access memory;

a write back register for selectively furnishing output data

10   to said system port, said write back register being coupled between said random access memory and said system port, said input data being provided to said random access memory from said memory write register at the same time that said output data is provided by said write back

15   register to said system port;

a update register for providing second input data to said random access memory, said update register being coupled between said random access memory and said system port;

a read hold register coupled between said random access memory

20   and said host port for providing second output data from said random access memory to said host port, said second input data being provided to said random access memory from said update register at the same time that said



PATENT

second output data is provided by said read hold register
25      to said system port; and

a bypass path coupled between said host port and said system
port for directly allowing passage of data between said
host port and said system port.

25.  (New) The cache memory apparatus as recited in Claim 24 wherein said update register can store a plurality of words of data.

26.  (New) The cache memory apparatus as recited in Claim 24 further comprising means for masking writing of selected words of data into said random access memory.

27. (New) The cache memory apparatus as recited in Claim 24 further comprising:

a miss address register coupled to said random access memory
for storing an address signal corresponding to a word of
5      said output data; and

a hit address register coupled to said miss address register
for storing an address signal corresponding to a word of
said input data.

## REMARKS

The Declaration has been set forth as being defective for not including the statement that the person making the declaration has reviewed and understands the contents of the specification, including the claims. A newly executed declaration in compliance with 37 C.F.R. §1.67(a) is enclosed with this response.

Responsive to the Examiner's objection to the Title of the Invention, the Title has been amended to be more descriptive.

PATENT

Responsive to the Examiner's objection to the Abstract of the Disclosure, the Abstract of the Disclosure has been amended.

Responsive to the Examiner's objection to the drawings, the drawings have been amended to correct the objections set forth by the Examiner.  Support for the amendments to Figs 8A - 8C can be found at pages 46 - 48.  Support for the amendments to Figs. 53 - 56 can be found at page 109, line 13 to page 114, line 5.  Support for the amendments to Figs. 57 and 58 can be found at page 114, line 6 to page 115, line 14.

Responsive to the Examiner's objection to the specification, the specification has been amended to correct the errors set forth by the Examiner.

Claims 1 - 18 stand rejected under 35 U.S.C. §102(b) over Malinowski and under 35 U.S.C. §102(e) over Sachs et al.    These rejections are respectfully traversed.

The present invention relates to providing a cache memory system which decouples a main memory subsystem from a host data bus.  More specifically, the present invention, as set forth in independent claim 1, relates to a cache memory which includes a random access memory, a host port, a system port, an input register coupled between the host port and the random access memory and an output register coupled between the system port and the random access memory.  The input register selectively provides data to the random access memory.  The output register receives data from the random access memory and selectively provides the data to the system port.  By selectively providing the data to and from the random access memory, it is possible to effectively decouple to host port from the system port and thus to decouple the buses that are connected to these ports.  Independent claim 4 is of similar scope but adds the further limitation that the input data is

PATENT

provided to the random access memory from the input register at the same time that the output data is provided by the output register to the system port.  Independent claim 19 is of similar scope but adds the further limitations of a second input register which provides second input data to the random access memory and is coupled between the random access memory and the system port, a second output register which provides second output data to the host port and is coupled between the random access memory and the host port.  New independent claim 24 is of similar scope but adds the further limitation of a bypass path which is coupled between the host port and the system port for directly allowing passage of data between the host port and the system port.

Malinowski discloses a memory which includes registers coupled between read and write ports of the memory array and input and output ports of the memory.  More specifically, Malinowski discloses a first in first out (FIFO) memory which includes two pairs of cache registers.  One pair, a write pair, are coupled between a data input port and the memory array write port.  The other pair, a read pair, are coupled between the data out port and the memory read port.  Malinowski also discloses a last in first out (LIFO) memory which includes only a single pair of cache registers.  One of the LIFO cache registers is coupled between the data in/out port and the read port of the memory and the other LIFO cache register is coupled between the data in/out port and the write port of the memory.  Malinowski sets forth that the technique used for the LIFO memory may also be used in a random access memory.  With a random access memory, a speed advantage is achieved whenever sequential reads or all writes from/to the RAM array are performed.  Extra address comparators compare externally applied addresses with the addresses generated internally and if a hit is indicated, one of the desired read/write functions would be performed.  In the case of a miss, an extra wait state signal goes high to indicate to the processor that an extra clock cycle has to

PATENT

be wasted to decode the out of sequence address and get the data. In the case of all writes, both data and address are cached for the next cycle memory array writes.  (Col. 8, lines 16 - 36.)

Sachs et al. discloses a cache memory management unit which includes a cache memory subsystem 220 which is coupled to a cache bus via cache output register 230 and cache input register 240 and is coupled to a system bus via system bus input register 260 and system bus output register 250.  The cache output register is directly coupled via a data out line to the memory subsystem.  The cache input register, system bus input register and system bus output register are coupled to the memory subsystem via a data bus 241.

Malinowski and Sachs et al. do not disclose or suggest, taken alone or in combination, a cache memory which includes both an input register which is coupled between a host port and a random access memory and which selectively provides data to the random access memory and an output register which receives data from the random access memory and selectively provides the data to the system port, as required by independent claim 1.  Additionally, Malinowski and Sachs et al. do not disclose or suggest, taken alone or in combination, the further limitation of the input data being provided to the random access memory from the input register at the same time that the output data is provided by the output register to the system port, as required by independent claim 4. Additionally, Malinowski and Sachs et al. do not disclose or suggest, taken alone or in combination, the further limitations of a second input register which provides second input data to the random access memory and is coupled between the random access memory and the system port, a second output register which provides second output data to the host port and is coupled between the random access memory and the host port, all as required by independent claim 19. Additionally, Malinowski and Sachs et al. do

PATENT

not disclose or suggest, taken alone or in combination, the further limitation of a bypass path which is coupled between the host port and the system port for directly allowing passage of data between the host port and the system port, all as required by independent claim 19.

Claims 2, 3, 6 - 10, and 13 - 18 depend from claim 1 and are allowable with it. Claims 4, 11 and 12 depend from claim 4 and are allowable with it. New claims 25 - 28 depend from new independent claim 24 and are allowable with it.

In summary, a new declaration has been filed to address the Examiner's objection to the Declaration. The Title, Specification, Drawings, and Abstract have been amended to address the Examiner's objections. Additionally, the rejection under 35 U.S.C. §102(b) over Malinowski and the rejection under 35 U.S.C. §102(e) over Sachs et al. have been traversed.

Accordingly, the application is now in condition for allowance, and such allowance is respectfully solicited.

Respectfully submitted,

Stephen A. Terrile
Attorney for Applicant(s)
Reg. No. 32,946

I hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail in an envelope addressed to: Commissioner of Patents and Trademarks, Washington, D.C., 20231, on ___ **8/8**___, 1994.

**8/8/94**
Date of Signature                    Attorney for Applicant(s)

# EXHIBIT 15



'ECEIVED

MAY 0 5 1995

GROUP 2300

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| Applicant: | Alfred K. Chan |
| Assignee: | MOS Electronics Corporation |
| Title: | CACHE INCLUDING DECOUPLING REGISTER CIRCUIT (AS AMENDED) |

Serial No:    07/678,912          Filed:   04-01-91

Examiner:    G. Gossage          Group Art Unit:   2312

Attorney Docket No:   M-1018-1P US

San Jose, California
April 7, 1995

COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C.

### RESPONSE TO NON-FINAL OFFICE ACTION

Dear Sir:

This paper is in response to the Office Action mailed November 22, 1994 having a shortened statutory period set to expire February 22, 1995.  Accompanying this response is a petition to extend the shortened statutory period by two months, setting a new time for response of April 24, 1995 (April 22 being a Saturday and April 23 being a Sunday). Further examination and reconsideration are respectfully requested in view of the amendments and remarks set forth below.

### PROVISIONAL PETITIONS

The Office is provisionally petitioned to extend the shortened statutory period as necessary to avoid abandonment of the Application in relation to the outstanding Office action. If appropriate, a separate Petition for Extension accompanies this Response, this provisional petition being effective in the event that the separate Petition for Extension is defective or

H:\PATENT\MOS\M-1018.1P\AMEND.3          - 1 -



PATENT

missing.  The Office is provisionally authorized to charge any amount required to avoid abandonment of the Application in relation to the outstanding Office action to account number 19-2386.  A separate Fee Transmittal accompanies this Response, this provisional fee authorization being effective in the event that the separate Fee Transmittal is defective or missing.

## AMENDMENT

*In the Abstract*

In lines 7-8, please change "A cache memory system" to -- The memory cache apparatus--.

*In the Specification*

On page 15, line 1, please change "if" to --of--.

On page 15, line 1, please change "8" to --8A-8C--.

*In the Claims*

Please cancel claims 3 and 7.  Also, kindly amend claims 1, 2, 4-6, 8, 9, 13, 19, and 21-27, as follows:

1.    (Four Times Amended)    A cache memory apparatus comprising:

a random access memory;

a host port;

5    a system port;

a [first input] memory write register for buffering first data received from said host port and selectively [writing] providing the first data to one of said random access memory, said system port, and said

10    random access memory and said system port, said [first input] memory write register being coupled between said host port and said random access memory and between said host port and said system port; and

PATENT

[an output] a write back register for holding second data
        received [receiving data] from said random access
        memory and selectively providing the second data to
        said system port, said [output] write back register
5       being coupled between said random access memory and
        said system port[,]; 
wherein the buffering and selective [writing] providing of the
first data to said random access memory and the holding and
selective providing of the second data to said system port
10  [allowing] allows memory accesses at said host port to be
decoupled from memory accesses at said system port.

9⁄. (Twice Amended) An apparatus as in claim 1, further
comprising [a second input] a memory update register for
holding fetched data and providing the fetched data to said
random access memory, said [second input] memory update
5   register being coupled between said random access memory and
said system port, wherein the holding and selective providing
of the second data and the holding of the fetched data allows
write back and fetch operations at said system port to be
decoupled from said random access memory.

13⁄. (Three Times Amended) A cache memory apparatus
comprising:
        a random access memory;
        a host port;
5       a system port;
        [an input] a memory write register coupled to said random
            access memory, to said host port, and to said system
            port for buffering and selectively [writing]
            providing input data received from said host port to
10          one of said random access memory, said system port,
            and said random access memory and said system port;

PATENT

and

[an output] a write back register coupled to said system
port and to said random access memory for
[receiving] holding output data received from said
5      random access memory and selectively providing said
output data to said system port;
wherein [said] the input data is provided to said random access
memory from said [input] memory write register at the same time
that [said] the output data is provided by said [output] write
10    back register to said system port, the buffering and selective
[writing] providing of the input data to said random access
memory and the holding and selective providing of the output
data to said system port allowing memory accesses at said host
port to be decoupled from memory accesses at said system port.

14. (Three Times Amended)  The cache memory apparatus as
recited in Claim 13 further comprising:
a miss address register coupled to said host port and to
said random access memory for storing a[n] cache
5      miss address signal corresponding to a word of
[said] the output data to be received from said
random access memory into said write back register;
and
a hit address register coupled to said host port and to
10     said [miss address register] random access memory
for storing a[n] cache hit address signal
[corresponding to] selective for a word [of said
input data] stored in said random access memory.

15. (Twice Amended)  The cache memory apparatus as
recited in Claim 1 further comprising a [second output] read
hold register coupled between said random access memory and
said host port for buffering and providing burst read data from

H:\PATENT\MOS\M-1018.1P\AMEND.3          — 4 —

PATENT

said random access memory to said host port.

11. (Twice Amended) The cache memory apparatus as recited in [Claim 6] Claim 7 wherein said [second input] memory update register can store a plurality of words of the fetched data.

12. (Twice Amended) The cache memory apparatus as recited in Claim 11 further comprising means for masking [writing] the providing of selected ones of said words of the fetched data [into] to said random access memory.

13. (Twice Amended) The cache memory apparatus as recited in Claim 10 further comprising means for [validating] identifying ones of the fetched data [stored within] held in said [second input] memory update register [to selectively

5  prevent the writing of said data stored within] as not corresponding to ones of the second data held in said write back register for write back to said system port, said identifying means being selective for the ones of the fetched data to be provided from said [second input] memory update

10 register [into] to said random access memory.

17. (Twice Amended) A cache memory apparatus comprising:
a random access memory;
a host port;
a system port;
5  a [first input] memory write register for buffering and selectively writing first input data to said random access memory, said [first input] memory write register being coupled between said host port and said random access memory;
10 a [first output] write back register for holding and selectively furnishing first output data to said

PATENT

system port, said [first output] <u>write back</u> register
being coupled between said random access memory and
said system port, [said] <u>the first</u> input data being
provided to said random access memory from said
5     [first input] <u>memory write</u> register at the same time
that [said] <u>the first</u> output data is provided by
said [first output] <u>write back</u> register to said
system port, the selective writing of <u>the first</u>
<u>input</u> data to said random access memory and the
10     selective furnishing of <u>the first output</u> data to
said system port allowing <u>memory accesses at</u> said
host port to be decoupled from <u>memory accesses at</u>
said system port;

    a [second input] <u>memory update</u> register for <u>holding and</u>
15        <u>selectively</u> providing second input data to said
random access memory, said [second input] <u>memory</u>
<u>update</u> register being coupled between said random
access memory and said system port<u>, wherein the</u>
<u>holding and selective furnishing of the first output</u>
20        <u>data and the holding and selective providing of the</u>
<u>second input data allows write back and memory</u>
<u>update operations at said system port to be</u>
<u>decoupled from said random access memory</u>; and,

    a [second output] <u>read hold</u> register coupled between said
25        random access memory and said host port for
providing second output data from said random access
memory to said host port, [said] <u>the</u> second input
data being provided to said random access memory
from said [second input] <u>memory update</u> register at
30        the same time that [said] <u>the</u> second output data is
provided by said [second output] <u>read hold</u> register
to said [system] <u>host</u> port.

PATENT

21. (Amended)   An apparatus as recited in Claim 19, wherein [said] the first input [register is a] data comprises memory write [register] data, [said] the second input [register is an update register] data comprises system fetch data, [said] the first output [register is a] data comprises system write back [register] data, and [said] the second output [register is a read hold register] comprises burst read data.

18. (Amended)   The cache memory apparatus as recited in Claim 17 wherein said [second input] memory update register can store a plurality of words of the second input data.

21. (Amended)   The cache memory apparatus as recited in Claim 21 further comprising means for masking writing of selected words of the system fetch data into said random access memory.

23. (Amended)   A cache memory apparatus comprising:
   a random access memory;
   a host port;
   a system port;
5   a bypass path coupled between said host port and said system port for directly passing data between said host port and said system port;
   a memory write register for buffering and selectively [writing input] providing memory write data to one
10   of said random access memory, said system port via said bypass path, and said random access memory and said system port via said bypass path, said memory write register being coupled to said bypass path and between said host port and said random access memory;
15   a write back register for holding and selectively

PATENT

furnishing [output] <u>write back</u> data to said system
port, said write back register being coupled between
said random access memory and said system port, <u>said</u>
<u>write back register allowing the write back data to</u>
<u>be furnished to said system port at the same time</u>
<u>that said memory write register provides</u> [said
input] <u>the memory write</u> data [being provided] to
said random access memory [from said memory write
register at the same time that said output data is
provided by said write back register to said system
port];

a <u>memory</u> update register for <u>holding and selectively</u>
providing [second input] <u>system fetch</u> data to said
random access memory, said <u>memory</u> update register
being coupled between said random access memory and
said system port<u>, wherein the holding and selective</u>
<u>furnishing of the write back data and the holding</u>
<u>and selectively providing of the system fetch data</u>
<u>allows write back and memory update operations at</u>
<u>said system port to be decoupled from said random</u>
<u>access memory</u>; <u>and</u>

a read hold register coupled between said random access
memory and said host port for <u>buffering and</u>
providing [second output] <u>burst read</u> data from said
random access memory to said host port, <u>said read</u>
<u>hold register allowing the burst read data to be</u>
<u>provided to said host port at the same time that</u>
<u>said memory update register provides</u> [said second
input] <u>the system fetch</u> data [being provided] to
said random access memory [from said update register
at the same time that said second output data is
provided by said read hold register to said system
port; and

PATENT

a bypass path coupled between said host port and said
    system port for directly allowing passage of data
    between said host port and said system port].

23
26.   (Amended)   The cache memory apparatus as recited in
22
Claim 24 wherein said memory update register can store a
plurality of words of the system fetch data.

24
26.   (Amended)   The cache memory apparatus as recited in
22
Claim 24 further comprising means for masking writing of
selected words of the system fetch data into said random access
memory.

25
27.   (Amended)   The cache memory apparatus as recited in
22
Claim 24 further comprising:
    a miss address register coupled to said host port and to
        said random access memory for storing a[n] cache
5       miss address signal, the cache miss address signal
        being selective for [corresponding to a word] words
        of [said output] the fetch data to be received into
        said memory update register and corresponding to
        words of the write back data to be held in said
10      write back register and replaced in said random
        access memory by the words of fetch data; and
    a hit address register coupled to said host port and to
        said [miss address register] random access memory
        for storing a[n] cache hit address signal selective
15      for [corresponding to] a word [of said input data]
        stored in said random access memory.

Please add the following new claim:

26
28.   (New)  The cache memory apparatus as recited in Claim



PATENT

27. further comprising means for identifying ones of the fetched data held in said memory update register as not corresponding to ones of the write back data held in said write back register for write back to said system port, said identifying means being selective for the ones of the fetched data to be provided from said memory update register to said random access memory.

## REMARKS

Claims 1, 2, 4-6, and 8-27 are pending in the application. Of those, claims 1, 2, 4-6, 8, 9, 13, 19, and 21-27 have been amended. A new claim 28 has been added.

Responsive to the Examiner's objection to the Abstract of the Disclosure, the Abstract has been amended for clarity and consistency. Responsive to the Examiner's suggestion, the Abstract has been rewritten to include all changes made to date and a copy is enclosed with this response.

The Examiner has required that the label/designation "ads#" within step 300 of Figure 53 be clarified. The label "ads#?" (which was previously amended to include the question mark) identifies the condition evaluated in step 300, namely whether or not the signal ads# has been asserted. The Examiner has also required clarification of the label "assert: brdy# ..." which appears near step 308 in Figure 53. In particular, the Examiner has asked "Does this refer to the cache?" Yes, the label which reads:

        Cache:    trigger burst read
                  assert brdy# to CPU,
                  HPOEA#, HPOEB# to burst RAM
                  update LRU state

identifies actions performed by the cache. Applicant believes the preceding explanations are responsive to the Examiner's

PATENT

requirement for clarification by way of explanation. Responsive to the Examiner's suggestion, a complete set of the drawings as amended to date (the amendments being highlighted) is enclosed with this response.

Responsive to the Examiner's objection to informalities in the specification, the specification has been amended to correct the errors set forth by the Examiner.

Claims 13 and 27 stand rejected under 35 U.S.C. § 112, second paragraph. The examiner has stated that, in claim 13, it is "unclear how simply 'validating data' itself prevents the writing of data into RAM." Claim 13 has been amended to more clearly claim "means for identifying ones of the fetched data ...." Support for the amendment appears in the Specification at page 53, lines 6-22, and at page 88, line 24, through page 89, line 12. The Examiner's rejection of claim 27 for lack of clarity in antecedent basis has been addressed by more clearly referring to "fetch data." In addition, claim 27 has been amended to more clearly describe cache miss and cache hit address signals and operations. Support for the amendment appears in the Specification at page 16, line 16, through page 17, line 11, and in Table I (pages 28, 39, and 42 -- descriptions of signals WBSTB, QWR, and MWB). Withdrawal of the § 112 rejections is requested.

*Summary of the Claimed Invention*

The present invention relates to providing a cache memory system which decouples a main memory subsystem from a host data bus. More specifically, the present invention, as set forth in independent claim 1, relates to a cache memory which includes a random access memory (RAM), a host port, a system port, a

PATENT

memory write register coupled between the host port, the RAM, and the system port, and a write back register coupled between the system port and the RAM.  The memory write register buffers data received from the host port and selectively provides the data to the RAM, the system port, or both.  The write back register receives data from the RAM and selectively provides the data to the system port.  By selectively providing the data to and from the RAM, it is possible to effectively decouple memory accesses at the host port from those at the system port.

Independent claim 4 is of similar scope but adds the further limitation that input data is provided to the RAM from the memory write register at the same time that output data is provided by the write back register to the system port.

Independent claim 19 is of similar scope, relating to a cache memory which includes a RAM, a host port, a system port, a memory write register coupled between the host port and the RAM, and a write back register coupled between the system port and the RAM, but adds the further limitations of a memory update register coupled between the RAM and the system port, and a read hold register coupled between the RAM and the host port.  Claim 19 also adds the further limitation that the memory update register holds second input data and selectively provides such data to the RAM.  The read hold register provides second output data to the host port at the same time that the memory update register provides second input data to the RAM. By holding and selectively furnishing first output data and holding and selectively providing second input data it is possible to effectively decouple write back and memory update operations at the system port from the RAM.

Finally, independent claim 24 is of similar scope to

PATENT

claims 1 and 4, but adds the further limitations of a bypass path coupled between the host port and the system port for directly passing data between the host port and the system port, a memory update register coupled between the RAM and the system port, and a read hold register coupled between the RAM and the host port. The memory update register holds system fetch data and selectively provides such data to the RAM. The read hold register allows burst read data to be provided to the host port at the same time that system fetch data is provided to the RAM from the memory update register. By holding and selectively furnishing write back data and holding and selectively providing system fetch data it is possible to effectively decouple write back and memory update operations at the system port from the RAM.

*Prior Art Rejections*

Claims 1, 2, 4, 6, 8 and 13-15 stand rejected under 35 U.S.C. § 102(b) over Malinowski. Claims 1-27 stand rejected under 35 U.S.C. § 102(e) over Sachs et al. These rejections are traversed in part and in part overcome by amendments to claims 1, 4, 19, and 24. In particular, claims 1, 4, and 24 have been amended to recite the selective provision of data from the memory write register to the RAM, the system port, or both. Basis for these amendments appears in the Specification beginning at page 54, line 17, and continuing through page 55, line 26. In addition, claims 19 and 24 have been amended to recite the selective provision of input data from the memory update register to the RAM, which, together with the holding and selective furnishing of output data from the write back register to the system port, allows memory update and write back operations at the system port to be decoupled from the RAM. Basis for the amendment appears in the Specification at

PATENT

page 53, lines 6-22, and at page 88, line 24, through page 89, line 12.

In addition, claims 1, 2, 4-6, 8, 9, 13, 19, and 21-27 have been amended to improve clarity by more precisely reciting register limitations (e.g., "write back register") and more clearly reciting function or operation of the registers (e.g., "for holding second data received from said random access memory and selectively providing the second data ..."). Basis for these clarifying amendments appears in the Specification beginning at page 43, line 1, and continuing through page 45, line 23.

Malinowski discloses a memory which includes a memory array and cache registers coupled between the read and write ports of the memory array and input and output ports of the memory. More specifically, Malinowski discloses a first in first out (FIFO) memory array embodiment which includes two pairs of cache registers. One pair, a write pair, is coupled between the data-in port and the memory array write port. The other pair, a read pair, is coupled between the data-out port and the memory array read port. Malinowski also discloses a last in first out (LIFO) memory array embodiment which includes only a single pair of cache registers. One of the cache registers is coupled between the data-in/out port and the read port of the LIFO memory array and the other cache register is coupled between the data-in/out port and the write port of the LIFO memory array. Malinowski sets forth that the technique used for the LIFO memory array could conceivably be used for a random access memory configured with a set of cache registers, a consecutive address generator, and address comparators. See Col. 8, lines 16 - 36.

