IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PROMOS TECHNOLOGIES, INC.,       )
                                 )
            Plaintiff,           )
                                 )
    v.                           )        C.A. No. 06-788 (JJF)
                                 )
FREESCALE SEMICONDUCTOR, INC.,   )
                                 )
            Defendant.           )

## <u>NOTICE OF SUBPOENAS</u>

PLEASE TAKE NOTICE THAT, pursuant to Rule 45 of the Federal Rules of
Civil Procedure, defendant Freescale Semiconductor, Inc. is causing or has caused the attached
subpoenas for documents and testimony (Tabs 1-2) to be served on the following:

| Tab | Deponent | Date of Deposition |
|-----|----------|--------------------|
| 1 | Sun Microsystems, Inc. | January 18, 2008 |
| 2. | Alfred K. Chan | January 18, 2008 |

Exhibit A referenced in the Sun Microsystems, Inc. subpoena is the Protective
Order (attached hereto as Exhibit A). Exhibits B and C of the Sun Microsystems, Inc. subpoena
and Exhibits A and B of the Alfred K. Chan subpoena are U.S. Patents Nos. 5,488,709 and
5,732,241 respectively.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ James W. Parrett, Jr. (#4292)*
Mary B. Graham (#2256)
James W. Parrett, Jr. (#4292)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
302.658.9200

*Attorneys for Freescale Semiconductor, Inc.*

OF COUNSEL:

David L. Witcoff
Kevin P. Ferguson
John M. Michalik
JONES DAY
77 West Wacker
Chicago, IL  60601-1692
312.782.3939

F. Drexel Feeling
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH  44114-1190
216.586.3939

Dated:  January 3, 2008
1349576

## CERTIFICATE OF SERVICE

I hereby certify that on January 3, 2008, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to the following:

John G. Day, Esquire
Steven J. Balick, Esquire
ASHBY & GEDDES

Additionally, I hereby certify that true and correct copies of the foregoing were caused to be served on January 3, 2008 on the following individuals in the manner indicated:

**BY E-MAIL AND HAND DELIVERY**

John G. Day, Esquire
Steven J. Balick, Esquire
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
Wilmington, DE 19899

**jday@ashby-geddes.com**
**sbalick@ashby-geddes.com**

**BY E-MAIL AND FEDERAL EXPRESS**

Sten A. Jensen, Esquire
HOGAN & HARTSON LLP
555 Thirteenth Street, NW
Washington, DC 20004

**sajensen@hhlaw.com**

**BY E-MAIL**

Steven J. Routh, Esquire
HOGAN & HARTSON LLP
**sjrouth@hhlaw.com**

William H. Wright, Esquire
HOGAN & HARTSON LLP
**whwright@hhlaw.com**

William C. Gooding, Esquire
GOODING & CRITTENDEN, L.L.P.
**billgooding@gooding-crittenden.com**

*/s/ James W. Parrett, Jr. (#4292)*
_____
James W. Parrett, Jr. (#4292)

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the

# UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

ProMOS Technologies, Inc.

|  |  |
|---|---|
| **Plaintiff** | **SUBPOENA IN A CIVIL CASE** |
| **V.** | Case Number: 06-788-JJF<br>District of Delaware |

Freescale Semiconductor, Inc.
### Defendant.

TO:    Sun Microsystems, Inc.
        M/S MPK 10-146
        10 Network Cir Bldg 10
        Menlo Park, CA 94025

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  |  |
|  | DATE AND TIME |

☑ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case. **Topics identified in the attached Schedule B**

| PLACE OF DEPOSITION<br>JONES DAY<br>1755 Embarcadero Road<br>Palo Alto, CA 94303 | DATE AND TIME<br>January 18, 2008<br>9:00 am |
|---|---|

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): **Documents identified in the attached Schedule A.**

| PLACE<br>JONES DAY<br>1755 Embarcadero Road<br>Palo Alto, CA 94303 | DATE AND TIME<br>January 14, 2008 |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *F. D Feeling*    Attorney for Defendant<br>Freescale Semiconductor, Inc. | Jan. 2, 2008 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
F. Drexel Feeling
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
Ph: 216-586-7199
fax: 216-579-0212

(See Rule 45, Federal Rules of Civil Procedure, Parts (c), (d), and (e), on next page)

AO88  (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED |  |  |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
|  |  |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
|  |  |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                        DATE                              SIGNATURE OF SERVER

                                                          ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Parts (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises—or to producing electronically stored information in the form or forms requested.  If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued.  If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling.  Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B)  If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified condition.

(d) DUTIES IN RESPONDING TO SUBPOENA

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitation of Rule 16(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it.  After being notified, any party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved.  A receiving party may promptly present the information to the court under seal for a determination of the claim.  If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT.  Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued.  An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

**Schedule A to Subpoena directed to Sun Microsystems, Inc.**

**DEFINITIONS**

A.      The term "Sun," as used herein, means Sun Microsystems, Inc., any and all predecessors and successors thereof, any parent entities, subsidiaries, divisions, affiliates, and branches of the foregoing entities, any wholly or partly owned entities of the foregoing, and any entities acting or purporting to act for or on behalf of, or who are subject to the direction or control of, any of the foregoing entities, including agents, employees, officers, directors, attorneys, consultants, contractors, subcontractors and representatives.

B.      The "cache" or "caches" means any memory location used to temporarily store data or instructions for use by a processor.

C.      The relevant time period is prior to April 1991.

**CONFIDENTIAL INFORMATION**

Any confidential documents and things that are responsive to these requests can be produced pursuant to the terms of the Protective Order attached hereto as Exhibit A.

**DOCUMENTS AND THINGS REQUESTED**

1.      Documents reflecting or relating to efforts to research, conceive, reduce to practice, design, develop or commercialize any apparatus or system using a cache that can communicate data with both a processor and system memory.

2.      Documents sufficient to identify any product, apparatus or system that uses a cache that can communicate data with both a processor and system memory.

3.      Documents reflecting or relating to efforts to research, conceive, reduce to practice, design, develop or commercialize any apparatus or system using a cache that can communicate data with a processor on one bus and can communicate data with system memory on another bus.

