# Morris, Nichols, Arsht & Tunnell llp

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347

302 658 9200
302 658 3989 Fax

Mary B. Graham
302.351.9199
mgraham@mnat.com

January 8, 2008

**VIA ELECTRONIC FILING**

The Honorable Joseph J. Farnan, Jr.
United States District Court
Federal Building
844 King Street
Wilmington, DE 19801

> Re:  *ProMOS Technologies, Inc. v. Freescale Semiconductor, Inc.*
> C.A. No. 06-788 (JJF)

Dear Judge Farnan:

I write on behalf of Freescale to address the status of discovery and the need for an extension of fact discovery currently set to end January 21, 2008. We seek an extension of roughly five weeks until February 29, 2008 to enable the parties to complete depositions and document discovery (and, correspondingly, we seek a protective order in connection with ProMOS's three recent Rule 30(b)(6) deposition notices – its third, fourth and fifth notices, Tabs 1-3). This extension would not prejudice ProMOS as trial is not scheduled to begin until June 30, 2008.

<u>Remaining Fact Discovery</u>

There is no reasonable way, prior to the current fact discovery deadline, for Freescale to respond to and complete the broad discovery that ProMOS seeks. ProMOS's three most recent 30(b)(6) Notices, served just prior to and just after the holidays, cover 67 separate topics. Because of a nearly two-week shutdown of its facilities during the holidays, Freescale is still investigating the witnesses who will testify, but at this time, Freescale has already internally identified at least 10 individuals and expects that number to grow. The parties have been communicating to try to schedule some of these depositions, but it is apparent that it will be impossible to schedule them all before January 21, 2008.

By way of context and example of the enormity of the task facing Freescale, incorporated as part of one of ProMOS's recent notices is a list of approximately 160 different

The Honorable Joseph J. Farnan, Jr.
January 8, 2008
Page 2


Freescale products (see Tab 1). ProMOS seeks testimony regarding, *inter alia*, "[t]he features, functionality, uses and operation" and the "[r]esearch, development, testing and manufacturing" of each of those products. Those products were designed at Freescale facilities throughout the United States and the world by numerous different teams over a span of approximately 15 years.

Regarding Freescale's understanding of the scope of discovery now sought, on November 30, ProMOS took the deposition of Mike Snyder, a 30(b)(6) designee of Freescale on documentation topics. After that deposition, and after the discovery discussion following the Markman hearing on December 13, the breadth of the detailed technical information that ProMOS seeks regarding each of Freescale's products became clear. With that level of technical detail sought by ProMOS now crystallized, Freescale is proceeding to try to locate and produce witnesses who can answer questions regarding each aspect of the approximately 160 different products.

Furthermore, in the last month, the parties have communicated about additional documents sought by ProMOS that ProMOS believes will provide the additional technical details it seeks. While Freescale disputes this contention, it nonetheless is agreeing to produce additional documents in response to ProMOS's more detailed requests. The requested extension of the discovery deadline will allow Freescale the time needed to gather and produce the documentation sought by ProMOS, in advance of the depositions on technical subject matter that ProMOS just recently noticed.

Finally, Freescale itself may need additional discovery after January 21, 2008. On October 25, 2007, Freescale noticed a foundational Rule 30(b)(6) deposition of ProMOS relating to the Fortin patent. This is a basic notice which Freescale has wanted in part to determine what other depositions it might need in the case relating to the Fortin patent. However, ProMOS has delayed producing a witness until January 16 and so Freescale may need, as a result of that deposition, to take some additional depositions or otherwise follow up on the witness's testimony. Moreover, ProMOS has still provided only some preliminary infringement contentions for the Fortin patent, and even less than that for the two Chan patents, and so Freescale may need to take some additional discovery once it finally receives infringement contentions from ProMOS. Also, Freescale has issued a number of subpoenas to third-parties and is still awaiting receipt of documents from those parties. Freescale may need to take depositions of these parties regarding documents, when they are finally produced.

