IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PROMOS TECHNOLOGIES, INC.,                )
                                          )
                    Plaintiff,            )
                                          )
        v.                                )        C.A. No. 06-788 (JJF)
                                          )
FREESCALE SEMICONDUCTOR, INC.,            )
                                          )
                    Defendant.            )

**FREESCALE'S REPLY TO PROMOS'S**
**OPPOSITION TO A DISCOVERY EXTENSION**

# DM1

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Mary B. Graham (#2256)
James W. Parrett, Jr. (#4292)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
302.658.9200

*Attorneys for Freescale Semiconductor, Inc.*

OF COUNSEL:

David L. Witcoff
John M. Michalik
JONES DAY
77 West Wacker
Chicago, IL  60601-1692
312.782.3939

F. Drexel Feeling
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH  44114-1190
216.586.3939

Dated:  January 15, 2008
1383255

Dear Judge Poppiti:

ProMOS's opposition to a simple request for a five-week extension of fact discovery, which *will cause no prejudice* as trial is more than five months away, is notable for its volume and aggressiveness. Freescale suggests that this approach stems from ProMOS's concern that it has no case on the merits and its consequent tactical decision to generate and then attempt to exploit discovery issues, rather than from a need actually to receive and analyze the discovery ProMOS *alleges* it needs. We do not make that claim lightly, or without recognition of the importance of Freescale's providing discovery and obeying the Court's Orders fully, which we have been and intend to continue doing.

Not once in its six-page micro-font opposition did ProMOS argue that it would be prejudiced by an extension. Quite the contrary, Freescale has repeatedly told ProMOS that Freescale wants to provide ProMOS with the documents ProMOS now claims it needs (e.g., any remaining schematics and microarchitectural documents). ProMOS, however, seems more intent on preventing Freescale from actually having the time needed to locate, collect and produce those documents rather than actually receiving and using them to take depositions on the merits of its Chan allegations.

We ask the Court, if it decides to consider ProMOS's claims about the history of Chan patent related discovery in this case, to consider the complete history. Most notably, and probably unique in counsels' collective experience in Delaware and other jurisdictions, ProMOS has provided *virtually no* Chan patent infringement contentions, preliminary or otherwise, despite Freescale's April 11, 2007 interrogatory (Ex. 1) seeking such contentions, the Court's October 31, 2007 Order (D.I. 83, Ex. 2) requiring ProMOS to provide such contentions, Freescale's pending Motion to Enforce that Order (D.I. 103, Ex. 3 (discussed in Freescale's opening letter), and Freescale's willingness not to object to ProMOS's supplementing those contentions, if necessary, based upon discovery later provided by Freescale. ProMOS has broadly asserted all 52 claims of the Chan patents (Exs. 4 and 5), against approximately 160 products, without any explanation (except for repeating the same contentions it provided before it filed suit – limited to two processor families and a single claim from each of the two Chan patents). In other words, Freescale has no more information regarding the basis of ProMOS's Chan allegations now, a year into the case, than it had pre-suit. Of course, had ProMOS provided the basis of the contentions it presumably made in good faith, Freescale would have had a better understanding of what ProMOS wanted in discovery and discovery could have proceeded more orderly.

Freescale has tried to provide ProMOS with the discovery it seeks regarding the Chan patents, even though that has been a moving target. ProMOS's opening document requests sought essentially every document for practically every product Freescale has sold since 2000 (Ex. 6). Since that time, Freescale has been trying to get ProMOS to tell it what ProMOS really wants, or at least accuse specific products so Freescale could provide appropriate discovery. Freescale has been frustrated at every turn, however, because ProMOS first refused to identify the products it was accusing, besides the four processor families it identified pre-suit. Then when it did identify additional products months later and a few scant hours before filing a motion to compel, ProMOS refused to provide any basis for its assertion of how these products infringe the 52 asserted claims. Furthermore, ProMOS caused further delay by simply remaining silent for long periods of time, or when it did respond, reaching agreements with Freescale on the scope of discovery ProMOS wanted, only to renege later.

