IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PROMOS TECHNOLOGIES, INC.,          )
                                    )
              Plaintiff,            )
                                    )
      v.                            )          C.A. No. 06-788 (JJF)
                                    )
FREESCALE SEMICONDUCTOR, INC.,      )          **EXHIBIT 14 FILED**
                                    )          **SEPARATELY UNDER SEAL**
              Defendant.            )

**APPENDIX TO FREESCALE'S REPLY TO PROMOS'S
OPPOSITION TO A DISCOVERY EXTENSION**

# DM1

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Mary B. Graham (#2256)
James W. Parrett, Jr. (#4292)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
302.658.9200

*Attorneys for Freescale Semiconductor, Inc.*

OF COUNSEL:

David L. Witcoff
John M. Michalik
JONES DAY
77 West Wacker
Chicago, IL  60601-1692
312.782.3939

F. Drexel Feeling
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH  44114-1190
216.586.3939

Dated:  January 15, 2008

| EXHIBIT | DESCRIPTION |
|---------|-------------|
| 1 | Defendant Freescale's First Set of Interrogatories to Plaintiff ProMOS, April 11, 2007 |
| 2 | Order, Docket Item 83, October 31, 2007 |
| 3 | Freescale's Motion to Enforce the October 31 Order Compelling ProMOS to Provide Chan Patent Infringement Contentions, December 19, 2007 (D.I. 103) |
| 4 | Claims of U.S. Patent 5,732,241 Chan |
| 5 | Claims of U.S. Patent 5,488,709 Chan |
| 6 | Plaintiff ProMOS Technologies, Inc.'s First Set of Requests For Production of Documents and Things From Defendant Freescale Semiconductor, Inc. (Nos. 1-117), April 12, 2007 |
| 7 | Cook email to Ferguson and Witcoff, July 6, 2007 |
| 8 | Jensen letter to Ferguson, June 25, 2007 |
| 9 | Feeling letter to Cook, August 21, 2007 |
| 10 | Defendant Freescale's Response to Plaintiff ProMOS Technologies, Inc.'s First Set of Requests For Production of Documents and Things From Defendant Freescale Semiconductor, Inc. (Nos. 1-117), May 17, 2007 |
| 11 | Ferguson letter to Jensen, July 10, 2007 |
| 12 | Ferguson letter to Cook, July 16, 2007 |
| 13 | Witcoff email to Routh, January 7, 2008 |
| 14 | Snyder Deposition, January 9, 2008 [CONFIDENTIAL] |
| 15 | Agozzino email to Routh, January 5, 2008 |
| 16 | *Gonzalez v. Comcast Corp.*, C.A. No. 03-445 (KAJ), 2004 U.S. Dist. LEXIS 17896 (D. Del. Aug. 25, 2004) |

1383541

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PROMOS TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-788 (JJF) |
| | ) | |
| FREESCALE SEMICONDUCTOR, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT FREESCALE'S FIRST SET OF
## INTERROGATORIES TO PLAINTIFF PROMOS

Defendant, Freescale Semiconductor, Inc. ("Freescale"), pursuant to Rule 33 of the Federal Rules of Civil Procedure, hereby requests that plaintiff, ProMOS Technologies, Inc. ("ProMOS"), respond to the following Interrogatories within thirty (30) days of service, separately and fully, under oath, in accordance with the definitions and instructions below.

## DEFINITIONS AND INSTRUCTIONS

The following definitions and instructions shall apply when responding to these Interrogatories:

A.    Unless otherwise stated, "the '709 Patent" shall mean U.S. Patent No. 5,488,709.

B.    Unless otherwise stated, "the '241 Patent" shall mean U.S. Patent No. 5,732,241.

C.    Unless otherwise stated, "the '267 Patent" shall mean U.S. Patent No. 6,670,267.

D.    The term "Patent(s)-in-Suit" shall refer collectively and individually to the '709 Patent, the '241 Patent, and the '267 Patent.

E.    "ProMOS" shall mean ProMOS Technologies, Inc. and all parents, subsidiaries, and affiliates thereof, all divisions, predecessors, successors, and assigns of each of the

foregoing, and all officers, employees, directors, agents, consultants, attorneys, and all other persons acting or purporting to act on behalf of or under the control of any of the foregoing.

F.    "Mosel Vitelic" shall mean Mosel Vitelic, Inc. and all parents, subsidiaries, and affiliates thereof, all divisions, predecessors, successors, and assigns of each of the foregoing, and all officers, employees, directors, agents, consultants, attorneys, and all other persons acting or purporting to act on behalf of or under the control of any of the foregoing.

G.    "Freescale" shall mean Freescale Semiconductor, Inc. and all parents, subsidiaries, and affiliates thereof, all divisions, predecessors, successors, and assigns of each of the foregoing, and all officers, employees, directors, agents, consultants, attorneys, and all other persons acting or purporting to act on behalf or under the control of any of the foregoing.

H.    If any document relating to the subject matter of these Interrogatories has been destroyed, describe the content of said document, the location of said document, the date of its destruction, the name of the person who ordered or authorized its destruction, and the identity of all persons having knowledge of the contents of the document.

I.    In producing documents in response to any Interrogatory under Federal Rule of Civil Procedure 33(d), indicate the specific Interrogatories for which each document or group of documents is being produced.

J.    Consistent with the requirements of Federal Rule of Civil Procedure 26(e), answers to these Interrogatories shall be supplemented or corrected as new or additional information becomes available to ProMOS.

## INTERROGATORIES

### INTERROGATORY NO. 1:

Identify by part number or other specific identifier each Freescale product, each component or part of each Freescale product, and each Freescale process that ProMOS contends directly infringes any claim of the Patents-in-Suit, and for each such product, component, part, or process, identify each claim ("Asserted Claim") of the Patents-in-Suit that ProMOS contends is infringed by such product, component, part, or process, and provide a claim chart explaining in detail how and why each such claim is infringed, including a comparison of each such claim with each such product, component, part, or process on an element-by-element basis and explaining whether and how each claim element is present literally or by equivalents therein and identify each document or thing which reflects, or refers or relates to, such alleged infringement.

### INTERROGATORY NO. 2:

To the extent that ProMOS alleges that Freescale has contributorily infringed the Patents-in Suit by selling or offering to sell a component or product, etc. to other persons, state the facts which establish or support the elements of that allegation, including *inter alia* the existence of persons who have directly infringed the patents in suit using a component or product of Freescale (and identify such persons and state the facts supporting that they have directly infringed), that such components or products are especially made or especially adapted for use in an infringement of the Patents-in-Suit and are not suitable for substantial noninfringing use, and that Freescale sold components or products to such alleged direct infringers knowing said components or products were especially made or adapted for infringing use, and identify all persons having knowledge of facts that support or tend to support such contentions (and state the nature and extent of their knowledge) and identify each document or thing which reflects, or

refers or relates to, such facts or ProMOS's contentions of contributory infringement by Freescale.

**INTERROGATORY NO. 3:**

   To the extent that ProMOS alleges that Freescale has induced infringement of the Patents-in-Suit by other persons, state the facts which establish or support the elements of that allegation, including *inter alia* the existence of direct infringers who were caused to infringe by Freescale (and identify such direct infringers and state the facts supporting that they have directly infringed), that Freescale acted to induce such infringement, that Freescale had knowledge of the Patents-in-Suit (and when), that Freescale had the intent to cause a direct infringer's infringing activities and specific intent to encourage such infringement beyond mere knowledge of an alleged direct infringer's activities, and identify all persons having knowledge of facts that support or tend to support such contentions (and describe the nature and extent of their knowledge) and identify each document or thing which reflects, or refers or relates to, such facts.

**INTERROGATORY NO. 4:**

   For each Patent-in-Suit, describe in detail the making of the invention, including where, when, how, and by whom the subject matter described in each of its claims was conceived and reduced to practice, along with the factual basis for such dates and all facts and circumstances relating to the conception and reduction to practice, identify each person involved in the making of the invention (and state each person's role) and identify each document or thing which reflects, or refers or relates to, the making of the invention or such facts.

**INTERROGATORY NO. 5:**

   For each Patent-in-Suit, describe in detail where, when, how, and by whom the subject matter described in each of its claims was publicly used, publicly disclosed, offered for

sale, or sold prior to the filing date of the Patent-in-Suit, along with the factual basis for such dates and all facts and circumstances relating thereto, including, but not limited to, by or to whom such subject matter was first used, first disclosed, first offered for sale, or first sold, and identify each person involved in such acts (and state each person's role) and identify each document or thing which reflects, or refers or relates to, such acts.

**INTERROGATORY NO. 6:**

   Separately for each Patent-in-Suit, describe in detail all efforts prior to the issue date of the Patent-in-Suit to commercialize or test the subject matter described in the patent or any of its claims, identify each person involved in any such efforts (and state each person's role) and identify each document or thing which reflects, or refers or relates to, such efforts.

**INTERROGATORY NO. 7:**

   For each of the Patents-in-Suit, identify all persons involved in connection with the drafting, development, filing, or prosecution of that patent or any related patents or applications, and state their roles, and, for each such person, identify all prior art or possible prior art known to such person before the issuance of such patent and identify each document or thing which reflects, or refers or relates to, such knowledge or such prior art.

**INTERROGATORY NO. 8:**

   State in detail ProMOS's contentions, and the factual basis for such contentions, as to the pertinent art for the Patents-in-Suit and the level of ordinary skill in that art at the time of the alleged invention, and any "objective evidence" or "secondary considerations" of any alleged non-obviousness of any of the claims of each Patent-in-Suit in accordance with, for example, Graham v. John Deere Co., 383 U.S. 1, 17 (1966), identify each person with

knowledge of such prior art or facts, and identify each document or thing which reflects, or refers or relates to, such prior art or such facts.

**INTERROGATORY NO. 9:**

Other than this lawsuit, identify each attempt by ProMOS or Mosel Vitelic, or consideration by ProMOS or Mosel Vitelic whether, to license or enforce any of the Patents-in-Suit, or any of the inventions allegedly disclosed, described, or claimed therein, identify all communications with, negotiations with, or claims against third parties concerning the possible licensing or infringement thereof, the dates and parties involved, and the results thereof (including an identification of each license or settlement agreement relating in any way to the Patents-in-Suit or any of the inventions allegedly disclosed, described, or claimed therein), and identify all persons with knowledge of facts relating to such licensing or enforcement efforts and identify each document or thing relating to such licensing or enforcement efforts.

**INTERROGATORY NO. 10:**

State in detail each argument, claim, or contention that has ever been asserted by any entity that any claim of the Patents-in-Suit is invalid, unenforceable, or not infringed, identify the party making such argument, claim, or contention, identify all prior art asserted in each such argument, claim, or contention, and identify each person having knowledge of facts relating to each argument, claim, or contention and identify each document or thing which relates to such facts.

**INTERROGATORY NO. 11:**

Identify each product, component, part, or process manufactured, used, sold, offered for sale, licensed, or offered for license at any time by ProMOS or Mosel Vitelic or any licensee of ProMOS or Mosel Vitelic that is covered by any claim of any of the Patents-in-Suit

or marked with the '709 Patent number or the '241 Patent number, and provide a claim chart comparing on an element-by-element basis each such claim against each such product, component, part, or process.

**INTERROGATORY NO. 12:**

For each product identified in response to Interrogatory No. 11, identify whether the product was marked in compliance with 35 U.S.C. § 287, including when such marking first commenced, the manner in which the product, component, or part was marked, and when, if ever, such marking was discontinued, identify each person with knowledge of such marking, and identify each document or thing which reflects, refers to, or relates to such marking.

**INTERROGATORY NO. 13:**

Separately for each Asserted Claim, state the date on which ProMOS or Mosel Vitelic first became aware that Freescale was allegedly infringing such claim and the circumstances surrounding ProMOS's or Mosel Vitelic's acquisition of such knowledge, identify each person who became aware that Freescale was allegedly or might be infringing the Patents-in Suit, identify each document or thing which reflects, or refers or relates to, such facts and explain why ProMOS did not file suit against Freescale until December 22, 2006.

**INTERROGATORY NO. 14:**

Explain how ProMOS has been damaged by Freescale's activities as alleged in ProMOS's Complaint such that ProMOS has requested that Freescale "be ordered to account for and pay all damages caused by reason of Freescale's infringement pursuant to 35 U.S.C. § 284, including enhanced damages under 35 U.S.C. § 284," including an identification of the type and amount of each element of damages ProMOS intends to seek in this case, and an explanation of the basis and methodology used by ProMOS to calculate such amount, state each fact which

supports ProMOS's request for damages, identify each person with knowledge of such facts, and identify each document or thing which reflects, or refers or relates to, such facts.

**INTERROGATORY NO. 15:**

State all facts supporting ProMOS's contentions that Freescale's alleged infringement has been willful, and that Freescale's activities justify an award of increased damages, identify each person with knowledge of such facts, and identify each document or thing which reflects, or refers or relates to, such facts.

**INTERROGATORY NO. 16:**

Explain why ProMOS is allegedly entitled to any other form of relief (beyond those identified in ProMOS's answers to Interrogatory No. 14 and Interrogatory No. 15), and state each fact which supports ProMOS's contentions that it is entitled to such relief, identify each person with knowledge of such facts, and identify each document or thing which reflects, or refers or relates to, such facts.

**INTERROGATORY NO. 17:**

Describe in detail the corporate and organizational structures of ProMOS and Mosel Vitelic, including an identification of all officers and directors of ProMOS and Mosel Vitelic, and describe the functional and financial relationships between ProMOS and Mosel Vitelic, from 2000 to the present, and identify each person with knowledge regarding such facts and state the nature of their knowledge.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_Mary B. Graham_

Mary B. Graham (#2256)
James W. Parrett, Jr. (#4292)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
302.658.9200

OF COUNSEL:

*Attorneys for Freescale Semiconductor, Inc.*

David L. Witcoff
Kevin P. Ferguson
John M. Michalik
JONES DAY
77 West Wacker
Chicago, IL  60601-1692
312.782.3939

F. Drexel Feeling
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH  44114-1190
216.586.3939

Dated:  April 11, 2007
789665

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PROMOS TECHNOLOGIES, INC., )
)
Plaintiff, )
)
v. )          C.A. No. 06-788 (JJF)
)
FREESCALE SEMICONDUCTOR, INC., )
)
Defendant. )
)

## NOTICE OF SERVICE

PLEASE TAKE NOTICE that true and correct copies of (1) *Defendant Freescale's First Set of Interrogatories to Plaintiff ProMOS* and (2) *Defendant Freescale's First Set Of Requests For Production Of Documents And Things To Plaintiff ProMOS* were caused to be served on April 11, 2007 upon the following in the manner indicated:

### BY HAND DELIVERY

Steven J. Balick, Esquire
Ashby & Geddes
500 Delaware Avenue, 8th Floor
Wilmington, DE 19899

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Mary B. Graham*

Mary B. Graham (#2256)
James W. Parrett, Jr. (#4292)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
302.658.9200

*Attorneys for Freescale Semiconductor, Inc.*

OF COUNSEL:

David L. Witcoff
Kevin P. Ferguson
John M. Michalik
JONES DAY
77 West Wacker
Chicago, IL  60601-1692
312.782.3939

F. Drexel Feeling
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH  44114-1190
216.586.3939

Dated:  April 11, 2007
789672

# EXHIBIT 2

Case 1:06-cv-00788-JJF Document 83 Filed 10/31/2007 Page 1 of 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PROMOS TECHNOLOGIES, INC.,         :
                                   :
          Plaintiff,               :
                                   :
     v.                            : Civil Action No. 06-788 JJF
                                   :
FREESCALE SEMICONDUCTOR, INC.,     :
                                   :
          Defendant.               :

### O R D E R

Whereas, Defendant filed a Motion to Compel (D.I. 56);

Whereas, the Court has considered the parties'
positions and finds that Plaintiff has appropriately responded
and provided its contentions regarding infringement of the Chan
patents; however, the Court will require Plaintiff to provide
Defendant its final infringement contentions no later than
November 30, 2007;

Whereas, the Court finds that Plaintiff's responses to
Defendant's licensing interrogatory are sufficient;

NOW THEREFORE, IT IS HEREBY ORDERED that Defendant's
Motion to Compel (D.I. 56) is **DENIED** except as to Plaintiff
providing its final infringement contentions.


October 3/, 2007
          DATE

                    UNITED STATES DISTRICT JUDGE

EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PROMOS TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-788 (JJF) |
| | ) | |
| FREESCALE SEMICONDUCTOR, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**FREESCALE'S MOTION TO ENFORCE THE OCTOBER 31 ORDER COMPELLING
PROMOS TO PROVIDE CHAN PATENT INFRINGEMENT CONTENTIONS**

Defendant Freescale Semiconductor, Inc.  ("Freescale") hereby moves for an

Order to enforce the Court's October 31 Order compelling ProMOS Technologies, Inc.

("ProMOS") to provide its final infringement contentions regarding the two Chan patents it has

asserted against Freescale in this case (D.I. 83).  ProMOS has accused approximately 150

different Freescale products of infringing 52 claims of the Chan patents, and has received

substantial discovery on those 150 different Freescale products, including Freescale's highly

confidential RTL code for each of those products.  In spite of that substantial discovery, ProMOS

has refused to provide its final infringement contentions or even commit to a date by when it will

provide such contentions.

Freescale has sought ProMOS's infringement contentions since the beginning of

discovery, but ProMOS has steadfastly refused to provide them.  ProMOS has not provided even

preliminary infringement contentions, except for one claim and two product types for each

patent.  The few preliminary contentions provided are the same contentions ProMOS made pre-

suit during licensing negotiations.  Freescale, therefore, is essentially no further along as far as

what it knows about ProMOS's case than before the litigation began, which was not much.

- 1 -

Consequently, on August 23, 2007, Freescale moved this Court for an Order compelling ProMOS to provide its infringement contentions.  In its October 31 Order, the Court, among other things, ordered ProMOS to provide its final infringement contentions by November 30, 2007.  In a separate order that same day, Freescale was also ordered to generate schematics, produce RTL code, and produce a witness for deposition in Delaware.  The parties cooperated with respect to that production, and ProMOS has had, for some time, the RTL code for all accused products;[1] this is the very code that ProMOS represented to the Court that it needed "to permit ProMOS to prove its infringement case at trial more efficiently and more definitively." (*See* ProMOS's Motion to Compel filed August 23, 2007 (D.I. 55) at p. 13).  Even though the parties had to, and did, work cooperatively with respect to Freescale's voluminous production of this RTL code, ProMOS still has not provided any final infringement contentions, and will not even commit to a date by which to provide them.  (ProMOS had promised to provide these contentions by December 17, but did not do so.)

As was evident at the December 13 *Markman* hearing, ProMOS is complaining about the sufficiency of the Chan-related discovery Freescale has provided to date.  Even though Freescale disagrees with ProMOS's position on this issue, it is indisputable that ProMOS has all the RTL code for the accused products and, thus, by its own words as previously represented to the Court, has sufficient information to provide its infringement contentions.  (Although not

---

[1]    Core level RTL code was produced the week of November 19, 2007.  The day before Thanksgiving, ProMOS asked for complete *product* level RTL code.  Freescale began producing it during the week after Thanksgiving, and as of December 5, 2007, ProMOS had been provided with the complete *product* level RTL code for all accused products (which includes the core RTL), except for five products for which the RTL code could not be located.  ProMOS agreed that it would not require the product level RTL code for the five products for which the code could not be located and that Freescale had satisfied its obligations under the Court's Order with respect to RTL code production.

relevant to this motion, Freescale believes ProMOS already had sufficient information even before the production of this RTL code.)  In any event, ProMOS should not be able to use its complaints as an excuse to indefinitely ignore the Court's Order and refuse to provide infringement contentions.  Freescale has repeatedly advised ProMOS that, to the extent that any information later provided by Freescale materially changes ProMOS's infringement contentions, Freescale will not object to ProMOS promptly supplementing its contentions on this basis.

Freescale needs ProMOS's infringement contentions.  Freescale has already been prejudiced by ProMOS's failure to provide contentions by, among other things, having to prepare for claim construction without the benefit of knowing which claims or specific claim elements might legitimately be at issue, or how ProMOS was contending those claims were allegedly infringed by Freescale's products.  (ProMOS has simply asserted, without explanation, all 52 claims of both Chan patents).  Moreover, the end of fact discovery is quickly approaching – January 21, 2008 – and Freescale is not able to properly prepare its defenses or assess fully whether additional discovery might be needed.  For example, Freescale needs to have ProMOS's infringement contentions to properly search for and consider prior art and prepare its prior art defenses (ProMOS may be asserting the Chan claims so broadly that the claims also capture the prior art).  This is obviously a case-critical issue, and we submit that Freescale should not be required to keep guessing as to how ProMOS is asserting its Chan claims.

To prevent further unfair prejudice to Freescale, Freescale asks that the Court issue an Order enforcing its October 31 Order, requiring ProMOS to immediately provide its final infringement contentions, and precluding ProMOS from accusing any Freescale products for which final and complete infringement contentions are not provided by December 31, 2007, and for any other relief deemed appropriate by the Court.

- 3 -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Mary B. Graham (#2256)*

Mary B. Graham (#2256)
James W. Parrett, Jr. (#4292)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
302.658.9200

*Attorneys for Freescale Semiconductor, Inc.*

OF COUNSEL:

David L. Witcoff
John M. Michalik
JONES DAY
77 West Wacker
Chicago, IL  60601-1692
312.782.3939

F. Drexel Feeling
Karl Maersch
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH  44114-1190
216.586.3939

Dated:  December 19, 2007
1344004

## CERTIFICATE PURSUANT TO D. DEL. LR 7.1.1

       Counsel for the parties have communicated about the subject of the foregoing motion and have not reached agreement.

*/s/ Mary B. Graham (#2256)*

Mary B. Graham (#2256)

December 19, 2007

EXHIBIT 4

US005732241A

# United States Patent [19]

## Chan

[11] **Patent Number:** 5,732,241

[45] **Date of Patent:** Mar. 24, 1998

[54] **RANDOM ACCESS CACHE MEMORY CONTROLLER AND SYSTEM**

[75] Inventor: **Alfred K. Chan**, Milpitas, Calif.

[73] Assignee: **Mos Electronics, Corp.**, Sunnyvale, Calif.

[21] Appl. No.: **170,642**

[22] Filed: **Dec. 20, 1993**

### Related U.S. Application Data

[63] Continuation of Ser. No. 678,914, Apr. 1, 1991, abandoned, which is a continuation-in-part of Ser. No. 546,071, Jun. 27, 1990, abandoned.

[51] Int. Cl.$^6$ ............................................. G06F 13/00
[52] U.S. Cl. ............................................. 395/458
[58] Field of Search ............................ 395/427, 458

[56] **References Cited**

#### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,075,686 | 2/1978 | Calle et al. | 395/465 |
| 4,371,927 | 2/1983 | Wilhite et al. | 395/250 |
| 4,403,288 | 9/1983 | Christian et al. | 346/200 |
| 4,434,459 | 2/1984 | Holland et al. | 395/375 |
| 4,493,033 | 1/1985 | Ziegler et al. | 395/425 |
| 4,532,590 | 7/1985 | Wallach et al. | 364/200 |
| 4,554,627 | 11/1985 | Holland et al. | 364/200 |
| 4,577,293 | 3/1986 | Matick et al. | 365/189 |
| 4,620,275 | 10/1986 | Wallach et al. | 395/800 |
| 4,654,788 | 3/1987 | Boudreau et al. | 395/440 |
| 4,718,039 | 1/1988 | Aichelmann, Jr. et al. | 395/250 |
| 4,755,937 | 7/1988 | Glier | 395/476 |
| 4,831,581 | 5/1989 | Rubinfeld | 364/200 |
| 4,851,991 | 7/1989 | Rubinfeld et al. | 364/200 |
| 4,881,163 | 11/1989 | Thomas et al. | 395/425 |
| 4,888,741 | 12/1989 | Malinowski | 365/230.05 |
| 4,912,680 | 3/1990 | Masaki et al. | 365/189.04 |
| 4,926,317 | 5/1990 | Wallach et al. | 395/403 |
| 4,953,073 | 8/1990 | Moussouris et al. | 395/400 |
| 5,056,002 | 10/1991 | Watanabe | 395/446 |
| 5,091,846 | 2/1992 | Sachs et al. | 395/250 |
| 5,193,175 | 3/1993 | Cutts, Jr. et al. | 395/182.09 |
| 5,203,002 | 4/1993 | Wetzel | 395/800 |
| 5,329,630 | 7/1994 | Baldwin | 395/800 |
| 5,408,673 | 4/1995 | Childers et al. | 395/800 |
| 5,426,734 | 6/1995 | Nakaoka | 395/166 |
| 5,488,709 | 1/1996 | Chan | 395/445 |

#### OTHER PUBLICATIONS

Intel Corporation. "i486 Microprocessor Hardware Manual", 1990. pp. 6–1 to 6–39.

*Primary Examiner*—David L. Robertson
*Attorney, Agent, or Firm*—Skjerven, Morrill, MacPherson, Franklin & Friel LLP

[57] **ABSTRACT**

A memory cache apparatus compatible with a wide variety of bus transfer types including non-burst and burst transfers. In burst mode, a "demand word first" wrapped around quad fetch order is supported. The cache memory system decouples the main memory subsystem from the host data bus so as to accommodate parallel cache-hit and system memory transfer operations for increased system speed and to hide system memory write-back cycles from the microprocessor. Differences in the speed of the local and system buses are accommodated, and an easy migration path from non-burst mode microprocessor based systems to burst mode microprocessor based systems is provided. Various memory organizations are accommodated including direct-mapped or one-way set associative, two-way set associative, and four-way set associative.

**26 Claims, 70 Drawing Sheets**



5,732,241

61

cache, including support for non-cacheable accesses and multiple replacement cycles for lines longer than 16 bytes.

The cache memory 72 also supports quadword data fetch and, though not common in 386 systems, burst operation with main memory. If the cache and system memory controllers support burst operation, cache memory 72 will also support burst reads and writes to system memory 38. In an 80386 system which is designed for future upgrade to an 80486, the main memory subsystem may use Intel's strongly suggested 64-bit, bank interleaved main memory organization. This memory organization is accessed using the non-sequential burst order used by the 486. Cache memory 72 directly supports that burst order to and from main memory, as well as the sequential burst order used with the smaller, less expensive, and standardized 32-bit sequential memory organization.

If the system memory uses the design-intensive 64-bit, bank interleaved architecture recommended by Intel instead of the standard, 32-bit sequential architecture, then the system port 112 uses the 486 burst sequence to system memory 38 instead of sequential order. Burst RAM cache memory 72 supports both sequential and 486 burst ordering. In either case, the fetch data from main memory is brought in "demand word first" such that the first doubleword passes directly to the 386 through each corresponding bypass path 119 of cache memory 72. The 386 can then resume execution while the remainder of the burst data is brought in and stored in the RAM array 100.

Numerous modifications and variations will become apparent to those skilled in the art once the above disclosure is fully appreciated. It is to be understood that the above detailed description of the preferred embodiment is intended to be merely illustrative of the spirit and scope of the invention and should not be taken in a limiting sense. The scope of the claimed invention is better defined with reference to the following claims.

I claim:

1. A computer system comprising:

a host processor having a host address bus and a host data bus;

a system memory having storage locations addressable by said host processor, a system address bus and a system data bus;

a dual port cache memory having a system port connected to said system data bus and a host port connected to said host data bus, said dual port cache memory comprising cache storage locations dynamically associable with said storage locations of said system memory and a plurality of registers coupling said cache storage locations to said host port and said system port, wherein a data path between said host data bus and said system data bus is operably decoupled by buffering and selective provision of data to and from said cache storage locations by said plurality of registers so as to allow concurrent transfer of data to and from said dual port cache memory; and

a cache controller connected to said dual port cache memory, said cache controller having a first port connected to said host address bus and a second port connected to said system address bus such that said dual port cache memory and said cache controller are connected in parallel between said host processor and said system memory.

2. The computer system as recited in claim 1 wherein said cache controller is connected to said dual port cache memory for providing a first address on said host address bus concurrently with providing a second address on said

62

system address bus, said first address corresponding to a different one of said storage locations of said system memory than said second address.

3. The computer system as recited in claim 1 wherein data on said host data bus is asynchronous to data on said system data bus.

4. The computer system as recited in claim 1 wherein said cache controller comprises:

a first control sequencer or controlling addressing and data signals on said host address bus and on said host data bus; and

a second control sequencer for controlling addressing and data signals on said system address bus and on said system data bus.

5. The computer system as recited in claim 1 further comprising means for disabling said dual port cache memory during a local bus access cycle.

6. The computer system as recited in claim 1 further comprising a peripheral device coupled to said system memory.

7. The computer system as recited in claim 6 wherein said peripheral device provides data to said system data bus, and wherein a hit address memory location within said dual port cache memory is loaded with said data from said peripheral device if the hit address of said dual port cache memory corresponds with an address of said data from said peripheral device.

8. The computer system as recited in claim 1 wherein said host processor operates at a first frequency, and wherein said system memory operates at a second frequency that is different from said first frequency.

9. A computer system according to claim 1 wherein said dual port cache memory comprises a plurality of burst random access memories.

10. A method for operating a memory cache apparatus, said memory cache apparatus including addressable storage, a host port, a system port, a host input register connected to said host port, a system input register connected to said system port, and a system output register connected to said system port, said method comprising the steps of:

receiving an address from a host;

comparing said received address to a plurality of addresses corresponding to cache data stored in said addressable storage;

placing a line of said cache data from a location in said addressable storage into said system output register;

placing data from said host into said host input register;

wherein if said received address does not match one of said plurality of addresses corresponding to said cache data:

placing said host data into said location in said addressable storage from said host input register;

receiving system data corresponding to said received address from said system port into said system input register; and

subsequent to said step of placing said host data into said addressable storage, and without overwriting said host data, placing said system data corresponding to said received address from said system input register into said location in said addressable storage.

