# Morris, Nichols, Arsht & Tunnell llp

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347

302 658 9200
302 658 3989 Fax

**Mary B. Graham**
302.351.9199
mgraham@mnat.com

February 28, 2008

The Honorable Joseph J. Farnan, Jr.   **VIA E-FILING**
United States District Court
Federal Building
844 King Street
Wilmington, DE 19801

      Re:    *ProMOS Technologies, Inc. v. Freescale Semiconductor, Inc.*
            C.A. No. 06-788 (JJF)

Dear Judge Farnan:

      Pursuant to Local Rule 7.1.2, Freescale writes to inform the Court of a decision issued by the Federal Circuit since the Markman hearing, *Halliburton Energy Services v M-I LLC*, 2008 WL 216294 (Fed. Cir. Jan. 25, 2008), which directly supports Freescale's position that "rounding the top edge of the opening" in the claims of ProMOS's Fortin patent is indefinite. The Court may recall that ProMOS asserts that the term means "reducing the sharpness of the top edge," and argues that this qualitative definition is understood as having "exactly the type of rounded edge that is shown in Figure 5" (D.I. 84 at 34). According to ProMOS, this "exact[] type of rounded edge" is further understood by reference to certain objective process parameters for the specific embodiment disclosed in the specification (*id.*).

      ProMOS's position is remarkably similar to that of Halliburton, which attempted to define the qualitative claim term "fragile gel." Halliburton argued that "fragile gel" was definite and that the definition included, *inter alia*, two parts also qualitative in nature: "easily transitions" to and from a liquid state upon introduction and removal of a force; and "capable of suspending" certain materials *Halliburton,* 2008 WL216294 at *4. Halliburton further argued that its definition was "sufficiently objective" because these qualitative terms would be understood by reference to a figure in the patent and testing methods known to those of ordinary skill in the art (*id.* at *5 and *7).

      The Federal Circuit held that the appropriate framework of analysis is whether a "person of ordinary skill in the art can[] translate the definition into meaningfully precise claim

The Honorable Joseph J. Farnan, Jr.
February 28, 2007
Page 2

scope."[1] (*id.* at *5). Then, examining Halliburton's arguments under that framework, the Federal Circuit held that Halliburton's proposed definition was not definite (*id*).

Specifically, Halliburton argued that its definition of the claimed "fragile gel" was "meaningfully precise" because a certain figure in the patent (an "L-shaped curve shown in Figure 3") informed the first part of its proposed definition ("easily transitions") (*id*. at *5) and persons of ordinary skill would have known that fragile gels of the invention exhibit "the key feature" of such a curve when tested in a certain way (*id*. at *5). Halliburton argued similarly that persons of ordinary skill would understand the second part ("capable of suspending") because they would know how to measure the quantity of suspended material (*id*. at *7). The Federal Circuit rejected both of Halliburton's arguments.

After first discussing that the first part of Halliburton's proposed definition failed to distinguish the fragileness of the invention from fragile gels in the prior art, the Federal Circuit further noted that it also "did not place any limit on the scope of what was invented beyond the prior art…. By *failing to identify the degree of the fragility* of its invention, the first part of Halliburton's proposed definition would allow the claims to cover not only that which it invented that was superior to the prior art, but also all future improvements to the gel's fragility" (*id*. at *6) (emphasis added). Accordingly, the Court held that the term "fragile gel" was "not sufficiently definite if construed in accordance with the first part of Halliburton's proposed definition because a person of ordinary skill in the art could not determine how quickly the gel must transition" to and from a liquid state (*id*. at *7). The Court similarly determined that the second part ("capable of suspending") "fare[d] no better because nothing in the record suggested what *degree* of such capability is sufficient" (*id*. at *7) (emphasis added).

As the Federal Circuit noted in *Halliburton,* "[t]he fact that Halliburton [like ProMOS] can articulate a definition supported by the specification, however, does not end the inquiry. … the claim is still indefinite if a person of ordinary skill in the art cannot translate the definition into meaningfully precise claim scope" (*id*. at *5). In this regard, even though ProMOS contends that the claimed "rounding" means "reducing the sharpness of the top edge," ProMOS effectively admits that not all reduction of sharpness is within the scope of the invented "rounding," but only, to use ProMOS's words, the "exact type" or "sort" of rounding called for by Figure 5.[2]

---

[1]  In contrast, ProMOS argues that "the focus of the indefiniteness inquiry is on the claim language itself, not on a party's proposed construction of a term" (D.I. 90 at 31). But the quoted portion of the Federal Circuit's opinion, and its entire analysis over the following pages, makes clear that this Court must consider indefiniteness by examining ProMOS's proposed definition.

[2]  In its opening brief, ProMOS refers to "exactly the type of rounded edge" (D.I. 84 at 34) and, in its answering brief, to "exactly the sort of rounded edges" required by the claims (D.I. 90 at 31).

The Honorable Joseph J. Farnan, Jr.
February 28, 2007
Page 3

   ProMOS goes on to argue that the Fortin patent need not set forth an objective "type" or degree of reducing sharpness because, purportedly, that would be requiring mathematical precision (D.I. 90 at 31).  That argument was squarely rejected by the Federal Circuit's holding in *Halliburton*.  Like Halliburton's proposed definition, ProMOS's proposed definition, "reducing sharpness," is indefinite because it fails both to distinguish from the "rounding" in the prior art and *to identify the requisite extent or degree (or "type") of the "reduction in sharpness"* such that future improvements would not be foreclosed (*id*. at *7).  One of ordinary skill simply cannot know from ProMOS's definition the boundaries on "reducing sharpness" that the invention allegedly claims and, therefore, the claimed "rounding" is fatally indefinite because neither such persons nor accused infringers can know where "the line should be drawn" for either invalidity purposes or for avoiding charges of infringement (*id*. at *6 - 7).

   The Court's analysis is also instructive in pointing out that a patent drafter is in the best position to resolve ambiguities in qualitative language, e.g. by using a quantitative metric or providing a formula in the patent for calculating the extent of "rounding" required by the claims (*id*. at *9).  Halliburton chose not to do that, as did Fortin.  Instead, ProMOS argued that one of ordinary skill in the art would somehow understand that certain process parameters (only used for the particular embodiment disclosed in the patent) "would produce exactly the sort of rounded edges illustrated" in a figure of the patent."  Yet ProMOS does not argue that these quantitative parameters could be generalized or should actually be incorporated as part of the definition, or as pointed out at the Markman hearing, even that *all* of the quantitative parameters used in the specification for "rounding" are relevant (tr. at 92-92).  Thus, as Freescale has argued, the term is indefinite, as it is strictly qualitative and ProMOS has not argued for a quantitative definition that would allow one of ordinary skill in the art to "translate [ProMOS's proposed] definition into meaningfully precise scope" (*id*. at *5).

   For all these reasons, as the Federal Circuit stated in *Halliburton*, the "rounding" term is indefinite and to rule otherwise "would undermine the notice function of the claims because it would allow [ProMOS] to benefit from the ambiguity, rather than requiring [ProMOS] to give proper notice of the scope of the claims to competitors" and other members of the public (*id*. at 7).

          Respectfully,

          */s/ Mary B. Graham (#2256)*

          Mary B. Graham (#2256)

MBG/dam
Enclosure
cc: Dr. Peter Dalleo, Clerk (via e-filing and hand delivery)
   John G. Day, Esquire (via email)
   Sten A. Jensen, Esquire (via email)
   David L. Witcoff, Esquire (via email)
1607899