# ASHBY & GEDDES

ATTORNEYS AND COUNSELLORS AT LAW

500 DELAWARE AVENUE

P. O. BOX 1150

WILMINGTON, DELAWARE 19899

TELEPHONE
302-654-1888

FACSIMILE
302-654-2067

March 24, 2008

VIA ELECTRONIC MAIL
AND HAND DELIVERY

The Honorable Vincent J. Poppiti
Special Master
Blank Rome LLP
Chase Manhattan Center, Suite 800
Wilmington, DE 19801-4226

   Re: *ProMOS Technologies, Inc. v. Freescale Semiconductor, Inc.*,
     C.A. No. 06-788-JJF (DM 4)

Dear Judge Poppiti:

On March 20, you asked us to provide grounds for "Freescale's obligation to come forward with information that Mr. Snyder may not have testified to." 3/20 Tr. 40. In response, we offer the following summary of the results of our legal research:

1. **"The Spirit" of the Federal Rule of Civil Procedure (FRCP), as specifically embodied and reflected in FRCP 26(e):** Rule 26 provides that "[p]arties may obtain discovery regarding any nonprivileged matter is relevant to any party's claim or defense." See Rule 26(b)(1). Absent a Court order, the circumstances under which a party may properly object to and withhold information or documents requested in discovery are limited. See Rule 26(b)(2). A party that objects to discovery cannot "simply intone [the] familiar litany that the [discovery requests] are burdensome, oppressive or overly broad." Comagnie Francaise D'Assurance v. Phillips Petro. Co., 105 F.R.D. 16, 42 (S.D.N.Y. 1984); accord, e.g., Obiajulu v. City of Rochester, 166 F.R.D. 293, 295 (W.D.N.Y. 1996)("pat, generic, non-specific objections, intoning the same boilerplate language, are inconsistent with both the letter and the spirit of the Federal Rules of Civil Procedure"). Rather, an objecting party "must clearly set forth the specifics of the objection and how that objection relates to the documents being demanded." Obiajulu, 166 F.R.D. at 295.

- The FRCP Advisory Committee has specifically reaffirmed that: "'Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation.' Hickman v. Taylor, 329 U.S. 495, 507 (1947)). *Thus, the spirit of the rules is violated* when advocates attempt to use discovery tools as tactical weapons rather than to expose the facts and illuminate the issues *by overuse of discovery or unnecessary use of defensive weapons or evasive responses*." 1993 Advisory Committee Notes (emphasis added).

  - Consistent with that "spirit of the rules," Rule 26(e) expressly requires a party to "supplement or correct" a discovery response if the party learns that it is "incomplete or inaccurate" in some material respect. Although Rule 26(e) "ordinarily" does not apply to deposition testimony, see 1993 Advisory Committee Notes, courts on occasion have relied on Rule 26(e) in finding that a party is obligated to amend or supplement

{00203843;v1}

inaccurate deposition testimony. Lozano v. American Express Travel Related Services, Inc., 2002 WL 31968994, *3 (D. Or. Dec. 6, 2002) ("Federal Rule of Civil Procedure 26(e) imposes a duty upon parties to seasonably amend or supplement their responses to depositions, interrogatories, and requests for production."); Diamond Triumph Auto Glass, Inc. v. Safelite Glass Corp., 441 F. Supp. 2d 695, 723 n.17 (M.D. Pa. 2006) (citing Rule 26(e) as evidence of duty to supplement deposition testimony).

- Other courts have sanctioned a party for failing to correct inaccurate deposition testimony without expressly relying on Rule 26(e), particularly where the party had received written discovery responses on the same topic. See Filippo v. Lee Publications, Inc., 2007 WL 2713236, *7 (N.D. Ind. Sept. 12, 2007) (sanctioning the party and its lawyer where "[c]ounsel's initial answer to defendant's interrogatory and document requests were inadequate and evasive. Then, when confronted with information demonstrating that his client had lied during her deposition, he took almost no action, and did not try to supplement or correct her previous answers, or to supplement his discovery answer or his woeful interrogatory answer with further information."); see also Everage v. Northern Indiana Public Service Co., 825 N.E.2d 941, 952 (Ind. App. 2005) ("The trial court here concluded that NIPSCO had a duty to supplement Klase's deposition testimony. NIPSCO argues that Ind. Trial Rule 26(E) does not apply to depositions. However, we need not decide this issue because NIPSCO also failed to supplement other discovery responses concerning this issue.").

