# ASHBY & GEDDES

ATTORNEYS AND COUNSELLORS AT LAW

500 DELAWARE AVENUE

P. O. BOX 1150

WILMINGTON, DELAWARE 19899

TELEPHONE
302-654-1888

FACSIMILE
302-654-2067

March 14, 2008

**REDACTED**
**PUBLIC VERSION**

The Honorable Vincent J. Poppiti
Special Master
Blank Rome LLP
Chase Manhattan Center, Suite 800
Wilmington, DE 19801-4226

VIA ELECTRONIC FILING
AND HAND DELIVERY

Re:    *ProMOS Technologies, Inc. v. Freescale Semiconductor, Inc.,*
       *C.A. No. 06-788-JJF (DM 4)*

Dear Judge Poppiti:

Attached hereto for filing is ProMOS Technology, Inc.'s sealed March 10, 2008 letter to the Special Master, which was previously sent by email to the Special Master and counsel for Freescale Semiconductor, Inc., and which has been designed as DM 4.

Respectfully,

*/s/ John G. Day*

John G. Day

JGD: nml
Enclosure
cc:    Mary B. Graham, Esquire (via electronic mail; w/o enclosure)
       Steven J. Routh, Esquire (via electronic mail; w/o enclosure)
       David L. Witcoff, Esquire (via electronic mail; w/o enclosure)

{00202175;v1}

# HOGAN & HARTSON

Hogan & Hartson LLP
Columbia Square
555 Thirteenth Street, NW
Washington, DC 20004
+1.202.637.5600 Tel
+1.202.637.5910 Fax

www.hhlaw.com

March 10, 2008

**REDACTED**
**PUBLIC VERSION**

The Hon. Vincent J. Poppiti, Special Master
Chase Manhattan Centre
1201 Market Street, Suite 800
Wilmington, DE 19801

Re:    *ProMOS Technologies, Inc. v. Freescale Semiconductor*, Inc. C.A. No. 06-788 (JJF)

Plaintiff ProMOS Technologies, Inc. ("ProMOS") respectfully seeks the Special Master's assistance in getting to the bottom of what appears to be a significant failure by Freescale Semiconductor, Inc. ("Freescale") to meet its discovery obligations with respect to damages-related information as well as potentially technical documents. Although Freescale's current discovery violation has its roots in the early phases of discovery, ProMOS had understood that the problem had been remedied, pursuant to Judge Farnan's October 31, 2007 Order, which granted ProMOS' Motion to Compel Freescale to Produce Technical and Damages Documents Relating to Accused Products and to Appear for Document-Related Deposition, as well as the Rule 30(b)(6) deposition testimony provided by Freescale pursuant to that Order. Recent deposition testimony and Freescale's continuing refusal to supplement its response to ProMOS' Interrogatory No. 1, however, make clear that Freescale is continuing to withhold complete discovery on Freescale products except for those products that ProMOS has specifically listed by product number, even though the very purpose of ProMOS' Interrogatory No. 1 is to obtain from Freescale information needed to permit ProMOS to identify and list all the accused products. In many instances, the products that Freescale is refusing to identify or provide discovery on are materially indistinguishable from products that ProMOS has identified by product number, often using the same accused "cores" for which ProMOS has already provided detailed infringement contentions. Freescale should not be allowed to continue its game-playing approach to discovery, whereby it seeks to require ProMOS to decipher its complex system of product names and numbers as a precondition to providing discovery on Freescale products that plainly are accused products in this action.

Because of the complexity, importance, and urgency of this matter, it is not possible to set forth all the facts and considerations needed to address and resolve the current dispute in letter briefs. We will summarize below and in the accompanying Chronology and exhibits the background of the matter. ProMOS, however, requests that the Special Master hold an in-person hearing to obtain complete information and to resolve the current dispute. Because Freescale's ongoing refusal to provide discovery potentially infects every aspect of discovery in this case, we further request that the Special Master address this request on an expedited basis and schedule the hearing for either the week of March 10 or March 17, 2008.

The precise relief required to remedy Freescale's discovery misconduct is not clear. That is because Freescale's refusal to provide discovery on products other than those specifically identified by ProMOS makes it impossible for us to know even how many or what types of products have been shielded from complete discovery by Freescale (particularly in light of the multiple different ways in which Freescale names or otherwise identifies its products). It appears, however, that the "missing" products in question fall into two distinct categories that may raise different issues:

1.    It appears that Freescale has produced discovery for most of the "cores" around which its products are built, as well as for certain of the products that ProMOS previously has specifically identified by product number as including those cores. At the same time, Freescale has refused to provide discovery for other

The Hon. Vincent J. Poppiti, Special Master
March 10, 2008
Page 2

products that use the same cores solely because ProMOS has not yet been made aware of (and therefore has not identify by product number) those products. Freescale should be required to provide discovery on these additional products, but in most if not all instances these additional products will be subject to the same infringement contentions that ProMOS already has prepared for the cores and products for which Freescale previously produced discovery. That is because the products in this category on which Freescale has withheld discovery are not materially different than the products on which Freescale has produced discovery. The mere identification of such additional products as well as the production of damages-related discovery will be sufficient and will serve simply to increase the damages for the complete set of accused products.

2. In other instances, it appears that Freescale has withheld discovery on one or more cores or products that may be materially different from the cores and products on which discovery already has been provided. Again, because of Freescale's refusal to provide discovery, it is difficult to know the extent to which there exist Freescale products that have been so completely shielded from any discovery that ProMOS has not yet been able to complete an infringement analysis applicable to the products. Depending on the number and nature of the cores or materially distinct products for which Freescale has withheld discovery, ProMOS may seek further discovery in order to be in a position to provide such a complete analysis and/or it may seek that evidentiary sanctions be imposed on Freescale.

**Background of the Dispute Over the Scope of Freescale Accused Products**

ProMOS summarized the background of this action and the history of Freescale's discovery misconduct in its letter to the Special Master of January 11, 2008 and the exhibits thereto. At each stage of discovery, Freescale has sought to limit the discovery it provides in new and unreasonable ways. The current dispute arises from the fact that, since the beginning of this action, Freescale has resisted providing discovery on the products accused of infringement in the Complaint, arguing instead that ProMOS must first use publicly available information (e.g., from Freescale's website) to try to list each and every accused Freescale product by product number or name before Freescale would provide discovery for products so identified.

On April 12, 2007, ProMOS served its First Request for Production of Documents and Interrogatories, which adopted a definition for "Freescale Product(s)" that included any cores, products or components that Freescale manufactures or sells that "use, incorporate, work with or rely on cache memory." Ex. A(1) at 5. ProMOS' Interrogatory No. 1 asked Freescale to provide the name, product number, internal designation, and certain other basic information for each "Freescale Product." Ex. A(2). The purpose of Interrogatory No. 1 was to permit ProMOS to know the full scope of Freescale products that could infringe the Chan patents, which involve cache memory technologies, so that it could then focus further discovery on those products and ensure that no accused products slipped through the cracks. Freescale, however, refused to provide a substantive response to Interrogatory No. 1, and during the months of May – July 2007 it stood on its objection:

> Freescale objects to this interrogatory as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (e.g., the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this interrogatory as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence . . . . [Ex. B.]

ProMOS consistently disputed that position on grounds that Interrogatory No. 1 and similar discovery was necessary and appropriate to determine the complete list of accused products, particularly since Freescale uniquely possesses information about its own products. Nonetheless, at Freescale's urging, on July 6, 2007, ProMOS provided Freescale with a list of approximately 150 Freescale products that ProMOS had identified from Freescale's website as containing cache memories that appeared to infringe the two asserted Chan patents, but at the same time made absolutely clear that the list was exemplary and that the accused products were NOT limited to those that ProMOS had been able to list based on publicly available information. Ex. C.

