# ASHBY & GEDDES

ATTORNEYS AND COUNSELLORS AT LAW

500 DELAWARE AVENUE

P. O. BOX 1150

WILMINGTON, DELAWARE 19899

TELEPHONE
302-654-1888

FACSIMILE
302-654-2067

March 14, 2008

**REDACTED**
**PUBLIC VERSION**

The Honorable Vincent J. Poppiti  
Special Master  
Blank Rome LLP  
Chase Manhattan Center, Suite 800  
Wilmington, DE 19801-4226

VIA ELECTRONIC FILING
AND HAND DELIVERY

Re:   *ProMOS Technologies, Inc. v. Freescale Semiconductor, Inc.*,
      C.A. No. 06-788-JJF (DM 4)

Dear Judge Poppiti:

Attached hereto for filing is ProMOS Technology, Inc.'s sealed March 10, 2008 letter to the Special Master, which was previously sent by email to the Special Master and counsel for Freescale Semiconductor, Inc., and which has been designed as DM 4.

Respectfully,

*/s/ John G. Day*

John G. Day

JGD: nml
Enclosure
cc:   Mary B. Graham, Esquire (via electronic mail; w/o enclosure)
      Steven J. Routh, Esquire (via electronic mail; w/o enclosure)
      David L. Witcoff, Esquire (via electronic mail; w/o enclosure)

{00202175;v1}

# HOGAN &
# HARTSON

Hogan & Hartson LLP
Columbia Square
555 Thirteenth Street, NW
Washington, DC 20004
+1.202.637.5600 Tel
+1.202.637.5910 Fax

www.hhlaw.com

**REDACTED**
**PUBLIC VERSION**

March 10, 2008

The Hon. Vincent J. Poppiti, Special Master
Chase Manhattan Centre
1201 Market Street, Suite 800
Wilmington, DE 19801

Re:   *ProMOS Technologies, Inc. v. Freescale Semiconductor*, Inc. C.A. No. 06-788 (JJF)

Plaintiff ProMOS Technologies, Inc. ("ProMOS") respectfully seeks the Special Master's assistance in getting to the bottom of what appears to be a significant failure by Freescale Semiconductor, Inc. ("Freescale") to meet its discovery obligations with respect to damages-related information as well as potentially technical documents. Although Freescale's current discovery violation has its roots in the early phases of discovery, ProMOS had understood that the problem had been remedied, pursuant to Judge Farnan's October 31, 2007 Order, which granted ProMOS' Motion to Compel Freescale to Produce Technical and Damages Documents Relating to Accused Products and to Appear for Document-Related Deposition, as well as the Rule 30(b)(6) deposition testimony provided by Freescale pursuant to that Order. Recent deposition testimony and Freescale's continuing refusal to supplement its response to ProMOS' Interrogatory No. 1, however, make clear that Freescale is continuing to withhold complete discovery on Freescale products except for those products that ProMOS has specifically listed by product number, even though the very purpose of ProMOS' Interrogatory No. 1 is to obtain from Freescale information needed to permit ProMOS to identify and list all the accused products. In many instances, the products that Freescale is refusing to identify or provide discovery on are materially indistinguishable from products that ProMOS has identified by product number, often using the same accused "cores" for which ProMOS has already provided detailed infringement contentions. Freescale should not be allowed to continue its game-playing approach to discovery, whereby it seeks to require ProMOS to decipher its complex system of product names and numbers as a precondition to providing discovery on Freescale products that plainly are accused products in this action.

Because of the complexity, importance, and urgency of this matter, it is not possible to set forth all the facts and considerations needed to address and resolve the current dispute in letter briefs. We will summarize below and in the accompanying Chronology and exhibits the background of the matter. ProMOS, however, requests that the Special Master hold an in-person hearing to obtain complete information and to resolve the current dispute. Because Freescale's ongoing refusal to provide discovery potentially infects every aspect of discovery in this case, we further request that the Special Master address this request on an expedited basis and schedule the hearing for either the week of March 10 or March 17, 2008.

