IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PROMOS TECHNOLOGIES, INC.,

Plaintiff,

v.

FREESCALE SEMICONDUCTOR, INC.,

Defendant.

C.A. No. 06–788 (JJF)

**REDACTED PUBLIC VERSION**

**FREESCALE'S LETTER TO THE SPECIAL MASTER IN RESPONSE TO PROMOS'S LETTER OF MARCH 10, 2008 ABOUT "FREESCALE'S PRODUCTS"**

# DM4

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Mary B. Graham (#2256)
James W. Parrett, Jr. (#4292)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
302.658.9200
mgraham@mnat.com

*Attorneys for Freescale Semiconductor, Inc.*

OF COUNSEL:

David L. Witcoff
John M. Michalik
JONES DAY
77 West Wacker
Chicago, IL 60601-1692
312.782.3939

James L. Wamsley III
F. Drexel Feeling
Thomas R. Goots
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH 44114-1190
216.586.3939

Dated: March 17, 2008
Redacted Filing Date: March 28, 2008

Dear Judge Poppiti:

Accusing Freescale of a "game-playing approach to discovery," ProMOS's March 10 letter asks for an in-person hearing to "determine the extent of Freescale's discovery violations . . . ." The only game-playing has been by ProMOS. Having agreed to extend fact discovery expressly for the purpose of obtaining Freescale's document production and deposition testimony as to accused products, ProMOS now wants to change the rules after the fact and start all over. The discovery dispute on "Freescale Products" that ProMOS now seeks to raise could have been brought to the Court at any time last year, but ProMOS did not do so. Although ProMOS apparently would rather continue to raise discovery disputes, its complaints have no merit and the time has come for discovery to end.

No reason exists to hold an in-person hearing, because there are no Freescale "discovery violations" to consider. Freescale has complied with Judge Farnan's orders and provided the discovery it was required to provide. Moreover, ProMOS has been fully aware that Freescale was providing discovery for the list of accused products, not for "Freescale Products" as defined by ProMOS. ProMOS's contrary arguments are based on serious misstatements of the record.

ProMOS attempts to excuse its ten-month delay by claiming that Judge Farnan ordered discovery on all "Freescale Products" and that it learned only a week ago that Freescale was not doing so. Both claims are false, as demonstrated below and in the attached rebuttal chronology. Not only has ProMOS known all along that Freescale's production was for the list of accused products, but ProMOS tailored its own discovery demands to those accused products. As ProMOS knows, its August 2007 motion to compel was directed to the accused products, and Freescale's production in response to Judge Farnan's Order was limited to those accused products. ProMOS's December 19 Third 30(b)(6) deposition notice defines "Freescale Products" by means of a list of approximately 150 accused products, rather than by its original facially over-broad definition. (A0318-31) When ProMOS complained to Judge Farnan about the November 30 deposition, its complaints were directed to the failure to provide testimony on the documents pertaining to the "Accused Products." (A0307-08) If it had a further complaint about Freescale's objection to the overbroad "Freescale Products" definition, that was the time to raise it. And when ProMOS noticed (on December 28) the re-deposition of Freescale pursuant to Judge Farnan's Order, that notice used the same narrowed definition of Freescale Products as its December 19 Third Notice. (A0335-41)

ProMOS's 11th hour attempt to broaden discovery is completely unjustified. If ProMOS believed that Freescale's objections to discovery of "Freescale Products" were inappropriate, it should have raised the issue with the Court in a timely fashion.[1] ProMOS was fully informed when it participated in the extensive dialogue with the Special Master regarding the timetable for Freescale to produce documents and witnesses on the accused products. It stipulated to an order extending fact discovery which required Freescale to produce documents for accused products by January 31. (A0372-1–72-2) A second order further extending the deadline was entered on February 15. (A0402-1-02-2) ProMOS's claim that it expected documents on all "Freescale Products" has no basis, and the time for ProMOS to speak up on this issue has long past. Moreover, as demonstrated below, Freescale's objections to this discovery are meritorious.

---

1 For example, Freescale's answer to ProMOS Interrogatory No. 1 remained unchanged from May 17, 2007 until Freescale provided its first supplement on February 29, 2008 with respect to the accused products. ProMOS never sought any relief from Freescale's response.

## BACKGROUND

The present dispute relates to the Chan patents, which are directed to a cache memory apparatus having particular structure and functionality. Cache memory existed long before the Chan patents, as confirmed in their own Figure 4, which is labeled "Prior Art." (A0001) Nonetheless, ProMOS at the outset sought wide-ranging discovery of "Freescale Products," defined by ProMOS as including products made by any person (not just Freescale) that incorporate, use, work with or rely on cache memory, rather than by means of language describing the particular cache structure claimed in the Chan patents (A0002-35):

> The term "Freescale Product(s)" includes: microcontrollers, microprocessors, processors, digital signal processors, controller cores, processor cores and all other components or goods you manufacture or market for sale or sell in any way that use, incorporate, work with or rely on cache memory; systems, components, products and goods that use, incorporate work with or rely on microcontrollers, microprocessors, processors, digital signal processors, controller cores, processor cores or other components or goods that use, incorporate, work with or rely on cache memory . . . .

For a company such as Freescale, which makes and sells thousands of semiconductor products with "brains," *see* www.freescale.com, this definition is overly broad on its face, and Freescale therefore objected to the ProMOS discovery requests, due both to this overbreadth and to the undue burden that they would impose.[2]

ProMOS frequently glosses over its "Freescale Products" definition by arguing that it was simply asking for discovery on Freescale's "cache-containing products." A review of the definition confirms that this argument is both inaccurate and misleading. The definition broadly includes not only products that "incorporate" cache memory, but also those that "work with or rely on" cache memory, and regardless of whether they were made or sold by Freescale. In short, the ProMOS definition is objectionable since it reaches: (1) products that contain no cache memory at all, and could therefore never infringe, as well as (2) products made or sold by someone other than Freescale.