PATENT

Sachs et al. discloses a cache memory management unit which includes a cache memory subsystem 220 which is coupled to a cache bus via cache output register 230 and cache input register 240 and is coupled to a system bus via system bus input register 260 and system bus output register 250. The cache output register is directly coupled via a data out line to the memory subsystem. The cache input register, system bus input register and system bus output register are coupled to the memory subsystem via a data bus 241.

Neither Malinowski nor Sachs et al., disclose or suggest, taken alone or in combination, a cache memory which includes a memory write register for buffering data received from a host port and selectively providing that data to a RAM, to a system port, or to both, and a write back register for holding data received from the RAM and selectively providing that data to a system port, as required by independent claim 1. Accordingly, amended claim 1 is allowable over Malinowski and Sachs et al. Additionally, neither Malinowski nor Sachs et al., disclose or suggest, taken alone or in combination, the further limitations of a memory update register for holding fetched data and providing the fetched data to the RAM (as required by dependent claim 2), and means for identifying particular fetched data held in the memory update register as not corresponding to write back data held in the write back register, wherein the identifying means is selective for the particular fetched data to be provided from the memory update register to the RAM (as required by dependent claim 13). Accordingly, amended claim 13 (which depends from claim 1 through claim 2) is also allowable over Malinowski and Sachs et al.

Neither Malinowski nor Sachs et al., disclose or suggest, taken alone or in combination, a cache memory which includes a

PATENT

memory write register for buffering input data received from a host port and selectively providing the input data to a RAM, to a system port, or to both, and a write back register for holding output data received from the RAM and selectively providing the output data to a system port, wherein the input data is provided to the RAM from the memory write register at the same time that the output data is provided by the write back register to the system port, as required by independent claim 4.     Accordingly, amended claim 4 is allowable over Malinowski and Sachs et al.   Additionally, neither Malinowski nor Sachs et al., disclose or suggest, taken alone or in combination, the further limitations of a miss address register coupled to the host port and to the RAM for storing a cache miss address signal corresponding to a word of write back data to be received from the RAM into the write back register, and a hit address register coupled to the host port and to the RAM for storing a cache hit address signal selective for a word stored in the RAM, as required by dependent claim 5. Accordingly, amended claim 5 is also allowable over Malinowski and Sachs et al.

Neither Malinowski nor Sachs et al., disclose or suggest, taken alone or in combination, a cache memory including a write back register coupled between a RAM and a system port for holding and selectively furnishing output data to the system port, and a memory update register coupled between the RAM and the system port for holding and selectively providing input data to the RAM, wherein the holding and selective furnishing of output data and the holding and selective providing of input data allow write back and memory update operations at the system port to be decoupled from the RAM, as required by independent claim 19.     Accordingly, amended claim 19 is allowable over Malinowski and Sachs et al.

PATENT

Neither Malinowski nor Sachs et al., disclose or suggest, taken alone or in combination, a bypass path coupled between a host port and a system port, a memory write register for buffering and selectively providing memory write data to RAM, to the system port via the bypass path, or to both, a write back register for holding and selectively furnishing write back data to the system port, and a memory update register for holding and selectively providing system fetch data to the RAM, as required by independent claim 24. Accordingly, amended claim 24 is allowable over Malinowski and Sachs et al. Additionally, neither Malinowski nor Sachs et al., disclose or suggest, taken alone or in combination, the further limitations of a miss address register coupled to the host port and to the RAM for storing a cache miss address signal selective for words of fetch data to be received into the memory update register and corresponding to a word of write back data to be held in the write back register and replaced in the RAM by the selected words of fetch data, and a hit address register coupled to the host port and to the RAM for storing a cache hit address signal selective for a word stored in the RAM, as required by dependent claim 27. Accordingly, amended claim 27 is allowable over Malinowski and Sachs et al. Finally, neither Malinowski nor Sachs et al., disclose or suggest, taken alone or in combination, the further limitation of means for identifying particular fetched data held in the memory update register as not corresponding to write back data held in the write back register, wherein the identifying means is selective for the particular fetched data to be provided from the memory update register to the RAM, as required by dependent claim 28. Accordingly, new claim 28 is also allowable over Malinowski and Sachs et al.

Claims 2, 6, 8-10, and 13-18 depend from claim 1 and are

PATENT

allowable with it.  Claims 5, 11, and 12 depend from claim 4 and are allowable with it.  Claims 20-23 depend from claim 19 and are allowable with it.  Finally, claims 25-28 depend from claim 24 and are allowable with it.

In summary, the Abstract and Specification have been amended to address the Examiner's objections.  The Examiner's objections to the Drawings have been addressed by way of explanation.  Additionally, the Examiner's §§ 112, 102(b), and 102(e) rejections have been overcome by amendments.

In view of the amendments and remarks set forth herein, the application is believed to be in condition for allowance and a notice to that effect is solicited.  Nonetheless, should any issues remain that might be subject to resolution through a telephonic interview, the examiner is requested to telephone the undersigned.

Respectfully submitted,

Stephen A. Terrile
Attorney for Applicant(s)
Reg. No. 32,946

I hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail in an envelope addressed to: Commissioner of Patents and Trademarks, Washington, D.C., 20231, on
_____4/24_ 1995

_____4/24/95_____
Date of Signature        Attorney for Applicant

EXHIBIT 16

*07/678 914*



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED INVENTOR | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 07/678,914 | 04/01/91 | CHAN | A | M-1018-2P-US |

| EXAMINER |
|---|
| ELMORE,R |

B. NOEL KIVLIN
SKJERVEN, MORRILL, MACPHERSON,
FRANKLIN & FRIEL
25 METRO DRIVE, SUITE 700
SAN JOSE, CA 95110

| ART UNIT | PAPER NUMBER |
|---|---|
| 2312 | 5 |

DATE MAILED:   01/14/93

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

☒ This application has been examined ☐ Responsive to communication filed on_____ ☐ This action is made final.

A shortened statutory period for response to this action is set to expire _____ month(s), _____ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

**Part I    THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. ☒ Notice of References Cited by Examiner, PTO-892.       2. ☒ Notice re Patent Drawing, PTO-948.
3. ☒ Notice of Art Cited by Applicant, PTO-1449.              4. ☐ Notice of Informal Patent Application, Form PTO-152
5. ☐ Information on How to Effect Drawing Changes, PTO-1474.   6. ☐ _____

**Part II   SUMMARY OF ACTION**

1. ☒ Claims _____1-14_____ are pending in the application.

   Of the above, claims _____ are withdrawn from consideration.

2. ☐ Claims_____ have been cancelled.

3. ☐ Claims_____ are allowed.

4. ☒ Claims _____1-14_____ are rejected.

5. ☐ Claims_____ are objected to.

6. ☐ Claims_____ are subject to restriction or election requirement.

7. ☐ This application has been filed with informal drawings under 37 C.F.R. 1.85 which are acceptable for examination purposes.

8. ☐ Formal drawings are required in response to this Office action.

9. ☐ The corrected or substitute drawings have been received on _____. Under 37 C.F.R. 1.84 these drawings
   are ☐ acceptable; ☐ not acceptable (see explanation or Notice re Patent Drawing, PTO-948).

10. ☐ The proposed additional or substitute sheet(s) of drawings, filed on _____ has (have) been ☐ approved by the
    examiner; ☐ disapproved by the examiner (see explanation).

11. ☐ The proposed drawing correction, filed _____, has been ☐ approved; ☐ disapproved (see explanation).

12. ☐ Acknowledgement is made of the claim for priority under U.S.C. 119. The certified copy has ☐ been received ☐ not been received
    ☐ been filed in parent application, serial no. _____; filed on _____

13. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in
    accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. ☐ Other

**EXAMINER'S ACTION**

PTOL-326 (Rev.9-89)

Serial Number 07/678,914                          -2-

Art Unit 2312

1.    Claims 1-14 are presented for examination.

2.    The title of the invention is not descriptive.  A new title
is required that is clearly indicative of the invention to which
the claims are directed.  The current title is imprecise.

3.    The letter filed 3-16-92 concerning small entity status has
been entered into the file.  Applicant is referred to MPEP
509.03, pages 500-516, column 2, paragraph 2 et seq.

4.    The Abstract of the Disclosure is objected to because the
abstract can not contain more than one paragraph.

      Applicant is reminded of the proper language and format of
an Abstract of the Disclosure.

      The abstract should be in narrative form and generally
limited to a single paragraph on a separate sheet within the
range of 50 to 250 words.  It is important that the abstract not
exceed 250 words in length since the space provided for the
abstract on the computer tape used by the printer is limited.
The form and legal phraseology often used in patent claims, such
as "means" and "said", should be avoided.  The abstract should
describe the disclosure sufficiently to assist readers in
deciding whether there is a need for consulting the full patent
text for details.
      The language should be clear and concise and should not
repeat information given in the title.  It should avoid using
phrases which can be implied, such as, "The disclosure concerns,"
"The disclosure defined by this invention," "The disclosure
describes," etc.

  Correction is required.  See M.P.E.P. § 608.01(b).

5.    The disclosure is objected to because of the following
informalities:

      (a)  It is noted that although the present application does
contain line numbers in the specification and claims, the line
numbers in the claims do not correspond to the preferred format.
It is suggested that every fifth line of every claim be numbered,
with each new claim beginning with line 1.  For ease of reference
by both the examiner and applicant all future correspondence
should include the recommended line numbering.

Serial Number 07/678,914                          -3-
Art Unit 2312

Appropriate correction is required.

6.   Claim 1-14 are rejected under 35 USC 112, second paragraph,
as being indefinite for failing to particularly point out and
distinctly claim the subject matter which applicant regards as
the invention.   The claims are indefinite because:

     (a)  It is unclear as to where the plurality of cache
addresses are stored and as to how a comparison is achieved in
claim 1.

     (b)  It is unclear as to what is meant by "replaced data" in
claims 1 and 2.

     (c)  It is unclear as to what is actually occuring in the
step of "providing said replaced data to said system port"
because making the data available to a port does not appear to be
a constructive step.   In fact, the step which recites "is
provided" appear to be unclear and indistinct in that "providing"
or "making available" does not constitute an action because the
data is not transferred or used in any way, it is only present.
A step in a method claim which does not perform an action is
indefinite in nature.   This rejection applies method claims 1-3
and 12-13.

     (d)  "the same time" lacks clear antecedent basis -- claim
5;

     (e)  It is unclear in claim 10 as to why data must be loaded
from a peripheral device when the claim states there is a hit
condition in the dual port cache memory.

     (f)  "the further step" lacks clear antecedent basis --
claim 13.

7.   The following is a quotation of the appropriate paragraphs

Serial Number 07/678,914                    -4-

Art Unit 2312

of 35 U.S.C. § 102 that form the basis for the rejections under

this section made in this Office action:

A person shall be entitled to a patent unless --

(b) the invention was patented or described in a printed
publication in this or a foreign country or in public use or
on sale in this country, more than one year prior to the
date of application for patent in the United States.

8.        Claims 1-8 and 11-14 are rejected under 35 U.S.C.

§ 102(b) as being anticipated by Thomas et al.

Thomas teaches the invention (claim 4) as claimed,

including a computer system comprising:

(a)  a processor (e.g., see Figure 1);

(b)  a system memory (e.g., see Figure 1);

(c)  a dual port cache (e.g., see Figure 1); and,

(d)  a cache controller (e.g., see Figure 1).

As to claim 5, Thomas teaches providing an address to the

move out queue which is different from the address requested by

the processor (e.g., see col. 5, lines 40 et seq.).

As to claim 6, Thomas teaches data can be transferred on the

host bus asynchronously to data transferred on the system bus

(e.g., see col. 5, lines 40 et seq.).

As to claim 7, Thomas teaches controlling the addressing

sequence for the system memory on the system bus and controlling

the addressing sequence for the processor on the host bus (e.g.,

see col. 5, lines 40 et seq.).

As to claim 8, Thomas teaches the system bus does not need

to be accessed for a cache hit condition but that this is a local

bus access request (e.g., see col. 2, lines 50 et seq.).

As to claim 11, Thomas teaches system memory operates at a

different frequency that the processor (e.g., see col. 1, lines

18 et seq.).

Serial Number 07/678,914                                   -5-
Art Unit 2312

As to claim 12, Thomas teaches when data is provided from system memory for a processor request, the data is sent directly to the processor (e.g., see col. 4, lines 32-55).

Method claims 1-3 and 13-14 do not teach or define over the above rejected apparatus claims and are rejected on the same basis.

9.    The following is a quotation of 35 USC § 103 which forms the basis for all obviousness rejections set forth in this Office action:

> A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title; if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.
>
> Subject matter developed by another person, which qualifies as prior art only under subsection (f) or (g) of section 102 of this title, shall not preclude patentability under this section where the subject matter and the claimed invention were, at the time the invention was made, owned by the same person or subject to an obligation of assignment to the same person.

10.    Claims 9 and 10 are rejected under 35 USC § 103 as being unpatentable over Thomas et al.

Claims 9 and 10 are directed to peripheral memory devices for storing data which may or may not be needed during the course of processing. It is common practice in the memory arts to use low cost storage, such as disk storage, when this type of processing situation occurs. The use of maintaining part of the data in peripheral storage and moving in blocks of data as the processor requests data only resident on the peripheral storage is well known and official notice is taken thereof.

It would have been obvious to one of ordinary skill in the

Serial Number 07/678,914                                    -6-

Art Unit 2312

art of memory storage at the time the invention was made
to utilize disk storage or other peripheral storage to maintain
data which the processor may need for processing because large
amounts of peripheral storage is more economical to use than
trying to maintain all data which may be required in the much
more expensive system memory or cache memory and the techniques
for using such peripheral storage in a cache system are well
documented.

11.  This application currently names joint inventors.  In
     considering patentability of the claims under 35 USC
     § 103, the examiner presumes that the subject matter of
     the various claims was commonly owned at the time any
     inventions covered therein were made absent any
     evidence to the contrary.  Applicant is advised of the
     obligation under 37 CFR § 1.56 to point out the
     inventor and invention dates of each claim that was not
     commonly owned at the time a later invention was made
     in order for the examiner to consider the applicability
     of potential 35 USC § 102(f) or (g) prior art under 35
     USC § 103.

12.  The prior art made of record and not relied upon is
considered pertinent to applicant's disclosure.

     Holland et al. teaches a data processing system having
instructive responsive apparatus for both a basic and an extended
instruction set.

     Ziegler et al. teaches a dual port cache with interleaved
read access during alternate half-cycles and simultaneous
writing.

     Matick et al. teaches a distributed on-chip cache.

     Moussouris et al. teaches a CPU chip having a tag comparator
and address translation unit on chip and connected to off-chip
cache and main memories.

13.  Any inquiry concerning this communication or earlier
communications from the examiner should be directed to Reba. I.
Elmore whose telephone number is (703) 308-1619.

Serial Number 07/678,914                          -7-
Art Unit 2312

     Any inquiry of a general nature or relating to the status of
this application should be directed to the Group receptionist
whose telephone number is (703) 308-0754.

Reba I. Elmore

January 5, 1993

JOSEPH L. DIXON
SUPERVISORY PATENT EXAMINER
GROUP 2300

EXHIBIT 17

07/678914



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address : COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED INVENTOR | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 07/678,914 | 04/01/91 | CHAN | A | M-1018-2P-US |

| EXAMINER |
|---|
| ELMORE, R |

E3M1/0920

| ART UNIT | PAPER NUMBER |
|---|---|
| 2312 | 9 |

B. NOEL KIVLIN
SKJERVEN, MORRILL, MACPHERSON,
FRANKLIN & FRIEL
25 METRO DRIVE, SUITE 700
SAN JOSE, CA 95110

DATE MAILED:

09/20/93

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

☒ This application has been examined   ☒ Responsive to communication filed on _6-17-93_   ☒ This action is made final.

A shortened statutory period for response to this action is set to expire _3 (THREE)_ month(s), _0_ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

**Part I   THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. ☐ Notice of References Cited by Examiner, PTO-892.      2. ☐ Notice re Patent Drawing, PTO-948.
3. ☒ Notice of Art Cited by Applicant, PTO-1449.          4. ☐ Notice of Informal Patent Application, Form PTO-152.
5. ☐ Information on How to Effect Drawing Changes, PTO-1474.   6. ☐ _____

**Part II   SUMMARY OF ACTION**

1. ☒ Claims _4-11 & 15-21_ are pending in the application.

   Of the above, claims _____ are withdrawn from consideration.

2. ☒ Claims _1-3 and 12-14_ have been cancelled.

3. ☐ Claims _____ are allowed.

4. ☒ Claims _4-11 and 15-21_ are rejected.

5. ☐ Claims _____ are objected to.

6. ☐ Claims _____ are subject to restriction or election requirement.

7. ☐ This application has been filed with informal drawings under 37 C.F.R. 1.85 which are acceptable for examination purposes.

8. ☐ Formal drawings are required in response to this Office action.

9. ☐ The corrected or substitute drawings have been received on _____. Under 37 C.F.R. 1.84 these drawings
    are ☐ acceptable. ☐ not acceptable (see explanation or Notice re Patent Drawing, PTO-948).

10. ☐ The proposed additional or substitute sheet(s) of drawings, filed on _____ has (have) been ☐ approved by the
    examiner. ☐ disapproved by the examiner (see explanation).

11. ☐ The proposed drawing correction, filed on _____, has been ☐ approved. ☐ disapproved (see explanation).

12. ☐ Acknowledgment is made of the claim for priority under U.S.C. 119. The certified copy has ☐ been received ☐ not been received
    ☐ been filed in parent application, serial no. _____; filed on _____

13. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in
    accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. ☐ Other

**EXAMINER'S ACTION**

Serial Number: 678,914                                      -2-
Art Unit: 2312

_____

1.    Claims 4-11 and 15-21 are presented for examination.  Claims
1-3 and 12-14 have been cancelled by the amendment filed 6-17-93.

2.    The objection to the title is withdrawn due to the
amendment.

3.    The objection to the Abstract is withdrawn due to the
amendment.

4.    The drawings are objected to because:

      (a)  From the Brief Description of the Drawings, Figures 6
and 7 appear to be prior art and should be so designated.
Figures which illustrate prior art should be designated by a
legend such as "Prior Art" in order to clarify what is the
applicant's invention (see MPEP 608.02(g)).

      (b)  There is not a Figure 8 in the application.  Figures
8A, 8B and 8C have not been described in the Brief Description of
the Drawings.  All references to Figure 8 in the specification
should be corrected.

      (c)  Suitable meaningful legends, (not ambiguous labels or
initials), are required for unlabeled or inadequately labeled
drawing elements of Figures 8B and 8C (see 37 CFR 1.84(g)).  The
subarrays of Figure 8B should be so labeled.  Appropriate labels
should be shown in Figure 8C also.

Correction is required.

      Applicant is reminded of the provisions of MPEP 608.02(q)
and 608.02(r) regarding a separate draftsman's letter.

5.    The disclosure is objected to because of the following
informalities:

Serial Number: 678,914                                    -3-
Art Unit: 2312

---

(a)  Figure 8 is described in the specification, however there is not a Figure 8 provided in the drawings. Appropriate correction is required.

6.  The rejections under 35 USC 112, second paragraph, are withdrawn due to the amendment.  The following rejection under 35 USC 112, second paragraph, is given due to the amendment.

7.  Claim 21 is rejected under 35 USC 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which applicant regards as the invention.  The claims are indefinite because:

(a)  "said system input register" lacks clear antecedent basis -- claim 21.

8.  The following is a quotation of the appropriate paragraphs of 35 USC § 102 that form the basis for the rejections under this section made in this Office action:

A person shall be entitled to a patent unless --

(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application for patent in the United States.

9.  Claims 4-11 and 15-21 are rejected under 35 U.S.C. § 102(b) as being clearly anticipated by Holland et al.

Holland teaches the invention (claims 4, 15 and 21) as claimed, including a computer system comprising:

(a)  a microprocessor (CPU) (e.g., see Figure 1, element 35);

(b)  a system memory (e.g., see Figure 1, element 16);

Serial Number: 678,914                                                -4-
Art Unit: 2312

---

(c)   a dual port cache (e.g., see Figure 1, element 17);

(d)   a host input register connected to the dual port cache
and the host data bus for providing data from the host data bus
to the dual port cache (e.g., see Figure 2, element 54);

(e)   a system output register connected to the dual port
cache and the system data bus for receiving data from the dual
port cache memory and providing data to the system memory (e.g.,
see Figure 2, element 46);

(f)   a controller connected to the dual port cache memory
and the host address bus is taught as a control processor, the
controller compares a host address to the addresses in the dual
port cache (e.g., see Col. 7, lines 14-38);

(g)   when a cache match results from the address comparing
of the controller, data from the input register is placed in the
dual port cache (e.g., see col. 11, lines 17 et seq.); and,

(h)   data from the system memory is placed in the cache when
data requested by the CPU is not present in the cache without
overwriting host data (e.g., see col. 11, lines 49 et seq.)..

As to claim 5, Holland teaches the controller is connected
to the cache memory and provides a first address on the host
address bus concurrently with providing a second address on the
system address bus with the first address being different than
the second address (e.g., see col. 11, lines 17-36).

As to claim 6, Holland teaches data transferred from the
host to the cache is asynchronous to the data transferred from
the cache to the system memory (e.g., see col. 11, lines 17-36).

Serial Number: 678,914                                    -5-
Art Unit: 2312

As to claim 7, Holland teaches control sequencing to the extent claimed (e.g., see col. 32, lines 62 et seq.).

As to claim 8, Holland teaches disabling the dual port cache (e.g., see Figure 1, element 39).

AS to claims 9-10, Holland teaches a peripheral device is coupled to the system memory and that the peripheral device can contain data which may be requested by the CPU and which can be transferred to the dual port cache (e.g., see col. 7, lines 36-41).

As to claim 11, Holland inherently teaches the CPU and the memory operate at different speeds as dynamic RAM operates at a slower speed than the CPUs of the systems discussed in the Background of the Invention in columns 1 and 2.

As to claim 16, Holland teaches data can be transferred from the CPU to the input register while data is input to the dual port cache (e.g., see col. 10, lines 32-50).

As to claim 17, Holland teaches a plurality of data locations can be transferred during one clock cycle (e.g., see col. 15, lines 16 et seq.).

As to claim 18, Holland teaches the host port can be coupled to the system port when a read miss occurs (e.g., see Figure 1).

As to claim 19, Holland teaches data is placed in the input register in a first clock cycle and data is transferred to the system memory during a second clock cycle (e.g., see col. 11, lines 17 et seq.).

As to claim 20, Holland teaches the dual port cache

Serial Number: 678,914                                           -6-
Art Unit: 2312

---

comprises a plurality of random access memories (e.g., see col.
9, lines 49-60).

10.  Applicant's arguments with respect to claims 4-10 and 15-21
have been considered but are deemed to be moot in view of the new
grounds of rejection.

11.  Applicant's amendment necessitated the new grounds of
rejection.  Accordingly, **THIS ACTION IS MADE FINAL.**  See M.P.E.P.
§ 706.07(a).  Applicant is reminded of the extension of time
policy as set forth in 37 C.F.R. § 1.136(a).