4.      Documents sufficient to identify any product, apparatus or system that uses a cache that can communicate data with a processor on one bus and can communicate data with system memory on another bus.

5.      Documents reflecting or relating to efforts to research, conceive, reduce to practice, design, develop or commercialize any apparatus or system using a cache where memory accesses between the processor and the cache can be decoupled from memory accesses between the cache and system memory.

6.      Documents sufficient to identify any product, apparatus or system that uses a cache where memory accesses between the processor and the cache can be decoupled from memory accesses between the cache and system memory.

7.      Documents reflecting or relating to efforts to research, conceive, reduce to practice, design, develop or commercialize any apparatus or system using a cache that has a port through which data can be communicated with a processor and a port through which data can be communicated with system memory.

8.      Documents sufficient to identify any product, apparatus or system that uses a cache that has a port through which data can be communicated with a processor and a port through which data can be communicated with system memory.

9.      Documents reflecting or relating to efforts to research, conceive, reduce to practice, design, develop or commercialize any apparatus or system using a cache and a cache controller where each of the cache and cache controller are connected in parallel between a processor and system memory.

10.      Documents sufficient to identify any product, apparatus or system that uses a cache and a cache controller where each of the cache and cache controller are connected in parallel between a processor and system memory.

11.      Documents reflecting or relating to efforts to research, conceive, reduce to practice, design, develop or commercialize any apparatus or system using a cache that uses

registers (such as, for example and not by way of limitation, a write back register) to receive or provide data from or to the processor or system memory.

12.    Documents sufficient to identify any product, apparatus or system that uses a cache that uses registers (such as, for example and not by way of limitation, a write back register) to receive or provide data from or to the processor or system memory.

13.    Documents reflecting or relating to efforts to research, conceive, reduce to practice, design, develop or commercialize any apparatus or system using a cache that uses a register for buffering data received from the processor.

14.    Documents sufficient to identify any product, apparatus or system that uses a cache that uses a register for buffering data received from the processor.

15.    Documents sufficient to identify any product, apparatus or system that disclosed the subject matter of the claims of U.S. Patent No. 5,488,709 (attached as Exhibit B) or U.S. Patent No. 5,732,241 (attached as Exhibit C) prior to April 1991.

16.    Documents sufficient to describe the structure and functionality of

      a.    the IDT 71586,

      b.    the Cypress CY7C184,

      c.    the Vitelic V63C328, or

      d.    the MOSEL MS82308

### Schedule B to Subpoena directed to Sun Microsystems, Inc.

### DEFINITIONS

A.      The term "Sun," as used herein, means Sun Microsystems, Inc., any and all predecessors and successors thereof, any parent entities, subsidiaries, divisions, affiliates, and branches of the foregoing entities, any wholly or partly owned entities of the foregoing, and any entities acting or purporting to act for or on behalf of, or who are subject to the direction or control of, any of the foregoing entities, including agents, employees, officers, directors, attorneys, consultants, contractors, subcontractors and representatives.

B.      The "cache" or "caches" means any memory location used to temporarily store data or instructions for use by a processor.

C.      The relevant time period is prior to April 1991.

### CONFIDENTIAL INFORMATION

Any testimony provided can be made pursuant to the terms of the Protective Order attached hereto as Exhibit A.

### DEPOSITION TOPICS

1.      Efforts to research, conceive, reduce to practice, design, develop or commercialize any apparatus or system using a cache that can communicate data with both a processor and system memory.

2.      Description of any product, apparatus or system that uses a cache that can communicate data with both a processor and system memory.

3.      Efforts to research, conceive, reduce to practice, design, develop or commercialize any apparatus or system using a cache that can communicate data with a processor on one bus and can communicate data with system memory on another bus.

4.      Description of any product, apparatus or system that uses a cache that can communicate data with a processor on one bus and can communicate data with system memory on another bus.

5.      Efforts to research, conceive, reduce to practice, design, develop or commercialize any apparatus or system using a cache where memory accesses between the processor and the cache can be decoupled from memory accesses between the cache and system memory.

6.      Description of any product, apparatus or system that uses a cache where memory accesses between the processor and the cache can be decoupled from memory accesses between the cache and system memory.

7.      Efforts to research, conceive, reduce to practice, design, develop or commercialize any apparatus or system using a cache that has a port through which data can be communicated with a processor and a port through which data can be communicated with system memory.

8.      Description of any product, apparatus or system that uses a cache that has a port through which data can be communicated with a processor and a port through which data can be communicated with system memory.

9.      Efforts to research, conceive, reduce to practice, design, develop or commercialize any apparatus or system using a cache and a cache controller where each of the cache and cache controller are connected in parallel between a processor and system memory.

10.     Description of any product, apparatus or system that uses a cache and a cache controller where each of the cache and cache controller are connected in parallel between a processor and system memory.

11.     Efforts to research, conceive, reduce to practice, design, develop or commercialize any apparatus or system using a cache that uses registers (such as, for example and not by way of limitation, a write back register) to receive or provide data from or to the processor or system memory.

12.     Description of any product, apparatus or system that uses a cache that uses registers (such as, for example and not by way of limitation, a write back register) to receive or provide data from or to the processor or system memory.

13.     Efforts to research, conceive, reduce to practice, design, develop or commercialize any apparatus or system using a cache that uses a register for buffering data received from the processor.

14.     Description of any product, apparatus or system that uses a cache that uses a register for buffering data received from the processor.

15.     Identification of any product, apparatus or system that disclosed the subject matter of the claims of U.S. Patent No. 5,488,709 (attached as Exhibit B) or U.S. Patent No. 5,732,241 (attached as Exhibit C) prior to April 1991.