<u>THE SCOPE OF PROMOS'S DISCOVERY</u>

Initially, ProMOS sought discovery so broadly that it encompassed nearly all of the documents in Freescale's possession. The parties communicated and cooperated to narrow the requests such that Freescale would produce only "critical technical" documents, so that ProMOS could determine what additional documentation it might need and possibly narrow the number of accused products. Additionally, Freescale asked that ProMOS identify representative products to reduce the burden on ProMOS to review documents and streamline the discovery process. The parties were unable to reach an agreement on representative products.

The Honorable Joseph J. Farnan, Jr.
January 8, 2008
Page 3

Freescale initially limited its inquiries and collection efforts to documents and information related to caches, cache controllers and associated hardware. Specifically, Freescale provided product level reference manuals that described caches, cache controllers and associated hardware, and it provided certain discovery of components within the products. Freescale, also, provided discovery regarding hardware related to the cache, cache controller, and discovery regarding the design and function of these portions of Freescale's products. These are the structures potentially covered by the claims of the patents-in-suit. Freescale also provided for inspection RTL code for cache, cache controller, and related hardware. Subsequent to that ProMOS pressed for additional discovery and Freescale complied and produced the complete RTL code for the accused products.

Now, it is apparent that ProMOS seeks discovery related to all aspects of the Freescale's products. While Freescale continues to believe that the discovery is not necessary, it is endeavoring to respond to each one of ProMOS's requests that has any reasonable or even remotely plausible relevance to this case. As mentioned above, the difficulty that Freescale faces is that the products at issue are manufactured and/or designed at Freescale's facilities throughout the United States and the world, including Israel and Brazil. Moreover, the design of a number of the accused cores and products dates back as many as ten years. It is simply unreasonable to expect that this discovery, and the depositions that will follow, can be completed in less than three weeks.

### FREESCALE'S MOTION TO ENFORCE

To show good faith, Freescale has agreed to extend the time for ProMOS to respond to Freescale's Motion To Enforce this Court's October 31 Order which required ProMOS to produce its detailed infringement contentions within 10 days of Freescale's production of RTL code. The deadline for serving those contentions has long since passed, causing Freescale to seek the Court's assistance. Based on recent communications between the parties, Freescale expects, however, that ProMOS will assert in response to our motion that it still needs additional documentation before it can serve any infringement contentions. Accordingly, Freescale has agreed to give ProMOS more time, although Freescale is concerned that, without the fact discovery extension, it will have no ability to follow up with any discovery once ProMOS actually provides contentions.

### CONCLUSION

In summary, Freescale very much desires to move beyond discovery disputes and resolve this matter on its merits. Freescale is diligently working to respond to each and every request from ProMOS, but requests an extension of time until February 29, 2008 so that it may reasonably provide discovery and so that it may have the opportunity to follow up on discovery relating to the Fortin and Chan patents. ProMOS will not be prejudiced given that trial is not until the end of June. Because ProMOS has not agreed to this extension, Freescale also asks for a protective order in connection with ProMOS's three recent Rule 30(b)(6) notices of deposition.

The Honorable Joseph J. Farnan, Jr.
January 8, 2008
Page 4


        Because of the assignment of Judge Poppiti as Special Master in this case, we are also sending a copy of this letter to him.

        Respectfully,

        */s/ Mary B. Graham*

        Mary B. Graham (#2256)

MBG/dam
cc:    Dr. Peter Dalleo, Clerk (via e-filing and hand delivery)
       The Honorable Vincent J. Poppiti (via email and hand delivery)
       John G. Day, Esquire (via email)
       Steven J. Routh, Esquire (via email)
       Sten A. Jensen, Esquire (via email)
       David L. Witcoff, Esquire (via email)
1377440

# TAB 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PROMOS TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-788 (JJF) |
| | ) | |
| FREESCALE SEMICONDUCTOR, INC., | ) | |
| | ) | |
| Defendant. | ) | |

### PLAINTIFF PROMOS TECHNOLOGIES, INC.'S
### THIRD NOTICE OF 30(b)(6) DEPOSITION
### OF DEFENDANT FREESCALE SEMICONDUCTOR, INC.