Good cause exists for granting Freescale's motion for an extension of the discovery deadline. Federal Rule of Civil Procedure 16(b) allows a scheduling order to be modified "for

good cause and with the judge's consent."    "Properly construed, 'good cause' means that scheduling deadlines cannot be met despite a party's diligent efforts."  *Gonzalez v. Comcast Corp.*, C.A. No. 03-445-KAJ, 2004 U.S. Dist. LEXIS 17896, at *2-3 (D. Del. Aug. 25, 2004) (Ex. 16).  Freescale has been diligent in its discovery efforts[1] and an extension would not prejudice ProMOS.  Accordingly, this Court should grant Freescale's motion.  The inquiry should end there, but it does not, because ProMOS used its brief as a means of describing its skewed view of how discovery has proceeded in this matter.  Accordingly, Freescale must respond.

## The Scope of Discovery is a Moving Target

From the time that ProMOS served its first discovery requests in April 2007, seeking virtually every document in Freescale's possession (*e.g.*, Ex. 6 at Nos. 27, 38, 39, and 57), Freescale has tried to work with ProMOS to identify what ProMOS really wanted (besides "all documents" or "all documents that pertain to the design of all Freescale products that contain or work with a cache in any way" or the like).  This task, unfortunately, has been like trying to pin Jell-O on a wall, with answers either not coming at all or, when they did, constantly changing.

As of its first discovery requests, ProMOS had identified only two Freescale product families per patent as potentially infringing only one claim in each of the two Chan patents.  Although the Chan patents may cover certain specific structures or uses of a cache memory or cache controller, Chan certainly did not invent all such structures or uses, given that cache memories and cache controllers have existed in the prior art for years.  ProMOS, however, made no effort to limit its discovery requests to the specific attributes claimed by Chan.  (*See, e.g.*, Ex. 4 at Claim 1 and Ex. 5 at Claim 1).  Instead, ProMOS simply defined "Freescale Products" as including every product that had or worked with a cache in any way (Ex. 6, at p. 5), which was so broad that it implicated nearly every product made by Freescale.[2]

Freescale objected to the scope of ProMOS's discovery requests.  (Ex. 10).  During a meet-and-confer in May, 2007, ProMOS agreed to review its definition of "Freescale Products" and to review the voluminous publicly available information describing Freescale's products for the purpose of narrowing the scope of its requests.  More than a month passed (during which Freescale assumed ProMOS was doing what it said it would do), without any substantive response from ProMOS.  Then, in late June, ProMOS sent a letter completely ignoring its prior acknowledgement of overbreadth and promise to narrow the scope of its discovery requests, and instead merely repeated its prior overbroad demands. (Ex. 8).

On July 5, Freescale agreed to deliver, by Federal Express, critical technical documents related to the products specifically accused of infringement.  On July 6, the day before those documents were to be received, ProMOS filed a motion to compel the production of the documents that it knew were already in the mail, and to compel the production of documents relating to 95 additional products, which ProMOS identified for the *first* time about just hours before to filing its motion to compel.  (Ex. 7).

---

[1] To date, Freescale has produced nearly 150,000 pages of documents and over 3 gigabytes of electronic files.

[2] Freescale, based in Austin, Texas, is a global leader in the design and manufacture of semiconductor products for the automotive, consumer, industrial, networking and wireless markets.  It has operations in more than 30 countries.

In a letter the following week, Freescale requested that ProMOS withdraw its motion and engage in a meaningful meet-and-confer. (Ex. 11). In that same letter, Freescale's counsel reiterated Freescale's position regarding the scope of discovery:

> ProMOS is seeking document discovery that is exceptionally broad and burdensome, both in terms of the scope of products and the breadth of documents related to those products. Freescale's position from the outset has been that there needs to be a narrowing in both scope and breadth of that discovery. ProMOS has not seriously disputed that its requests are overbroad, and indeed its motion effectively acknowledges as much.

Freescale's letter further noted that ProMOS had changed its position and had, for the first time, indicated that it would be "willing to allow Freescale to make a limited production of critical technical documents…." This was contrary to all of ProMOS's previous demands and it was the first effort by ProMOS to define a set of "critical technical documents" sufficient to allow ProMOS to investigate its infringement allegations. This was precisely what Freescale had requested almost two months earlier, and Freescale now believed that the parties had an agreement as to the scope of discovery. (Ex. 12).