11. The computer system as recited in claim 4 wherein said host microprocessor operates at a first frequency, and wherein said system memory operates at a second frequency that is different from said first frequency.

12. The method for operating a cache memory apparatus as recited in claim 10, wherein data from a plurality of data

5,732,241

locations of said addressable storage are placed in said system output register during a single clock cycle.

13. The method for operating a cache memory apparatus as recited in claim 10, further comprising the step of coupling said host port to said system port when a read miss cycle occurs.

14. The method for operating a memory cache apparatus as recited in claim 10, wherein said step of placing data from said host into said host input register occurs in a first clock cycle, and wherein said step of placing said host data into said location in said addressable storage occurs on a second clock cycle, said second clock cycle immediately following said first clock cycle.

15. A computer system comprising:

a host processor having a host address bus and a host data bus for providing a host address and host data;

a system memory for storing system data, said system memory having a system data bus for providing system data;

a dual port cache memory for storing said host data and system data, said dual port cache memory including: addressable memory storage;

　　a host input register coupled to said addressable memory storage and to said host data bus for providing data from said host data bus to said addressable memory storage; and

　　a system input register coupled to said addressable memory storage and to said system data bus for receiving a line of said cache data from said data bus and providing said line of cache data to said addressable memory storage; and

a controller connected to said dual port cache memory and said host address bus, said controller containing a plurality of addresses corresponding to said cache data for receiving said host address from said host address bus and comparing said host address to said plurality of addresses, wherein when a match results from said comparing:

host data from said host input register is placed into said addressable memory storage at a location of said line of cache data; and

system data from said system input register is placed into said location of said line of cache data after said host data is placed into said addressable memory storage, wherein said host data is not overwritten.

16. A computer system comprising:

a host microprocessor having a host address bus and a host data bus;

a system memory having a system address bus and a system data bus;

a dual port cache memory including:
　　addressable storage,
　　a host port coupled to the host data bus,
　　a system port coupled to the system data bus,
　　a first input register for selectively writing input data to said addressable storage, said first input register being coupled between said host port and said addressable storage,
　　a first output register for selectively furnishing output data to said system port, said first output register being coupled between said addressable storage and said system port, said input data being provided to said addressable storage from said first input register at the same time that said output data is provided by said first output register to said system port,
　　a second input register for providing second input data to said addressable storage, said second input regis-

ter being coupled between said addressable storage and said system port, and
　　a second output register coupled between said addressable storage and said host port for providing second output data from said addressable storage to said host port, said second input data being provided to said addressable storage from said second input register at the same time that said second output data is provided by said second output register to said system port; and
　　a cache controller connected to said dual port cache memory, said cache controller having a first port connected to said host address bus and a second port connected to said system address bus such that said cache memory and said cache controller are connected in parallel between said host processor and said system memory,
　　said cache controller being connected to said dual port cache memory for providing a first address on said host address bus concurrently with providing a second address on said system address bus, said first address corresponding to a different memory location than said second address.

17. The computer system as recited in claim 16 wherein data on said host data bus is asynchronous to data on said system data bus.

18. The computer system as recited in claim 16 wherein said cache controller comprises:

a first control sequencer for controlling addressing and data signals on said host address bus and on said host data bus; and

a second control sequencer for controlling addressing and data signals on said system address bus and on said system data bus.

19. The computer system as recited in claim 16 further comprising means for disabling said dual port cache memory during a local bus access cycle.

20. The computer system as recited in claim 16 further comprising a peripheral device coupled to said system memory.

21. The computer system as recited in claim 20 wherein said peripheral device provides data to said system data bus, and wherein a hit address memory location within said dual port cache memory is loaded with said data from said peripheral device if the hit address of said dual port cache memory corresponds with an address of said data from said peripheral device.

22. The computer system as recited in claim 16 wherein said host microprocessor operates at a first frequency, and wherein said system memory operates at a second frequency that is different from said first frequency.

23. An apparatus as recited in claim 16 further comprising a bypass path coupled between said host port and said system port for directly allowing passage of data between said host port and said system port.

24. An apparatus as recited in claim 16, wherein said first input register is a memory write register, said second input register is an update register, said first output register is a write back register, and said second output register is a read hold register.

25. The cache memory apparatus as recited in claim 16 wherein said second input register can store a plurality of words of data.

26. The cache memory apparatus as recited in claim 25 further comprising means for masking writing of selected words of data into said random access memory.

* * * * *

EXHIBIT 5

US005488709A

# United States Patent [19]

## Chan

[11] **Patent Number:** 5,488,709

[45] **Date of Patent:** Jan. 30, 1996

[54] **CACHE INCLUDING DECOUPLING REGISTER CIRCUITS**

[75] Inventor: **Alfred K. Chan**, Milpitas, Calif.

[73] Assignee: **MOS Electronics, Corp.**, Sunnyvale, Calif.

[21] Appl. No.: **678,912**

[22] Filed: **Apr. 1, 1991**

### Related U.S. Application Data

[63] Continuation-in-part of Ser. No. 546,071, Jun. 27, 1990, abandoned.

[51] Int. Cl.⁶ ............................. **G06F 13/00**; G06F 13/28
[52] U.S. Cl. .......................... **395/445**; 395/458; 395/470; 395/476; 395/250
[58] Field of Search ...................................... 395/425, 250, 395/470, 476, 458, 445

[56] **References Cited**

#### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,075,686 | 2/1978 | Calle et al. | 395/275 |
| 4,371,927 | 2/1983 | Wilhite et al. | 395/250 |
| 4,403,288 | 9/1983 | Christian et al. | 395/275 |
| 4,577,293 | 3/1986 | Matick et al. | 395/425 |
| 4,620,275 | 10/1986 | Wallach et al. | 395/800 |
| 4,718,039 | 1/1988 | Aichelmann, Jr. et al. | 395/250 |
| 4,755,937 | 7/1988 | Glier | 395/425 |
| 4,888,741 | 12/1989 | Malinowski | 365/230.05 |
| 4,926,317 | 5/1990 | Wallach et al. | 395/400 |
| 5,056,002 | 10/1991 | Watanabe | 395/425 |
| 5,091,896 | 2/1992 | Sachs et al. | 395/250 |
| 5,193,175 | 3/1993 | Cutts, Jr. et al. | 395/575 |

### OTHER PUBLICATIONS

Intel Corporation, "i486 Microprocessor Hardware Manual", 1990, pp. 6–1 to 6–39.

*Primary Examiner*—Glenn Gossage
*Attorney, Agent, or Firm*—Skjerven, Morrill, MacPherson, Franklin & Friel

[57] **ABSTRACT**

A memory cache apparatus compatible with a wide variety of bus transfer types including non-burst and burst transfers. The memory cache apparatus includes a random access memory, a host port, and a system port. The memory cache apparatus further includes an input register connected to the host port for selectively writing data to the random access memory and an output register connected to the system port for receiving data from the random access memory and selectively furnishing the data to the host port or the system port. In one embodiment, the input register is a memory write register, and the output register includes a read hold register and a write back register. A cache memory system decouples a main memory subsystem from a host data bus so as to accommodate parallel cache-hit and system memory transfer operations for increased system speed and to hide system memory write-back cycles from a microprocessor. Differences in the speed of the local and system buses are accommodated, and an easy migration path from non-burst mode microprocessor based systems to burst mode microprocessor based systems is provided. Various memory organizations are accommodated including direct-mapped or one-way set associative, two-way set associative, and four-way set associative.

**26 Claims, 68 Drawing Sheets**



5,488,709

73

fetched first, eliminating what would be a large replacement time penalty.

It is also noted that port 113 interfaces with the Intel 386 or 486 processor in a manner similar to conventional SRAMs. If data parity is not checked as in most 386 systems, HP<8> and SP<8> can be left disconnected.

By decoupling the host and system data buses 112 and 113, processor cache accesses and system memory accesses can proceed simultaneously. Decoupling on a write-back cache allows write misses to be handled with zero wait states since read and write cache hits can proceed in parallel with the write miss data fetching. Moreover, when combined with the procedure implemented by each burst RAM memory chip for saving write-back data during read or write misses, the dual-port architecture allows write-back line replacement cycles to be completely hidden from the processor.

When cache used in sets of four, the burst RAM memory chips allow internal data transfers of four doublewords (128 bits) on reads or writes, achieving a true 128-bit quadword transfer in only one clock. When doing memory burst operations, the internal structure of the burst RAM memory chip behaves similar to a static column RAM in that the input buffer and word line delays occur only on the first access to the first subarray. Subsequent accesses in the burst are supplied by successive subarrays which are pre-addressed. This structure allows full speed burst accesses without the use of 10 nsec SRAMs.

The architecture of burst RAM cache memory 72 eliminates the historical disadvantage of write-back caches: having to do a replace cycle before doing the data fetch. With burst RAM cache memory 72, the replace data is saved within a set of latches of the burst RAM memory chips (memory write back registers 118A–118D) as soon as a miss is detected and thus allows the fetch to begin immediately. Only after the fetch is complete does a replacement cycle begin, and during that time, the host processor 60 can resume accessing the cache RAM array 100 through the host port 113. As an example, in a system with a two wait state memory and non-burst fetches, the use of burst RAM cache memory 72 allows the 386 to be operating at full speed after a read miss in just 5 clocks. Using standard SRAMs, the same system would take 48 clocks (32 clocks for two lines on a tag miss plus 16 clocks for the new data).

Decoupled buses also avoids the necessity to redesign the system memory subsystem every time the processor module is upgraded. In fact, the processor data bus and the system data bus can run at different speeds. Since the processor will work out of its cache subsystem more than 95% of the time, the system memory need not be redesigned to run at the same speed as the processor. This is especially true if the system uses a burst memory controller so that the cache memories can support burst operation to and from system memory. The main memory system might then operate at a reasonably easy to design speed of 20 MHz, while the processor module (processor, cache controller, and cache memories) operates at 25, 33, or even 40 MHz. Upgrading the processor from an 80386 to an 80486 would involve only minor design changes to main memory.

Also noted above, both of the 9-bit (eight bits plus parity) data ports 112 and 113 of each burst RAM memory chip support "demand word first" wrapped around quadword operations as well as scalar reads and writes. The system port 112 supports burst operations to and from system memory 38 if the system memory controller also supports burst.

The dual-port architecture of the burst RAM cache memory chip permits processor and main memory accesses

74

to occur in parallel, while hiding write-back cycles from the processor, contributing to a substantial performance increase over alternative implementations. The burst RAM cache memory chip fully supports an 80386 using a write-back cache, including support for non-cacheable accesses and multiple replacement cycles for lines longer than 16 bytes.

The cache memory 72 also supports quadword data fetch and, though not common in 386 systems, burst operation with main memory. If the cache and system memory controllers support burst operation, cache memory 72 will also support burst reads and writes to system memory 38. In an 80386 system which is designed for future upgrade to an 80486, the main memory subsystem may use Intel's strongly suggested 64-bit, bank interleaved main memory organization. This memory organization is accessed using the non-sequential burst order used by the 486. Cache memory 72 directly supports that burst order to and from main memory, as well as the sequential burst order used with the smaller, less expensive, and standardized 32-bit sequential memory organization.

If the system memory uses the design-intensive 64-bit, bank interleaved architecture recommended by Intel instead of the standard, 32-bit sequential architecture, then the system port 112 uses the 486 burst sequence to system memory 38 instead of sequential order. Burst RAM cache memory 72 supports both sequential and 486 burst ordering. In either case, the fetch data from main memory is brought in "demand word first" such that the first doubleword passes directly to the 386 through each corresponding bypass path 119 of cache memory 72. The 386 can then resume execution while the remainder of the burst data is brought in and stored in the RAM array 100.

Numerous modifications and variations will become apparent to those skilled in the art once the above disclosure is fully appreciated. It is to be understood that the above detailed description of the preferred embodiment is intended to be merely illustrative of the spirit and scope of the invention and should not be taken in a limiting sense. The scope of the claimed invention is better defined with reference to the following claims.

I claim:

1. A cache memory apparatus comprising:

a random access memory;

a host port;

a system port;

a memory write register for buffering first data received from said host port and selectively providing the first data to one of said random access memory, said system port, and said random access memory and said system port, said memory write register being coupled between said host port and said random access memory and between said host port and said system port; and

a write back register for holding second data received from said random access memory and selectively providing the second data to said system port, said write back register being coupled between said random access memory and said system port;

wherein the buffering and selective providing of the first data to said random access memory and the holding and selective providing of the second data to said system port allows memory accesses at said host port to be decoupled from memory accesses at said system port.

2. The cache memory apparatus as recited in claim 1 further comprising a read hold register coupled between said random access memory and said host port for buffering and providing burst read data from said random access memory to said host port.

5,488,709

75

3. The cache memory apparatus as recited in claim 1 further comprising a bypass path coupled between said host port and said system port for directly allowing passage of data between said host port and said system port.

4. The cache memory apparatus as recited in claim 1 wherein said random access memory includes storage for a plurality of parity bits.

5. The cache memory apparatus as recited in claim 1 wherein said random access memory is organized in a plurality of lines wherein each of said lines comprises a plurality of word storage locations, and wherein each of said word storage locations is selectively writable.

6. The cache memory apparatus as recited in claim 1 wherein said random access memory is written using a read-modify-write operation.

7. The cache memory apparatus as recited in claim 1 wherein said random access memory is single ported.

8. The cache memory apparatus as recited in claim 7 wherein said random access memory is accessed with a wider bandwidth than said host port and said system port.

9. An apparatus as in claim 1, further comprising a memory update register for holding fetched data and providing the fetched data to said random access memory, said memory update register being coupled between said random access memory and said system port, wherein the holding and selective providing of the second data and the holding of the fetched data allows write back and fetch operations at said system port to be decoupled from said random access memory.

10. The cache memory apparatus as recited in claim 9 further comprising means for identifying ones of the fetched data held in said memory update register as not corresponding to ones of the second data held in said write back register for write back to said system port, said identifying means being selective for the ones of the fetched data to be provided from said memory update register to said random access memory.

11. The cache memory apparatus as recited in claim 9 wherein said memory update register can store a plurality of words of the fetched data.

12. The cache memory apparatus as recited in claim 11 further comprising means for masking the providing of selected ones of said words of the fetched data to said random access memory.

13. A cache memory apparatus comprising:

a random access memory;

a host port;

a system port;

a memory write register coupled to said random access memory, to said host port, and to said system port for buffering and selectively providing input data received from said host port to one of said random access memory, said system port, and said random access memory and said system port; and

a write back register coupled to said system port and to said random access memory for holding output data received from said random access memory and selectively providing said output data to said system port; wherein the input data is provided to said random access memory from said memory write register at the same time that the output data is provided by said write back register to said system port, the buffering and selective providing of the input data to said random access memory and the holding and selective providing of the output data to said system port allowing memory accesses at said host port to be decoupled from memory accesses at said system port.

76

14. The cache memory apparatus as recited in claim 13 further comprising:

a miss address register coupled to said host port and to said random access memory for storing a cache miss address signal corresponding to a word of the output data to be received from said random access memory into said write back register; and

a hit address register coupled to said host port and to said random access memory for storing a cache hit address signal selective for a word stored in said random access memory.

15. The cache memory apparatus as recited in claim 14 further comprising a counter coupled to said miss address register.

16. The cache memory apparatus as recited in claim 15 wherein said counter increments from an address associated with a first line of data to an address associated with a subsequent line of data.

17. A cache memory apparatus comprising:

a random access memory;

a host port;

a system port;

a memory write register for buffering and selectively writing first input data to said random access memory, said memory write register being coupled between said host port and said random access memory;

a write back register for holding and selectively furnishing first output data to said system port, said write back register being coupled between said random access memory and said system port, the first input data being provided to said random access memory from said memory write register at the same time that the first output data is provided by said write back register to said system port, the selective writing of the first input data to said random access memory and the selective furnishing of the first output data to said system port allowing memory accesses at said host port to be decoupled from memory accesses at said system port;

a memory update register for holding and selectively providing second input data to said random access memory, said memory update register being coupled between said random access memory and said system port, wherein the holding and selective furnishing of the first output data and the holding and selective providing of the second input data allows write back and memory update operations at said system port to be decoupled from said random access memory; and,

a read hold register coupled between said random access memory and said host port for providing second output data from said random access memory to said host port, the second input data being provided to said random access memory from said memory update register at the same time that the second output data is provided by said read hold register to said host port.

18. An apparatus as recited in claim 17 further comprising a bypass path coupled between said host port and said system port for directly allowing passage of data between said host port and said system port.

19. The cache memory apparatus as recited in claim 17 wherein said memory update register can store a plurality of words of the second input data.

20. An apparatus as recited in claim 17, wherein the first input data comprises memory write data, the second input data comprises system fetch data, the first output data comprises system write back data, and the second output comprises burst read data.

5,488,709

77

**21**. The cache memory apparatus as recited in claim **20** further comprising means for masking writing of selected words of the system fetch data into said random access memory.

**22**. A cache memory apparatus comprising:

a random access memory;

a host port;

a system port;

a bypass path coupled between said host port and said system port for directly passing data between said host port and said system port;

a memory write register for buffering and selectively providing memory write data to one of said random access memory, said system port via said bypass path, and said random access memory and said system port via said bypass path, said memory write register being coupled to said bypass path and between said host port and said random access memory;

a write back register for holding and selectively furnishing write back data to said system port, said write back register being coupled between said random access memory and said system port, said write back register allowing the write back data to be furnished to said system port at the same time that said memory write register provides the memory write data to said random access memory;

a memory update register for holding and selectively providing system fetch data to said random access memory, said memory update register being coupled between said random access memory and said system port, wherein the holding and selective furnishing of the write back data and the holding and selectively providing of the system fetch data allows write back and memory update operations at said system port to be decoupled from said random access memory; and

a read hold register coupled between said random access memory and said host port for buffering and providing burst read data from said random access memory to

78

said host port, said read hold register allowing the burst read data to be provided to said host port at the same time that said memory update register provides the system fetch data to said random access memory.

**23**. The cache memory apparatus as recited in claim **22** wherein said memory update register can store a plurality of words of the system fetch data.

**24**. The cache memory apparatus as recited in claim **22** further comprising means for masking writing of selected words of the system fetch data into said random access memory.

**25**. The cache memory apparatus as recited in claim **22** further comprising:

a miss address register coupled to said host port and to said random access memory for storing a cache miss address signal, the cache miss address signal being selective for words of the fetch data to be received into said memory update register and corresponding to words of the write back data to be held in said write back register and replaced in said random access memory by the words of fetch data; and

a hit address register coupled to said host port and to said random access memory for storing a cache hit address signal selective for a word stored in said random access memory.

**26**. The cache memory apparatus as recited in claim **22** further comprising means for identifying ones of the fetched data held in said memory update register as not corresponding to ones of the write back data held in said write back register for write back to said system port, said identifying means being selective for the ones of the fetched data to be provided from said memory update register to said random access memory.

*   *   *   *   *

# EXHIBIT 6

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| PROMOS TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 06-788-JJF |
| | ) | |
| v. | ) | |
| | ) | |
| FREESCALE SEMICONDUCTOR, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF PROMOS TECHNOLOGIES, INC.'S**
**FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS**
**FROM DEFENDANT FREESCALE SEMICONDUCTOR, INC. (Nos. 1-117)**

Pursuant to Rules 34 and 26 of the Federal Rules of Civil Procedure, Plaintiff

ProMOS Technologies, Inc. ("ProMOS") hereby requests that defendant Freescale

Semiconductor, Inc. ("Freescale") produce for inspection and/or copying the following

documents and things at the offices of Hogan & Hartson, LLP, Columbia Square, 555 13th Street,

N.W., Washington, D.C., 20004, or such other mutually agreed upon location, within thirty (30)

days of the date of service of these requests.

**DEFINITIONS**

1.     The terms "Plaintiff" and "ProMOS" refer to ProMOS Technologies, Inc., and its

officers, agents, employees, and representatives.

2.     The terms "Defendant," "you," "your," and "Freescale" refer to Defendant

Freescale Semiconductor, Inc., including but not limited to its divisions, subsidiaries, directors,

agents, representatives, attorneys and employees, and any predecessor in interest.

3.     The term "Complaint" means the Complaint and any amended Complaints filed by

Plaintiff in this action.

4.     The term "Answer" means the Answer and Affirmative Defenses, or any amendments thereto, filed by Defendant in this action.  Whenever a request refers to or quotes from the Answer, all words in the request have the same meaning as in the Answer.

5.     The term "Counterclaims" means the Counterclaims, or any amendments thereto, filed by Defendant in this action.  Whenever a request refers to or quotes from the Counterclaims, all words in the request have the same meaning as in the Counterclaims.

6.     The term "document" as used herein is employed in the broadest possible sense under Rule 34 and includes, but is not limited to, any printed, written, recorded, taped, electronic (including e-mail and deleted electronic media that is recoverable in any form), graphic, or other tangible matter from whatever source, however produced or reproduced, whether in draft or otherwise, whether sent or received or neither, including the original, all amendments and addenda and any non-identical copy (whether different from the original because of notes made on or attached to such copy or otherwise ) of any and all writings, correspondence, letters, telegraphs, telex communicants, cables, notes, notations, papers, newsletters, memoranda, interoffice communications, e-mails, releases, agreements, contracts, books, pamphlets, studies, minutes of meetings, recordings or other memorials of any type of personal or telephone conversations, meetings or conferences, reports, analyses, test results, examinations, evaluations, estimates, projections, forecasts, receipts, statements, accounts, books of account, diaries, calendars, desk pads, appointment books, stenographer's notebooks, transcripts, ledgers, registers, worksheets, journals, statistical records, cost sheets, summaries, lists, tabulations, digests, canceled or uncanceled checks or drafts, vouchers, charge slips, invoices, purchase orders, hotel charges, accountant's reports, financial statements, newspapers, periodicals or magazine materials, and any materials underlying, supporting, or used in the preparation of any

documents.  The term "document(s)" also specifically includes any records stored on computer tape or computer disk or otherwise stored by or in a computer, including telephone voice mail or electronic mail, whether or not a hard copy (i.e., paper copy) of the document is or was at any time in existence.  A document includes all documents appended thereto.  The documents requested shall include all marked copies.  A "marked copy" is any document containing any writing or any markings of any kind in the text, in the margins, or on the reverse side of the document.

7.    The term "person(s)" includes any natural person, corporation, partnership, association, joint venture, sole proprietorship, firm, business enterprise, governmental or quasi-governmental body or agency, or legal entity of any type, and includes both the singular and plural.

8.    The term "communications" means all oral, visual, or other sensory means of transmitting information, messages, or statements, including but not limited to correspondence, letters, memoranda, e-mails (with any attachment(s)), meeting minutes, transcripts of telephone conversations, and presentations.

9.    The terms or phrases "relating to," "relate(s)," or "related to" includes, but is not limited to, constituting, comprising, consisting of, containing, setting forth, describing, discussing, citing, regarding, pertaining to, mentioning, proposing, showing, disclosing, containing, analyzing, explaining, summarizing, supporting, evidencing, authorizing, concerning, embodying, reflecting, identifying, incorporating, considering, recommending, continuing, enumerating, dealing with, commenting on, referring to directly or indirectly, dealing with, responding to, or in any way logically or factually relevant to the matter described in the request.

10.    The term "date" means the exact day, month and year, if ascertainable, or, if not, the best available approximation, including relationship to other events.

11.    The terms "and" as well as "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these requests any documents that otherwise would be construed to be outside their scope.

12.    The terms "ProMOS patents," "ProMOS patents-in-suit," and "patents-in-suit," mean United States Letters Patent No. 5,488,709 ("the '709 patent") entitled "Cache Including Decoupling Register Circuits;" United States Letters Patent No. 5,732,241 ("the '241 patent") entitled "Random Access Cache Memory Controller and System;" and United States Letters Patent No. 6,670,267 ("the '267 patent") entitled "Formation of Tungsten-Based Interconnect Using Thin Physically Vapor Deposited Titanium Nitride Layer."

13.    With respect to the '709 patent and the '241 patent, the term "inventor" shall mean Alfred K. Chan.  With respect to the '267 patent, the term "inventor" shall mean Vincent Fortin.  The term "inventors" shall mean Messrs. Chan and Fortin together.

14.    The term "infringement" shall be defined broadly to include direct, contributory and induced infringement under the applicable laws.

15.    The term "market," as a verb, shall mean to sell, lease, license, exhibit or distribute; or to offer to sell, lease, license, exhibit or distribute.

16.    The term "sale" means and refers to any exchange of goods, services or other property for value and includes transferring goods to another party on a consignment basis, regardless of whether title has passed.

17.    As used herein, "prior art" includes any reference or subject matter set forth in or relevant under 35 U.S.C. § 102 and 35 U.S.C. § 103.

18.     The term "Freescale Product(s)" includes:  microcontrollers, microprocessors, processors, digital signal processors, controller cores, processor cores and all other components or goods you manufacture or market for sale or sell in any way that use, incorporate, work with or rely on cache memory; systems, components, products and goods that use, incorporate work with or rely on microcontrollers, microprocessors, processors, digital signal processors, controller cores, processor cores or other components or goods that use, incorporate, work with or rely on cache memory; and integrated circuits and semiconductor products that incorporate one or more conductors that includes a layer of tungsten overlying a layer of titanium nitride, such conductors including, but not limited to, those formed using Damascene and dual Damascene processes.

## **INSTRUCTIONS**

1.     In responding to these requests, you shall furnish all documents that are in your possession, custody, or control; or are within the possession, custody, or control of your officers, directors, employees, agents, representatives, present or former contractors, consultants, investigators, or attorneys; or otherwise available to you, regardless of whether documents are possessed directly by you, or any parent, subsidiary or affiliated corporation, or any of such entity's officers, directors, employees, agents, representatives, present or former contractors, consultants, investigators or attorneys.

2.     Organize and label each document or set of documents, indicating by number the request to which the document(s) relates.  In your written response, provide the document production (i.e. "Bates") number(s) for document(s) responsive to each request.

3.     Electronic and computerized information must be produced in an intelligible format or together with a description of the system from which it was derived sufficient to permit rendering of the materials intelligible.

4.      If any document responding to all or any part of this Request is not currently available, include a statement to that effect and furnish whatever documents are available. Include in your statement when such documents were most recently in your possession or subject to your control and what disposition was made of them, identifying the name, job title, and the last known address of each person currently in possession or control of such documents. If any of such documents were destroyed, identify the name, job title and the last known business address of each person who directed that the documents be destroyed, and state the reasons the documents were destroyed. If you do not have a document responsive to a request, but you know of person(s) or organization(s) who may have all or any portion of the document, then all such information, including names, addresses, and telephone numbers, shall be disclosed in your written response.

5.      If any document or portion of any document covered by this Request for Production is withheld from production due to a claim of privilege, protection, or other grounds for non-disclosure, furnish a list of all such documents withheld that provides the following information: (a) the "Bates" number(s); (b) the identity of the person(s) who prepared or authorized the preparation of the document and, if applicable, the person(s), addresses, and organization  to whom the document was sent or shown; (c) the date (or your best approximation thereof) on which the document was prepared; (d) a description of the type of document (e.g., letter, ledger, etc.); (e) the subject matter of the document; (f) a brief reason why the document is claimed to be privileged, protected, or subject to non-disclosure; and (g) the paragraph(s) of this Request to which the document responds.

6.      This Request is continuing and requires, to the extent authorized by Rule 26(e) of the Federal Rules of Civil Procedure, production of any additional responsive documents that

may be located or acquired by you or your employees after the date of your original production.

7.    Unless otherwise indicated in a particular request, the relevant time period for each Request shall be from January 1, 2000, to the present.

### SPECIFIC REQUESTS FOR PRODUCTION

**REQUEST NO. 1:**

All documents identified, requested to be identified, relied upon, reviewed, or consulted in responding to Plaintiff's First Set of Interrogatories to Defendant.

**REQUEST NO. 2:**

All written policies, procedures and guidelines related to Freescale's computers, computer systems, electronic data and electronic media that hold, contain, save, or manage documents, including, but not limited to, (a) back up tape rotation schedules; (b) electronic data retention, preservation and destruction schedules; (c) employee use of company computers and data; (d) file naming conventions and standards; (e) diskette, CD, DVD, and other removable media labeling standards; and (e) e-mail storage (i.e., limitations on mailbox sizes and storage locations).

**REQUEST NO. 3:**

Documents sufficient to show your document retention and/or destruction policies and/or practices from 2000 to the present.

**REQUEST NO. 4:**

Organizational charts for all of your Information Technology-related or Information Services-related departments or divisions.

**REQUEST NO. 5:**

Documents sufficient to show your past and present organizational and operational structure, including all divisions or subsidiaries, entities owned or controlled by

Freescale, affiliates, predecessors or successors in interest, whether in the United States, or anywhere else in the world, and the identity of the officers and managers of each such entity.

**REQUEST NO. 6:**

   All documents that identify present employees, past employees, consultants, and contract employees, whether full or part time, whose responsibilities or assignment include work relating to the conception, design, development, manufacture, analysis, testing, marketing, sales or repair of each Freescale Product, including but not limited to, organizational charts and telephone or email directories.

**REQUEST NO. 7:**

   All documents that identify present employees, past employees, consultants, and contract employees, whether full or part time, whose responsibilities or assignment include work relating to the conception, design, development, manufacture, analysis, testing, marketing, sales or repair of each cache memory used with or in, incorporated in or relied on by a Freescale Product, including but not limited to, organizational charts and telephone or email directories.

**REQUEST NO. 8:**

   All documents that identify present employees, past employees, consultants, and contract employees, whether full or part time, whose responsibilities or assignment include work relating to the conception, design, development, manufacture, analysis, testing, marketing, sales or repair of any register(s) used in writing, reading, buffering or accessing data from or to each cache memory used with or in, incorporated in or relied on by a Freescale Product, including but not limited to, organizational charts and telephone or email directories.