2. **FRCP 30:** "If in the course of taking [a Rule 30(b)(6)] deposition it becomes apparent that the person or persons designated are not able to provide testimony on the matters specified in the notice, it is the duty of the corporation immediately to make a new designation substituting someone who can give the needed testimony." Wright & Miller, Federal Practice and Procedure § 2103 (1994 & 2007 Supp.) (and cases cited). Although that duty most often is triggered during a deposition when a Rule 30(b)(6) designee is unable to respond fully completely to a question asked, both the purpose and the language of the Rule ("The persons designated must testify about information known or reasonably available to the organization") can be satisfied only if the duty also runs to a party that becomes aware during or after a Rule 30(b)(6) deposition that the designee has provided incomplete or inaccurate information. Freescale's failure to correct Mr. Snyder's incomplete and inaccurate testimony thus violated Rule 30(b)(6), which is designed "to make the deposition a meaningful one and to prevent the 'sandbagging' of an opponent by conducting a half-hearted inquiry before the deposition but a thorough and vigorous one before trial. This would totally defeat the purpose of the discovery process." Berwind Property Group Inc. v. Environmental Management, 233 F.R.D. 62, 65 (D. Mass. 2005).

Rule 30(d), moreover, permits a court to "impose an appropriate sanction —including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent." By permitting Mr. Snyder to testify at deposition in a manner that was incomplete and inaccurate, and by failing to correct that testimony, Freescale and its counsel frustrated the fair examination of Freescale on the topics in ProMOS's First Rule 30(b)(6) Notice of Deposition that called for testimony concerning the features of Freescale Products, which should have permitted ProMOS to determine the identity of products manufactured or sold by Freescale that contained caches and other features relevant to this action. Sanctions under Rule 30(d), like those available under Rule 37, do not require any showing of bad faith. GMAC Bank v. HFTC Corp. 2008 WL 542386 *10, 12 (ED Pa. Feb. 29, 2008) ("the imposition of sanctions under Rule 30(d)(2) requires only that the attorney's conduct frustrated the fair examination of the deponent;" an attorney cannot "simply sit back, allow the deposition to proceed, and then blame the client with the

deposition process breaks down;" "Rule 30(d)(2) does not require that an attorney take some affirmative act in order to frustrate a deposition, but rather contemplates sanctions for attorney inaction as well").

It is worth noting that Rule 30(e) provided Mr. Snyder and Freescale with an easy opportunity to correct the incomplete and inaccurate deposition testimony in question. That Rule requires that a deponent be given an opportunity to review the transcript of his deposition and to make "changes in form or substance" within 30 days of being notified that the transcript is available for review. Although Mr. Snyder reviewed and made changes to a later Rule 30(b)(1) individual deposition that he gave in this case, neither he nor Freescale made any revisions to the November 30, 2007 or January 9, 2008 Rule 30(b)(6) deposition transcripts. In contrast, in connection with another Rule 30(b)(6) deposition conducted February 15, 2008 regarding the ARM core used in certain Freescale products, Freescale's designee, Steve Benzel, recently submitted revisions to both the form and substance of his deposition testimony. For example, one of the entries on the Errata Sheet submitted by Mr. Benzel reads in part: "I don't believe the answer 'No' to the question to be totally truthful. At the time of questioning I had forgotten about the development of the DL2CC by a different IP design group (of which I had no part)." The Errata Sheet went on to provide certain additional information to supplement and correct Mr. Benzel's incomplete and inaccurate deposition testimony, and the parties are now discussing what additional discovery may be needed in light of the new information provided in the Errata Sheet.

3. **FRCP 37(a):** By permitting Mr. Snyder's incomplete and inaccurate deposition testimony to stand uncorrected, Freescale also violated Rule 37(a)(3)(B)(i), which subjects a party that fails to answer a deposition question to a motion to compel, and Rule 37(a)(4), which provides that "an evasive or incomplete disclosure, answer or response is to be treated as a failure to disclose, answer or respond." See GMAC Bank v. HFTC Corp., 2008 WL 542386 at* 10 (both the deponent who provides evasive or incomplete answers and the attorney who advises on such answers may be sanctioned); Geico Cas. Co. v. Beauford, 2007 WL 1192446, *2 (M.D. Fla. Apr. 23, 2007). It now appears clear that the November 30, 2007 and January 9, 2008 deposition testimony of Mr. Snyder was "incomplete," because he failed to provide complete information in response to questions about the identity of all products manufactured or sold by Freescale that contained caches. And the failure of Freescale and its counsel to correct that incomplete testimony is an ongoing discovery violation that the Court can and should remedy, including by imposing sanctions. Rule 37(a)(5). See GMAC Bank 2008 WL 542386 at *12 (attorney's "silent toleration" of incomplete or evasive deposition testimony may result in Rule 37 sanctions).

4. **Rules of Professional Responsibility 3.3 (Candor Toward the Tribunal) and 3.4 (Fairness to Opposing Party and Counsel):** Rule 3.3(a)(3) of the Delaware (and Model) Rules of Professional Responsibility prohibits an attorney from sponsoring evidence that he knows to be false and requires an attorney who "comes to know" of the falsity of such evidence to take "reasonable remedial measures." Rule 3.3(c) further makes clear that this duty is a continuing one that does not expire until the conclusion of the proceeding. Rule 3.4 (a) prohibits an attorney from unlawfully "conceal[ing] a document or other material having potential evidentiary value, and Rule 3.4(c) requires that he not, "in pretrial procedure, . . . fail to make reasonably diligent effort to comply with a legally proper discovery request by an opposing party."