The Hon. Vincent J. Poppiti, Special Master
March 10, 2008
Page 3

Because Freescale continued to limit its discovery responses in various ways – for example, refusing to produce (or even acknowledge the existence of) circuit diagrams, producing RTL documentation solely on a single laptop computer in its counsel's Cleveland offices, and refusing to produce damages-related information on all the accused products – ProMOS filed a Motion to Compel in August 2007. In response to the motion, Freescale argued that ProMOS' Chan-patent discovery was too broad, because ProMOS had not limited the "accused products" to those Freescale products that it had specifically identified by product number. ProMOS replied by reiterating its position that Freescale must provide discovery on all its cache-containing products.

In his October 31 Order, Judge Farnan "considered the positions of the parties" and specifically found that Freescale's discovery "responses have been insufficient with regard to all issues presented by Plaintiff," and directed Freescale to produce: "the requested circuit diagrams," "electronic copies of the RTL documentation," and "pricing information and cost data for the accused products." Nothing in the Order suggested that, in ordering Freescale to produce damages-related documents "for the accused products," Judge Farnan had adopted Freescale's position that "the accused products" were limited to the exemplary list provided by ProMOS on July 6, or that Judge Farnan otherwise intended to so limit his Order or Freescale's discovery obligations. Indeed, the Order accepted ProMOS' position on the insufficiency of Freescale's responses on "all issues" and directed Freescale to produce *the requested* circuit diagrams" (emphasis supplied), where ProMOS had requested such documents for *all* products with cache memories. Judge Farnan specifically "RESERVED" on whether to sanction Freescale "pending the Court's further review of Defendant's conduct."

Since the October 31 Order, ProMOS has been forced to seek further relief for Freescale's continuing, related discovery misconduct. For example, in his December 20 Order, Judge Farnan ordered Freescale to produce at its expense for a second deposition a Rule 30(b)(6) designee on the specific topics that had been "noticed and explained by Plaintiff at the November 30, 2007 deposition."

REDACTED

We now know that testimony was not accurate, as recent discovery has revealed a significant number of "Freescale Products" that are not on the July 6 list and for which Freescale has not provided discovery. Nonetheless, Freescale continues to refuse to correct or supplement its 30(b)(6) testimony or otherwise to identify what cache-containing products it manufactures and sells.

**Freescale's Failure to Meet Its Discovery Obligations and to Comply with the October 31 Order**

Until last week, we did not understand that Freescale was continuing to withhold from discovery information on many Freescale products simply because they were not specifically listed on the July 6 list, which ProMOS had made clear were exemplary accused products and not a complete list. Nor can Judge Farnan's Orders reasonably be read to limit the "accused products" or Freescale's discovery obligations to the specific products included on ProMOS' July 6 list. Nonetheless, the supplemental interrogatory responses that Freescale served on February 29, 2008 make clear that Freescale has indeed limited its discovery responses to "accused Freescale products identified by ProMOS." Freescale's counsel has confirmed that Freescale's supplemental discovery responses do not provide complete discovery for any products other than those specifically listed by ProMOS, even where Freescale may be aware that it manufactures additional products that are the same in all material respects as the products previously listed by ProMOS.

REDACTED

The Hon. Vincent J. Poppiti, Special Master
March 10, 2008
Page 4

- 

- **REDACTED**

- 

- 

## The Governing Law and Request for Assistance

Not only have Judge Farnan's Orders addressed the issue, but it is also well-settled that, for purposes of discovery, relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." Pitney Bowes, Inc. v. Kern Int'l, Inc., 239 F.R.D. 62, 65 (D. Conn. 2006); Novartis Pharm. Corp. v. Eon Labs Mfg., Inc., 206 F.R.D. 392, 394 (D. Del. 2002). A party must produce in discovery any responsive information that "appears reasonably calculated to lead to the discovery of admissible evidence." Id.; see also Advanced Med. Optics, Inc. v. Alcon Inc., No. Civ. A. 03-1095-KAJ, 2004 WL 1877724, *2 (D. Del. Aug. 18, 2004). "'Reasonably calculated' in Rule 26 means 'any possibility that the information sought may be relevant to the subject matter of the action.'" Pitney Bowes, 239 F.R.D. at 65. Moreover, "[i]n patent cases there is a substantial policy for a 'broad type of discovery and duty of full disclosure' in order to reduce the 'maximum amount of evidence." Ropak Corp. v. Plastican, Inc., No. 04 C 5422, 2006 WL 1005406 (N.D. Ill. Apr. 17, 2006).

For the foregoing reasons, ProMOS requests that the Special Master schedule a hearing on an expedited basis to determine the extent of Freescale's discovery violations with respect to products not specifically listed by ProMOS on the July 6 list and to provide appropriate relief for those violations.

Respectfully submitted,

Steven J. Routh

**Chronology of Procedural History Relating To Current Discovery Dispute**

**December 22, 2006:** ProMOS filed its Complaint in this action. Two of the three patents at issue in this case, the '709 patent and the '241 patent (collectively known as the "Chan" patents), involve "cache" memory, a form of high-speed memory that stores frequently-used data so that the CPU can have faster access to it. The parties' discovery disputes have focused primarily on Freescale products accused of infringing the Chan patents.

**April 12, 2007:** ProMOS served its initial interrogatories and document requests seeking basic information about "Freescale Products," which was defined in ProMOS's discovery requests to include "microcontrollers, microprocessors, processors, digital signal processors, controller cores, processor cores and all other components or goods you manufacture or market for sale or sell in any way that use, incorporate, work with or rely on cache memory" and systems or products that incorporate the same. Ex. A, Doc. Requests, page 5. In particular, Interrogatory No. 1 required Freescale to identify all Freescale Products by external and internal product number.

**May 14, 2007:** ProMOS responded to Freescale's interrogatory answers by providing Freescale with specific information regarding its infringement contentions, including a list of approximately 50 exemplary accused products and detailed PowerPoint presentations reading the claims of the patents onto certain representative accused products.

**May 17, 2007:** Freescale served written objections to ProMOS's April 12-served discovery, refusing to identify the Freescale Products or to produce meaningful technical documents relating to any of them unless ProMOS first specifically identified each of the accused products by product number and provided an explanation of ProMOS's infringement contentions for each such accused product. Ex. B. In response to Interrogatory No. 1, Freescale stated:

> In addition to its General Objections, Freescale objects to this interrogatory as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this interrogatory as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited to products made, used, offered for sale, or sold within the United States, or imported into the United States, and, with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, is not properly limited in time.
>
> Without waiving any and subject to all of the foregoing objections, pursuant to Fed.R.Civ.P. 33(d), Freescale will provide non-privileged documents from which ProMOS may ascertain additional information responsive to this interrogatory.

Neither the documents produced by Freescale pursuant to Fed.R.Civ.P. 33(d) nor other discovery provided by Freescale identified "Freescale Products," as requested in ProMOS' initial discovery requests. Instead, during May, June, and into July, Freescale insisted that it would provide discovery only with respect to products that ProMOS specifically identified by product name or number.

**July 3, 2007:** ProMOS served Freescale with a Rule 30(b)(6) notice of deposition seeking testimony regarding (i) the documents relating to, and (ii) the features associated with the cache memories of, all "Freescale Products" as that term was defined in ProMOS's document requests. ProMOS noticed the deposition to obtain discovery on which "Freescale Products" had not previously been identified by

ProMOS, and what documents Freescale maintained relating to all "Freescale Products." Freescale did not produce a witness in response to this notice until November 30, 2007, after Judge Farnan ordered it to do so.