The precise relief required to remedy Freescale's discovery misconduct is not clear. That is because Freescale's refusal to provide discovery on products other than those specifically identified by ProMOS makes it impossible for us to know even how many or what types of products have been shielded from complete discovery by Freescale (particularly in light of the multiple different ways in which Freescale names or otherwise identifies its products). It appears, however, that the "missing" products in question fall into two distinct categories that may raise different issues:

    1. It appears that Freescale has produced discovery for most of the "cores" around which its products are built, as well as for certain of the products that ProMOS previously has specifically identified by product number as including those cores. At the same time, Freescale has refused to provide discovery for other

products that use the same cores solely because ProMOS has not yet been made aware of (and therefore has not identify by product number) those products. Freescale should be required to provide discovery on these additional products, but in most if not all instances these additional products will be subject to the same infringement contentions that ProMOS already has prepared for the cores and products for which Freescale previously produced discovery. That is because the products in this category on which Freescale has withheld discovery are not materially different than the products on which Freescale has produced discovery. The mere identification of such additional products as well as the production of damages-related discovery will be sufficient and will serve simply to increase the damages for the complete set of accused products.

2. In other instances, it appears that Freescale has withheld discovery on one or more cores or products that may be materially different from the cores and products on which discovery already has been provided. Again, because of Freescale's refusal to provide discovery, it is difficult to know the extent to which there exist Freescale products that have been so completely shielded from any discovery that ProMOS has not yet been able to complete an infringement analysis applicable to the products. Depending on the number and nature of the cores or materially distinct products for which Freescale has withheld discovery, ProMOS may seek further discovery in order to be in a position to provide such a complete analysis and/or it may seek that evidentiary sanctions be imposed on Freescale.

**Background of the Dispute Over the Scope of Freescale Accused Products**

ProMOS summarized the background of this action and the history of Freescale's discovery misconduct in its letter to the Special Master of January 11, 2008 and the exhibits thereto. At each stage of discovery, Freescale has sought to limit the discovery it provides in new and unreasonable ways. The current dispute arises from the fact that, since the beginning of this action, Freescale has resisted providing discovery on the products accused of infringement in the Complaint, arguing instead that ProMOS must first use publicly available information (e.g., from Freescale's website) to try to list each and every accused Freescale product by product number or name before Freescale would provide discovery for products so identified.

On April 12, 2007, ProMOS served its First Request for Production of Documents and Interrogatories, which adopted a definition for "Freescale Product(s)" that included any cores, products or components that Freescale manufactures or sells that "use, incorporate, work with or rely on cache memory." Ex. A(1) at 5. ProMOS' Interrogatory No. 1 asked Freescale to provide the name, product number, internal designation, and certain other basic information for each "Freescale Product." Ex. A(2). The purpose of Interrogatory No. 1 was to permit ProMOS to know the full scope of Freescale Products that could infringe the Chan patents, which involve cache memory technologies, so that it could then focus further discovery on those products and ensure that no accused products slipped through the cracks. Freescale, however, refused to provide a substantive response to Interrogatory No. 1, and during the months of May – July 2007 it stood on its objection:

> Freescale objects to this interrogatory as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this interrogatory as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence . . . . [Ex. B.]

ProMOS consistently disputed that position on grounds that Interrogatory No. 1 and similar discovery was necessary and appropriate to determine the complete list of accused products, particularly since Freescale uniquely possesses information about its own products. Nonetheless, at Freescale's urging, on July 6, 2007, ProMOS provided Freescale with a list of approximately 150 Freescale products that ProMOS had identified from Freescale's website as containing cache memories that appeared to infringe the two asserted Chan patents, but at the same time made absolutely clear that the list was exemplary and that the accused products were NOT limited to those that ProMOS had been able to list based on publicly available information. Ex. C.

The Hon. Vincent J. Poppiti, Special Master
March 10, 2008
Page 3

Because Freescale continued to limit its discovery responses in various ways – for example, refusing to produce (or even acknowledge the existence of) circuit diagrams, producing RTL documentation solely on a single laptop computer in its counsel's Cleveland offices, and refusing to produce damages-related information on all the accused products – ProMOS filed a Motion to Compel in August 2007. In response to the motion, Freescale argued that ProMOS' Chan-patent discovery was too broad, because ProMOS had not limited the "accused products" to those Freescale products that it had specifically identified by product number. ProMOS replied by reiterating its position that Freescale must provide discovery on all its cache-containing products.

In his October 31 Order, Judge Farnan "considered the positions of the parties" and specifically found that Freescale's discovery "responses have been insufficient with regard to all issues presented by Plaintiff," and directed Freescale to produce: "the requested circuit diagrams," "electronic copies of the RTL documentation," and "pricing information and cost data for the accused products." Nothing in the Order suggested that, in ordering Freescale to produce damages-related documents "for the accused products," Judge Farnan had adopted Freescale's position that "the accused products" were limited to the exemplary list provided by ProMOS on July 6, or that Judge Farnan otherwise intended to so limit his Order or Freescale's discovery obligations. Indeed, the Order accepted ProMOS' position on the insufficiency of Freescale's responses on "all issues" and directed Freescale to produce "*the requested* circuit diagrams" (emphasis supplied), where ProMOS had requested such documents for *all* products with cache memories. Judge Farnan specifically "RESERVED" on whether to sanction Freescale "pending the Court's further review of Defendant's conduct."