The ProMOS definition suffers not just from this facial overbreadth, but from overbreadth in other respects as well. Even counsel for ProMOS acknowledged in a phone conference on May 23, 2007 that the definition was much broader than the Chan patents. (A0187-90) It includes products that cannot possibly be accused of infringing the Chan patent claims. One such product is a prior art cache memory of the type depicted in Chan Figure 4. (A0001) Another is an instruction cache memory ("i-cache"), which stores only instructions to

[2] Contrary to ProMOS's misrepresentation, Freescale did <u>not</u> insist that "ProMOS must first use publicly available information (e.g., from Freescale's website) to try to list each and every accused Freescale product . . . before Freescale would provide discovery for products so identified." In a May 23, 2007 meet and confer, for example, Freescale asked ProMOS <u>either</u> to narrow its definition of "Freescale Products" to a workable one arguably related to the Chan patent claims <u>or</u> to identify specific accused products. (A0187-90) Then, Freescale even proposed a way in which ProMOS could narrow its definition. (*Id.*) It was ProMOS which chose to provide (on July 6, 2007) a list of accused products as the way to focus discovery rather than narrow its definition.

be executed by a processor. Freescale told ProMOS last July that its i-cache products (including the MSC711x) could not infringe. (A0191-93) After insisting on taking needless discovery on those products, ProMOS has not provided infringement contentions for any of them. ProMOS recently cancelled the deposition on the MSC711x (A0428) and took a needless 20-minute deposition on the DSP56300 core. (A0403-17) This confirms not only the overbreadth of the definition, but the fact that ProMOS is well aware of that overbreadth.

ProMOS has not moved for an order compelling Freescale to supplement its response to any of its "Freescale Products" discovery requests, but Freescale would oppose any such request on two grounds. First, ProMOS has waited far too long to make such a motion. Second, the ProMOS definition of "Freescale Products" is overly broad and the discovery imposes an undue burden on Freescale. The ProMOS requests seek discovery on products, whether or not made or sold by Freescale, which either contain no cache memory at all, or contain a cache memory (like an i-cache) that could never justifiably be accused of infringing the Chan patents. The impact of this definition if Freescale were required to respond to the wide-ranging discovery requests that ProMOS has now identified would be far too burdensome. Freescale has already produced more than 200,000 pages of documents and 3 Gigabytes of electronically stored information (RTL code) with respect to the approximately 150 accused products. The burden of producing those materials alone has been enormous. As indicated in the supporting declarations of Messrs. Anschel, Circello, Nuckolls and Rudin, four of the many Freescale engineers who worked to collect technical documents, almost 2.5 work months were needed to complete the technical document production for only a portion of the accused products. (A0509-16) The total time commitment that Freescale made to collect both technical and damages documents on all the accused products was many times higher still.[3] Yet the accused products represent only about 5% of the more than 7,000 Freescale Product Lines implicated by ProMOS's "Freescale Products" definition. (Decl. of D. Anderson A0507-08) The burden that this discovery would impose would be far too great, and Freescale would be unable to meet it. *See Surles v. Greyhound Lines, Inc.*, 474 F.3d 288, 304-06 (6th Cir. 2007) (affirming district court's refusal to compel documents requested in plaintiff's overly broad and unduly burdensome discovery). Freescale's objections should therefore be sustained.

**JUDGE FARNAN'S ORDERS AND PROMOS'S KNOWLEDGE**

ProMOS attempts to excuse its delay by arguing that Judge Farnan's October 31 Order compelled Freescale to provide discovery of all "Freescale Products." However, ProMOS knows that its motion to compel did not seek such overly broad relief. Nor had ProMOS even demanded that of Freescale in correspondence leading up to the motion. In an August 3, 2007 letter, ProMOS demanded production of RTL code "for all identified products immediately" and complete production of technical documents "for all such products." (A0206-10) The subsequent ProMOS motion was directed explicitly to "circuit diagrams" and "RTL documentation" "showing the design . . . of each of the products accused of infringement, as well as long overdue damages-related documents." (A0216-47) The very title of the motion confirmed that it sought to compel Freescale "To Produce Technical And Damages-Related Documents Relating To Accused Products." *Id*. ProMOS attached a copy of its July 6, 2007 list

[3] Because at least 67 people at Freescale worked on the worldwide document collection effort, Freescale is unable to provide a declaration from anyone with personal knowledge of the total time that has been required.

of accused products as Exhibit D to that motion. *Id*. And its Reply Brief explicitly equated the accused products identified on that list with its "Freescale Products" definition, stating that the "scope of products covered by the July 6, 2007 list was no more - and no less - than the scope of products covered by the definition of Freescale Products in ProMOS's mid-April document requests." (A0248-66) In short, ProMOS's assertion that its motion sought discovery on "all [Freescale] cache-containing products" (a formulation which itself is far narrower than the ProMOS definition of "Freescale Products") has no merit.

ProMOS's misstatements do not end there, however. ProMOS further asserts that in granting its motion to compel production of documents relating to accused products, Judge Farnan intended that his Order (A0267-68) reach unknown products that have never been identified as "accused products." The very suggestion that a court order relating to "accused products" was intended to include products that had not been accused is specious. Judge Farnan surely did not so intend, since in other decisions he has been unwilling to compel discovery for products not alleged to infringe. *Novartis Pharms Corp. v. Eon Labs. Mfg., Inc.*, 206 F.R.D. 392, 393-94 (D. Del. 2002) (Judge Farnan denied on relevance grounds plaintiff's motion to compel discovery as to pharmaceutical products plaintiff had not alleged to infringe).