        A SHORTENED STATUTORY PERIOD FOR RESPONSE TO THIS FINAL
ACTION IS SET TO EXPIRE THREE MONTHS FROM THE DATE OF THIS
ACTION.   IN THE EVENT A FIRST RESPONSE IS FILED WITHIN TWO MONTHS
OF THE MAILING DATE OF THIS FINAL ACTION AND THE ADVISORY ACTION
IS NOT MAILED UNTIL AFTER THE END OF THE THREE-MONTH SHORTENED
STATUTORY PERIOD, THEN THE SHORTENED STATUTORY PERIOD WILL EXPIRE
ON THE DATE THE ADVISORY ACTION IS MAILED, AND ANY EXTENSION FEE
PURSUANT TO 37 C.F.R. § 1.136(a) WILL BE CALCULATED FROM THE
MAILING DATE OF THE ADVISORY ACTION.   IN NO EVENT WILL THE
STATUTORY PERIOD FOR RESPONSE EXPIRE LATER THAN SIX MONTHS FROM
THE DATE OF THIS FINAL ACTION.

12.  Any inquiry concerning this communication or earlier
communications from the examiner should be directed to Reba..I.
Elmore whose telephone number is (703) 305-3819.

        Any inquiry of a general nature or relating to the status of
this application should be directed to the Group receptionist
whose telephone number is (703) 305-9600.

Reba I. Elmore

September 18, 1993

JOSEPH L. DIXON
SUPERVISORY PATENT EXAMINER
GROUP 2300

# EXHIBIT 18

08/170642



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 08/170,642 | 12/20/93 | CHAN | A    M10183C |

| EXAMINER |
|---|
| ELMORE, R |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2318 | 17 |

B3M1/1218

STEPHEN A. TERRILE
SKJERVEN, MORRILL, MACPHERSON,
FRANKLIN & FRIEL
25 METRO DRIVE, SUITE 700
SAN JOSE, CA 95110

DATE MAILED:    12/18/95

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

☒ This application has been examined    ☒ Responsive to communication filed on 12-20-93    ☐ This action is made final.

A shortened statutory period for response to this action is set to expire **3** month(s), **0** days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned/35 U.S.C. 133

**Part I   THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. ☒ Notice of References Cited by Examiner, PTO-892.      2. ☐ Notice of Draftsman's Patent Drawing Review, PTO-948.
3. ☒ Notice of Art Cited by Applicant, PTO-1449.      4. ☐ Notice of Informal Patent Application, PTO-152.
5. ☐ Information on How to Effect Drawing Changes, PTO-1474..      6. ☐ _____

**Part II   SUMMARY OF ACTION**

1. ☒ Claims _4-11  &  15-32_ are pending in the application.

   Of the above, claims _____ are withdrawn from consideration.

2. ☒ Claims _1-3 & 12-14_ have been cancelled.

3. ☐ Claims _____ are allowed.

4. ☒ Claims _4-11   &   15-32_ are rejected.

5. ☐ Claims _____ are objected to.

6. ☐ Claims _____ are subject to restriction or election requirement.

7. ☐ This application has been filed with informal drawings under 37 C.F.R. 1.85 which are acceptable for examination purposes.

8. ☐ Formal drawings are required in response to this Office action.

9. ☐ The corrected or substitute drawings have been received on _____. Under 37 C.F.R. 1.84 these drawings
   are ☐ acceptable; ☐ not acceptable (see explanation or Notice of Draftsman's Patent Drawing Review, PTO-948).

10. ☐ The proposed additional or substitute sheet(s) of drawings, filed on _____, has (have) been ☐ approved by the
    examiner; ☐ disapproved by the examiner (see explanation).

11. ☐ The proposed drawing correction, filed _____, has been ☐ approved; ☐ disapproved (see explanation).

12. ☐ Acknowledgement is made of the claim for priority under 35 U.S.C. 119. The certified copy has ☐ been received ☐ not been received
    ☐ been filed in parent application, serial no. _____; filed on _____.

13. ☐ Since this application apppears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in
    accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. ☐ Other

**EXAMINER'S ACTION**

PTOL-326 (Rev. 2/93)

Serial Number: 08/170,642                                    -2-
Art Unit: 2318

1.   Claims 4-11 and 15-32 are presented for examination.

2.   The changes to Figures 8B and 8C are approved by the
examiner, however, applicant is reminded of the provisions of
MPEP 608.02(q) and 608.02(r) regarding a separate draftsman's
letter.

3.   Claim 21 is rejected under 35 USC 112, second paragraph, as
being indefinite for failing to particularly point out and
distinctly claim the subject matter which applicant regards as
the invention.  The claim is indefinite because:

     (a)  "said data bus" lacks proper antecedent basis, a host
data bus and a system data bus have been previously claimed, it
is not clear which data bus 'said data bus' is referencing --
claim 21, lines 13-14.

4.   The following is a quotation of 35 USC § 103 which forms the
basis for all obviousness rejections set forth in this Office
action:

> A patent may not be obtained though the invention is not
> identically disclosed or described as set forth in section
> 102 of this title, if the differences between the subject
> matter sought to be patented and the prior art are such that
> the subject matter as a whole would have been obvious at the
> time the invention was made to a person having ordinary
> skill in the art to which said subject matter pertains.
> Patentability shall not be negatived by the manner in which
> the invention was made.

> Subject matter developed by another person, which qualifies
> as prior art only under subsection (f) or (g) of section 102
> of this title, shall not preclude patentability under this
> section where the subject matter and the claimed invention
> were, at the time the invention was made, owned by the same
> person or subject to an obligation of assignment to the same
> person.

Serial Number: 08/170,642                                      -3-
Art Unit: 2318

5.    Claims 4-11 and 15-21 are rejected under 35 USC § 103 as
being unpatentable over Baldwin et al.

Baldwin teaches the invention (claims 4, 15 and 21)
substantially as claimed, including a computer system and method
for operation a memory cache apparatus, the system and method
comprising:

(a)    a host microprocessor having a host address bus and a
host data bus (e.g., see col. 9, lines 39-52 and Figure 1);

(b)    an input register connected to the cache memory and the
host data bus (e.g., see col. 50, lines 33-42);

(c)    a system memory having a system address bus and a
system data bus (e.g., see Figures 34-37, 41);

(d)    a tri-port cache memory which essentially functions as
a dual port cache memory and connects to a system bus and a host
bus (e.g., see col. 15, lines 45-62); and,

(e)    an input register connected to the dual port cache
memory and the system data bus (e.g., see col. 67, line 47 to
col. 70, line 30).

Baldwin does not specifically teach a cache controller
connected to the dual port cache memory, however, functions
performed by a cache controller are performed by the three
processors connected to the data cache memory (e.g., see col. 15,
line 17 to col. 16, line 11).  It would have been obvious to one
of ordinary skill in the art of memory storage at the time the
invention was made to equate the functions of the processor
modules to the functions of a cache controller because the

Serial Number: 08/170,642                                    -4-
Art Unit: 2318

_____

processor modules perform the data control and transfer tasks
typically performed by a cache controller.

As to claims 5 and 16-17, Baldwin teaches the host processor
concurrently processing tasks with access the cache memory with
the other processors of the system (e.g., see col. 1, lines
29-52).

As to claim 6, Baldwin teaches the host data bus is
asynchronous to the system data bus (e.g., see col. 1,
lines 38-41).

As to claim 7, Baldwin teaches control sequencing of
addresses and data signals (e.g., see col. 20, line 63 to col.
21, line 51).

As to claim 8, Baldwin teaches local bus cycles (e.g., see
col. 15, lines 45-62).

As to claims 9 and 10, Baldwin teaches a peripheral device
coupled to the system which provides data to the cache (e.g., see
col. 16, lines 25-62).

As to claim 11, Baldwin teaches sub-systems operating at
different parameters (e.g., see col. 3, line 27 to col. 6,
line 15).

As to claims 18-20, Baldwin teaches data is moved to the
cache to and from by the processors during clock cycles (e.g.,
see col. 15, line 15 to col. 16, line 24).

Serial Number: 08/170,642                                    -5-
Art Unit: 2318

---

6.    Any inquiry concerning this communication or earlier
communications from the examiner should be directed to Reba. I.
Elmore whose telephone number is (703) 305-3819.

.The examiner can normally be reached on Monday-Thursday from
6:30AM to 5:00PM.

If attempts to reach the examiner by telephone are
unsuccessful, the examiner's supervisor, Tod R. Swann, can be
reached on (703) 308-7791.  The fax phone number for this Group
is (703) 305-9565.

Any inquiry of a general nature or relating to the status of
this application should be directed to the Group receptionist
whose telephone number is (703) 305-9600.

Reba I. Elmore
Primary Examiner
December 8, 1995

EXHIBIT 19

08)170 642



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| APPLICATION NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 08/170,642 | 12/20/93 | CHAN | A    M10183C |

B3M1/0106

STEPHEN A. TERRILE
SKJERVEN, MORRILL, MACPHERSON,
FRANKLIN & FRIEL
25 METRO DRIVE, SUITE 700
SAN JOSE CA 95110

| EXAMINER |
|---|
| ELMORE, R |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2318 | 24 |

DATE MAILED: 01/06/97

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

## OFFICE ACTION SUMMARY

☑ Responsive to communication(s) filed on 10-17-96

☐ This action is **FINAL**.

☐ Since this application is in condition for allowance except for formal matters, **prosecution as to the merits is closed** in accordance with the practice under *Ex parte Quayle*, 1935 D.C. 11; 453 O.G. 213.

A shortened statutory period for response to this action is set to expire _____3_____ month(s), or thirty days, whichever is longer, from the mailing date of this communication. Failure to respond within the period for response will cause the application to become abandoned. (35 U.S.C. § 133). Extensions of time may be obtained under the provisions of 37 CFR 1.136(a).

**Disposition of Claims**

☑ Claim(s) _4-11 & 15-32_ is/are pending in the application.

Of the above, claim(s) _____ is/are withdrawn from consideration.

☐ Claim(s) _____ is/are allowed.

☑ Claim(s) _4-11 & 15-32_ is/are rejected.

☐ Claim(s) _____ is/are objected to.

☐ Claims _____ are subject to restriction or election requirement.

**Application Papers**

☐ See the attached Notice of Draftsperson's Patent Drawing Review, PTO-948.

☐ The drawing(s) filed on _____ is/are objected to by the Examiner.

☐ The proposed drawing correction, filed on _____ is ☐ approved ☐ disapproved.

☐ The specification is objected to by the Examiner.

☐ The oath or declaration is objected to by the Examiner.

**Priority under 35 U.S.C. § 119**

☐ Acknowledgement is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d).

☐ All ☐ Some* ☐ None of the CERTIFIED copies of the priority documents have been

☐ received.

☐ received in Application No. (Series Code/Serial Number) _____.

☐ received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

*Certified copies not received: _____

☐ Acknowledgement is made of a claim for domestic priority under 35 U.S.C. § 119(e).

**Attachment(s)**

☐ Notice of Reference Cited, PTO-892

☑ Information Disclosure Statement(s), PTO-1449, Paper No(s). _23_

☐ Interview Summary, PTO-413

☐ Notice of Draftsperson's Patent Drawing Review, PTO-948

☐ Notice of Informal Patent Application, PTO-152

**-- SEE OFFICE ACTION ON THE FOLLOWING PAGES --**

PTOL-326 (Rev. 10/95)                                   ★ U.S. GPO 1996-409-290/40029

Serial Number: 08/170,642                                      -2-
Art Unit: 2318

---

1.    Claims 4-11 and 15-32 are presented for examination.

2.    The amendment filed 10-17-96 does not meet requirements for the filing of amendments
to the claims under 37 CFR 1.21(b). After the claim number for an amended claim the applicant
must state either the claim is amended or the number of times the claim is amended, such as:

      Claim 4. (amended) or Claim 4. (twice amended), whichever is applicable.

3.    The rejection under 35 USC 112, second paragraph, is <u>maintained</u> since the submitted
amendment to claim 21 could not be entered.

4.    The rejection under 35 USC 103 is <u>maintained</u>.

5.    As to the remarks, Baldwin teaches the present invention to the extent claimed. A cache
memory is a fast memory element and without specific caching details appearing in the claims, any
memory element, especially one designated by the reference as a cache is considered equivalent to
a cache memory unless specific details of the claimed cache are present in the claims. The same is
true for a processor which is claimed as a 'host processor.' Without supporting limitations within
the body of the claim requiring specifics of a host processor which read over the host processor of
the prior art, the limitations are considered taught to the extent claimed.

      As to the input registers, the holding registers and output registers are taught to the extent
claimed for claims 21 and 22. The rejection cites sections of the reference for claim 22 ans well as
the other independent claims.

6.    As the applicant amendment could not be entered, this office action will not be made final
at this time.

Serial Number: 08/170,642                                    -3-

Art Unit: 2318

---

7.    Any inquiry concerning this communication or earlier communications from the examiner

should be directed to Reba. I. Elmore whose telephone number is (703) 305-3819.

The examiner can normally be reached on Monday-Thursday from 6:30AM to 5:00PM.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor,

Tod R. Swann, can be reached on (703) 308-7791.  The fax phone number for this Group is (703)

305-9565.

Any inquiry of a general nature or relating to the status of this application should be

directed to the Group receptionist whose telephone number is (703) 305-9600.

Reba I. Elmore
Primary Examiner
January 4, 1997

EXHIBIT 20

L:\M\1018\2P\0\PAMD.BNK

PATENT

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicant:      Alfred K. Chan

Assignee:       MOS Electronics, Inc.

Title:          RANDOM ACCESS CACHE MEMORY CONTROLLER AND SYSTEM

Serial No.:     07/678,914          Filed: April 1, 1991

Examiner:                           Group Art Unit:  233

Attorney Docket No.:   M-1018-2P US

--------------------------------------------------------------

San Jose, California
October 18, 1991

COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D. C.  20231

PRELIMINARY AMENDMENT

Sir:

Please amend the above-identified application filed
April 1, 1991 as follows.


IN THE CLAIMS

Please add Claims 5-14 as follows:

5.    (New)  The computer system as recited in Claim 4
wherein said cache controller provides a first address on said
host address bus at the same time said cache controller
provides a second address on said system address bus, said
first address corresponding to a different memory location than
said second address.

6.    (New)  The computer system as recited in Claim 1
wherein data on said host data bus is asynchronous to data on
said system data bus.

7.    (New)  The computer system as recited in Claim 1
wherein said cache controller comprises:

a first control sequencer for controlling addressing

LAW OFFICES OF
SKJERVEN, MORRILL,
MacPHERSON, FRANKLIN
& FRIEL
25 METRO DRIVE
SUITE 700
SAN JOSE, CA 95110
(408) 283-1222
FAX (408) 283-1233

- 1 -

L:\M\1018\2P\O\PAMD.BNK                                                    PATENT

and data signals on said host address bus and on said host
data bus; and

a second control sequencer for controlling addressing
and data signals on said system address bus and on said
system data bus.

5. (New)  The computer system as recited in Claim 1
further comprising means for disabling said dual port cache
memory during a local bus access cycle.

6. (New)  The computer system as recited in Claim 1
further comprising a peripheral device coupled to said system
memory.

7. (New)  The computer system as recited in Claim 6
wherein said peripheral device provides data to said system
data bus, and wherein a hit address memory location within said
dual port cache memory is loaded with said data from said
peripheral device if the hit address of said dual port cache
memory corresponds with an address of said data from said
peripheral device.

11. (New)  The computer system as recited in Claim 4
wherein said host microprocessor operates at a first frequency,
and wherein said system memory operates at a second frequency
that is different from said first frequency.

12. (New)  The method for operating a cache memory
apparatus as recited in Claim 1 further comprising the step of
coupling said host port to said system port when a read miss
cycle occurs.

LAW OFFICES OF
SKJERVEN, MORRILL,
MacPHERSON, FRANKLIN
& FRIEL
25 METRO DRIVE
SUITE 700
SAN JOSE, CA 95110
(408) 283-1222
FAX (408) 283-1233

- 2 -

L:\M\1018\2P\0\PAMD.BNK                                    PATENT

13.   (New)   The method for operating a memory cache apparatus as recited in Claim 1 wherein said cache memory apparatus further comprises an update register for providing data from said system port to said random access memory, said method comprising the further step of loading update data from said system port into said update register.

14.   (New)   The method for operating a memory cache apparatus as recited in Claim 1 wherein said step of latching input data into said input register from said host port occurs in a first clock cycle and wherein said step of loading said input data into said random access memory occurs on a second clock cycle, said second clock cycle immediately following said first clock cycle.

## REMARKS

Applicant requests the Examiner to add Claims 5-14 as indicated above.  Examination and allowance of the pending claims is requested.

Respectfully submitted,

B. Noël Kivlin
Agent for Applicant
Reg. No. 33,929

I hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail in an envelope addressed to: Commissioner of Patents and Trademarks, Washington, D.C., 20231, on _10 - 18_ 1991

_10 - 18 -91_
Date of Signature          Agent for Applicant

LAW OFFICES OF
SKJERVEN, MORRILL,
MacPHERSON, FRANKLIN
& FRIEL
25 METRO DRIVE
SUITE 700
SAN JOSE, CA 95110
(408) 283-1222
FAX (408) 283-1233

- 3 -

EXHIBIT 21

L:\DMS\5855\M 1018-2\0065.o9.WP
930614 (spw)

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicant:       Alfred Chan

Assignee:        MOS Electronics Corporation

Title:           "RANDOM ACCESS CACHE MEMORY CONTROLLER AND
                 SYSTEM"

Serial No.:      07/678,914       Filed:  04/01/91

Examiner:        Elmore, R.       Group Art Unit:  2312

Attorney Docket No.:  M-1018-2P US

-------------------------------------------------------------

                              San Jose, California
                              June 14, 1993

COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D. C.  20231

                         AMENDMENT

Sir:

    Applicant submits the following amendments and remarks in
response to the Office Action dated January 14, 1993 in the
above-cited case.


                       IN THE TITLE

    Please amend the title of the invention to read:

"CONTROLLER FOR A RANDOM ACCESS DUAL-PORT CACHE MEMORY SYSTEM".


                     IN THE ABSTRACT

    Please amend the abstract as follows:

    Please delete numbered lines 20 through 29 of page 121.


                   IN THE SPECIFICATION

    Please amend the specification as follows:

    Page 17, line 18, rewrite "ndata" as --data--.


                     IN THE CLAIMS

    Please cancel claims 1-3, and 12-14 without prejudice.

    Please amend the claims as follows:

                         - 1 -

LAW OFFICES OF
SKJERVEN, MORRILL,
MacPHERSON, FRANKLIN
& FRIEL
25 METRO DRIVE
SUITE 700
SAN JOSE, CA 95110
(408) 283-1222
FAX (408) 283-1233

L:\DMS\5855\M-1018-2\0063369.WP
930614 (spw)

4.    (Amended)    A computer system comprising:

a host microprocessor having a host address bus and a host data bus;

a system memory having a system address bus and a system data bus;

a dual port cache memory having a system port connected to said system data bus [and]$_{\text{L}}$ a host port connected to said host data bus, said dual port memory comprising a random access memory and a plurality of registers connecting said random access memory to said host port and said system port, wherein a data path between said host data bus and said system data bus is decoupled by said random access memory and said plurality of registers; and

a cache controller connected to said cache memory, said cache controller having a first port connected to said host address bus and a second port connected to said system address bus.

5.    The computer system as recited in Claim 4 wherein said cache controller is connected to said cache memory for providing [provides] a first address on said host address bus [at the] concurrently with providing [same time said cache controller provides] a second address on said system address bus, said first address corresponding to a different memory location than said second address.

Please add the following new claims:

15.    (New)    A method for operating a memory cache apparatus, said memory cache apparatus including a random access memory, a host port, a system port, a host input register connected to said host port, a system input register connected to said system port, and a system output register

- 2 -

LAW OFFICES OF
SKJERVEN, MORRILL,
MacPHERSON, FRANKLIN
& FRIEL
25 METRO DRIVE
SUITE 700
SAN JOSE, CA 95110
(408) 293-1222
FAX (408) 293-1233

L:\DMS\5855\M-1018-2\0063369.WP
930614 (spw)

connected to said system port, said method comprising the steps
of:

receiving an address from a host;

comparing said received address to a plurality of
addresses stored in said random access memory;

placing a line of cache data from a location in said
random access memory into said system output register;

placing data from said host into said host input
register;

wherein if said received address does not match one
of said plurality of cache addresses:

placing said host data into said location in
said random access memory from said host input
register;

retrieving system data corresponding to said
received address from said system port into said
system input register; and

placing said system data corresponding to said
received address from said system input register into
said location in said random access memory,
subsequent to said step of placing said host data
into said random access memory, without overwriting
said host data.

16.   (New)   The method for operating a cache memory
apparatus as recited in claim 15, further comprising the step
of placing subsequent host data into said host input register
concurrently with said step of placing a line of cache data.

17.   (New)   The method for operating a cache memory
apparatus as recited in claim 15, wherein data from a plurality
of data locations of said random access memory are placed in
said system output register during a single clock cycle.

- 3 -

LAW OFFICES OF
SKJERVEN, MORRILL,
MacPHERSON, FRANKLIN
& FRIEL
25 METRO DRIVE
SUITE 700
SAN JOSE, CA 95110
(408) 283-1222
FAX (408) 283-1233

L:\DMS\58559\M-1018-2\0063369.WP
930614 (spw)

18.  (New)  The method for operating a cache memory apparatus as recited in claim 15, further comprising the step of coupling said host port to said system port when a read miss cycle occurs.

19.  (New)  The method for operating a memory cache apparatus as recited in claim 15, wherein said step of placing data from said host into said host input register occurs in a first clock cycle, and wherein said step of placing said host data into said location in said random access memory occurs on a second clock cycle, said second clock cycle immediately following said first clock cycle.

20.  (New)  A computer system according to claim 4 wherein said dual port cache memory comprises a plurality of burst random access memories.

21.  (New)  A computer system comprising:
a host microprocessor having a host address bus and a host data bus for providing a host address and host data;
a system memory for storing system data, said system memory having a system data bus for providing system data;
a dual port cache memory for storing said host data and system data;
a host input register connected to said dual port cache memory and said host data bus for providing data from said host data bus to said dual port cache memory;
a system output register connected to said dual port cache memory and said system data bus for receiving a line of cache data from said dual port cache memory and providing said line of cache data to said system data bus;
a controller connected to said dual port cache memory and said host address bus, said controller containing a

LAW OFFICES OF
SKJERVEN, MORRILL,
MacPHERSON, FRANKLIN
& FRIEL
25 METRO DRIVE
SUITE 700
SAN JOSE, CA 95110
(408) 283-1222
FAX (408) 283-1233

L:\DMS\5855\M-1018-2\0063369.WP
930614 (spw)

plurality of addresses for receiving said host address
from said host address bus and comparing said host address
to said plurality of addresses;

wherein when a match results from said comparing:

host data from said host input register is
placed into said dual port cache memory at a location
of said line of cache data; and

system data from said system input register is
placed into said location of said line of cache data
after said host data is placed into said dual port
cache memory, wherein said host data is not
overwritten.

## REMARKS

These remarks are in response to the Office Action dated
January 14, 1993, which has a shortened statutory period set to
expire April 14, 1993.  A two-month extension, to expire June
14, 1993, is requested in a petition filed herewith.

Claims 1-14 are pending and rejected under 35 U.S.C. § 112
and over prior art.  Claims 4, and 5 are amended.  Claims 1-3
are rewritten for clarity.  Claims 15-21 are added.  Claims 1-
3, and 12-14 are canceled.  Reconsideration is requested.

The specification is amended for clarity.

The Examiner has objected to the title of the invention.
This rejection is overcome by the above amendment to the title.

The Examiner has objected to the abstract.  Applicant has
amended the abstract to overcome this rejection.