16.     Description of the structure and functionality of:

a.      the IDT 71586,

b.      the Cypress CY7C184,

c.      the Vitelic V63C328, or

d.      the MOSEL MS82308

**Issued by the**

# UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ProMOS Technologies, Inc.

| | |
|---|---|
| **Plaintiff** | **SUBPOENA IN A CIVIL CASE** |
| | Case Number: 06-788-JJF |
| **V.** | District of Delaware |

Freescale Semiconductor, Inc.
**Defendant.**

TO:     Alfred K. Chan
44216 Bowers Court
Fremont, CA 94539-6335

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☑ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case. **Topics identified in the attached Schedule B**

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| JONES DAY | January 18, 2008 |
| 1755 Embarcadero Road | 9:00 am |
| Palo Alto, CA 94303 | |

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): **Documents identified in the attached Schedule A.**

| PLACE | DATE AND TIME |
|---|---|
| JONES DAY | January 11, 2008 |
| 1755 Embarcadero Road | |
| Palo Alto, CA 94303 | |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *F. D. Feeling*      Attorney for Defendant Freescale Semiconductor, Inc. | Dec 31, 2007 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
F. Drexel Feeling
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
Ph: 216-586-7199
fax: 216-579-0212

(See Rule 45, Federal Rules of Civil Procedure, Parts (c), (d), and (e), on next page)

AO88  (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED |  |  |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                         DATE                                  SIGNATURE OF SERVER

                                                               ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Parts (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
    (1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and reasonable attorney's fee.
    (2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
        (B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises—or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.
    (3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
        (i) fails to allow reasonable time for compliance,
        (ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
        (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
        (iv) subjects a person to undue burden.
        (B) If a subpoena
        (i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
        (ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
        (iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified condition.

(d) DUTIES IN RESPONDING TO SUBPOENA
    (1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand
        (B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
        (C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
        (D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitation of Rule 16(b)(2)(C). The court may specify conditions for the discovery.
    (2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
        (B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, any party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

**Schedule A to Subpoena directed to Alfred K. Chan**

## DEFINITIONS

A.      The term "Intel," as used herein, means Intel Corporation.

B.      The term "Mosel," as used herein, refers to MOS Electronics Corp., MOS Electronics, Inc., or Mosel Electronics.

C.      The term "Vitelic," as used herein, refers to Vitelic Corp. or Vitelic, Inc.

D.      The term "MVC," as used herein, refers to Mosel Vitelic Corp.

E.      The term "MVI," as used herein, refers to Mosel Vitelic Inc.

F.      The term "ProMOS," as used herein, refers to ProMOS Technologies, Inc.

F.      The term "cache" or "caches" means any memory location used to temporarily store data or instructions for use by a processor.

G.      The term "the '709 patent," as used herein, means U.S. Patent No. 5,488,709 (attached as Exhibit A).

H.      The term "the '241 patent," as used herein, means U.S. Patent No. 5,732,241 (attached as Exhibit B).

I.      The term "Related Application," as used herein, means any patent application from which the '709 patent or '241 patent claims priority or for which the '709 or '241 patent provides priority, including but not limited to U.S. Application No. 546,071 (filed Jun. 27, 1990), U.S. Application No. 678,914 (filed Apr. 1, 1991), and/or and foreign patent application or application filed under the Patent Cooperation Treaty ("PCT").

## DOCUMENTS AND THINGS REQUESTED

1.      All papers authored or co-authored by you before April 1991 relating to (in whole or in part) caches or cache controllers.

2.      All documents before April 1991 relating to (in whole or in part) the design, analysis, testing, modeling, evaluation  simulation or commercialization of any aspect of caches or cache controllers, including but not limited to: documents relating to any cache or cache controller products, or any products containing or designed to work with caches or cache controllers, on which you worked, documents on which you relied while working on cache or

cache controller products, prototypes of any cache or cache controller products, and documents of which you were aware prior to April 1991 relating to caches or cache controllers.

3.       All documents relating to the prosecution of the '709 patent or '241 patent or any Related Application, including but not limited to: correspondence with patent attorneys; correspondence with Mosel, Vitelic, MVC, MVI or ProMOS; invention disclosures; inventor notebooks; information disclosures; draft patent applications; or draft amendments and remarks.

4.        All Mosel, Vitelic, or MVC documents relating to caches or cache controllers.

5.       All documents relating to your employment with Intel, Mosel, Vitelic, or MVC.

6.       All employment agreements, termination agreements, contracts, or letters of understanding between you and Intel, Mosel, Vitelic, MVC, MVI, or ProMOS.

7.       All communications and agreements between you and MOSEL, ProMOS or any other person or entity relating to the '709 patent, the '241 patent, Freescale, Motorola or this lawsuit.

8.       All documents relating to efforts by you or any other person or entity to research, conceive, reduce to practice, design, develop or commercialize any product, apparatus or system that uses a cache that can communicate data with a processor on one bus and can communicate data with a system memory on another bus.

9.       All documents relating to efforts by you or any other person or entity to research, conceive, reduce to practice, design, develop or commercialize any product, apparatus or system using a cache where memory accesses between the processor and the cache can be decoupled from memory accesses between the cache and system memory.

10.      Documents relating to caches or cache controllers , or products containing or designed to work with caches or cache controllers, developed by Intel, Mosel, Vitelic, MVC,

Integrated Device Technology, and/or Cypress Semiconductor in the 1986 to 1991 timeframe for

use with microprocessors and/or cache controller devices, including but not limited to:

        a.      the IDT 71586,
        b.      the Cypress CY7C184,
        c.      the Vitelic V63C328 and/or V63C308,
        d.      the MOSEL MS82308
        e.      the MOSEL MS82C331, MS82C441, MS82C333, and/or MS82C443.

**Schedule B to Subpoena directed to Alfred K. Chan**

## DEFINITIONS

A.    The term "Intel," as used herein, means Intel Corporation.

B.    The term "Mosel," as used herein, refers to MOS Electronics Corp., MOS Electronics, Inc., or Mosel Electronics.

C.    The term "Vitelic," as used herein, refers to Vitelic Corp. or Vitelic, Inc.

D.    The term "MVC," as used herein, refers to Mosel Vitelic Corp.

E.    The term "MVI," as used herein, refers to Mosel Vitelic Inc.

F.    The term "ProMOS," as used herein, refers to ProMOS Technologies, Inc.

F.    The term "cache" or "caches" means any memory location used to temporarily store data or instructions for use by a processor.