PLEASE TAKE NOTICE that pursuant to Rules 26 and 30 of the Federal Rules of Civil Procedure, plaintiff ProMOS Technologies, Inc. will take the deposition of defendant Freescale Semiconductor, Inc. ("Freescale"), through its corporate designee(s), before a person authorized to administer an oath at the offices of Ashby & Geddes, 500 Delaware Avenue, 8th Floor, Wilmington DE 19899, commencing at 9:30 a.m. on January 14, 2007, or at such other date and time as counsel for the parties shall agree, and continuing from day to day until completed. The deposition may be recorded by audio-visual means as well as stenographically.

Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Freescale shall designate one or more officers, directors or managing agents, or other persons who consent to testify on its behalf concerning the subjects identified in Attachment A, and if more than one person is so named, designate for each person the subject or subjects on which that person will testify.

ASHBY & GEDDES

/s/ *John G. Day*

_____
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
Telephone: (302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Plaintiff*
*ProMOS Technologies, Inc.*

*Of Counsel*:

William H. Wright
Hogan & Hartson LLP
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
Telephone: (310) 785-4672
E-Mail: whwright@hhlaw.com

Steven J. Routh
Sten A. Jensen
Hogan & Hartson LLP
555 Thirteenth Street, NW
Washington, DC  20004
Telephone: (202) 637-6472
E-Mail:sjrouth@hhlaw.com
sajensen@hhlaw.com

Dated:  December 19, 2007
186810.1

# ATTACHMENT A

1.      The design, layout, architecture, and structure of each of the products listed in Exhibit 1 hereto (each, a "Freescale Product" and collectively, the "Freescale Products").

2.      The identity of any product that incorporates or includes any Freescale Product.

3.      Code names, project designations, product families, part numbers and any other naming or grouping conventions used for Freescale Products.

4.      The features, functionality, uses, and operation of each Freescale Product and of each product that incorporates or includes a Freescale Product, including but not limited to the processor(s), core(s), cache memory(ies), cache controller(s), memory(ies), memory subsystem(s), memory controller(s), memory management unit(s), register(s), buffer(s), bus(es), bus interface unit(s), and all other portions thereof.

5.      User manuals, reference manuals, workbooks, datasheets, microarchitecture documents, block guides, specifications, and technical documents for each of the Freescale Products and/or the processor(s) or core(s) contained therein and/or each product that incorporates or includes a Freescale Product.

6.      RTL documentation and circuit schematics for each Freescale Product and/or the processors contained therein.

7.      Research, development, testing, and manufacturing of each Freescale Product, including the costs associated therewith.

8.      Documents (such as communications, data sheets, promotional or marketing materials) and things (such as demonstration boards or other implementations) provided by Freescale to or used by Freescale with its customers or distributors concerning the use of each Freescale Product and/or each product that incorporates or includes a Freescale Product, including

1

those relating to the installation, operation, structure, function, implementation and use of each
Freescale Product and/or each product that incorporates or includes a Freescale Product.

9.       The date of first use, first public use, and first sale for each of the Freescale
Products.

10.      Any efforts by Freescale to change or modify any Freescale Product to design
around any of the patents-in-suit, including all communications relating to such efforts.

11.      Freescale's consideration of and views about the use of system or external memory,
including but not limited to why it is essential and which of the Freescale Products either have
system or external memory or are specifically designed to work with system or external memory.

12.      Any prior art related to the patents-in-suit, including but not limited to designs
developed within Motorola or Freescale.

13.      Any contracts between Freescale and Motorola, whether written or otherwise,
including but not limited to any assumption by Freescale of Motorola's liability for any past,
present, or future claims of infringement.

14.      The features, functionality, uses, and operation of cache memory incorporated or
used by the Freescale Products, including but not limited to (a) the data path and connection
between the cache memory and the executing units of the processor or core; (b) the data path and
connection between the cache memory and the system, external or other memory; (c) data
transmission between the cache memory and the executing units of the processor or core; (d) data
transmission between the cache memory and the system, external or other memory; (e) the timing
and the interdependency (or the lack of it) between (c) and (d), (f) circuits, functions, macros,
programs or instructions related to the operation, function, or scheduling of cache memory, and (g)
circuits, functions, macros, programs or instructions related to the operation, function, or

scheduling of transmission of data and control information to or from the cache memory and to or from any registers or buffers associated with the cache memory.