During a July 20 meet-and-confer telephone conference, Freescale reiterated that it would provide the critical documents for the expanded list of 140 products (despite ProMOS's refusal to provide even basic infringement contentions for those products) and would complete that production in August. Following up on this agreement, Freescale produced all the critical documents it located after a reasonable and thorough investigation in August.

Freescale believed its production was complete at this point. While the parties did have other discovery-related disputes over the next four months, those disputes did not relate to the scope of Freescale's document production. Rather, those disagreements included a dispute over ProMOS's insistence on Freescale producing Austin-based Mr. Snyder in Delaware for the Chan document deposition, even though Mr. Snyder had just had a baby and Freescale had offered various dates for Mr. Snyder's deposition in Austin in both August and September[3]; a dispute over whether Freescale should produce its highly proprietary RTL code without the safeguards given to source code in the Stipulated Protective Order;[4] and a dispute over whether Freescale would be required to generate schematics that it does not generate in the ordinary course of its business. ProMOS did not raise a single substantive question or concern with respect to the scope of Freescale's document production.

On August 23, 2007, after producing the agreed-upon critical technical documents, Freescale moved the Court for an Order compelling ProMOS to provide its long overdue infringement contentions. (Ex. 3). On October 31, 2007, the Court ordered ProMOS "to provide [Freescale] its final infringement contentions no later than November 30, 2007." (Ex. 2).

For nearly four months, ProMOS did not raise any specific issue regarding the of the scope Freescale's production. On November 30, however, during the deposition of Mr. Snyder,

---

[3] ProMOS refused to take Mr. Snyder's deposition in Texas and instead moved to compel his deposition in Delaware. Even though ProMOS ultimately won that motion, ProMOS's refusal to depose Mr. Snyder in Texas (even during a time when its counsel were going to be there anyway for activity related to the Texas case) resulted in a 3-4 month delay of this deposition.

[4] On August 21, 2007, Freescale began making RTL code available to ProMOS at the offices of Freescale's counsel. ProMOS's motion sought access to the code without the constraints of the Protective Order and access to code for products it had not yet accused of infringement.

it became apparent that ProMOS was broadening its prior discovery requests. Specifically, after that deposition and for the first time in nearly five months, ProMOS's counsel requested additional technical documentation. When it moved, in August, for production of the RTL code, ProMOS told the Court that the RTL code was critical to its infringement contentions. (Ex. 3 at 2). ProMOS never told the Court it needed additional technical information. Nevertheless, Freescale immediately began a prolonged and detailed dialog with ProMOS about the collection and production of the documents that fell within the new, expanded scope of ProMOS's document demands. (Ex. 13).

In December 10 and 20 e-mails, ProMOS's counsel set forth a list of technical documents it accused Freescale of withholding. After the December 13 *Markman* hearing, the parties exchanged additional emails and participated in various phone conferences concerning discovery. During those discussions, it became clear, for the first time, that ProMOS was seeking significantly broader discovery than the "critical technical documents" it had previously requested; ProMOS wanted documents for the entire accused product, rather than for just the core. In response to these expanded requests, Freescale immediately began investigating, collecting and producing the additional responsive documents requested by ProMOS, a task made all the more challenging by the virtual two-week holiday shutdown of Freescale.

Indeed, in its ongoing efforts to inform ProMOS of the status of these efforts, Freescale told ProMOS (1) that Freescale was conducting a worldwide investigation of each of ProMOS's specific requests for additional documents; (2) that Freescale would be producing additional documents (rather than engage in unproductive discovery disputes); (3) that Freescale's investigation was hampered by the holidays; and, (4) that Freescale's investigation was not yet completed. Additionally, Freescale advised ProMOS that more documents would be forthcoming in response to the specific requests and the expanded scope. (*See, e.g.*, Ex. 13). Freescale has managed to produce a substantial volume of these documents already, and, as pointed out in its opening letter request, needs a little more time to complete this effort. In this regard, Freescale even told ProMOS that, while it would be able to produce many of the documents ProMOS requested before Mr. Snyder's January 9 deposition, Freescale's investigation and production would not be completed by that time. Consequently, Freescale suggested a small delay of Mr. Snyder's deposition so Freescale's could complete these tasks and so ProMOS's deposition of Mr. Snyder would be better informed. (Ex. 13). ProMOS refused this request.