**REQUEST NO. 9:**

   All documents that identify present employees, past employees, consultants, and

contract employees, whether full or part time, whose responsibilities or assignment include work relating to the conception, design, development, manufacture, analysis, testing, marketing, sales or repair of each cache controller used with or in, incorporated in or relied on by a Freescale Product, including but not limited to, organizational charts and telephone or email directories.

**REQUEST NO. 10:**

All documents that identify present employees, past employees, consultants, and contract employees, whether full or part time, whose responsibilities or assignment include work relating to the conception, design, development, manufacture, analysis, testing, marketing, sales or repair of each process for forming conductors that include a layer of tungsten overlying a layer of titanium nitride used with or in, incorporated in or relied on by a Freescale Product, including but not limited to, organizational charts and telephone or email directories.

**REQUEST NO. 11:**

Documents sufficient to identify, describe, illustrate, or depict names and/or functions of subsidiaries, departments, or divisions that were involved in any manner in the conception, design, development, manufacture, analysis, testing, marketing, sales or repair of any Freescale Product.

**REQUEST NO. 12:**

Documents sufficient to identify, describe, illustrate, or depict names and/or functions of subsidiaries, departments, or divisions that were involved in any manner in the conception, design, development, manufacture, analysis, testing, marketing, sales or repair of each cache memory used with, incorporated in or relied on by any Freescale Product.

**REQUEST NO. 13:**

Documents sufficient to identify, describe, illustrate, or depict names and/or

functions of subsidiaries, departments, or divisions that were involved in any manner in the conception, design, development, manufacture, analysis, testing, marketing, sales or repair of any register(s) used in writing, reading, buffering or accessing data from or to each cache memory used with or in, incorporated in or relied on by a Freescale Product.

**REQUEST NO. 14:**

Documents sufficient to identify, describe, illustrate, or depict names and/or functions of subsidiaries, departments, or divisions that were involved in any manner in the conception, design, development, manufacture, analysis, testing, marketing, sales or repair of each cache controller used with or in, incorporated in or relied on by a Freescale Product.

**REQUEST NO. 15:**

Documents sufficient to identify, describe, illustrate, or depict names and/or functions of subsidiaries, departments, or divisions that were involved in any manner in the conception, design, development, manufacture, analysis, testing, marketing, sales or repair of each process for forming conductors that include a layer of tungsten overlying a layer of titanium nitride used with or in, incorporated in or relied on by a Freescale Product.

**REQUEST NO. 16:**

All documents relating to third parties contracted, consulted, hired and/or retained that worked with Freescale or worked with another third party on Freescale's behalf on the conception, design, development, implementation, testing and manufacturing of each version of each model of Freescale Product, including but not limited to, contracts, contract proposals, Requests for Proposals (RFPs), solicitations, queries, investigations, and capability studies.

**REQUEST NO. 17:**

All documents relating to third parties contracted, consulted, hired and/or retained

that worked with Freescale or worked with another third party on Freescale's behalf on the conception, design, development, implementation, testing and manufacturing of each version of each cache memory used with, incorporated in or relied on by any Freescale Product, including but not limited to, contracts, contract proposals, Requests for Proposals (RFPs), solicitations, queries, investigations, and capability studies.

**REQUEST NO. 18:**

        All documents relating to third parties contracted, consulted, hired and/or retained that worked with Freescale or worked with another third party on Freescale's behalf on the conception, design, development, implementation, testing and manufacturing of each version of each register(s) used in writing, reading, buffering or accessing data from or to each cache memory used with, incorporated in or relied on by a Freescale Product, including but not limited to, contracts, contract proposals, Requests for Proposals (RFPs), solicitations, queries, investigations, and capability studies.

**REQUEST NO. 19:**

        All documents relating to third parties contracted, consulted, hired and/or retained that worked with Freescale or worked with another third party on Freescale's behalf on the conception, design, development, implementation, testing and manufacturing of each version of each cache controller used with, incorporated in or relied on by a Freescale Product, including but not limited to, contracts, contract proposals, Requests for Proposals (RFPs), solicitations, queries, investigations, and capability studies.

**REQUEST NO. 20:**

        All documents relating to third parties contracted, consulted, hired and/or retained that worked with Freescale or worked with another third party on Freescale's behalf on the

conception, design, development, implementation, testing and manufacturing of each version of each process for forming conductors that include a layer of tungsten overlying a layer of titanium nitride used with or in, incorporated in or relied on by a Freescale Product, including but not limited to, contracts, contract proposals, Requests for Proposals (RFPs), solicitations, queries, investigations, and capability studies.

**REQUEST NO. 21:**

Your annual reports, prospectuses, proxy statements and Form 10-K and Form 10-Q reports for the years 2000 to the present.

**REQUEST NO. 22:**

All documents relating to design reviews and design review meetings, including but not limited to, all notes, minutes, reports, action item lists and management summaries, relating to each version of each model of Freescale Product.

**REQUEST NO. 23:**

All documents relating to design reviews and design review meetings, including but not limited to, all notes, minutes, reports, action item lists and management summaries, relating to each version of each cache memory used with, incorporated in or relied on by any Freescale Product.

**REQUEST NO. 24:**

All documents relating to design reviews and design review meetings, including but not limited to, all notes, minutes, reports, action item lists and management summaries, relating to each version of each register(s) used in writing, reading, buffering or accessing data from or to each cache memory used with, incorporated in or relied on by a Freescale Product.

**REQUEST NO. 25:**

All documents relating to design reviews and design review meetings, including but not limited to, all notes, minutes, reports, action item lists and management summaries, relating to each version of each cache controller used with, incorporated in or relied on by a Freescale Product.

**REQUEST NO. 26:**

All documents relating to design reviews and design review meetings, including but not limited to, all notes, minutes, reports, action item lists and management summaries, relating to each version of each process for forming conductors that include a layer of tungsten overlying a layer of titanium nitride used with or in, incorporated in or relied on by a Freescale Product.

**REQUEST NO. 27:**

All documents relating to drawings, schematics, blueprints, manufacturing specifications, engineering specifications, design specifications, product test specifications, part specifications, assembly specifications and other documents relating to the design, development, or manufacture of any Freescale Product.

**REQUEST NO. 28:**

All documents relating to drawings, schematics, blueprints, manufacturing specifications, engineering specifications, design specifications, product test specifications, part specifications, assembly specifications and other documents relating to the design, development, or manufacture of each cache memory used with, incorporated in or relied on by any Freescale Product.

**REQUEST NO. 29:**

All documents relating to drawings, schematics, blueprints, manufacturing specifications, engineering specifications, design specifications, product test specifications, part specifications, assembly specifications and other documents relating to the design, development, or manufacture of each register(s) used in writing, reading, buffering or accessing data from or to each cache memory used with, incorporated in or relied on by a Freescale Product.

**REQUEST NO. 30:**

All documents relating to drawings, schematics, blueprints, manufacturing specifications, engineering specifications, design specifications, product test specifications, part specifications, assembly specifications and other documents relating to the design, development, or manufacture of each cache controller used with, incorporated in or relied on by a Freescale Product.

**REQUEST NO. 31:**

All documents relating to drawings, schematics, blueprints, manufacturing specifications, engineering specifications, design specifications, product test specifications, part specifications, assembly specifications and other documents relating to the design, development, or manufacture of each process for forming conductors that include a layer of tungsten overlying a layer of titanium nitride used with or in, incorporated in or relied on by a Freescale Product.

**REQUEST NO. 32:**

All versions of operation manuals, repair manuals, or user manuals for any Freescale Product.

**REQUEST NO. 33:**

All manufacturing and/or production drawings for any Freescale Product,

including but not limited to hardware drawings, engineering drawings, assembly drawings, and blueprints.

**REQUEST NO. 34:**

All manufacturing and/or production drawings for each cache memory used with, incorporated in or relied on by any Freescale Product, including but not limited to hardware drawings, engineering drawings, assembly drawings, and blueprints.

**REQUEST NO. 35:**

All manufacturing and/or production drawings for each register(s) used in writing, reading, buffering or accessing data from or to each cache memory used with, incorporated in or relied on by a Freescale Product, including but not limited to hardware drawings, engineering drawings, assembly drawings, and blueprints.

**REQUEST NO. 36:**

All manufacturing and/or production drawings for each cache controller used with, incorporated in or relied on by a Freescale Product, including but not limited to hardware drawings, engineering drawings, assembly drawings, and blueprints.

**REQUEST NO. 37:**

All manufacturing and/or production drawings for each process for forming conductors that include a layer of tungsten overlying a layer of titanium nitride used with or in, incorporated in or relied on by a Freescale Product.

**REQUEST NO. 38:**

All documents relating to the conception, engineering, design, research, development, manufacture, testing, use, repair and/or operation of each version of each model of Freescale Product, including but not limited to specifications, schematics, block diagrams, data

- 15 -

sheets, layouts, databases, depictions, photographs, simulations, test results, manuals, journals, notes, notebooks, communications, and correspondence.

**REQUEST NO. 39:**

All documents relating to the conception, engineering, design, research, development, manufacture, testing, use, repair and/or operation of each version of each cache memory used with, incorporated in or relied on by any Freescale Product, including but not limited to specifications, schematics, block diagrams, data sheets, layouts, databases, depictions, photographs, simulations, test results, manuals, journals, notes, notebooks, communications, and correspondence.

**REQUEST NO. 40:**

All documents relating to the conception, engineering, design, research, development, manufacture, testing, use, repair and/or operation of each version of each register(s) used in writing, reading, buffering or accessing data from or to each cache memory used with, incorporated in or relied on by a Freescale Product, including but not limited to specifications, schematics, block diagrams, data sheets, layouts, databases, depictions, photographs, simulations, test results, manuals, journals, notes, notebooks, communications, and correspondence.

**REQUEST NO. 41:**

All documents relating to the conception, engineering, design, research, development, manufacture, testing, use, repair and/or operation of each version of each cache controller used with, incorporated in or relied on by a Freescale Product, including but not limited to specifications, schematics, block diagrams, data sheets, layouts, databases, depictions, photographs, simulations, test results, manuals, journals, notes, notebooks, communications, and correspondence.

**REQUEST NO. 42:**

All documents relating to the conception, engineering, design, research, development, manufacture, testing, use, repair and/or operation of each process for forming conductors that include a layer of tungsten overlying a layer of titanium nitride used with or in, incorporated in or relied on by a Freescale Product, including but not limited to specifications, schematics, block diagrams, data sheets, layouts, databases, depictions, photographs, simulations, test results, manuals, journals, notes, notebooks, communications, and correspondence.

**REQUEST NO. 43:**

For each Freescale Product, documents sufficient to show the place and process of manufacture, models manufactured, units manufactured, and destination of units manufactured.

**REQUEST NO. 44:**

To the extent not produced in response to any other request, all reference designs and schematics relating to each version of each model of Freescale Product.

**REQUEST NO. 45:**

All pictures or photographs of Freescale Products, including but not limited to any die or portion of any die.

**REQUEST NO. 46:**

Circuit diagrams for each version of each model of Freescale Product.

**REQUEST NO. 47:**

Circuit diagrams for each version of each cache memory used with, incorporated in or relied on by any Freescale Product.

**REQUEST NO. 48:**

Circuit diagrams for each version of each register(s) used in writing, reading,

- 17 -

buffering or accessing data from or to each cache memory used with, incorporated in or relied on by a Freescale Product.

**REQUEST NO. 49:**

Circuit diagrams for each version of each cache controller used with, incorporated in or relied on by a Freescale Product.

**REQUEST NO. 50:**

Process flows and process recipes for each version of each model of Freescale Product.

**REQUEST NO. 51:**

Process flows and process recipes for each version of each process for forming conductors that include a layer of tungsten overlying a layer of titanium nitride used with or in, incorporated in or relied on by a Freescale Product.

**REQUEST NO. 52:**

All documents relating to source code, object code, pseudo code, flow charts or design specifications of the circuit diagrams, Verilog code and/or VHDL code, and reticle layout code for each version of each model of Freescale Product.

**REQUEST NO. 53:**

All documents relating to source code, object code, pseudo code, flow charts or design specifications of the circuit diagrams, Verilog code and/or VHDL code, and reticle layout code for each version of each cache memory used with, incorporated in or relied on by any Freescale Product.

**REQUEST NO. 54:**

All documents relating to source code, object code, pseudo code, flow charts or

design specifications of the circuit diagrams, Verilog code and/or VHDL code, and reticle layout code for each version of each register(s) used in writing, reading, buffering or accessing data from or to each cache memory used with, incorporated in or relied on by a Freescale Product.

**REQUEST NO. 55:**

All documents relating to source code, object code, pseudo code, flow charts or design specifications of the circuit diagrams, Verilog code and/or VHDL code, and reticle layout code for each version of each cache controller used with, incorporated in or relied on by a Freescale Product.

**REQUEST NO. 56:**

Documents sufficient to identify the date of all revisions to circuit diagrams, source code, Verilog code and/or VHDL code, and reticle layout code for each version of each model of Freescale Product.

**REQUEST NO. 57:**

All documents relating to the operation of each version of each model of Freescale Product.

**REQUEST NO. 58:**

All documents relating to the operation of each version of each cache memory used with, incorporated in or relied on by any Freescale Product.

**REQUEST NO. 59:**

All documents relating to the operation of each version of each register(s) used in writing, reading, buffering or accessing data from or to each cache memory used with, incorporated in or relied on by a Freescale Product.

**REQUEST NO. 60:**

All documents relating to the operation of each version of each cache controller used with, incorporated in or relied on by a Freescale Product.

**REQUEST NO. 61:**

All engineering change orders or notices for each version of each model of Freescale Products.

**REQUEST NO. 62:**

Documents sufficient to show the device and system architecture of each version of each model of Freescale Product.

**REQUEST NO. 63:**

All documents relating to comparative testing of each version of each model of Freescale Products.

**REQUEST NO. 64:**

All prototypes and models of Freescale Products, from initial prototype to commercial and/or production models made from 2000 to the present.

**REQUEST NO. 65:**

Complete copies of all licenses or agreements to which you are a party, including but not limited to cross-licenses, inter-company agreements, settlements, covenants not to enforce or releases that relate in any way to integrated circuit manufacturing, microprocessor, microcontroller, DRAM, SDRAM or memory technologies.

**REQUEST NO. 66:**

All documents that refer to, discuss, evidence, mention or constitute any contracts or license agreements, including drafts, in which Freescale has licensed, or licenses, or

considering licensing products, technology or patents from or to third parties relating to microprocessor, microcontroller, processor or memory technologies.

**REQUEST NO. 67:**

All documents relating to your policies on licensing or cross-licensing patents, know-how or technology.

**REQUEST NO. 68:**

Documents sufficient to identify any third parties that manufacture any Freescale Products.

**REQUEST NO. 69:**

All articles, speeches, presentations or interviews, both internal and external, that have been written and/or given by your employees, officers, directors or other of your representatives relating to Freescale Products.

**REQUEST NO. 70:**

All press releases from 2000 to the present relating to Freescale Products.

**REQUEST NO. 71:**

All documents relating to ProMOS or the patents-in-suit, including but not limited to documents that relate to your first awareness of any of the patents-in-suit and your earliest notice of potential infringement of any of the patents-in-suit.

**REQUEST NO. 72:**

All documents relating to communications exchanged between you and any third party relating to the patents-in-suit, this lawsuit and/or ProMOS.

**REQUEST NO. 73:**

Each Freescale meeting agenda, corporate minutes or minutes of meetings relating to the patents-in-suit, this lawsuit and/or ProMOS products.

**REQUEST NO. 74:**

All documents relating to any effort by Freescale or anyone else on its behalf to design, redesign, commercialize or modify any Freescale Product in view of the patents-in-suit.

**REQUEST NO. 75:**

All documents relating to any attempt by Freescale or anyone on its behalf to design around and/or avoid infringement of the patents-in-suit by any Freescale Product.

**REQUEST NO. 76:**

All documents related or referring to any ProMOS patent.

**REQUEST NO. 77:**

All documents relating to your evaluation, analysis, or consideration of the patents in-suit, including but not limited to any reverse engineering or testing performed on any Freescale Product.

**REQUEST NO. 78:**

All documents relating to your consideration of whether or not to obtain a license from ProMOS for the patents-in-suit.

**REQUEST NO. 79:**

All documents found or identified during any enforceability, prior art or invalidity searches, or any other studies relating to the patents-in-suit, including any copies of patents, publications, or other prior art identified during such searches or studies.

**REQUEST NO. 80:**

All documents that relate, support, or contradict Freescale's assertion that the patents-in-suit are invalid for any reason, including but not limited to anticipation or obviousness.

**REQUEST NO. 81:**

All documents that Freescale contends constitute prior art to the patents-in-suit.

**REQUEST NO. 82:**

All documents that relate, support, or contradict Freescale's assertion that the patents-in-suit are unenforceable.

**REQUEST NO. 83:**

All opinion letters, memoranda, or other documents relating to your contentions on validity/invalidity, infringement/non-infringement, or enforceability/unenforceability of the patents-in-suit.

**REQUEST NO. 84:**

All documents supporting, refuting or relating in any way to the affirmative defenses or counterclaims set forth in your Answer to the Complaint.

**REQUEST NO. 85:**

All documents relating to any contention by you that your products do not infringe the patents-in-suit, including but not limited to documents relating to the interpretation, scope, and meaning of the claims in any of the patents-in-suit.

**REQUEST NO. 86:**

All opinions of counsel obtained with respect to infringement, validity, or enforceability of the patents-in-suit upon which you intend to rely at trial to defend against claims of willful infringement, inducement to infringe, or contributory infringement.

**REQUEST NO. 87:**

All communications or opinions of officers, directors and/or employees of yours with respect to infringement, validity, or enforceability of the patents-in-suit or regarding any licensing negotiations with ProMOS.

**REQUEST NO. 88:**

Documents sufficient to show by month or calendar quarter for each year since 2000 the number of each version of each model of Freescale Product manufactured, used, sold or distributed in the United States.

**REQUEST NO. 89:**

Documents sufficient to show by month or calendar quarter for each year since 2000 the volume of sales in dollars from the sale or distribution of each version of each model of Freescale Product.

**REQUEST NO. 90:**

All projections, forecasts, business plans, strategic plans, fiscal plans, marketing plans or sales plans relating to the sale of Freescale Products from 2000 to the present, including documents containing projections through calendar year 2012.

**REQUEST NO. 91:**

All documents relating to the means by which sales or sales information relating to each version of each model of Freescale Product is maintained and tracked by or on behalf of Freescale.

**REQUEST NO. 92:**

All versions of all part number decoders or legends for each version of each model of Freescale Product.

**REQUEST NO. 93:**

Current and historical price lists for each version of each model of Freescale Product.

**REQUEST NO. 94:**

All documents relating to returns of, or complaints, dissatisfaction, negative comments, unfavorable opinions or suggestions for improvement regarding each version of each model of Freescale Products.

**REQUEST NO. 95:**

All documents relating to favorable, positive, commendatory, or complimentary feedback, comments or opinions regarding each version of each model of Freescale Products.

**REQUEST NO. 96:**

All documents relating to favorable, positive, commendatory, or complimentary feedback, comments or opinions regarding any ProMOS product.

**REQUEST NO. 97:**

All documents relating to sales, distribution or importation agreements entered into between Freescale and any third party for each version of each model of Freescale Product.

**REQUEST NO. 98:**

Documents sufficient to show each of your distributors, resellers and customers of each version of each model of Freescale Product.

**REQUEST NO. 99:**

All documents relating to purchase orders and/or specifications received from customers or potential customers for each version of each model of Freescale Product, including all drawings and information received therewith.

**REQUEST NO. 100:**

All documents relating to market shares for Freescale and its competitors for each of the Freescale Products.

**REQUEST NO. 101:**

Summary documents categorized by year and by product type and name regarding the following:  (1) Freescale's total unit and dollar volumes for Freescale Products manufactured, sold, or offered for sale by you from 2000 to the present, including projections through calendar year 2012; and (2) revenues, costs (fixed and variable), gross profit, and net profit for all such products manufactured, sold or offered for sale by you from 2000 to the present, including projections through calendar year 2012.

**REQUEST NO. 102:**

Summary documents categorized by year and by product type and name regarding gross expenses, including but not limited to direct labor costs, direct manufacturing costs, selling costs, variable overhead costs, incurred in the manufacture, distribution, or sale of Freescale Products from 2000 to the present, including projections through calendar year 2012.

**REQUEST NO. 103:**

Documents sufficient to show the date of the first sale of each Freescale Product.

**REQUEST NO. 104:**

Summary documents identifying the distributors and retailers to whom you have sold each Freescale Product from 2000 through the present, including the name, address, product(s) sold by model number, number of units sold, date of sale, date of shipment, and sales price.

**REQUEST NO. 105**:

Financial statements, including profit and loss statements, income statements, balance sheets, statements of cash flow, statements of retained earnings, and notes thereto for Freescale and any of its affiliates, divisions, subsidiaries, or parent companies.

**REQUEST NO. 106:**

All documents relating to market, industry or consumer studies, surveys, or analyses of any Freescale Product and/or any competitor's product.

**REQUEST NO. 107:**

All drafts, proposals, and final copies of advertising, sales, or promotional literature, including but not limited to television and print media advertising, brochures and trade show promotional material, catalogues, price lists, sell sheets, product descriptions, sales literature, drawings, videotapes, audio tapes, electronic media, or photographs for advertising, point-of-sale commercials, or other promotional material for Freescale Products.

**REQUEST NO. 108:**

All memoranda, correspondence, bulletins, newsletters, or other documents that currently or since 2000 have been distributed to, made available to, received from, or drafted by your present or former employees engaged in marketing or sales functions relating to Freescale Products.

**REQUEST NO. 109:**

All documents prepared by, provided by, sent to, or received from your advertising agencies or public relations firms relating to any Freescale Product.

**REQUEST NO. 110:**

All documents that you may introduce as exhibits at the trial of this matter.

**REQUEST NO. 111:**

All documents identifying by name, company, address and title, all third parties hired by you or your counsel to investigate the above-captioned litigation, ProMOS, the patents-in-suit, or any ProMOS products.

**REQUEST NO. 112:**

Ten samples of each Freescale Product.

**REQUEST NO. 113:**

Any and all witness statements taken in connection with this litigation.

**REQUEST NO. 114:**

All documents provided to any person(s) that you expect to call as an expert witness at trial.

**REQUEST NO. 115:**

All documents relied upon by any person(s) that you expect to a call as an expert witness at trial in forming the opinion(s) as to which the person(s) will or may testify.

**REQUEST NO. 116:**

All documents relating to each person you employ, have employed, or have retained as an expert, including but not limited to curriculum vitae, resumes, retention agreements, letters, statements, and communications.

**REQUEST NO. 117:**

All documents on which you intend to rely for and/or that might be relevant to a reasonable royalty analysis or calculation using the so-called *Georgia Pacific* factors.

ASHBY & GEDDES

_____

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
Telephone: (302) 654-1888
Telecopier: (302) 654-2067
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Plaintiff ProMOS Technologies, Inc.*

*Of Counsel*:

William H. Wright
HOGAN & HARTSON LLP
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
Telephone: (310) 785-4672
Facsimile: (31) 785-4601

Steven J. Routh
Sten A. Jensen
HOGAN & HARTSON LLP
555 Thirteenth Street, NW
Washington, DC  20004
Telephone: (202) 637-6472
Facsimile: (202) 637-5910

Dated:  April 12, 2007
179643.1

EXHIBIT 7



**"Cook, Susan M."**
**<SMCook@HHLAW.com>**

07/06/2007 02:53 PM

To    "Kevin P. Ferguson" <kpferguson@JonesDay.com>, "David
L. Witcoff" <dlwitcoff@JonesDay.com>
cc    "Routh, Steven J." <SJRouth@HHLAW.com>, "Wright,
William H." <WHWright@HHLAW.com>, "Jensen, Sten A."
<SAJensen@HHLAW.com>, "JDay"
bcc

Subject

Kevin,

We have been engaged in meet and confer discussions for nearly two months on Freescale's obligation
to produce technical documentation relating to the Chan patents. During those discussions, you have
maintained that Freescale believes that ProMOS must provide detailed infringement contentions on
specific accused products before Freescale will produce technical documents relating to those products.
As we have stated many times, we disagree with your position. Accordingly, we see no alternative but to
file a motion to compel on this issue, and we are doing so today so that the motion can be heard and
resolved in August prior to the scheduled close of document discovery in this action as well as the August
17 mediation in the Texas action, in which the Magistrate Judge expects the parties to address technical
issues in both the Texas and Delaware actions. Following up on our several prior meet and confer
discussions, I am attaching a preliminary list of additional, specific Freescale products that ProMOS
contends infringe the Chan patents. Please note that this is not a final list because further discovery may
reveal additional Freescale products that infringe. We recognize that this list does not meet the
prerequisites that Freescale has set for its production of technical documents relating to additional
products, but as you know we disagree with those prerequisites, and we are hopeful that this list may at
least narrow our disagreement.

Susan

This electronic message transmission contains information from this law firm which may be
confidential or privileged. The information is intended to be for the use of the individual or
entity named above. If you are not the intended recipient, be aware that any disclosure,
copying, distribution or use of the contents of this information is prohibited.

If you have received this electronic transmission in error, please notify us by telephone
(+1-202-637-5600) or by electronic mail (PostMaster@HHLAW.COM) immediately.


Selected Microprocessor Spreadsheet.xls

# FreeScale Processors

| Product | Core | Description |
| --- | --- | --- |
| MPC5200 | 603e core | 16 KB instruction cache / 16 KB data cache |
| MPC5200B | 603e core | 16 KB instruction cache / 16 KB data cache |
| MPC5510 | e200z1 core, optional secondary e20z0 core | L1: 1MB or 512 KB embedded flash; plus memory management unit with buffer |
| MPC5533 | e20z3 core | L1: 48KB cache; 768KB embedded flash, plus memory management unit with buffer |
| MPC5534 | e20z3 core | L1: 64KB cache; 1MB embedded flash; plus memory management unit with buffer |
| MPC5553 | e20z6 core | L1 (U-Cache): 8KB; L2: 64KB cache; 1.5MB embedded flash; plus memory management unit with buffer |
| MPC5554 | e20z6 core | L1 (U-Cache): 32KB; L2: 64KB cache; 2MB embedded flash; plus memory management unit with buffer |
| MPC5561 | e20z6 core | L1 (U-Cache): 32KB; L2: 192KB cache; 1MB embedded flash; plus memory management unit with buffer |
| MPC5565 | e20z6 core | L1 (U-Cache): 8KB; L2: 64KB cache; 2MB embedded flash; plus memory management unit with |
| MPC5566 | e20z6 core | L1 (U-Cache): 32KB; L2: 128KB cache; 3MB embedded flash; plus memory management unit with buffer |
| MPC5567 | e20z6 core | L1 (U-Cache): 8KB; L2: 64KB cache; 2MB embedded flash; plus memory management unit with buffer |
| MPC7410 | G4/e600 core | L1 (U-Cache): 8KB; L2: 64KB cache; 2MB embedded flash; L2 cache: 256 KB to 1 MB |
| MPC7445 | G4/e600 core | 32 KB instruction cache / 32 KB data cache; L2 cache: 256 KB to 1 MB |
| MPC7455 | G4/e600 core | 32 KB instruction cache / 32 KB data cache; L2 cache: 256 KB to 1 MB |
| MPC7447 | G4/e600 core | 32 KB instruction cache / 32 KB data cache; L2 cache: 256 KB to 1 MB |
| MPC7457 | G4/e600 core | 32 KB instruction cache / 32 KB data cache; L2 cache: 256 KB to 1 MB |
| MPC7447A | G4/e600 core | 32 KB instruction cache / 32 KB data cache; L2 cache: 256 KB to 1 MB |
| MPC7448 | G4/e600 core | 32 KB instruction cache / 32 KB data cache; L2 cache: 256 KB to 1 MB |
| MPC823 | 8xx core | 2 KB instruction cache / 1 KB data cache |
| MPC823E | 8xx core | 16 KB instruction cache / 8 KB data cache |
| MPC850 | 8xx core | 2 KB instruction cache / 1 KB data cache |
| MPC852T | 8xx core | 4 KB instruction cache / 4 KB data cache |
| MPC853T | 8xx core | 4 KB instruction cache / 4 KB data cache |
| MPC855T | 8xx core | 4 KB instruction cache / 4 KB data cache |
| MPC857DSL | 8xx core | 4 KB instruction cache / 4 KB data cache |
| MPC857T | 8xx core | 4 KB instruction cache / 4 KB data cache |