Significantly, Comment 1 to Rule 3.3 of the Delaware (and Model) Rules of Professional Conduct specifically states that the Rule applies to testimony given at a deposition:

> It [Rule 3.3] also applies when the lawyer is representing a client in an ancillary proceeding

> conducted pursuant to the tribunal's adjudicative authority, such as a deposition. Thus, for example, *paragraph (a)(3) requires a lawyer to take <u>reasonable</u> remedial measures if the lawyer comes to know that a client who is testifying in a deposition has offered evidence that is false.* [Emphasis supplied.]

Freescale's counsel has acknowledged that it knew, at least as of August 23, 2007, when it filed a motion to compel infringement contentions, that the products listed on ProMOS's July 2007 list was incomplete and that Freescale manufactured and sold cache-containing products that were not on the list. Indeed, Freescale has argued to the Special Master that a footnote contained in its brief in support of the August 23 motion to compel should have tipped off ProMOS that the July 2007 list was incomplete.[1] Thus, Freescale's counsel had full knowledge of the incomplete nature of the July 2007 list during the months leading up to the November 30, 2007 deposition of Mr. Snyder, and they must have appreciated that Mr. Snyder's testimony at that deposition was incomplete and misleading because it purported to identify all cache-containing products that were missing from the July 2007 list, when in fact it did not do so. Accordingly, Freescale's counsel had an ethical duty to correct the record following Mr. Snyder's inaccurate testimony.

5. **28 U.S.C. § 1927**: This statute authorizes federal courts to impose monetary sanctions on an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously." A finding that the attorney acted in bad faith or engaged in intentional misconduct is a prerequisite to the imposition of sanctions under this statute. In re Prudential Ins. Co., 278 F.3d 175, 181 (3rd Cir. 2002); Zuk v. Eastern Pennsylvania Psychiatric Inst., 103 F.3d 294, 297 (3rd Cir. 1995). Such a finding may be appropriate, however, "when an attorney objectively 'falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party.'" Red Carpet Studios v. Sater, 465 F.3d 642, 646 (6th Cir. 2006)(quoting Ruben v. Warren City Sch., 825 F.2d 977, 984 (6th Cir. 1987). As indicated above, Freescale's counsel has fallen short of the obligations that they owed to this Court under Rule 3.3 of the Delaware Rules of Professional Responsibility. Unlike Rule 11 and certain other obligations imposed on counsel in connection with discovery, there is no requirement under § 1927 that an attorney sign a document or make any other form of written certification. Accordingly, courts have relied on § 1927 in sanctioning conduct that occurred in connection with a deposition. Unique Concepts, Inc. v. Brown, 115 F.R.D. 292 (S.D.N.Y. 1987).

6. **Inherent Authority of the Court to Control the Course of Litigation**: A district court also possesses broad inherent authority to impose monetary, disciplinary, and other sanctions on parties and counsel in order to ensure the fairness and efficiency of its proceedings. In re Cendant Corp., 260 F.3d 183, 199 (3rd Cir. 2001); In re Prudential Ins. Co., 465 F.3d at 646. The power to impose such sanctions "'transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself, thus serving the dual purpose of vindicating

---

[1] Freescale is wrong in suggesting that ProMOS should have understood footnote 2 in the August 23 brief to indicate that the July 2007 list (which contained over 150 products) was incomplete. The footnote states merely that Freescale manufactures "over 220 different microprocessor products, *most* of which include a cache memory of some sort." Because the word "most" means more than half, the footnote in no way put ProMOS on notice that the July 2007 list of over 150 products was incomplete, or that the additional 10 or so products identified by Mr. Snyder were not sufficient to round out the list of "most" of the 220 processor products. But Freescale's recent disclosure of what it intended and understood footnote 2 to mean makes clear that they were well aware of the incomplete nature of the July 2007 list at least as early as August 23, 2007.

{00203843;v1}

judicial authority without resort to the more drastic sanctions available for contempt of court and making the prevailing party whole for expenses caused by his opponent's obstinacy." <u>Fellheimer, Eichen & Braverman, P.C. v.</u>, 57 F.3d 1215, 1224 (3rd Cir. )(quoting <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 45-46 (1991). It is widely recognized that "depositions play an extremely important role in the American system of justice," especially in light of high proportion of civil cases that are settled in advance of trial, often based on testimony give at depositions. <u>GMAC Bank</u>, 2008 WL 542386 at *2.

We also have reviewed the submission Freescale made on Friday afternoon, and we have a number of responses thereto. However, we will wait to provide comments on that submission until the conference call scheduled for this afternoon.

          Respectfully,

          */s/ Lauren E. Maguire*

          Lauren E. Maguire


cc: Mary B. Graham, Esquire (via electronic mail)
   Steven J. Routh, Esquire (via electronic mail)
   David L. Witcoff, Esquire (via electronic mail)