**July 6, 2007:** After months of meet and confers, and with just over one month left before document discovery was scheduled to close on August 15, ProMOS attempted by break the discovery log-jam created by Freescale's conduct by providing Freescale with a preliminary list of approximately 150 products which appeared from to contain relevant cache memories based on the limited information available on Freescale's website. In the cover email attaching the list and in a subsequent motion to compel filed with the Court, ProMOS made clear that the list was "preliminary" and cautioned that "this is not a final list because further discovery may reveal additional Freescale products that infringe." Ex. C.

**July 6, 2007:** ProMOS filed a Motion to Compel with the Court on grounds that Freescale had agreed to produce certain technical documents "on the product families specifically identified in ProMOS's interrogatory answers," but it "has taken the position that it will not produce any technical documents regarding Freescale's other cache memory products until after ProMOS specifically identifies such products and provides claim charts or their equivalent setting forth ProMOS's contentions regarding how those products infringe the cache memory patents." Ex. D at 5-6.

**July 23, 2007:** Based on representations from Freescale's counsel that it would produce technical documents relating to at least the products listed by ProMOS on the July 6, 2007 list, and further that it would produce a Rule 30(b)(6) witness to address the topics contained in the July 3, 2007 notice (i.e., a witness that could identify documents maintained by Freescale for all "Freescale Products"), ProMOS withdrew its motion to compel.

**August 23, 2007:** Freescale's ongoing discovery misconduct, including its continuing failure to produce a Rule 30(b)(6) designee to testify in response to the July 3 Notice, required ProMOS to file another Motion to Compel. In that motion, ProMOS laid out the background of the parties' dispute and asked for an Order compelling Freescale to produce critical technical and damages-related documents on all "Freescale Products," as that term was defined in ProMOS' discovery requests, and to produce a Rule 30(b)(6) witness in response to the July 3, 2007 notice.

**September 10, 2007:** In its Opposition to the Motion to Compel, Freescale asserted that ProMOS's discovery requests were overbroad and "improper because ProMOS made no attempt to confine its expansive definition of 'Freescale Products' to products that could reasonably be considered to potentially be within the scope of the Chan patents" and argued that its discovery obligations were properly limited to products included on the July 6, 2007 preliminary list. Ex. 4 to January 11 submission at 4-5.

**September 14, 2007:** ProMOS filed a Reply on the Motion to Compel in which it asserted that its preliminary July 6 list "did no more than delineate for each product number the specific Freescale products that ... ProMOS believed met the definition of 'Freescale Products' spelled out in ProMOS's discovery requests....Because Freescale has more information about its own products than ProMOS, the burden should not fall on ProMOS to identify Freescale products containing cache memories, nor should Freescale be permitted to evade compliance with its discovery obligations until after ProMOS attempts to do so. For these reasons, Freescale's assertion that it was unable to produce technical or financial documents until after July 6, 2007 is flat out wrong." Ex. E at 4-5.

**October 31, 2007:** Judge Farnan issued an Order granting ProMOS's Motion to Compel, finding that "Defendant's responses have been insufficient *with regard to all issues presented by Plaintiff*." See Ex. 5 to January 11 submission (emphasis supplied). Judge Farnan also ordered Freescale to produce "the requested circuit diagrams" to ProMOS as well as damages-related documents "for the accused products," without restricting his ruling to products specifically listed by ProMOS or any other subset of "Freescale Products." Id.

Judge Farnan also ordered Freescale to produce a Rule 30(b)(6) witness on topics relating to documents and features associated with the cache memories in Freescale Products.

**REDACTED**

**REDACTED**

**December 20, 2007:**  Judge Farnan issued an Order sanctioning Freescale for its conduct at the November 30 deposition and ordering Freescale to re-produce Mr. Snyder and to pay ProMOS its attorneys' fees and costs for the original deposition and the re-deposition.  The Court specifically ordered that the scope of the deposition would be "as noticed and explained by Plaintiff at the November 30 deposition."  Ex. 13 to January 11 submission.  This further appeared to lay to rest the question whether the scope of the deposition was properly limited to questions about products that had been identified in ProMOS' July 6 list, as Freescale's counsel had asserted at the beginning of the November 30 deposition, or to all "Freescale Products," as set forth in the Notice of Deposition.

**REDACTED**

4

**REDACTED**

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| PROMOS TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 06-788-JJF |
| | ) | |
| v. | ) | |
| | ) | |
| FREESCALE SEMICONDUCTOR, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF PROMOS TECHNOLOGIES, INC.'S**
**FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS**
**FROM DEFENDANT FREESCALE SEMICONDUCTOR, INC. (Nos. 1-117)**

Pursuant to Rules 34 and 26 of the Federal Rules of Civil Procedure, Plaintiff

ProMOS Technologies, Inc. ("ProMOS") hereby requests that defendant Freescale

Semiconductor, Inc. ("Freescale") produce for inspection and/or copying the following

documents and things at the offices of Hogan & Hartson, LLP, Columbia Square, 555 13th Street,

N.W., Washington, D.C., 20004, or such other mutually agreed upon location, within thirty (30)

days of the date of service of these requests.

**DEFINITIONS**

1.      The terms "Plaintiff" and "ProMOS" refer to ProMOS Technologies, Inc., and its

officers, agents, employees, and representatives.

2.      The terms "Defendant," "you," "your," and "Freescale" refer to Defendant

Freescale Semiconductor, Inc., including but not limited to its divisions, subsidiaries, directors,

agents, representatives, attorneys and employees, and any predecessor in interest.

3.      The term "Complaint" means the Complaint and any amended Complaints filed by

Plaintiff in this action.

4.      The term "Answer" means the Answer and Affirmative Defenses, or any amendments thereto, filed by Defendant in this action.  Whenever a request refers to or quotes from the Answer, all words in the request have the same meaning as in the Answer.

5.      The term "Counterclaims" means the Counterclaims, or any amendments thereto, filed by Defendant in this action.  Whenever a request refers to or quotes from the Counterclaims, all words in the request have the same meaning as in the Counterclaims.

6.      The term "document" as used herein is employed in the broadest possible sense under Rule 34 and includes, but is not limited to, any printed, written, recorded, taped, electronic (including e-mail and deleted electronic media that is recoverable in any form), graphic, or other tangible matter from whatever source, however produced or reproduced, whether in draft or otherwise, whether sent or received or neither, including the original, all amendments and addenda and any non-identical copy (whether different from the original because of notes made on or attached to such copy or otherwise ) of any and all writings, correspondence, letters, telegraphs, telex communicants, cables, notes, notations, papers, newsletters, memoranda, interoffice communications, e-mails, releases, agreements, contracts, books, pamphlets, studies, minutes of meetings, recordings or other memorials of any type of personal or telephone conversations, meetings or conferences, reports, analyses, test results, examinations, evaluations, estimates, projections, forecasts, receipts, statements, accounts, books of account, diaries, calendars, desk pads, appointment books, stenographer's notebooks, transcripts, ledgers, registers, worksheets, journals, statistical records, cost sheets, summaries, lists, tabulations, digests, canceled or uncanceled checks or drafts, vouchers, charge slips, invoices, purchase orders, hotel charges, accountant's reports, financial statements, newspapers, periodicals or magazine materials, and any materials underlying, supporting, or used in the preparation of any

documents. The term "document(s)" also specifically includes any records stored on computer tape or computer disk or otherwise stored by or in a computer, including telephone voice mail or electronic mail, whether or not a hard copy (i.e., paper copy) of the document is or was at any time in existence. A document includes all documents appended thereto. The documents requested shall include all marked copies. A "marked copy" is any document containing any writing or any markings of any kind in the text, in the margins, or on the reverse side of the document.