Since the October 31 Order, ProMOS has been forced to seek further relief for Freescale's continuing, related discovery misconduct. For example, in his December 20 Order, Judge Farnan ordered Freescale to produce at its expense for a second deposition a Rule 30(b)(6) designee on the specific topics that had been "noticed and explained by Plaintiff at the November 30, 2007 deposition."

REDACTED

We now know that testimony was not accurate, as recent discovery has revealed a significant number of "Freescale Products" that are not on the July 6 list and for which Freescale has not provided discovery. Nonetheless, Freescale continues to refuse to correct or supplement its 30(b)(6) testimony or otherwise to identify what cache-containing products it manufactures and sells.

**Freescale's Failure to Meet Its Discovery Obligations and to Comply with the October 31 Order**

Until last week, we did not understand that Freescale was continuing to withhold from discovery information on many Freescale products simply because they were not specifically listed on the July 6 list, which ProMOS had made clear were exemplary accused products and not a complete list. Nor can Judge Farnan's Orders reasonably be read to limit the "accused products" or Freescale's discovery obligations to the specific products included on ProMOS' July 6 list. Nonetheless, the supplemental interrogatory responses that Freescale served on February 29, 2008 make clear that Freescale has indeed limited its discovery responses to "accused Freescale products identified by ProMOS." Freescale's counsel has confirmed that Freescale's supplemental discovery responses do not provide complete discovery for any products other than those specifically listed by ProMOS, even where Freescale may be aware that it manufactures additional products that are the same in all material respects as the products previously listed by ProMOS.

REDACTED

The Hon. Vincent J. Poppiti, Special Master
March 10, 2008
Page 4

- 

- **REDACTED**

- 

- 

### The Governing Law and Request for Assistance

Not only have Judge Farnan's Orders addressed the issue, but it is also well-settled that, for purposes of discovery, relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." Pitney Bowes, Inc. v. Kern Int'l, Inc., 239 F.R.D. 62, 65 (D. Conn. 2006); Novartis Pharm. Corp. v. Eon Labs Mfg., Inc., 206 F.R.D. 392, 394 (D. Del. 2002). A party must produce in discovery any responsive information that "appears reasonably calculated to lead to the discovery of admissible evidence." Id.; see also Advanced Med. Optics, Inc. v. Alcon Inc., No. Civ. A. 03-1095-KAJ, 2004 WL 1877724, *2 (D. Del. Aug. 18, 2004). "'Reasonably calculated' in Rule 26 means 'any possibility that the information sought may be relevant to the subject matter of the action.'" Pitney Bowes, 239 F.R.D. at 65. Moreover, "[i]n patent cases there is a substantial policy for a 'broad type of discovery and duty of full disclosure' in order to reduce the 'maximum amount of evidence." Ropak Corp. v. Plastican, Inc., No. 04 C 5422, 2006 WL 1005406 (N.D. Ill. Apr. 17, 2006).

For the foregoing reasons, ProMOS requests that the Special Master schedule a hearing on an expedited basis to determine the extent of Freescale's discovery violations with respect to products not specifically listed by ProMOS on the July 6 list and to provide appropriate relief for those violations.

Respectfully submitted,

Steven J. Routh

### Chronology of Procedural History Relating To Current Discovery Dispute

**December 22, 2006**: ProMOS filed its Complaint in this action. Two of the three patents at issue in this case, the '709 patent and the '241 patent (collectively known as the "Chan" patents), involve "cache" memory, a form of high-speed memory that stores frequently-used data so that the CPU can have faster access to it. The parties' discovery disputes have focused primarily on Freescale products accused of infringing the Chan patents.

**April 12, 2007**: ProMOS served its initial interrogatories and document requests seeking basic information about "Freescale Products," which was defined in ProMOS's discovery requests to include "microcontrollers, microprocessors, processors, digital signal processors, controller cores, processor cores and all other components or goods you manufacture or market for sale or sell in any way that use, incorporate, work with or rely on cache memory" and systems or products that incorporate the same. Ex. A, Doc. Requests, page 5. In particular, Interrogatory No. 1 required Freescale to identify all Freescale Products by external and internal product number.