The subsequent record only confirms that ProMOS's arguments here are an attempt to rewrite history. Neither ProMOS nor Freescale understood Judge Farnan's Order to compel Freescale to produce technical or damages information for anything other than the accused products identified by ProMOS. After Judge Farnan's Order, Freescale produced RTL code for products on the accused product list, but not for any others. ProMOS was of course aware of the scope of that production. It not only raised no objection, but later advised Judge Farnan that it did not seek further court assistance on that subject. (A0307-08)

The record further demonstrates that ProMOS knew all along that the damages-related information being provided by Freescale was limited to the list of accused products. On December 6, 2007, ProMOS deposed Karen Rapp on certain schedules showing Freescale revenues and output. Ms. Rapp clearly testified that Freescale had compiled the information requested based on ProMOS's list of accused products rather than all products that contain cache memory. (Rapp. Tr. 116:10-117:2; 120:12-121:22; 155:15-156:19, A0291-306) ProMOS raised no complaint on this subject. Still more damages-related testimony was provided by Dave Holody regarding the preparation of a master list identifying the accused products. Mr. Holody testified on February 7 that this master list was generated based on the ProMOS list of accused products. (Holody Tr. 24:15-26:18, A0377-02) Again, ProMOS did not complain.

ProMOS's arguments about the Snyder 30(b)(6) deposition and Judge Farnan's December 20 Order are equally without merit. ProMOS was put on notice both by prior written objections (A0269-75) and a statement by Freescale at the outset of the deposition that the witness would testify as to the Freescale products identified in ProMOS's list of accused products. (11/30 Snyder Tr. 3:2-4:3, A0276-77) While ProMOS complained to the Court about other aspects of this deposition testimony, it once again raised no complaint about this limitation in either its December 7 e-mail (A0307-08) or its oral argument presentation to Judge Farnan. (12/13 Tr. 107-48, A0309-17) Both the e-mail and the oral argument confirm that the ProMOS complaints were focused instead on testimony relating to the accused products. In neither did ProMOS raise any issue about Freescale's objections to the definition of "Freescale Products." Furthermore, when ProMOS thereafter noticed the re-deposition pursuant to the Court's December 20 Order, it abandoned its original definition in favor of one that defines "Freescale

Products" by reference to an attached list of Freescale products. (A0335-41) Thus, Judge Farnan did not resolve Freescale's objection as to the definition of "Freescale Products," since that issue was never presented to him. In addition, ProMOS itself backed away from its prior definition for the re-deposition that Judge Farnan ordered. (*Id.*) Freescale also served objections prior to the re-deposition reasserting its position. (A0347-52) ProMOS's argument that Freescale's witness gave inaccurate testimony regarding "Freescale Products" at the January 9 deposition omits these crucial facts.

## THE RECENT CHAN-RELATED DEPOSITIONS

ProMOS's final attempt to justify its unreasonable delay in raising this issue is grounded on its claim that it "learned of the existence of a number of additional products" at "recent Chan-related depositions." ProMOS attempts to buttress this claim with five separate bullet points referencing depositions the previous week. As demonstrated below and in more detail in Freescale's accompanying chronology, this argument is so plainly false as to demonstrate ProMOS's bad faith in bringing this request.

In each of its first four bullet points, ProMOS claims that it learned of certain products through testimony at depositions on March 4, 5 and 6. However, the transcripts of those depositions reveal that this claim is false. The products in question were already known to ProMOS, because it was counsel for ProMOS who first identified them to the witnesses and introduced them into the deposition, frequently by using documents which had been either produced by Freescale in discovery or printed from the Freescale public website. (*See* Tr. cites in Chronology at 9-10, A0418-27; A0429-500; A0501-06) Moreover, while ProMOS argues in its second bullet point that it learned at a March 5 deposition [redacted] (A0036-47) And in its third bullet point, ProMOS suggests that it learned of an i.MX35 product at a March 6 deposition, but the transcript reveals that no such product came up at any time during that deposition. (A0501-06)

In its fourth bullet point, ProMOS claims that it "recently has discovered that Freescale sells a number of 'evaluation boards'" without citing anything. In reality, ProMOS has long been aware of Freescale evaluation boards generally because its counsel inquired about them at least as early as in a January 24 deposition. (A0373-76)

ProMOS's fifth and final bullet point claims that Freescale refused to provide a list of products or a witness to testify about the SC140 core. The RTL code for the SC140 (more accurately, the SC140e) core was produced four months ago, on November 19, 2007. It is not listed on any list of accused products, and indeed is not even listed as one of the "Freescale Products" within the scope of the ProMOS Third 30(b)(6) notice. Freescale cannot be faulted for not providing a witness to testify about a product that ProMOS did not ask about.

## CONCLUSION

ProMOS's March 10 and 14 letters have no merit and no hearing is needed. Freescale has consistently objected to ProMOS's "Freescale Products" discovery as overly broad and unduly burdensome for almost a year. Knowing that its position was weak, ProMOS elected to shift tactics and seek discovery on a list of accused products rather than unsuccessfully move to compel discovery on a large number of irrelevant products that were not (and could not be) accused to infringe. *E.g., Novartis*, 206 F.R.D. at 393-94; *Caliper Tech. Corp. v. Molecular*

*Devices Corp.*, 213 F.R.D. 555, 558 (N.D. Cal. 2003). ProMOS's August and December 2007 motions each sought discovery on the accused products, not on "Freescale Products," and its subsequent 30(b)(6) deposition notices abandoned its original overbroad definition of that term. Moreover, ProMOS agreed to the fact discovery extension ordered by the Special Master, knowing full well that it contemplated discovery on just the accused Freescale products that ProMOS had identified. Now that this discovery is coming to end, ProMOS tries to argue that the very discovery to which it had agreed was insufficient. That argument has no merit and should be rejected.