The Examiner has objected to the disclosure for the reason
that the claims are not presented in a "preferred format".
Applicant traverses the objection on the grounds that (1) line
numbering for the claims have been presented in the
conventional page line numbering format; and (2) no requirement
as made by the Examiner is known in the PTO rules.

LAW OFFICES OF
SKJERVEN, MORRILL,
MacPHERSON, FRANKLIN
& FRIEL
25 METRO DRIVE
SUITE 700
SAN JOSE  CA 95110
(408) 283-1222
FAX (408) 283-1233

L:\DMS\5855\M-1018-2\0063369.WP
930614 (spw)

With regard to small entity status, the Assignee's attorneys have reviewed M.P.E.P. § 509.03 and withdraw the request for a determination by the Office on this issue.  The facts stated in the letter dated March 10, 1992 in this case are, however, before the Office, and if the Office has any reason to believe that at the time of filing this case was not entitled to small entity status, the Office should so inform Applicant.

## Rejections under 35 U.S.C. § 112

Claims 1-14 were rejected under 35 U.S.C. § 112, second paragraph.  The Examiner has written:

> It is unclear as to where the plurality of cache addresses are stored and as to how a comparison is achieved in claim 1.

Claim 1 is rewritten for clarity as new claim 15, which recites "...a plurality of addresses stored in said random access memory;...", as supported in the specification on page 12, lines 2-10, and generally throughout.  Address comparison techniques are well known in the art of cache memory management.  See, e.g., Intel Corporation, "i486 Microprocessor Hardware Manual", pp. 6-1 - 6-11, 1990, a copy of which is submitted in an accompanying Information Disclosure Statement. Applicant need not recite this process in a claim, since it is not believed essential to novelty.  See M.P.E.P. 706.03(f).

New claim 15 overcomes the Examiner's rejections to claim 1 under 35 U.S.C. § 112.

The Examiner writes:

> It is unclear as to what is actually occurring in the step of "providing said replaced data to said system port" because making the data available to a port does not appear to be a constructive step... This rejection applies to method claims 1-3 and 12-13.

This rejection is overcome by the new claims.  Applicant maintains that "providing data" is a constructive step in that it enables subsequent functions to occur which are conditional

LAW OFFICES OF
SKJERVEN, MORRILL,
MacPHERSON, FRANKLIN
& FRIEL
25 METRO DRIVE
SUITE 700
SAN JOSE, CA 95110
(408) 293-1222
FAX (408) 293-1233

- 6 -

L:\DMS\5855\M-1018-2\0063369.WP
930614 (spw)

on the presence of the data.

Claim 5 has been amended for clarity and overcomes the Examiner's rejection thereto under 35 U.S.C. § 112.

The Examiner writes:

It is unclear in claim 10 as to why data must be loaded from a peripheral device when the claim states there is a hit condition in the dual port cache memory.

As supported in the specification, pages 104 to 106, hits in the cache memory may also be registered by devices other than the CPU. System memory data which has been manipulated by other devices must update the cache, so that the CPU has access to the most recent copy of data. This rejection is therefore respectfully traversed.

Claim 13 is canceled, thereby obviating the Examiner's rejections thereto.

For the above reasons, Applicant requests reconsideration and withdrawal of the rejections under 35 U.S.C. § 112.

Prior Art Rejections

The Examiner rejected claims 1-8 and 11-14 under 35 U.S.C. § 102(b) as being anticipated by Thomas et al. The Examiner writes:

Thomas teaches the invention (claim 4) as claimed, including a computer system comprising:
(a)   a processor (e.g., see Figure 1);
(b)   a system memory (e.g., see Figure 1);
(c)   a dual port cache (e.g., see Figure 1);
(d)   a cache controller (e.g., see Figure 1);

Figure 1 of Thomas et al. shows an output bus 25 from cache 15 coupled to CPU data bus 38. Bus 25 supplies cache hits to CPU 12. Bus 38 returns move-in data from mainstore memory unit 18. In the event of read hits following a miss, move-in data along bus 38 will contend with CPU reads of the cache along bus 25. Data from both buses cannot traverse one line to the CPU simultaneously since the data paths are coupled. Therefore, cache read hit processing cannot occur

LAW OFFICES OF
SKJERVEN, MORRILL,
MacPHERSON, FRANKLIN
& FRIEL
25 METRO DRIVE
SUITE 700
SAN JOSE, CA 95110
(408) 283-1222
FAX (408) 283-1233

- 7 -

L:\DMS\5855\M-1018-2\0063369.WP
930614 (spw)

during the cache update required by the previous miss.

In contrast, claim 4 as amended recites:

...said dual port memory comprising a random access memory and a plurality of registers connecting said random access memory to said host port and said system port, <u>wherein a data path between said host data bus and said system data bus is decoupled by said random access memory and said plurality of registers</u>...  (Emphasis added).

Support for claim 4 is shown in Applicant's Figure 8 (elements 106, 108, 114A-D, 116A-D, 118A-D, 112 and 113).  The specification teaches decoupling of host and system data buses on page 6, lines 20-25, page 115, beginning at line 31 through page 116, line 5.  Thomas et al. does not disclose or suggest the structure recited in claim 4.

The structure of claim 4 advantageously provides faster execution by enabling system fetch completion during subsequent CPU read and write cycles, as disclosed on page 61 of the specification, lines 22-34, with reference to Figure 24.  Claim 4 therefore distinguishes over Thomas et al.

The Examiner writes:

- Method claims 1-3 and 13-14 do not teach or define over the above rejected apparatus claims and are rejected on the same basis.

Thomas et al. does not disclose transfer of memory between a CPU, a cache memory and a system memory such as would occur during a write miss operation.  A write miss operation requiring cache update in the system of Thomas et al. requires either: a CPU write to system memory before moving-in the data from the requested write address, or that the CPU wait until the requested data is moved-in from mainstore memory to the cache memory before updating the cache.  In either case, a slow mainstore access is required before the CPU can continue execution, undesirably slowing performance.

Therefore, in contrast to Thomas et al., new claim 15 (replacing claim 1) recites:

... placing said system data corresponding to said received address from said system input register into

LAW OFFICES OF
SKJERVEN, MORRILL,
MacPHERSON, FRANKLIN
& FRIEL
25 METRO DRIVE
SUITE 700
SAN JOSE, CA 95110
(408) 283-1222
FAX (408) 283-1233

- 8 -

L:\DMS\5855\M-1018-2\0063369.WP
930614 (spw)

said location in said random access memory <u>subsequent</u>
<u>to said step of placing said host data into said</u>
<u>random access memory without overwriting</u> said host
data...  (Emphasis added).

Support for new claim 15 is found at page 58 of
Applicant's specification, lines 5-12.  The method of new claim
15 advantageously provides a faster write miss operation by
allowing the CPU to write to the cache immediately and resume
execution without waiting for system data to update the cache
line.  The placing step as recited in new claim 15 is not
disclosed or suggested in Thomas et al.

Thomas et al. does not disclose any details of cache
updating.  Thus move-in operations in Thomas et al. will
apparently overwrite all previously written cache data at a
cache location, and hence claim 15 distinguishes thereover for
the additional reason that claim 15 recites "without
overwriting".

Claim 15 therefore distinguishes over Thomas et al. for at
least the reasons stated above.


<u>Rejections under 35 U.S.C. § 103</u>

Claims 9 and 10 are rejected under 35 U.S.C. § 103 as
being unpatentable over Thomas et al.

Insofar as claim 4 is distinguished over Thomas et al.,
claims 9 and 10 are likewise distinguished by at least their
dependence from claim 4.

Applicant requests reconsideration and withdrawal of the
rejections under 35 U.S.C. § 103.


Claims 2, 3, 12 and 14 have been canceled and rewritten
for clarity as new claims 16, 17, 18 and 19, which respectively
recite the limitations of originally filed claims 2, 3, 12 and
14.  No new matter is added.

New claim 20 is supported at page 12 of the specification,

LAW OFFICES OF
SKJERVEN, MORRILL,
MacPHERSON, FRANKLIN
& FRIEL
25 METRO DRIVE
SUITE 700
SAN JOSE, CA 95110
(408) 283-1222
FAX (408) 283-1233

- 9 -

L:\DMS\5855\M-1018-2\0003369.WP
930614 (spw)

lines 2-5.  The use of burst RAMs in a cache memory reduces the number of clock cycles required to update a cache line, thereby increasing system performance.  Thomas et al. does not disclose the structure of new claim 20, and so claim 20 distinguishes over Thomas et al.

New apparatus claim 21 recites many of the same limitations as does new method claim 15, as well as additional structural limitations.

Claim 21 specifically recites:

> ...  <u>a host input register connected to said dual port cache memory and said host data bus</u> for providing data from said host data bus to said dual port cache memory;
> <u>a system output register connected to said dual port cache memory and said system data bus</u> for receiving a line of cache data from said dual port cache memory and providing said line of cache data to said system data bus; (Emphasis added).

New claim 21 distinguishes over Thomas et al. for at least the reasons stated above pertaining to claim 4, because claim 21 further recites:

> ...  wherein when a hit condition results from said comparison:...system data from said system input register is placed into said location of said line of cache data <u>after said host data is placed into said dual port cache memory wherein said host data is not overwritten</u>.  (Emphasis added.)

Therefore new claim 21 distinguishes over Thomas et al. for at least the reasons stated above in support of claim 15.

For the foregoing reasons, independent claims 4, 15 and 21 are deemed allowable.  Claims 5-11 and 15-20 are deemed allowable for at least the reason of their dependence from allowable claims 4 and 15.

LAW OFFICES OF
SKJERVEN, MORRILL,
MacPHERSON, FRANKLIN
& FRIEL
25 METRO DRIVE
SUITE 700
SAN JOSE, CA 95110
(408) 283-1222
FAX (408) 283-1233

L:\DMS\5855\M-1018-2\0063369.WP
930614 (spw)

Should the Examiner undertake any action other than the allowance of claims 4-11 and 15-21, the Examiner is requested to contact Applicant's attorney at (408) 283-1222.

Respectfully submitted,

*Norman R, Klivans*

Norman R. Klivans
Attorney for Applicant
Reg. No. 33,003

I hereby certify that this correspondence is being deposited with the
United States Postal Service as first class mail in an envelope
addressed to: Commissioner of Patents and Trademarks, Washington,
D.C., 20231, on *June 14 1993*

*June 14 1993*          *Norman R. Klivans*
Date of Signature              Attorney for Applicant

LAW OFFICES OF
SKJERVEN, MORRILL,
MacPHERSON, FRANKLIN
& FRIEL
25 METRO DRIVE
SUITE 700
SAN JOSE CA 95110
(408) 283-1222
FAX (408) 283-1233

- 11 -

EXHIBIT 22



08/170642

PATENT

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicant:     Alfred Chan

Assignee:      MOS Electronics

Title:         RANDOM ACCESS CACHE MEMORY CONTROLLER AND SYSTEM

Serial No:     Unknown          Filed:  12-20-93

Examiner:      Unknown          Group Art Unit:  Unknown

Attorney Docket No:  M-1018-3C

---

                              San Jose, California
                              December 20, 1993

COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C.

PRELIMINARY AMENDMENT

Dear Sir:

    Kindly preliminarily amend the above-identified application,
which is a file wrapper continuation of U.S.S.N. 07/678,914, as
follows.

In the Specification:

On page 8, line 6, please add --in accordance with the present
invention-- after "system".

On page 8, line 8, please add --in accordance with the present
invention-- after "system".

On page 8, line 10, please change "Figure 8 is" to --Figures 8A,
8B and 8C, which are generally referred to as Figure 8 throughout
the specification, are--

H:\PATENT\MOS\M-1018.3C\AMEND                - 1 -

# File History Report

☐     Paper number _____ is missing from the United States Patent and Trademark Office's original copy of the file history.  No additional information is available.

☒     The following page(s) **2** of paper number _____ is/are missing from the United States Patent and Trademark Office's original copy of the file history.  No additional information is available

Additional comments: _____

PATENT

<u>In the Drawings</u>:

Please amend the drawings as shown in red on the attached sheets.

<u>In the Claims</u>:

Please amend claims 4 and 21 as follows:

4.    (Twice-Amended)  A computer system comprising:
a host microprocessor having a host address bus and a host
    data bus;
a system memory having a system address bus and a system
5      data bus;
a dual port cache memory having a system port connected to
    said system data bus, a host port connected to said
    host data bus, said dual port memory comprising a
    random access memory and a plurality of registers
10    connecting said random access memory to said host port
    and said system port, wherein a data path between said
    host data bus and said system data bus is decoupled by
    said random access memory and said plurality of
    registers <u>so as to allow concurrent transfer of data to</u>
15    <u>and from said memory cache</u>; and
a cache controller connected to said cache memory, said
    cache controller having a first port connected to said
    host address bus and a second port connected to said
    system address bus <u>such that said cache memory and said</u>
20    <u>cache controller are connected in parallel between said</u>
    <u>host microprocessor and said system memory</u>.

21.  (Amended) A computer system comprising:

PATENT

a host microprocessor having a host address bus and a host
data bus for providing a host address and host data;
a system memory for storing system data, said system memory
5          having a system data bus for providing system data;
a dual port cache memory for storing said host data and
system data;
a host input register connected to said dual port cache
memory and said host data bus for providing data from
10         said host data bus to said dual port cache memory;
a system [output] input register connected to said dual port
cache memory and said system data bus for receiving a
line of cache data from said [dual port cache memory]
data bus and providing said line of cache data to said
15         [system data bus] dual port cache memory;
a controller connected to said dual port cache memory and
said host address bus, said controller containing a
plurality of addresses for receiving said host address
from said host address bus and comparing said host
20         address to said plurality of addresses;
wherein when a match results from said comparing:
host data from said host input register is placed
into said dual port cache memory at a
location of said line of cache data; and
25         system data from said system input register is
placed into said location of said line of
cache data after said host data is placed
into said dual port cache memory, wherein
said host data is not overwritten.

Please add the following new claims:

16  22.  (New) A computer system comprising:

H:\PATENT\MOS\M-1018.3C\AMEND                              - 4 -

PATENT

a host microprocessor having a host address bus and a host
    data bus;
a system memory having a system address bus and a system
5       data bus;
a dual port cache memory including
        a random access memory,
        a host port coupled to the host data bus,
        a system port coupled to the system data bus,
10      a first input register for selectively writing input
            data to said random access memory, said first
            input register being coupled between said host
            port and said random access memory,
        a first output register for selectively furnishing
15          output data to said system port, said first output
            register being coupled between said random access
            memory and said system port, said input data being
            provided to said random access memory from said
            first input register at the same time that said
20          output data is provided by said first output
            register to said system port,
        a second input register for providing second input data
            to said random access memory, said second input
            register being coupled between said random access
25          memory and said system port, and
        a second output register coupled between said random
            access memory and said host port for providing
            second output data from said random access memory
            to said host port, said second input data being
30          provided to said random access memory from said
            second input register at the same time that said
            second output data is provided by said second
            output register to said system port; and

PATENT

a cache controller connected to said cache memory, said
        cache controller having a first port connected to said
        host address bus and a second port connected to said
        system address bus such that said cache memory and said
        cache controller are connected in parallel between said
        host microprocessor and said system memory,
    said cache controller being connected to said cache
        memory for providing a first address on said host
        address bus concurrently with providing a second
        address on said system address bus, said first
        address corresponding to a different memory
        location than said second address.

    17.  (New) The computer system as recited in Claim 16
wherein data on said host data bus is asynchronous to data on
said system data bus.

    18.  (New) The computer system as recited in Claim 16
wherein said cache controller comprises:
        a first control sequencer for controlling addressing and
            data signals on said host address bus and on said host
            data bus; and
        a second control sequencer for controlling addressing and
            data signals on said system address bus and on said
            system data bus.

    19.  (New) The computer system as recited in Claim 16
further comprising means for disabling said dual port cache
memory during a local bus access cycle.

    20.  (New) The computer system as recited in Claim 16
further comprising a peripheral device coupled to said system
memory.

PATENT

27. (New) The computer system as recited in Claim 26 wherein said peripheral device provides data to said system data bus, and wherein a hit address memory location within said dual port cache memory is loaded with said data from said peripheral device if the hit address of said dual port cache memory corresponds with an address of said data from said peripheral device.

28. (New) The computer system as recited in Claim 22 wherein said host microprocessor operates at a first frequency, and wherein said system memory operates at a second frequency that is different from said first frequency.

29. (New) An apparatus as recited in claim 22 further comprising a bypass path coupled between said host port and said system port for directly allowing passage of data between said host port and said system port.

30. (New) An apparatus as recited in Claim 22, wherein said first input register is a memory write register, said second input register is an update register, said first output register is a write back register, and said second output register is a read hold register.

31. (New) The cache memory apparatus as recited in Claim 22 wherein said second input register can store a plurality of words of data.

32. (New) The cache memory apparatus as recited in Claim 31 further comprising means for masking writing of selected words of data into said random access memory.

PATENT

## REMARKS

The above-identified application is a file wrapper continuation of an application which was finally rejected in an Office Action mailed on September 20, 1993. This Preliminary Amendment addresses the issues raised in that final rejection.

The parent application was objected to based upon an objection to the Drawings. Regarding the Examiner's comment about Figures 6 and 7, the description of these figures in the Brief Description of the Drawings has been amended to clearly set forth that these drawings are not prior art but rather block diagrams of computer systems which include a cache memory in accordance with the present invention. Additionally, the description of Figures 8A, 8B and 8C has been amended to clearly set forth that the combination of all of these figures is generally referred to as Figure 8. The legends and subarrays of Figures 8B and 8C have been amended to correct the errors set forth by the Examiner.

The parent application was objected to based upon an objection to the Specification. Responsive to this objection to the Specification, the Specification has been amended. No new matter has been added.

Claim 21 of the parent application was rejected under 35 U.S.C. §112, second paragraph. Claim 21 has been amended to address this rejection.

Independent claims 4, 15, and 21 of the parent application were rejected under 35 U.S.C. §102 over Holland et al. This rejection is respectfully traversed.

H:\PATENT\MOS\M-1018.3C\AMEND                    - 8 -

PATENT

The present invention relates to a computer system which includes a cache memory system and a cache controller which decouple a main memory subsystem from a host data bus. More specifically, the present invention, as set forth in independent claim 4, relates to a computer system which includes a host microprocessor, a system memory, a dual port cache memory and a cache controller. The cache memory includes a random access memory, a host port, a system port, and a plurality of registers connecting the random access memory to the host port and the system port. The plurality of registers allow the host data bus to be decoupled from the system address bus, thus allowing concurrent transfer of data to and from the memory cache. The cache controller and the cache memory are connected in parallel between the host microprocessor and the system memory, thus allowing the host microprocessor to be decoupled from the system memory. Independent claim 21 is of similar scope to independent claim 4 but specifies a host input register connected to the dual port cache memory and the host data bus for providing data from the host data bus to the dual port cache memory, a system input register connected to the dual port cache memory and the system data bus for receiving a line of cache data from the data bus and providing the line of cache data to the dual port cache memory, and a controller which contains a plurality of addresses for receiving the host address from the host address bus and comparing the host address to the plurality of addresses. When a match results from the comparing, host data from the host input register is placed into the dual port cache memory at a location of the line of cache data and system data from the system input register is placed into the location of the line of cache data after the host data is placed into the dual port cache memory such that the host data is not overwritten. Independent claim 15 is a method claim of similar scope to independent claim 21.

PATENT

The present invention, as set forth by new independent claim 22, relates to a computer system which includes a host microprocessor, a system memory, a dual port cache memory and a cache controller. The cache memory includes a random access memory, a host port, a system port, a first and second input registers and first and second output registers. The first input register is coupled between the host port and the random access memory and selectively writes input data to the random access memory. The first output register is coupled between the random access memory and the system port and selectively furnishes output data to the system port. The input data is provided to the random access memory from the first input register at the same time that the output data is provided by the first output register to the system port. The second input register is coupled between the random access memory and the system port and provides second input data to the random access memory. The second output register is coupled between the random access memory and the host port and provides second output data from the random access memory to the host port. The second input data is provided to the random access memory from the second input register at the same time that the second output data is provided by the second output register to the system port. The cache controller is connected to the cache memory and has a first port connected to the host address bus and a second port connected to the system address bus such that the cache memory and the cache controller are connected in parallel between the host microprocessor and the system memory. The cache controller provides a first address on the host address bus to the cache memory concurrently with providing a second address on the system address bus; the first address corresponds to a different memory location than the second address.

- 10 -

PATENT

Holland et al. discloses a data processing system which includes a system memory, a bank controller, a system cache, a microprocessor portion and an I/O portion.  The memory bank controller provides an interface between the system cache and the main memory unit.  The interface between the system memory and the remainder of the system is via the dual port system cache. The system memory is coupled to the bank controller which is coupled to a memory system port of the system cache.  The system cache also includes a CPU requestor port, via which the system cache services requests from the microprocessor portion, and an I/O requestor port, via which the system cache services requests from the I/O portion.

The system cache of Holland et al. includes a cache store array which is coupled to a plurality of registers which are coupled to respective ports; the system cache also includes a direct access path between the I/O port and the memory system port.  The system cache uses the various registers to provide pipelining operations so that accesses to one of the input ports may be intertwined with accesses to the other input port.  The system cache also may perform direct write transfers between the input ports and the main memory using a block write transfer. During a block write transfer, the data is written directly into the main memory via data write register 40A, multiplexer 48 and write data register 46.

Holland et al. does not disclose or suggest providing memory cache with a plurality of registers to allow a host data bus to be decoupled from a system address bus, thus allowing concurrent transfer of data to and from the memory cache or connecting a cache controller and a cache memory in parallel between a host microprocessor and a system memory, thus allowing the host microprocessor to be decoupled from the system memory, all as

PATENT

required by independent claim 4.  Additionally, Holland et al.
does not disclose or suggest a host input register connected to
the dual port cache memory and the host data bus for providing
data from the host data bus to the dual port cache memory, a
system input register connected to the dual port cache memory and
the system data bus for receiving a line of cache data from the
data bus and providing the line of cache data to the dual port
cache memory, as required by independent claims 15 and 21.
Additionally, Holland et al. does not disclose or suggest a cache
memory which includes a first input register which is coupled
between a host port and a random access memory and selectively
writes input data to the random access memory, a first output
register which is coupled between the random access memory and a
system port and selectively furnishes output data to the system
port, a second input register which provides second input data to
the random access memory and is coupled between the random access
memory and the system port, and a second output register which
provides second output data to the host port and is coupled
between the random access memory and the host port, as required
by new independent claim 22.  Accordingly, Holland et al. could
not disclose a computer system which includes a cache memory in
which input data is provided to the random access memory from the
first input register at the same time that the output data is
provided by the first output register to the system port and
second input data is provided to the random access memory from
the second input register at the same time that the second output
data is provided by the second output register to the system
port, as required by new independent claim 22.  Accordingly,
independent claims 4, 15 and 21 and new independent claim 22 are
allowable over Holland et al.

Claims 5 - 11 and 20 depend from independent claim 4 and are
allowable for at least this reason.  Claims 16 - 19 depend from

PATENT

independent claim 15 and are allowable for at least this reason. Claims 23 - 32 depend from independent claim 22 and are allowable for at least this reason.

   In summary, the Examiner's objection to the Drawings and Specification have been addressed.  Additionally, the rejection under 35 U.S.C. §102(b) over Holland et al. has been traversed.

   Accordingly, the application is now in condition for allowance, and such allowance is respectfully solicited.