G.    The term "the '709 patent," as used herein, means U.S. Patent No. 5,488,709 (attached as Exhibit A).

H.    The term "the '241 patent," as used herein, means U.S. Patent No. 5,732,241 (attached as Exhibit B).

I.    The term "Related Application," as used herein, means any patent application from which the '709 patent or '241 patent claims priority or for which the '709 or '241 patent provides priority, including but not limited to U.S. Application No. 546,071 (filed Jun. 27, 1990), U.S. Application No. 678,914 (filed Apr. 1, 1991), and/or and foreign patent application or application filed under the Patent Cooperation Treaty ("PCT").

## DEPOSITION TOPICS

1.    Papers authored or co-authored by you before April 1991 relating to (in whole or

in part) caches or cache controllers.

2.    The design, analysis, testing, modeling, evaluation, simulation or

commercialization of any aspect of caches or cache controllers before April 1991, including but

not limited to any caches or cache controllers, or products containing or designed to work with

caches or cache controllers, on which you worked, and any documents of which you were aware

prior to April 1991 relating to caches or cache controllers.

3.      The prosecution of the '709 patent or '241 patent or any Related Application, including but not limited to:  correspondence with patent attorneys, correspondence with Mosel, Vitelic, MVC, MVI or ProMOS, invention disclosures, inventor notebooks, information disclosures, draft patent applications, or draft amendments and remarks.

4.      All Mosel, Vitelic, or MVC caches or cache controllers.

5.      Your employment with Intel, Mosel, Vitelic, or MVC.

6.      All employment agreements, termination agreements, contracts, or letters of understanding between you and Intel, Mosel, Vitelic, MVC, MVI, or ProMOS.

7.      All communications and agreements between you and MOSEL, ProMOS or any other person or entity relating to the '709 patent, the '241 patent, Freescale, Motorola or this lawsuit.

8.      Efforts by you or any other person or entity to research, conceive, reduce to practice, design, develop or commercialize any product, apparatus or system that uses a cache that can communicate data with a processor on one bus and can communicate data with a system memory on another bus.

9.      Efforts by you or any other person or entity to research, conceive, reduce to practice, design, develop or commercialize any product, apparatus or system using a cache where memory accesses between the processor and the cache can be decoupled from memory accesses between the cache and system memory.

10.     Caches or cache controllers, or products containing or designed to work with caches or cache controllers, developed by Intel, Mosel, Vitelic, MVC, Integrated Device Technology, and/or Cypress Semiconductor in the 1986 to 1991 timeframe for use with microprocessors and/or cache controller devices, including but not limited to:

a.    the IDT 71586,
b.    the Cypress CY7C184,
c.    the Vitelic V63C328 and/or V63C308,
d.    the MOSEL MS82308
e.    the MOSEL MS82C331, MS82C441, MS82C333, and/or MS82C443.

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PROMOS TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-788 (JJF) |
| | ) | |
| FREESCALE SEMICONDUCTOR, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## STIPULATED PROTECTIVE ORDER

To expedite the flow of discovery materials, to facilitate the prompt resolution of disputes over confidentiality of discovery materials, to adequately protect information the parties are entitled to keep confidential, to ensure that only materials the parties are entitled to keep confidential are subject to such treatment, and to ensure that the parties are permitted reasonably necessary uses of such materials in preparation for and in the conduct of trial, pursuant to Fed. R. Civ. P. 26(c), it is hereby **ORDERED THAT:**

## CONFIDENTIAL INFORMATION SUBJECT TO THIS ORDER

1.      For purposes of this Order, "PROTECTED INFORMATION" is any information designated, in proper accordance with this Order, as CONFIDENTIAL INFORMATION and/or CONFIDENTIAL INFORMATION – OUTSIDE ATTORNEYS' EYES ONLY.   Any PROTECTED INFORMATION obtained by any party from any person pursuant to discovery in this litigation may be used only for purposes of preparation and litigation in this matter.

2.      "CONFIDENTIAL INFORMATION" shall mean all information or material, and any copies thereof, that is produced for or disclosed to a receiving party, that a producing party, including any party to this action and any non-party producing information or material

voluntarily or pursuant to a subpoena or a court order, considers to constitute or to contain trade secrets or other confidential research, development, technical, financial, or commercial information, whether embodied in physical objects, documents, or the factual knowledge of persons; and that has been so designated by the producing party.   PROTECTED INFORMATION designated CONFIDENTIAL INFORMATION and information contained therein shall be available only to counsel for the parties, technical advisers who are assisting them, data processing vendors, graphics and trial consultants, court reporters, and court personnel, under the terms outlined for those groups of persons under Paragraphs 12-19 below. Moreover, any party witness or third-party witness may be shown at a deposition, or examined on, any document containing material designated "CONFIDENTIAL" if it appears from the face of the document that the witness authored or previously received a copy of it, or if specific documentary or testimonial evidence of that witness or others indicates that the document was communicated to or from the witness, or if the producing party so agrees.

3.    "CONFIDENTIAL    INFORMATION"    may    be    additionally    designated "OUTSIDE ATTORNEYS' EYES ONLY."   The OUTSIDE ATTORNEYS' EYES ONLY designation is reserved for CONFIDENTIAL INFORMATION that constitutes proprietary financial, sales, or technical data or commercially sensitive competitive information, such as patent licenses or documents relating to patent licenses, including CONFIDENTIAL INFORMATION obtained from a non-party pursuant to a current Nondisclosure Agreement ("NDA"), strategic plans, source code listing (and descriptions of their operation), object code listings (and descriptions of their operation), integrated circuit diagrams and settlement agreements or settlement communications, the disclosure of which is likely to cause harm to the competitive position of the producing party.   PROTECTED INFORMATION designated

CONFIDENTIAL INFORMATION – OUTSIDE ATTORNEYS' EYES ONLY and information contained therein shall be available only to outside counsel of record for the parties ("Outside Counsel of Record"), technical advisers who are assisting them, data processing vendors, graphics and trial consultants, court reporters, and court personnel, under the terms outlined for these groups of persons under Paragraphs 12-19 below.  Moreover, any party witness or third-party witness may be shown at a deposition, or examined on, any document containing material designated "CONFIDENTIAL INFORMATION – OUTSIDE ATTORNEYS' EYES ONLY" if it appears from the face of the document that the witness authored or previously received a copy of it, or if specific documentary or testimonial evidence of that witness or others indicates that the document was communicated to or from the witness, or if the producing party so agrees.