15.     The similarities and differences between MC68060 and M68040, including but not limited to similarities and differences relating to (a) the data path and connection between the cache memory and the executing units of the processor or core; (b) the data path and connection between the cache memory and the system, external or other memory; (c) data transmission between the cache memory and the executing units of the processor or core; (d) data transmission between the cache memory and the system, external or other memory; (e) the timing and the interdependency (or the lack of it) between (c) and (d).

16.     The features, functionality, uses, and operation of circuits that affect the operation of the cache memory incorporated or used by the Freescale Products, including but not limited to (a) cache controller, (b) control logic of the cache memory, (c) cache control registers (d) tag memory, (e) memory management unit, and (f) memory controller.

17.     The features, functionality, uses, and operation of buffers, registers, or storage that affect the operation of the cache memory incorporated or used by the Freescale Products and/or any product that incorporates or includes a Freescale Product, including but not limited to data transmission and data path between such buffers, registers, or storage and (a) cache memory, (b) the executing units of the processor or core, and (c) system, external or other memory.

18.     The features, functionality, uses, and operation of system, external or other memory incorporated or used by the Freescale Products, including but not limited to (a) data transmission and data path between system or external memory with Freescale Products, (b)  the type, specification, and requirement for system, external or other memory so that it works with Freescale Products; (c) how and why Freescale Products use or operate with system, external or

other memory, and (d) the features of the Freescale products that are specifically designed to work with system, external or other memory.

19.     Data coherency policy and snooping operation of the cache memory incorporated or used by the Freescale Products.

20.     Joint research and development effort relating to Freescale Products with third parties, including but not limited to joint efforts with ARM Holding PLC ("ARM") and International Business Machines Corp. ("IBM").

21.     Indemnification, insurance, guaranty, surety, or agreement under which any third party may be liable to satisfy part or all of a judgment of patent infringement relating to Freescale Products, including but not limited to any agreement between Freescale and Motorola, or any agreement between Freescale and ARM Holding PLC ("ARM").

22.     The types and locations of documents relevant to each of the foregoing topics.

23.     The similarities and differences among each of the Freescale Products, including similarities and differences relating to each of the foregoing topics.

**EXHIBIT 1**

603e
e200
e200z1
e200z0
e200z6
e300
e300c2
e500
e500v2
e600
dual e600
G2
G4
8xx
Coldfire v2
Coldfire v3
Coldfire v4
Coldfire v4e
Coldfire v5
MC68060
ARM 920T
ARM926EJ-S
ARM1136JF-S
800 MHz/1GHz
StarCore SC3400
DSP extended core
800 MHz/1GHz
StarCore SC3400
DSP core
SC1400
DSP 56300

any products that
incorporate any of
the foregoing cores

MPC7400
MPC7450
MPC604
MPC604e
MPC604ev
MPC603

MPC603e
MPC603ev
MPC601
MPC620
MPC750
MPC740
MPC755
MPC2605
K2
8569
8526
MPC5200
MPC5200B

MPC5510

MPC5553

MPC5554

MPC5561
MPC5565

MPC5566
MPC5567
MPC7410
MPC7445
MPC7455
MPC7447
MPC7457
MPC7447A
MPC7448
MPC823
MPC823E
MPC850
MPC852T
MPC853T
MPC855T
MPC857DSL
MPC857T
MPC859DSL
MPC859T
MPC860
MPC860P
MPC862
MPC866
MPC870

MPC875
MPC880
MPC885
MPC8247
MPC8248
MPC8250
MPC8255
MPC8260
MPC8264
MPC8265
MPC8266
MPC8270
MPC8271
MPC8272
MPC8275
MPC8280
MPC8313
MPC8313E
MPC8321
MPC8321E
MPC8323
MPC8323E
MPC8343E
MPC8347E
MPC8349E
MPC8358E
MPC8360E
MPC8533E
MPC8540
MPC8541E
MPC8543E
MPC8544E
MPC8545E
MPC8547E
MPC8548E
MPC8555E
MPC8560
MPC8567E
MPC8568E