### ProMOS Serves More Discovery

The week before and the week after Christmas, ProMOS served a total of three broad 30(b)(6) Notices, containing 67 topics – all noticed for deposition on January 14. While Freescale has already internally identified 12 witnesses it will need to prepare and produce in response to the topics set forth in those notices, many of the topics, including the majority of ProMOS's Third Notice of 30(b)(6) Deposition, cover the technical aspects of the now nearly 160 different Freescale products for which ProMOS seeks discovery with respect to the Chan patents. Upon receipt of the Third and Fourth Notices (the Fourth Notice pertains to the other asserted patent in this case, the Fortin patent, the discovery about which ProMOS has no complaints[5]), the week before Christmas, Freescale advised ProMOS that Freescale's facilities

---

[5] Freescale notes that ProMOS's comments about the Texas litigation are inaccurate, including ProMOS's statement that it "has met its discovery obligations" in that case. In fact, ProMOS has disobeyed two Court Orders regarding discovery in that case, and Freescale is pursuing those issues with ProMOS. Because these issues are not relevant to the present request,

were essentially shut down for two weeks and that Freescale could not begin to identify witnesses until January 4. (Ex. 15). On January 2, 2008, ProMOS served its Fifth Notice of 30(b)(6) Deposition (relating to damages), which was simply a duplicate of a notice that Freescale served in October.

It is not clear why ProMOS waited until less than a month before the discovery deadline to serve such broad notices, rather than serve the notices much earlier. Two of the three notices (the ones relating to the Fortin patent and to damages) have nothing to do with the Chan discovery complaints at issue, and even for the Chan notice, the documents ProMOS claims it needs were not required to develop the topics in that Notice. ProMOS offers no explanation in its letter as to why it could not have served this notice earlier as well.

Freescale has made clear to ProMOS that it is unproductive to hold depositions until Freescale has completed its production of the expanded scope of technical documents recently sought by ProMOS. Freescale does not want to subject its witnesses to "do-over" depositions and is concerned that ProMOS will later complain that it needs to hold open depositions pending Freescale's production of additional documents. ProMOS simply wants to plunge ahead, regardless of whether the document production is complete, and the fact that trial is over five months away.

ProMOS chides Freescale for serving third party subpoenas in late-December directed at locating prior art. Without ProMOS's infringement contentions, Freescale could not know if ProMOS would assert the patent claims so broadly as to capture the prior art. Consequently, Freescale could not (and cannot) reasonably determine exactly how broadly to search the prior art. When it became clear that ProMOS would not serve contentions, Freescale served the subpoenas, unable to wait any longer. ProMOS also did not mention that it has recently served a third party subpoena just a few days ago on Motorola.

**Responses to ProMOS's Specific Attacks**

Though not germane to the extension sought, Freescale must nonetheless respond to a couple of ProMOS's attacks:

**The Missing Chapters.** ProMOS equates the missing chapters from a 1992 manual[6] to the 18-minute gap in the Watergate tapes.[7] ProMOS's expressed outrage is nothing more than theatrics. First, the chapters at most relate to only one product at issue – the e300 core. ProMOS's expert is wrong when he states that the e300 core is the same as the PowerPC 603 processor, which is an earlier generation product upon which the later generation e300 core is indirectly derived. Second, and more importantly, Freescale did not realize the missing chapters were not produced (it produced the electronic files that the relevant engineer had, without realizing chapters were missing) and ProMOS has had the produced chapter since last July. *Why didn't ProMOS simply say chapters were missing then, rather than waiting five months?* Had

---

Freescale will not take up the Special Master's time discussing these issues further (unless, of course, the Special Master would like to address the issues at the upcoming teleconference.)

[6] The manual was a "Preliminary Draft," for the Power PC 603 processor, a product not accused in this lawsuit. It was published four years before the earliest of the Chan patents even issued.

[7] ProMOS itself leaves large chunks out of the Snyder deposition transcript attached to its letter, including his testimony about spending 20-30 hours to investigate Freescale's knowledge of the expanded topics in his second deposition, and talking to numerous Freescale employees and internal and outside counsel on the various accused products. (*See, e.g.,* Ex. 14 at 6-31). A copy of the missing pages from Mr. Snyder's second deposition are attached as Ex. 14.