| MPC859DSL | 8xx core | 16 KB instruction cache / 8 KB data cache |
| MPC859T | 8xx core | 16 KB instruction cache / 8 KB data cache |
| MPC860 | 8xx core | 4 KB instruction cache / 4 KB data cache |
| MPC860P | 8xx core | 16 KB instruction cache / 8 KB data cache |
| MPC862 | 8xx core | 16 KB instruction cache / 8 KB data cache |
| MPC866 | 8xx core | 16 KB instruction cache / 8 KB data cache |
| MPC870 | 8xx core | 8 KB instruction cache / 8 KB data cache |
| MPC875 | 8xx core | 8 KB instruction cache / 8 KB data cache |
| MPC880 | 8xx core | 8 KB instruction cache / 8 KB data cache |
| MPC885 | 8xx core | 8 KB instruction cache / 8 KB data cache |
| MPC8247 | 603e core | 16 KB instruction cache / 16 KB data cache |
| MPC8248 | 603e core | 16 KB instruction cache / 16 KB data cache |
| MPC8250 | G2 core (603e der.) | 16 KB instruction cache / 16 KB data cache |
| MPC8255 | G2 core (603e der.) | 16 KB instruction cache / 16 KB data cache |
| MPC8260 | G2 core (603e der.) | 16 KB instruction cache / 16 KB data cache |
| MPC8264 | G2 core (603e der.) | 16 KB instruction cache / 16 KB data cache |
| MPC8265 | G2 core (603e der.) | 16 KB instruction cache / 16 KB data cache |
| MPC8266 | G2 core (603e der.) | 16 KB instruction cache / 16 KB data cache |
| MPC8270 | 603e core | 16 KB instruction cache / 16 KB data cache |
| MPC8271 | 603e core | 16 KB instruction cache / 16 KB data cache |
| MPC8272 | 603e core | 16 KB instruction cache / 16 KB data cache |
| MPC8275 | 603e core | 16 KB instruction cache / 16 KB data cache |
| MPC8280 | 603e core | 16 KB instruction cache / 16 KB data cache |
| MPC8313 | e300 core | 16 KB instruction cache / 16 KB data cache |
| MPC8313E | e300 core | 16 KB instruction cache / 16 KB data cache |
| MPC8321 | e300c2 core | 16 KB instruction cache / 16 KB data cache |
| MPC8321E | e300c2 core | 16 KB instruction cache / 16 KB data cache |
| MPC8323 | e300c2 core | 16 KB instruction cache / 16 KB data cache |
| MPC8323E | e300c2 core | 16 KB instruction cache / 16 KB data cache |
| MPC8343E | e300 core | 32 KB instruction cache / 32 KB data cache |
| MPC8347E | e300 core | 32 KB instruction cache / 32 KB data cache |
| MPC8349E | e300 core | 32 KB instruction cache / 32 KB data cache |
| MPC8358E | e300 core | 32 KB instruction cache / 32 KB data cache |
| MPC8360E | e300 core | 32 KB instruction cache / 32 KB data cache |
| MPC8533E | e500 v2 core | 32 KB instruction cache / 32 KB data cache; L2 cache: 256 KB |
| MPC8540 | e500 core | 32 KB instruction cache / 32 KB data cache; L2 cache: 256 KB |
| MPC8541E | e500 core | 32 KB instruction cache / 32 KB data cache; L2 cache: 256 KB |

| | | |
|---|---|---|
| MPC8543E | e500 core | 32 KB instruction cache / 32 KB data cache; L2 cache: 256 KB |
| MPC8544E | e500 core | 32 KB instruction cache / 32 KB data cache; L2 cache: 256 KB |
| MPC8545E | e500 core | 32 KB instruction cache / 32 KB data cache; L2 cache: 512 KB |
| MPC8547E | e500 core | 32 KB instruction cache / 32 KB data cache; L2 cache: 512 KB |
| MPC8548E | e500 core | 32 KB instruction cache / 32 KB data cache; L2 cache: 512 KB |
| MPC8555E | e500 core | 32 KB instruction cache / 32 KB data cache; L2 cache: 256 KB |
| MPC8560 | e500 core | 32 KB instruction cache / 32 KB data cache; L2 cache: 256 KB |
| MPC8567E | e500 core | 32 KB instruction cache / 32 KB data cache; L2 cache: 512 KB |
| MPC8568E | e500 core | 32 KB instruction cache / 32 KB data cache; L2 cache: 512 KB |
| MPC8641 | e600 core | 1 MB L2 cache; 32 KB instruction cache / 32 KB data cache; Dual 64-bit DDR and DDR2 memory controllers |
| MPC8641D | Dual e600 core | 1 MB L2 cache per core; 32 KB instruction cache / 32 KB data cache; Dual 64-bit DDR and DDR2 memory controllers |
| MCF5206e | ColdFire V2 | 4KB I-Cache; 8 KB SRAM |
| MCF5207 | ColdFire V2 | 8KB I/D-Cache; 16KB SRAM |
| MCF5208 | ColdFire V2 | 8KB I/D-Cache; 16KB SRAM |
| MCF5211 | ColdFire V2 | 16KB SRAM; 128 KB Embedded Flash memory (No cache?) |
| MCF5212 | ColdFire V2 | 32KB SRAM; 256 KB Embedded Flash memory (No cache?) |
| MCF5213 | ColdFire V2 | 32KB SRAM; 256 KB Embedded Flash memory (No cache?) |
| MCF5214 | ColdFire V2 | 2KB I-Cache; 64KB SRAM; 256 KB Embedded Flash memory |
| MCF5216 | ColdFire V2 | 2KB I-Cache; 64KB SRAM; 512 KB Embedded Flash memory |
| MCF5232 | ColdFire V2 | 8KB configurable I/D-Cache; 64KB SRAM |
| MCF5233 | ColdFire V2 | 8KB configurable I/D-Cache; 64KB SRAM |
| MCF5234 | ColdFire V2 | 8KB configurable I/D-Cache; 64KB SRAM |
| MCF5235 | ColdFire V2 | 8KB configurable I/D-Cache; 64KB SRAM |
| MCF5249 | ColdFire V2 | 8KB I/D-Cache; 96KB SRAM |
| MCF5270 | ColdFire V2 | 8KB configurable Cache; 64KB SRAM |
| MCF5271 | ColdFire V2 | 8KB configurable Cache; 64KB SRAM |
| MCF5272 | ColdFire V2 | 1KB I-Cache; 4KB SRAM |
| MCF5274 | ColdFire V2 | 16KB configurable Cache; 64KB SRAM |
| MCF5274L | ColdFire V2 | 16KB configurable Cache; 64KB SRAM |
| MCF5275 | ColdFire V2 | 16KB configurable Cache; 64KB SRAM |
| MCF5275L | ColdFire V2 | 16KB configurable Cache; 64KB SRAM |
| MCF5280 | ColdFire V2 | 2KB I-Cache; 64KB SRAM |
| MCF5281 | ColdFire V2 | 2KB I-Cache; 64KB SRAM; 256 KB Embedded Flash memory |
| MCF5282 | ColdFire V2 | 2KB I-Cache; 64KB SRAM; 512 KB Embedded Flash memory |
| MCF5307 | ColdFire V3 | 8KB unified Cache; 4KB SRAM |

| Part | Core | Cache/Memory |
|---|---|---|
| MCF5327 | ColdFire V3 | 16KB I/D-Cache; 32KB SRAM |
| MCF5328 | ColdFire V3 | 16KB I/D-Cache; 32KB SRAM |
| MCF5329 | ColdFire V3 | 16KB I/D-Cache; 32KB SRAM |
| MCF5372 | ColdFire V3 | 16KB I/D-Cache; 32KB SRAM |
| MCF5372L | ColdFire V3 | 16KB I/D-Cache; 32KB SRAM |
| MCF5373 | ColdFire V3 | 16KB I/D-Cache; 32KB SRAM |
| MCF5373L | ColdFire V3 | 16KB I/D-Cache; 32KB SRAM |
| MCF5407 | ColdFire V4 | 16KB I-Cache; 8KB D-Cache; 4KB SRAM |
| MCF5470 | ColdFire V4e | 32KB I-Cache; 32KB D-Cache; 32KB SRAM |
| MCF5471 | ColdFire V4e | 32KB I-Cache; 32KB D-Cache; 32KB SRAM |
| MCF5472 | ColdFire V4e | 32KB I-Cache; 32KB D-Cache; 32KB SRAM |
| MCF5473 | ColdFire V4e | 32KB I-Cache; 32KB D-Cache; 32KB SRAM |
| MCF5474 | ColdFire V4e | 32KB I-Cache; 32KB D-Cache; 32KB SRAM |
| MCF5475 | ColdFire V4e | 32KB I-Cache; 32KB D-Cache; 32KB SRAM |
| MCF5480 | ColdFire V4e | 32KB I-Cache; 32KB D-Cache; 32KB SRAM |
| MCF5481 | ColdFire V4e | 32KB I-Cache; 32KB D-Cache; 32KB SRAM |
| MCF5482 | ColdFire V4e | 32KB I-Cache; 32KB D-Cache; 32KB SRAM |
| MCF5483 | ColdFire V4e | 32KB I-Cache; 32KB D-Cache; 32KB SRAM |
| MCF5484 | ColdFire V4e | 32KB I-Cache; 32KB D-Cache; 32KB SRAM |
| MCF5485 | ColdFire V4e | 32KB I-Cache; 32KB D-Cache; 32KB SRAM |
| MC68060 | MC68060 | Dual 8KB on-chip Caches |
| MC68LC060 | MC68060 | Dual 8KB on-chip Caches |
| MC68EC060 | MC68060 | Dual 8KB on-chip Caches |
| i.MX1 (MC9328MX1) | ARM920T core | 16KB instruction Cache, 16KB data Cache |
| i.MX21 | ARM926EJ-S core | 16KB instruction Cache, 16KB data Cache |
| i.MX21 S | ARM926EJ-S core | 16KB instruction Cache, 16KB data Cache |
| i.MX27 | ARM926EJ-S core | 16KB instruction Cache, 16KB data Cache |
| i.MX31 | ARM1136JF-S core | 16KB instruction Cache, 16KB data Cache; L2: 128 KB unified Cache |
| i.MX31L | ARM1136JF-S core | 16KB instruction Cache, 16KB data Cache; L2: 128 KB unified Cache |
| i.MXL | ARM920T core | 16KB instruction Cache, 16KB data Cache |
| i.MXS | ARM920T core | 16KB instruction Cache, 16KB data Cache |
| MSC8144 | Four 800 MHz/1 GHz StarCore SC3400 DSP extended cores | Four 16-Kbyte L1 instruction cache (one per core); Four 32-Kbyte L1 data cache (one per core); One 128-Kbyte shared L2 instruction cache; One 512-Kbyte shared M2 memory for critical data and temporary data buffering; 10 Mbytes of 128-bit wide shared M3 memory |
| MSC8144E | Four 800 MHz/1GHz StarCore SC3400 DSP core subsystems | Four 16-Kbyte L1 instruction cache (one per core); Four 32-Kbyte L1 data cache (one per core); One 128-Kbyte shared L2 instruction cache; One 512-Kbyte shared M2 memory for critical data and temporary data buffering; 10 Mbytes of 128-bit wide shared M3 memory |

| | | |
|---|---|---|
| MSC8144EC | Four 800 MHz/1GHz StarCore SC3400 DSP core subsystems | Four 16-Kbyte L1 instruction cache (one per core); Four 32-Kbyte L1 data cache (one per core); One 128-Kbyte shared L2 instruction cache; One 512-Kbyte shared M2 memory for critical data and temporary data buffering; 10 Mbytes of 128-bit wide shared M3 memory |
| MSC7110 | SC1400 core | 64 KB of SRAM memory, a 16 KB 16-way Instruction Cache |
| MSC7112 | SC1400 core | 192 KB of SRAM memory, a 16 KB 16-way Instruction Cache |
| MSC7113 | SC1400 core | 192 KB of SRAM memory, a 16 KB 16-way Instruction Cache |
| MSC7115 | SC1400 core | 384 KB of SRAM memory, a 16 KB 16-way Instruction Cache |
| MSC7116 | SC1400 core | 384 KB of SRAM memory, a 16 KB 16-way Instruction Cache |
| MSC7118 | SC1400 core | 448 KB of SRAM memory, a 16 KB 16-way Instruction Cache |
| MSC7119 | SC1400 core | 448 KB of SRAM memory, a 16 KB 16-way Instruction Cache |
| MSC7120 | e300 core | 16 KB instruction cache and a 16 KB data cache |
| DSP56301 | DSP56300 core | 1024-4096 x 24-bit Program RAM (optional configurations)with 1024 x 24-bit Instruction Cache (if enabled); 2048/3072 x 24-bit X data RAM (optional configuration); 2048/3072 x 24-bit Y data RAM (optional configuration) |
| DSP56311 | DSP56300 core | 128 K x 24-bit on-chip RAM total; Program RAM, instruction cache, X data RAM, and Y data RAM sizes are variable |
| DSP56321 | DSP56300 core | 192 K x 24-bit on-chip RAM total; Program RAM, instruction cache, X data RAM, and Y data RAM sizes are variable |
| DSP56L307 | DSP56300 core | 64 K x 24 on-chip RAM total; Program RAM, instruction cache, X data RAM, and Y data RAM sizes are programmable; 192 x 24-bit bootstrap ROM |

EXHIBIT 8

# HOGAN & HARTSON

Hogan & Hartson LLP
Columbia Square
555 Thirteenth Street, NW
Washington, DC 20004
+1.202.637.5600 Tel
+1.202.637.5910 Fax

www.hhlaw.com

June 25, 2007

Sten A. Jensen
(202) 637-6465
sajensen@hhlaw.com

**BY ELECTRONIC MAIL**

Kevin P. Ferguson
Jones Day
77 West Wacker
Chicago, Illinois 60601-1692
E-mail: dlwitcoff@JonesDay.com

RE:  **ProMOS Technologies, Inc. v. Freescale Semiconductor, Inc., No. 06-788 (JJF) (D. Del.); Freescale Semiconductor, Inc. v. ProMOS Technologies, Inc., No. 4:06-cv-491 (E.D. Tex.)**

Dear Kevin:

I am writing regarding Freescale's continuing failure to comply with its discovery obligations in the Delaware and Texas lawsuits.  Notwithstanding the suggestion implicit in your letter of June 19, 2007, it is Freescale—and not ProMOS—that has fallen woefully short of its discovery obligations.  Freescale's discovery responses are deficient in at least the following respects:

**Delaware Interrogatories:**

**Response to Interrogatories No. 1 and 7:**

You have objected to these interrogatories, which seek basic information about each of the Freescale Products (as that term is defined in the discovery requests) and sales information relating thereto, on the ground that ProMOS "has not provided Freescale with sufficient information concerning its allegations (e.g., the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions)...." Your objections are improper.  The term "Freescale Products" was defined in the requests so as to specifically delineate those types of products that are covered by the interrogatories, without need to consult infringement contentions.  Please confirm that Freescale will supplement its responses accordingly.

June 25, 2007
Page 2

**Response to Interrogatory No. 2:**

Rather than responding to this interrogatory, which requests information about any efforts to design around the patents-in-suit or create a non-infringing alternative thereto, you have refused to provide any answer and instead indicated that "Freescale has until five (5) weeks before the fact discovery deadline" to disclose the basis for its defense to a claim for willful infringement. However, the information sought by this interrogatory is relevant to a number of issues in dispute, including for example damages and doctrine-of-equivalence infringement. As a result, there simply is no basis for withholding the requested information until the close of discovery.

**Response to Interrogatory No. 3:**

In response to this interrogatory, which seeks information regarding licenses and other patent- or technology-related agreements that Freescale has been a party to since 2000, you have indicated that Freescale is in the process of contacting third parties to obtain their consent before disclosing the terms of responsive agreements. Please provide an update on the status and schedule for Freescale's efforts in that regard and, if license agreements have already been produced as you indicated in our discussion last week, please identify the bates numbers of those agreements pursuant to Rule 33(d).

**Response to Interrogatory No. 4:**

This interrogatory asks Freescale to state whether it contends that any of the Freescale Products (as defined in the discovery requests) do not infringe the patents-in-suit, and if so, to provide the basis for such assertion. Rather than providing the information requested in the interrogatory, you have issued a number of improper objections. To the extent you objected on the ground that ProMOS has not yet provided its infringement contentions, ProMOS provided those contentions with the interrogatory responses it served on May 14. Accordingly, please supplement your response to this interrogatory and provide the requested information.

**Response to Interrogatory No. 5:**

Your answer to this interrogatory, which seeks the basis for your affirmative defenses and counterclaims, contains improper objections and fails to provide the element-by-element analysis of prior art and other information required by the interrogatory. Among other things, your answer does not provide any support for your affirmative defenses of prosecution history estoppel, equitable estoppel, laches, and your damages defenses under 35 U.S.C. §§ 286 and 287. Please correct these deficiencies.

June 25, 2007
Page 3

**Responses to Interrogatories No. 9-13:**

Interrogatories 9 through 13 ask Freescale to identify the three persons who are the most knowledgeable about various topics. Rather than providing the information requested in each interrogatory, you have issued improper objections and vaguely referred us to documents which have yet to be produced. Because these interrogatories require Freescale to identify specific persons having the most knowledge of certain topics, by definition they cannot be answered by reference to a document production. Given the very straightforward and basic nature of these Interrogatories, we request that you correct and supplement your deficient answers immediately.

**Response to Interrogatory No. 14:**

This interrogatory seeks information regarding individuals with relevant knowledge. Your answer does nothing more than incorporate by reference your initial disclosures, which themselves contain very little information regarding the identity of relevant witnesses. Your answer also purports to rely on Rule 33(d). That reliance is improper for two reasons: (1) this interrogatory seeks the identification of individuals with knowledge, a topic that is not susceptible to a Rule 33(d) response, and (2) even if reliance on Rule 33(d) was appropriate here, you have not identified any documents by bates label as is required by the Rule.

Please note that the issues noted above were first raised in a letter from Steve Routh dated May 18. In a subsequent meet and confer, we agreed that both parties would focus first on the information necessary to prepare for the June 8 mediation in Texas. The mediation was held two weeks ago and we still have not received supplemental answers to any of the interrogatory answers that we identified as deficient over a month ago (either in the Delaware case or the Texas case).

**Delaware Document Requests:**

**A. Objections:**

**(1) Objections based on definition of "Freescale Products"**

You have objected to the vast majority of ProMOS's document requests as premature because, you assert, "ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products." Moreover, you have refused to produce documents responsive to these requests until such time as ProMOS undertakes to provide supplemental information regarding its infringement contentions.

This objection, along with your blanket refusal to produce responsive documents pending receipt of infringement contentions from ProMOS, is highly improper. The term "Freescale Products" was defined in the requests so as to specifically delineate those types of products that are covered by the requests, without need to consult infringement contentions. Moreover, it is unreasonable

June 25, 2007
Page 4

for you to expect ProMOS to be able to compile meaningful infringement contentions until such time as you produce meaningful technical documents relating to Freescale's products. Moreover, Freescale has not produced any technical documents relating to the Chan patents, even with respect to products that were specifically identified as accused products by ProMOS in its interrogatory responses. Please supplement your responses and your document production to provide the technical and other information responsive to ProMOS's requests as drafted.

**(2) Objections based on request for "all documents"**

You also have objected to the vast majority of the document requests on the basis that they seek "'all documents' relating to the requested topic and are not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims and defenses raised in the lawsuit by either party." This objection is improper. Please confirm that you have not withheld any documents on the basis of this objection.

**(3) Refusal to produce responsive documents:**

In response to Requests No. 6-10, 16-20, 22-26, 32, 45, 52-56, 61, 63-64, 69-70, 74-75, 77-78, 83, 86, 88, 90-95, 97-99, 101-105, 107-109, 112, you have issued a number of improper objections and failed to indicate that you will be producing responsive documents. There is no legitimate basis for withholding any documents responsive to these requests. We hereby request that you immediately supplement your responses to confirm that you will produce all non-privileged documents responsive to these requests that are in Freescale's possession, custody or control.

**B. Document Production:**

**Document Request Nos. 6-10, 12-15:**

Freescale has failed to produce any documents that identify present and past employees, consultants, and contract employees as described in the requests. Moreover, Freescale has failed to produce any documents that would link any of its subsidiaries, departments or divisions with the functions specified in the requests. Please produce these documents immediately.

**Document Request Nos. 16-20, 43, 68:**

Freescale has failed to produce any documents responsive to these requests, which seek documents relating to third parties with whom Freescale has contracted for the specified purposes, documents relating to the place and process of manufacture, models manufactured, units manufactured, destination of units manufactured, and documents sufficient to identify third parties that manufacture any accused products. Please produce these documents immediately.

**Document Requests Nos. 21:**

Freescale has failed to produce any of its proxy statements for any of the specified years, Form 10-Qs for any of the specified years, annual reports for the years 2000 to 2003 and 2005 to the

June 25, 2007
Page 5

present, or Form 10-Ks for the years 2000 to 2004 and 2006. Please produce these documents immediately.

**Document Request Nos. 22-27, 28-31, 33-42, 44-49, 52-64, 69-70, 112:**

Freescale has failed to produce any documents responsive to these requests, which seek specified circuit diagrams, reference designs, schematics, pictures, drawings, schematics, blueprints, specifications, blueprints, block diagrams, source code, design specifications, test results, journals, notebooks, data sheets, engineering change orders, comparative testing documents, design meeting documents, prototypes, models, ten samples of each accused product, and other such documents. Nor has Freescale produced <u>any</u> meaningful technical documents relating to the cache memory products at all. These documents are critical to ProMOS's ability to prepare its case, and Freescale's failure to produce them is particularly troublesome in light of your letter of June 19, 2007, which purported to complain about ProMOS's failure to provide a detailed infringement claim chart for "every accused product." Obviously, ProMOS cannot be expected to prepare such charts unless and until Freescale produces technical documents relating to the products at issue. Please produce these documents immediately. It is particularly important that we receive these technical documents promptly because Judge Bush has now scheduled – in part at Freescale's request – a mediation session on August 17 that will focus on the parties' respective positions on technical issues.

**Document Request Nos. 65-67:**

Freescale has failed to produce any documents other than the Master Separation Agreement responsive to these requests, which seek copies of specified license or agreements. Notably, Freescale has failed to produce any license agreements with third parties and any drafts of agreements. Based on our call last week, I understand that you believe Freescale has produced a majority of the license agreements at issue. If that is your position, please identify the bates numbers of any such agreements.

**Document Request Nos. 71-79, 85-87:**

Freescale has failed to produce any documents responsive to these requests, which seek documents relating to ProMOS's claims of infringement and the patents-in-suit, including Freescale's effort to design around the patents-in-suit or modify the accused products in view thereof, any testing or reverse engineering performed on any Freescale product, Freescale's first awareness of the patents-in-suit, Freescale's earliest notice of potential infringement thereof, communications with third parties relating thereto, meeting minutes relating thereto, and any consideration by Freescale of whether to take a license from ProMOS. Please supplement your production immediately.

**Document Request Nos. 88-109, 117:**

Freescale has failed to produce in the Delaware lawsuit any documents responsive to these requests, which seek basic information necessary for a damages analysis. Moreover, even the

June 25, 2007
Page 6

Excel document you provided for purposes of the Texas mediation fails to satisfy Freescale's obligation under these requests. Please supplement your production immediately.

**Document Request Nos. 32, 50-51:**

Please indicate whether Freescale has produced all documents responsive to these requests, which seek reference and user manuals and process flows and process recipes. If Freescale has not yet produced all responsive documents, which seems likely given the small volume of materials produced, please supplement your production immediately.

### Texas Interrogatories:

**Interrogatory Nos. 2-4, 8-10, and 13:**

Rather than providing narrative responses to these interrogatories, Freescale has referred ProMOS to documents produced in discovery. However, complete answer(s) to the interrogatories are not found within the documents referenced. For example, several of the requests ask for a description of "all facts and circumstances" relating to diligence between conception and reduction to practice or relating to first use, first public use, first offer for sale, and first sale. Similarly, interrogatory no. 13 requests Freescale to identify three individuals most knowledgeable about specified topics, which by definition cannot be answered by reference to a document production. As another example, please see your answer to interrogatory no. 2 which seeks the identity of any individuals who worked with the inventors, the positions of any such persons, and a description of that person's work related to the claimed inventions. Rather than answering any of these interrogatories, Freescale merely has referred to a range of documents. This is not an appropriate use of Rule 33(d). Please supplement your interrogatory answers immediately and provide responsive information.

**Interrogatory No. 5:**

Your answer to this interrogatory provides nothing more than conclusory statements regarding the applicability of various secondary considerations of non-obviousness. Please provide the information requested in this interrogatory, including a detailed factual description of the basis for your claim that the claimed inventions satisfied a long felt need, solved problems the industry failed to solve, had commercial success, were recognized by the industry, achieved unexpected results and/or were copied by others.

**Interrogatory Nos. 6 and 11:**

Freescale's answers to these interrogatories, which seek information about license agreements and communications with third parties relating to the patents-in-suit, fail to provide information about royalty rates, consideration given or received, or patents included in the license, and fail to identify which party initiated the communication and the bases for any third party allegation that its products do not infringe the patents in suit or that the patents-in-suit are invalid or unenforceable. Please immediately supplement the interrogatory answers and produce copies of

June 25, 2007
Page 7

the license agreements themselves. As noted above, if you believe the license agreements have been produced, please identify the bates numbers.

**Interrogatory Nos. 7 and 14:**

Rather than responding to these interrogatories, which relate to Freescale products that practice the patents-in-suit, Freescale states that it "has not asserted" that any of its own products practice the patents and that Freescale is "unaware of whether" any of its licensees' products practice the patents-in-suit. This answer is incomplete. Whether or not Freescale previously has asserted that its products practice the claims of the patents, the interrogatory requires Freescale now to state whether it so contends. Moreover, you have provided no information at all regarding the marking of any Freescale products or any of Freescale's licensees products as requested in interrogatory no. 14. Please supplement your answers to provide the requested information.

## Texas Document Requests:

**Request Nos. 18, 21-22, 28, 45, 48-51, 52, 70, 78-79, 81-90, 94-95, and 100-102:**

Freescale has refused to produce documents responsive to these requests, which relate to any Freescale or licensee products which practice the patents-in-suit, on the grounds that "Freescale has not asserted" that any of its products practice the patents-in-suit. Whether or not Freescale previously has asserted that its products practice the claims of the patents, the request requires Freescale to produce responsive documents if, in fact, any such products practice the claims of the patent. Please confirm that you will produce all responsive documents.

**Request No. 17, 53-55**

Freescale has refused to produce documents responsive to these requests, which seek information relating to diligence in reduction to practice, obviousness, secondary considerations of non-obviousness, and commercial success until such time as ProMOS provides its invalidity contentions. This is an improper objection pursuant to Local Patent Rule 2-5. Moreover, this objection no longer is proper because ProMOS served its invalidity contentions on May 21, 2007. Please confirm that you will supplement your responses immediately.

**Request Nos. 72, 91-92:**

In response to these requests, which seek documents relating to contracts, license agreements and communications with third parties relating to the patents-in-suit, Freescale has asserted that it is in the process of contacting these third parties to obtain their consent before releasing the information. Please provide information on the status and schedule for Freescale's efforts in that regard, and provide all responsive information. Alternatively, if you believe you have produced a majority of the license agreements as you told me last week, please identify the bates numbers of any such agreements and provide a status report on any remaining agreements as to which you are waiting for consents.

June 25, 2007
Page 8

**Request No. 98:**

Freescale has refused to produce documents responsive to this request, which seeks financial statements, profits and loss statements, and balance sheets, on the grounds that Freescale does not believe such documents to be discoverable. This objection is improper. Please supplement your production accordingly.

           *          *          *

In addition to the foregoing, we request that you confirm that Freescale's supplemental discovery responses (including but not limited to those relating to corporate, financial and technical issues in the Delaware action) will cover issues relating to alleged infringement of the patents-in-suit by Motorola.

Please let me know when you will be available for a discovery conference in the next few days to discuss the foregoing issues.

Sincerely yours,

Sten Jensen

cc:  William H. Wright
    Steven J. Routh
    David Witcoff
    F. Drexel Feeling
    Mary B. Graham
    John Day

# EXHIBIT 9

# JONES DAY

NORTH POINT • 901 LAKESIDE AVENUE • CLEVELAND, OHIO 44114-1190

TELEPHONE: (216) 586-3939 • FACSIMILE: (216) 579-0212

Direct Number: (216) 586-7199
f.dfeeling@jonesday.com

JP618219
878247-615013

August 21, 2007

<u>VIA EMAIL</u>

Susan Cook, Esq.
Hogan & Hartson LLP
555 Thirteenth Street, NW
Washington, DC 20004
smcook@hhlaw.com

        Re:     <u>*ProMOS Technologies v. Freescale Semiconductor, Inc.*</u>

Dear Susan:

        This is in reply to your letter of August 20. Please be advised that ProMOS should have all of the critical documents for the accused Freescale products. Also, please be advised that the RTL code for the accused products is available for inspection pursuant to Paragraph 4 of the Stipulated Protective Order at the Jones Day Cleveland office. Please let me know who will be coming to inspect the code and on what dates so that I may arrange for building clearance.

        Freescale provided to ProMOS the documents that exist in the usual course of business that show the structure and operation of the relevant circuits of the accused products. Your suggestion, with which we disagree, that ProMOS should be allowed access to Freescale's computer systems to "generate [] circuit diagrams and schematics" (even if the ability to generate such documents existed) because Freescale "repeatedly refused to produce"[1] such generated documents is wrong and makes no sense. Preliminarily, a party is under no obligation to create documents in response to a discovery request. To the extent a circuit diagram or schematic for a particular product existed, it was produced. Moreover, RTL code is primarily used in the design of complex systems instead of circuit diagrams and schematics. This is the use that Freescale makes of RTL code. Thus, it is understandable why an abundance of circuit diagrams and schematics do not exist for the accused Freescale products. And it should also be understandable why Freescale is not in a position to generate unspecified "schematics" that ProMOS might want, given that Freescale has no reason to generate schematics from RTL code (assuming it could be done) for cache memory in the ordinary course of its business, as it is not in the

---

        [1] In the future, we'd prefer that you not be so quick to falsely accuse Freescale of "repeatedly refus[ing] to produce" that which you acknowledge must not exist. Your statement that one must "generate the circuit diagrams and schematics" acknowledges that the circuit diagrams and schematics do not exist and, consequently, must be generated.

CLI-1544284

JONES DAY

August 21, 2007
Page 2

business of designing cache memory.  Of course, ProMOS's expert may examine the RTL code
for details on the accused Freescale products and generate schematics if that is possible.

Very truly yours,

F. Drexel Feeling

EXHIBIT 10

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PROMOS TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-788 (JJF) |
| | ) | |
| FREESCALE SEMICONDUCTOR, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### DEFENDANT FREESCALE'S RESPONSE TO PLAINTIFF PROMOS TECHNOLOGIES, INC.'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS FROM DEFENDANT FREESCALE SEMICONDUCTOR, INC. (NOS. 1-117)

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendant Freescale Semiconductor, Inc. ("Freescale") responds as follows to Plaintiff ProMOS Technologies, Inc.'s First Set Of Requests For Production Of Documents And Things From Defendant Freescale Semiconductor, Inc. (Nos. 1-117), served by ProMOS Technologies, Inc. ("ProMOS") on April 12, 2007.