7.    The term "person(s)" includes any natural person, corporation, partnership, association, joint venture, sole proprietorship, firm, business enterprise, governmental or quasi-governmental body or agency, or legal entity of any type, and includes both the singular and plural.

8.    The term "communications" means all oral, visual, or other sensory means of transmitting information, messages, or statements, including but not limited to correspondence, letters, memoranda, e-mails (with any attachment(s)), meeting minutes, transcripts of telephone conversations, and presentations.

9.    The terms or phrases "relating to," "relate(s)," or "related to" includes, but is not limited to, constituting, comprising, consisting of, containing, setting forth, describing, discussing, citing, regarding, pertaining to, mentioning, proposing, showing, disclosing, containing, analyzing, explaining, summarizing, supporting, evidencing, authorizing, concerning, embodying, reflecting, identifying, incorporating, considering, recommending, continuing, enumerating, dealing with, commenting on, referring to directly or indirectly, dealing with, responding to, or in any way logically or factually relevant to the matter described in the request.

10.    The term "date" means the exact day, month and year, if ascertainable, or, if not, the best available approximation, including relationship to other events.

11.    The terms "and" as well as "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these requests any documents that otherwise would be construed to be outside their scope.

12.    The terms "ProMOS patents," "ProMOS patents-in-suit," and "patents-in-suit," mean United States Letters Patent No. 5,488,709 ("the '709 patent") entitled "Cache Including Decoupling Register Circuits;" United States Letters Patent No. 5,732,241 ("the '241 patent") entitled "Random Access Cache Memory Controller and System;" and United States Letters Patent No. 6,670,267 ("the '267 patent") entitled "Formation of Tungsten-Based Interconnect Using Thin Physically Vapor Deposited Titanium Nitride Layer."

13.    With respect to the '709 patent and the '241 patent, the term "inventor" shall mean Alfred K. Chan.  With respect to the '267 patent, the term "inventor" shall mean Vincent Fortin.  The term "inventors" shall mean Messrs. Chan and Fortin together.

14.    The term "infringement" shall be defined broadly to include direct, contributory and induced infringement under the applicable laws.

15.    The term "market," as a verb, shall mean to sell, lease, license, exhibit or distribute; or to offer to sell, lease, license, exhibit or distribute.

16.    The term "sale" means and refers to any exchange of goods, services or other property for value and includes transferring goods to another party on a consignment basis, regardless of whether title has passed.

17.    As used herein, "prior art" includes any reference or subject matter set forth in or relevant under 35 U.S.C. § 102 and 35 U.S.C. § 103.

- 4 -

18.     The term "Freescale Product(s)" includes:  microcontrollers, microprocessors, processors, digital signal processors, controller cores, processor cores and all other components or goods you manufacture or market for sale or sell in any way that use, incorporate, work with or rely on cache memory; systems, components, products and goods that use, incorporate work with or rely on microcontrollers, microprocessors, processors, digital signal processors, controller cores, processor cores or other components or goods that use, incorporate, work with or rely on cache memory; and integrated circuits and semiconductor products that incorporate one or more conductors that includes a layer of tungsten overlying a layer of titanium nitride, such conductors including, but not limited to, those formed using Damascene and dual Damascene processes.

## **<u>INSTRUCTIONS</u>**

1.     In responding to these requests, you shall furnish all documents that are in your possession, custody, or control; or are within the possession, custody, or control of your officers, directors, employees, agents, representatives, present or former contractors, consultants, investigators, or attorneys; or otherwise available to you, regardless of whether documents are possessed directly by you, or any parent, subsidiary or affiliated corporation, or any of such entity's officers, directors, employees, agents, representatives, present or former contractors, consultants, investigators or attorneys.

2.     Organize and label each document or set of documents, indicating by number the request to which the document(s) relates.  In your written response, provide the document production (i.e. "Bates") number(s) for document(s) responsive to each request.

3.     Electronic and computerized information must be produced in an intelligible format or together with a description of the system from which it was derived sufficient to permit rendering of the materials intelligible.

- 5 -

4.      If any document responding to all or any part of this Request is not currently available, include a statement to that effect and furnish whatever documents are available. Include in your statement when such documents were most recently in your possession or subject to your control and what disposition was made of them, identifying the name, job title, and the last known address of each person currently in possession or control of such documents. If any of such documents were destroyed, identify the name, job title and the last known business address of each person who directed that the documents be destroyed, and state the reasons the documents were destroyed. If you do not have a document responsive to a request, but you know of person(s) or organization(s) who may have all or any portion of the document, then all such information, including names, addresses, and telephone numbers, shall be disclosed in your written response.

5.      If any document or portion of any document covered by this Request for Production is withheld from production due to a claim of privilege, protection, or other grounds for non-disclosure, furnish a list of all such documents withheld that provides the following information: (a) the "Bates" number(s); (b) the identity of the person(s) who prepared or authorized the preparation of the document and, if applicable, the person(s), addresses, and organization to whom the document was sent or shown; (c) the date (or your best approximation thereof) on which the document was prepared; (d) a description of the type of document (e.g., letter, ledger, etc.); (e) the subject matter of the document; (f) a brief reason why the document is claimed to be privileged, protected, or subject to non-disclosure; and (g) the paragraph(s) of this Request to which the document responds.

6.      This Request is continuing and requires, to the extent authorized by Rule 26(e) of the Federal Rules of Civil Procedure, production of any additional responsive documents that

may be located or acquired by you or your employees after the date of your original production.

7.    Unless otherwise indicated in a particular request, the relevant time period for each Request shall be from January 1, 2000, to the present.

## SPECIFIC REQUESTS FOR PRODUCTION

**REQUEST NO. 1:**

All documents identified, requested to be identified, relied upon, reviewed, or consulted in responding to Plaintiff's First Set of Interrogatories to Defendant.

**REQUEST NO. 2:**

All written policies, procedures and guidelines related to Freescale's computers, computer systems, electronic data and electronic media that hold, contain, save, or manage documents, including, but not limited to, (a) back up tape rotation schedules; (b) electronic data retention, preservation and destruction schedules; (c) employee use of company computers and data; (d) file naming conventions and standards; (e) diskette, CD, DVD, and other removable media labeling standards; and (e) e-mail storage (i.e., limitations on mailbox sizes and storage locations).

**REQUEST NO. 3:**

Documents sufficient to show your document retention and/or destruction policies and/or practices from 2000 to the present.

**REQUEST NO. 4:**

Organizational charts for all of your Information Technology-related or Information Services-related departments or divisions.

**REQUEST NO. 5:**

Documents sufficient to show your past and present organizational and operational structure, including all divisions or subsidiaries, entities owned or controlled by

Freescale, affiliates, predecessors or successors in interest, whether in the United States, or anywhere else in the world, and the identity of the officers and managers of each such entity.

**REQUEST NO. 6:**

   All documents that identify present employees, past employees, consultants, and contract employees, whether full or part time, whose responsibilities or assignment include work relating to the conception, design, development, manufacture, analysis, testing, marketing, sales or repair of each Freescale Product, including but not limited to, organizational charts and telephone or email directories.

**REQUEST NO. 7:**

   All documents that identify present employees, past employees, consultants, and contract employees, whether full or part time, whose responsibilities or assignment include work relating to the conception, design, development, manufacture, analysis, testing, marketing, sales or repair of each cache memory used with or in, incorporated in or relied on by a Freescale Product, including but not limited to, organizational charts and telephone or email directories.