**May 14, 2007**: ProMOS responded to Freescale's interrogatory answers by providing Freescale with specific information regarding its infringement contentions, including a list of approximately 50 exemplary accused products and detailed PowerPoint presentations reading the claims of the patents onto certain representative accused products.

**May 17, 2007**: Freescale served written objections to ProMOS's April 12-served discovery, refusing to identify the Freescale Products or to produce meaningful technical documents relating to any of them unless ProMOS first specifically identified each of the accused products by product number and provided an explanation of ProMOS's infringement contentions for each such accused product. Ex. B. In response to Interrogatory No. 1, Freescale stated:

> In addition to its General Objections, Freescale objects to this interrogatory as premature because ProMOS has not provided Freescale with sufficient information concerning its allegations (*e.g.*, the identity of the accused Freescale products and an explanation of ProMOS's infringement contentions) to permit Freescale to respond with information regarding relevant Freescale products. Freescale objects to this interrogatory as overly broad, unduly burdensome, and seeking information neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence to the extent the term "Freescale Product" is not properly limited to products made, used, offered for sale, or sold within the United States, or imported into the United States, and, with respect to any products accused of infringing the Fortin patent, which did not issue until December 30, 2003, is not properly limited in time.
>
> Without waiving any and subject to all of the foregoing objections, pursuant to Fed.R.Civ.P. 33(d), Freescale will provide non-privileged documents from which ProMOS may ascertain additional information responsive to this interrogatory.

Neither the documents produced by Freescale pursuant to Fed.R.Civ.P. 33(d) nor other discovery provided by Freescale identified "Freescale Products," as requested in ProMOS' initial discovery requests. Instead, during May, June, and into July, Freescale insisted that it would provide discovery only with respect to products that ProMOS specifically identified by product name or number.

**July 3, 2007**: ProMOS served Freescale with a Rule 30(b)(6) notice of deposition seeking testimony regarding (i) the documents relating to, and (ii) the features associated with the cache memories of, all "Freescale Products" as that term was defined in ProMOS's document requests. ProMOS noticed the deposition to obtain discovery on which "Freescale Products" had not previously been identified by

ProMOS, and what documents Freescale maintained relating to all "Freescale Products." Freescale did not produce a witness in response to this notice until November 30, 2007, after Judge Farnan ordered it to do so.

**July 6, 2007**: After months of meet and confers, and with just over one month left before document discovery was scheduled to close on August 15, ProMOS attempted by break the discovery log-jam created by Freescale's conduct by providing Freescale with a preliminary list of approximately 150 products which appeared from to contain relevant cache memories based on the limited information available on Freescale's website. In the cover email attaching the list and in a subsequent motion to compel filed with the Court, ProMOS made clear that the list was "preliminary" and cautioned that "this is not a final list because further discovery may reveal additional Freescale products that infringe." Ex. C.

**July 6, 2007**: ProMOS filed a Motion to Compel with the Court on grounds that Freescale had agreed to produce certain technical documents "on the product families specifically identified in ProMOS's interrogatory answers," but it "has taken the position that it will not produce any technical documents regarding Freescale's other cache memory products until after ProMOS specifically identifies such products and provides claim charts or their equivalent setting forth ProMOS's contentions regarding how those products infringe the cache memory patents." Ex. D at 5-6.

**July 23, 2007**: Based on representations from Freescale's counsel that it would produce technical documents relating to at least the products listed by ProMOS on the July 6, 2007 list, and further that it would produce a Rule 30(b)(6) witness to address the topics contained in the July 3, 2007 notice (i.e., a witness that could identify documents maintained by Freescale for all "Freescale Products"), ProMOS withdrew its motion to compel.

**August 23, 2007**: Freescale's ongoing discovery misconduct, including its continuing failure to produce a Rule 30(b)(6) designee to testify in response to the July 3 Notice, required ProMOS to file another Motion to Compel. In that motion, ProMOS laid out the background of the parties' dispute and asked for an Order compelling Freescale to produce critical technical and damages-related documents on all "Freescale Products," as that term was defined in ProMOS' discovery requests, and to produce a Rule 30(b)(6) witness in response to the July 3, 2007 notice.

**September 10, 2007**: In its Opposition to the Motion to Compel, Freescale asserted that ProMOS's discovery requests were overbroad and "improper because ProMOS made no attempt to confine its expansive definition of 'Freescale Products' to products that could reasonably be considered to potentially be within the scope of the Chan patents" and argued that its discovery obligations were properly limited to products included on the July 6, 2007 preliminary list. Ex. 4 to January 11 submission at 4-5.