    Respectfully,

    */s/ Mary B. Graham*

    Mary B. Graham (#2256)

MBG/dam

cc:    John G. Day, Esquire (by e-mail and hand delivery)
        Steven J. Routh, Esquire (by e-mail)
        Susan Cook, Esquire (by e-mail)
        James L. Wamsley, Esquire (by e-mail)
        David L. Witcoff, Esquire (by e-mail)

2138038

# EXHIBIT A

REDACTED PUBLIC VERSION

# FREESCALE'S REBUTTAL CHRONOLOGY[1]

**April 12, 2007** (A0002–35) ProMOS served its first set of document requests and interrogatories on Freescale. The scope of the discovery requests was overly broad, because ProMOS defined "Freescale Products" as products that "use, incorporate, work with or rely on cache memory":

> 18. The term "Freescale Product(s)" includes: microcontrollers, microprocessors, processors, digital signal processors, controller cores, processor cores and all other components or goods you manufacture or market for sale or sell in any way that use, incorporate, work with or rely on cache memory; systems, components, products and goods that use, incorporate work with or rely on microcontrollers, microprocessors, processors, digital signal processors, controller cores, processor cores or other components or goods that use, incorporate, work with or rely on cache memory; . . .

Using that definition, ProMOS's first set of requests would have required Freescale to produce literally every document in its possession regarding nearly every product it produced.

**May 14, 2007** (A0036–47) In response to Freescale's interrogatories, ProMOS provided infringement contentions for just four different product families – two families for each of two different patents – though it alleged that approximately 50 products infringed. (Response of ProMOS to Freescale's First Set of Interrogatories Nos. 1-17.) ProMOS refused to provide infringement contentions for other products, even though it clearly could have done so and even though it had been nearly five months since it filed the lawsuit accusing Freescale of infringement. Additionally, in response to Interrogatory No. 3,

**May 17, 2007** (A0048–51) In its formal responses to ProMOS's first written discovery, Freescale objected to the scope of ProMOS's document requests and interrogatories on the grounds that they were overly broad and unduly burdensome. (Freescale's Response to ProMOS's First Set of Requests for Production of Documents and Things from Freescale (Nos. 1-117) and Freescale's Response to ProMOS's First Set of Interrogatories to Freescale (Nos. 1-14).)

* **May 23, 2007** The parties had a conference call to discuss their positions regarding the over breadth of ProMOS's requests. Freescale asked that ProMOS either (1) narrow its definition of "Freescale Products" to something arguably related to the Chan patents or (2) specifically identify products it believed infringed. Freescale confirmed in a July 10 letter that ProMOS acknowledged during the phone conference that its definition of Freescale Products was much broader than the Chan patents. ProMOS agreed to review the information publicly available on the Freescale website for the purpose of making additional infringement contentions and to reconsider its definition of "Freescale Products."

---

[1] Items marked with an asterisk were not disclosed in the Chronology attached to ProMOS's March 10, 2008 letter to the Special Master.

* **June 25, 2007** (A0152–59) Contrary to the position it took in the May 23 conference call a month earlier, ProMOS sent a letter in which it merely reiterated its overbroad discovery demands without making any effort to clarify the scope of its request for documents. (Letter from Mr. Jensen to Mr. Ferguson, dated June 25, 2007.)

**July 5, 2007** (A0160–66) ProMOS served its First Notice of 30(b)(6) Deposition, to which Freescale later objected, in part due to over breadth of the definition of Freescale Products. (*See* November 28, 2007 entry below; ProMOS's Notice of Deposition Pursuant to Rule 30(b)(6).) ProMOS later withdrew this Notice and served a Second Notice with a different date. (*See* November 28, 2007 entry below.)

**July 6, 2007** (A0167–86) ProMOS filed a Motion to Compel the production of documents. Attached to ProMOS's motion, for the first time, was a list of over 140 products for which it now sought critical technical information. (ProMOS Motion to Compel Freescale to Produce Technical Documents Describing Certain Products Accused of Infringement, dated July 6, 2007 and Exhibit E thereto.) Despite months of Freescale requesting such a list, ProMOS provided this list just hours before filing the Motion to Compel to which it was attached as Exhibit E. Freescale viewed ProMOS's narrowing of the scope of the discovery it sought as a positive step and it was precisely what Freescale had requested almost two months earlier. ProMOS's decision to provide a list of accused products was one of two alternatives that Freescale had been seeking all along.

ProMOS would later withdraw the motion to compel and re-file it in August. Both motions had similar titles, that included the term "accused products," indicating that both were thus limited to only those products.

* **July 10, 2007** (A0187–90) By letter to correct misstatements in ProMOS's motion, Freescale reiterated its position regarding the scope of discovery:

> Freescale's position is basic. ProMOS is seeking document discovery that is exceptionally broad and burdensome, both in terms of the scope of products and the breadth of documents related to those products. Freescale's position from the outset has been that there needs to be a narrowing in both scope and breadth of that discovery. ProMOS has not seriously disputed that its requests are overbroad, and indeed its motion effectively acknowledges as much.

Freescale also reiterated its position regarding the options available to ProMOS with respect to the over broad definition of Freescale Products: "Freescale asked ProMOS to either: (1) narrow its definition of 'Freescale Products' to some workable definition even arguably related to the Chan patents' claims, … or (2) specifically identify products that ProMOS believes infringe the Chan patents." ProMOS chose the latter.

Freescale's counsel noted in that same letter that ProMOS had changed its position on the scope of discovery when ProMOS filed its motion to compel. Based on the fact it had now specifically identified over 140 products for which ProMOS sought critical technical information, Freescale requested that ProMOS withdraw its Motion to Compel. (Letter from Mr. Ferguson to Mr. Jensen, dated July 10, 2007.)