Respectfully submitted,

Stephen A. Terrile
Attorney for Applicant(s)
Reg. No. 32,946
(512) 404-3600

SKJERVEN, MORRILL, MACPHERSON, FRANKLIN & FRIEL
25 Metro Drive, Suite 700
San Jose, CA  95110

I hereby certify that this correspondence is being deposited with the United States Postal Service as express mail in an envelope addressed to: Commissioner of Patents and Trademarks, Washington, D.C., 20231, on December 20, 1993. Express Mail Receipt No. TB423143732US

Dec. 20, 1993     Jenni Alloway
Date of Signature

EXHIBIT 23

PATENT



IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| Applicant: | Alfred Chan |
| Assignee: | MOS Electronics |
| Title: | RANDOM ACCESS CACHE MEMORY CONTROLLER AND SYSTEM |

| | | | | |
|---|---|---|---|---|
| Serial No.: | 08/170,642 | Filed: | | December 20, 1993 |
| Examiner: | Elmore, R. | Group Art Unit: | | 2318 |
| Atty. Docket No.: | M-1018-3C US | | | |

San Jose, California
October 16, 1996

COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

## RESPONSE TO NON-FINAL OFFICE ACTION

Dear Sir:

This paper is responsive to the Office action mailed June 18, 1996 having a shortened statutory period set to expire September 18, 1996. Accompanying this response is a petition to extend the shortened statutory period by one (1) month, setting a new time for response of October 18, 1996. Further examination and reconsideration are respectfully requested in view of the amendments and remarks set forth below.

PROVISIONAL PETITIONS

The Office is provisionally petitioned to extend the shortened statutory period as necessary to avoid abandonment of the Application in relation to the outstanding Office action. If appropriate, a separate Petition for Extension accompanies this Response, this provisional petition being effective in the event that the separate Petition for Extension is

- 1 -

PATENT

defective or missing.  The Office is provisionally authorized to charge any amount

required to avoid abandonment of the Application in relation to the outstanding Office

action to account number 19-2386.  A separate Fee Transmittal accompanies this

Response, this provisional fee authorization being effective in the event that the separate

Fee Transmittal is defective or missing.

*Below amendments were not entered to comply where they failed with Rl 121(b) as with see paragraph 2 paper 24*

## AMENDMENTS

### *In the Claims*

Please amend the claims as follows:

| | |
|---|---|
| 1 | 4.      A computer system comprising: |
| 2 | a host [microprocessor] processor having a host address bus and a host data bus; |
| 3 | a system memory having storage locations addressable by said host processor, a |
| 4 | system address bus and a system data bus; |
| 5 | a dual port cache memory having a system port connected to said system data bus |
| 6 | [,] and a host port connected to said host data bus, said dual port cache |
| 7 | memory comprising [a random access memory] cache storage locations |
| 8 | dynamically associable with said storage locations of said system memory |
| 9 | and a plurality of registers [connecting] coupling said [random access |
| 10 | memory] cache storage locations to said host port and said system port, |
| 11 | wherein a data path between said host data bus and said system data bus is |
| 12 | operably decoupled by buffering and selective provision of data to and |
| 13 | from said [random access memory and] cache storage locations by said |
| 14 | plurality of registers so as to allow concurrent transfer of data to and from |
| 15 | said dual port cache memory [cache]; and |
| 16 | a cache controller connected to said dual port cache memory, said cache controller |
| 17 | having a first port connected to said host address bus and a second port |
| 18 | connected to said system address bus such that said dual port cache |

- 2 -

PATENT

19          memory and said cache controller are connected in parallel between said

20          host [microprocessor] processor and said system memory.


1.    5.    The computer system as recited in Claim 4 wherein said cache controller is

2    connected to said dual port cache memory for providing a first address on said host

3    address bus concurrently with providing a second address on said system address bus,

4    said first address corresponding to a different [memory location] one of said storage

5    locations of said system memory than said second address.


1    11.    The computer system as recited in Claim 4 wherein said host

2    [microprocessor] processor operates at a first frequency, and wherein said system

3    memory operates at a second frequency that is different from said first frequency.


1    15.    A method for operating a memory cache apparatus, said memory cache

2    apparatus including [a random access memory] addressable storage, a host port, a system

3    port, a host input register connected to said host port, a system input register connected to

4    said system port, and a system output register connected to said system port, said method

5    comprising the steps of:

6          receiving an address from a host;

7          comparing said received address to a plurality of addresses corresponding to cache

8              data stored in said [random access memory] addressable storage;

9          placing a line of said cache data from a location in said [random access memory]

10             addressable storage into said system output register;

11         placing data from said host into said host input register;

12         wherein if said received address does not match one of said plurality of [cache

13             addresses] addresses corresponding to said cache data:

14             placing said host data into said location in said [random access memory]

15                 addressable storage from said host input register;

16             receiving system data corresponding to said received address from said

17                 system port into said system input register; and


- 3 -

PATENT

18          subsequent to said step of placing said host data into said addressable
19                  storage, and without overwriting said host data, placing said
20                  system data corresponding to said received address from said
21                  system input register into said location in said [random access
22                  memory,] addressable storage.
23      [subsequent to said step of placing said host data into said random access
24              memory, without overwriting said host data.]

17.     The method for operating a cache memory apparatus as recited in claim
2   15, wherein data from a plurality of data locations of said [random access memory]
3   addressable storage are placed in said system output register during a single clock cycle.

1       19.     The method for operating a memory cache apparatus as recited in claim
2   15, wherein said step of placing data from said host into said host input register occurs in
3   a first clock cycle, and wherein said step of placing said host data into said location in
4   said [random access memory] addressable storage occurs on a second clock cycle, said
5   second clock cycle immediately following said first clock cycle.

1       21.     A computer system comprising:
2       a host [microprocessor] processor having a host address bus and a host data bus
3               for providing a host address and host data;
4       a system memory for storing system data, said system memory having a system
5               data bus for providing system data;
6       a dual port cache memory for storing said host data and system data[;] , said dual
7               port cache memory including:
8               addressable memory storage;
9       a host input register [connected to said dual port cache memory and]
10              coupled to said addressable memory storage and to said host data
11              bus for providing data from said host data bus to said [dual port
12              cache memory] addressable memory storage; and

- 4 -

PATENT

13          a system input register [connected to said dual port cache memory and]

14               coupled to said addressable memory storage and to said system

15               data bus for receiving a line of said cache data from said data bus

16               and providing said line of cache data to said [dual port cache

17               memory] addressable memory storage; and

18     a controller connected to said dual port cache memory and said host address bus,

19          said controller containing a plurality of addresses corresponding to said

20          cache data for receiving said host address from said host address bus and

21          comparing said host address to said plurality of addresses[;] , wherein

22          when a match results from said comparing:

23          host data from said host input register is placed into said [dual port cache

24               memory] addressable memory storage at a location of said line of

25               cache data; and

26          system data from said system input register is placed into said location of

27               said line of cache data after said host data is placed into said [dual

28               port cache memory] addressable memory storage, wherein said

29               host data is not overwritten.

1     22.    A computer system comprising:

2     a host microprocessor having a host address bus and a host data bus;

3     a system memory having a system address bus and a system data bus;

4     a dual port cache memory including:

5          [a random access memory] addressable storage,

6          a host port coupled to the host data bus,

7          a system port coupled to the system data bus,

8          a first input register for selectively writing input data to said [random

9               access memory] addressable storage, said first input register being

10               coupled between said host port and said [random access memory]

11               addressable storage,

- 5 -

PATENT

12      a first output register for selectively furnishing output data to said system
13          port, said first output register being coupled between said [random
14          access memory] addressable storage and said system port, said
15          input data being provided to said [random access memory]
16          addressable storage from said first input register at the same time
17          that said output data is provided by said first output register to said
18          system port;
19      a second input register for providing second input data to said [random
20          access memory] addressable storage, said second input register
21          being coupled between said [random access memory] addressable
22          storage and said system port, and
23      a second output register coupled between said [random access memory]
24          addressable storage and said host port for providing second output
25          data from said [random access memory] addressable storage to said
26          host port, said second input data being provided to said [random
27          access memory] addressable storage from said second input
28          register at the same time that said second output data is provided
29          by said second output register to said system port; and
30      a cache controller connected to said dual port cache memory, said cache controller
31          having a first port connected to said host address bus and a second port
32          connected to said system address bus such that said cache memory and
33          said cache controller are connected in parallel between said host
34          [microprocessor] processor and said system memory,
35      said cache controller being connected to said dual port cache memory for
36          providing a first address on said host address bus concurrently with
37          providing a second address on said system address bus, said first address
38          corresponding to a different memory location than said second address.

- 6 -

PATENT

# REMARKS

Claim 21 was rejected under 35 U.S.C. § 112, second paragraph. The Examiner stated that "'said data bus' lacks proper antecedent basis." Claim 21 has been amended to provide proper antecedent basis. Further consideration is requested.

The Examiner rejected claims 4, 15, 21, 22, and those dependent therefrom (i.e., 4-11 and 15-32) under 35 U.S.C. § 103 as being unpatentable over United States Patent No. 5,329,630 to Baldwin. In particular, the Examiner writes:

> Baldwin teaches the invention (claims 4, 15 and 21) substantially as claimed, including a computer system and method for operation a memory cache apparatus, the system and method comprising:
>
> (a)  a host microprocessor having a host address bus and a host data bus (e.g., see col. 9, lines 39-52 and Figure 1);
>
> (b)  an input register connected to the cache memory and the host data bus (e.g., see col. 50, lines 33-42);
>
> (c)  a system memory having a system address bus and a system data bus (e.g., see Figures 34-37, 41);
>
> (d)  a tri-port cache memory which essentially functions as a dual port cache memory and connects to a system bus and a host bus (e.g., see col. 15, lines 45-62); and,
>
> (e)  an input register connected to the dual port cache memory and the system data bus (e.g., see col. 67, line 47 to col. 70, line 30).
>
> Baldwin does not specifically teach a cache controller connected to the dual port cache memory, however, functions performed by a cache controller are performed by the three processors connected to the cache memory (e.g., see col. 15, line 17 to col. 16, line 11). It would have been obvious to one of ordinary skill in the art of memory storage at the time the invention was made to equate the functions of the processor modules to the functions of a cache controller because the processor modules perform the data control and transfer tasks typically performed by a cache controller.

This rejection is traversed. Applicant respectfully suggests that the Examiner's interpretation of Baldwin is not in accordance with the disclosure thereof. Nonetheless, claims 4, 15, 21 and 22 (and those dependent therefrom) have been amended to obtain a more appropriate scope of coverage and to better distinguish over art made of record but not relied upon by the Examiner (e.g., Sachs et al.).

- 7 -

PATENT

Regarding the art relied upon by the Examiner, Baldwin discloses a double buffering system wherein a dual port memory is partitioned in software so that the top half of the memory is allocated to one processor and the bottom half to the other. The double buffering is implemented by switching the allocation under control of the two processors. *See* Baldwin, Abstract. Baldwin's data cache memory 140 is a cache in name only. In reality, data cache memory 140 is merely a small, wide, fast memory for use in a numeric processing subsystem of a larger computer system. *See* Baldwin, Col. 9, lines 14-37. Data cache memory 140 does not function as a cache providing a processor with high speed access to frequently used memory locations while accesses to uncached locations are serviced by a lower speed memory device. Instead, data cache memory 140 is loaded with data in response to commands from a host processor external to the numeric processing subsystem. *See* Baldwin, Col. 106, line 6 - Col.107, line 66. Both the host processor and system memory reside on a VME-bus (*see* Baldwin, Figs. 34-37, and 41) which couples to the numeric processing subsystem of Fig. 1 via host (or VME) external interface controller 160 (*see* Baldwin, Col. 10, lines 16-30).

Several points are made clear by Baldwin's discussion of his physical memory model in the context of a host processor command to the numeric processing subsystem to multiply two arrays and store the results in a third array, wherein all three arrays reside in VME memory space. First, data cache memory 140 is not a cache in the traditional sense of the term. Second, the "processors" to which data cache is coupled are themselves tightly coupled in their respective numeric, control, and data transfer functions, interrupting each other to gain access to resources including data cache 140. Third, both the host processor and the system memory are external to the numeric processing subsystem, i.e., reside on a VME bus across external (VME) interface 160 from the numeric processing subsystem and "data cache" memory 140. *See* Baldwin, Col. 106, line 6 - Col.107, line 66. In short, data cache memory 140 can not be said to be a cache in the traditional sense, floating point processor is not a host processor initiating loads and stores to addresses in an address space greater than that represented in "data

- 8 -

PATENT

cache" memory 140, and neither a host processor nor system memory resides on the numeric processor side (i.e., "data cache" side) of the an external VME interface.

United States Patent No. 5,091,846 to Sachs, et al. has been made of record but not relied upon by the Examiner. Applicant wishes the Examiner to consider Sachs et al. in light of the following. Sachs et al. disclose a cache memory management unit which includes a cache memory subsystem 220 which is coupled to a cache bus via cache output register 230 and cache input register 240 and is coupled to a system bus via system bus input register 260 and system bus output register 250. The cache output register is directly coupled via a data out line to the memory subsystem. The cache input register, system bus input register and system bus output register are coupled to the memory subsystem via a data bus 241.

In contrast with both of the above-described references, an embodiment of the present invention, as set forth by amended independent claim 4, relates to a computer system which includes a host processor, a system memory, a dual port cache memory, and a cache controller. The host processor has a host address bus and a host data bus. The system memory has storage locations addressable by the host processor and has a system address bus and a system data bus. The dual port cache memory includes cache storage locations dynamically associable with the storage locations of the system memory, a host port, a system port, and a plurality of registers coupling the cache storage locations to the host port and the system port. The system port is connected to the system data bus and the host port is connected to the host data bus. A data path between the host data bus and the system data bus is operably decoupled by buffering and selective provision of data to and from the cache storage locations by the registers, allowing concurrent transfer of data to and from the dual port cache memory.

Another embodiment of present invention, as set forth by amended independent claim 21, is of similar scope to independent claim 4 but specifies a host input register coupled to the addressable memory storage of the dual port cache memory and to the host data bus for providing data from the host data bus to the addressable memory storage, a

- 9 -

PATENT

system input register coupled to the addressable memory storage and to the system data bus for receiving a line of cache data from the data bus and providing the line of the cache data to the addressable memory storage, and a controller which contains a plurality of addresses corresponding to the cache data for receiving the host address from the host address bus and comparing the host address to the plurality of addresses. When a match results from the comparing, host data from the host input register is placed into the addressable memory storage at a location of the line of cache data and system data from the system input register is placed into the location of the line of cache data after the host data is placed into the addressable memory storage such that the host data is not overwritten. Independent claim 15 is a method claim of similar scope to independent claim 21.

Yet another embodiment of present invention, as set forth by amended independent claim 22, relates to a computer system which includes a host processor, a system memory, a dual port cache memory and a cache controller. The dual port cache memory includes a addressable storage, a host port, a system port, a first and second input registers and first and second output registers. The first input register is coupled between the host port and the addressable storage and is for selectively writing input data to the addressable storage. The first output register is coupled between the addressable storage and the system port and is for selectively furnishing output data to the system port. The input data is provided to the addressable storage from the first input register at the same time that the output data is provided by the first output register to the system port. The second input register is coupled between the addressable storage and the system port and provides second input data to the addressable storage. The second output register is coupled between the addressable storage and the host port and provides second output data from the addressable storage to the host port. The second input data is provided to the addressable storage from the second input register at the same time that the second output data is provided by the second output register to the system port. The cache controller is connected to the dual port cache memory and has a first port connected to the host address bus and a second port connected to the system address bus such that the

H:\PATENT\MOS\M-1018.3C\ROA.DOC                                      Serial No.: 08/170,642

PATENT

cache memory and the cache controller are connected in parallel between the host processor and the system memory. The cache controller provides a first address on the host address bus to the dual port cache memory concurrently with providing a second address on the system address bus; the first address corresponds to a different memory location than the second address.

Regarding independent claim 4, Baldwin does not disclose or suggest a computer system which includes a dual port cache memory coupled between a host processor and a system memory. In fact, as described above, Baldwin does not even describe a cache in the traditional sense of the term. However, even if Baldwin's local memory for his numeric processing subsystem (i.e., "data cache" memory 140) were to be considered a cache, Baldwin does not disclose or suggest a cache memory with dual ports, one connected to a host data bus of the host processor and the other connected to a system data bus of the system memory, all as required by claim 1. For at least this reason, claim 1, and those dependent therefrom, are allowable over Baldwin.

Regarding claim 4 in light of Sachs (which has been made of record, but not relied upon by the Examiner), neither Sachs nor Baldwin, taken alone or in combination, disclose or suggest a computer system including a host processor having a host address bus and a host data bus, a system memory having a system address bus and a system data bus, and a dual port cache memory having registers coupling cache storage locations to a host port and to a system port, wherein a data path between the host data bus and the system data bus is operably decoupled by buffering and selective provision of data to and from the cache storage locations by the registers, so as to allow concurrent transfer of data to and from the dual port cache memory. Buffering and selective provision-related limitations were previously recited in claim 22 and are supported by disclosure which appears, for example, in the abstract. For at least this reason claim 4, and those dependent therefrom, are allowable over Sachs and Baldwin.

Regarding independent claim 21, Baldwin does not disclose or suggest a host input register coupled to addressable memory storage of a dual port cache memory and to

- 11 -

PATENT

the host data bus for providing data from the host data bus to the addressable memory storage, a system input register coupled to the addressable memory storage and to the system data bus for receiving a line of cache data from the data bus and providing the line of the cache data to the addressable memory storage, and a controller which contains a plurality of addresses corresponding to the cache data for receiving the host address from the host address bus and comparing the host address to the plurality of addresses. Furthermore, Baldwin does not disclose or suggest that when a match results from the comparing, host data from the host input register is placed into the addressable memory storage at a location of the line of cache data and system data from the system input register is placed into the location of the line of cache data after the host data is placed into the addressable memory storage such that the host data is not overwritten, all as required by claim 21. For at least this reason, claim 21, and those dependent therefrom, are allowable over Baldwin. Method claim 15, and those dependent therefrom, are similarly allowable over Baldwin. Claims 21, 15, and those dependent therefrom are similarly allowable over Sachs and Baldwin.

Regarding independent claim 22, the Examiner has rejected the claim in the supplemental Office action (paper 20) without regard to the requirements of 37 C.F.R. 1.106. In particular, the Examiner has rejected claim 22 without identifying disclosure upon which the claim elements allegedly read. In various previous telephonic interviews (two of which were summarized in a paper filed by Applicant May 1, 1996 and a third recorded by the Examiner in paper 19) Applicant respectfully identified the Examiner's prior omission of any consideration of claim 22-32. The supplemental Office action mailed June 18, 1996 includes no substantive consideration and merely adds the claims 22-32 to a list of previously rejected claims, irrespective of any of the specific limitations contained in independent claim 22. Applicant once again respectively requests substantive consideration of claims 22-32. IN THIS REGARD APPLICANT REMAINS ENTITLED TO A NON-FINAL OFFICE ACTION AND TO RECONSIDERATION UNDER 37 C.F.R. 1.112; ANY FINAL REJECTION IN THE NEXT OFFICE ACTION WOULD BE PREMATURE. Regarding allowability of independent claim 22 over

- 12 -

PATENT

Baldwin, for the reasons described above with reference to claims 1-21, Baldwin does not disclose or suggest a computer system in which a dual port cache memory is coupled between a host processor and a system memory. For at least this reason claim 22, and those dependent therefrom, are allowable over Baldwin.

Additionally, Baldwin does not disclose or suggest a dual port cache memory including a first input register for selectively writing input data to addressable storage and a first output register for selectively furnishing output data to a system port, wherein input data is provided to the addressable storage from the first input register at the same time that output data is provided by the first output register to the system port. Furthermore, Baldwin does not disclose or suggest, the additional features of a cache controller connected to the dual port cache memory for providing a first address on a host address bus concurrently with providing a second address corresponding to a different memory location on a system address bus, a second input register for providing second input data to the addressable storage, and a second output register for providing second output data to a host port, wherein the second input data is provided to the addressable storage from the second input register at the same time that the second output data is provided by the second output register to the system port. For at least each of these reasons, claim 22 is allowable over Baldwin.

Regarding allowability of independent claim 22 over Baldwin and Sachs, neither Baldwin nor Sachs, taken alone or in combination, disclose or suggest a first input register for selectively writing input data to addressable storage and a first output register for selectively furnishing output data to the system port. For at least these reasons, claim 22 and those dependent therefrom are allowable over Baldwin, over Sachs, and over Baldwin and Sachs. Consideration of claims 22-32 is respectfully requested.

Applicant also brings the following commonly-owned U.S. Patent to the Examiner's attention:

H:\PATENT\MOS\M-1018.3C\ROA.DOC                                    Serial No.: 08/170,642

PATENT

(1)    U.S. Patent No. 5,488,709 to Chan (inventor of the subject application), issued January 30, 1996 from a continuation-in-part of a common parent application Serial No. 07/546,071.

An Information Disclosure Statement is filed herewith.

## CONCLUSION

The claims have been amended to improve clarity, to obtain a more appropriate scope of coverage, and to better distinguish over art made of record but not relied upon by the Examiner. The rejection of claim 21 under 35 U.S.C. § 112 has been addressed through an amendment and the rejections of claims 1-32 under 35 U.S.C. § 103 over Baldwin have been traversed. Claims 4, 15, 21 and 22 have been amended to obtain a more appropriate scope of protection and to better distinguish over art made of record but not relied upon by the Examiner. No new matter has been added.

In view of the amendments and remarks set forth herein, the application is believed to be in condition for allowance and a notice to that effect is solicited. Nonetheless, should any issues remain that might be subject to resolution through a telephonic interview, the examiner is requested to telephone the undersigned.

I hereby certify that this correspondence is being deposited with the United States Postal Service as First Class Mail in an envelope addressed to: Commissioner of Patents and Trademarks, Washington, D.C. 20231, on October 16, 1996.

_Kaul_                               _10/16/96_
                                     Date of Signature

Respectfully submitted,

David W. O'Brien
Attorney for Applicants
Reg. No. 40,107
(512) 794-3600

- 14 -

EXHIBIT 24



#25/4

5-6-97

## In the United States Patent and Trademark Office

| | |
|---|---|
| Applicant: | Alfred Chan |
| Assignee: | MOS Electronics |
| Title: | RANDOM ACCESS CACHE MEMORY CONTROLLER AND SYSTEM |

| | | | |
|---|---|---|---|
| Serial No.: | 08/170,642 | Filed: | December 20, 1993 |
| Examiner: | Robertson, D. | Group Art Unit: | 2318 |
| Atty. Docket No.: | M-1018-3C US | | |

April 7, 1997

COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

## RESPONSE TO NON-FINAL OFFICE ACTION

Dear Sir:

This paper is responsive to the Office action mailed January 6, 1997 having a shortened statutory period set to expire April 7, 1997 (April 6, 1997 being a Sunday) and is also responsive to the prior Office action mailed June 18, 1996. Amendments included in the previously filed response were apparently not entered and remarks therein not considered because of a failure to comply with the requirements of 37 C.F.R. 1.121(b). Further to the undersigned's telephonic interview with Examiner Robertson on October 16, 1996, Applicant now resubmits the substance of the prior response with specific parenthetical "amended," "twice amended," and "three times amended" notations. Further examination and reconsideration are respectfully requested in view of the amendments and remarks set forth below.