      4.      If a party is required to produce source, object, machine, or other such computer code ("Code"), it must do so in electronically searchable form and under the terms of this paragraph.  When such Code is exchanged, it will be handled in accordance with the "CONFIDENTIAL INFORMATION – OUTSIDE ATTORNEYS' EYES ONLY" designation, except that no electronic copies of the Code will be permitted.  The producing party shall produce Code by copying it in an electronically-searchable format to a stand-alone, non-networked (with all wireless functionality disabled or removed) laptop or desktop that contains appropriate software for reviewing the Code.  The laptop/desktop containing the Code will then be maintained by the producing party's Outside Counsel of Record, who will maintain the laptop/desktop at its offices.  If the requesting party wants to use specific software to view the Code, it must provide the producing party's Outside Counsel of Record with such software and certify that it has obtained all necessary licenses for such use.  If the requesting party is not willing to provide both the software and certification of license, then the producing party is not

obligated to provide any software identified by the requesting party. The producing party's Outside Counsel of Record will provide access to the Code upon written request of the requesting party, but in no case later than by the fifth business day following receipt of the written request, unless agreed by both parties. Access will be provided during normal business hours (9:00 a.m. to 5:00 p.m.), unless the parties set different hours. While the Code is maintained in the laptop/desktop, it will be handled in accordance with the "CONFIDENTIAL INFORMATION – OUTSIDE ATTORNEYS' EYES ONLY" designation, except that no electronic copies of the Code will be permitted. If the requesting party wishes to make a copy of certain limited portions of Code, such as routines or sub-routines, only one paper copy of those limited portions will be allowed on watermarked paper. The requesting party must maintain said paper copy under lock and key and must provide the producing party with advance notice of where the paper copy will be maintained. The requesting party will not be allowed to make or remove any wholesale copies of the Code from the laptop/desktop. No party shall disclose, carry, send, or transmit, or allow to be disclosed, carried, sent, or transmitted, in any manner, via electronic means or otherwise, any Code, including any summary, compilation, or copy of any portion thereof, outside the boundaries of the United States of America; provided, however, if a requesting party believes compelling circumstances have arisen requiring that party's Outside Counsel of Record to hand-carry out of the United States, or to access on a secure web site from outside of the United States, the producing party's Code, the requesting party will notify the producing party at least three (3) business days in advance and the producing party will consider reasonable protective measures that the Court can enforce to allow the requesting party's Outside Counsel of Record to so hand-carry or access the producing party's Code under the

circumstances presented.  If the parties cannot agree on such reasonable protective measures, the requesting party shall seek relief from the Court.

5.    The following information is not PROTECTED INFORMATION:

a.    any information that at the time of disclosure to a receiving party is in the public domain;

b.    any information that, after its disclosure to a receiving party, becomes part of the public domain as a result of publication not involving a violation of this Order;

c.    any information that the receiving party can show by dated written records was already known to it prior to the disclosure;

d.    any information that the receiving party can show by dated written records was received by it after the disclosure from a source who obtained the information lawfully and under no obligation of confidentiality to the producing party; and

e.    any information which the receiving party can show by dated written records was independently developed by it after the time of disclosure by personnel who have not had access to the producing party's PROTECTED INFORMATION.

## DESIGNATION OF PROTECTED INFORMATION

6.    Any document or tangible thing containing or including any PROTECTED INFORMATION may be designated as such by the producing party by marking it as CONFIDENTIAL INFORMATION and/or CONFIDENTIAL INFORMATION – OUTSIDE ATTORNEYS' EYES ONLY prior to or at the time copies are furnished to the receiving party.

7.    Any deposition transcript containing or including any PROTECTED INFORMATION may be designated as such by any party either by stating on the record during the deposition that the transcript should be marked as CONFIDENTIAL INFORMATION and/or CONFIDENTIAL INFORMATION – OUTSIDE ATTORNEYS' EYES ONLY or by making such a designation within fourteen (14) calendar days after the designating party first receives a formal copy of the transcript from the deposition service.  If no designation is made on the record of a deposition, the original and all copies of any deposition transcript shall be treated as CONFIDENTIAL INFORMATION – OUTSIDE ATTORNEYS' EYES ONLY for a period of fourteen (14) calendar days after the party defending the deposition first receives a formal copy of the same transcript from the deposition service.  To maintain confidentiality thereafter, any party may designate a deposition transcript or a portion thereof with the appropriate PROTECTED INFORMATION designation before or during the fourteen (14) day time period, and any portions so designated shall thereafter be treated in accordance with the terms of this Order.

8.    All PROTECTED INFORMATION not reduced to documentary, tangible, or physical form, or that cannot be conveniently designated as set forth in Paragraphs 5-7, shall be designated by the producing party by informing the receiving party of the designation in writing.

9.    Any documents (including physical objects) made available for initial inspection by counsel for the receiving party prior to producing copies of selected items shall initially be considered, as a whole, to constitute CONFIDENTIAL INFORMATION – OUTSIDE ATTORNEYS' EYES ONLY and shall be subject to this Order.  Thereafter, the producing party shall have a reasonable time to review and designate the appropriate documents with the

appropriate PROTECTED INFORMATION designation prior to furnishing copies to the receiving party.

## NO WAIVER OF PRIVILEGE

10.     Inspection or production of documents (including physical objects) shall not constitute a waiver of the attorney-client privilege or work product immunity or any other applicable privilege if, as soon as reasonably possible after the producing party becomes aware of any inadvertent or unintentional disclosure, the producing party designates any such documents as within the attorney-client privilege or work product immunity or any other applicable privilege and requests return of those documents to the producing party.  Upon request by the producing party, the receiving party immediately shall return all copies of inadvertently produced documents.  In no case will the return of requested documents be delayed or refused by reason of a party's objection to said designation or by the filing of a motion to compel, nor may such motion assert as a ground for production the fact of the inadvertent production.  Nothing herein shall prevent the receiving party from challenging the propriety of the attorney-client privilege or work product immunity or other applicable privilege designation by seeking relief from the Court, after returning all copies of the inadvertently-produced documents.