MPC8641

MPC8641D
MCF5206e
MCF5207
MCF5208
MCF5211

MCF5212
MCF5213
MCF5214
MCF5216
MCF5232
MCF5233
MCF5234
MCF5235
MCF5249
MCF5270
MCF5271
MCF5272
MCF5274
MCF5274L
MCF5275
MCF5275L
MCF5280
MCF5281
MCF5282
MCF5307
MCF5327
MCF5328
MCF5329
MCF5372
MCF5372L
MCF5373
MCF5373L
MCF5407
MCF5470
MCF5471
MCF5472
MCF5473
MCF5474
MCF5475
MCF5480
MCF5481
MCF5482
MCF5483
MCF5484
MCF5485
MC68060
MC68LC060
MC68EC060
i.MX1
(MC9328MX1)
i.MX21

i.MX21S
i.MX27
i.MX31
i.MX31L
i.MXL
i.MXS


MSC8144


MSC8144E


MSC8144EC
MSC7110
MSC7112
MSC7113
MSC7115
MSC7116
MSC7118
MSC7119
MSC7120


DSP56301

DSP56311

DSP56321

DSP56L307

TAB 2

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

PROMOS TECHNOLOGIES, INC.,          )
                                    )
                 Plaintiff,         )
                                    )
         v.                         )          Civil Action No. 06-788 (JJF)
                                    )
FREESCALE SEMICONDUCTOR, INC.,      )
                                    )
                 Defendant.         )

**PLAINTIFF PROMOS TECHNOLOGIES, INC.'S
FOURTH NOTICE OF 30(b)(6) DEPOSITION
OF DEFENDANT FREESCALE SEMICONDUCTOR, INC.**

PLEASE TAKE NOTICE that pursuant to Rules 26 and 30 of the Federal Rules of Civil

Procedure, plaintiff ProMOS Technologies, Inc. will take the deposition of defendant Freescale

Semiconductor, Inc. ("Freescale"), through its corporate designee(s), before a person authorized

to administer an oath at the offices of Ashby & Geddes, 500 Delaware Avenue, 8th Floor,

Wilmington DE 19899, commencing at 9:30 a.m. on January 14, 2007, or at such other date and

time as counsel for the parties shall agree, and continuing from day to day until completed.  The

deposition may be recorded by audio-visual means as well as stenographically.

Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Freescale shall

designate one or more officers, directors or managing agents, or other persons who consent to

testify on its behalf concerning the subjects identified in Attachment A, and if more than one

person is so named, designate for each person the subject or subjects on which that person will

testify.

ASHBY & GEDDES

/s/ *Lauren E. Maguire*
_____
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
Telephone: (302) 654-1888
Telecopier: (302) 654-2067
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Plaintiff*
*ProMOS Technologies, Inc.*

*Of Counsel*:

William H. Wright
Hogan & Hartson LLP
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
Telephone: (310) 785-4672
Facsimile: (31) 785-4601
E-Mail: whwright@hhlaw.com

Steven J. Routh
Sten A. Jensen
Hogan & Hartson LLP
555 Thirteenth Street, NW
Washington, DC  20004
Telephone: (202) 637-6472
Facsimile: (202) 637-5910
E-Mail:sjrouth@hhlaw.com
sajensen@hhlaw.com

Dated:  December 21, 2007
186851.1

## ATTACHMENT A

1.  The manufacturing process flows, process recipes, and any other process information for any products manufactured during the period January 1, 2004 to the present using any variation of HiP 7 and/or HiP 8, including their identity and content.

2.  The manufacturing process flows, process recipes, and any other process information for any products manufactured during the time period January 1, 2004 to the present (other than the HiP7 and HiP8 flows identified in Topic No. 1), including but not limited to all processes identified in Exhibit 6 to the Scott Bolton Deposition ("Bolton Exhibit No. 6"), including their identity and content.

3.  The identification of any Freescale manufacturing process on which Freescale intends to rely for any invalidity defense.