ProMOS done so, Freescale would have done then what it did now – scour the company for the remaining chapters.

**Microarchitectural documents.**    Contrary to ProMOS's suggestion, the microarchitecture documents for the cores were produced in July and August, just as reported at the December 13 hearing.  In a December 20 email, ProMOS noted that certain chapters from the e603 Microprocessor manual were missing (discussed above) and certain pages from an e600-related manual were missing.  PM Ex. 14.  Those pages and chapters were then produced on Tuesday, January 8, the day after Freescale essentially reopened after the holidays.  It bears noting that Freescale produced the original document in August.  *Again, why didn't ProMOS simply tell Freescale earlier that these pages were missing, so the omission could have been rectified earlier*?

ProMOS's complaint that Freescale is producing "significant additional" documents seems out of place.  During the meet-and-confer calls that the parties participated in since the December 13 hearing, ProMOS asked Freescale to "re-evaluate its production" of core documents and Freescale agreed to do just that.

**Schematics.**  The statements about schematics at the December 13 *Markman* hearing cited by ProMOS  refer to whether the library schematics identified by Mr. Snyder at his deposition were relevant.  Although those statements were true, as far as Freescale's counsel knew at that time, Freescale's subsequent ongoing investigation of product-level documents revealed that one of its products, the DSP56300, was designed using schematics (rather than RTL code) and Freescale immediately produced those schematics to ProMOS.[8]

Contrary to ProMOS's contentions in part 4.c of its letter, Mr. Snyder's testimony is entirely consistent with respect to schematics.  The components about which he testified, and which are reflected in Exhibit 2 to his second deposition (*e.g.*, data cache arrays, cache tag arrays, data RAMs, L1 cache, L1 data tag) are considered "library elements" at Freescale.  Ex. 11 at 127-28.  As he testified, the confusion apparently is one of semantics that was created when he used the terminology suggested by ProMOS.  *Id*. at 127:3-9.  ProMOS has recently requested the custom library schematics and Freescale is in the process of collecting them.

**Conclusion**

Freescale wants to produce the documents ProMOS now claims it needs, and submits that the five-week extension of fact discovery requested by Freescale is warranted.  Good cause exists and there is no prejudice to ProMOS and, in fact, it claims none.

Respectfully,

*/s/ Mary B. Graham*

Mary B. Graham (#2256)

MBG/dam
Enclosure
cc:    (See attached service list)
1383255

---

[8] Contrary to ProMOS's statements, Freescale never said that it does not have any schematics.  Rather, Freescale said that because it primarily uses RTL code to design its products, it is not surprising that there isn't an abundance of schematics to produce.  (Ex. 9)

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 15, 2008, the foregoing was caused to be electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered participants.

In addition, the undersigned hereby certifies that on January 15, 2008 true and correct copies of the foregoing were caused to be served upon the following parties in the manner indicated:

**BY HAND DELIVERY (in triplicate):**

Vincent J. Poppiti
BLANK ROME LLP
1201 North Market Street, Suite 800
Wilmington, DE 19801-4226

**BY E-MAIL:**

Vincent J. Poppiti
**poppiti@blankrome.com**
BLANK ROME LLP

WITH A COPY TO:

Elizabeth Oestreich
**oestreich@blankrome.com**
Mary Levan
**levan@blankrome.com**
Carrie David
**david-c@blankrome.com**
BLANK ROME LLP

**BY E-MAIL AND HAND DELIVERY**

John G. Day, Esquire
Steven J. Balick, Esquire
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
Wilmington, DE 19899

**jday@ashby-geddes.com**
**sbalick@ashby-geddes.com**

**BY E-MAIL AND FEDERAL EXPRESS**

Sten A. Jensen, Esquire
HOGAN & HARTSON LLP
555 Thirteenth Street, NW
Washington, DC 20004

**sajensen@hhlaw.com**

**BY E-MAIL:**

Steven J. Routh, Esquire
**sjrouth@hhlaw.com**
William H. Wright, Esquire
**whwright@hhlaw.com**
HOGAN & HARTSON LLP

William C. Gooding, Esquire
**billgooding@gooding-crittenden.com**
GOODING & CRITTENDEN, L.L.P.

*/s/ Mary B. Graham*
_____
Mary B. Graham (#2256)

1383169