### GENERAL OBJECTIONS

1.       Freescale objects to these document requests as premature, overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products, the identity of the asserted claims, and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with relevant information. Where appropriate, Freescale will supplement its responses within a reasonable time frame upon receiving sufficient information from ProMOS regarding its allegations to allow Freescale to

respond meaningfully thereto.   In this regard, Freescale acknowledges that it just received ProMOS's interrogatory responses that purport to contain some of the missing information identified above, and Freescale is in the process of evaluating those responses.

2.    Freescale's Specific Objections to each document request are in addition to the General Objections set forth in this section.  These General Objections form a part of the response to each and every document request and are set forth here to avoid the duplication and repetition of restating them for each response.  The absence of a reference to a General Objection in each response to a particular document request does not constitute a waiver of any General Objection with respect to that document request.  All responses are made subject to and without waiver of Freescale's General and Specific Objections.  By making a Specific Objection to a particular document request, Freescale does not imply that that Specific Objection is not applicable in response to any other document request, nor that the General Objections are not applicable to that document request.  A statement in these responses that responsive documents will be produced should not be taken to mean that any such documents actually exist, but only that, if they exist and can be located through a reasonable search of Freescale's records, they will be produced.   Any documents to be produced will be produced for review at a mutually agreeable and convenient time and place.

3.    A partial answer to any document request which has been objected to in whole or in part is not a waiver of the objection.  By asserting various objections, Freescale does not waive other objections that may become applicable.

4.    Freescale objects to these document requests to the extent they request information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, law, rule, or immunity.  Should any response by Freescale

- 2 -

include such privileged or protected information, such disclosure is inadvertent and shall not constitute a waiver of any applicable privilege or immunity, of any other ground for objecting to discovery with respect to such response, or of Freescale's right to object during this litigation or otherwise to the use of such response.

       5.      Freescale objects to these document requests to the extent they are inconsistent with, enlarge upon, or exceed the scope of discovery permitted by the Federal Rules of Civil Procedure, the Local Rules of the District of Delaware, or the parties' proposed Rule 16 Scheduling Order submitted to the Court on May 4, 2007. Freescale also objects to these document requests to the extent they are contrary to or inconsistent with any Court order in this litigation.

       6.      Freescale objects to these document requests to the extent they seek information not relevant to any issue in this case and to the extent they are not reasonably calculated to lead to the discovery of admissible evidence.

       7.      Freescale objects to these document requests as overly broad and unduly burdensome to the extent they purport to require production of information, documents, or things not in the possession, custody, or control of Freescale.

       8.      Freescale objects to these document requests to the extent they seek information obtainable from some other source (including, but not limited to, a public source) that is more convenient, less burdensome, or less expensive.

       9.      Freescale objects to these document requests to the extent they seek information and documents obtained by Freescale from a third party pursuant to a nondisclosure and/or confidentiality agreement the terms of which prohibit Freescale from disclosing,

producing, revealing, and/or divulging such information and documents to any other party, including ProMOS.

10.    Freescale objects to these document requests to the extent they prematurely seek information or opinions to be provided by expert witnesses.

11.    Freescale's responses to these document requests are made without in any way waiving (a) the right to object to the use of any information, documents, or things provided herein as evidence in any subsequent proceeding in this action or any other action on the grounds of competency, relevancy, materiality, privilege, or other grounds of admissibility; and (b) the right to object on any ground to other discovery requests involving or relating to the subject matter of these document requests. Furthermore, Freescale is providing responses herein in an effort to expedite discovery in this action and not as an indication or admission by Freescale of the relevancy, materiality, or admissibility thereof, and Freescale hereby reserves all objections to Plaintiff's use of such responses.

12.    Freescale objects to the definition of "Freescale" as set forth in paragraph 2 of the definitions set forth in ProMOS's First Set of Document Requests to the extent it purports to impose discovery obligations on persons or entities other than the parties to this lawsuit. Subject to and without waiving its objection to this definition, Freescale will respond to a request for production using any such defined term by diligently conducting its investigation and responding to discovery in light of those persons affiliated with Freescale during the relevant time period who are likely to have information relevant to the subject matter of this action, but without assuming any obligation to determine all of the information required under ProMOS's definition.

13.     Freescale objects to these document requests to the extent they purport to require Freescale to produce and/or identify "all" documents relating to a specific or general subject to the extent that these document requests are overly broad, unduly burdensome, purport to require Freescale to interview all of its employees and search all of its files worldwide, and seek information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence.  Freescale will make a reasonable inquiry of those employees whom, and a reasonable search of those files which, it reasonably believes may provide relevant, responsive, and non-duplicative information and documents.

14.     Freescale's responses hereto are based on Freescale's present knowledge, information, and belief.  As discovery and Freescale's investigation are ongoing, Freescale reserves the right to supplement these responses.

15.     Freescale repeats and incorporates herein the General Objections included in Defendant Freescale's Response To Plaintiff ProMOS Technologies, Inc.'s First Set Of Interrogatories To Defendant Freescale Semiconductor, Inc. (Nos. 1-14).

**REQUEST NO. 1:**

All documents identified, requested to be identified, relied upon, reviewed, or consulted in responding to Plaintiff's First Set of Interrogatories to Defendant.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

**REQUEST NO. 2:**

All written policies, procedures and guidelines related to Freescale's computers, computer systems, electronic data and electronic media that hold, contain, save, or manage documents, including, but not limited to, (a) back up tape rotation schedules; (b) electronic data retention, preservation and destruction schedules; (c) employee use of company computers and data; (d) file naming conventions and standards; (e) diskette, CD, DVD, and other removable media labeling standards; and (e) e-mail storage (i.e., limitations on mailbox sizes and storage locations.)

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as vague, overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent it requests documents regarding "all written policies, procedures and guidelines" and "employee use of computers and data."

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

**REQUEST NO. 3:**

Documents sufficient to show your document retention and/or destruction policies and/or practices from 2000 to the present.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request to the extent it seeks information protected by the attorney-client privilege and/or the work product doctrine.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request to the extent such documents relate to the documents at issue in this lawsuit.

**REQUEST NO. 4:**

Organizational charts for all of your Information Technology-related or Information Services-related departments or divisions.

**RESPONSE:**

      In addition to its General Objections, Freescale objects to this document request as vague, overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent it requires this information for "all of your Information Technology-related or Information Services-related departments or divisions" and is not directed to identifying relevant Freescale personnel and business operations.

      Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

**REQUEST NO. 5:**

Documents sufficient to show your past and present organizational and operational structure, including all divisions or subsidiaries, entities owned or controlled by Freescale, affiliates, predecessors or successors in interest, whether in the United States, or anywhere else in the world, and the identity of the officers and managers of each such entity.

**RESPONSE:**

      In addition to its General Objections, Freescale objects to this document request as vague, overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent it requires this information for all of Freescale "anywhere…in the world" and is not directed to identifying relevant Freescale personnel and business operations.

      Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

**REQUEST NO. 6:**

All documents that identify present employees, past employees, consultants and contract employees, whether full or part time, whose responsibilities or assignment include work relating to the conception, design, development, manufacture, analysis, testing, marketing, sales or repair of each Freescale Product, including but not limited to, organizational charts and telephone or email directories.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party. Freescale objects to this request to the extent it requests information protected by the attorney-client privilege and/or the attorney work product doctrine.

**REQUEST NO. 7:**

All documents that identify present employees, past employees, consultants, and contract employees, whether full or part time, whose responsibilities or assignment include work relating to the conception, design, development, manufacture, analysis, testing, marketing, sales or repair of each cache memory used with or in, incorporated in or relied on by a Freescale Product, including but not limited to, organizational charts and telephone or email directories.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party. Freescale objects to this request to the extent it requests information protected by the attorney-client privilege and/or the attorney work product doctrine. Freescale objects to this request to the extent it is duplicative of Request No. 6.

**REQUEST NO. 8:**

All documents that identify present employees, past employees, consultants, and contract employees, whether full or part time, whose responsibilities or assignment include work relating to the conception, design, development, manufacture, analysis, testing, marketing, sales or repair of any register(s) used in writing, reading, buffering or accessing data from or to each cache memory used with or in, incorporated in or relied on by a Freescale Product, including but not limited to, organizational charts and telephone or email directories.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation

of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party. Freescale objects to this request to the extent it requests information protected by the attorney-client privilege and/or the attorney work product doctrine. Freescale objects to this request to the extent it is duplicative of Request No. 6.

**REQUEST NO. 9:**

All documents that identify present employees, past employees, consultants, and contract employees, whether full or part time, whose responsibilities or assignment include work relating to the conception, design, development, manufacture, analysis, testing, marketing, sales or repair of each cache controller used with or in, incorporated in or relied on by a Freescale Product, including but not limited to, organizational charts and telephone or email directories.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of

infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it

requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter

of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by

either party.  Freescale objects to this request to the extent it requests information protected by

the attorney-client privilege and/or the attorney work product doctrine.  Freescale objects to this

request to the extent it is duplicative of Request No. 6.

## REQUEST NO. 10:

All documents that identify present employees, past employees, consultants, and contract
employees, whether full or part time, whose responsibilities or assignment include work relating
to the conception, design, development, manufacture, analysis, testing, marketing, sales or repair
of each process for forming conductors that include a layer of tungsten overlying a layer of
titanium nitride used with or in, incorporated in or relied on by a Freescale Product, including but
not limited to, organizational charts and telephone or email directories.

## RESPONSE:

In addition to its General Objections, Freescale objects to this document request

as premature because ProMOS has not provided Freescale with sufficient information

concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation

of ProMOS's infringement contentions) to permit Freescale to respond with information

regarding relevant Freescale products.  Freescale objects to this request as overly broad, unduly

burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor

reasonably calculated to lead to the discovery of admissible evidence to the extent the term

"Freescale Product" is not properly limited in time with respect to any products accused of

infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it

requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter

of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by

either party.  Freescale objects to this request to the extent it requests information protected by

the attorney-client privilege and/or the attorney work product doctrine. Freescale objects to this request to the extent it is duplicative of Request No. 6.

**REQUEST NO. 11:**

Documents sufficient to identify, describe, illustrate, or depict names and/or functions of subsidiaries, departments, or divisions that were involved in any manner in the conception, design, development, manufacture, analysis, testing, marketing, sales or repair of any Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003. Freescale objects to this request to the extent it requests information protected by the attorney-client privilege and/or the attorney work product doctrine.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

**REQUEST NO. 12:**

Documents sufficient to identify, describe, illustrate, or depict names and/or functions of subsidiaries, departments, or divisions that were involved in any manner in the conception, design, development, manufacture, analysis, testing, marketing, sales or repair of each cache memory used with, incorporated in or relied on by any Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003. Freescale objects to this request to the extent it requests information protected by the attorney-client privilege and/or the attorney work product doctrine. Freescale objects to this request to the extent it is duplicative of Request No. 11.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

**REQUEST NO. 13:**

Documents sufficient to identify, describe, illustrate, or depict names and/or functions of subsidiaries, departments, or divisions that were involved in any manner in the conception, design, development, manufacture, analysis, testing, marketing, sales or repair of any register(s) used in writing, reading, buffering or accessing data from or to each cache memory used with or in, incorporated in or relied on by a Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information

regarding relevant Freescale products.  Freescale objects to this request as overly broad, unduly

burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor

reasonably calculated to lead to the discovery of admissible evidence to the extent the term

"Freescale Product" is not properly limited in time with respect to any products accused of

infringing the Fortin patent, which did not issue until December 30, 2003.  Freescale objects to

this request to the extent it requests information protected by the attorney-client privilege and/or

the attorney work product doctrine.  Freescale objects to this request to the extent it is duplicative

of Request No. 11.

Without waiving any and subject to all of the foregoing objections, Freescale will

produce non-privileged documents in its possession responsive to this request.

## REQUEST NO. 14:

Documents sufficient to identify, describe, illustrate, or depict names and/or functions of
subsidiaries, departments, or divisions that were involved in any manner in the conception,
design, development, manufacture, analysis, testing, marketing, sales or repair of each cache
controller used with or in, incorporated in or relied on by a Freescale Product.

## RESPONSE:

In addition to its General Objections, Freescale objects to this document request

as premature because ProMOS has not provided Freescale with sufficient information

concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation

of ProMOS's infringement contentions) to permit Freescale to respond with information

regarding relevant Freescale products.  Freescale objects to this request as overly broad, unduly

burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor

reasonably calculated to lead to the discovery of admissible evidence to the extent the term

"Freescale Product" is not properly limited in time with respect to any products accused of

infringing the Fortin patent, which did not issue until December 30, 2003.  Freescale objects to

this request to the extent it requests information protected by the attorney-client privilege and/or the attorney work product doctrine. Freescale objects to this request to the extent it is duplicative of Request No. 11.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

**REQUEST NO. 15:**

Documents sufficient to identify, describe, illustrate, or depict names and/or functions of subsidiaries, departments, or divisions that were involved in any manner in the conception, design, development, manufacture, analysis, testing, marketing, sales or repair of each process for forming conductors that include a layer of tungsten overlying a layer of titanium nitride used with or in, incorporated in or relied on by a Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003. Freescale objects to this request to the extent it requests information protected by the attorney-client privilege and/or the attorney work product doctrine. Freescale objects to this request to the extent it is duplicative of Request No. 11.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

**REQUEST NO. 16:**

All documents relating to third parties contracted, consulted, hired and/or retained that worked with Freescale or worked with another third party on Freescale's behalf on the conception, design, development, implementation, testing and manufacturing of each version of each model of Freescale Product, including but not limited to, contracts, contract proposals, Requests for Proposals (RFPs), solicitations, queries, investigations, and capability studies.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party. Freescale objects to this request to the extent it requests information protected by the attorney-client privilege and/or the attorney work product doctrine. Freescale objects to this request to the extent it requests documents not in Freescale's possession, custody, or control.

**REQUEST NO. 17:**

All documents relating to third parties contracted, consulted, hired and/or retained that worked with Freescale or worked with another third party on Freescale's behalf on the conception, design, development, implementation, testing and manufacturing of each version of each cache memory used with, incorporated in or relied on by any Freescale Product, including but not limited to, contracts, contract proposals, Requests for Proposals (RFPs), solicitations, queries, investigations, and capability studies.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party. Freescale objects to this request to the extent it requests information protected by the attorney-client privilege and/or the attorney work product doctrine. Freescale objects to this request to the extent it requests documents not in Freescale's possession, custody, or control. Freescale objects to this request to the extent it is duplicative of Request No. 16.

**REQUEST NO. 18:**

All documents relating to third parties contracted, consulted, hired and/or retained that worked with Freescale or worked with another third party on Freescale's behalf on the conception, design, development, implementation, testing and manufacturing of each version of each register(s) used in writing, reading, buffering or accessing data from or to each cache memory used with, incorporated in or relied on by a Freescale Product, including but not limited to, contracts, contract proposals, Requests for Proposals (RFPs), solicitations, queries, investigations, and capability studies.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information

concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products.  Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.  Freescale objects to this request to the extent it requests information protected by the attorney-client privilege and/or the attorney work product doctrine.  Freescale objects to this request to the extent it requests documents not in Freescale's possession, custody, or control. Freescale objects to this request to the extent it is duplicative of Request No. 16.

**REQUEST NO. 19:**

All documents relating to third parties contracted, consulted, hired and/or retained that worked with Freescale or worked with another third party on Freescale's behalf on the conception, design, development, implementation, testing and manufacturing of each version of each cache controller used with, incorporated in or relied on by a Freescale Product, including but not limited to, contracts, contract proposals, Requests for Proposals (RFPs), solicitations, queries, investigations, and capability studies.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products.  Freescale objects to this request as overly broad, unduly

burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor

reasonably calculated to lead to the discovery of admissible evidence to the extent the term

"Freescale Products" is not properly limited in time with respect to any products accused of

infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it

requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter

of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by

either party.  Freescale objects to this request to the extent it requests information protected by

the attorney-client privilege and/or the attorney work product doctrine.  Freescale objects to this

request to the extent it requests documents not in Freescale's possession, custody, or control.

Freescale objects to this request to the extent it is duplicative of Request No. 16.

### REQUEST NO. 20:

All documents relating to third parties contracted, consulted, hired and/or retained that worked
with Freescale or worked with another third party on Freescale's behalf on the conception,
design, development, implementation, testing and manufacturing of each version of each process
for forming conductors that include a layer of tungsten overlying a layer of titanium nitride used
with or in, incorporated in or relied on by a Freescale Product, including but not limited to,
contracts, contract proposals, Requests for Proposals (RFPs), solicitations, queries,
investigations, and capability studies.

### RESPONSE:

In addition to its General Objections, Freescale objects to this document request

as premature because ProMOS has not provided Freescale with sufficient information

concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation

of ProMOS's infringement contentions) to permit Freescale to respond with information

regarding relevant Freescale products.  Freescale objects to this request as overly broad, unduly

burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor

reasonably calculated to lead to the discovery of admissible evidence to the extent the term

"Freescale Product" is not properly limited in time with respect to any products accused of

infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it

requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter

of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by

either party.  Freescale objects to this request to the extent it requests information protected by

the attorney-client privilege and/or the attorney work product doctrine.  Freescale objects to this

request to the extent it requests documents not in Freescale's possession, custody, or control.

Freescale objects to this request to the extent it is duplicative of Request No. 16.

**REQUEST NO. 21:**

Your annual reports, prospectuses, proxy statements from Form 10-K and Form 10-Q reports for
the years 2000 to present.

**RESPONSE:**

        In addition to its General objections, Freescale objects to this document request as

overly broad, unduly burdensome, and seeking information neither relevant to the subject matter

of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence.

Freescale objects to this request as unduly burdensome to the extent that the requested

information is publicly available and could be obtained by ProMOS just as easily as Freescale.

        Without waiving any and subject to all of the foregoing objections, Freescale will

produce non-privileged documents in its possession responsive to this request.

**REQUEST NO. 22:**

All documents relating to design reviews and design review meetings, including but not limited
to, all notes, minutes, reports, action item lists and management summaries, relating to each
version of each model of Freescale Product.

**RESPONSE:**

        In addition to its General Objections, Freescale objects to this document request

as premature because ProMOS has not provided Freescale with sufficient information

concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products.  Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.

## REQUEST NO. 23:

All documents relating to design reviews and design review meetings, including but not limited to, all notes, minutes, reports, action item lists and management summaries, relating to each version of each cache memory used with, incorporated in or relied on by any Freescale Product.

## RESPONSE:

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products.  Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter

of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.  Freescale objects to this request to the extent it is duplicative of Request No. 22.

**REQUEST NO. 24:**

All documents relating to design reviews and design review meetings, including but not limited to, all notes, minutes, reports, action item lists and management summaries, relating to each version of each register(s) used in writing, reading, buffering and accessing data from or to each cache memory used with, incorporated in or relied on by Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products.  Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.  Freescale objects to this request to the extent it is duplicative of Request No. 22.

**REQUEST NO. 25:**

All documents relating to design reviews and design review meetings, including but not limited to, all notes, minutes, reports, action item lists and management summaries, relating to each version of each cache controller used with, incorporated in or relied on by a Freescale Product.

**RESPONSE:**

        In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party. Freescale objects to this request to the extent it is duplicative of Request No. 22.

**REQUEST NO. 26:**

All documents relating to design reviews and design review meetings, including but not limited to, all notes, minutes, reports, action item lists and management summaries, relating to each version of each process for forming conductors that include a layer of tungsten overlying a layer of titanium nitride used with or in, incorporated in or relied on by a Freescale Product.

**RESPONSE:**

        In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor

reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.  Freescale objects to this request to the extent it is duplicative of Request No. 22.

**REQUEST NO. 27:**

All documents relating to drawings, schematics, blueprints, manufacturing specifications, engineering specifications, design specifications, product test specifications, part specifications, assembly specifications and other documents relating to the design, development, or manufacture of any Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products.  Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.

Without waiving any and subject to all of the foregoing objections, Freescale will supplement its response within a reasonable time frame upon receiving sufficient information from ProMOS regarding its allegations to allow Freescale to respond with information regarding relevant Freescale products.

## REQUEST NO. 28:

All documents relating to drawings, schematics, blueprints, manufacturing specifications, engineering specifications, design specifications, product test specifications, part specifications, assembly specifications and other documents relating to the design, development, or manufacture of each cache memory used with, incorporated in or relied on by any Freescale Product.

## RESPONSE:

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party. Freescale objects to this request to the extent it is duplicative of Request No. 27.

Without waiving any and subject to all of the foregoing objections, Freescale will supplement its response within a reasonable time frame upon receiving sufficient information

from ProMOS regarding its allegations to allow Freescale to respond with information regarding

relevant Freescale products.

**REQUEST NO. 29:**

All documents relating to drawings, schematics, blueprints, manufacturing specifications, engineering specifications, design specifications, product test specifications, part specifications, assembly specifications and other documents relating to the design, development, or manufacturing of each register(s) used in writing, reading, buffering or accessing data from or to each cache memory used with, incorporated in or relied on by a Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request

as premature because ProMOS has not provided Freescale with sufficient information

concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation

of ProMOS's infringement contentions) to permit Freescale to respond with information

regarding relevant Freescale products.  Freescale objects to this request as overly broad, unduly

burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor

reasonably calculated to lead to the discovery of admissible evidence to the extent the term

"Freescale Product" is not properly limited in time with respect to any products accused of

infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it

requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter

of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by

either party.  Freescale objects to this request to the extent it is duplicative of Request No. 27.

Without waiving any and subject to all of the foregoing objections, Freescale will

supplement its response within a reasonable time frame upon receiving sufficient information

from ProMOS regarding its allegations to allow Freescale to respond with information regarding

relevant Freescale products.

**REQUEST NO. 30:**

All documents relating to drawings, schematics, blueprints, manufacturing specifications, engineering specifications, design specifications, product test specifications, part specifications, assembly specifications and other documents relating to the design, development, or manufacture of each cache controller used with, incorporated in or relied on by a Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party. Freescale objects to this request to the extent it is duplicative of Request No. 27.

Without waiving any and subject to all of the foregoing objections, Freescale will supplement its response within a reasonable time frame upon receiving sufficient information from ProMOS regarding its allegations to allow Freescale to respond with information regarding relevant Freescale products.

**REQUEST NO. 31:**

All documents relating to drawings, schematics, blueprints, manufacturing specifications, engineering specifications, design specifications, product test specifications, part specifications, assembly specifications and other documents relating to the design, development, or manufacture

of each process for forming conductors that include a layer of tungsten overlying a layer of titanium nitride used with or in, incorporated in or relied on by a Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party. Freescale objects to this request to the extent it is duplicative of Request No. 27.

Without waiving any and subject to all of the foregoing objections, Freescale will supplement its response within a reasonable time frame upon receiving sufficient information from ProMOS regarding its allegations to allow Freescale to respond with information regarding relevant Freescale products.

**REQUEST NO. 32:**

All versions of operation manuals, repair manuals, or user manuals for any Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information

concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.

**REQUEST NO. 33:**

All manufacturing and/or production drawings for any Freescale Product, including but not limited to hardware drawings, engineering drawings, assembly drawings, and blueprints.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter

of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.

Without waiving any and subject to all of the foregoing objections, Freescale will supplement its response within a reasonable time frame upon receiving sufficient information from ProMOS regarding its allegations to allow Freescale to respond with information regarding relevant Freescale products.

**REQUEST NO. 34:**

All manufacturing and/or production drawings for each cache memory used with, incorporated in or relied on by any Freescale Product, including but not limited to hardware drawings, engineering drawings, assembly drawings, and blueprints.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party. Freescale objects to this request to the extent it is duplicative of Request No. 33.

Without waiving any and subject to all of the foregoing objections, Freescale will supplement its response within a reasonable time frame upon receiving sufficient information

from ProMOS regarding its allegations to allow Freescale to respond with information regarding

relevant Freescale products.

**REQUEST NO. 35:**

All manufacturing and/or production drawings for each register(s) used in writing, reading, buffering or accessing data from or to each cache memory used with, incorporated in or relied on by a Freescale Product, including but not limited to hardware drawings, engineering drawings, assembly drawings, and blueprints.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party. Freescale objects to this request to the extent it is duplicative of Request No. 33.

Without waiving any and subject to all of the foregoing objections, Freescale will supplement its response within a reasonable time frame upon receiving sufficient information from ProMOS regarding its allegations to allow Freescale to respond with information regarding relevant Freescale products.

**REQUEST NO. 36:**

All manufacturing and/or production drawings for each cache controller used with, incorporated in or relied on by a Freescale Product, including but not limited to hardware drawings, engineering drawings, assembly drawings, and blueprints.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party. Freescale objects to this request to the extent it is duplicative of Request No. 33.

Without waiving any and subject to all of the foregoing objections, Freescale will supplement its response within a reasonable time frame upon receiving sufficient information from ProMOS regarding its allegations to allow Freescale to respond with information regarding relevant Freescale products.

**REQUEST NO. 37:**

All manufacturing and/or production drawings for each process for forming conductors that include a layer of tungsten overlying a layer of titanium nitride used with or in, incorporated in or relied on by a Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party. Freescale objects to this request to the extent it is duplicative of Request No. 33.

Without waiving any and subject to all of the foregoing objections, Freescale will supplement its response within a reasonable time frame upon receiving sufficient information from ProMOS regarding its allegations to allow Freescale to respond with information regarding relevant Freescale products.

**REQUEST NO. 38:**

All documents relating to the conception, engineering, design, research, development, manufacture, testing, use, repair and/or operation of each version of each model of Freescale Product, including but not limited to specifications, schematics, block diagrams, data sheets, layouts, databases, depictions, photographs, simulations, test results, manuals, journals, notes, notebooks, communications, and correspondence.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information

concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products.  Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.  Freescale objects to this request as duplicative of previous document requests.

Without waiving any and subject to all of the foregoing objections, Freescale will supplement its response within a reasonable time frame upon receiving sufficient information from ProMOS regarding its allegations to allow Freescale to respond with information regarding relevant Freescale products.

## REQUEST NO. 39:

All documents relating to the conception, engineering, design, research, development, manufacture, testing, use, repair and/or operation of each version of each cache memory used with, incorporated in relied on by any Freescale Product, including but not limited to specifications, schematics, block diagrams, data sheets, layouts, databases, depictions, photographs, simulations, test results, manuals, journals, notes, notebooks, communications, and correspondence.

## RESPONSE:

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information

regarding relevant Freescale products.  Freescale objects to this request as overly broad, unduly

burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor

reasonably calculated to lead to the discovery of admissible evidence to the extent the term

"Freescale Product" is not properly limited in time with respect to any products accused of

infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it

requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter

of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by

either party.  Freescale objects to this request to the extent it is duplicative of Request No. 38.

Without waiving any and subject to all of the foregoing objections, Freescale will

supplement its response within a reasonable time frame upon receiving sufficient information

from ProMOS regarding its allegations to allow Freescale to respond with information regarding

relevant Freescale products.

## REQUEST NO. 40:

All documents relating to the conception, engineering, design, research, development, manufacture, testing, use, repair and/or operation of each version of each register(s) used in writing, reading, buffering or accessing data from or to each cache memory used with, incorporated in or relied on by a Freescale Product, including but not limited to specifications, schematics, block diagrams, data sheets, layouts, data bases, depictions, photographs, simulations, test results, manuals, journals, notes, notebooks, communications, and correspondence.

## RESPONSE:

In addition to its General Objections, Freescale objects to this document request

as premature because ProMOS has not provided Freescale with sufficient information

concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation

of ProMOS's infringement contentions) to permit Freescale to respond with information

regarding relevant Freescale products.  Freescale objects to this request as overly broad, unduly

burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor

reasonably calculated to lead to the discovery of admissible evidence to the extent the term

"Freescale Product" is not properly limited in time with respect to any products accused of

infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it

requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter

of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by

either party.  Freescale objects to this request to the extent it is duplicative of Request No. 38.

   Without waiving any and subject to all of the foregoing objections, Freescale will

supplement its response within a reasonable time frame upon receiving sufficient information

from ProMOS regarding its allegations to allow Freescale to respond with information regarding

relevant Freescale products.

## REQUEST NO. 41:

All documents relating to the conception, engineering, design, research, development, manufacture, testing, use, repair and/or operation of each version of each cache controller used with, incorporated in or relied on by a Freescale Product, including but not limited to specifications, schematics, block diagrams, data sheets, layouts, databases, depictions, photographs, simulations, test results, manuals, journals, notes, notebooks, communications, and correspondence.

## RESPONSE:

   In addition to its General Objections, Freescale objects to this document request

as premature because ProMOS has not provided Freescale with sufficient information

concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation

of ProMOS's infringement contentions) to permit Freescale to respond with information

regarding relevant Freescale products.  Freescale objects to this request as overly broad, unduly

burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor

reasonably calculated to lead to the discovery of admissible evidence to the extent the term

"Freescale Product" is not properly limited in time with respect to any products accused of

infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it

requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter

of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by

either party.  Freescale objects to this request to the extent it is duplicative of Request No. 38.

        Without waiving any and subject to all of the foregoing objections, Freescale will

supplement its response within a reasonable time frame upon receiving sufficient information

from ProMOS regarding its allegations to allow Freescale to respond with information regarding

relevant Freescale products.

### REQUEST NO. 42:

All documents relating to the conception, engineering, design, research, development,
manufacture, testing, use, repair and/or operation of each process for forming conductors that
include a layer of tungsten overlying a layer of titanium nitride used with or in, incorporated in
or relied on by a Freescale Product, including but not limited to specifications, schematics, block
diagrams, data sheets, layouts, databases, depictions, photographs, simulations, test results,
manuals, journals, notes, notebooks, communications, and correspondence.