**REQUEST NO. 8:**

   All documents that identify present employees, past employees, consultants, and contract employees, whether full or part time, whose responsibilities or assignment include work relating to the conception, design, development, manufacture, analysis, testing, marketing, sales or repair of any register(s) used in writing, reading, buffering or accessing data from or to each cache memory used with or in, incorporated in or relied on by a Freescale Product, including but not limited to, organizational charts and telephone or email directories.

**REQUEST NO. 9:**

   All documents that identify present employees, past employees, consultants, and

contract employees, whether full or part time, whose responsibilities or assignment include work

relating to the conception, design, development, manufacture, analysis, testing, marketing, sales

or repair of each cache controller used with or in, incorporated in or relied on by a Freescale

Product, including but not limited to, organizational charts and telephone or email directories.

**REQUEST NO. 10:**

All documents that identify present employees, past employees, consultants, and

contract employees, whether full or part time, whose responsibilities or assignment include work

relating to the conception, design, development, manufacture, analysis, testing, marketing, sales

or repair of each process for forming conductors that include a layer of tungsten overlying a layer

of titanium nitride used with or in, incorporated in or relied on by a Freescale Product, including

but not limited to, organizational charts and telephone or email directories.

**REQUEST NO. 11:**

Documents sufficient to identify, describe, illustrate, or depict names and/or

functions of subsidiaries, departments, or divisions that were involved in any manner in the

conception, design, development, manufacture, analysis, testing, marketing, sales or repair of any

Freescale Product.

**REQUEST NO. 12:**

Documents sufficient to identify, describe, illustrate, or depict names and/or

functions of subsidiaries, departments, or divisions that were involved in any manner in the

conception, design, development, manufacture, analysis, testing, marketing, sales or repair of

each cache memory used with, incorporated in or relied on by any Freescale Product.

**REQUEST NO. 13:**

Documents sufficient to identify, describe, illustrate, or depict names and/or

functions of subsidiaries, departments, or divisions that were involved in any manner in the conception, design, development, manufacture, analysis, testing, marketing, sales or repair of any register(s) used in writing, reading, buffering or accessing data from or to each cache memory used with or in, incorporated in or relied on by a Freescale Product.

**REQUEST NO. 14:**

Documents sufficient to identify, describe, illustrate, or depict names and/or functions of subsidiaries, departments, or divisions that were involved in any manner in the conception, design, development, manufacture, analysis, testing, marketing, sales or repair of each cache controller used with or in, incorporated in or relied on by a Freescale Product.

**REQUEST NO. 15:**

Documents sufficient to identify, describe, illustrate, or depict names and/or functions of subsidiaries, departments, or divisions that were involved in any manner in the conception, design, development, manufacture, analysis, testing, marketing, sales or repair of each process for forming conductors that include a layer of tungsten overlying a layer of titanium nitride used with or in, incorporated in or relied on by a Freescale Product.

**REQUEST NO. 16:**

All documents relating to third parties contracted, consulted, hired and/or retained that worked with Freescale or worked with another third party on Freescale's behalf on the conception, design, development, implementation, testing and manufacturing of each version of each model of Freescale Product, including but not limited to, contracts, contract proposals, Requests for Proposals (RFPs), solicitations, queries, investigations, and capability studies.

**REQUEST NO. 17:**

All documents relating to third parties contracted, consulted, hired and/or retained

that worked with Freescale or worked with another third party on Freescale's behalf on the conception, design, development, implementation, testing and manufacturing of each version of each cache memory used with, incorporated in or relied on by any Freescale Product, including but not limited to, contracts, contract proposals, Requests for Proposals (RFPs), solicitations, queries, investigations, and capability studies.

**REQUEST NO. 18:**

All documents relating to third parties contracted, consulted, hired and/or retained that worked with Freescale or worked with another third party on Freescale's behalf on the conception, design, development, implementation, testing and manufacturing of each version of each register(s) used in writing, reading, buffering or accessing data from or to each cache memory used with, incorporated in or relied on by a Freescale Product, including but not limited to, contracts, contract proposals, Requests for Proposals (RFPs), solicitations, queries, investigations, and capability studies.

**REQUEST NO. 19:**

All documents relating to third parties contracted, consulted, hired and/or retained that worked with Freescale or worked with another third party on Freescale's behalf on the conception, design, development, implementation, testing and manufacturing of each version of each cache controller used with, incorporated in or relied on by a Freescale Product, including but not limited to, contracts, contract proposals, Requests for Proposals (RFPs), solicitations, queries, investigations, and capability studies.

**REQUEST NO. 20:**

All documents relating to third parties contracted, consulted, hired and/or retained that worked with Freescale or worked with another third party on Freescale's behalf on the

conception, design, development, implementation, testing and manufacturing of each version of

each process for forming conductors that include a layer of tungsten overlying a layer of titanium

nitride used with or in, incorporated in or relied on by a Freescale Product, including but not

limited to, contracts, contract proposals, Requests for Proposals (RFPs), solicitations, queries,

investigations, and capability studies.

**REQUEST NO. 21:**

Your annual reports, prospectuses, proxy statements and Form 10-K and Form

10-Q reports for the years 2000 to the present.

**REQUEST NO. 22:**

All documents relating to design reviews and design review meetings, including

but not limited to, all notes, minutes, reports, action item lists and management summaries,

relating to each version of each model of Freescale Product.

**REQUEST NO. 23:**

All documents relating to design reviews and design review meetings, including

but not limited to, all notes, minutes, reports, action item lists and management summaries,

relating to each version of each cache memory used with, incorporated in or relied on by any

Freescale Product.

**REQUEST NO. 24:**

All documents relating to design reviews and design review meetings, including

but not limited to, all notes, minutes, reports, action item lists and management summaries,

relating to each version of each register(s) used in writing, reading, buffering or accessing data

from or to each cache memory used with, incorporated in or relied on by a Freescale Product.

**REQUEST NO. 25:**

          All documents relating to design reviews and design review meetings, including but not limited to, all notes, minutes, reports, action item lists and management summaries, relating to each version of each cache controller used with, incorporated in or relied on by a Freescale Product.

**REQUEST NO. 26:**

          All documents relating to design reviews and design review meetings, including but not limited to, all notes, minutes, reports, action item lists and management summaries, relating to each version of each process for forming conductors that include a layer of tungsten overlying a layer of titanium nitride used with or in, incorporated in or relied on by a Freescale Product.

**REQUEST NO. 27:**

          All documents relating to drawings, schematics, blueprints, manufacturing specifications, engineering specifications, design specifications, product test specifications, part specifications, assembly specifications and other documents relating to the design, development, or manufacture of any Freescale Product.

**REQUEST NO. 28:**

          All documents relating to drawings, schematics, blueprints, manufacturing specifications, engineering specifications, design specifications, product test specifications, part specifications, assembly specifications and other documents relating to the design, development, or manufacture of each cache memory used with, incorporated in or relied on by any Freescale Product.

**REQUEST NO. 29:**

All documents relating to drawings, schematics, blueprints, manufacturing specifications, engineering specifications, design specifications, product test specifications, part specifications, assembly specifications and other documents relating to the design, development, or manufacture of each register(s) used in writing, reading, buffering or accessing data from or to each cache memory used with, incorporated in or relied on by a Freescale Product.

**REQUEST NO. 30:**

All documents relating to drawings, schematics, blueprints, manufacturing specifications, engineering specifications, design specifications, product test specifications, part specifications, assembly specifications and other documents relating to the design, development, or manufacture of each cache controller used with, incorporated in or relied on by a Freescale Product.