**September 14, 2007**: ProMOS filed a Reply on the Motion to Compel in which it asserted that its preliminary July 6 list "did no more than delineate by product number the specific Freescale products that ... ProMOS believed met the definition of 'Freescale Products' spelled out in ProMOS's discovery requests....Because Freescale has more information about its own products than ProMOS, the burden should not fall on ProMOS to identify Freescale products containing cache memories, nor should Freescale be permitted to evade compliance with its discovery obligations until after ProMOS attempts to do so. For these reasons, Freescale's assertion that it was unable to produce technical or financial documents until after July 6, 2007 is flat out wrong." Ex. E at 4-5.

**October 31, 2007**: Judge Farnan issued an Order granting ProMOS's Motion to Compel, finding that "Defendant's responses have been insufficient *with regard to all issues presented by Plaintiff.*" See Ex. 5 to January 11 submission (emphasis supplied). Judge Farnan also ordered Freescale to produce "the requested circuit diagrams" to ProMOS as well as damages-related documents "for the accused products," without restricting his ruling to products specifically listed by ProMOS or any other subset of "Freescale Products." Id.

2

Judge Farnan also ordered Freescale to produce a Rule 30(b)(6) witness on topics relating to documents and features associated with the cache memories in Freescale Products.

**REDACTED**

**REDACTED**

**December 20, 2007**: Judge Farnan issued an Order sanctioning Freescale for its conduct at the November 30 deposition and ordering Freescale to re-produce Mr. Snyder and to pay ProMOS its attorneys' fees and costs for the original deposition and the re-deposition. The Court specifically ordered that the scope of the deposition would be "as noticed and explained by Plaintiff at the November 30 deposition." Ex. 13 to January 11 submission. This further appeared to lay to rest the question whether the scope of the deposition was properly limited to questions about products that had been identified in ProMOS' July 6 list, as Freescale's counsel had asserted at the beginning of the November 30 deposition, or to all "Freescale Products," as set forth in the Notice of Deposition.

**REDACTED**

**REDACTED**

## Other Documents
1:06-cv-00788-JJF Promos Technologies Inc. v. Freescale Semiconductor Inc.
PATENT, PaperDocuments, SPECIALMASTER

### U.S. District Court

### District of Delaware

## Notice of Electronic Filing

The following transaction was entered by Lydon, Tiffany on 3/24/2008 at 8:05 PM EDT and filed on 3/24/2008
**Case Name:**         Promos Technologies Inc. v. Freescale Semiconductor Inc.
**Case Number:**       1:06-cv-788
**Filer:**             Promos Technologies Inc.
**Document Number:** 167

**Docket Text:**
**REDACTED VERSION of [153] Letter by Promos Technologies Inc.. (Attachments: # (1) Exhibit A-G)(Lydon, Tiffany)**

**1:06-cv-788 Notice has been electronically mailed to:**

Steven J. Balick     sbalick@ashby-geddes.com, dfioravanti@ashby-geddes.com, jday@ashby-geddes.com, lmaguire@ashby-geddes.com, mkipp@ashby-geddes.com, nlopez@ashby-geddes.com, rgamory@ashby-geddes.com, tlydon@ashby-geddes.com

John G. Day     jday@ashby-geddes.com, dfioravanti@ashby-geddes.com, dharker@ashby-geddes.com, lmaguire@ashby-geddes.com, mkipp@ashby-geddes.com, nlopez@ashby-geddes.com, rgamory@ashby-geddes.com, sbalick@ashby-geddes.com, tlydon@ashby-geddes.com

Kevin P. Ferguson     kpferguson@jonesday.com

Mary B. Graham     dmyers@mnat.com, mbgefiling@mnat.com

James Walter Parrett , Jr     jparrett@mnat.com

David L. Witcoff     dlwitcoff@jonesday.com, edoehring@jonesday.com

**1:06-cv-788 Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=3/24/2008] [FileNumber=539247-0]
[4194444aafbbdd71040d83b89d0ed9d3614f229d4651670b05101a5a2da5cddd0158
c1a638bb4e73bbf09ae1d325314b9977e8dd9d7fe76302602573acd85502]]
**Document description:** Exhibit A-G
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=3/24/2008] [FileNumber=539247-1]
[9fd94b65b1844c866992458b5702fd4cf81b65541f8e886874a863bb76ee5e21411b
5512f39573d1c8c3fb03d18183fc7124d5ee9119bd7ab493ff83096bb9db]]