* **July 16, 2007** (A0191–93) Freescale requested that ProMOS remove from its list of accused products those products that could not infringe the Chan patents under any reasonable interpretation of the claims. For example, Freescale's i-cache (instruction cache) products (including the MSC711x products) fall squarely within the ProMOS definition of "Freescale Products" but cannot infringe. Freescale went on to state that the burden and expense of discovery related to these types of products were unreasonable. (Letter from Mr. Ferguson to Ms. Cook, dated July 16, 2007.) After forcing Freescale to incur the time and expenses to collect and produce documents and RTL code and to schedule a deposition, ProMOS did not accuse the MSC711x products of infringement.

* **July 17, 2007** (A0194–96) ProMOS responded to Freescale's July 16, 2007 letter. ProMOS stated that "[i]n an effort to narrow the issues in dispute, [ProMOS] has provided [Freescale] with a preliminary list of accused Freescale products based on publicly available information." ProMOS noted that, it "may be that ProMOS will expand or restrict this preliminary list following receipt of the critical documents that [ProMOS is] seeking in discovery." In closing, ProMOS asked Freescale "to agree to [] produce critical documents (including meaningful circuit diagrams, if available, and/or RTL documentation) relating to all of the products identified on [ProMOS's] July 6, 2007 list, as corrected in [ProMOS's] July 12, 2007 letter." In sum, ProMOS was not seeking "critical documents" for anything other than the products accused of infringement. (Letter from Ms. Cook to Mr. Ferguson, dated July 17, 2007.)

ProMOS also set forth its position on the scope of the First Notice of 30(b)(6) Deposition, as being "general in nature and will be designed to provide basic information regarding the documents Freescale maintains with respect to cache memory design and the organization of those documents." ProMOS sought the deposition so that it "can understand what documents are available and what documents are being produced with respect to those features."

* **July 18, 2007** (A0197–200) Freescale requested that ProMOS narrow the scope of its July 5, 30(b)(6) notice, because ProMOS was:

> still seeking testimony about all "Freescale Products," defined by ProMOS as any product of Freescale that involves a cache memory in any way, without regard to what the Chan patents actually cover. There is no reasonable way that ProMOS can possibly say that Chan covers all uses of a cache memory. Saying that the questioning will be "general" does not help to address either the over breadth or lack of particularity of the notice.

(Letter from Mr. Feeling to Ms. Cook, dated July 18, 2007.)

* **July 20, 2007** During a meet-and-confer telephone conference, Freescale reiterated that it would provide the critical documents for the list of 140 products. ProMOS withdrew its motion to compel a few days later on July 23. ProMOS claims in its Chronology that it withdrew its Motion to Compel based on Freescale's agreement to produce a witness to testify in response to the First 30(b)(6) Notice, but ProMOS fails to provide the Court with the history of the meet-and-confer regarding the scope of that deposition.

* **<u>August 3, 2007</u>** (A0203–205) In a letter describing ProMOS's reasons for withdrawing its motion to compel, ProMOS listed its complaints with Freescale's document production efforts. At that time ProMOS sought discovery only with respect to the "identified products." ProMOS stated:

> As you know, the sole basis upon which ProMOS agreed to withdraw its motion to compel on July 23, 2007 was your express representations during our July 20, 2007 conference call that Freescale would produce the requested critical technical documents (including RTL code) by August 3, 2007, and if there were any documents that could not be produced by August 3rd, they would be produced by August 10, 2007.
>
> . . .
>
> Accordingly, **we insist that you commence producing RTL documentation <u>for all identified products</u> immediately, and that you complete production of all technical documents (including RTL code) <u>for all such products</u>** by the close of business on August 10, 2007, as promised during the July 20, 2007 call.

ProMOS did not request production of documents related to <u>all</u> Freescale Products, as it now asserts, only "identified products." (Letter from Ms. Cook to Mr. Feeling, dated August 3, 2007) (emphasis added)

**<u>August 3, 2007</u>** (A0206–10) ProMOS served a Second Rule 30(b)(6) Notice. (ProMOS's Second Notice of Deposition Pursuant to Rule 30(b)(6).) Freescale later objected to the scope of this notice as overbroad, citing an agreement between the parties regarding the scope. For example, in objecting to topic no. 1 Freescale stated: "Freescale objects to this topic to the extent it is not limited in scope to the Freescale products identified in Exhibit E to ProMOS's first Motion to Compel. Freescale also specifically objects to this topic because it is overly broad and lacks reasonable particularity with respect to any parameters reasonably related to the claims of the Chan patents." (*See* November 28 entry below.)

* **<u>August 7, 2007</u>** (A0211–15) Freescale confirmed an agreement between the parties regarding the scope of the 30(b)(6) Notice. In that letter, Freescale stated as follows:

> Regarding the 30(b)(6) notice, the parties agreed during the call that the product scope would be limited to the products identified in Exhibit E to ProMOS' motion to compel . . .

(Letter from Mr. Feeling to Ms. Cook, dated August 7, 2007.)

**<u>August 23, 2007</u>** (A0216–47) ProMOS filed a motion to compel production of technical and documents "relating to the accused products" and seeking to compel Freescale to produce a witness in Wilmington, Delaware.[2] ProMOS did not move to compel a response to Interrogatory No. 1, or otherwise ask the Court to rule on Freescale's objections to ProMOS's overbroad

2 Freescale had previously agreed to produce the witness in Austin. The dispute between the parties focused on the site for the deposition, not whether a witness would be produced.

definition of "Freescale Products." Its motion to compel was explicitly directed to documents relating to the accused products. Indeed the very title of the motion is evidence of this fact - "Plaintiff ProMOS Technologies, Inc.'s Motion to Compel Defendant Freescale Semiconductor, Inc. to Produce Technical and Damages-Related Documents Relating to **Accused Products** and to Appear for Document-Related Deposition." (emphasis added)

**September 14, 2007** (A0248–66) ProMOS filed a Reply in Support of its Motion to Compel. In its Reply ProMOS, once again, did not ask the Court to rule on Freescale's objection to ProMOS's overbroad definition of "Freescale Products" or seek supplementation of Interrogatory No. 1 or technical information regarding products other than those it had previously listed. ProMOS explicitly equated the accused products identified on that list with its "Freescale Products" definition, stating that the "scope of products covered by the July 6, 2007 list was no more – and no less – than the scope of products covered by the definition of Freescale Products in ProMOS's mid-April document requests." In short, ProMOS's assertion that its motion sought discovery on "all [Freescale] cache-containing products" (a formulation which itself is far narrower than the ProMOS definition of "Freescale Products") has no merit. (ProMOS' Reply Brief in Support of Its Motion to Compel.)