- 1 -

PATENT

## PROVISIONAL PETITIONS

The Office is provisionally petitioned to extend the shortened statutory period as necessary to avoid abandonment of the Application in relation to the outstanding Office action. If appropriate, a separate Petition for Extension accompanies this Response, this provisional petition being effective in the event that the separate Petition for Extension is defective or missing. The Office is provisionally authorized to charge any amount required to avoid abandonment of the Application in relation to the outstanding Office action to account number 19-2386. A separate Fee Transmittal accompanies this Response, this provisional fee authorization being effective in the event that the separate Fee Transmittal is defective or missing.

## AMENDMENTS

### *In the Claims*

Please amend the claims as follows:

1    4. (three times amended) A computer system comprising:
2    a host [microprocessor] processor having a host address bus and a host data bus;
3    a system memory having storage locations addressable by said host processor, a
4            system address bus and a system data bus;
5    a dual port cache memory having a system port connected to said system data bus
6            [,] and a host port connected to said host data bus, said dual port cache
7            memory comprising [a random access memory] cache storage locations
8            dynamically associable with said storage locations of said system memory
9            and a plurality of registers [connecting] coupling said [random access
10           memory] cache storage locations to said host port and said system port,
11           wherein a data path between said host data bus and said system data bus is
12           operably decoupled by buffering and selective provision of data to and
13           from said [random access memory and] cache storage locations by said

- 2 -

PATENT

14          plurality of registers so as to allow concurrent transfer of data to and from

15          said dual port cache memory [cache]; and

16      a cache controller connected to said dual port cache memory, said cache controller

17          having a first port connected to said host address bus and a second port

18          connected to said system address bus such that said dual port cache

19          memory and said cache controller are connected in parallel between said

20          host [microprocessor] processor and said system memory.

---

1      2. 8. (twice amended)  The computer system as recited in Claim 4 wherein said

2  cache controller is connected to said dual port cache memory for providing a first address

3  on said host address bus concurrently with providing a second address on said system

4  address bus, said first address corresponding to a different [memory location] one of said

5  storage locations of said system memory than said second address.

---

1      8. 11. (amended)  The computer system as recited in Claim 4 wherein said host

2  [microprocessor] processor operates at a first frequency, and wherein said system

3  memory operates at a second frequency that is different from said first frequency.

---

1      10. 18. (amended)  A method for operating a memory cache apparatus, said

2  memory cache apparatus including [a random access memory] addressable storage, a host

3  port, a system port, a host input register connected to said host port, a system input

4  register connected to said system port, and a system output register connected to said

5  system port, said method comprising the steps of:

6          receiving an address from a host;

7          comparing said received address to a plurality of addresses corresponding to cache

8              data stored in said [random access memory] addressable storage;

9          placing a line of said cache data from a location in said [random access memory]

10              addressable storage into said system output register;

11          placing data from said host into said host input register;

- 3 -

PATENT

| | |
|---|---|
| 12 | wherein if said received address does not match one of said plurality of [cache |
| 13 | addresses] addresses corresponding to said cache data: |
| 14 | placing said host data into said location in said [random access memory] |
| 15 | addressable storage from said host input register; |
| 16 | receiving system data corresponding to said received address from said |
| 17 | system port into said system input register; and |
| 18 | subsequent to said step of placing said host data into said addressable |
| 19 | storage, and without overwriting said host data, placing said |
| 20 | system data corresponding to said received address from said |
| 21 | system input register into said location in said [random access |
| 22 | memory,] addressable storage. |
| 23 | [subsequent to said step of placing said host data into said random access |
| 24 | memory, without overwriting said host data.] |

| | |
|---|---|
| 1 | 17. (amended) The method for operating a cache memory apparatus as recited |
| 2 | in claim 13, wherein data from a plurality of data locations of said [random access |
| 3 | memory] addressable storage are placed in said system output register during a single |
| 4 | clock cycle. |

| | |
|---|---|
| 1 | 19. (amended) The method for operating a memory cache apparatus as recited |
| 2 | in claim 13, wherein said step of placing data from said host into said host input register |
| 3 | occurs in a first clock cycle, and wherein said step of placing said host data into said |
| 4 | location in said [random access memory] addressable storage occurs on a second clock |
| 5 | cycle, said second clock cycle immediately following said first clock cycle. |

| | |
|---|---|
| 1 | 21. (twice amended) A computer system comprising: |
| 2 | a host [microprocessor] processor having a host address bus and a host data bus |
| 3 | for providing a host address and host data; |
| 4 | a system memory for storing system data, said system memory having a system |
| 5 | data bus for providing system data; |

- 4 -

PATENT

| | |
|---|---|
| 6 | a dual port cache memory for storing said host data and system data[;] , said dual |
| 7 | port cache memory including: |
| 8 | addressable memory storage; |
| 9 | a host input register [connected to said dual port cache memory and] |
| 10 | coupled to said addressable memory storage and to said host data |
| 11 | bus for providing data from said host data bus to said [dual port |
| 12 | cache memory] addressable memory storage; and |
| 13 | a system input register [connected to said dual port cache memory and] |
| 14 | coupled to said addressable memory storage and to said system |
| 15 | data bus for receiving a line of said cache data from said data bus |
| 16 | and providing said line of cache data to said [dual port cache |
| 17 | memory] addressable memory storage; and |
| 18 | a controller connected to said dual port cache memory and said host address bus, |
| 19 | said controller containing a plurality of addresses corresponding to said |
| 20 | cache data for receiving said host address from said host address bus and |
| 21 | comparing said host address to said plurality of addresses[;] , wherein |
| 22 | when a match results from said comparing: |
| 23 | host data from said host input register is placed into said [dual port cache |
| 24 | memory] addressable memory storage at a location of said line of |
| 25 | cache data; and |
| 26 | system data from said system input register is placed into said location of |
| 27 | said line of cache data after said host data is placed into said [dual |
| 28 | port cache memory] addressable memory storage, wherein said |
| 29 | host data is not overwritten. |

| | |
|---|---|
| 1 | 22. (amended) A computer system comprising: |
| 2 | a host microprocessor having a host address bus and a host data bus; |
| 3 | a system memory having a system address bus and a system data bus; |
| 4 | a dual port cache memory including: |

- 5 -

PATENT

5          [a random access memory] <u>addressable storage,</u>

6          a host port coupled to the host data bus,

7          a system port coupled to the system data bus,

8          a first input register for selectively writing input data to said [random

9               access memory] <u>addressable storage,</u> said first input register being

10              coupled between said host port and said [random access memory]

11              <u>addressable storage,</u>

12         a first output register for selectively furnishing output data to said system

13              port, said first output register being coupled between said [random

14              access memory] <u>addressable storage</u> and said system port, said

15              input data being provided to said [random access memory]

16              <u>addressable storage</u> from said first input register at the same time

17              that said output data is provided by said first output register to said

18              system port,

19         a second input register for providing second input data to said [random

20              access memory] <u>addressable storage,</u> said second input register

21              being coupled between said [random access memory] <u>addressable</u>

22              <u>storage</u> and said system port, and

23         a second output register coupled between said [random access memory]

24              <u>addressable storage</u> and said host port for providing second output

25              data from said [random access memory] <u>addressable storage</u> to said

26              host port, said second input data being provided to said [random

27              access memory] <u>addressable storage</u> from said second input

28              register at the same time that said second output data is provided

29              by said second output register to said system port; and

30         a cache controller connected to said <u>dual port</u> cache memory, said cache controller

31              having a first port connected to said host address bus and a second port

32              connected to said system address bus such that said cache memory and



- 6 -

PATENT



33          said cache controller are connected in parallel between said host

34          [microprocessor] processor and said system memory,

35      said cache controller being connected to said dual port cache memory for

36          providing a first address on said host address bus concurrently with

37          providing a second address on said system address bus, said first address

38          corresponding to a different memory location than said second address.

## REMARKS

Claim 21 was rejected under 35 U.S.C. § 112, second paragraph. The Examiner stated that "'said data bus' lacks proper antecedent basis." Claim 21 has been amended to provide proper antecedent basis. Further consideration is requested.

The Examiner rejected claims 4, 15, 21, 22, and those dependent therefrom (i.e., 4-11 and 15-32) under 35 U.S.C. § 103 as being unpatentable over United States Patent No. 5,329,630 to Baldwin. This rejection is traversed. Applicant respectfully suggests that the prior Examiner's interpretation of Baldwin is not in accordance with the disclosure thereof. However, claims 4, 15, and 21 have been amended to obtain a more appropriate scope of coverage and to better distinguish over art made of record but not relied upon by the Examiner (e.g., Sachs et al.). Claims 5, 11, 17, 19, and 22 have been amended to obtain a more appropriate scope of coverage.

Regarding the art relied upon by the Examiner, Baldwin discloses a double buffering system wherein a dual port memory is partitioned in software so that the top half of the memory is allocated to one processor and the bottom half to the other. The double buffering is implemented by switching the allocation under control of the two processors. *See* Baldwin, Abstract. Baldwin's data cache memory 140 is a cache in name only. In reality, data cache memory 140 is merely a small, wide, fast memory for use in a numeric processing subsystem of a larger computer system. *See* Baldwin, Col. 9, lines 14-37. Data cache memory 140 does not function as a cache providing a processor with high speed access to frequently used memory locations while accesses to uncached

- 7 -

PATENT

locations are serviced by a lower speed memory device. Instead, data cache memory 140 is loaded with data in response to commands from a host processor external to the numeric processing subsystem. *See* Baldwin, Col. 106, line 6 - Col. 107, line 66. Both the host processor and system memory reside on a VME-bus (*see* Baldwin, Figs. 34-37, and 41) which couples to the numeric processing subsystem of Fig. 1 via host (or VME) external interface controller 160 (*see* Baldwin, Col. 10, lines 16-30).

Several points are made clear by Baldwin's discussion of his physical memory model in the context of a host processor command to the numeric processing subsystem to multiply two arrays and store the results in a third array, wherein all three arrays reside in VME memory space. First, data cache memory 140 is not a cache in the traditional sense of the term. Second, the "processors" to which data cache is coupled are themselves tightly coupled in their respective numeric, control, and data transfer functions, interrupting each other to gain access to resources including data cache 140. Third, both the host processor and the system memory are external to the numeric processing subsystem, i.e., reside on a VME bus across external (VME) interface 160 from the numeric processing subsystem and "data cache" memory 140. *See* Baldwin, Col. 106, line 6 - Col. 107, line 66. In short, data cache memory 140 can not be said to be a cache in the traditional sense, floating point processor is not a host processor initiating loads and stores to addresses in an address space greater than that represented in "data cache" memory 140, and neither a host processor nor system memory resides on the numeric processor side (i.e., "data cache" side) of the an external VME interface.

United States Patent No. 5,091,846 to Sachs, et al. has been made of record but not relied upon by the Examiner. Applicant wishes the Examiner to consider Sachs et al. in light of the following. Sachs et al. disclose a cache memory management unit which includes a cache memory subsystem 220 which is coupled to a cache bus via cache output register 230 and cache input register 240 and is coupled to a system bus via system bus input register 260 and system bus output register 250. The cache output register is directly coupled via a data out line to the memory subsystem. The cache input register, system bus

- 8 -

PATENT

input register and system bus output register are coupled to the memory subsystem via a data bus 241.

In contrast with both of the above-described references, an embodiment of the present invention, as set forth by amended independent claim 4, relates to a computer system which includes a host processor, a system memory, a dual port cache memory, and a cache controller. The host processor has a host address bus and a host data bus. The system memory has storage locations addressable by the host processor and has a system address bus and a system data bus. The dual port cache memory includes cache storage locations dynamically associable with the storage locations of the system memory, a host port, a system port, and a plurality of registers coupling the cache storage locations to the host port and the system port. The system port is connected to the system data bus and the host port is connected to the host data bus. A data path between the host data bus and the system data bus is operably decoupled by buffering and selective provision of data to and from the cache storage locations by the registers, allowing concurrent transfer of data to and from the dual port cache memory.

Another embodiment of present invention, as set forth by amended independent claim 21, is of similar scope to independent claim 4 but specifies a host input register coupled to the addressable memory storage of the dual port cache memory and to the host data bus for providing data from the host data bus to the addressable memory storage; a system input register coupled to the addressable memory storage and to the system data bus for receiving a line of cache data from the data bus and providing the line of the cache data to the addressable memory storage, and a controller which contains a plurality of addresses corresponding to the cache data for receiving the host address from the host address bus and comparing the host address to the plurality of addresses. When a match results from the comparing, host data from the host input register is placed into the addressable memory storage at a location of the line of cache data and system data from the system input register is placed into the location of the line of cache data after the host data is placed into the addressable memory storage such that the host data is not

- 9 -

PATENT

overwritten. Independent claim 15 is a method claim of similar scope to independent claim 21.

Yet another embodiment of present invention, as set forth by amended independent claim 22, relates to a computer system which includes a host processor, a system memory, a dual port cache memory and a cache controller. The dual port cache memory includes a addressable storage, a host port, a system port, a first and second input registers and first and second output registers. The first input register is coupled between the host port and the addressable storage and is for selectively writing input data to the addressable storage. The first output register is coupled between the addressable storage and the system port and is for selectively furnishing output data to the system port. The input data is provided to the addressable storage from the first input register at the same time that the output data is provided by the first output register to the system port. The second input register is coupled between the addressable storage and the system port and provides second input data to the addressable storage. The second output register is coupled between the addressable storage and the host port and provides second output data from the addressable storage to the host port. The second input data is provided to the addressable storage from the second input register at the same time that the second output data is provided by the second output register to the system port. The cache controller is connected to the dual port cache memory and has a first port connected to the host address bus and a second port connected to the system address bus such that the cache memory and the cache controller are connected in parallel between the host processor and the system memory. The cache controller provides a first address on the host address bus to the dual port cache memory concurrently with providing a second address on the system address bus; the first address corresponds to a different memory location than the second address.

Regarding independent claim 4, Baldwin does not disclose or suggest a computer system which includes a dual port cache memory coupled between a host processor and a system memory. In fact, as described above, Baldwin does not even describe a cache in

- 10 -

PATENT

the traditional sense of the term.  However, even if Baldwin's local memory for his numeric processing subsystem (i.e., "data cache" memory 140) were to be considered a cache, Baldwin does not disclose or suggest a cache memory with dual ports, one connected to a host data bus of the host processor and the other connected to a system data bus of the system memory, all as required by claim 1.  For at least this reason, claim 1, and those dependent therefrom, are allowable over Baldwin.

Regarding claim 4 in light of Sachs (which has been made of record, but not relied upon by the Examiner), neither Sachs nor Baldwin, taken alone or in combination, disclose or suggest a computer system including a host processor having a host address bus and a host data bus, a system memory having a system address bus and a system data bus, and a dual port cache memory having registers coupling cache storage locations to a host port and to a system port, wherein a data path between the host data bus and the system data bus is operably decoupled by buffering and selective provision of data to and from the cache storage locations by the registers, so as to allow concurrent transfer of data to and from the dual port cache memory.  Buffering and selective provision-related limitations were previously recited in claim 22 and are supported by disclosure which appears, for example, in the abstract.  For at least this reason claim 4, and those dependent therefrom, are allowable over Sachs and Baldwin.

Regarding independent claim 21, Baldwin does not disclose or suggest a host input register coupled to addressable memory storage of a dual port cache memory and to the host data bus for providing data from the host data bus to the addressable memory storage, a system input register coupled to the addressable memory storage and to the system data bus for receiving a line of cache data from the data bus and providing the line of the cache data to the addressable memory storage, and a controller which contains a plurality of addresses corresponding to the cache data for receiving the host address from the host address bus and comparing the host address to the plurality of addresses. Furthermore, Baldwin does not disclose or suggest that when a match results from the comparing, host data from the host input register is placed into the addressable memory

- 11 -

PATENT

storage at a location of the line of cache data and system data from the system input register is placed into the location of the line of cache data after the host data is placed into the addressable memory storage such that the host data is not overwritten, all as required by claim 21. For at least this reason, claim 21, and those dependent therefrom, are allowable over Baldwin. Method claim 15, and those dependent therefrom, are similarly allowable over Baldwin. Claims 21, 15, and those dependent therefrom are similarly allowable over Sachs and Baldwin.

Regarding independent claim 22, the prior Examiner (Elmore) rejected the claim in the supplemental Office action (paper 20) without regard to the requirements of 37 C.F.R. 1.106. In particular, and as highlighted in the prior response, the prior Examiner rejected claim 22 without identifying disclosure upon which the claim elements allegedly read. In various previous telephonic interviews (two of which were summarized in a paper filed by Applicant May 1, 1996 and a third recorded by the prior Examiner in paper 19), Applicant respectfully identified the prior Examiner's prior omission of any consideration of claims 22-32. The supplemental Office action mailed June 18, 1996 included no substantive consideration and merely added the claims 22-32 to a list of previously rejected claims, irrespective of any of the specific limitations contained in independent claim 22. The Office Action mailed January 6, 1997 does not alter this status. Applicant appreciates the opportunity to conform the previously submitted response to the requirements of 37 C.F.R. 1.121 and once again respectively requests substantive consideration of claims 22-32.

BECAUSE APPLICANT HAS NOT YET BEEN AFFORDED SUBSTANTIVE CONSIDERATION OF CLAIMS 22-32, APPLICANT REMAINS ENTITLED TO A NON-FINAL OFFICE ACTION AND TO RECONSIDERATION UNDER 37 C.F.R. 1.112; ANY FINAL REJECTION IN THE NEXT OFFICE ACTION WOULD BE PREMATURE. Regarding allowability of independent claim 22 over Baldwin, for the reasons described above with reference to claims 1-21, Baldwin does not disclose or suggest a computer system in which a dual port cache memory is coupled between a host

- 12 -

PATENT

processor and a system memory. For at least this reason claim 22, and those dependent therefrom, are allowable over Baldwin.

Additionally, Baldwin does not disclose or suggest a dual port cache memory including a first input register for selectively writing input data to addressable storage and a first output register for selectively furnishing output data to a system port, wherein input data is provided to the addressable storage from the first input register at the same time that output data is provided by the first output register to the system port. Furthermore, Baldwin does not disclose or suggest, the additional features of a cache controller connected to the dual port cache memory for providing a first address on a host address bus concurrently with providing a second address corresponding to a different memory location on a system address bus, a second input register for providing second input data to the addressable storage, and a second output register for providing second output data to a host port, wherein the second input data is provided to the addressable storage from the second input register at the same time that the second output data is provided by the second output register to the system port. For at least each of these reasons, claim 22 is allowable over Baldwin.

Regarding allowability of independent claim 22 over Baldwin and Sachs, neither Baldwin nor Sachs, taken alone or in combination, disclose or suggest a first input register for selectively writing input data to addressable storage and a first output register for selectively furnishing output data to the system port. For at least these reasons, claim 22 and those dependent therefrom are allowable over Baldwin, over Sachs, and over Baldwin and Sachs. Consideration of claims 22-32 is respectfully requested.

Applicant also brings the following commonly-owned U.S. Patent to the Examiner's attention:

(1)    U.S. Patent No. 5,488,709 to Chan (inventor of the subject application), issued January 30, 1996 from a continuation-in-part of a common parent application Serial No. 07/546,071.

- 13 -

PATENT

An Information Disclosure Statement accompanied the prior filed response.

## CONCLUSION

The claims have been amended to improve clarity, to obtain a more appropriate scope of coverage, and to better distinguish over art made of record but not relied upon by the Examiner. The rejection of claim 21 under 35 U.S.C. § 112 has been addressed through an amendment and the rejections of claims 1-32 under 35 U.S.C. § 103 over Baldwin have been traversed. Claims 4, 15, and 21 have been amended to obtain a more appropriate scope of protection and to better distinguish over art made of record but not relied upon by the Examiner. Claims 5, 11, 17, 19, and 22 have been amended to obtain a more appropriate scope of coverage. No new matter has been added.

In view of the amendments and remarks set forth herein, the application is believed to be in condition for allowance and a notice to that effect is solicited. Nonetheless, should any issues remain that might be subject to resolution through a telephonic interview, the examiner is requested to telephone the undersigned.

I hereby certify that this correspondence is being deposited with the United States Postal Service as First Class Mail in an envelope addressed to: Commissioner of Patents and Trademarks, Washington, D.C. 20231, on April 7, 1997.

4, 7, 97
Date of Signature

Respectfully submitted,

David W. O'Brien
Attorney for Applicants
Reg. No. 40,107
(512) 794-3600

- 14 -

EXHIBIT 25



08/170642

**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 08/170,642 | 12/20/93 | CHAN | A   M10183C |

| EXAMINER |
|---|
| ELMORE,R |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2318 | 20 |

B3M1/0618

STEPHEN A. TERRILE
SKJERVEN, MORRILL, MACPHERSON,
FRANKLIN & FRIEL
25 METRO DRIVE, SUITE 700
SAN JOSE, CA 95110

DATE MAILED:

06/18/96

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

[X] This application has been examined   [X] Responsive to communication filed on ~~telephone~~ 6-10-96   [ ] This action is made final.

A shortened statutory period for response to this action is set to expire ___3___ month(s), ___∅___ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

**Part I   THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. [ ] Notice of References Cited by Examiner, PTO-892.
2. [ ] Notice of Draftsman's Patent Drawing Review, PTO-948.
3. [ ] Notice of Art Cited by Applicant, PTO-1449.
4. [ ] Notice of Informal Patent Application, PTO-152.
5. [ ] Information on How to Effect Drawing Changes, PTO-1474.
6. [ ] _____

**Part II   SUMMARY OF ACTION**

1. [X] Claims _4-11 & 15-32_ _____ are pending in the application.

   Of the above, claims _____ are withdrawn from consideration.

2. [X] Claims _1-3 & 12-14_ _____ have been cancelled.

3. [ ] Claims _____ are allowed.

4. [X] Claims _4-11 & 15-32_ _____ are rejected.

5. [ ] Claims _____ are objected to.

6. [ ] Claims _____ are subject to restriction or election requirement.

7. [ ] This application has been filed with informal drawings under 37 C.F.R. 1.85 which are acceptable for examination purposes.

8. [ ] Formal drawings are required in response to this Office action.

9. [ ] The corrected or substitute drawings have been received on _____. Under 37 C.F.R. 1.84 these drawings are [ ] acceptable; [ ] not acceptable (see explanation or Notice of Draftsman's Patent Drawing Review, PTO-948).

10. [ ] The proposed additional or substitute sheet(s) of drawings, filed on _____. has (have) been [ ] approved by the examiner; [ ] disapproved by the examiner (see explanation).

11. [ ] The proposed drawing correction, filed _____, has been [ ] approved; [ ] disapproved (see explanation).

12. [ ] Acknowledgement is made of the claim for priority under 35 U.S.C. 119. The certified copy has [ ] been received [ ] not been received [ ] been filed in parent application, serial no. _____; filed on _____.

13. [ ] Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. [ ] Other

**EXAMINER'S ACTION**

PTOL-326 (Rev. 2/93)

Serial Number: 08/170,642                                          -2-
Art Unit: 2318

1.   This office action replaces the office action, paper #17.
As detailed in the interview summary, paper # 19, claims 22-32,
presented in the preliminary amendment filed 12-20-93, were not
included in the previous rejection.  This office action includes
all claims currently presented for examination.

2.   Claims 4-11 and 15-32 are presented for examination.

3.   The changes to Figures 8B and 8C are approved by the
examiner, however, applicant is reminded of the provisions of
MPEP 608.02(q) and 608.02(r) regarding a separate draftsman's
letter.