## DISCOVERY RULES REMAIN UNCHANGED

11.     Nothing herein shall alter or change in any way the discovery provisions of the Federal Rules of Civil Procedure.  Identification of any individual pursuant to this Protective Order does not make that individual available for deposition or any other form of discovery outside the restrictions and procedures of the Federal Rules of Civil Procedure, the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware, and the Court's Rule 16 Scheduling Order.

## PERSONS AUTHORIZED TO RECEIVE PROTECTED INFORMATION

12.    PROTECTED INFORMATION may be disclosed to Outside Counsel of Record, Designated In-House Counsel, Technical Advisers, Data Processing Vendors, and Graphics/Trial Consultants, as defined and subject to the conditions below.  Nothing, however, shall prevent Outside Counsel of Record from giving legal advice to their clients based on PROTECTED INFORMATION that is designated as such pursuant to this Order, provided that the substance of such PROTECTED INFORMATION is not disclosed to their clients.

13.    PROTECTED INFORMATION may be disclosed to the Court and members of the staff of the Court whose functions necessitate access to said PROTECTED INFORMATION.

### Counsel

14.    Counsel for a receiving party shall have access to the producing party's PROTECTED INFORMATION, subject to any CONFIDENTIAL INFORMATION – OUTSIDE ATTORNEYS' EYES ONLY designations.  The term "counsel" for CONFIDENTIAL INFORMATION shall mean law firms of record for the parties, including both outside and 2 designated in-house counsel, and including supporting clerical personnel employed by the attorneys, such as paralegals, legal translators, legal secretaries, legal clerks, and shorthand reporters.  Each designated in-house counsel shall be identified in Exhibit B and each such person will complete and sign a copy of the Confidentiality Agreement that is attached hereto as Exhibit A, and each such completed form shall be transmitted to counsel for the other parties prior to the disclosure of any PROTECTED INFORMATION to designated in-house counsel.  Prior to entry of this Protective Order, the parties will exchange, in the form of Exhibit B hereto, and agree upon the names of two individuals from each side who shall be considered as "in-house counsel" for purposes of this Protective Order.  For PROTECTED INFORMATION designated CONFIDENTIAL INFORMATION – OUTSIDE ATTORNEYS' EYES ONLY, the

term "OUTSIDE ATTORNEY" shall exclude in-house counsel and in-house personnel, and mean only Outside Counsel of Record in this matter and supporting clerical personnel employed by the attorneys of Outside Counsel of Record, such as paralegals, legal translators, legal secretaries, legal clerks, and shorthand reporters.

### Technical Advisers

15.     PROTECTED INFORMATION of a producing party may be furnished and disclosed to technical advisers, subject to the requirements of Paragraphs 1-4 and Paragraph 14. The term "technical adviser" means any person (and supporting personnel) including but not limited to a proposed expert witness, consulting expert, or other consultant with whom counsel may deem it necessary to consult concerning technical, financial, or other aspects of this case for the preparation or trial thereof.  Notwithstanding any other provision in this Order, a receiving party shall not disclose PROTECTED INFORMATION to a technical adviser, even if that person is entitled to receive PROTECTED INFORMATION under another provision of this Order, until the receiving party has complied with the requirements of Paragraph 16.

16.     Should a receiving party find it necessary for maintaining, defending, or evaluating this litigation to disclose a producing party's PROTECTED INFORMATION to a technical adviser, the receiving party shall first give written notice to the producing party.  The party desiring to disclose the producing party's PROTECTED INFORMATION to a technical adviser shall provide the curriculum vitae of the technical adviser and shall include the following information about the technical adviser in the written notice:

    a.  business address;

    b.  business title;

    c.  business or profession;

      d.      any previous or current relationship (personal or professional) with any of

              the parties; and

      e.      a list of other cases in which the technical adviser has testified (at trial or

              deposition), and all companies with which the technical adviser has

              consulted or by which the technical adviser has been employed, within the

              last four years.

A party who receives a completed Exhibit A form from a technical adviser shall have seven (7) business days after such notice is received to object in writing. No PROTECTED INFORMATION of the producing party shall be disclosed to the technical adviser until after expiration of the foregoing notice period. If, however, during the notice period a party serves written objections upon the party desiring to disclose PROTECTED INFORMATION to the technical adviser, there shall be no disclosure of PROTECTED INFORMATION to the technical adviser pending resolution of the objections. The party objecting to disclosure of PROTECTED INFORMATION to the technical adviser shall explain the basis of its objections in writing. Consent to the disclosure of PROTECTED INFORMATION to the technical adviser shall not be unreasonably withheld. If a party objects to the disclosure of PROTECTED INFORMATION to a technical adviser, the proposing party shall have five (5) business days to respond to the objections. The objecting party shall then have five (5) business days after the proposing party's responses are served to seek relief from the Court and seek disqualification of the technical adviser or other appropriate relief, if the parties cannot come to an agreement. If the objecting party fails to object to the proposed technical adviser within the initial seven (7) business day period, then any objection to the technical adviser is waived, and the PROTECTED INFORMATION may thereafter be disclosed to the technical adviser. No document designated

by a producing party as PROTECTED INFORMATION shall be disclosed by a receiving party to a technical adviser until after the technical adviser has signed the Confidentiality Agreement appended hereto as Exhibit A stating that he or she has read and understands this Order and agrees to be bound by its terms.

17.    No party will seek discovery from a non-testifying technical adviser disclosed under this Protective Order simply because they have been disclosed under the Protective Order or without good cause by the party seeking the discovery.

**Data Processing Vendors, Copy Vendors, and Graphics/Trial Consultants**

18.    PROTECTED INFORMATION of a producing party may be furnished and disclosed, subject to the provisions of Paragraphs 1-4 and 14, to data processing vendors; copy vendors and/or graphics or design services retained by counsel for purposes of preparing demonstrative or other exhibits for deposition, trial, or other court proceedings in this action; and/or non-technical jury or trial consulting services, including mock jurors, retained by counsel. The term "data processing vendor" means any person (and supporting personnel) who is a member or staff of an outside data entry or data processing entity, copying service entity, and/or graphics or design service entity employed or retained by a receiving party or its counsel.