4.  The manufacturing process flows, process recipes, and any other process information for any processes identified in response to Topic No. 3 above, including their identity and content.

5.  Separately for each process identified in Bolton Exhibit No. 6, the identification of each product that is manufactured using each such process.

6.  Code names, project designations, product families, part numbers and any other naming or grouping conventions used for any product manufactured using any of the processes identified in Bolton Exhibit 6.

7.  With respect to each process covered by topics 1-4 above, the process for forming conductors that include a layer of tungsten overlying a layer of titanium nitride.

8.      The similarities and differences among the processes used to manufacture Freescale products from December 2000 to the present, including the similarities and differences among the process flows, process recipes, and other process information.

9.      The similarities and differences among the various HiP7 processes used to manufacture Freescale products, including the similarities and differences among the process flows, process recipes, and other process information.

10.     The similarities and differences among the various HiP8 processes used to manufacture Freescale products, including the similarities and differences among the process flows, process recipes, and other process information.

11.     With respect to each process covered by topics 1-4 above, any testing, imaging or analysis performed by or on behalf of Freescale that relates to any changes in the physical structure of the device as a result of the RF Preclean step prior to the deposition of the Ti glue layer and/or TiN barrier layer during the qualification process or the manufacturing of Freescale products.

12.     With respect to each process covered by topics 1-4 above, Freescale's efforts to test or characterize the occurrence of volcanoes and/or voids in the tungsten layer during the qualification process or in manufacturing products.

13.     With respect to each process covered by topics 1-4 above, Freescale's efforts to measure the resistance of the tungsten based interconnect, both during the qualification of the process and during the manufacture of products.

14.     With respect to each process covered by topics 1-4 above, any thickness measurement data, procedures for making those measurements and the specification of the allowed thickness range of the titanium adhesion layer and the titanium nitride barrier layer.

15. With respect to each process covered by topics 1-4 above, the temperatures and duration of the rapid thermal anneal sequence used after the deposition of the TiN layer.

16. With respect to each process covered by topics 1-4 above, Freescale's efforts to characterize the microstructure, such as the grain size and the crystallographic texture, of the TiN layer both before and after the nitrogen plasma treatment step.

17. With respect to each process covered by topics 1-4 above, Freescale's efforts to measure the resistance of the TiN layer both before and after the nitrogen plasma treatment step.

18. With respect to each process covered by topics 1-4 above, the mechanism whereby precursor or source materials used for the deposition of the TiN layer are released into the vapor phase in the deposition chamber.

19. With respect to each process covered by topics 1-4 above, the implementation or qualification of the GLU-APOLLO process/recipe, including but not limited to any performance comparison tests with the previous process of record.

20. With respect to each process covered by topics 1-4 above, the design rules for products manufactured using each such process, including but not limited to the length and depth of any tungsten metal lines made with a damascene or dual-damascene process, as well as the identity of the circuit elements in electrical contact with the tungsten metallization through the Ti/TiN glue/barrier layer.

21. With respect to each process covered by topics 1-4 above, the date of first use of the process, the date of first public use of the process, and the date of first sale of any product manufactured using that process.

22. Freescale's efforts to change or modify any process to design around the Fortin patent, including all communications relating to such efforts.

23.    The types and locations of documents relevant to each of the foregoing topics.

TAB 3

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| PROMOS TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-788 (JJF) |
| | ) | |
| FREESCALE SEMICONDUCTOR, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF PROMOS TECHNOLOGIES, INC.'S
FIFTH NOTICE OF 30(b)(6) DEPOSITION
OF DEFENDANT FREESCALE SEMICONDUCTOR, INC.**

PLEASE TAKE NOTICE that pursuant to Rules 26 and 30 of the Federal Rules of Civil

Procedure, plaintiff ProMOS Technologies, Inc. will take the deposition of defendant Freescale

Semiconductor, Inc. ("Freescale"), through its corporate designee(s), before a person authorized

to administer an oath at the offices of Ashby & Geddes, 500 Delaware Avenue, 8th Floor,

Wilmington DE 19899, commencing at 9:30 a.m. on January 14, 2007, or at such other date and

time as counsel for the parties shall agree, and continuing from day to day until completed. The

deposition may be recorded by audio-visual means as well as stenographically.

Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Freescale shall

designate one or more officers, directors or managing agents, or other persons who consent to

testify on its behalf concerning the subjects identified in Attachment A, and if more than one

person is so named, designate for each person the subject or subjects on which that person will

testify.

.

ASHBY & GEDDES

/s/ *Lauren E. Maguire*

_____
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
Telephone: (302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Plaintiff*
*ProMOS Technologies, Inc.*

*Of Counsel*:

William H. Wright
Hogan & Hartson LLP
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
Telephone: (310) 785-4672


Steven J. Routh
Sten A. Jensen
Hogan & Hartson LLP
555 Thirteenth Street, NW
Washington, DC  20004
Telephone: (202) 637-6472
Facsimile:  (202) 637-5910

Dated:  January 2, 2008
186983.1

2

## ATTACHMENT A

### Definitions and Instructions

1.      The terms herein will have the same meaning as given in the "Definitions" section of ProMOS Technology Inc.'s First Request for Production of Documents served April 12, 2007 and Exhibit 1 to ProMOS Technology Inc.'s Third Notice of 30(b)(6) Deposition.

2.      The term "U.S.-Based Customer" shall mean a customer of Freescale whose parent company is organized under the laws of any state within the United States.

### Topics

1.      The identity of any product, whether manufactured by Freescale or a third-party, that incorporates or includes any Freescale Products, as that term is defined in the "Definitions" section of ProMOS Technology Inc.'s First Request for Production of Documents served April 12, 2007 and as amended by Exhibit 1 to ProMOS Technology Inc.'s Third Notice of 30(b)(6) Deposition.

2.      Documents (such as data sheets, promotional or marketing materials) provided by Freescale to its customers or Distributors concerning the use of any Freescale Products, including communications between Freescale and its customers and/or Distributors relating to the installation, operation, structure, function, implementation and use of any of the Freescale Products.

3.      The date of first sale for each of the Freescale Products.

4.      Research and development (and associated research and development costs) of the Freescale Products.

5.      Profit margins on the sale of Freescale Products.

3

6.      Pricing of the Freescale Products and the manner in which the Freescale Products are priced for sale by Freescale.

7.      Freescale's channels of distribution for the Freescale Products, from the date of first sale of such products.

8.      Financial projections, forecasts, budgets, business plans, strategic plans, marketing plans, and sales forecasts relating to the sale, cost, profit, distribution and pricing of the Freescale Products., including but not limited to documents created at or before the time when such products were first sold.

9.      Factors influencing the purchasing decisions made by customers purchasing the Freescale Products, including customer demand for the Freescale Products.

10.     Marketing of the Freescale Products, including but not limited to the difference between how different Freescale Products are marketed.

11.     Documents generated or maintained by Freescale relating to marketing of the Freescale Products.

12.     Warranty claims, product complaints and/or returns, whether submitted by Freescale's customers or any other person or entity, relating to the Freescale Products.

13.     Documents generated or maintained by Freescale relating to the distribution of products, including but not limited to any documents that reflect where or to whom any products are sold by distributors and distributor resale reports.

14.     Qualification of any Freescale Products for use in the United States and any documents relating thereto.

15.    Competition in the market for the Freescale Products, including but not limited to size of the pertinent market(s), competitor and competitors' products in the market, and competitors' market shares.

16.    Design-around alternatives to the claims asserted by ProMOS of the ProMOS patents-in-suit relative to the Freescale Products, and the development costs associated with such design-around alternatives.

17.    Rates paid by Freescale for the use of patents (including but not limited to running royalty rates and lump sum payments) covering any of the Freescale Products.

18.    All agreements, sales contracts or distribution arrangements between (a) Freescale and U.S.-Based Customers; and (b) Freescale and Distributors.

19.    All agreements, contracts or other terms and conditions of sales of Freescale Products to foundry customers.

20.    Communications between Freescale and U.S.-Based Customers or Distributors regarding any of the Freescale Products.

21.    Documents maintained by Freescale relating to the foregoing topics.