### RESPONSE:

        In addition to its General Objections, Freescale objects to this document request

as premature because ProMOS has not provided Freescale with sufficient information

concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation

of ProMOS's infringement contentions) to permit Freescale to respond with information

regarding relevant Freescale products.  Freescale objects to this request as overly broad, unduly

burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor

reasonably calculated to lead to the discovery of admissible evidence to the extent the term

"Freescale Product" is not properly limited in time with respect to any products accused of

infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it

requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter

of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party. Freescale objects to this request to the extent it is duplicative of Request No. 38.

Without waiving any and subject to all of the foregoing objections, Freescale will supplement its response within a reasonable time frame upon receiving sufficient information from ProMOS regarding its allegations to allow Freescale to respond with information regarding relevant Freescale products.

**REQUEST NO. 43:**

For each Freescale Product, documents sufficient to show the place and process of manufacture, models manufactured, units manufactured, and destination of units manufactured.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

**REQUEST NO. 44:**

To the extent not produced in response to any other request, all reference designs and schematics relating to each version of each model of Freescale Product.

- 38 -

**RESPONSE:**

Freescale incorporates its objections to the extent this request repeats and overlaps with any information or documents responsive "to any other request."  In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products.  Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.

Without waiving any and subject to all of the foregoing objections, Freescale will supplement its response within a reasonable time frame upon receiving sufficient information from ProMOS regarding its allegations to allow Freescale to respond with information regarding relevant Freescale products.

**REQUEST NO. 45:**

All pictures or photographs of Freescale Products, including but not limited to any die or portion of any die.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information

concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Products" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party. Freescale objects to this response the extent it is duplicative of Request Nos. 38-42.

### REQUEST NO. 46:

Circuit diagrams for each version of each model of Freescale Product.

### RESPONSE:

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

**REQUEST NO. 47:**

Circuit diagrams for each version of each cache memory used with, incorporated in or relied on by any Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003. Freescale objects to this request to the extent it is duplicative of Request No. 46.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

**REQUEST NO. 48:**

Circuit diagrams for each version of each register(s) used in writing, reading, buffering or accessing data from or to each cache memory used with, incorporated in or relied on by a Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information

regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003. Freescale objects to this request to the extent it is duplicative of Request No. 46.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

**REQUEST NO. 49:**

Circuit diagrams for each version of each cache controller used with, incorporated in or relied on by a Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003. Freescale objects to this request to the extent it is duplicative of Request No. 46.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

**REQUEST NO. 50:**

Process flows and process recipes for each version of each model of Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products.  Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

**REQUEST NO. 51:**

Process flows and process recipes for each version of each process for forming conductors that include a layer of tungsten overlying a layer of titanium nitride used with or in, incorporated in or relied on by a Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products.  Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor

reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003.  Freescale objects to this request to the extent it is duplicative of Request No. 50.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

**REQUEST NO. 52:**

All documents relating to source code, object code, pseudo code, flow charts or design specifications of the circuit diagrams, Verilog code and/or VHDL code, and reticle layout code for each version of each model of Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products.  Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.

**REQUEST NO. 53:**

All documents relating to source code, object code, pseudo code, flow charts or design specifications of the circuit diagrams, Verilog code and/or VHDL code, and reticle layout code for each version of each cache memory used with, incorporated in or relied on by any Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party. Freescale objects to this request to the extent it is duplicative of Request No. 52.

**REQUEST NO. 54:**

All documents relating to source code, object code, pseudo code, flow charts or design specifications of the circuit diagrams, Verilog code and/or VHDL code, and reticle layout code for each version of each register(s) used in writing, reading, buffering or accessing data from or to each cache memory used with, incorporated in or relied on by a Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation

of ProMOS's infringement contentions) to permit Freescale to respond with information

regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly

burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor

reasonably calculated to lead to the discovery of admissible evidence to the extent the term

"Freescale Product" is not properly limited in time with respect to any products accused of

infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it

requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter

of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by

either party. Freescale objects to this request to the extent it is duplicative of Request No. 52.

## REQUEST NO. 55:

All documents relating to source code, object code pseudo code, flow charts or design
specifications of the circuit diagrams, Verilog code and/or VHDL code, and reticle layout code
for each version of each cache controller used with, incorporated in or relied on by a Freescale
Product.

## RESPONSE:

In addition to its General Objections, Freescale objects to this document request

as premature because ProMOS has not provided Freescale with sufficient information

concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation

of ProMOS's infringement contentions) to permit Freescale to respond with information

regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly

burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor

reasonably calculated to lead to the discovery of admissible evidence to the extent the term

"Freescale Product" is not properly limited in time with respect to any products accused of

infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it

requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter

of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.  Freescale objects to this request to the extent it is duplicative of Request No. 52.

**REQUEST NO. 56:**

Documents sufficient to identify the date of all revisions to circuit diagrams, source code, Verilog code and/or VHDL code, and reticle layout code for each version of each model of Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products.  Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003.

**REQUEST NO. 57:**

All documents relating to the operation of each version of each model of Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products.  Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor

reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.

Without waiving any and subject to all of the foregoing objections, Freescale will supplement its response within a reasonable time frame upon receiving sufficient information from ProMOS regarding its allegations to allow Freescale to respond with information regarding relevant Freescale products.

**REQUEST NO. 58:**

All documents relating to the operation of each version of each cache memory used with, incorporated in or relied on by any Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter

- 48 -

of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party. Freescale objects to this request to the extent it is duplicative of Request No. 57.

Without waiving any and subject to all of the foregoing objections, Freescale will supplement its response within a reasonable time frame upon receiving sufficient information from ProMOS regarding its allegations to allow Freescale to respond with information regarding relevant Freescale products.

**REQUEST NO. 59:**

All documents relating to the operation of each version of each register(s) used in writing, reading, buffering or accessing data from or to each cache memory used with, incorporated in or relied on by a Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party. Freescale objects to this request to the extent it is duplicative of Request No. 57.

Without waiving any and subject to all of the foregoing objections, Freescale will supplement its response within a reasonable time frame upon receiving sufficient information

- 49 -

from ProMOS regarding its allegations to allow Freescale to respond with information regarding relevant Freescale products.

**REQUEST NO. 60:**

All documents relating to the operation of each version of each cache controller used with, incorporated in or relied on by a Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party. Freescale objects to this request to the extent it is duplicative of Request No. 57.

Without waiving any and subject to all of the foregoing objections, Freescale will supplement its response within a reasonable time frame upon receiving sufficient information from ProMOS regarding its allegations to allow Freescale to respond with information regarding relevant Freescale products.

**REQUEST NO. 61:**

All engineering change orders or notices for each version of each model of Freescale Products.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Products" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.

**REQUEST NO. 62:**

Documents sufficient to show the device and system architecture of each version of each model of Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term

"Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

**REQUEST NO. 63:**

All documents relating to comparative testing of each version of each model of Freescale Products.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Products" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.

**REQUEST NO. 64:**

All prototypes and models of Freescale Products, from initial prototype to commercial and/or production models made from 2000 to the present.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Products" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.

**REQUEST NO. 65:**

Complete copies of all licenses or agreements to which you are a party, including but not limited to cross-licenses, inter-company agreements, settlements, covenants not to enforce or releases that relate in any way to integrated circuit manufacturing, microprocessor, microcontroller, DRAM, SDRAM or memory technologies.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Freescale objects to this document request to the extent it requests "[a]ll licenses or agreements" and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.

Without waiving any and subject to all of the foregoing objections, Freescale responds that most, if not all, of its license agreements contain confidentiality provisions that require Freescale to obtain the consent of the other party prior to disclosing the contents of the agreement. Freescale is in the process of contacting these other parties and will produce relevant, responsive agreements after it receives consent to do so.

## REQUEST NO. 66:

All documents that refer to, discuss, evidence, mention or constitute any contracts or license agreements, including drafts, in which Freescale has licensed, or licenses, or considering licensing products, technology or patents from or to third parties relating to microprocessor, microcontroller, processor or memory technologies.

## RESPONSE:

In addition to its General Objections, Freescale objects to this document request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Freescale objects to this document request to the extent it requests "[a]ll documents" relating to all Freescale licenses and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.

Without waiving any and subject to all of the foregoing objections, Freescale responds that most, if not all, of its license agreements contain confidentiality provisions that require Freescale to obtain the consent of the other party prior to disclosing the contents of the agreement. Freescale is in the process of contacting these other parties and will produce relevant, responsive agreements after it receives consent to do so.

## REQUEST NO. 67:

All documents relating to your policies on licensing or cross-licensing patents, know-how or technology.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent it requests "[a]ll documents" relating to licensing of "know-how or technology" and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party. Freescale objects to the undefined terms "policies" and "know-how or technology" as vague and ambiguous.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

**REQUEST NO. 68:**

Documents sufficient to identify any third parties that manufacture any Freescale Products.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Products" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003. Freescale objects to

this document request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine.

Without waiving any and subject to all of the foregoing objections, Freescale responds that it is not presently aware of any non-privileged, relevant, and responsive documents, but if Freescale becomes aware of any such documents it will produce them.

**REQUEST NO. 69:**

All articles, speeches, presentations or interviews, both internal and external, that have been written and/or given by your employees, officers, directors or other of your representatives relating to Freescale Products.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Products" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.

**REQUEST NO. 70:**

All press releases from 2000 to the present relating to Freescale Products.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Products" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.

**REQUEST NO. 71:**

All documents relating to ProMOS or the patents-in-suit, including but not limited to documents that relate to your first awareness of any of the patents-in-suit and your earliest notice of potential infringement of any of the patents-in-suit.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

**REQUEST NO. 72:**

All documents relating to communications exchanged between you and any third party relating to the patents-in-suit, this lawsuit and/or ProMOS.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent it requests "[a[ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

**REQUEST NO. 73:**

Each Freescale meeting agenda, corporate minutes or minutes of meetings relating to the patents-in-suit, this lawsuit and/or ProMOS products.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent it requests documents

from "each" meeting relating to ProMOS and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.

   Without waiving any and subject to all of the foregoing objections, Freescale responds that it is not presently aware of any non-privileged, relevant, and responsive documents, but if Freescale becomes aware of any such documents it will produce them.

## REQUEST NO. 74:

All documents relating to any effort by Freescale or anyone else on its behalf to design, redesign, commercialize or modify any Freescale Product in view of the patents-in-suit.

## RESPONSE:

   In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic on the grounds that it purports to require Freescale to interview all of its employees and search all of its files worldwide. Freescale objects to this request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine.

## REQUEST NO. 75:

All documents relating to any attempt by Freescale or anyone on its behalf to design around and/or avoid infringement of the patents-in-suit by any Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature under the parties' proposed Rule 16 Scheduling Order, because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products, the identity of the asserted claims, and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products, and because the Court has not yet construed any of the claims of any of the Patents-in-Suit. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic on the grounds that it purports to require Freescale to interview all of its employees and search all of its files worldwide. Freescale objects to this request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine.

**REQUEST NO. 76:**

All documents related or referring to any ProMOS patent.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent it requests "[a]ll

documents" relating to "any ProMOS patent" and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession related to the Patents-in-Suit.

**REQUEST NO. 77:**

All documents relating to your evaluation, analysis, or consideration of the patents-in-suit, including but not limited to any reverse engineering or testing performed on any Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature under the parties' proposed Rule 16 Scheduling Order, because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products, the identity of the asserted claims, and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products, and because the Court has not yet construed any of the claims of any of the Patents-in-Suit. Freescale objects to this request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine.

**REQUEST NO. 78:**

All documents relating to your consideration of whether or not to obtain a license from ProMOS for the patents-in-suit.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature under the parties' proposed Rule 16 Scheduling Order, because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the

accused Freescale products, the identity of the asserted claims, and an explanation of ProMOS's

infringement contentions) to permit Freescale to respond with information regarding relevant

Freescale products, and because the Court has not yet construed any of the claims of any of the

Patents-in-Suit.  Freescale objects to this request to the extent it seeks information protected by

the attorney-client privilege and/or the attorney work product doctrine.

**REQUEST NO. 79:**

All documents found or identified during any enforceability, prior art or invalidity searches, or any other studies relating to the patents-in-suit, including any copies of patents, publications, or other prior art identified during such searches or studies.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request

to the extent it seeks information protected by the attorney-client privilege and/or the attorney

work product doctrine.

Without waiving any and subject to all of the foregoing objections, Freescale will

produce non-privileged documents in its possession responsive to this request.

**REQUEST NO. 80:**

All documents that relate, support, or contradict Freescale's assertion that the patents-in-suit are invalid for any reason, including but not limited to anticipation or obviousness.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request

to the extent it seeks information protected by the attorney-client privilege and/or the attorney

work product doctrine.  Freescale object to this request as overly broad and unduly burdensome

to the extent it requests "[a]ll documents" relating to the requested topic on the grounds that it

purports to require Freescale to interview all of its employees and search all of its files

worldwide.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

**REQUEST NO. 81:**

All documents that Freescale contends constitute prior art to the patents-in suit.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as overly broad and unduly burdensome to the extent it requests "[a]ll documents" relating to the requested topic on the grounds that it purports to require Freescale to interview all of its employees and search all of its files worldwide.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

**REQUEST NO. 82:**

All documents that relate, support, or contradict Freescale's assertion that the patents-in-suit are unenforceable.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Freescale objects to this document request as overly broad and unduly burdensome to the extent it requests "[a]ll documents" relating to the requested topic on the grounds that it purports to require Freescale to interview all of its employees and search all of its files worldwide. Freescale objects to this request to the extent it seeks documents outside of the possession, custody, or control of Freescale.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

**REQUEST NO. 83:**

All opinion letters, memoranda, or other documents relating to your contentions on validity/invalidity, infringement/non-infringement, or enforceability/unenforceability of the patents-in-suit.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature under the parties' proposed Rule 16 Scheduling Order, because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products, the identity of the asserted claims, and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products, and because the Court has not yet construed any of the claims of any of the Patents-in-Suit. Freescale objects to this request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine.

**REQUEST NO. 84:**

All documents supporting, refuting or relating in any way to the affirmative defenses or counterclaims set forth in your Answer to the Complaint.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Freescale objects to this document request as overly broad and unduly burdensome to the extent it requests "[a]ll documents" relating to the requested topic on the grounds that it purports to require Freescale to interview all of its employees and search all of its files worldwide.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

- 64 -

**REQUEST NO. 85:**

All documents relating to any contention by you that your products do not infringe the patents-in-suit, including but not limited to documents relating to the interpretation, scope, and meaning of the claims in any of the patents-in-suit.

**RESPONSE:**

        In addition to its General Objections, Freescale objects to this document request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine.  Freescale objects to this document request as overly broad and unduly burdensome to the extent it requests "[a]ll documents" relating to the requested topic on the grounds that it purports to require Freescale to interview all of its employees and search all of its files worldwide.

        Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

**REQUEST NO. 86:**

All opinions of counsel obtained with respect to infringement, validity, or enforceability of the patents-in-suit upon which you intend to rely at trial to defend against claims of willful infringement, inducement to infringe, or contributory infringement.

**RESPONSE:**

        In addition to its General Objections, Freescale objects to this document request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine.

**REQUEST NO. 87:**

All communications or opinions of officers, directors and/or employees of yours with respect to infringement, validity, or enforceability of the patents-in-suit or regarding any licensing negotiations with ProMOS.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request.

**REQUEST NO. 88:**

Documents sufficient to show by month or calendar quarter for each year since 2000 the number of each version of each model of Freescale Product manufactured, used, sold or distributed in the United States.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited to products made, used, offered for sale, or sold within the United States, or imported into the United States, and, with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, is not properly limited in time.

**REQUEST NO. 89:**

Documents sufficient to show by month or calendar quarter for each year since 2000 the volume of sales in dollars from the sale or distribution of each version of each model of Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited to products made, used, offered for sale, or sold within the United States, or imported into the United States, and, with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, is not properly limited in time.

Freescale will supplement its response within a reasonable time frame upon receiving sufficient information from ProMOS regarding its allegations to allow Freescale to respond with the requested information regarding relevant Freescale products.

**REQUEST NO. 90:**

All projections, forecasts, business plans, strategic plans, fiscal plans, marketing plans or sales plans relating to the sale of Freescale Products from 2000 to the present, including documents containing projections through calendar year 2012.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly

burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited to products made, used, offered for sale, or sold within the United States, or imported into the United States, and, with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, is not properly limited in time, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.

**REQUEST NO. 91:**

All documents relating to the means by which sales or sales information relating to each version of each model of Freescale Product is maintained and tracked by or on behalf of Freescale.

**RESPONSE:**

        In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited to products made, used, offered for sale, or sold within the United States, or imported into the United States, and, with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, is not properly limited in time, and to the extent it requests "[a]ll documents" relating to the requested

topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.

**REQUEST NO. 92:**

All versions of all part number decoders or legends for each version of each model of Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003.

**REQUEST NO. 93:**

Current and historical price lists for each version of each model of Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor

reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited to products made, used, offered for sale, or sold within the United States, or imported into the United States, and, with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, is not properly limited in time.

**REQUEST NO. 94:**

All documents relating to returns of, or complaints, dissatisfaction, negative comments, unfavorable opinions or suggestions for improvement regarding each version of each model of Freescale Products.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Products" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.

**REQUEST NO. 95:**

All documents relating to favorable, positive, commendatory, or complimentary feedback, comments or opinions regarding each version of each model of Freescale Products.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Products" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.

**REQUEST NO. 96:**

All documents relating to favorable, positive, commendatory, or complimentary feedback, comments or opinions regarding any ProMOS product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as overly broad and unduly burdensome to the extent it seeks documents outside of the possession, custody, or control of Freescale and to the extent that the requested information is publicly available and could be obtained by ProMOS just as easily as Freescale. Freescale objects to this  request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent  that it seeks "all documents" relating to "any ProMOS

product" and to the extent it not limited to the subject matter of the claims or defenses raised in the lawsuit by either party.

Without waiving any and subject to all of the foregoing objections, Freescale responds that it is not presently aware of any non-privileged, relevant, and responsive documents, but if Freescale becomes aware of any such documents it will produce them.

**REQUEST NO. 97:**

All documents relating to sales, distribution or importation agreements entered into between Freescale and any third party for each version of each model of Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003.

**REQUEST NO. 98:**

Documents sufficient to show each of your distributors, resellers and customers of each version of each model of Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation

of ProMOS's infringement contentions) to permit Freescale to respond with information

regarding relevant Freescale products.  Freescale objects to this request as overly broad, unduly

burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor

reasonably calculated to lead to the discovery of admissible evidence to the extent the term

"Freescale Product" is not properly limited in time with respect to any products accused of

infringing the Fortin patent, which did not issue until December 30, 2003.

**REQUEST NO. 99:**

All documents relating to purchase orders and/or specifications received from customers or
potential customers for each version of each model of Freescale Product, including all drawings
and information received therewith.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request

as premature because ProMOS has not provided Freescale with sufficient information

concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation

of ProMOS's infringement contentions) to permit Freescale to respond with information

regarding relevant Freescale products.  Freescale objects to this request as overly broad, unduly

burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor

reasonably calculated to lead to the discovery of admissible evidence to the extent the term

"Freescale Product" is not properly limited to products made, used, offered for sale, or sold

within the United States, or imported into the United States, and, with respect to any products

accused of infringing the Fortin patent, which did not issue until December 30, 2003, is not

properly limited in time.

**REQUEST NO. 100:**

All documents relating to market shares for Freescale and its competitors for each of the
Freescale Products.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Products" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party. Freescale objects to this request as overly broad and unduly burdensome to the extent it seeks documents outside of the possession, custody, or control of Freescale and to the extent that the requested information is publicly available and could be obtained by ProMOS just as easily as Freescale.

Without waiving any and subject to all of the foregoing objections, Freescale will produce any non-privileged documents in its possession responsive to this request.

**REQUEST NO. 101:**

Summary documents categorized by year and by product type and name regarding the following: (1) Freescale's total unit and dollar volumes for Freescale Products manufactured, sold, or offered for sale by you from 2000 to the present, including projections through calendar year 2012; and (2) revenues, costs (fixed and variable), gross profit, and net profit for all such products manufactured, sold or offered for sale by you from 2000 to the present, including projections through calendar year 2012.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited to products made, used, offered for sale, or sold within the United States, or imported into the United States, and, with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, is not properly limited in time.

**REQUEST NO. 102:**

Summary documents categorized by year and by product type and name regarding gross expenses, including but not limited to direct labor costs, direct manufacturing costs, selling costs, variable overhead costs, incurred in the manufacture, distribution, or sale of Freescale Products from 2000 to the present, including projections through calendar year 2012.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term

"Freescale Product" is not properly limited to products made, used, offered for sale, or sold within the United States, or imported into the United States, and, with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, is not properly limited in time.

**REQUEST NO. 103:**

Documents sufficient to show the date of the first sale of each Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited to products made, used, offered for sale, or sold within the United States, or imported into the United States, and, with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, is not properly limited in time.

**REQUEST NO. 104:**

Summary documents identifying the distributors and retailers to whom you have sold each Freescale Product from 2000 through the present, including the name, address, products(s) sold by model number, number of units sold, date of sale, date of shipment, and sales price.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information

concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited to products made, used, offered for sale, or sold within the United States, or imported into the United States, and, with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, is not properly limited in time.

**REQUEST NO. 105:**

Financial statements, including profit and loss statements, income statements, balance sheets, statements of cash flow, statements of retained earnings, and notes thereto for Freescale and any of its affiliates, divisions, subsidiaries, or parent companies.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the subject matter of the claims or defenses raised in the lawsuit by either party.

**REQUEST NO. 106:**

All documents relating to market, industry or consumer studies, surveys, or analyses of any Freescale Product and/or any competitor's product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as overly broad and unduly burdensome to the extent it seeks documents outside of the

possession, custody, or control of Freescale.  Freescale objects to this request as overly broad,

unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit

nor reasonably calculated to lead to the discovery of admissible evidence to the extent it is not

limited to the subject matter of the claims or defenses raised in the lawsuit by either party.

Freescale objects to this request as unduly burdensome to the extent that the requested

information is publicly available and could be obtained by ProMOS just as easily as Freescale.

Without waiving any and subject to all of the foregoing objections, Freescale will

produce non-privileged documents in its possession responsive to this request.

**REQUEST NO. 107:**

All drafts, proposals, and final copies of advertising, sales, or promotional literature, including
but not limited to television and print media advertising, brochures and trade show promotional
material, catalogues, price lists, sell sheets, product descriptions, sales literature, drawings,
videotapes, audio tapes, electronic media, or photographs for advertising, point-of-sale
commercials, or other promotional material for Freescale Products.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request

as premature because ProMOS has not provided Freescale with sufficient information

concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation

of ProMOS's infringement contentions) to permit Freescale to respond with information

regarding relevant Freescale products.  Freescale objects to this request as overly broad, unduly

burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor

reasonably calculated to lead to the discovery of admissible evidence to the extent the term

"Freescale Products" is not properly limited in time with respect to any products accused of

infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it

requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter

of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.

**REQUEST NO. 108:**

All memoranda, correspondence, bulletins, newsletters, or other documents that currently or since 2000 have been distributed to, made available to, received from, or drafted by your present or former employees engaged in marketing or sales functions relating to Freescale Products.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Products" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.

**REQUEST NO. 109:**

All documents prepared by, provided by, sent to, or received from your advertising agencies or public relations firms relating to any Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information

concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, and to the extent it requests "[a]ll documents" relating to the requested topic and is not limited to the subject matter of the asserted claims of the Patents-in-Suit or the claims or defenses raised in the lawsuit by either party.

## REQUEST NO. 110:

All documents that you may introduce as exhibits at the trial of this matter.

## RESPONSE:

In addition to its General Objections, Freescale objects to this document request as premature. Freescale objects to this request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request in accordance with the Federal Rules of Civil Procedure and the Court's orders.

## REQUEST NO. 111:

All documents identifying by name, company, address and title, all third parties hired by you and your counsel to investigate the above-captioned litigation, ProMOS, the patents-in-suit, or any ProMOS products.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the subject matter of the claims or defenses raised in the lawsuit by either party. Freescale objects to this request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request in accordance with the Federal Rules of Civil Procedure and the Court's orders.

**REQUEST NO. 112:**

Ten samples of each Freescale Product.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited in time with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003.

**REQUEST NO. 113:**

Any and all witness statements taken in connection with this litigation.

**RESPONSE:**

        In addition to its General Objections, Freescale objects to this document request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine.  Freescale objects to this request as vague and ambiguous to the extent it requests all "witness statements."  As Freescale interprets that term, Freescale responds that it is not presently aware of any non-privileged, relevant, and responsive documents, but if Freescale becomes aware of any such documents it will produce them.

**REQUEST NO. 114:**

All documents provided to any person(s) that you expect to call as an expert witness at trial.

**RESPONSE:**

        In addition to its General Objections, Freescale objects to this document request as premature.  Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the subject matter of the claims or defenses raised in the lawsuit by either party.

        Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request in accordance with the Federal Rules of Civil Procedure and the Court's orders.

**REQUEST NO. 115:**

All documents relied upon by any person(s) that you expect to a call as an expert witness at trial in forming the opinion(s) as to which the person(s) will or may testify.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Freescale objects to this document request as premature.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request in accordance with the Federal Rules of Civil Procedure and the Court's orders.

**REQUEST NO. 116:**

All documents relating to each person you employ, have employed, or have retained as an expert, including but not limited to curriculum vitae, resumes, retention agreements, letters, statements, and communications.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Freescale objects to this request as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent it is not limited to the subject matter of the claims or defenses raised in the lawsuit by either party.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request in accordance with the Federal Rules of Civil Procedure and the Court's orders.

**REQUEST NO. 117:**

All documents on which you intend to rely for and/or that might be relevant to a reasonable royalty analysis or calculation using the so-called *Georgia Pacific* factors.

**RESPONSE:**

In addition to its General Objections, Freescale objects to this document request as premature.  Freescale objects to this request to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine.

Without waiving any and subject to all of the foregoing objections, Freescale will produce non-privileged documents in its possession responsive to this request in accordance with the Federal Rules of Civil Procedure and the Court's orders.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Mary B. Graham*

———————————————————————
Mary B. Graham (#2256)
James W. Parrett, Jr. (#4292)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
302.658.9200

*Attorneys for Freescale Semiconductor, Inc.*

OF COUNSEL:

David L. Witcoff
Kevin P. Ferguson
John M. Michalik
JONES DAY
77 West Wacker
Chicago, IL  60601-1692
312.782.3939

F. Drexel Feeling
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH  44114-1190
216.586.3939

Dated:  May 17, 2007
830702

EXHIBIT 11

# JONES DAY

77 WEST WACKER • CHICAGO, ILLINOIS 60601-1692

TELEPHONE: (312) 782-3939 • FACSIMILE: (312) 782-8585

Direct Number:  (312) 269-4366
kpferguson@jonesday.com

JP239140
878247-615013

July 10, 2007

VIA EMAIL

Sten A. Jensen, Esq.
Hogan & Hartson LLP
555 Thirteenth Street, NW
Washington, DC  20004
sajensen@hhlaw.com

Re:    *ProMOS Technologies v. Freescale Semiconductor, Inc.*

Dear Sten:

I am writing with regard to ProMOS' Motion to Compel filed last Friday night and the issue of where discovery stands for both Freescale and ProMOS.  As Freescale advised ProMOS shortly before ProMOS filed its motion, ProMOS misstated Freescale's position with regard to ProMOS' Chan-related discovery requests.  That is precisely why we suggested conducting a proper meet-and-confer, but ProMOS unfortunately ignored this suggestion and filed its motion anyway.

Freescale's position is basic.  ProMOS is seeking document discovery that is exceptionally broad and burdensome, both in terms of the scope of products and the breadth of documents related to those products.  Freescale's position from the outset has been that there needs to be a narrowing in both scope and breadth of that discovery.  ProMOS has not seriously disputed that its requests are overbroad, and indeed its motion effectively acknowledges as much.

ProMOS' motion, however, continues to misstate Freescale's discovery position.  For example, Freescale has *never* "suggested," as ProMOS asserts, that ProMOS must provide infringement contentions before Freescale would produce technical documents related to Chan-accused products.  To the contrary, Freescale repeatedly said that it would work with ProMOS to provide any documents ProMOS reasonably requested pertaining to the Chan patents, and asked ProMOS to tell us precisely what documents it wanted.  In this regard, Freescale asked ProMOS to either: (1) narrow its definition of "Freescale Products" to some workable definition even arguably related to the Chan patents' claims, rather than seeking discovery on every product Freescale makes that contains, uses, works with or relies in any way on a cache memory (which Steve Routh acknowledged during our May 23 meet-and-confer call was much broader than the inventions claimed in the Chan patents), or (2) specifically identify products that ProMOS

CHI-1596888v3

July 10, 2007
Page 2

believes infringe the Chan patents. Similarly, Freescale also asked ProMOS to specify the types of documents it really wanted relating to the Chan-accused products, rather than seeking virtually every document in Freescale's possession as literally requested in ProMOS' document requests (*see, e.g.*, document request nos. 6-10 and 16-20 [seeking every document containing the name of any employee or third-party who ever had any involvement whatsoever with any accused product] and document request no. 38 [seeking literally every document pertaining to each accused product]). Although ProMOS stated in each of our discussions that they would consider and respond to Freescale's requests to narrow its discovery requests; however, it simply repeated its earlier demands and then filed its motion to compel instead. Moreover, ProMOS' identification of more than 100 additional accused products shortly before filing its motion to compel obviously does not comply with its meet-and-confer obligations under the Local Rules. It is for these reasons (as well as those detailed below) that Freescale requests that ProMOS withdraw its motion until such time as the parties have properly conferred and determined whether any dispute does, in fact, exist that cannot be privately resolved between the parties.