**REQUEST NO. 31:**

All documents relating to drawings, schematics, blueprints, manufacturing specifications, engineering specifications, design specifications, product test specifications, part specifications, assembly specifications and other documents relating to the design, development, or manufacture of each process for forming conductors that include a layer of tungsten overlying a layer of titanium nitride used with or in, incorporated in or relied on by a Freescale Product.

**REQUEST NO. 32:**

All versions of operation manuals, repair manuals, or user manuals for any Freescale Product.

**REQUEST NO. 33:**

All manufacturing and/or production drawings for any Freescale Product,

including but not limited to hardware drawings, engineering drawings, assembly drawings, and blueprints.

**REQUEST NO. 34:**

All manufacturing and/or production drawings for each cache memory used with, incorporated in or relied on by any Freescale Product, including but not limited to hardware drawings, engineering drawings, assembly drawings, and blueprints.

**REQUEST NO. 35:**

All manufacturing and/or production drawings for each register(s) used in writing, reading, buffering or accessing data from or to each cache memory used with, incorporated in or relied on by a Freescale Product, including but not limited to hardware drawings, engineering drawings, assembly drawings, and blueprints.

**REQUEST NO. 36:**

All manufacturing and/or production drawings for each cache controller used with, incorporated in or relied on by a Freescale Product, including but not limited to hardware drawings, engineering drawings, assembly drawings, and blueprints.

**REQUEST NO. 37:**

All manufacturing and/or production drawings for each process for forming conductors that include a layer of tungsten overlying a layer of titanium nitride used with or in, incorporated in or relied on by a Freescale Product.

**REQUEST NO. 38:**

All documents relating to the conception, engineering, design, research, development, manufacture, testing, use, repair and/or operation of each version of each model of Freescale Product, including but not limited to specifications, schematics, block diagrams, data

sheets, layouts, databases, depictions, photographs, simulations, test results, manuals, journals, notes, notebooks, communications, and correspondence.

**REQUEST NO. 39:**

All documents relating to the conception, engineering, design, research, development, manufacture, testing, use, repair and/or operation of each version of each cache memory used with, incorporated in or relied on by any Freescale Product, including but not limited to specifications, schematics, block diagrams, data sheets, layouts, databases, depictions, photographs, simulations, test results, manuals, journals, notes, notebooks, communications, and correspondence.

**REQUEST NO. 40:**

All documents relating to the conception, engineering, design, research, development, manufacture, testing, use, repair and/or operation of each version of each register(s) used in writing, reading, buffering or accessing data from or to each cache memory used with, incorporated in or relied on by a Freescale Product, including but not limited to specifications, schematics, block diagrams, data sheets, layouts, databases, depictions, photographs, simulations, test results, manuals, journals, notes, notebooks, communications, and correspondence.

**REQUEST NO. 41:**

All documents relating to the conception, engineering, design, research, development, manufacture, testing, use, repair and/or operation of each version of each cache controller used with, incorporated in or relied on by a Freescale Product, including but not limited to specifications, schematics, block diagrams, data sheets, layouts, databases, depictions, photographs, simulations, test results, manuals, journals, notes, notebooks, communications, and correspondence.

**REQUEST NO. 42:**

All documents relating to the conception, engineering, design, research, development, manufacture, testing, use, repair and/or operation of each process for forming conductors that include a layer of tungsten overlying a layer of titanium nitride used with or in, incorporated in or relied on by a Freescale Product, including but not limited to specifications, schematics, block diagrams, data sheets, layouts, databases, depictions, photographs, simulations, test results, manuals, journals, notes, notebooks, communications, and correspondence.

**REQUEST NO. 43:**

For each Freescale Product, documents sufficient to show the place and process of manufacture, models manufactured, units manufactured, and destination of units manufactured.

**REQUEST NO. 44:**

To the extent not produced in response to any other request, all reference designs and schematics relating to each version of each model of Freescale Product.

**REQUEST NO. 45:**

All pictures or photographs of Freescale Products, including but not limited to any die or portion of any die.

**REQUEST NO. 46:**

Circuit diagrams for each version of each model of Freescale Product.

**REQUEST NO. 47:**

Circuit diagrams for each version of each cache memory used with, incorporated in or relied on by any Freescale Product.

**REQUEST NO. 48:**

Circuit diagrams for each version of each register(s) used in writing, reading,

buffering or accessing data from or to each cache memory used with, incorporated in or relied on by a Freescale Product.

**REQUEST NO. 49:**

Circuit diagrams for each version of each cache controller used with, incorporated in or relied on by a Freescale Product.

**REQUEST NO. 50:**

Process flows and process recipes for each version of each model of Freescale Product.

**REQUEST NO. 51:**

Process flows and process recipes for each version of each process for forming conductors that include a layer of tungsten overlying a layer of titanium nitride used with or in, incorporated in or relied on by a Freescale Product.

**REQUEST NO. 52:**

All documents relating to source code, object code, pseudo code, flow charts or design specifications of the circuit diagrams, Verilog code and/or VHDL code, and reticle layout code for each version of each model of Freescale Product.

**REQUEST NO. 53:**

All documents relating to source code, object code, pseudo code, flow charts or design specifications of the circuit diagrams, Verilog code and/or VHDL code, and reticle layout code for each version of each cache memory used with, incorporated in or relied on by any Freescale Product.

**REQUEST NO. 54:**

All documents relating to source code, object code, pseudo code, flow charts or

design specifications of the circuit diagrams, Verilog code and/or VHDL code, and reticle layout code for each version of each register(s) used in writing, reading, buffering or accessing data from or to each cache memory used with, incorporated in or relied on by a Freescale Product.

**REQUEST NO. 55:**

All documents relating to source code, object code, pseudo code, flow charts or design specifications of the circuit diagrams, Verilog code and/or VHDL code, and reticle layout code for each version of each cache controller used with, incorporated in or relied on by a Freescale Product.

**REQUEST NO. 56:**

Documents sufficient to identify the date of all revisions to circuit diagrams, source code, Verilog code and/or VHDL code, and reticle layout code for each version of each model of Freescale Product.

**REQUEST NO. 57:**

All documents relating to the operation of each version of each model of Freescale Product.

**REQUEST NO. 58:**

All documents relating to the operation of each version of each cache memory used with, incorporated in or relied on by any Freescale Product.

**REQUEST NO. 59:**

All documents relating to the operation of each version of each register(s) used in writing, reading, buffering or accessing data from or to each cache memory used with, incorporated in or relied on by a Freescale Product.

**REQUEST NO. 60:**

All documents relating to the operation of each version of each cache controller used with, incorporated in or relied on by a Freescale Product.

**REQUEST NO. 61:**

All engineering change orders or notices for each version of each model of Freescale Products.

**REQUEST NO. 62:**

Documents sufficient to show the device and system architecture of each version of each model of Freescale Product.

**REQUEST NO. 63:**

All documents relating to comparative testing of each version of each model of Freescale Products.

**REQUEST NO. 64:**

All prototypes and models of Freescale Products, from initial prototype to commercial and/or production models made from 2000 to the present.

**REQUEST NO. 65:**

Complete copies of all licenses or agreements to which you are a party, including but not limited to cross-licenses, inter-company agreements, settlements, covenants not to enforce or releases that relate in any way to integrated circuit manufacturing, microprocessor, microcontroller, DRAM, SDRAM or memory technologies.

**REQUEST NO. 66:**

All documents that refer to, discuss, evidence, mention or constitute any contracts or license agreements, including drafts, in which Freescale has licensed, or licenses, or

considering licensing products, technology or patents from or to third parties relating to

microprocessor, microcontroller, processor or memory technologies.