**October 31, 2007** (A0267–68) Judge Farnan issued an Order granting ProMOS's motion to compel production of technical and damages documents relating to accused products, in addition to compelling production of a Freescale 30(b)(6) witness in Delaware. Judge Farnan did not order, because ProMOS never requested it, production of documents for products not accused of infringement. He simply ordered production of circuit diagrams and RTL code "for the products accused of infringement." He did not, as ProMOS now asserts, intend that his Order reach unknown products that have never been identified as "accused products." (Order, dated October 31, 2007)

* **November 19, 2007** Freescale produced RTL for the SC140e core.

* **November 28, 2007** (A0269–75) Freescale served its objections to ProMOS's First and Second 30(b)(6) Notices. Freescale objected once more to the over breadth and inquiries about products not accused of infringement. (Freescale's Objections to ProMOS's Second Notice of Deposition Pursuant to Rule 30(b)(6).) In its Objections, Freescale set forth the agreement between the parties related to the scope of the deposition. As noted in the Objections, the agreement was reached after a meet-and-confer and confer held by the parties. Freescale specifically objected to the scope of the topics "to the extent it is not limited in scope to the Freescale products identified in Exhibit E to ProMOS's first Motion to Compel." ProMOS never responded to, or complained about, these objections, let alone ask the Court to rule on this objection.

* **November 30, 2007** (A0276–77-1) At the deposition of Freescale's 30(b)(6) witness on document-related topics, Freescale stated for the record the agreement reached by the parties as to the scope of the deposition:

> After several other discussions in the July 20 meet and confer involving Drexel Feeling, myself, David Witcoff and Mary Graham for Freescale, and Steve Routh, Susan Cook and Sten Jensen for ProMOS, ProMOS clarified and agreed that the

> deposition [scope, number one,] would be limited to the identification of documents; two, would not be used to address the technical details of Freescale's products, and in particular would not be used as a back door vehicle to address technical details at the level of the Chan patents claims; and three, would be limited to the types of documentation Freescale has generated for the cache-related sections of the Freescale products identified in Exhibit E to ProMOS' first motion to compel.

Though ProMOS attempted to repudiate the agreement, it did not challenge Freescale's continuing objection to the definition of "Freescale Products."

* **<u>December 6, 2007</u>** (A0291–306) During the 30(b)(6) deposition of a Freescale employee on damages issues, Freescale's witness testified that the starting point for the damages schedules Freescale had generated was ProMOS's list of accused products. The witness was also asked to describe how Freescale correlated the marketing codes (the products on ProMOS's list) and the internal product codes. ProMOS was on notice and understood that Freescale was using ProMOS's list of accused products to generate sales and revenue information, and was not providing damages information on any other products. (*See* Rapp Dep. Tr. and Exh. 7.)

* **<u>December 7, 2007</u>** (A0307– 08) ProMOS informed the Court of a discovery dispute between the parties regarding the November 30 Rule 30(b)(6) deposition. (E-mail communication from Mr. Day to The Hon. Joseph J. Farnan, Jr., dated December 7, 2007.) ProMOS stated that "the purpose of this Rule 30(b)(6) deposition was to obtain sworn testimony regarding the types of technical documents that Freescale maintains on the designs of the Accused Products." ProMOS did not use the term "Freescale Products" and never told the Court that there was any disagreement with Freescale's objection to the overbreadth of ProMOS's "Freescale Products" definition or even intimate in any way that a dispute existed between the parties over that term. Indeed, ProMOS did not seek any relief from the Court related to supplementation of discovery to include products other than "Accused Products." The Court heard the dispute on December 13, 2007.

* **<u>December 13, 2007</u>** (A0309–17) In the discovery dispute raised in Mr. Day's December 7, 2007 e-mail, ProMOS stated to the Court that it sought relief only with respect to "Freescale products that are accused." Specifically, ProMOS stated as follows:

> we want the Court to grand [sic] us an Order producing a witness who is prepared to testify completely on what documentation exists.
>
> . . .
>
> an absolute Order that if there's documentation relating to the technical design of the **<u>Freescale products that are accused</u>**, that we receive that without any further delay.

(Hearing Tr., December 13, 2007 at 113:21–114:5) (emphasis added). ProMOS never asked the Court for relief on any issue related to "Freescale Products."

* **<u>December 19, 2007</u>** (A0318–31) ProMOS served its Third Notice of Rule 30(b)(6) Deposition relating to the products accused under the Chan patents. In the notice ProMOS

defined "Freescale Products" by means of a list of approximately 150 accused products, rather than by its original overly broad definition.

**December 20, 2007** (A0332–34) Judge Farnan ordered the re-deposition of a Freescale witness – the document-related deposition. The Order states that "the topics of the second deposition will be as noticed and explained by [ProMOS] at the November 30 deposition" and the December 13, 2007 hearing. At that hearing, ProMOS's counsel specifically asked for a witness to testify about what documents existed for the accused products. (*See* December 13, 2007 entry above.)

* **December 28, 2007** (A0335–41) ProMOS noticed the re-deposition of Freescale pursuant to Judge Farnan's Order. That notice abandoned the original definition of "Freescale Products" and instead used the same definition and same list of accused products as in its December 19, 2007, Third Notice.