4.   Claim 21 is rejected under 35 USC 112, second paragraph, as
being indefinite for failing to particularly point out and
distinctly claim the subject matter which applicant regards as
the invention.  The claim is indefinite because:

        (a)  "said data bus" lacks proper antecedent basis, a host
data bus and a system data bus have been previously claimed, it
is not clear which data bus 'said data bus' is referencing --
claim 21, lines 13-14.

5.   The following is a quotation of 35 USC § 103 which forms the
basis for all obviousness rejections set forth in this Office
action:

        A patent may not be obtained though the invention is not
        identically disclosed or described as set forth in section
        102 of this title, if the differences between the subject
        matter sought to be patented and the prior art are such that
        the subject matter as a whole would have been obvious at the
        time the invention was made to a person having ordinary
        skill in the art to which said subject matter pertains.

Serial Number: 08/170,642                                    -3-
Art Unit: 2318

Patentability shall not be negatived by the manner in which
the invention was made.

Subject matter developed by another person, which qualifies
as prior art only under subsection (f) or (g) of section 102
of this title, shall not preclude patentability under this
section where the subject matter and the claimed invention
were, at the time the invention was made, owned by the same
person or subject to an obligation of assignment to the same
person.

6.    Claims 4-11 and 15-32 are rejected under 35 USC § 103 as

being unpatentable over Baldwin et al.

Baldwin teaches the invention (claims 4, 15, 21 and 22)

substantially as claimed, including a computer system and method

for operation a memory cache apparatus, the system and method

comprising:

(a)   a host microprocessor having a host address bus and a

host data bus (e.g., see col. 9, lines 39-52 and Figure 1);

(b)   an input register connected to the cache memory and the

host data bus (e.g., see col. 50, lines 33-42);

(c)   a system memory having a system address bus and a

system data bus (e.g., see Figures 34-37, 41);

(d)   a tri-port cache memory which essentially functions as

a dual port cache memory and connects to a system bus and a host

bus (e.g., see col. 15, lines 45-62); and,

(e)   an input register connected to the dual port cache

memory and the system data bus (e.g., see col. 67, line 47 to

col. 70, line 30).

Baldwin does not specifically teach a cache controller

connected to the dual port cache memory, however, functions

Serial Number: 08/170,642                                    -4-
Art Unit: 2318

performed by a cache controller are performed by the three
processors connected to the data cache memory (e.g., see col. 15,
line 17 to col. 16, line 11). It would have been obvious to one
of ordinary skill in the art of memory storage at the time the
invention was made to equate the functions of the processor
modules to the functions of a cache controller because the
processor modules perform the data control and transfer tasks
typically performed by a cache controller.

As to claims 5 and 16-17, Baldwin teaches the host processor
concurrently processing tasks with access the cache memory with
the other processors of the system (e.g., see col. 1, lines
29-52).

As to claims 6 and 23, Baldwin teaches the host data bus is
asynchronous to the system data bus (e.g., see col. 1,
lines 38-41).

As to claims 7 and 24, Baldwin teaches control sequencing of
addresses and data signals (e.g., see col. 20, line 63 to col.
21, line 51).

As to claims 8 and 25, Baldwin teaches local bus cycles
(e.g., see col. 15, lines 45-62).

As to claims 9-10 and 26-27, Baldwin teaches a peripheral
device coupled to the system which provides data to the cache
(e.g., see col. 16, lines 25-62).

As to claims 11 and 28, Baldwin teaches sub-systems
operating using different parameters (e.g., see col. 3, line 27
to col. 6,line 15).

Serial Number: 08/170,642                                          -5-
Art Unit: 2318

As to claims 18-20, Baldwin teaches data is moved to/from the cache by the processors during clock cycles (e.g., see col. 15, line 15 to col. 16, line 24).

As to claim 29, Baldwin teaches data transfer between a dual port memory and the processor to the extent claimed (e.g., see col. 2, lines 19-46 and Figures 18 and 19).

As to claims 30-31, Baldwin teaches logic for using registers for read holding, write holding or write through. The registers can also be used to hold update data (e.g., see col. 39, lines 25-35 and col. 46, line 1 to col. 47, line 48).

As to claim 32, Baldwin teaches write masking to the extent claimed (e.g., see col. 66, line 58 to col. 67, line 17).


7.  Any inquiry concerning this communication or earlier communications from the examiner should be directed to Reba. I. Elmore whose telephone number is (703) 305-3819.

The examiner can normally be reached on Monday-Thursday from 6:30AM to 5:00PM.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Tod R. Swann, can be reached on (703) 308-7791.  The fax phone number for this Group is (703) 305-9565.

Serial Number: 08/170,642                                          -6-
Art Unit: 2318

_____

     Any inquiry of a general nature or relating to the status of
this application should be directed to the Group receptionist
whose telephone number is (703) 395-9600.

                              Reba I. Elmore
                              Primary Examiner
                              June 15, 1996

EXHIBIT 26

# IBM DICTIONARY
# OF COMPUTING

Compiled and edited by

## GEORGE McDANIEL

McGRAW-HILL, INC.

New York   San Francisco   Washington, D.C.   Auckland   Bogotá
Caracas   Lisbon   London   Madrid   Mexico City   Milan
Montreal   New Delhi   San Juan   Singapore
Sydney   Tokyo   Toronto

**Limitation of Liability**

While the Editor and Publisher of this book have made reasonable efforts to ensure the accuracy and timeliness of the information contained herein, neither the Editor nor the Publisher shall have any liability with respect to loss or damage caused or alleged to be caused by reliance on any information contained herein.

Copyright © 1994 by International Business Machines Corporation. All rights reserved. Printed in the United States of America. Except as permitted under the United States Copyright Act of 1976, no part of this publication may be reproduced or distributed in any form or by any means, or stored in a data base or retrieval system, without the prior written permisssion of the publisher.

2 3 4 5 6 7 8 9 0   DOC/DOC   9 9 8 7 6 5 4


ISBN 0-07-031488-8 (HC)
ISBN 0-07-031489-6 (PBK)

The sponsoring editor for this book was Daniel A. Gonneau and the production supervisor was Thomas G. Kowalczyk.

Printed and bound by R. R. Donnelley & Sons Company.

**Tenth Edition (August 1993)**

This is a major revision of the *IBM Dictionary of Computing*, SC20-1699-8, which is made obsolete by this edition. Changes are made periodically to the information provided herein.

It is possible that this material may contain reference to, or information about, IBM products (machines and programs), programming, or services that are not announced in your country. Such references or information must not be construed to mean that IBM intends to announce such IBM products, programming, or services in your country. Comments may be addressed to IBM Corporation, Department E37/656, P. O. Box 12195, Research Triangle Park, NC 27709.

**International Edition**

Copyright © 1994 by International Business Machines Corporation. Exclusive rights by McGraw-Hill, Inc. for manufacture and export. This book cannot be re-exported from the country to which it is consigned by McGraw-Hill. The International Edition is not available in North America.

When ordering this title, use ISBN 0-07-113383-6.

This book is printed on acid-free paper.

information in the form of messages to the user from client applications that are currently running.

**bumping up** In video applications, the process of transferring recorded video to a higher-quality tape format, such as from a half-inch tape to three-quarter-inch tape.

**burned-in address** See hard address.

**burn in** A process of increasing the reliability performance of hardware employing functional operation of every functional unit in a prescribed environment with successive corrective maintenance at every failure during the early failure period. (T)

**burnt-in time code** In videotaping, the time of day as displayed in a window on a videotape.

**burst** (1) In data communication, a sequence of signals counted as one unit in accordance with some specific criterion or measure. (A)   (2) To separate continuous-form paper into discrete sheets. (A) (3) See error burst.

**burster** A device to detach from one another previously-perforated forms or formsets of continuous stationery. (T)

**burster-trimmer-stacker (BTS)** A printer feature that bursts continuous forms into separate sheets, trims the carrier strip from both edges of the forms, and stacks single sheets. See also job offset.

**burst isochronous transmission** Synonym for burst transmission.

**burst mode** A mode in which data is transmitted by means of burst transmission.

**burst noise** In acoustics, noise characterized by acoustic impulses that significantly exceed the level of ambient noise.

**burst pages** On continuous-form paper, pages of output that can be separated at the perforations.

**burst transmission** (1) Data transmission at a specific data signalling rate during controlled intermittent intervals. (I)  (A)     (2) Synonymous with burst isochronous transmission, interrupted isochronous transmission.

**bus** (1) A facility for transferring data between several devices located between two end points, only one device being able to transmit at a given moment. (T)     (2) A computer configuration in which processors are interconnected in series.   See also hypercube.   (3) One or more conductors used for transmitting signals or power. (A)     (4) See

bidirectional bus, control bus, data bus.  See also bus network.

**bus extension card (BEC)** In the AS/400 system, the bus extension driver card or the bus extension receiver card.

**bus extension driver (BED) card** In the AS/400 system, the card, connected by a cable to a bus extension receiver (BER) card, that is used to route data from one card enclosure to another card enclosure. The direction of data can be from the processing unit to an input/output processor in one of the card enclosures, or from an input/output processor in one of the card enclosures to the processing unit.  See also bus extension receiver (BER) card.

**bus extension receiver (BER) card** In the AS/400 system, the card, connected by a cable to a bus extension driver (BED) card, that is used to route data from one card enclosure to another card enclosure.  The direction of data can be from the processing unit to an input/output processor in one of the card enclosures, or from an input/output processor in one of the card enclosures to the processing unit.  See also bus extension driver (BED) card.

**business area** A product area where business is performed.

**business graphics** See graphics.

**business graphics utility (BGU)** An IBM-supplied OFFICE/38 utility that provides a menu-driven means of using the System/38 chart functions without knowledge of programming.

**business machine** (1) A machine designed to facilitate clerical operations in commercial or scientific activities.  (2) Customer-provided data terminal equipment (DTE) that connects to telecommunication equipment of a communication common carrier, a Recognized Private Operating Agency, or a telecommunication Administration, for the purpose of data transfer. See also COAM equipment.

**business machine clocking** A time base oscillator supplied by the business machine for regulating the bit rate of transmission.  Synonymous with non-data-set clocking.  Contrast with data set clocking.

**business partner** Any non-IBM organization, with whom IBM has a written contract defining a complementary marketing relationship, that provides end users with information-handling solutions that use or rely upon an IBM offering.

**bus master** A device or subsystem that controls data transfers between itself and a slave.

menu

height,

which
on a

. See
storage
storage

nat can
) ghost

hdown

n, the
disap-
action,
. See
ws, an
when a

isplays
(2) In
a type
up) in
usually
hanced
widget
is held
Basic
area of
nts the
5) See
op-up.

idows,
ession

child

list of

rsonal
ection
n; for
when
pull-
the
widget
sually

clicking a mouse button, and then disappears when the action is completed.



Figure 115. Pop-up Menu

**pop-up widget** In AIX Enhanced X-Windows, a window child of the root that is attached to its widget parent differently than the normal widget; a pop-up widget is not geometrically constrained by its parent widget.

**pop-up window** In SAA Advanced Common User Access architecture, a movable window, fixed in size, in which a user provides information required by an application so that it can continue to process a user request.

**port** (1) An access point for data entry or exit. (2) A connector on a device to which cables for other devices such as display stations and printers are attached. Synonymous with socket. See communication port, game port, I/O port, parallel port, serial port, terminal port. (3) A specific communications end point within a host. A port is identified by a port number. (4) The representation of a physical connection to the link hardware. A port is sometimes referred to as an adapter; however, there can be more than one port on an adapter. There may be one or more ports controlled by a single DLC process. (5) To make the programming changes necessary to allow a program that runs on one type of computer to run on another type of computer. (6) Deprecated term for adapter. (7) See delayed port, disabled port, protocol port, serial port, shared port, textport. (8) See also viewport.

**portability** (1) The capability of a program to be executed on various types of data processing systems without converting it to a different language and with little or no modification. (T)   (2) The ability to transport equipment manually. (3) The ability to run a program on more than one computer without modifying it. (4) Synonymous with transportability. See data portability.

**portable computer** A microcomputer that can be hand carried for use in more than one location. (T)

**portable dictation machine** A dictation machine having a self-contained power supply and designed primarily for easy movement from one place to another. (I)

**portable typewriter** A typewriter designed primarily for easy movement from one place to another. It is usually supplied with a carrying case that also serves to protect the machine while it is being moved. (T)

**port address** In an ESCON Director, an address used to specify port connectivity parameters and to assign link addresses for attached channels and control units. See also link address.

**port address name** In an ESCON Director, a user-defined symbolic name of 24 characters or less that identifies a particular port.

**Port-A-Punch equipment** Portable punching equipment manufactured by IBM.

**port card** In an ESCON environment, a field-replaceable hardware component that provides the opto-mechanical attachment method for jumper cables and performs specific device-dependent logic functions.

**port designation** A 4-character identifier (such as LPT1 or COM1) assigned to a printer, plotter, or communications device so that the system has a unique way to refer to the resource.

**portfolio** In multimedia, a series of timed video stills, producing a "slide show" effect.

**port group** A group of ports identified by the common carrier with a single data terminal equipment (DTE) address. The network directs incoming calls to the first available port, using a sequential search technique.

**port information block (PIB)** In an ESCON Director, a data area that contains information relating to the connectivity of each available port.

**port number** (1) In an ESCON Director, a hexadecimal number that identifies a physical link connection point. This number is identical to its port address unless the service representative has reassigned the port associated with that address. (2) In TCP/IP, a 16-bit number used to communicate between TCP and a higher-level protocol or application. Some protocols, such as the File Transfer Protocol (FTP) and the Simple Mail Transfer Protocol (SMTP), use the same port number in all TCP/IP implementations. See well-known port.

**portrait** (1) The arrangement of text on a page so that it is oriented for normal reading when its length is

**Refresh**                                              [566]                                              **registration**

repeatedly producing a display image on a display surface so that the image remains visible. (I) (A) (3) To recharge a memory location in volatile memory with an electric current so that it retains a state or binary value. (4) See system refresh.

**Refresh** In SAA Basic Common User Access architecture, an action that updates the information that a user is currently looking at.

**refreshable** The attribute of a load module that prevents it from being modified by itself or by any other module during execution. A refreshable load module can be replaced by a new copy during execution by a recovery management routine without changing either the sequence or results of processing.

**refreshable program** A program that can be replaced at any time with a new copy without changing either the sequence or results of processing.

**refresh rate** (1) The number of times per second that a display image is produced for refresh. (I) (A) (2) In word processing, the rate at which a displayed image is renewed in order to appear stable. (T)

**regenerate** (1) To restore information to its original state. (2) To recharge a dissipating storage device to its fully charged state.

**regeneration** (1) In computer graphics, the sequence of events needed to generate a display image from its representation in storage. (I) (A) (2) The restoration of stored information. (3) See signal regeneration.

**regenerative track** Part of a track on a magnetic drum or magnetic disk used in conjunction with a read head and a write head that are connected to function as a circulating storage. (A) Synonymous with revolver track.

**region** A variable-size subdivision of a dynamic area that is allocated to a job step or a system task.

**regional center** A control center (class 1 office) connecting sectional centers of the telephone system together. Every pair of regional centers in the United States has a direct circuit group running from one center to the other.

**region class** In IMS/VS, the class assigned to a message region to indicate the message classes that can be processed within the region. See also message class.

**region control task (RCT)** In TSO, the control program routine that handles quiesce/restore and LOGON/LOGOFF.

**region job pack area (JPA)** In OS/VS2, an area in a virtual region that contains modules that are not in the link pack area but are needed for the execution of jobs.

**region size** The amount of main storage available for a program to run. See also job region, step region.

**register** (1) A part of internal storage having a specified storage capacity and usually intended for a specific purpose. (T) (2) In DPCX, a field capable of containing 10 digits, a sign, and a decimal point, that can be used by a program for arithmetic calculations and for program control. (3) On a document copying machine, to accurately position the image of the original on the copy material. (T)

**registered network ID** An 8-byte name included in an IBM-maintained worldwide registry that has a structured format and is assigned to a particular IBM customer to uniquely identify a specific network.

**register guides** In a document copying machine, indicators on or near the platen that help position the original correctly. (T)

**register insertion** In a ring network configuration, a ring control scheme in which each station loads the frame it is transmitting into a shift register and, when the ring is idle, inserts the entire contents of the register into the ring. The sending station removes the register contents from the ring when it is returned by the receiving station. See also master node control, slotted-ring control, token-access control.

**register length** The storage capacity of a register. (I) (A)

**registrable resource** A logical unit that can be registered with a network node server, a central directory server, or both.

**registration** (1) The accurate positioning of an entity relative to a reference. (A) (2) On a document copying machine, the consistency of register on successive copies. (T) (3) In a duplicator, the consistency of the relative position of images printed on paper. (T) (4) In X.25, the process used between a data terminal equipment (DTE) and a data circuit-terminating equipment (DCE) to establish an agreement on which optional user facilities will be in effect; for example, the DTE can request that the DCE agree to or stop a previous agreement for an optional user facility. Also, a DCE can indicate the optional user facilities that are available or the optional user facilities that are currently in effect. The negotiation is accomplished through the exchange of registration packets. (5) In the ImagePlus system, the final step in the process of storing an object. Registration represents a positive identification of the object based on the

# EXHIBIT 27

# Microsoft Press

# Computer Dictionary

## Third Edition

**Microsoft** Press

PUBLISHED BY
Microsoft Press
A Division of Microsoft Corporation
One Microsoft Way
Redmond, Washington 98052-6399

Copyright © 1997 by Microsoft Corporation

All rights reserved. No part of the contents of this book may be reproduced or transmitted
in any form or by any means without the written permission of the publisher.

Library of Congress Cataloging-in-Publication Data
Microsoft Press Computer Dictionary. -- 3rd ed.
   p.   cm.
  ISBN 1-57231-446-X
   1. Computers--Dictionaries.   2. Microcomputers--Dictionaries.
  I. Microsoft Press.
  QA76.15.M54  1997
  004'.03--dc21                    97-15489
                                         CIP

Printed and bound in the United States of America.

1  2  3  4  5 6 7 8 9   QMQM   2 1 0 9 8 7

Distributed to the book trade in Canada by Macmillan of Canada, a division of Canada Publishing
Corporation.

A CIP catalogue record for this book is available from the British Library.

Microsoft Press books are available through booksellers and distributors worldwide. For further
information about international editions, contact your local Microsoft Corporation office. Or contact
Microsoft Press International directly at fax (425) 936-7329.

Macintosh, Power Macintosh, QuickTime, and TrueType are registered trademarks of Apple Computer,
Inc. Intel is a registered trademark of Intel Corporation. DirectInput, DirectX, Microsoft, Microsoft
Press, MS-DOS, Visual Basic, Visual C++, Win32, Win32s, Windows, Windows NT, and XENIX are
registered trademarks and ActiveMovie, ActiveX, and Visual J++ are trademarks of Microsoft
Corporation. Java is a trademark of Sun Microsystems, Inc. Other product and company names
mentioned herein may be the trademarks of their respective owners.

**Acquisitions Editor:** Kim Fryer
**Project Editor:** Maureen Williams Zimmerman, Anne Taussig
**Technical Editors:** Dail Magee Jr., Gary Nelson, Jean Ross, Jim Fuchs, John Conrow, Kurt Meyer,
                  Robert Lyon, Roslyn Lutsch

**bubble memory** \bub´l mem`ər-ē\ *n.* Memory formed by a series of persistent magnetic "bubbles" in a thin film substrate. In contrast to ROM, information can be written to bubble memory. In contrast to RAM, data written to bubble memory remains there until it is changed, even when the computer is turned off. For this reason, bubble memory has had some application in environments in which a computer system must be able to recover with minimal data loss in the event of a power failure. The use of and demand for bubble memory has all but disappeared because of the introduction of flash memory, which is less expensive and easier to produce. *See also* flash memory, nonvolatile memory.

**bubble sort** \bub´l sôrt\ *n.* A sorting algorithm that starts at the end of a list with *n* elements and moves all the way through, testing the value of each adjacent pair of items and swapping them if they aren't in the right order. The entire process is then repeated for the remaining $n - 1$ items in the list, and so on, until the list is completely sorted, with the largest value at the end of the list. A bubble sort is so named because the "lightest" item in a list (the smallest) will figuratively "bubble up" to the top of the list first; then the next-lightest item bubbles up to its position, and so on. See the illustration. *Also called* exchange sort. *See also* algorithm, sort. *Compare* insertion sort, merge sort, quicksort.

List to be sorted

Compared last
Compared second
Compared third
Compared first

3
4
2
5
1

| List after first pass | List after second pass |
|---|---|
| 1 | 1 |
| 3 | 2 |
| 4 | 3 |
| 2 | 4 |
| 5 | 5 |

*Bubble sort.*

**bubble storage** \bub´l stôr`əj\ *n. See* bubble memory.

**bucket** \buk´ət\ *n.* A region of memory that is addressable as an entity and can be used as a receptacle to hold data. *See also* bit bucket.

**buffer**[1] \buf´ər\ *n.* A region of memory reserved for use as an intermediate repository in which data is temporarily held while waiting to be transferred between two locations, as between an application's data area and an input/output device. A device or its adapter may in turn use a buffer to store data awaiting transfer to the computer or processing by the device.

**buffer**[2] \buf´ər\ *vb.* To use a region of memory to hold data that is waiting to be transferred, especially to or from input/output (I/O) devices such as disk drives and serial ports.

**buffer pool** \buf´ər pōol\ *n.* A group of memory or storage-device locations that are allocated for temporary storage, especially during transfer operations.

**buffer storage** \buf´ər stôr`əj\ *n.* **1.** The use of a special area in memory to hold data temporarily for processing until a program or operating system is ready to deal with it. **2.** An area of storage that is used to hold data to be passed between devices that are not synchronized or have different bit transfer rates.

**bug** \bug\ *n.* **1.** An error in coding or logic that causes a program to malfunction or to produce incorrect results. Minor bugs, such as a cursor that does not behave as expected, can be inconvenient or frustrating, but do not damage information. More severe bugs can require the user to restart the program or the computer, losing whatever previous work had not been saved. Worse yet are bugs that damage saved data without alerting the user. All such errors must be found and corrected by the process known as *debugging*. Because of the potential risk to important data, commercial application programs are tested and debugged as completely as possible before release. After the program becomes available, further minor bugs are corrected in the next update. A more severe bug can sometimes be fixed with a piece of software called a *patch,* which circumvents the problem or in some other way alleviates its effects. *See also* beta test,

high-speed data stream, becomes a channel dedicated to the needs of one device until the entire transmission has been sent. Burst mode is used both in communications and between devices in a computer system. *See also* burst[1].

**burst rate** \burst´ rāt\ *n. See* burst speed (definition 1).

**burst speed** \burst´ spēd\ *n.* **1.** The fastest speed at which a device can operate without interruption. For example, various communications devices (as on networks) can send data in bursts, and the speed of such equipment is sometimes measured as the burst speed (the speed of data transfer while the burst is being executed). *Also called* burst rate. **2.** The number of characters per second that a printer can print on one line without a carriage return or linefeed. Burst speed measures the actual speed of printing, without consideration of the time taken to advance paper or to move the print head back to the left margin. Almost always, the speed claimed by the manufacturer is the burst speed. By contrast, *throughput* is the number of characters per second when one or more entire pages of text are being printed and is a more practical measurement of printer speed in real-life situations.