19.    Should counsel for a receiving party find it necessary for maintaining, defending, or evaluating this litigation to disclose a producing party's PROTECTED INFORMATION to any of the persons or services described in Paragraph 18, counsel for the receiving party shall first obtain from that person or a person on behalf of that service a Confidentiality Agreement, in the form attached hereto as Exhibit A, stating that the person has read and understands this Order and agrees to be bound by its terms.  Such written agreement shall be retained by counsel for the receiving party, but need not be disclosed to the producing party.

## CHALLENGES TO PROTECTED INFORMATION DESIGNATIONS

20.    The parties will use reasonable care when designating documents or information as PROTECTED INFORMATION.  Nothing in this Order shall prevent a receiving party from contending that any or all documents or information designated as PROTECTED INFORMATION have been improperly designated.  A receiving party may at any time request that the producing party cancel or modify the PROTECTED INFORMATION designation with respect to any document or information contained therein.

21.    A party shall not be obligated to challenge the propriety of a PROTECTED INFORMATION designation at the time made, and a failure to do so shall not preclude a subsequent challenge thereto.  Such a challenge shall be written, shall be served on counsel for the producing party, and shall particularly identify the documents or information that the receiving party contends should be differently designated.  The parties shall use their best efforts to resolve disputes promptly and informally.

22.    If an agreement under Paragraphs 20-21 cannot be reached, the receiving party shall request that the Court cancel or modify a PROTECTED INFORMATION designation.  The producing party bears the burden to demonstrate that the document(s) at issue is properly designated.

23.    The receiving parties will treat all information as it is designated by the producing party until the parties reach an agreement under Paragraphs 20-21 or until the Court cancels or modifies the designation.

## LIMITATIONS ON THE USE OF PROTECTED INFORMATION

24.    PROTECTED INFORMATION shall be held in confidence by each person to whom it is disclosed, shall be used only for the purpose of conducting this litigation, and shall not be disclosed to any person who is not entitled to receive such information as herein provided.

All produced PROTECTED INFORMATION shall be carefully maintained so as to preclude access by persons who are not entitled to receive such information. No PROTECTED INFORMATION designated as "OUTSIDE ATTORNEYS' EYES ONLY", including any summary, compilation, or copy of any portion thereof, shall be, or shall be allowed to be, disclosed, carried, sent, or transmitted in any manner, via electronic means or otherwise, outside the boundaries of the United States of America; provided, however, if a requesting party believes compelling circumstances have arisen requiring that party's Outside Counsel of Record to hand-carry out of the United States, or to access on a secure web site from outside of the United States, the producing party's PROTECTED INFORMATION designated as "OUTSIDE ATTORNEYS' EYES ONLY", the requesting party will notify the producing party at least three (3) business days in advance and the producing party will consider reasonable protective measures that the Court can enforce to allow the requesting party's Outside Counsel of Record to so hand-carry or access the producing party's PROTECTED INFORMATION under the circumstances presented. If the parties cannot agree on such reasonable protective measures, the requesting party shall seek relief from the Court.

25.    All transcripts of depositions, exhibits, answers to interrogatories, pleadings, briefs, and other documents submitted to the Court that have been designated with the appropriate PROTECTED INFORMATION designation or that contain information so designated, shall be filed in accordance with the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware and the Court's guidelines for electronic filing of documents under seal, or if otherwise submitted to the Court, in a sealed envelope or other appropriate sealed container that is labeled with the title of this matter, an indication of the nature of its contents, the words "CONFIDENTIAL PROTECTED

INFORMATION – UNDER PROTECTIVE ORDER," and a statement substantially in the following form:

> This envelope contains confidential PROTECTED INFORMATION filed in this case by (name of party) and is not to be opened nor the contents thereof be displayed or revealed except by order of the Court presiding over this matter.

26. Nothing in this Order shall prohibit the transmission or communication of PROTECTED INFORMATION between or among qualified recipients of that information

    a.    by hand-delivery;

    b.    in sealed envelopes or containers via mail or an established freight, delivery, or messenger service; or

    c.    by telephone, telegraph, facsimile, or other electronic transmission system where, under the circumstances, there is no reasonable likelihood that the transmission will be intercepted or misused by any person who is not a qualified recipient,

except that any transmission or communication of Code as defined in Paragraph 4 shall be governed strictly by the provisions provided for therein.

27. PROTECTED INFORMATION shall not be copied or otherwise reproduced by a receiving party, except for transmission to qualified recipients, without the written permission of the producing party, or, in the alternative, by further order of the Court. Nothing herein shall, however, restrict a qualified recipient from making working copies, abstracts, digests, and analyses of PROTECTED INFORMATION for use in connection with this litigation and such working copies, abstracts, digests, and analyses shall be deemed PROTECTED INFORMATION under the terms of this Order. Any abstract, digest, summary, or analysis that incorporates information designated PROTECTED INFORMATION shall bear the same designation as the

original source material.  Nor shall this Order restrict any qualified recipient from drafting or generating any correspondence referencing PROTECTED INFORMATION to any other qualified recipient for transmission pursuant to the restrictions in Paragraph 26, provided such correspondence bears the same PROTECTED INFORMATION designation as the original source material and provided such correspondence is thereafter treated in accordance with the terms of this Order.

28.    Nothing herein shall restrict a qualified recipient from converting or translating PROTECTED INFORMATION, with the exception of Code as that term is defined in Paragraph 4, above, into machine readable form for incorporation into a data retrieval system used in connection with this action, provided that access to PROTECTED INFORMATION, in whatever form stored or reproduced, shall be limited to qualified recipients.

## TREATMENT OF MATERIALS FROM OTHER LITIGATION

29.    Discovery materials produced in other litigation, which were designated as having some form of confidentiality under protective orders in the other litigation, shall unless otherwise agreed be deemed PROTECTED INFORMATION and shall be governed by the Protective Order if produced in this litigation; provided, however, that anyone who had access to a document or information under the other protective order shall continue to have such access notwithstanding anything appearing to the contrary herein.