We also were surprised to see in ProMOS' motion the unsupported assertion that it was "willing to allow Freescale to make a limited production of critical technical documents relating to its other cache memory products... ." This is contrary to all of ProMOS' previous demands that Freescale produce "all documents" responsive to several dozen requests for production (*see, e.g.*, section (2) on page 3 of your May 18, 2007 letter and section A(2) on page 4 of your June 25, 2007 letter). In fact, ProMOS' motion is the first effort by ProMOS to define a set of "critical technical documents" sufficient to allow it to investigate its infringement allegations. We view this as a positive step and is precisely what we requested almost two months ago.

As promised during our July 5 meet-and-confer, one day in advance of ProMOS' motion to compel, Freescale has already produced the requested critical technical documents for each of the four product families which ProMOS deemed "representative" and for which ProMOS generated infringement claim charts. Additionally, and once again contrary to the representations in ProMOS' motion, Freescale has also produced critical technical documents for 5 other Freescale product families specifically accused in ProMOS' interrogatory responses, including the Coldfire V5 and V5E processor core, the e600 processor core, the i.MX31 processor, the Power Quicc II processor, and the Power Quicc III processor product families. Before making additional demands and accusations, please review the technical materials already produced for the previously-identified accused "representative" products, as ProMOS promised it would during our July 5 meet-and-confer, and let me know if ProMOS believes that additional information is needed to complete its infringement analysis.

From the overbreadth of newly accused products (*e.g.*, the MPC 5533 and 5534 processor products do not even "use, incorporate, work with or rely upon cache memory"), it appears that ProMOS has still not conducted any, let alone a good faith, review of the materials publicly available on Freescale's website to either: (1) narrow its definition of "Freescale Products" to something less than any product which contains, uses, works with or relies in any way on a cache

July 10, 2007
Page 3

memory or (2) even identify products that at least contain cache memories.  Nevertheless, even through ProMOS apparently refuses to accept its burden of properly defining the discovery it seeks, in an effort to resolve this matter and move forward with the case, Freescale is willing to produce critical technical documents for all relevant products meeting the following criteria related to the claimed inventions:

Criteria for Chan '709 — (a) a first and second port; (b) a write register between the first port and the random access memory and between the first port and the second port; and (c) a write-back register between the random access memory and the second port.

Criteria for Chan '241 — (a) A dual port cache memory having a first port connected to a first data bus and a second port connected to a second data bus; and (b) A cache controller connected to the dual port cache memory, the cache controller having a first port connected to a first address bus and a second port connected to a second address bus such that the dual port cache memory and the cache controller are connected in parallel between a host processor and system memory.

Please let us know if these criteria are agreeable and Freescale will produce critical technical documents related to all qualifying products.

In a related matter, Freescale does not understand what ProMOS is seeking by way of the extremely broad topics in ProMOS' recent Rule 30(b)(6) notice.  Freescale has repeatedly informed ProMOS that it generates three categories of documents regarding its products:  (i) publicly available product manuals, (ii) proprietary Freescale circuit/subsystem workbooks/manuals, and (iii) RTL code.  If this is what ProMOS is seeking through the noticed deposition, please explain why such a deposition is necessary because we do not understand why it is necessary to conduct a deposition about an attorney's representation.  If ProMOS is seeking more than this confirmation, then please specifically identify the additional information sought so Freescale can better assess the deposition request and the witnesses who would be appropriate.

Finally, ProMOS' motion complaining of a failure to produce documents is ironic given ProMOS' own failure to produce virtually any documents relevant to Freescale's document requests, including but not limited to:

- Documents concerning invention disclosures (and drafts of same), engineering/laboratory/inventor notebooks, drawings/sketches, prototypes, notes, schematics, experimental or test results, computer modeling, correspondence, project status reports, e-mails, or other documents memorializing any portion of the conception/development/reduction to practice process;

July 10, 2007
Page 4

    - Documents sufficient to identify each person that worked on the project or projects that led to the development of the inventions claimed in the Chan patents and documents sufficient to identify each person's contribution to the project;

    - Internal ProMOS, Mosel and Mosel Vitelic file histories and other correspondence regarding the filing and prosecution of the Chan patents;

    - Documents concerning communication between ProMOS and Mosel Vitelic regarding the Chan patents and the patent coverage or scope of patent claims;

    - Documents concerning valuation of the Chan patents, claim construction, prior art, patentability, novelty, validity, enforceability, infringement and/or the subject matter disclosed or claimed by the Chan patents that were generated by ProMOS in connection with its due dilligence investigation performed in its dealings with Mosel Vitelic and its acquisition of an interest in the Chan patents; and

    - Reverse engineering reports, test reports, or studies of Freescale products and other documents concerning the decision to file suit.

    We requested these documents three months ago and continue to prefer to avoid involving the Court, but we understandably cannot afford to wait much longer. Please tell us when we will receive the documents identified above.

    Given the pending deadline for Freescale to respond to the motion to compel, please indicate if the proposed compromise is acceptable and otherwise respond to the requests of this letter by noon Thursday, July 12, 2007.

Very truly yours,

Kevin P. Ferguson

EXHIBIT 12

# JONES DAY

77 WEST WACKER • CHICAGO, ILLINOIS 60601-1692

TELEPHONE: (312) 782-3939 • FACSIMILE: (312) 782-8585

Direct Number:  (312) 269-4366
kpferguson@jonesday.com

JP239140                          July 16, 2007
878247-615013

<u>VIA EMAIL</u>

Susan Cook, Esq.
Hogan & Hartson LLP
555 Thirteenth Street, NW
Washington, DC  20004
smcook@hhlaw.com

Re:   <u>*ProMOS Technologies v. Freescale Semiconductor, Inc.*</u>

Dear Susan:

We have your letter of July 12, which we understand now to be making a proposal to narrow ProMOS's request for documents and resolve its motion to compel. We are hopeful that a resolution may now be possible.

Preliminarily, we note that your July 12 letter does not accurately characterize the meet-and-confer process or Freescale's position taken in that process. I will not repeat everything in my letter to Sten Jensen of July 10, but note, by way of example, that your letter (p. 2) is wrong when it says that Freescale has demanded that ProMOS identify a product as infringing and substantiate that identification with a claim chart before Freescale would provide any discovery relating to that product.[1] Freescale has *never* conditioned its production of documents upon claim charts; instead, Freescale has asked ProMOS for months to narrow its discovery requests which ProMOS effectively acknowledges are overbroad. In the face of ProMOS's steadfast refusal to narrow its requests, we have consistently asked that ProMOS either: (1) identify specific products or product families that it believes may infringe the Chan patents or (2) provide Freescale with some criteria reasonably related to infringement of the Chan patents (as opposed to any product involving a cache memory in any way) so that document production could proceed in a reasonable and bounded fashion. My letter of July 10 proceeded to suggest criteria under the second approach. We assume that there is now no misunderstanding about Freescale's position.

Turning to a path forward, we understand you now to be expanding your list of Chan-accused products and that you have affirmatively done an infringement analysis of those

---

[1] Additionally, Freescale continues to maintain that ProMOS failed to properly meet-and-confer on this motion to compel. ProMOS' position that Freescale was required to capitulate to producing documents for the more than 100 newly accused products – without a chance to substantively review the list of products – to avoid the filing of ProMOS' motion to compel is unreasonable, especially given ProMOS' months-long delay in identifying the accused products.

CHI-1597566v3

July 16, 2007
Page 2

products given the statement on page 3 of your letter that the more than 100 products on the list provided are the "Freescale products that ProMOS has determined meet the claim elements of the Chan patents." We also understand that you are in effect proceeding under our first suggested approach and that you are saying that this is the operative list of accused products (in addition to the earlier accused product families), subject perhaps to learning something in discovery that you could not have known from the technical information on the website. Finally, we understand that you are requesting that we produce "critical documents" (which we understand to be category (i)-(ii) documents outlined on page 3 of my letter of July 10) for representative products of the accused families of cache products and that the parties can later address the production of other documents. In keeping with our position, and my July 10 letter, this approach is generally agreeable to us, and in that regard, seek clarification on the point below.

Similar to the products you now say were typos, Freescale continues to believe that other products on ProMOS's list of additional Chan-accused products are mistakes and are not the proper subject of discovery because they could not infringe the Chan patents under any reasonable interpretation of the claims. These products include: (1) products that do not contain a cache memory (*e.g.*, the Coldfire 2/3 cores, which contain only a cache controller) and (2) products with only an instruction cache that cannot be written to by the processor or written back into the system memory (*e.g.*, the MSC711x family of parts (SC1400 core)). Please let us know whether you intended to accuse these products, and if so, please give some "explanation of ProMOS' infringement contention" indicating how "ProMOS has determined [these two categories] meet the claim elements of the Chan patents," such that the burden and expense of discovery on these products is warranted.[2]

With regard to ProMOS' recent Rule 30(b)(6) notice, Freescale still asks that ProMOS clarify, revise and narrow its extremely broad topics. Taken literally, the topics, including the "[f]eatures associated with cache memories contained in Freescale Products," might require scores of witnesses, which we hope ProMOS does not truly expect. Thus, your notice is not clear on its face and we would like to discuss the topics with ProMOS to understand precisely what it is seeking, so that we can assess the scope and legitimacy of the requests and determine whether it is possible or appropriate to identify witnesses at this point in time. We note, however, that whatever the outcome of our meet-and-confer as far as the scope of testimony, it will not be possible to produce any witness on the date noticed of July 20.

---

[2] Although these types of cache-related products may be encompassed within ProMOS' overbroad definition of Freescale Products that includes any product that contains, uses, works with or relies in any way on a cache memory, ProMOS must still be able to articulate some theory under which these products could infringe the claims of the Chan patents to have a good faith basis for demanding that Freescale produce extensive discovery relating to these products. If ProMOS cannot articulate some basis for its determination that the products "meet the claim elements of the Chan patents," Freescale maintains its objection that such discovery is not relevant, unduly burdensome and oppressive.

July 16, 2007
Page 3

Please let me know when you are available this afternoon or tomorrow afternoon to meet-and-confer on these issues.

Very truly yours,

Kevin P. Ferguson

# EXHIBIT 13



| | | | |
|---|---|---|---|
| **David L. Witcoff/JonesDay**<br>Extension 54259 or<br>312-269-4259<br><br>01/07/2008 10:50 AM | To | "Routh, Steven J." <SJRouth@HHLAW.com> | |
| | cc | "Gao, Huanyong (Harris)" <HGao@HHLAW.com>, JDay<br><jday@ashby-geddes.com>, "Price, Martin A."<br><MAPrice@HHLAW.com>, MGraham@MNAT.com, "Jensen, | |
| | bcc | | |
| | Subject | RE: Freescale v. ProMOS - Newly Produced Testing Data | |

Steve:

Your email below surprised me in various ways, including your dismissive comments about the documents that you mistakenly claimed we never produced and for which we provided you specific examples by Bates number on Friday, your unfair and yet very serious accusations, your inaccurate and misleading comments, and your threat to involve the Court (which, sadly, ProMOS seems to be determined to do no matter how hard we work and how much we cooperate with you.)  In any event, I am going to take you at your word that you sincerely would prefer not to bother the Court and propose below a way to do so that will provide ProMOS with the documentation it now claims it needs and will not prejudice either party.

By way of background, as we have discussed many times (and even at the opening Scheduling Conference and the recent Markman hearing), one of Freescale's biggest frustrations throughout this case has been ProMOS demanding literally all documents in Freescale's possession rather than requesting documents with any precision; for example, demanding "all technical documents" or "all documents pertaining to the design" of the great number of accused products are requests which are virtually impossible, impractical and unreasonable to satisfy.  ProMOS's failure to produce even preliminary, let alone final, Chan infringement contentions also has hampered our ability to identify and produce responsive documents.  We also have been repeatedly frustrated by the ever-changing nature of ProMOS's document demands.  In any event, as you have seen, as I always have told you, and as I once again commit to you, we will produce any document or category of documents that ProMOS specifies that has any reasonable or even remotely plausible relevance to this case.

In that regard, we have already produced a tremendous amount of documentation and, as I repeatedly told you on Friday, we are investigating your various recent specific requests and will produce any responsive document we can locate after a reasonable and thorough investigation.  As I hope you can appreciate, investigating ProMOS's various requests, especially the "entire product" as opposed to the cache/cache controller/core requests, takes time, especially considering the vast number of products and product families ProMOS has accused.  The virtual two-week Holiday shutdown by Freescale, of course, significantly slowed down our investigation.  Nevertheless, as we detailed to you on Friday, we have worked extremely hard and have made significant progress on this investigation, but it is not yet completed.  We should have additional information for you shortly with respect to the existence vel non of the requested documents.

If ProMOS sincerely is interested in getting the information it claims it needs, I propose (a) postponing Mr. Snyder's January 9 deposition for a couple of weeks to ensure that we have completed our worldwide investigation into ProMOS's very broad requests, and (b) extending the January 21 fact discovery cut-off until the end of February to ensure that any located documents can be promptly produced and ProMOS can more efficiently take the remaining depositions it has noticed up, including Mr. Snyder's deposition and the depositions on the 67 broad 30b6 topics ProMOS noticed up immediately before and after the Holidays.  This would also give Freescale time, if necessary, to complete the remaining depositions it already has noticed up, as well as follow up on Fortin issues, if necessary, given that ProMOS has delayed giving us the 30(b)(6) deposition relating to Fortin (noticed in October) until January 16 and has given us only limited contentions relating to Fortin.  Since trial in this case does not start until the end of June, this slight extension will permit the parties to complete their discovery in an orderly, informed and efficient fashion and not cause any prejudice.

If ProMOS insists on taking Mr. Snyder's deposition on January 9, we will, of course, produce him at that time, but then ProMOS should not be heard to complain if it turns out that the expanded scope of his investigation is not yet completed by that time, or if all the documents you are requesting have not been produced by that time. (As I repeatedly told you Friday, this investigation is not yet finished, even though we are working as diligently as humanly possible to complete it.) We obviously do not want to provide Mr. Snyder a third time for this deposition.

We sincerely hope that ProMOS agrees to this proposal or counter-proposes some similarly sensible arrangement. Please let me know whether ProMOS is willing to postpone Mr. Snyder's deposition and also is willing to extend the fact discovery cut-off as proposed above.

Thanks,

David

_____

David L. Witcoff
Jones Day
77 West Wacker
Chicago, IL 60601-1692
phone: 312-269-4259
fax:    312-782-8585
email:  dlwitcoff@jonesday.com
"Routh, Steven J." <SJRouth@HHLAW.com>



| | | |
|---|---|---|
| **"Routh, Steven J."**<br>**<SJRouth@HHLAW.com>**<br><br>01/06/2008 05:04 PM | To | "David L. Witcoff" <dlwitcoff@JonesDay.com> |
| | cc | "Wright, William H." <WHWright@HHLAW.com>, "Jensen, Sten A." <SAJensen@HHLAW.com>, "Cook, Susan M." <SMCook@HHLAW.com>, "Price, Martin A." <MAPrice@HHLAW.com>, "Gao, Huanyong (Harris)" <HGao@HHLAW.com>, JDay <jday@ashby-geddes.com>, MGraham@MNAT.com |
| | Subject | RE: Freescale v. ProMOS - Newly Produced Testing Data |

David:

Thank you again for talking by phone last Friday afternoon and providing Freescale's responses to the issues raised in my e-mails of December 10 and December 20, 2007. The phone call was useful in at least one sense. Having gone through with you each of the 4 categories of "missing" documents set forth in my December 10 e-mail, as well as each of the subcategories relating to evidence of "missing" microarchitectural documents in my December 20 e-mail, we now know Freescale's position on what documents it has already produced in each category and what documents it has not yet produced.

Unfortunately, now that we have had an chance to review the information you provided and to look at each of the documents that you identified by Bates number during our call on Friday, we remain convinced (even more so in some ways) that Freescale has failed to meet its discovery obligations with respect to producing technical documents relating to its accused products. For example, you acknowledged for the first time in our call on Friday that Freescale maintains certain hand-generated "non-library" schematics relating to the design of the accused products; that is contrary to many statements that Freescale has made to us and the Court in the past 8 months (although it is consistent with what Mr. Snyder testified to at his first 30(b)(6) deposition). And, as I suspect you already are aware,

the vast majority of the documents that you identified as microarchitectural documents during the call are in fact reference manuals and user manuals that are publicly available from Freescale's website and that we have been telling you for months are inadequate to meet Freescale's discovery obligations.  I will elaborate on these points below.

In short, our conversation on Friday served to confirm that we have not yet received many of the technical documents relating to the design of the accused products that our experts say must exist at Freescale, that Mr. Snyer has testified do exist at Freescale, and that Karl told the Court last month exist at Freescale and already have compiled for production to ProMOS.  As a result, we reluctantly have no choice but to file another motion to compel and for sanctions later this week.  If Freescale wants to narrow or possibly even avoid such a motion, please produce to us by Tuesday, January 8 the technical documents that have been withheld from production, some of which you acknowledged on Friday are in Freescale's possession but still have not yet been produced (e.g., the so-called non-library schematics, and the missing 14 or more chapters from "The 603 Processor, MicroArchitecture Spec., which I specifically identified two and a half weeks ago in my December 20 e-mail).

**1.    hand-generated schematics.**

As I pointed out in my December 10 e-mail, since the beginning of this case, you and your colleagues have told us and the Court repeatedly that Freescale's does not have any circuit diagrams or schematics; that it simply does not create or maintain such documents.  You maintained that position after Judge Farnan ordered you on October 31 to produce any such documents and even to generate such documents if they did not exist.  While we agreed to defer any requirement that Freescale generate circuit schematics until after we had reviewed the RTL documentation that you produced in early December, we did not agree to any withholding of other schematics that already exist and are in Freescale's possession. (We continue to reserve the right to require that Freescale generate circuit schematics showing specific elements or signal paths, particularly if additional microarchitectural documentation is not produced to facilitate our use of the RTL documentation.)

That is why it came as such a surprise when Mr. Snyder testified on November 30 that Freescale in fact generates and maintains hand-drawn schematics that reflect the designs of Freescale products at various levels of detail.  Please see my December 10 e-mail for a discussion of Mr. Snyder's testimony and page cites to his deposition on this point.  Karl responded to our complaints about hand-drawn schematics at the December 13 hearing by telling the Court that the only hand-generated schematics maintained by Freescale are "library schematics" that "have nothing to do with our circuit designs at all" and instead relate solely to gate-level devices, analogous to pictures of individual two-by-fours or bricks in relation to the design of a house.  Indeed, the transcript of the December 13 hearing at pages 120 -26 shows that Karl told the Court at least six times that Freescale maintains no schematics whatsoever relating to the circuit or design of its products.

There are serious two problems with what Karl told the Court about Freescale's hand-generated schematics.  First, it is inconsistent with the testimony that Mr. Snyder gave at his November 30 deposition, including his testimony that hand-generated schematics at Freescale are done for "design" purposes and would be "more useful" to understanding the design of Freescale's products than schematics generated from RTL code.  Second, as you confirmed on Friday, Freescale does in fact maintain schematics that are not limited to the library schematics that Karl told the Court about.  You referred to them simply as "non-library schematics" and did not provide any further description of their content or volume.  But it appears that those non-library schematics are likely what Mr. Snyder was referring to in his November 30 deposition testimony at pages 146-52 of the transcript.

Given how long and often we have demanded production of circuit diagrams or schematics, given the Court's October 31 Order that you produce such documents, and given that there are now only two weeks remaining before the fact discovery period closes, Freescale should produce immediately all schematics in this possession (except library schematics that relate solely to single transistors or other such gate-level structures).  You were not willing to commit last Friday to any time period for making such

a production. But in light of the fact that Mr. Snyder testified about the existence of such hand-generated schematics on November 30, I cannot imagine why those documents have not already been produced.

As I indicated on Friday, we are not willing to limit our demand for schematics to those relating to Freescale's "cores." As I have pointed out in prior discussions, including in Court on December 13, Freescale's documents make clear that there are caches, cache controllers, and other relevant structures outside of what Freescale calls the "core" and/or "core complex" for many of its products, even though Freescale has told us and the Court that the only portions of Freescale's products relevant to this case the cores (see, e.g., December 13 transcript at 117: "The stuff that's relevant for this case, the stuff that's in a little area of a chip that we call the core, it has all the caches, it has all the registers, it has all the signals that they told you that they need"). To the extent Freescale has limited any of its production of documents to those relating to the cores of its products, it should re-evaluate its production and produce all responsive documents without regard to that limitation. (As an aside, at the December 13 hearing, Karl told the Court that I had "reneged" on an agreement to limit Freescale's production to RTL for the Freescale cores. That was an inaccurate statement. Please see my November 9 e-mail to you, in which I specifically refused to so limit Freescale's production obligations; we only agreed to accept production of a sample of RTL for a core in advance of November 20 so that we could see if we were able to make use of Freescale's RTL using the Debussey software.)

Finally, at the November 30 deposition of Mr. Snyder, Drexel cut-off Susan's questioning of Mr. Snyder on what Freescale product is associated with each of about 400 pages of documents Bates labeled FSI DEL 112332-748, stating that Freescale would provide that information in writing, rather than taking up Mr. Snyder's time at a deposition. I reiterated our request for a written identification of the Freescale products associated with each page of FSI DEL 112332-748 in my e-mail to you of December 10. Please provide us with that information in writing in advance of Mr. Snyder's second deposition this Wednesday.

2. **Microarchitectural/architectural requirements documents.**

As I stated in my December 10 e-mail, Mr. Snyder testified at his November 30 deposition that Freescale has microarchitectural and architectural definition documents for most if not all of its products and that such documentation is important to making meaningful use of the RTL documentation. You and Karl confirmed that testimony at the December 13 hearing by telling the Court about the extensive microarchitectural documentation maintained by Freescale, which you further represented had all been produced in this case. For example, Karl told the Court that Freescale has microarchitectural documents for each of its cores, although he explained that such documents are sometimes called "block guides," "implementation guide[s]," or "resource guide[s]". He further told the Court that those documents are used at Freescale "to tell them what to design" and "to represent what they did design," that "some are 2000 pages" and "the smallest one [he's] ever seen is 500 pages," and that they exist and have been produced for "for all of our cores." See December 13 transcript 118-125. You later told the Court that Freescale had located and produced such documents for all the caches and cache controllers, "including the L2 cache documents." Id. at 135-36.

As my December 20 e-mail pointed out, we have not received from Freescale the volume or types of microarchitectural documentation described by Mr. Snyder at his first deposition or by you and Karl at the December 13 hearing, under the titles of "microarchitecture," "block guides," or any of the other names that Karl told the Court Freescale used to describe its microarchitectural documents. My December 20 e-mail provided an identification by Bates numbers of the microarchitectural documents that we had received in discovery from Freescale and asked you to direct us to other portions of Freescale's document production where you believed there were microarchitectural documents that matched the descriptions given by Mr. Snyder, you, and Karl. It also pointed to places where the scattered few microarchitectural documents you had produced made clear that documents have been withheld from Freescale's production, such as your production of chapters 5, 13, 16 and 18 from a microarchitectural document from which we obviously received only a limited portion. These examples highlight the inaccuracy of the statements made to the Court on December 13 that Freescale had produced all of its microarchitectural documents and that it was "not holding anything back."

In our call last Friday, you undertook to identify additional microarchitectural documents that we might have missed in our review of Freescale's production, in an effort to bridge the gap between what we were seeing and what Mr. Snyder testified is maintained by Freescale (and that you and Karl told the Court had been produce "months ago" in discovery. Although you gave us Bates number for many documents that had been produced by Freescale in discovery, the vast majority of those documents are reference manuals and user manuals which are publicly available from Freescale's website and which we were well aware of prior to my December 10, 2007 and December 20, 2007 emails. They are not "microarchitectural" documents as that term is used in the industry or as it has been used by anyone previously in this case, including in Mr. Snyder's November 13 depositions or in Karl's statements at the December 13 hearing. A few other documents that you listed in our Friday call (the Book IV documents) are microarchitectural documents, but they are documents that I specifically listed in my e-mail of December 20 for purposes of illustrating the incompleteness and holes in the documentation produced by Freescale to date. Below are our further observations regarding the documents that you identified on Friday's call with respect to each product groups that we discussed:

  e200 related products:

As my December 20 e-mail noted, Mr. Snyder testified based on his personal knowledge that block guides exist for the e200 core, but we have not identified any block guides for that core or related products in the documents produced by Freescale. You did not identify any documents in our phone call last Friday that have been produced by Freescale and that comprise block guides for the e200, and you insisted that the limited Book 4/implementation manual documents that we already had identified are the only microarchitectural documents that exist for the e200.

  e300 related products:

You acknowledged that Freescale failed to produce at least 14 chapters of The 603 Processor, MicroArchitectural Spec, but you were unable to give us any estimate of when Freescale would produce the missing chapters. You also listed the following documents as additional microarchitectural documents for the e300, but, as the accompanying descriptions below indicate, our review of those documents has shown that their identification adds little or nothing to our efforts to get to the bottom of the missing microarchitectural documents:

        7336-7841: reference manual
        11908-11312: reference manual
        36389-36734: reference manual
        36735-36844: Book IV
        36875-36988: Book IV

  e500 related products:

As my December 20 e-mail indicated, we received in discovery microarchitectural documents for only 3 select elements of the e500, and we received no such documents for the L2 cache in the PowerQuik 3 products, which the Freescale products that use an e500 core. On Friday, you listed the following documents as additional microarchitectural documents for the e500, but again, as the accompanying descriptions below indicate, our review of those documents has shown that their identification adds little or nothing to our efforts to get to the bottom of the missing microarchitectural documents:

        17158-17251: reference manual
        17252-1779: reference manual
        17820-19121: reference manual

19198-20791: reference manual

20972-22605: reference manual

22614-22609: reference manual

37504-38337: reference manual

Your statement on Friday's call that the 4 of these documents provide microarchitectural documentation for the L2 cache is inaccurate, and none of these documents fits the description given by Mr. Snyder or by Karl of Freescale's microarchitectural documents.

   e600 related products:

As my December 20 e-mail indicated, we received in discovery only partial portions of microarchitectural documents for the e600, including a document that is missing pages 115-239.  On Friday, you indicated that Freescale has not yet found the missing 124 pages from the V'ger Memory Subsystem Unit Workbook, and you then listed the following documents as additional microarchitectural documents for the e600, which, again, as the accompanying descriptions below indicate, add little or nothing to our efforts to get to the bottom of the missing microarchitectural documents:

6404-7263: reference manual

32970-33312: Book IV

41265-41894: reference manual

43009-43876: reference manual

92186-92881: user's manual

   MC6860 related products:

My December 20 e-mail indicated that we had received no microarchitectural documents for this core, even though Mr. Snyder testified that he thought there should at least be block guides for the MC6860 (and Karl told the Court that Freescale engineers use such documents "to tell them what to design" and "to represent what they did design"  and that you have produced such documents for "for all of our cores").  On Friday, you listed the following two documents as examples of microarchitectural documents for the MC6868 that you have produced in discovery, even though they are in fact user's manuals that are posted on Freescale's website:

5558-5973: user's manual

5974-6399: user's manual

   ARM related products:

In my December 20 e-mail, I pointed out that Mr. Snyder had testified that Freescale has block guides for ARM-related products but the Freescale had produced in discovery only reference manuals, user manuals, and similar documents.  On Friday, you listed the following two documents to support your position that Freescale produced the block diagrams referred by Mr. Snyder:

34964-35099: reference manual

57777-57866: "Preliminary" Chapter 3 - ARM9 platform

The first document is a reference manual, which may contain some high level forms of block diagrams, but does not contain the types of microarchitectural documents that Mr. Snyder was asked about at his

deposition and that should exist for these products. And the second document is a single chapter from a longer ARM reference manual.

   Coldfire related products:

My December 20 e-mail pointed out that Freescale did not appear to have produced any microarchitectural documents for the Coldfire processor or related products, notwithstanding Mr. Snyder's testimony and the statements made to the Court on December 13, which indicate that such documents should exist for every core. On Friday, you listed the following documents in response to the concern stated in my December 20 e-mail:

> 39395-39726: reference manual
> 39727-40098: user's manual
> 49351-49536: user's manual
> 49537-49789: user's manual

Again, these are not "microarchitectural" documents, at least not as that term is used in the industry or has been used in this case. Mr. Snyder previously testified that reference manuals and user's manuals are intended for use by programmers and users of Freescale products, as opposed to being part of the design or development process to let engineers know "what to design" and "what they did design."

   8xx core related products:

My December 20 e-mail neglected to mention the 8xx core, but I told you on Friday that we did not receive any microarchitectural documentation for this core, notwithstanding Mr. Snyder's testimony and the statements made to the Court on December 13, which indicate that such documents should exist for every core. You agreed to let me know if you could identify any microarchitectural documents produced by Freescale relating to this core or related products, which are the PowerQuik I products.

3.    **Design Presentations.**

My December 10 e-mail pointed out that Mr. Snyder testified on November 30 that Freescale maintains design presentations, and I requested production of all such presentations, since we had not identified any such presentations among the documents previously produced by Freescale. In our call on Friday, you said that you thought Freescale already had produced such presentations (you indicated that they might be labeled with different names), but you could not identify any documents produced by Freescale to date that constitute design presentations. Absent such an identification by Freescale, it continues to appear to us that the design presentations that Mr. Snyder testified about have not yet been produced.

4.    **Technical documentation for additional Freescale products.**

Based on our call of last Friday, we understand that Freescale is in the process of collecting and producing technical documents (including RTL, schematics, microarchitectural documents) for the following products that Mr. Snyder identified at his November 30 deposition and for which no documents previously have been produced: MPC7400, MPC7450, MPC603e, MPC603ev, MPC750, MPC740, MPC755, and MPC2605, all of which have been manufactured and/or sold during the damages period for this case. Please let me know when we can expect to receive those documents.