**REQUEST NO. 67:**

   All documents relating to your policies on licensing or cross-licensing patents,

know-how or technology.

**REQUEST NO. 68:**

   Documents sufficient to identify any third parties that manufacture any Freescale

Products.

**REQUEST NO. 69:**

   All articles, speeches, presentations or interviews, both internal and external, that

have been written and/or given by your employees, officers, directors or other of your

representatives relating to Freescale Products.

**REQUEST NO. 70:**

   All press releases from 2000 to the present relating to Freescale Products.

**REQUEST NO. 71:**

   All documents relating to ProMOS or the patents-in-suit, including but not limited

to documents that relate to your first awareness of any of the patents-in-suit and your earliest

notice of potential infringement of any of the patents-in-suit.

**REQUEST NO. 72:**

   All documents relating to communications exchanged between you and any third

party relating to the patents-in-suit, this lawsuit and/or ProMOS.

**REQUEST NO. 73:**

Each Freescale meeting agenda, corporate minutes or minutes of meetings relating to the patents-in-suit, this lawsuit and/or ProMOS products.

**REQUEST NO. 74:**

All documents relating to any effort by Freescale or anyone else on its behalf to design, redesign, commercialize or modify any Freescale Product in view of the patents-in-suit.

**REQUEST NO. 75:**

All documents relating to any attempt by Freescale or anyone on its behalf to design around and/or avoid infringement of the patents-in-suit by any Freescale Product.

**REQUEST NO. 76:**

All documents related or referring to any ProMOS patent.

**REQUEST NO. 77:**

All documents relating to your evaluation, analysis, or consideration of the patents in-suit, including but not limited to any reverse engineering or testing performed on any Freescale Product.

**REQUEST NO. 78:**

All documents relating to your consideration of whether or not to obtain a license from ProMOS for the patents-in-suit.

**REQUEST NO. 79:**

All documents found or identified during any enforceability, prior art or invalidity searches, or any other studies relating to the patents-in-suit, including any copies of patents, publications, or other prior art identified during such searches or studies.

**REQUEST NO. 80:**

All documents that relate, support, or contradict Freescale's assertion that the patents-in-suit are invalid for any reason, including but not limited to anticipation or obviousness.

**REQUEST NO. 81:**

All documents that Freescale contends constitute prior art to the patents-in-suit.

**REQUEST NO. 82:**

All documents that relate, support, or contradict Freescale's assertion that the patents-in-suit are unenforceable.

**REQUEST NO. 83:**

All opinion letters, memoranda, or other documents relating to your contentions on validity/invalidity, infringement/non-infringement, or enforceability/unenforceability of the patents-in-suit.

**REQUEST NO. 84:**

All documents supporting, refuting or relating in any way to the affirmative defenses or counterclaims set forth in your Answer to the Complaint.

**REQUEST NO. 85:**

All documents relating to any contention by you that your products do not infringe the patents-in-suit, including but not limited to documents relating to the interpretation, scope, and meaning of the claims in any of the patents-in-suit.

**REQUEST NO. 86:**

All opinions of counsel obtained with respect to infringement, validity, or enforceability of the patents-in-suit upon which you intend to rely at trial to defend against claims of willful infringement, inducement to infringe, or contributory infringement.

**REQUEST NO. 87:**

All communications or opinions of officers, directors and/or employees of yours with respect to infringement, validity, or enforceability of the patents-in-suit or regarding any licensing negotiations with ProMOS.

**REQUEST NO. 88:**

Documents sufficient to show by month or calendar quarter for each year since 2000 the number of each version of each model of Freescale Product manufactured, used, sold or distributed in the United States.

**REQUEST NO. 89:**

Documents sufficient to show by month or calendar quarter for each year since 2000 the volume of sales in dollars from the sale or distribution of each version of each model of Freescale Product.

**REQUEST NO. 90:**

All projections, forecasts, business plans, strategic plans, fiscal plans, marketing plans or sales plans relating to the sale of Freescale Products from 2000 to the present, including documents containing projections through calendar year 2012.

**REQUEST NO. 91:**

All documents relating to the means by which sales or sales information relating to each version of each model of Freescale Product is maintained and tracked by or on behalf of Freescale.

**REQUEST NO. 92:**

All versions of all part number decoders or legends for each version of each model of Freescale Product.

**REQUEST NO. 93:**

Current and historical price lists for each version of each model of Freescale Product.

**REQUEST NO. 94:**

All documents relating to returns of, or complaints, dissatisfaction, negative comments, unfavorable opinions or suggestions for improvement regarding each version of each model of Freescale Products.

**REQUEST NO. 95:**

All documents relating to favorable, positive, commendatory, or complimentary feedback, comments or opinions regarding each version of each model of Freescale Products.

**REQUEST NO. 96:**

All documents relating to favorable, positive, commendatory, or complimentary feedback, comments or opinions regarding any ProMOS product.

**REQUEST NO. 97:**

All documents relating to sales, distribution or importation agreements entered into between Freescale and any third party for each version of each model of Freescale Product.

**REQUEST NO. 98:**

Documents sufficient to show each of your distributors, resellers and customers of each version of each model of Freescale Product.

**REQUEST NO. 99:**

All documents relating to purchase orders and/or specifications received from customers or potential customers for each version of each model of Freescale Product, including all drawings and information received therewith.

**REQUEST NO. 100:**

All documents relating to market shares for Freescale and its competitors for each of the Freescale Products.

**REQUEST NO. 101:**

Summary documents categorized by year and by product type and name regarding the following: (1) Freescale's total unit and dollar volumes for Freescale Products manufactured, sold, or offered for sale by you from 2000 to the present, including projections through calendar year 2012; and (2) revenues, costs (fixed and variable), gross profit, and net profit for all such products manufactured, sold or offered for sale by you from 2000 to the present, including projections through calendar year 2012.

**REQUEST NO. 102:**

Summary documents categorized by year and by product type and name regarding gross expenses, including but not limited to direct labor costs, direct manufacturing costs, selling costs, variable overhead costs, incurred in the manufacture, distribution, or sale of Freescale Products from 2000 to the present, including projections through calendar year 2012.

**REQUEST NO. 103:**

Documents sufficient to show the date of the first sale of each Freescale Product.

**REQUEST NO. 104:**

Summary documents identifying the distributors and retailers to whom you have sold each Freescale Product from 2000 through the present, including the name, address, product(s) sold by model number, number of units sold, date of sale, date of shipment, and sales price.

**REQUEST NO. 105:**

Financial statements, including profit and loss statements, income statements, balance sheets, statements of cash flow, statements of retained earnings, and notes thereto for Freescale and any of its affiliates, divisions, subsidiaries, or parent companies.

**REQUEST NO. 106:**

All documents relating to market, industry or consumer studies, surveys, or analyses of any Freescale Product and/or any competitor's product.

**REQUEST NO. 107:**

All drafts, proposals, and final copies of advertising, sales, or promotional literature, including but not limited to television and print media advertising, brochures and trade show promotional material, catalogues, price lists, sell sheets, product descriptions, sales literature, drawings, videotapes, audio tapes, electronic media, or photographs for advertising, point-of-sale commercials, or other promotional material for Freescale Products.

**REQUEST NO. 108:**

All memoranda, correspondence, bulletins, newsletters, or other documents that currently or since 2000 have been distributed to, made available to, received from, or drafted by your present or former employees engaged in marketing or sales functions relating to Freescale Products.

**REQUEST NO. 109:**

All documents prepared by, provided by, sent to, or received from your advertising agencies or public relations firms relating to any Freescale Product.

**REQUEST NO. 110:**

All documents that you may introduce as exhibits at the trial of this matter.