* **January 4, 2008** (A0342–46) In a letter, ProMOS requested a more complete correlation of marketing codes to internal product codes, discussed during the December 6 deposition. (Letter from Ms. Cook to Mr. Agozzino, dated January 4, 2008.) The list of marketing codes identified by ProMOS in that letter is the same as Exhibit 1 to ProMOS's Third Notice of 30(b)(6) deposition. Once again, ProMOS understood that both parties were relying on ProMOS's list to generate responses to discovery.

* **January 8, 2008** (A0347–52) Freescale served objections to a ProMOS Notice of Re-deposition. (Freescale's Objections to ProMOS's Notice of Redeposition Pursuant to Rule 30(b)(6).) (*See* further description in January 9 entry below.)

**January 9, 2008** ProMOS took the deposition of a Freescale 30(b)(6) designee on the issue of technical documents. The deposition was taken subject to the Freescale written Objections served on January 8, 2008, which also incorporated by reference the Objections served in response to ProMOS's original Notice of Deposition. In its January 8 Objections, Freescale continued to object to any inquiry regarding products not accused of infringement. Specifically, Freescale objected to each request "to the extent it is not limited in scope to the Freescale products at issue in the litigation." Once again, ProMOS never complained or responded to these objections, nor did they ever raise them with Judge Farnan or the Special Master.

The deposition was merely a records-type deposition, as requested at the hearing by ProMOS's counsel. ProMOS had already served its Third 30(b)(6) Notice on December 19, 2007, by which it sought testimony on technical subjects relating to the accused products.

* **January 11, 2008** (A0353–59) In a letter to the Special Master, ProMOS stated that Judge Farnan's October 31 Order "compel[ed] Freescale to produce complete 'RTL documentation' as well as circuit diagrams and a 30(b)(6) deponent on technical documents." Never in its letter to the Special Master did ProMOS argue that it was entitled to documents or discovery regarding products not accused of infringement. Indeed, ProMOS acknowledged that it had "accused approximately 150 Freescale products of infringing the Chan patents." (Letter from Mr. Routh to The Hon. Vincent J. Poppiti, dated January 11, 2008.)

* **<u>January 16, 2008</u>** (A0360–69) In an e-mail to the Special Master, ProMOS never addressed or raised the issue of the Freescale's over breadth objection. Attached to the e-mail is a string of additional e-mails containing communications between the parties. Although that string of e-mails contains a fulsome discussion of the remaining disputes between the parties regarding document production, ProMOS never requested any documentation related to products not accused of infringement; nor did it request supplementation of Interrogatory No. 1. Moreover, once again, ProMOS did not ask the Special Master to rule on Freescale's consistent objection to the overbreadth of ProMOS's "Freescale Products" definition. (e-mail from Mr. Day to The Hon. Vincent J. Poppiti, dated January 16, 2008.)

* **<u>January 17, 2008</u>** (A0370–72) The parties participated in a telephonic conference with the Special Master. During that conference, counsel for Freescale expressed its need to prevent further discovery disputes.

> Freescale wants to avoid any further discovery disputes and simply produce the expanded scope of the types of documents that we now understand that ProMOS wants and claims that it needs on both a core basis and on a product-level basis.

Freescale's counsel specifically delineated the scope of discovery that it understood was needed to resolve the remaining disputes between the parties. The delineated scope was captured in the Court's January 24, 2008 Order.

* **<u>January 24, 2008</u>** (A0372–1–72-2) The Court entered a stipulated Order extending the discovery deadline and delineating the documents that Freescale was required to produce certain technical documents related to the "**products accused of infringement.**" (Order, dated January 24, 2008)

* **<u>January 24, 2008</u>** (A0373–76) ProMOS took the deposition of a Freescale 30(b)(6) deponent and asked questions about Freescale evaluation boards, even though it now claims in its March 10 letter to have just learned about these types of boards. (Nash Dep. Tr.)

* **<u>January 25, 2008</u>** Freescale produced a master list of accused products that matches the marketing designations contained in ProMOS's list of accused products to Freescale's internal product codes. (*See* References to December 6 and January 4 entries above.) In fact, Freescale's list has a column that references Exhibit E, an exhibit listing accused products originally attached to ProMOS's motion to compel. (*See* July 6, 2007 entry above.) This master list was subsequently marked as an exhibit during the deposition of a 30(b)(6) witness on damage issue. (*See* February 7 entry below.)

* **<u>February 7, 2008</u>** (A0377–402) A Freescale 30(b)(6) witness on damages issues testified about how the master list was generated and that the list was based on the ProMOS's list that was provided to him by Freescale's counsel. (*See* December 6, January 4 and January 25 entries above.) Once more, ProMOS was on notice that Freescale's responses were limited to the accused products identified on ProMOS's list.

* **<u>February 15, 2008</u>** (A0402–1–402-3) The Special Master signed a stipulated order extending the discovery deadline. Freescale was ordered to continue its production of technical documents "relating to accused products and cores" described in the Court's January 24 Order.

* **February 20, 2008** (A0403–17) Freescale produced a witness to testify regarding the accused DSP56300 core and accused products incorporating that core. These products contained no cache memory. ProMOS's counsel asked only a handful of questions. The deposition lasted only 16 minutes and was a waste of time. All of the answers obtained in the deposition were apparent from documents produced by Freescale in July and August, or from publicly available documents.