**bursty** \bur´stē\ *adj.* Transmitting data in spurts, or bursts, rather than in a continuous stream.

**bus** \bus\ *n.* A set of hardware lines (conductors) used for data transfer among the components of a computer system. A bus is essentially a shared highway that connects different parts of the system—including the microprocessor, disk-drive controller, memory, and input/output ports—and enables them to transfer information. The bus consists of specialized groups of lines that carry different types of information. One group of lines carries data; another carries memory addresses (locations) where data items are to be found; yet another carries control signals. Buses are characterized by the number of bits they can transfer at a single time, equivalent to the number of wires within the bus. A computer with a 32-bit address bus and a 16-bit data bus, for example, can transfer 16 bits of data at a time from any of $2^{32}$ memory locations. Most microcomputers contain one or more expansion slots into which additional boards can be plugged to connect them to the bus.

**bus enumerator** \bus´ ə-nōō`mər-ā-tər\ *n.* A device driver that identifies devices located on a specific bus and assigns a unique identification code to each device. The bus enumerator is responsible for loading information about the devices onto the hardware tree. *See also* bus, device driver, hardware tree.

**bus extender** \bus´ eks-ten`dər\ *n.* **1.** A device that expands the capacity of a bus. For example, IBM PC/AT computers used a bus extender to add onto the earlier PC bus and allow the use of 16-bit expansion boards in addition to 8-bit boards. *See also* bus. **2.** A special board used by engineers to raise an add-on board above the computer's cabinet, making it easier to work on the circuit board.

**business graphics** \biz´nəs graf`iks\ *n. See* presentation graphics.

**business information system** \biz´nəs in-fər-mā´shən si`stəm\ *n.* A combination of computers, printers, communications equipment, and other devices designed to handle data. A completely automated business information system receives, processes, and stores data; transfers information as needed; and produces reports or printouts on demand. *Acronym:* BIS (B´I-S´). *See also* management information system.

**business software** \biz´nəs soft`wâr\ *n.* Any computer application designed primarily for use in business, as opposed to scientific use or entertainment. In addition to the well-known areas of word processing, spreadsheets, databases, and communications, business software for microcomputers also encompasses such applications as accounting, payroll, financial planning, project management, decision and support systems, personnel record maintenance, and office management.

**bus mouse** \bus´ mous\ *n.* A mouse that attaches to the computer's bus through a special card or port rather than through a serial port. *See also* mouse. *Compare* serial mouse.

**bus network** \bus´ net`wôrk\ *n.* A topology (configuration) for a local area network in which all nodes are connected to a main communications line (bus). On a bus network, each node monitors activity on the line. Messages are detected by all nodes but are accepted only by the node(s) to which they are addressed. A malfunctioning node ceases to communicate but does not disrupt oper-

smaller than a postage stamp and require only a few milliwatts of power. *See also* integrated circuit.

**microfiche** \mī´krō-fēsh`\ *n.* A small sheet of film, about 4 by 6 inches, used for recording photographically reduced images, such as document pages, in rows and columns forming a grid pattern. The resulting images are too small to read with the naked eye, and a microfiche reader is required to view the documents. *Compare* microfilm.

**microfilm** \mī´krō-film`\ *n.* A thin strip of film stored on a roll and used to record sequential data images. As with microfiche, a special device magnifies the images so that they can be read. *See also* CIM (definition 2), COM (definition 4). *Compare* microfiche.

**microfloppy disk** \mī´krō-flop´ē disk\ *n.* A 3.5-inch floppy disk of the type used with the Apple Macintosh and with IBM and compatible microcomputers. A microfloppy disk is a round piece of polyester film coated with ferric oxide and encased in a rigid plastic shell equipped with a sliding metal cover. On the Macintosh, a single-sided microfloppy disk can hold 400 kilobytes (KB); a double-sided (standard) disk can hold 800 KB; and a double-sided high-density disk can hold 1.44 megabytes (MB). On IBM and compatible machines, a microfloppy can hold either 720 KB or 1.44 MB of information. *See also* floppy disk.

**microform** \mī´krō-fōrm`\ *n.* The medium, such as microfilm or microfiche, on which a photographically reduced image, called a *microimage*, is stored. A microimage usually represents text, such as archived documents. *See also* microfiche, microfilm.

**micrographics** \mī´krō-graf´iks\ *n.* The techniques and methods for recording data on microfilm. *See also* microform.

**microimage** \mī´krō-im`əj\ *n.* A photographically reduced image, usually stored on microfilm or microfiche, that is too small to be read without magnification. *See also* microform, micrographics.

**microinstruction** \mī´krō-in-struk`shən\ *n.* An instruction that is part of the microcode. *See also* microcode.

**microjustification** \mī´krō-ju-stə-fə-kā´shən\ *n.* *See* microspace justification.

**microkernel** \mī´krō-kər`nəl\ *n.* **1.** In programming, the strictly hardware-dependent part of an operating system that is intended to be portable from one type of computer to another. The microkernel provides a hardware-independent interface to the rest of the operating system, so only the microkernel needs to be rewritten to port the operating system to a different platform. *See also* kernel, operating system. **2.** A kernel that has been designed with only the basic features and typically in a modular fashion.

**micrologic** \mī´krō-loj´ik\ *n.* A set of instructions, stored in binary form, or a set of electronic logic circuits that defines and governs the operation within a microprocessor.

**microminiature** \mī´krō-min´ə-chur\ *n.* An extremely small circuit or other electronic component, especially one that is a refinement of an already miniaturized element.

**microphone** \mī´krə-fōn`\ *n.* **1.** A device that converts sound waves into analog electrical signals. Additional hardware can convert the microphone's output into digital data that a computer can process; for example, to record multimedia documents or analyze the sound signal. **2.** A communications program that runs on the Apple Macintosh computer.

**microprocessor** \mī´krō-pros`es-ər\ *n.* A central processing unit (CPU) on a single chip. A modern microprocessor can have over 1 million transistors in an integrated-circuit package that is roughly 1 inch square. Microprocessors are at the heart of all personal computers. When memory and power are added to a microprocessor, all the pieces, excluding peripherals, required for a computer are present. The most popular lines of microprocessors today are the 680x0 family from Motorola, which powers the Apple Macintosh line, and the 80x86 family from Intel, which is at the core of all IBM PC–compatible and PS/2 computers. *See also* 6502, 65816, 6800, 68000, 68020, 68030, 68040, 80286, 80386DX, 80386SX, 8080, 8086, 8088, 88000, DECchip 21064, i486DX, i486DX2, i486SL, i486SX, Pentium, Pentium Pro, PowerPC, SPARC, Z80.

**microprogramming** \mī´krō-prō´gram-ēng\ *n.* The writing of microcode for a processor. Some systems, chiefly minicomputers and mainframes,

change, so as to keep the phosphors irradiated. **2.** To recharge dynamic random access memory chips (DRAMs) so that they continue to retain the information stored in them. Circuitry on the memory board automatically performs this function. *See also* refresh cycle.

**refreshable** \rə-fresh´-ə-bl\ *adj.* In programming, referring to a program module capable of being replaced in memory without affecting processing of the program or the information being used by the program.

**refresh cycle** \rə-fresh´ sī`kl\ *n.* The process in which controller circuitry provides repeated electric pulses to dynamic random access memory chips in order to renew the stored electric charges in those locations that contain binary 1. Each pulse is one refresh cycle. Without constant refreshing, dynamic semiconductor RAM loses any information stored in it—as it does when the computer is turned off or when the power fails. *See also* dynamic RAM, static RAM.

**refresh rate** \rə-fresh´ rāt`\ *n.* In reference to video hardware, the frequency with which the entire screen is redrawn to maintain a constant, flicker-free image. On TV screens and raster-scan monitors, the electron beam that lights the phosphor coating on the inner surface of the screen typically refreshes the entire image area at a rate of about 60 hertz, or 60 times per second. (Interlaced monitors, which redraw alternate lines during each sweep of the electron beam, actually refresh any particular line only 30 times per second. Because odd and even lines are refreshed on successive sweeps, however, the effective refresh rate is 60 times per second.)

**REGEDIT** \rej´ed`it\ *n. See* Registry Editor.

**regenerate** \rē-jen´ər-āt\ *vb. See* rewrite.

**regeneration buffer** \rē-jen-ər-ā´shən buf`ər\ *n. See* video buffer.

**regenerator** \rē-jen´ər-ā`tər\ *n. See* repeater.

**region** \rē´jən\ *n.* **1.** An area dedicated to or reserved for a particular purpose. **2.** In video programming, a contiguous group of pixels that are treated as a unit. On the Apple Macintosh, for example, a region is an area in a grafPort that can be defined and manipulated as an entity. The vis-

ible working area within a window is an example of a region. *See also* grafPort.

**region fill** \rē´jən fil`\ *n.* In computer graphics, the technique of filling a defined region on the screen with a selected color, pattern, or other attribute. *See also* region.

**register** \rej´i-stər`\ *n.* A set of bits of high-speed memory within a microprocessor or other electronic device, used to hold data for a particular purpose. Each register in a central processing unit is referred to in assembly language programs by a name such as *AX* (the register that contains the results of arithmetic operations in an Intel 80x86 processor) or *SP* (the register that contains the memory address of the top of the stack in various processors).

**registration** \rej´ə-strā´shən\ *n.* The process of precisely aligning elements or superimposing layers in a document or a graphic so that everything will print in the correct relative position. *See also* registration marks.

**registration marks** \rej-ə-strā´shən märks`\ *n.* Marks placed on a page so that in printing, the elements or layers in a document can be arranged correctly with respect to each other. Each element to be assembled contains its own registration marks; when the marks are precisely superimposed, the elements are in the correct position. See the illustration.



*Registration marks.*

**Registry** or **registry** \rej´is-trē`\ *n.* A central hierarchical database in Windows 95 and Windows NT used to store information necessary to configure the system for one or more users, applications, and hardware devices. The Registry contains information that Windows 95 and Windows NT continually reference during operation, such as profiles for each user, the applications installed on the computer and the types of documents each can create, property sheet settings for folders and application icons, what hardware exists on the system, and which ports are being used. The Registry

# EXHIBIT 28

IEEE Std 100-1992

# The New IEEE Standard Dictionary of Electrical and Electronics Terms
[Including Abstracts of All Current IEEE Standards]

## Fifth Edition

Gediminas P. Kurpis, Chair

Christopher J. Booth, Editor

The Institute of Electrical and Electronics Engineers, Inc.
345 East 47th Street, New York, NY 10017-2394, USA

Copyright © 1993 by the
Institute of Electrical and Electronics Engineers, Inc.
All rights reserved. Published 1993
Printed in the United States of America

ISBN 1-55937-240-0

*No part of this publication may be reproduced in any form,
in an electronic retrieval system or otherwise,
without the prior written permission of the publisher.*

*January 15, 1993*                                        SH15594

selection sort; propagation sort; sifting sort. *Contrast with:* cocktail shaker sort.
610.5-1990

**Buchmann-Meyer pattern (mechanical recording).** *See:* light pattern.

**buck arm.** A crossarm placed approximately at right angles to the line crossarm and used for supporting branch or lateral conductors or turning large angles in line conductors. *See:* tower. [10]

**bucket (1) (power line maintenance).** A device designed to be attached to the boom tip of a line truck, crane, or aerial lift and support workers in an elevated working position. It is normally constructed of fiberglass to reduce its physical weight, maintain strength, and obtain good dielectric characteristics. *Syn:* basket.
516-1987

**(2) (data management).** (A) An area of storage that may contain more than one record and that is referenced as a whole by some addressing technique. (B) In hashing, a section of a hash table that can hold all records with identical hash values. 610.5-1990

**(3) (power-line maintenance).** A device designed to be attached to the boom tip of a line truck, crane, or aerial lift and support workers in an elevated working position. It is normally constructed of fiberglass to reduce its physical weight, maintain strength, and obtain good dielectric characteristics. *Syn:* basket.
516-1987

**buffalo.** *See:* conductor grip. 516-1987

**buffer (1) (buffer storage) (supervisory control, data acquisition, and automatic control).** (A) A device in which data are stored temporarily, in the course of transmission from one point to another; used to compensate for a difference in the flow of data, or time of occurrence of events, when transmitting data from one device to another. (B) An isolating circuit used to prevent a driven circuit from influencing a driving circuit. C37.1-1987
**(2) (data processing and computation).** A storage device used to compensate for a difference in rate of flow of information or time of occurrence of events when transmitting information from one device to another. 162-1963
**(3) (elevator design).** A device designed to stop a descending car or counterweight beyond its normal limit of travel by storing or by absorbing and dissipating the kinetic energy of the car or counterweight. *See:* elevator. [119]
**(4) (relay).** *See:* relay spring stud.
**(5) (computers).** (A) A device or storage area used to store data temporarily to compensate for differences in rates of data flow, time of occurrence of events, or amounts of data that can be handled by the devices or processes involved in the transfer or use of the data. *Syn:* input buffer; input/output area; output buffer. (B) A routine that accomplishes the objectives in (A). (C) To allocate, schedule, or use devices or storage areas as in (A). *See also:* anticipatory buffering; dynamic buffering; simple buffering. 610.5-1990, 610.12-1990

**buffer amplifier (1) (general).** An amplifier in which the reaction of output-load-impedance variation on the input circuit is reduced to a minimum for isolation purposes. *See:* amplifier. 145-1983
**(2) (analog computers).** An amplifier in which the reaction of the output-load-impedance variation on the input circuit is reduced to a constant for isolation purposes on the input circuit. *See:* unloading amplifier. 165-1977

**buffered input.** Input that is received using buffers. 610.5-1990

**buffered interconnect (BI) (FASTBUS acquisition and control).** A device that implements an intersegment connection such that the FASTBUS protocol (FBP) on one segment is not synchronized with that on the other. 960-1986

**buffer memory (sequential events recording systems).** The memory used to compensate for the difference in rate of flow of information or time of occurrence of events when transmitting information from one device to another. *See:* buffer; event; storage. [1]

**buffer pool.** A collection of buffers that can be allocated and used as needed. 610.5-1990

**buffers (buffer salts).** Salts or other compounds that reduce the changes in the pH of a solution upon the addition of an acid or alkali. *See:* ion. [119]

**buffer salts.** *See:* buffers.

**buffer storage (1).** An intermediate storage medium between data input and active storage. [61]
**(2) (data management).** A storage device that is used as a buffer. *Syn:* buffer store.
610.5-1990
**(3) (telecommunications).** Memory provided in a digital switching system or digital facility interface (DFI) to compensate for timing drift and frame registration differences between a DFI and the switching system. Reduces the probability of slips caused by environmentally produced phase modulation, such as those resulting from diurnal temperature variations. The mechanism for absorbing slips in the DFI of a local digital switch could consist of several single frame stores that are alternately written and read. This scheme allows the two clocks to drift within the limits of the buffer storage. In addition, a type of hysteresis should be provided at the DFI whereby a buffer that was involved in a slip is protected against an immediate slip in the reverse direction. Enough buffering should be used to minimize such occurrences. 973-1990

**buffer store.** *See:* buffer storage. 610.5-1990

**buffing (electroplating).** The smoothing of a metal surface by means of flexible wheels, to

The right-hand side of the window marks the burst leading-edge time. (C) The burst trailing edge time is found by a similar procedure. The window is slid to the right past its position in (A) until the trace disappears from the window. The left-hand side of the window marks the burst trailing-edge time. (D) Terms used in defining a burst: burst leading-edge time, $t_1$; burst build-up interval, $t_2 - t_1$; burst rise interval, $t_3 - t_1$; burst trailing-edge time, $t_5$; burst decay interval, $t_5 - t_3$; burst fall-off interval, $t_5 - t_4$; burst duration, $t_5 - t_1$; upper burst reference, U; lower burst reference, L; long-time average power, P. See: **burst**. 257-1964w, [32]



Plot of instantaneous magnitude versus time to illustrate terms used in defining a burst.

### Burst Duration

**burst duty factor (audio and electroacoustics).** The ratio of the average burst duration to the average spacing. *Note:* This is equivalent to the product of the average burst duration and the burst repetition rate. See: **burst**.
257-1964w, [32]

**burst fall-off interval (audio and electroacoustics).** The time interval between the instant at which the upper burst reference is last equaled and the burst trailing edge time. See: **burst**.
257-1964w, [32]

**burst flag (television).** A keying or gating signal used in forming the color burst from a chrominance subcarrier source. See: **television**. [34]

**burst gate (television).** A keying or gating device or signal used to extract the color burst from a color picture signal. See: **television**. [34]

**burst keying signal (television).** See: **burst flag; television.**

**burst leading-edge time (audio and electroacoustics).** The instant at which the instantaneous burst magnitude first equals the lower burst reference. See: **burst (audio and electroacoustics).** 257-1964w, [32]

**burst magnitude, instantaneous.** See: **instantaneous burst magnitude.**

**burst measurements.** See: **energy density spectrum.**

**burst-quiet interval (audio and electroacoustics).** The time interval between successive bursts during which the instantaneous magnitude does not equal the upper burst reference. See: **burst (audio and electroacoustics).**
257-1964w, [32]

**burst repetition rate (audio and electroacoustics).** The average number of bursts per unit of time. See: **burst (audio and electroacoustics).** 257-1964w, [32]

**burst rise interval (audio and electroacoustics).** The time interval between the burst leading-edge time and the instant at which the peak burst magnitude occurs. See: **burst (audio and electroacoustics).** 257-1964w, [32]

**burst safeguard interval (audio and electroacoustics).** A time interval of selected length during which excursions below the lower burst reference are neglected; it is used in determining those instants at which the lower burst references are first and last equaled during a burst. See: **burst (audio and electroacoustics).** 257-1964w, [32]

**burst spacing (audio and electroacoustics).** The time interval between the burst leading-edge times of two consecutive bursts. See: **burst (audio and electroacoustics).** 257-1964w, [32]

**burst trailing-edge time (audio and electroacoustics).** The instant at which the instantaneous burst magnitude last equals the lower burst reference. See: **burst (audio and electroacoustics).** 257-1964w, [32]

**burst train (audio and electroacoustics).** A succession of similar bursts having comparable adjacent burst-quiet intervals. See: **burst (audio and electroacoustics).** 257-1964w, [32]

**bus (1) (power switchgear).** A three-phase junction common to two or more ways.
C37.71-1984

**(2) (signals and paths) (microcomputer system bus).** A signal line or a set of lines used by

an interface system to connect a number of devices and to transfer information. 796-1983

**(3) (signals and paths) (696 interface devices).** A set of signal lines used by an interface system, to which a number of devices are connected, and over which information is transferred between the devices.          696-1983

**(4) (power switchgear).** A conductor, or group of conductors, that serve as a common connection for two or more circuits.          C37.100-1981

**(5) (programmable instrumentation).** A signal line or set of signal lines used by an interface system to which a number of devices are connected and over which messages are carried.          488.1-1987

**(6) (electronic computers).** One or more conductors used for transmitting signals or power from one or more sources to one or more destinations.          162-1963

**(7) (SBX bus).** A signal line or set of signal lines used by an interface system to connect a number of devices and to transfer data.          959-1987

**(8) (STEbus).** A signal line or set of lines used by an interface system to connect a number of devices, and over which information is conveyed.          1000-1987

**(9) (simple 32-bit backplane bus).** A set of signal lines to which a number of devices are connected and over which information is transferred between them.          1196-1987

**(10) (hydroelectric power plants).** A conductor or group of electrical conductors serving as common connections between circuits, generally in the form of insulated cable, rigid rectangular or round bars, or stranded overhead cables held under tension.          1020-1988

**(11) (metropolitan area networks).** The concatenation of the transmission links between nodes and the data path within nodes that provides unidirectional transport of the digital bit stream from the head of bus function past the access unit (AU) of each node to the end of bus. *Note:* This differs from the bidirectional bus as used in ISO/IEC 8802-3:1990 [IEEE Std 802.3-1990] and ISO/IEC 8802-4:1990 [IEEE Std 802.4-1990].          802.6-1990

**bus clock cycle.** An amount of time equal to one bus clock period, nominally 100 ns. 1296-1987

**bus cycle (1) (general system terms) (microcomputer system bus).** The process whereby digital signals effect the transfer of data bytes or words across the interface by means of an interlocked sequence of control signals. Interlocked denotes a fixed sequence of events in which one event must occur before the next event can occur.          796-1983

**(2) (signals and paths) (696 interface devices).** The basic sequence of electrical events required to complete a transfer of data on the bus. A bus cycle contains at least three bus states.          696-1983

**bushing (1) (power switchgear).** An insulating structure including a through conductor, or providing a passageway for such a conductor,

with provision for mounting on a barrier, conducting or otherwise, for the purpose of insulating the conductor from the barrier and conducting current from one side of the barrier to the other.          C37.100-1981

**(2) (power and distribution transformer).** An insulating structure including a central conductor, or providing a central passage for a conductor, with provision for mounting on a barrier, conducting or otherwise, for the purpose of insulating the conductor from the barrier and conducting current from one side of the barrier to the other.          C57.12.80-1978

**(3) (rotating machinery) (electrical).** Insulator to permit passage of a lead through a frame or housing.          [9]

**(4) (relay).** *See:* **relay spring stud.**

**bushing insert (separable insulated connectors).** A connector component intended for insertion into a bushing well.          386-1985

**bushing potential tap (outdoor apparatus bushings).** An insulated connection to one of the conducting layers of a bushing providing a capacitance voltage divider to indicate the voltage applied to the bushing.          21-1976

**bushing, rotor.** *See:* **rotor bushing.**

**bushing tap (partial discharge measurement in liquid-filled power transformers and shunt reactors).** Connection to a capacitor foil in a capacitively graded bushing designed for voltage or power factor measurement that also provides a convenient connecting point for partial discharge measurement. The tap-to-phase capacitance is generally designated as $C_1$ and the tap-to-ground capacitance is designated as $C_2$. *See:* **bushing potential tap; bushing test tap; capacitance (of bushing).**          [125]

**(2).** Connection to a capacitor foil in a capacitively graded bushing designed for voltage or power factor measurement that also provides a convenient connecting point for partial discharge measurement. The tap-to-phase capacitance is generally designated as $C_1$, and the tap-to-ground capacitance is designated as $C_2$. *See:* **bushing potential tap, bushing test tap, capacitance (of bushing)** in IEEE Std 21-1976.          C57.113-1988

**bushing test tap (outdoor apparatus bushings).** An insulated connection to one of the conduction layers of a bushing for the purpose of making insulation power factor tests.          21-1976

**bushing-type current transformer (power and distribution transformer).** One that has an annular core and a secondary winding inslated from and permanently assembled on the core but has no primary winding or insulation for a primary winding. This type of current transformer is for use with a fully insulated conductor as the primary winding. A bushing-type current transformer usually is used in equip-

## CERTIFICATE OF SERVICE

I hereby certify that on November 6, 2007, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to the following:

> John G. Day, Esquire
> Steven J. Balick, Esquire
> ASHBY & GEDDES

Additionally, I hereby certify that true and correct copies of the foregoing were caused to be served on November 6, 2007 upon the following individuals in the manner indicated:

**BY E-MAIL**

John G. Day, Esquire
Steven J. Balick, Esquire
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
Wilmington, DE 19899

**jday@ashby-geddes.com**
**sbalick@ashby-geddes.com**

**BY E-MAIL**

Sten A. Jensen, Esquire
HOGAN & HARTSON LLP
555 Thirteenth Street, NW
Washington, DC 20004

**sajensen@hhlaw.com**

**BY E-MAIL**

Steven J. Routh, Esquire
HOGAN & HARTSON LLP
**sjrouth@hhlaw.com**

William H. Wright, Esquire
HOGAN & HARTSON LLP
**whwright@hhlaw.com**

William C. Gooding, Esquire
GOODING & CRITTENDEN, L.L.P.
**billgooding@gooding-crittenden.com**

*/s/ Mary B. Graham*
_____

Mary B. Graham (#2256)