## CROSS-USE OF MATERIALS FROM CONCURRENT LITIGATION BETWEEN THE PARTIES

30.    All materials (including but not limited to discovery materials, deposition and trial testimony, pleadings, and Orders) produced or created in this action shall be deemed produced or created in the other action co-pending between the parties (*i.e.*, Case No. 4:06-cv-491 RAS (E.D.

Tex.)) and the use of such materials in the other action shall be subject to the limitations and restrictions present in the Protective Order in that action.

## NON-PARTY USE OF THIS PROTECTIVE ORDER

31.    A non-party producing information or material voluntarily or pursuant to a subpoena or a court order may designate material or information with the appropriate PROTECTED INFORMATION designation pursuant to the terms of this Protective Order.

32.    A non-party's use of this Protective Order to protect its PROTECTED INFORMATION does not entitle that non-party to access PROTECTED INFORMATION produced by any party or other non-party in this case.

## MISCELLANEOUS PROVISIONS

33.    All PROTECTED INFORMATION is subject to a Prosecution Bar.  Any person who receives any PROTECTED INFORMATION shall not prosecute or prepare any patent application on behalf of any party to this action relating to the disclosed technology from the time of receipt of such information through and including two (2) years following the entry of a final non-appealable judgment or order or the complete settlement of all claims against all parties in this action.  In addition, any person subject to the "Prosecution Bar" of this Paragraph shall not have any substantive involvement in the prosecution of any such application filed, or claiming priority from any such application filed, prior to two (2) years following the entry of a final non-appealable judgment or order or the complete settlement of all claims against all parties in this action.  The Court and any Court personnel are expressly excluded and not subject to the "Prosecution Bar" of this Paragraph.

34.    Any notice requirement herein may be waived, in whole or in part, but only by a writing signed by an attorney of record for the party against whom such waiver will be effective.

35.     Nothing in this Order shall restrict a party or non-party from using its own PROTECTED INFORMATION in any manner.

36.     Within sixty (60) calendar days after the entry of a final non-appealable judgment or order, or the complete settlement of all claims asserted between the parties in this action, each of the parties shall, at its option, either return to the producing party or destroy all physical objects and documents which embody PROTECTED INFORMATION, and shall return or destroy in whatever form stored or reproduced, all other physical objects and documents, including but not limited to, correspondence and memoranda, which contain or refer to PROTECTED INFORMATION; provided, that all PROTECTED INFORMATION, not embodied in physical objects and documents, shall remain subject to this Order. Notwithstanding the foregoing,  each party's Outside Counsel of Record may retain archival copies of all attorney work product, correspondence, expert reports, deposition and trial transcripts and exhibits, papers filed with the Court (including exhibits), and discovery responses (but not document production) exchanged by the parties.  Any PROTECTED INFORMATION included in the archival copy shall remain subject to the provisions of this Order.

37.     This Order is entered without prejudice to the right of any party to apply to the Court at any time for additional protection or to relax or rescind the restrictions of this Order when convenience or necessity requires.

38.     The United States District Court for the District of Delaware is responsible for the interpretation and enforcement of this Protective Order.  All disputes concerning PROTECTED INFORMATION produced under the protection of this Protective Order shall be resolved by the United States District Court for the District of Delaware.  The Court retains jurisdiction even

after the termination of this action to enforce this Order and to amend this Order as the Court

deems appropriate.


ASHBY & GEDDES                                    MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ John G. Day*                                 */s/ James W. Parrett, Jr.*

_____        _____
Steven J. Balick (#2114)                          Mary B. Graham (#2256)
John G. Day (#2403)                               James W. Parrett, Jr. (#4292)
500 Delaware Avenue, 8th Floor                    1201 N. Market Street
P.O. Box 1150                                     P.O. Box 1347
Wilmington, DE  19899                             Wilmington, DE  19899-1347
302.654.1888                                      302.658.9200

*Attorneys for ProMOS Technologies, Inc.*         *Attorneys for Freescale Semiconductor, Inc.*

Dated: July 25, 2007


                              Entered on this the _____ day of _____, 2007.


                              _____
                              United States District Judge


981774

- 18 -

## EXHIBIT A

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PROMOS TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-788 (JJF) |
| | ) | |
| FREESCALE SEMICONDUCTOR, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### <u>CONFIDENTIALITY AGREEMENT</u>

I, _____, declare under penalty of perjury that:

1.    I reside at _____;

2.    My present employer is _____;

3.    My present business address is _____;

4.    My present occupation or job description is _____;

5.    I have been engaged as a _____

on behalf of _____ in the preparation and conduct of the above-

captioned litigation.

6.    I am fully familiar with and agree to comply with and be bound by the provisions

of the Stipulated Protective Order (the "Order") dated _____, 200__ (and whose

definitions are incorporated herein), and I attest to my understanding that access to information

designated as PROTECTED INFORMATION may be provided to me and that such access shall

be pursuant to the terms and conditions and restrictions of the Order.  I understand and

acknowledge that failure to comply with the Order could expose me to sanctions and punishment in the nature of contempt.

7.     I understand that I am to retain all copies of any PROTECTED INFORMATION in a secure manner, and that all copies are to remain in my personal custody until this action is terminated or until I have completed my assigned duties, whichever occurs earlier, whereupon the copies and any writings prepared by me containing any Confidential Information are to be returned to counsel who provided me with such material.

8.     I will not divulge to persons other than those specifically authorized by said Order, and will not copy or use except solely for the purpose of this action, any PROTECTED INFORMATION obtained pursuant to said Order, except as provided in said Order.  I also agree to notify any stenographic or clerical personnel who are required to assist me of the terms of said Order.

9.     I further agree to submit to the jurisdiction of the United States District Court for the District of Delaware for the purpose of enforcing the terms of the Order, even if such enforcement proceedings occur after this action is terminated.

10.     I state under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on _____, 200__.


Signature: _____

981774

**EXHIBIT B**

**Designated In-House Counsel**

**For Freescale**

1.    Name: _____          Title: _____

2.    Name: _____          Title: _____

**For ProMOS**

1.    Name: _____          Title: _____

2.    Name: _____          Title: _____

981774