We understandably are frustrated that, nearly 6 weeks after Mr. Snyder's November 30 deposition, and several weeks after my follow-up e-mails of December 10 and December 20, we find ourselves still at square one with regard to our complaints about Freescale's failure to produce hand-generated schematics, microarchitectural documents, and other technical documents. We have yet to receive any of the hand-generated schematics that Mr. Snyder disclosed, and we are still missing much (and for

some cores all) of the microarchitectural documentation that Freescale has acknowledged exists for all its cores and at least some accused products. At this point, we have no choice but to file another motion to compel on this subject and to seek relief from the Court. Please let me know on Monday or Tuesday if you see any way to narrow the issues involved in such a motion.

Finally, I want to reiterate my request that you provide us on Monday or Tuesday, in advance of the second deposition of Mr. Snyder, with at least several representative samples – if not all – of each of the various types of documents you promised to produce during our call last Friday, including but not limited to (i) hand-generated custom schematics for all portions of each of the accused products; (ii) an identification of the bates numbers for any design presentations that were produced by Freescale, plus the production of any additional design presentations that Freescale has its possession; and (iii) all missing chapters from the few microarchitecture materials that Freescale has produced.

Steve.

-----Original Message-----
From: Routh, Steven J.
Sent: Friday, January 04, 2008 12:56 PM
To: 'David L. Witcoff'
Cc: Wright, William H.; Jensen, Sten A.; Cook, Susan M.
Subject: RE: Freescale v. ProMOS - Newly Produced Testing Data

David: Let's add one more item to the agenda for today's call: The inquiry we recently received from Judge Bush's chambers regarding whether we should have a mediation session on February 1.

Our Opposition to your motion to compel is due to be filed next week, and we may also file our own motion to compel and/or for sanctions, depending on the status of our discussions regarding Freescale's production of technical documents.

Talk to you at 3:00 p.m. your time. Steve.

-----Original Message-----
From: David L. Witcoff [mailto:dlwitcoff@JonesDay.com]
Sent: Friday, January 04, 2008 12:20 PM
To: Routh, Steven J.
Subject: RE: Freescale v. ProMOS - Newly Produced Testing Data

Steve:

Your proposed order of discussion topics is fine with me.

What "papers with the court to follow-up on the earlier Court Orders regarding those issues" do you intend to file next week?

David

_____

David L. Witcoff
Jones Day
77 West Wacker
Chicago, IL 60601-1692
phone:  312-269-4259
fax:      312-782-8585
email:   dlwitcoff@jonesday.com


| | | |
|---|---|---|
| "Routh, Steven J." <SJRouth@HHLAW.com> | To | "David L. Witcoff" <dlwitcoff@JonesDay.com> |
| | cc | |
| 01/03/2008 11:20 PM | | "Wright, William H." <WHWright@HHLAW.com>, "Jensen, Sten A." <SAJensen@HHLAW.com>, "Cook, Susan M." <SMCook@HHLAW.com> |
| | Subject | RE: Freescale v. ProMOS - Newly Produced Testing Data |


    David: We will discuss the issues raised in Kevin's e-mail of earlier today on our call tomorrow, and I will ask Sten to join us for that discussion.  I think we can resolve those issues in short order AFTER we have addressed the issues in my earlier e-mails that are the subject of tomorrow's call.

    Please include on the call anyone on your side needed to discuss the issues raised in my earlier e-mails about Freescale's document production, because we will need to resolve those issues before next week, when we will be filing papers with the court to follow-up on the earlier Court Orders regarding those issues. Thanks.  Steve.

-----Original Message-----

From: David L. Witcoff [mailto:dlwitcoff@JonesDay.com]
Sent: Thursday, January 03, 2008 11:53 PM
To: Routh, Steven J.
Subject: Fw: Freescale v. ProMOS - Newly Produced Testing Data


Steve:  The email below raises a potentially serious issue that I'd like to discuss with you during our call tomorrow afternoon.  Specifically, I'd like to discuss: (1) why ProMOS produced relevant information in the United States during a deposition in Taiwan after ProMOS persuaded Judge Bush that our attorney should fly to Taiwan to take the deposition because doing so would allegedly be more efficient, and (2) your thoughts on appropriate ways of remedying this situation.


Thanks, David

_____

David L. Witcoff
Jones Day
77 West Wacker
Chicago, IL 60601-1692
phone:  312-269-4259
fax:      312-782-8585
email:  dlwitcoff@jonesday.com
----- Forwarded by David L. Witcoff/JonesDay on 01/03/2008 10:45 PM -----


|  |  |  |
|---|---|---|
| To | Kevin P. Ferguson/JonesDay<br><br>Extension 5-4366<br><br>or 312/269-4366 | "Jensen, Sten A."<br><br><SAJensen@HHLAW.com> |
| cc | 01/03/2008 12:44 PM | "Price, Martin A."<br><br><MAPrice@HHLAW.com>,<br><br>msblackman@JonesDay.com,<br><br>dlwitcoff@JonesDay.com |

Subject

Freescale v. ProMOS - Newly

Produced Testing Data

Sten,

I'm writing with regard to several issues relating to ProMOS's December
17 production of a disc containing 16 documents that appear to be 8 sets of raw SIMS test results
produced in TIFF format and bates labeled PRS TEX

099342 - 099741.

First, TIFF images of the raw testing data are not the format in which the data was gathered, kept in the
normal course of business, or reasonable useable.  Please immediately produced the native electronic
files for this and all other raw SIMS data that ProMOS has produced only in hard copy (i.e., exhibits 25,
26, and 32-25 of Ray Lee's deposition).

To the extent that the raw test data gathered by ProMOS was capable of being presented in a format
besides columns of raw data (such as concentration v. depth or time plots) or summed to a total
concentration, please produce all other formats of the data or include all time/depth/etc... data necessary
to create the other formats in the electronic files.

Second, ProMOS produced this testing data after the start of Mr. Lee's Rule 30(b)(6) deposition, which
included topic regarding the amount or percentage of mobile ions removed by ProMOS's post etch
cleaning step and documents relating to ProMOS's non-infringement contention (i.e., topics

13 and 21).  Furthermore, copies of the documents were not provided to me in Hsinchu, Taiwan at Mr.
Lee's deposition, so there was no way I could have been aware of the contents of these documents or
asked Mr.

Lee about the documents during his deposition.  Please confirm immediately that these documents are

SIMS data from ProMOS's accused products and indicate:

(1) the process (e.g., P90AA); (2) the point at the process at which each sample was collected (e.g., PIN_Name); (3) the date each wafer sample was collected and whether the sample was cleaned with DSP+; (4) the date each sample was tested (e.g., January 12, 2006 or December 1, 2006); and, (5) the current location and status of each wafer sample; so that Freescale can evaluate this belated production.

Third, consistent with my request for documents related to ProMOS's collection and testing of "patterned" wafers during Mr. Lee's deposition and in my December 28 letter to Martin Price, please produce each category of documents relating to ProMOS's collection and testing of wafer samples resulting in the data produced on December 17.

Please provide the requested information no later than the COB January 7, 2008.

Regards,
Kevin

Kevin P. Ferguson
Jones Day
77 W. Wacker
Chicago, Illinois 60601-1692
Phone: 312 269 4366
Fax:    312 782 8585
kpferguson@jonesday.com

==========
This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege.

 If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.

==========

==========
This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege.

If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.

==========

"EMF <HHLAW.COM>" made the following annotations.
--------------------------------------------------------------------------

This electronic message transmission contains information from this law firm which may be confidential or privileged. The information is intended to be for the use of the individual or entity named above. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited.

If you have received this electronic transmission in error, please notify us by telephone (+1-202-637-5600) or by electronic mail

(PostMaster@HHLAW.COM) immediately.

==========================================================================

==========
This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege.

If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.

==========

==========
This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege.  If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.
==========

EXHIBIT 14

CONFIDENTIAL EXHIBIT

EXHIBIT 15

Leozino Agozzino/JonesDay
Extension 61236 or
216-586-1236

01/05/2008 03:31 PM

To   "Routh, Steven J." <SJRouth@HHLAW.com>

cc   "David L. Witcoff" <dlwitcoff@JonesDay.com>,
     MGraham@MNAT.com, "Marc S. Blackman"
     <msblackman@JonesDay.com>, "Jensen, Sten A."

Subject   RE: FSL/PM - Deposition Issues

Steve,

I was surprised by the tone of you email.  The purpose of my communication was not to place blame on any party but rather to alert you to potential scheduling  problems and to provide a solution. That said, there are a couple of points that you made that I feel compelled to respond to at this time.

First, your email contains some inaccurate comments.  For example, while Mr. Snyder certainly is knowledgeable about certain aspects of certain Chan-accused products, and has investigated the company's information with respect to ProMOS' 30b6 Notice regarding documentation, it is incorrect to generally and over-broadly state that Mr. Snyder is "the witness most knowledgeable regarding Freescale products w/r/t the Chan patents."  Accordingly, there may well be other persons who will be better suited to address at least some of the topics in the Third (Chan) Notice.

Second, you, once again, make reference to Freescale's production of Mr. Snyder in response to the ProMOS' initial notice.  I could similarly point to examples where ProMOS has taken many weeks to provide a date or a witness in response to Freescale's 30b6 notices (most notably Freescale's Third Notice), and you could probably dig up other examples in response.  In my view, that type of dialogue does nothing to further the discussion and is counterproductive.  It simply does not advance the ball on the issue at hand.

Third, you apparently misunderstood my reason for pointing to the timing of the ProMOS notices. I was not suggesting that ProMOS had an obligation to serve  the notices earlier (which, of course, it could have). My point was that by serving them right before the Holiday, Freescale lost almost two full weeks.  In other words, rather than having 33 and 31 days from the time of service (which you allude to in your email), we essentially have about two weeks. The time that was lost due to the Holiday cannot be recaptured.

Fourth, while you go to great lengths to describe why ProMOS could not have served its Third (Chan) Notice earlier (the merits of which we shall not dispute here), you say nothing directly about why the Fourth (Fortin) and Fifth (Damages) Notices could not have been served earlier.  I pose that question rhetorically.  Again, finger pointing will not solve the scheduling problems that we now face.

As you know, multiple 30b6 notices have been served by both parties in this case.  I do not believe there is a single instance in which either party has produced  a witness on the date noticed or for that matter within 30 days (with the exception of ProMOS' insistence that we produce Paul Genua on approximately 2 weeks' notice).  Nor have the parties insisted that a witness be produced on the noticed date. The parties have always attempted to schedule depositions at a mutually agreeable time and location.  I don't understand why that same approach will not work here.

What we are left with is less than three weeks to complete the deposition discovery that both parties have served since December 19.  As I stated yesterday in my email, we very likely will not be in a position to produce responsive witnesses on the date noticed (January 14).  It is also unlikely that we will be in a position to schedule all of the witnesses before January 21.  Consequently, we believe that the only reasonable solution is to extend the discovery deadline.  While I understand that ProMOS is not agreeable to a general extension for all discovery (which we would be opposed to as well), perhaps there is a

common ground that we can agree on that allows both parties (not just ProMOS) to complete and schedule depositions that have already been noticed after January 21. Such limited extension will neither require the adjustment of any other due dates or trial; nor will it prejudice anyone.

I will be prepared to discuss the scheduling issues with you on Tuesday at 10:00 am. I will circulate a call in number on Monday.


Leo



Leozino Agozzino
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
(216) 586-1236
(216) 579-0212 (fax)
lagozzino@JonesDay.com
"Routh, Steven J." <SJRouth@HHLAW.com>



"Routh, Steven J."
<SJRouth@HHLAW.com>

01/04/2008 01:22 AM

To    "Leozino Agozzino" <lagozzino@JonesDay.com>

cc    "Jensen, Sten A." <SAJensen@HHLAW.com>,
MGraham@MNAT.com, "David L. Witcoff"
<dlwitcoff@JonesDay.com>, "Marc S. Blackman"
<msblackman@JonesDay.com>, "Wright, William H."
<WHWright@HHLAW.com>, "Cook, Susan M."
<SMCook@HHLAW.com>

Subject    RE: FSL/PM  -  Deposition Issues



Leo: My apologies on an inaccuracy in my e-mail below. Susan has pointed out that only 2 of your most recent Delaware deposition notices were served today; the other 7 were served last Thursday, 12/27. In any event, all 9 deposition notices were served more recently than our third (12/19) and fourth (12/21) 30b6 notices in the Delaware case. Let's discuss any additional deposition scheduling issues tomorrow. I am going to get some sleep now. Steve.

**From:** Routh, Steven J.
**Sent:** Friday, January 04, 2008 1:09 AM
**To:** 'Leozino Agozzino'
**Cc:** Jensen, Sten A.; MGraham@MNAT.com; David L. Witcoff; Marc S. Blackman; Wright, William H.; Cook, Susan M.
**Subject:** RE: FSL/PM - Deposition Issues

Leo: We served the Third and Fourth 30b6 notices in the Delaware case on December 19 and December 21, fully 33 and 31 days before the January 21 end of discovery. I respectfully disagree with your assessment that it was "unrealistic" for us to expect Freescale to produce deponents on those two notices prior to the close of discovery, especially because (1) any delay in noticing the depositions (and in particular the third notice) was caused by Freescale's delay/ongoing failure to produce RTL and other documentation needed for the depositions; (2) the topics of the depositions -- technical issues relating to Freescale's accused products w/r/t the

Chan (third notice) and Fortin (fourth notice) patents -- were easily anticipated by Freescale even before the deposition notices were sent (and so the appropriate 30b6 designees cannot be a mystery to you); and (3) Freescale noticed 9 new depositions in the Delaware case TODAY, which demonstrates that you cannot seriously maintain that our notices of two weeks or more ago were so late as to be "unrealistic". Accordingly, please identify deponents and dates for the third and fourth notices in the Delaware case for the week of January 14 so that we can complete those 30b6 depositions before the current fact discovery cut-off deadline for the Delaware case. In the meantime, let's keep Mr. Synder's individual deposition on schedule for January 16, per our recent notice, unless he has a specific conflict on that date (in which case we can move the dep to January 15 or 17). Because Freescale has previously identified Mr. Snyder as the witness most knowledgeable regarding Freescale products w/r/t the Chan patents, it seems likely that a deposition of him will be productive in getting to the bottom of many of the topics in our third 30b6 notice in the Delaware case.

(As an aside, your e-mail brings to mind a phone call that I had with Mary, Drexel, and possibly others back on July 20, in which they said that the 30b6 technical document deposition that we had noticed on July 3 to be held in late July could not possibly take place in July because it likely would require Freescale to produce 20 or more deponents to respond to the listed topics. In reality, five months and a Court Order later, Freescale identified a single deponent to respond to all the topics in the July 3 Notice, and we are still working to obtain adequate deposition testimony on that Notice, pursuant to a second Court Order. Bottom line: Freescale's credibility on this type of issue is wearing thin. Please identify the appropriate witness(es) for the third and fourth Delaware notices in the next day or two so that we can complete those depositions before January 21. If you genuinely believe that a witness needed for a specific 30b6 topic is not available during the week of January 14 -- notwithstanding that all potential witnesses appear to be within Freescale's control -- then give me a call tomorrow to discuss the specific reasons for extending (or accelerating) the date for deposition on the specific topic(s).)

On the fifth 30b6 notice in the Delaware case and the second 30b6 notice in the Texas case, we are willing to be even more flexible in terms of scheduling. We are not willing to agree to a general extension of the fact discovery in the Delaware case. However, we can agree to a deposition date on the fifth 30b6 notice in the Delaware case for some time in the final week of January or first week of February, following the close of other fact discovery. And we can agree to schedule the second 30b6 in Texas for one of those same weeks, since there is not yet a firm discovery cut-off in the Texas case. Please let us know what dates in those weeks work for those two depositions.

I will be in my office all day Friday, 1/4, and will be available except from 4:00 - 5:00 p.m., when I will be speaking with David Witcoff regarding document issues. Please let me know if you want to discuss the subject of depositions further by phone. Thank you. Steve.

---

**From:** Leozino Agozzino [mailto:lagozzino@JonesDay.com]
**Sent:** Thursday, January 03, 2008 5:26 PM
**To:** Routh, Steven J.
**Cc:** Jensen, Sten A.; MGraham@MNAT.com; David L. Witcoff; Marc S. Blackman
**Subject:** FSL/PM - Deposition Issues

Steve,

As you know, ProMOS recently issued three separate 30b6 notices in the Delaware case and another 30b6 notice in the Texas case, all of which were served either shortly before or immediately after the Holidays (Third Notice [23 topics, served December 19], Fourth Notice [23 topics, served December 21], Fifth Notice [21 topics, served January 2] for the

Delaware case and the Second Notice [8 topics, served December 28] in the Texas case). The notices contain 75 separate topics covering broad subjects involving different aspects of the two cases. In addition, the three Delaware Notices call for the depositions to be held on the same day - January 14. In view of the intervening Holidays and the range and breadth of the topics, it was unrealistic for ProMOS to expect Freescale to be in a position to produce responsive witnesses at such an early date and on such short notice.

As I explained in my email that I sent to Mr. Jensen upon receipt of the Third and Fourth Notices, we would be unable to identify witnesses and procure dates until after the first of the year because Freescale shuts down operations during that the Holidays. We are in the process of analyzing the topics and identifying witnesses and hope to have information by early next week for most of the topics. Given the short notice and the intervening Holidays, we, however, we will not be in a position to provide the witnesses by January 14. The same is true for the Fifth Notice, which was received yesterday. Indeed, given ProMOS' decision to wait until now to serve the three Delaware Notices and their breadth, it is presently unclear to us whether we can realistically schedule all of the depositions by the close of discovery. One way to alleviate the timing issue is to extend the discovery period. In that regard, if ProMOS really wants to take all these depositions, we should discuss an extension of the fact discovery deadline. I would appreciate your thoughts on this point.

Finally, in view of the breadth of some of the topics contained in the Notices in both the Delaware and Texas case , it makes sense to discuss how best to proceed. We believe that such a discussion would be more fruitful next week after we have had a chance to identify our witnesses and secure witness availability.

Regards,


Leo


Leozino Agozzino
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
(216) 586-1236
(216) 579-0212 (fax)
lagozzino@JonesDay.com

==========
This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege. If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.
==========

"EMF <HHLAW.COM>" made the following annotations.
----------------------------------------------------------------
--------------
This electronic message transmission contains information from

Leozino Agozzino/JonesDay
Extension 61236 or
216-586-1236

01/03/2008 05:25 PM

To   SJRouth@HHLAW.com

cc   SAJensen@HHLAW.com, MGraham@MNAT.com, David L.
     Witcoff/JonesDay@JonesDay, Marc S.
     Blackman/JonesDay@JonesDay

bcc

Subject   FSL/PM  -  Deposition Issues

Steve,

As you know, ProMOS recently issued three separate 30b6 notices in the Delaware case and another 30b6 notice in the Texas case, all of which were served either shortly before or immediately after the Holidays (Third Notice [23 topics, served December 19], Fourth Notice [23 topics, served December 21], Fifth Notice [21 topics, served January 2] for the Delaware case and the Second Notice [8 topics, served December 28] in the Texas case). The notices contain 75 separate topics covering broad subjects involving different aspects of the two cases.  In addition, the three Delaware Notices call for the depositions to be held on the same day - January 14.  In view of the intervening Holidays and the range and breadth of the topics, it was unrealistic for ProMOS to expect Freescale to be in a position to produce responsive witnesses at such an early date and on such short notice.

As I explained in my email that I sent to Mr. Jensen upon receipt of the Third and Fourth Notices, we would be unable to identify witnesses and procure dates until after the first of the year because Freescale shuts down operations during that the Holidays.  We are in the process of analyzing the topics and identifying witnesses and hope to have information by early next week for most of the topics. Given the short notice and the intervening Holidays, we, however, we will not be in a position to provide the witnesses by January 14.  The same is true for the Fifth Notice, which was received yesterday.  Indeed, given ProMOS' decision to wait until now to serve the three Delaware Notices  and their breadth, it is presently unclear to us whether we can realistically schedule all of the depositions by the close of discovery.  One way to alleviate the timing issue is to extend the discovery period.  In that regard, if ProMOS really wants to take all these depositions, we should discuss an extension of the fact discovery deadline.  I would appreciate your thoughts on this point.

Finally, in view of the breadth of some of the topics contained in the Notices in both the Delaware and Texas case ,  it makes sense to discuss how best to proceed. We believe that such a discussion would be more fruitful next week after we have had a chance  to identify our witnesses and secure witness availability.

Regards,

Leo

Leozino Agozzino
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
(216) 586-1236
(216) 579-0212 (fax)
lagozzino@JonesDay.com

==========
This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege.  If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.
==========

Leozino Agozzino/JonesDay
Extension 61236 or
216-586-1236

12/21/2007 03:22 PM

To SAJensen@HHLAW.com

cc SJRouth@HHLAW.com, Marc S.
Blackman/JonesDay@JonesDay, MGraham@MNAT.com,
David L. Witcoff/JonesDay@JonesDay

bcc F. Drexel Feeling/JonesDay@JonesDay; Karl M
Maersch/JonesDay@JonesDay; Kevin P.
Ferguson/JonesDay@JonesDay; John
Michalik/JonesDay@JonesDay

Subject FSL/PM   Depositions

Sten-

Before everyone scatters for the Holidays, I wanted to make sure that we are all on the same page for depositions going forward.  I also wanted to bring up again our concern and need for an earlier date for the Third Notice.

DE
By FSL
--Third Notice 1/16/08 (DE) (awaiting witness disclosure).   As you know, we served the Third Notice in October and waited patiently for you to provide a date.   More than a month and a half later, on December 14, we finally received a deposition date of January 16.  I have since requested that you look into securing an earlier date, but have not received any response.  At this point, with the discovery cut off date looming and many other depositions to schedule, we ask, once again, whether the witness can be produced earlier (January 7, 8, or 9 preferred dates) than your proposed date.  If you are unable to accommodate our request, please advise whether there is any compelling reason why the witness cannot be produced earlier, given that  we served the notice for  this deposition in late October.
--V. Fortin  (no date provided).  I believe that you had indicated that you would check with Mr. Fortin to determine whether he would allow ProMOS to accept service of a subpoena.  As previously advised, we would be willing to work with him on dates and location.  Please advise whether Mr. Fortin has agreed to allow  ProMOS to accept service.

By ProMOS
W. Moyer  1/11 (Austin)

 Third and Fourth Notice - We are  beginning to explore witnesses and dates  for these two notices, served yesterday and this afternoon, but will not be in a position to address availability until after the New Year because most FSL personnel are now out for the Holidays.  We will also need to discuss with you the scope of the topics in these two notices.

TX
By FSL
Sixth Notice 1/17 or 1/21(location not disclosed)(awaiting witness disclosure)
A. MacPhearson 1/25  (Irvine or San Jose)

Regards,

Leo


Leozino Agozzino
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
(216) 586-1236
(216) 579-0212 (fax)

# EXHIBIT 16

LEXSEE 2004 US DIST LEXIS 17896

**EDWIN GONZALEZ, DONNA ANN MINOR, KARA PIETROWICZ and AL-
BERINA ZIEMBA, Plaintiffs, v. COMCAST CORPORATION, a Pennsylvania cor-
poration, COMCAST CABLEVISION OF WILLOW GROVE, a Pennsylvania cor-
poration, COMCAST CABLE COMMUNICATIONS, INC., a Delaware corpora-
tion, SUZANE KEENAN, ALLEN R. PEDDRICK, RICHARD GERMANO,
JAMES SULLIVAN, E. MARK CONNELL, DINA GALEOTAFIORE, AL CAL-
HOUN, STEVE TREVISON, PHILIP ANNONE, JOHN MCGOWAN, VINCENT
JOHNSON, and MICHAEL A. DOYLE, Defendants.**

**Civil Action No. 03-445-KAJ**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2004 U.S. Dist. LEXIS 17896*

**August 25, 2004, Decided**

**SUBSEQUENT HISTORY:** Motion denied by *Gon-
zalez v. Comcast Corp., 2004 U.S. Dist. LEXIS 21868
(D. Del., Oct. 19, 2004)*

**PRIOR HISTORY:** *Gonzalez v. Comcast Corp., 2004
U.S. Dist. LEXIS 14989 (D. Del., July 30, 2004)*

**DISPOSITION:**    [*1]  Plaintiffs' motion for leave to
file second amended complaint denied.

**COUNSEL:** For EDWIN GONZALEZ, DONNA ANN,
KARA PIETROWICZ, ALBERINA ZIEMBA, plain-
tiffs: Victor F. Battaglia, Sr., Biggs & Battaglia, Wil-
mington, DE.

For COMCAST CORPORATION, COMCAST CA-
BLEVISION OF WILLOW GROVE, COMCAST CA-
BLE COMMUNICATIONS, SUZANNE KEENAN,
ALLEN R. PEDDRICK, RICHARD GERMANO,
JAMES SULLIVAN, E. MARK CONNELL, DINA
GALEOTAFIORE, AL CALHOUN, STEVE TREVI-
SON, PHILIP ANNONE, JOHN MACGOWAN, VIN-
CENT JOHNSON, MICHAEL A. DOYLE, COMCAST
CABLEVISION OF NEW CASTLE COUNTY LLC,
defendants: Michael P. Kelly, McCarter & English, LLP,
William M. Kelleher, Ballard, Spahr, Andrews & Inger-
soll, LLP, Wilmington, DE.

**JUDGES:** Kent A. Jordan, UNITED STATES DIS-
TRICT JUDGE.

**OPINION BY:** Kent A. Jordan

**OPINION**

**MEMORANDUM ORDER**

On June 10, 2004, the plaintiffs filed a Motion for
Leave to File a Second Amended Complaint pursuant to
*Rule 15 of the Federal Rules of Civil Procedure.* (Docket
Item ["D.I."] 165; the "Motion.") The plaintiffs seek to
add Melanie Penna as a defendant (*id.* at 3) and to assert
three additional claims based on Delaware state law,
including claims for fraud and deceit (*id.* at 33-34),
*prima facie* [*2] tort (*id.* at 34-35), and civil conspiracy
(*id.* at 35-37).

*Rule 16 of the Federal Rules of Civil Procedure*
provides that a pretrial scheduling order "shall not be
modified except upon a showing of *good cause* and by
leave of the district judge ...." *Fed. R. Civ. P. 16(b)* (em-
phasis added). A scheduling order was issued in this case
on August 19, 2003 and required that all motions to join
other parties and to amend or supplement the pleadings
be filed on or before December 1, 2003. (D.I. 31 at 2.)
The plaintiffs' Motion was filed on June 10, 2004, over
seven months after that deadline. To grant the plaintiffs'
Motion would also require substantial changes in other
deadlines set forth in the scheduling order, including the
trial date. Therefore, under *Rule 16*, the plaintiffs are
required to show good cause why their Motion should be
granted and such changes made.

The plaintiffs make several arguments in support of
their Motion. None of them, however, establishes or even
attempts to establish the good cause required for modify-
ing the deadlines in the scheduling order. "Properly con-

strued, 'good **[\*3]** cause' means that scheduling dead-lines cannot be met despite a party's diligent efforts." *Dilmar Oil Co. V. Federated Mut. Ins. Co., 986 F. Supp. 959, 980 (D.S.C. 1997)*, *aff'd 129 F.3d 116 (4th Cir. 1997)* (citing 6A Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure § 1522.1 at 230-31 (2d ed. 1990)). Instead of focusing on why, despite diligent effort, plaintiffs could not have asserted their motion at an earlier time, within the sched-uling order guidelines, the plaintiffs focus on why they believe the defendants will not be unduly prejudiced if their Motion is granted (D.I. 173 at 1-7) and why adding three more state law claims is not futile (D.I. 173 at 7-9). These arguments do not establish good cause, as defined above, for this remarkably late motion for leave to amend.

The untimeliness of the plaintiffs' Motion is also emphasized by the fact that I have already ruled on a summary judgment motion made by the defendants. (D.I. 185.) Granting the plaintiffs' Motion, which was filed after the discovery deadline and only three months be-fore the joint proposed final pretrial order is due on Sep-tember 22, 2004 (D. **[\*4]** I. 188 at 1) would indeed be unduly prejudicial to the defendants.

Accordingly, IT IS HEREBY ORDERED that the plaintiffs' Motion (D.I. 165) is DENIED.

Kent A. Jordan

UNITED STATES DISTRICT JUDGE

Wilmington, Delaware

August 25, 2004

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 15, 2008, the foregoing was caused to be electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered participants.

In addition, the undersigned hereby certifies that on January 15, 2008 true and correct copies of the foregoing were caused to be served upon the following parties in the manner indicated:

**BY HAND DELIVERY (in triplicate):**

Vincent J. Poppiti
BLANK ROME LLP
1201 North Market Street, Suite 800
Wilmington, DE 19801-4226

**BY E-MAIL:**

Vincent J. Poppiti
**poppiti@blankrome.com**
BLANK ROME LLP

WITH A COPY TO:

Elizabeth Oestreich
**oestreich@blankrome.com**
Mary Levan
**levan@blankrome.com**
Carrie David
**david-c@blankrome.com**
BLANK ROME LLP

**BY E-MAIL AND HAND DELIVERY**

John G. Day, Esquire
Steven J. Balick, Esquire
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
Wilmington, DE 19899

**jday@ashby-geddes.com**
**sbalick@ashby-geddes.com**

**BY E-MAIL AND FEDERAL EXPRESS**

Sten A. Jensen, Esquire
HOGAN & HARTSON LLP
555 Thirteenth Street, NW
Washington, DC 20004

**sajensen@hhlaw.com**

**BY E-MAIL:**

Steven J. Routh, Esquire
**sjrouth@hhlaw.com**
William H. Wright, Esquire
**whwright@hhlaw.com**
HOGAN & HARTSON LLP

William C. Gooding, Esquire
**billgooding@gooding-crittenden.com**
GOODING & CRITTENDEN, L.L.P.

*/s/ Mary B. Graham*
_____
Mary B. Graham (#2256)