**REQUEST NO. 111:**

All documents identifying by name, company, address and title, all third parties hired by you or your counsel to investigate the above-captioned litigation, ProMOS, the patents-in-suit, or any ProMOS products.

**REQUEST NO. 112:**

Ten samples of each Freescale Product.

**REQUEST NO. 113:**

Any and all witness statements taken in connection with this litigation.

**REQUEST NO. 114:**

All documents provided to any person(s) that you expect to call as an expert witness at trial.

**REQUEST NO. 115:**

All documents relied upon by any person(s) that you expect to a call as an expert witness at trial in forming the opinion(s) as to which the person(s) will or may testify.

**REQUEST NO. 116:**

All documents relating to each person you employ, have employed, or have retained as an expert, including but not limited to curriculum vitae, resumes, retention agreements, letters, statements, and communications.

**REQUEST NO. 117:**

All documents on which you intend to rely for and/or that might be relevant to a reasonable royalty analysis or calculation using the so-called *Georgia Pacific* factors.

ASHBY & GEDDES

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
Telephone: (302) 654-1888
Telecopier: (302) 654-2067
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Plaintiff ProMOS Technologies, Inc.*

*Of Counsel*:

William H. Wright
HOGAN & HARTSON LLP
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
Telephone: (310) 785-4672
Facsimile: (31) 785-4601

Steven J. Routh
Sten A. Jensen
HOGAN & HARTSON LLP
555 Thirteenth Street, NW
Washington, DC  20004
Telephone: (202) 637-6472
Facsimile: (202) 637-5910

Dated:  April 12, 2007
179643.1

- 29 -

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of April, 2007, the attached **PLAINTIFF PROMOS TECHNOLOGIES, INC.'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS FROM DEFENDANT FREESCALE SEMICONDUCTOR, INC. (Nos. 1-117)** was served upon the below-named counsel of record at the address and in the manner indicated:

| | |
|---|---|
| Mary B. Graham, Esquire<br>Morris, Nichols, Arsht & Tunnell LLP<br>1201 N. Market Street<br>P.O. Box 1347<br>Wilmington, DE 19899-1347 | <u>HAND DELIVERY</u> |
| Jason W. Cook, Esquire<br>Jones Day<br>2727 North Harwood Street<br>Dallas, TX 75201-1515 | <u>VIA FEDERAL EXPRESS</u> |
| Kevin P. Ferguson, Esquire<br>Jones Day<br>77 West Wacker<br>Chicago, IL 60601-1692 | <u>VIA FEDERAL EXPRESS</u> |
| F. Drexel Feeling, Esquire<br>Jones Day<br>North Point<br>901 Lakeside Avenue<br>Cleveland, OH 44114-1190 | <u>VIA FEDERAL EXPRESS</u> |

Lauren E. Maguire

177267.1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PROMOS TECHNOLOGIES, INC.,          )
                                     )
                  Plaintiff,         )          C.A. No. 06-788-JJF
                                     )
            v.                       )
                                     )
FREESCALE SEMICONDUCTOR, INC.,       )
                                     )
                  Defendant.         )

### NOTICE OF SERVICE

The undersigned hereby certifies that on the 12th day of April, 2007, **PLAINTIFF**

**PROMOS TECHNOLOGIES, INC.'S FIRST SET OF REQUESTS FOR PRODUCTION**

**OF DOCUMENTS AND THINGS FROM DEFENDANT FREESCALE**

**SEMICONDUCTOR, INC. (Nos. 1-117)** was served upon the following counsel of record at

the address and in the manner indicated:


Mary B. Graham, Esquire                          HAND DELIVERY
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347

Jason W. Cook, Esquire                           VIA FEDERAL EXPRESS
Jones Day
2727 North Harwood Street
Dallas, TX  75201-1515

Kevin P. Ferguson, Esquire                       VIA FEDERAL EXPRESS
Jones Day
77 West Wacker
Chicago, IL  60601-1692

F. Drexel Feeling, Esquire                       VIA FEDERAL EXPRESS
Jones Day
North Point
901 Lakeside Avenue
Cleveland, OH  44114-1190

ASHBY & GEDDES

/s/ *Lauren E. Maguire*

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
Telephone: (302) 654-1888
Facsimile: (302) 654-2067
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Plaintiff*
*ProMOS Technologies, Inc.*

*Of Counsel:*

Steven J. Routh
Sten A. Jensen
HOGAN & HARTSON LLP
555 Thirteenth Street, NW
Washington, DC 20004
Telephone: (202) 637-5600
Facsimile: (202) 637-5910

William H. Wright
HOGAN & HARTSON LLP
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
Telephone: (310) 785-4600

Dated: April 12, 2007
177270.1

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of April, 2007, the attached **NOTICE OF SERVICE**

was served upon the below-named counsel of record at the address and in the manner indicated:

Mary B. Graham, Esquire                                    HAND DELIVERY
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347

Jason W. Cook, Esquire                                    VIA FEDERAL EXPRESS
Jones Day
2727 North Harwood Street
Dallas, TX  75201-1515

Kevin P. Ferguson, Esquire                                VIA FEDERAL EXPRESS
Jones Day
77 West Wacker
Chicago, IL  60601-1692

F. Drexel Feeling, Esquire                                VIA FEDERAL EXPRESS
Jones Day
North Point
901 Lakeside Avenue
Cleveland, OH  44114-1190


                                    /s/ *Lauren E. Maguire*
                                    _____
                                    Lauren E. Maguire

# Discovery Documents

<u>1:06-cv-00788-JJF Promos Technologies Inc. v. Freescale Semiconductor Inc.</u>
PATENT

## U.S. District Court

### District of Delaware

## Notice of Electronic Filing

The following transaction was entered by Maguire, Lauren on 4/12/2007 at 12:33 PM EDT and filed on 4/12/2007

**Case Name:**        Promos Technologies Inc. v. Freescale Semiconductor Inc.
**Case Number:**    <u>1:06-cv-788</u>
**Filer:**                  Promos Technologies Inc.
**Document Number:** <u>13</u>

**Docket Text:**
NOTICE OF SERVICE of First Set of Requests for Production of Documents and Things From Defendant Freescale Semiconductor, Inc. (Nos. 1-117) by Promos Technologies Inc..(Maguire, Lauren)


**1:06-cv-788 Notice has been electronically mailed to:**

Steven J. Balick    sbalick@ashby-geddes.com, dfioravanti@ashby-geddes.com, jday@ashby-geddes.com, lmaguire@ashby-geddes.com, mkipp@ashby-geddes.com, nlopez@ashby-geddes.com, rgamory@ashby-geddes.com, tlydon@ashby-geddes.com

John G. Day    jday@ashby-geddes.com, dfioravanti@ashby-geddes.com, dharker@ashby-geddes.com, lmaguire@ashby-geddes.com, mkipp@ashby-geddes.com, nlopez@ashby-geddes.com, rgamory@ashby-geddes.com, sbalick@ashby-geddes.com, tlydon@ashby-geddes.com

Mary B. Graham    dmyers@mnat.com, mbgefiling@mnat.com

**1:06-cv-788 Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=4/12/2007] [FileNumber=371463-0]
[acbbc4b7c0f3a0515c74f3c0fb52d6c79b9d44fb2c95ab00ddc61e2aaa9c018ef8dd
8650c9e18262136e92d84362e5a068e50e5dd2348c96a15d098a662514d2]]

# EXHIBIT B

# REDACTED

# EXHIBIT C

# REDACTED

# EXHIBIT D

**REDACTED**

# EXHIBIT E

**REDACTED**

# EXHIBIT F

**REDACTED**

# EXHIBIT G

# REDACTED