**March 4, 2008** (A0418–27) ProMOS claims that in a March 4 deposition it "learned of the previously unknown products which incorporate the e300" core. ProMOS then listed fifteen products it asserts were "previously unknown." A review of the deposition transcript reveals two things: (1) in each instance the products at issue were first raised by ProMOS's counsel, not the witness, confirming ProMOS's counsel **knew** of the "previously unknown" products before it questioned the witness;[3] and (2) ProMOS's counsel learned of these products using either documents produced by Freescale in discovery, or from some publicly available source.[4] (Hui Rough Dep. Tr.) ProMOS also accuses Freescale of "shield[ing] the non-E versions of many of the accused products from discovery." ProMOS, however, was well-aware that many different Freescale products have a version with an encryption engine (an E version) and a version without an encryption engine. Indeed, ProMOS's list of accused products contains many products for which both the E and non-E versions are listed. (*See* Exh. 1 to ProMOS's Third Notice of 30(b)(6) Deposition.)

* **March 5, 2008** (A0428) ProMOS cancelled the deposition of the Freescale witness prepared to testify about the MSC711x products. (e-mail from Ms. Cook to Mr. Goots, dated March 5, 2008.)

**March 5, 2008** (A0429–500) ProMOS asserts that in a March 5 deposition it first "learned of" products that contain the accused Coldfire core. (Nuckolls Rough Dep. Tr.) Once again, it was ProMOS's counsel who first introduced the subject matter of these "newly discovered" products using either documents from Freescale's website, or documents Freescale produced in discovery.[5]

---

3 *See* Hui Rough Dep. Tr. at 8:6-14 (MPC8311), 30:18-31:10 (MPC8311E), 8:18-9:3 (MPC8314), 9:4-10 (MPC8314E), 9:11-19 (MPC8315), 9:20-10:6 (MPC8315E), 11:15-12:1 (MPC8343), 12:8-16 (MPC8347), 13:1-9 (MPC8349), 13:17-22 (MPC8358), 14:13-17 (MPC8360), 15:6-10 (MPC8377), 15:15-19 (MPC8377E), 15:20-16-2 (MPC8378) and 16:6-11 (MPC8378E).

4 *See* Hui Dep. Exh. 4 a "Market Requirements" document for the MPC8311, produced by Freescale during discovery.

5 *See* Nuckolls Rough Dep. Tr. at 26:21-27:3 (MCF53721), 24:18-21 (MCF53721CVM240), 24:13-21 (MCF53281), 25:5-16 (MCF53281CVM240), 6:4-7 (MCF5461), 6:12-17 (MCF5470), 9:17-19 (MCF54450), 9:20-23 (MCF54451), 9:24-10:3 (MCF54453), 10:4-6 (MCF54454), 10:7-9 (MCF54455), 6:15-17 (MCF54870), 6:18-19 (MCF54871), 7:2-5 (MCF54872), 7:6-10 (MCF54873), 7:24-8:1 (MCF54874), 8:3-8 (MCF54875) and Nuckolls Exhs. 6, 7 and 8, which were un-Bates numbered documents, apparently pulled from the Freescale website (Exhs. 7 and 8), or a document Freescale produced in discovery (Exh. 6).

Amazingly, ProMOS includes the MCF54450, MCF54451, MCF54452, MCF54453, MCF54454, and MCF54455 products in the list of products that it asserts it first learned of during this deposition. It was ProMOS's counsel that introduced the subject of these products, Indeed, it could not have been from Freescale that ProMOS learned of these products, because the Freescale witness stated that he was unaware of these products.[6] (A0434–35)

Based on that same deposition there is an allegation that [redacted] (*See* ProMOS's Response to Freescale's First Set of Interrogatories, dated May 14, 2007.) ProMOS's claim that it first learned of these products in the March 5 deposition is without basis.

**<u>March 6, 2008</u>** (A0501–06) ProMOS asserts that in a deposition on March 6, it "learned that Freescale sells at least three <u>previously unidentified products</u> that use the accused ARM cores." (Branson Rough Dep. Tr.) What ProMOS fails to tell the Court is that its counsel, not the witness, was the person who first raised these products in the deposition.[7] And, once again, ProMOS's counsel used documents from Freescale's website, or documents Freescale produced in discovery, as a means for introducing these products.[8] One of the products that ProMOS listed as having just learned of, the i.MX35, was not even mentioned at the deposition.

2140039

6 There appears to be a typographical error in the rough transcript. On the cited pages the transcript lists products MCF5450, MCF5451, MCF5452, MCF5453, MCF5454, and MCF5455. ProMOS's counsel actually asked questions about products MCF54450, MCF54451, MCF54452, MCF54453, MCF54454, and MCF54455, which are referred to in ProMOS's March 10 letter.

7 *See* Branson Rough Dep. Tr. at 27:17-28:2 (i.MX31+), 29:15-22 (i.MX32), 28:5-10 (i.MX33) and 25:25-26:16 (i.MX31ADS).

8 *See* Branson Dep. Exhs. 6, 7 and 8.

**CERTIFICATE OF SERVICE**

I hereby certify that on March 28, 2008, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to the following:

John G. Day, Esquire
Steven J. Balick, Esquire
ASHBY & GEDDES

Additionally, I hereby certify that true and correct copies of the foregoing were caused to be served on March 28, 2008 on the following individuals in the manner indicated:

**BY E-MAIL**

John G. Day, Esquire
Steven J. Balick, Esquire
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
Wilmington, DE 19899

**jday@ashby-geddes.com**
**sbalick@ashby-geddes.com**

Sten A. Jensen, Esquire
HOGAN & HARTSON LLP
555 Thirteenth Street, NW
Washington, DC 20004

**sajensen@hhlaw.com**

**BY E-MAIL**

Steven J. Routh, Esquire
HOGAN & HARTSON LLP
**sjrouth@hhlaw.com**

William H. Wright, Esquire
HOGAN & HARTSON LLP
**whwright@hhlaw.com**

William C. Gooding, Esquire
GOODING & CRITTENDEN, L.L.P.
**billgooding@gooding-crittenden.com**

*/s/ James W. Parrett, Jr.*

James W. Parrett, Jr. (#4292)