IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PROMOS TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-788 (JJF) |
| | ) | |
| FREESCALE SEMICONDUCTOR, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**FREESCALE'S MAY 13, 2008 LETTER TO SPECIAL MASTER SEEKING TO
COMPEL PROMOS TO RESPOND TO INTERROGATORY NO. 30**

# DM ___

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Mary B. Graham (#2256)
James W. Parrett, Jr. (#4292)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
302.658.9200
mgraham@mnat.com

OF COUNSEL:

*Attorneys for Freescale Semiconductor, Inc.*

David L. Witcoff
Kevin P. Ferguson
John M. Michalik
JONES DAY
77 West Wacker
Chicago, IL 60601-1692
312.782.3939

James L. Wamsley III
F. Drexel Feeling
Thomas R. Goots
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH 44114-1190
216.586.3939

Dated: May 13, 2008

Dear Judge Poppiti:

Freescale hereby moves that ProMOS be compelled to answer Freescale's Interrogatory No. 30 seeking an explanation of ProMOS's denial of certain of Freescale's Requests for Admission ("RFA"). Freescale's Interrogatory No. 30 reads:

> With respect to any response by ProMOS to a request for admission served by Freescale, other than an unqualified admission, state each fact that supports or is contrary to the response, identify each document that relates to each such fact, and identify each person with knowledge of such facts.

Freescale has asked ProMOS to supplement its response to Interrogatory No. 30 with respect to RFAs relating to three general issues: licensing of the patents-in-suit (RFA Nos. 25-26); invalidity of the patents-in-suit (RFA Nos. 41-45); and, conception and reduction to practice of the claims of the patents-in-suit (RFA Nos. 46-48 and 59-60). [1]

ProMOS does not, and cannot, suggest that the information sought by this interrogatory and the accompanying RFAs is not highly relevant to the issues in this litigation. Instead, ProMOS objected to Interrogatory No. 30 as an attempt by Freescale to circumvent the limits on the number of interrogatories.[2] This objection should be overruled. Freescale is not seeking to circumvent the limit on the number of interrogatories. Freescale seeks information regarding only three discrete subject areas; specific information regarding issues that ProMOS thus far has been unwilling to provide in response to interrogatories.[3] At worst, each of these subject areas should be considered a separate interrogatory. If that were done, Freescale would just be at the limit of 35 interrogatories.[4] The Court should therefore compel ProMOS to provide a complete response to Interrogatory No. 30 with respect to the cited RFAs.

---

[1]     ProMOS' Objections and Responses to these RFAs were served on January 22, 2008 and are attached as Ex. 1.

[2]     ProMOS' Objections and Responses to 4th Set of Interrogatories are attached as Ex. 2.

[3]     Freescale has, in fact, propounded individual interrogatories seeking information about each of these issues – Freescale Interrogatories Nos. 4 (conception and reduction to practice), 9 (licensing of the patents-in-suit), and 21 (contentions regarding alleged validity of the patents-in-suit). In response to Freescale's complaints, ProMOS has agreed to supplement its response to those interrogatories, but has not agreed to include information sought by these RFAs in their supplemental.

[4]     Thus far, Freescale has propounded 33 interrogatories, including Interrogatory No. 30. If the Court were to count the three discrete subject areas as three separate interrogatories it would bring the total number of interrogatories served to 35 – one would replace Interrogatory No. 30 and the other two would constitute Nos. 34 and 35. Courts have recognized that where an interrogatory is used to discover information regarding denials of requests for admissions each of the requests for admissions are not necessarily counted as discrete subparts. *See Estate of Manship v. U.S.*, 232 F.R.D. 552, 557 (M.D. La. 2005); *see, also,* 7 *Moore's Federal Practice*, § 33.30[2] (2007).

The Honorable Vincent J. Poppiti
May 13, 2008
Page 2

Moreover, if the Court believes that Freescale's Interrogatory No. 30 should be counted as more than three interrogatories and as such Freescale would exceed the number of allowable interrogatories, then this Court should nonetheless allow Freescale to exceed the limit of 35 and compel a response to Interrogatory No. 30. The purpose of limits on interrogatories is not to limit legitimate discovery, but rather to insure that one party does not burden the other with excessive discovery demands. (*See* 1993 Advisory Committee Notes to 33(a) ("The aim is not to prevent needed discovery, but to provide judicial scrutiny before parties make potentially excessive use of this discovery device.")) ProMOS would not be unduly burdened if it were required to provide a substantive response to Interrogatory No. 30, with respect to the RFAs in question. There is no other way for Freescale to obtain the information and the information sought is relevant to the issues in this litigation.

Finally, if the Court believes that Freescale is not entitled to a response to Interrogatory No. 30 in that form, then Freescale seeks an order compelling ProMOS to provide the information requested in that interrogatory as supplementation to its responses to other interrogatories that Freescale has propounded, three of which (interrogatories 4, 9 and 21) relate to the subject areas at issue in Interrogatory No. 30, and ProMOS has agreed to supplement its responses to them. ProMOS should be required to provide the information sought by Interrogatory No. 30 when supplementing its responses to those interrogatories, which likewise call for the information. (See fn 1.)

### Discovery

As an initial matter, it is important to note that ProMOS does not contend that the discovery sought by Freescale is not relevant to the issues in this litigation. In fact, ProMOS could not in good faith make such an argument. Furthermore, ProMOS does not contend that Freescale is not entitled to discover information regarding these issues. Instead, ProMOS argues that the interrogatory limit has been reached – it has already responded to enough discovery and it should not be required to provide any additional information.

#### *The RFAs At Issue*

RFA Nos. 25-26 – Licensing of the patents-in-suit. Freescale requested that ProMOS admit that it has not licensed the patents-in-suit and that if it has licensed them it has only licensed them to a specific company (Mosel Vitelic). ProMOS denied both requests. The information sought by these requests is highly relevant to the issue of damages. One of the factors used in determining a reasonable royalty is licensing of the patents-in-suit. *See Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F.Supp. 1116, 1120 (S.D. N.Y. 1970).

In seeking a response under Interrogatory No. 30, Freescale is simply trying to discover whether ProMOS has licensed these patents, to whom they may have been licensed and

The Honorable Vincent J. Poppiti
May 13, 2008
Page 3

the facts and circumstances surrounding any licenses.[5]  ProMOS's refusal to provide this basic information is unsupportable.

RFA Nos. 41-45 – Invalidity/Prior Art.  The information sought by each of these RFAs relates to what was known in the art one year prior to ProMOS's filing of the earliest application in the claim that lead to the patents-in-suit.  Freescale requested that ProMOS admit that certain information was known more than a year prior to filing the Chan patents.  The information Freescale seeks is relevant to the issue of invalidity – what was known in the art.

In response to the RFAs ProMOS rattled off a string of objections and ultimately denied each of them.  For example in response to Request for Admission No. 41, ProMOS stated as follows:

> ProMOS objects to this request on the ground that it is vague and ambiguous and because the claim terms of the Chan patents have not yet been construed by the Court.  ProMOS also objects to this request to the extent it seeks information that is not within the possession, custody or control of ProMOS.  ProMOS objects to this request as stating an incomplete hypothetical.  ProMOS also objects to this request to the extent it seeks expert opinion.  ProMOS will disclose its expert opinions at the time and in the manner contemplated by the Scheduling Order entered in this case.
>
> Subject to and without waiving the foregoing general and specific objections, ProMOS denies this request for admission.

(ProMOS's Response to RFA No. 41).

ProMOS provided nearly identical responses to Request Nos. 42-45.  Freescale simply seeks a detailed explanation of the bases for these denials.  It is unclear whether the denials are based on one of the laundry list of objections or on facts. Freescale propounded Interrogatory No. 30 to discover the bases for the denials and the underlying facts, if any that support the denial.

---

[5]     Freescale previously moved to compel ProMOS to provide additional information regarding licenses granted by Mosel Vitelic.  (See D.I. 56).  ProMOS opposed that motion arguing that it did not have any additional information regarding Mosel Vitelic's cross-licenses and it did not have access to the licenses themselves.  What Freescale now seeks is different than what it sought in D.I. 56, and ProMOS' responses to the RFAs do not indicate that ProMOS lacks the information needed to respond.  Freescale seeks to discover the explanation for ProMOS's denial that it has not licensed the patents-in-suit.  ProMOS has this information but has simply not provided it, either in response to Interrogatory 30 or in response to Interrogatory No. 9 – the subject of D.I. 56.

The Honorable Vincent J. Poppiti
May 13, 2008
Page 4

ProMOS should be compelled to provide a substantive response to Interrogatory No. 30. If ProMOS believes that certain aspects of its claims were not known in the prior art it must come forward with facts to support its allegations.

RFA Nos. 46-48 and 59-60 – Conception/Reduction to Practice. The information sought by these RFAs relates to when the purported invention set forth in the claims of the patents-in-suit was conceived of and reduced to practice. The date when an invention is conceived of and reduced to practice may impact what can be considered prior art to the patents-in-suit.[6]

As with its responses to RFA Nos. 41-45, ProMOS provided a laundry list of objections and then a denial in answering each of these RFAs. Once again, it is unclear whether the denial is premised on one of ProMOS many objections or whether it is based on facts available to ProMOS. Freescale propounded Interrogatory No. 30 to discover the factual bases, if any, for the denials. ProMOS's refusal to supplement Interrogatory No. 30 to provide this relevant information regarding conception and reduction to practice attempts to keep the bases for ProMOS' denial hidden from Freescale.

There is no legitimate reason for ProMOS's continued refusal to provide meaningful information regarding conception and reduction to practice.

**Conclusion**

ProMOS should be compelled to answer Freescale's legitimate discovery requests that relate to issues relevant to this litigation. ProMOS should therefore provide a substantive response to Interrogatory No. 30 as it relates to the above-described three subject areas – licensing of the patents-in-suit (RFA Nos. 25-26), invalidity of the patents-in-suit (RFA Nos. 41-45), and conception and reduction to practice of the claims of the patents-in-suit (RFA Nos. 46-48 and 59-60). ProMOS' objections should be overruled and substantive answers should be provided.

Respectfully,

*/s/ Mary B. Graham*

Mary B. Graham (#2256)

MBG/lmc
cc:    All counsel on service list
2327652

---

[6]    In the case of RFAs 59 and 60, the requests go to whether certain patent claims are entitled to the benefit of a constructive reduction to practice date or not. Again, this information is relevant in determining the date for purposes of deciding what qualifies as prior art.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 13, 2008, the foregoing was caused to be electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered participants.

In addition, the undersigned hereby certifies that on May 13, 2008 true and correct copies of the foregoing were caused to be served upon the following parties in the manner indicated:

**BY HAND DELIVERY (in triplicate):**

Vincent J. Poppiti, Esq.
BLANK ROME LLP
1201 North Market Street, Suite 800
Wilmington, DE  19801-4226

**BY E-MAIL:**

Vincent J. Poppiti, Esq.
**poppiti@blankrome.com**
BLANK ROME LLP

WITH A COPY TO:

Elizabeth Oestreich
**oestreich@blankrome.com**
Mary Levan
**levan@blankrome.com**
Carrie David
**david-c@blankrome.com**
BLANK ROME LLP

**BY E-MAIL AND HAND DELIVERY**

John G. Day, Esq.
Steven J. Balick, Esquire
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
Wilmington, DE  19899

**jday@ashby-geddes.com**
**sbalick@ashby-geddes.com**

**BY E-MAIL**

Sten A. Jensen, Esq.
HOGAN & HARTSON LLP
555 Thirteenth Street, NW
Washington, DC  20004

**sajensen@hhlaw.com**

**BY E-MAIL:**

Steven J. Routh, Esq.
**sjrouth@hhlaw.com**
William H. Wright, Esq.
**whwright@hhlaw.com**
HOGAN & HARTSON LLP

William C. Gooding, Esq.
**billgooding@gooding-crittenden.com**
GOODING & CRITTENDEN, L.L.P.

*/s/ Mary B. Graham*
_____
Mary B. Graham (#2256)

1383169

# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| PROMOS TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-788-JJF |
| | ) | |
| FREESCALE SEMICONDUCTOR, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF PROMOS TECHNOLOGIES, INC.'S OBJECTIONS
AND RESPONSES TO DEFENDANT FREESCALE SEMICONDUCTOR, INC.'S
SECOND SET OF REQUESTS FOR ADMISSION (Nos. 7-60)**

Pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure, Plaintiff ProMOS

Technologies, Inc. ("ProMOS") hereby submits the following objections and responses to

Defendant Freescale Semiconductor, Inc.'s Second Set of Requests for Admission (the

"Requests").

## GENERAL STATEMENT AND OBJECTIONS

ProMOS hereby incorporates by reference its General Statement and Objections from its

Objections and Responses to Defendant Freescale Semiconductor, Inc.'s First Set of Requests for

Admission as though fully set forth herein.

## RESPONSES AND SPECIFIC OBJECTIONS TO REQUESTS

ProMOS also expressly incorporates by reference its General Statement and Objections

from its Objections and Responses to Defendant Freescale Semiconductor, Inc.'s First Set for of

Requests for Admission and its General Statement and Objections from its Objections and

Responses to Defendant Freescale Semiconductor, Inc.'s First Set of Requests for Production of

Documents and Things in response to each of the following Requests and, to the extent they are

not raised in any particular response, ProMOS does not waive those objections. In addition to

the objections asserted therein, ProMOS responds as follows:

**REQUEST NO. 7**:

Admit that, during the prosecution of the application leading to the '267 Patent, the inventor told the United States Patent and Trademark Office that "CVD is <u>not</u> PVD or a type of PVD."

**RESPONSE TO REQUEST NO. 7**:

ProMOS objects to this request because the prosecution history of the '267 patent and the

statements within it speak for themselves.

Subject to and without waiving the foregoing general and specific objections, ProMOS

denies the request for admission as stated, because it omits words from the sentence that it

purports to quote. ProMOS further avers that Freescale has sought to mischaracterize the

meaning of the inventor's statement in its claim construction arguments to the Court.

**REQUEST NO. 8**:

Admit that, to distinguish his invention from certain prior art during the prosecution of the application leading to the '267 Patent, the inventor told the Examiner who was considering whether to issue the '267 Patent that "CVD is <u>not</u> PVD or a type of PVD."

**RESPONSE TO REQUEST NO. 8**:

ProMOS objects to this request on the ground that it is vague and ambiguous. ProMOS

further objects to this request because the prosecution history of the '267 patent and the

statements within it speak for themselves.

Subject to and without waiving the foregoing general and specific objections, ProMOS

denies the request for admission as stated because it omits words from the sentence it purports to

quote. ProMOS further avers that Freescale has sought to mischaracterize the meaning of the

inventor's statement in its claim construction arguments to the Court.

**REQUEST NO. 9**:

Admit that deposition techniques using a TDMAT precursor to deposit TiN in a tungsten interconnect have been characterized as CVD, for example in "Effects of Barrier-Metal Schemes of Tungsten Plugs and Blanket Film Deposition," Change, et al. Jpn. J. Appl. Phys. Vol. 39 (2000) (pp. 4738-4743), Part 1, No. 8, August 2000 and Enhanced Metalorganic Chemical Vapor Deposition Titanium Nitride Film Fabricated Using Tetrakis-Dimethylamino-Titanium for Barrier Metal Application in Sub-Half-Micron Technology," Wang, et al. Jpn. J. Appl. Phys., Vol. 35 (1996) (pp. 4274-4279), Part 1, No. 8, August 1996.

**RESPONSE TO REQUEST NO. 9**:

ProMOS objects to this request on the ground that it is vague and ambiguous and because the claim terms of the '267 patent have not yet been construed by the Court. This request appears to assume meanings for its terms that contradict positions Freescale has taken in its claim construction arguments. ProMOS also objects to this request as premature on the ground that it seeks expert opinion. ProMOS will disclose expert opinions at the time and in the manner contemplated by the Scheduling Order entered in this case.

Subject to and without waiving the foregoing general and specific objections, ProMOS denies this request for admission. The referenced articles do not support the principle for which they are cited.

**REQUEST NO. 10**:

Admit that deposition techniques using a TDMAT precursor to deposit TiN in a tungsten interconnect with a subsequent nitrogen plasma treatment have been characterized as CVD, for example in "Effects of Barrier-Metal Schemes of Tungsten Plugs and Blanket Film Deposition," Chang, et al. Jpn. J. Appl. Phys. Vol. 39 (2000) (pp. 4738-4743), Part 1, No. 8, August 2000 and "Enhanced Metalorganic Chemical Vapor Deposition Titanium Nitride Film Fabricated Using Tetrakis-Dimethylamino-Titanium for Barrier Metal Application in Sub-Half Micron Technology," Wang, et al. Jpn. J. Appl. Phys. Vol. 35 (1996) (pp. 4274-4279), Part 1, No. 8, August 1996.

**RESPONSE TO REQUEST NO. 10**:

ProMOS objects to this request on the ground that it is premature, vague and ambiguous because the claim terms of the '267 patent have not yet been construed by the Court. This request appears to assume meanings for its terms that contradict positions Freescale has taken in

3

claim construction.  ProMOS also objects to this request as premature on the ground that it seeks

expert opinion.  ProMOS will disclose expert opinions at the time and in the manner

contemplated by the Scheduling Order entered in this case.

Subject to and without waiving the foregoing general and specific objections, ProMOS

denies this request for admission.  The referenced articles do not support the principle for which

they are cited.

**REQUEST NO. 11**:

Admit that Freescale's HiP7 and HiP8 processes use a TDMAT precursor to deposit
TiN in a tungsten interconnect.

**RESPONSE TO REQUEST NO. 11**:

ProMOS objects to this request on the ground that it is vague and ambiguous.  ProMOS

also objects to this request as premature on the ground that it seeks expert opinion.  ProMOS will

disclose expert opinions at the time and in the manner contemplated by the Scheduling Order

entered in this case.  ProMOS further objects to this request to the extent it seeks information that

Freescale has not yet produced in discovery.  ProMOS further objects to this request on the

ground that it seeks information that is not within ProMOS's possession, custody or control.

Subject to and without waiving the foregoing general and specific objections, ProMOS

states that, after a reasonable inquiry, it is unable to admit or deny this request for admission

based on information reasonably known or available to ProMOS.

**REQUEST NO. 12**:

Admit that Freescale's HiP7 and HiP8 processes use a TDMAT precursor to deposit
TiN in a tungsten interconnect, followed by a nitrogen plasma treatment.

**RESPONSE TO REQUEST NO. 12**:

ProMOS objects to this request on the ground that it is vague and ambiguous.  ProMOS

also objects to this request as premature on the ground that it seeks expert opinion.  ProMOS will

disclose expert opinions at the time and in the manner contemplated by the Scheduling Order entered in this case. ProMOS further objects to this request to the extent it seeks information that Freescale has not yet produced in discovery. ProMOS further objects to this request on the ground that it seeks information that is not within ProMOS's possession, custody or control.

Subject to and without waiving the foregoing general and specific objections, ProMOS states that, after a reasonable inquiry, it is unable to admit or deny this request for admission based on information reasonably known or available to ProMOS.

**REQUEST NO. 13**:

Admit that exposing a semiconductor substrate to RF plasma in an argon atmosphere removes material from its surface.

**RESPONSE TO REQUEST NO. 13**:

ProMOS objects to this request on the ground that it is vague and ambiguous. ProMOS objects to this request as stating an incomplete hypothetical. ProMOS also objects to this request as premature on the ground that it seeks expert opinion. ProMOS will disclose expert opinions at the time and in the manner contemplated by the Scheduling Order entered in this case.

Subject to and without waiving the foregoing general and specific objections, ProMOS denies this request for admission. ProMOS further avers that whether exposing a semiconductor substrate to RF plasma in an argon atmosphere removes material from its surface depends on the process parameters and conditions.

**REQUEST NO. 14**:

Admit that when exposing a semiconductor substrate to RF plasma in an argon atmosphere, material is not accumulated on its surface.

**RESPONSE TO REQUEST NO. 14**:

ProMOS objects to this request on the ground that it is vague and ambiguous. ProMOS objects to this request as stating an incomplete hypothetical. ProMOS also objects to this request

as premature on the ground that it seeks expert opinion.  ProMOS will disclose expert opinions at

the time and in the manner contemplated by the Scheduling Order entered in this case.

Subject to and without waiving the foregoing general and specific objections, ProMOS

denies this request for admission.  ProMOS further avers that whether material is not

accumulated on the surface of a semiconductor substrate exposed to RF plasma in an argon

atmosphere depends on the process parameters and conditions.

**REQUEST NO. 15**:

Admit that the HiP5L process deposited a TiN layer not more than 25 nm thick by
physical vapor deposition in a tungsten interconnect as early as June 1999.

**RESPONSE TO REQUEST NO. 15**:

ProMOS objects to this request on the ground that it is vague and ambiguous and because

the claim terms of the '267 patent have not yet been construed by the Court.  ProMOS also

objects to this request as premature on the ground that it seeks expert opinion.  ProMOS will

disclose expert opinions at the time and in the manner contemplated by the Scheduling Order

entered in this case.  ProMOS further objects to this request on the ground that it seeks

information that is not within ProMOS's possession, custody or control.

Subject to and without waiving the foregoing general and specific objections, ProMOS

states that, after a reasonable inquiry, it is unable to admit or deny this request for admission

based on information reasonably known or available to ProMOS.

**REQUEST NO. 16**:

Admit that the HiP5L process was qualified for shipment for revenue as early as June

1999.

**RESPONSE TO REQUEST NO. 16**:

ProMOS objects to this request on the ground that it is vague and ambiguous.  ProMOS

also objects to this request to the extent it seeks information not known or readily available to ProMOS.

Subject to and without waiving the foregoing general and specific objections, ProMOS states that, after a reasonable inquiry, it is unable to admit or deny this request for admission based on information reasonably known or available to ProMOS.

**REQUEST NO. 17**:

Admit that products made by the HiP5L process were sold as early as June 1999.

**RESPONSE TO REQUEST NO. 17**:

ProMOS objects to this request on the ground that it is vague and ambiguous. ProMOS also objects to this request to the extent it seeks information not known or readily available to ProMOS.

Subject to and without waiving the foregoing general and specific objections, ProMOS states that, after a reasonable inquiry, it is unable to admit or deny this request for admission based on information reasonably known or available to ProMOS.

**REQUEST NO. 18**:

Admit that ProMOS has never made, used, or sold any products made using a claimed invention of the Fortin Patent.

**RESPONSE TO REQUEST NO. 18**:

ProMOS objects to this request on the ground that it is vague and ambiguous and because the claim terms of the '267 patent have not yet been construed by the Court. ProMOS also objects to this request as premature on the ground that it seeks expert opinion. ProMOS will disclose expert opinions at the time and in the manner contemplated by the Scheduling Order entered in this case. ProMOS further objects to this request to the extent it purports to require

ProMOS to conduct analysis of whether any process it has ever used practices all the claims of the Fortin patent and to make a determination based on that analysis.  In addition, ProMOS objects to this request on the ground that ProMOS advised Freescale early in the discovery process that it would not contend that it practices or has practiced the claims of the Fortin patent. In exchange, Freescale agreed not to seek documents or other discovery on this issue.

Subject to and without waiving the foregoing general and specific objections, ProMOS states that it is unable to admit or deny this request for admission based on information reasonably known or readily available to ProMOS.

**REQUEST NO. 19**:

Admit that ProMOS has never made, used, or sold any products employing a claimed invention of either of the Chan Patents.

**RESPONSE TO REQUEST NO. 19**:

ProMOS objects to this request on grounds that it is vague and ambiguous, in particular with respect to its use of the term "used . . . any products employing a claimed invention of either of the Chan patents," and because the claim terms of the Chan patents have not yet been construed by the Court.  ProMOS also objects to this request as premature on the ground that it seeks expert opinion.  ProMOS will disclose expert opinions at the time and in the manner contemplated by the Scheduling Order entered in this case.

Subject to and without waiving the foregoing general and specific objections, ProMOS admits that ProMOS has never made or sold any products employing cache memories or cache memory controllers, which are the subjects of the claimed inventions of the Chan patents. ProMOS further avers that, after a reasonable inquiry, it is unable to admit or deny whether it has ever "used" any products employing the claimed inventions of the Chan patents based on

information reasonably known or available to ProMOS and due to its lack of understanding of the intended meaning of that term.

**REQUEST NO. 20**:

Admit that neither Mosel nor Vitelic ever made, used, or sold any products employing a claimed invention of either of the Chan Patents.

**RESPONSE TO REQUEST NO. 20**:

ProMOS objects to this request on the ground that it is vague and ambiguous, in particular with respect to its use of the term "used . . . any products employing a claimed invention of either of the Chan patents," and because the claim terms of the Chan patents have not yet been construed by the Court.  ProMOS also objects to this request as premature on the ground that it seeks expert opinion.  ProMOS will disclose expert opinions at the time and in the manner contemplated by the Scheduling Order entered in this case.  ProMOS further objects to this request on the ground that it seeks information regarding third parties that is not readily available to ProMOS.

Subject to and without waiving the foregoing general and specific objections, ProMOS states that, after a reasonable inquiry, it is unable to admit or deny this request for admission based on information reasonably known or available to ProMOS and due to its lack of understanding of the intended meaning of the referenced term.

**REQUEST NO. 21**:

Admit that Mosel Vitelic Corporation has never made, used, or sold any products made using a claimed invention of the Fortin Patent.

**RESPONSE TO REQUEST NO. 21**:

ProMOS objects to this request on the ground that it is vague and ambiguous, in particular with respect to its use of the term "used . . . any products employing a claimed invention of either of the Chan patents," and because the claim terms of the Fortin patent have

not yet been construed by the Court.  ProMOS also objects to this request as premature on the

ground that it seeks expert opinion.  ProMOS will disclose expert opinions at the time and in the

manner contemplated by the Scheduling Order entered in this case.  ProMOS further objects to

this request on the ground that it seeks information regarding third parties that is not within

ProMOS's possession, custody or control. ProMOS further objects to this request to the extent it

purports to require ProMOS to conduct an analysis and make a determination of whether any

process MVC has ever used practices all claims of the Fortin patent.  In addition, ProMOS

objects to this request on the ground that ProMOS advised Freescale early in the discovery

process that it would not contend that it practices or has practiced the claims of the Fortin patent.

In exchange, Freescale agreed not to seek documents or other discovery on this issue.

Subject to and without waiving the foregoing general and specific objections, ProMOS

states that, after a reasonable inquiry, it is unable to admit or deny this request for admission

based on information reasonably known or readily available to ProMOS and due to its lack of

understanding of the intended meaning of the referenced term.

**REQUEST NO. 22:**

Admit that no person within ProMOS has ever expressed that ProMOS should use the
claimed inventions of the Chan Patents in making any products.

**RESPONSE TO REQUEST NO. 22**:

ProMOS objects to this request on the ground that it is vague and ambiguous and because

the claim terms of the Chan patents have not yet been construed by the Court.  ProMOS also

objects to this request as vague and ambiguous, particularly with regard to the phrase "no person

within ProMOS has ever expressed that ProMOS should use," because it is so broad and

unlimited in time and scope as to render it not susceptible to reasonable inquiry and/or complete

response.

Subject to and without waiving the foregoing general and specific objections, ProMOS is not able to admit or deny this request. ProMOS further avers that, although it is not presently aware of any of its employees having proposed that the Chan patents, per se, be used to make any ProMOS products, that presumably is because ProMOS has never made or sold any products that include cache memories or cache memory controllers, which are subjects of the Chan patents.

**REQUEST NO. 23**:

Admit that no person within ProMOS has ever expressed that ProMOS should use the claimed inventions of the Fortin Patent in making any products.

**RESPONSE TO REQUEST NO. 23**:

ProMOS objects to this request on the ground that it is vague and ambiguous and because the claim terms of the Fortin patent have not yet been construed by the Court. ProMOS also objects to this request as vague and ambiguous, particularly with regard to the phrase "no person within ProMOS has ever expressed that ProMOS should use," because it is so broad and unlimited in time and scope as to render it not susceptible to reasonable inquiry and/or complete response.

Subject to and without waiving the foregoing general and specific objections, ProMOS states that, after a reasonable inquiry, it is unable to admit or deny this request for admission based on information reasonably known or available to ProMOS. See also the above response to Request No. 18.

**REQUEST NO. 24**:

Admit that ProMOS has previously expressed a willingness to license the Fortin and Chan Patents.

**RESPONSE TO REQUEST NO. 24**:

ProMOS objects to this request on the ground that it is vague and ambiguous.

11

Subject to and without waiving the foregoing general and specific objections, ProMOS admits this request for admission.

**REQUEST NO. 25**:

Admit that ProMOS has not licensed the Chan Patents.

**RESPONSE TO REQUEST NO. 25**:

ProMOS objects to this request on the ground that it is vague and ambiguous.

Subject to and without waiving the foregoing general and specific objections, ProMOS denies this request for admission.

**REQUEST NO. 26**:

Admit that ProMOS has not licensed the Chan Patents to anyone other than Mosel Vitelic, Inc.

**RESPONSE TO REQUEST NO. 26**:

ProMOS objects to this request on the ground that it is vague, ambiguous and confusing.

Subject to and without waiving the foregoing general and specific objections, ProMOS denies this request for admission.

**REQUEST NO. 27**:

Admit that ProMOS has not received any money (e.g., royalties or licensing fees) from any other entity for rights to use and/or the right to use the Chan Patents.

**RESPONSE TO REQUEST NO. 27**:

ProMOS objects to this request on the ground that it is vague and ambiguous.

Subject to and without waiving the foregoing general and specific objections, ProMOS admits this request for admission.

**REQUEST NO. 28**:

Admit that ProMOS has not licensed the Fortin Patent.

**RESPONSE TO REQUEST NO. 28**:

ProMOS objects to this request on the ground that it is vague and ambiguous.

Subject to and without waiving the foregoing general and specific objections, ProMOS

denies this request for admission.

**REQUEST NO. 29**:

Admit that ProMOS has not licensed the Fortin Patent to anyone other than Mosel
Vitelic, Inc.

**RESPONSE TO REQUEST NO. 29:**

ProMOS objects to this request on the ground that it is vague, ambiguous and confusing.

Subject to and without waiving the foregoing general and specific objections, ProMOS

denies this request for admission.

**REQUEST NO. 30**:

Admit that ProMOS has not received any money (e.g., royalties or licensing fees) from
any other entity for rights to use and/or the right to use of the Fortin Patents.

**RESPONSE TO REQUEST NO. 30**:

ProMOS objects to this request on the ground that it is vague and ambiguous.

Subject to and without waiving the foregoing general and specific objections, ProMOS

admits this request for admission.

**REQUEST NO. 31**:

Admit that prior to this litigation, ProMOS has never placed a value on the Chan
Patents.

**RESPONSE TO REQUEST NO. 31**:

ProMOS objects to this request on the ground that it is vague and ambiguous.

Subject to and without waiving the foregoing general and specific objections, ProMOS

admits that prior to this litigation, it had never placed a specific monetary value on the Chan

13

patents alone.

**REQUEST NO. 32**:

 Admit that prior to this litigation, ProMOS has never placed a value on the Fortin Patent.

**RESPONSE TO REQUEST NO. 32**:

 ProMOS objects to this request on the ground that it is vague and ambiguous.

 Subject to and without waiving the foregoing general and specific objections, ProMOS admits that prior to this litigation, it had never placed a specific monetary value on the Fortin patent alone.

**REQUEST NO. 33**:

 Admit that Chan was never given any award for making the claimed inventions of the Chan Patents.

**RESPONSE TO REQUEST NO. 33**:

 ProMOS objects to this request on the ground that it is vague and ambiguous, particularly with respect to the meaning of the word "award." ProMOS further objects to this request on the ground that it seeks information that is not within the possession, custody or control of third parties.

 Subject to and without waiving the foregoing general and specific objections, ProMOS states that, after a reasonable inquiry, it is unable to admit or deny this request for admission based on information presently known or available to ProMOS. ProMOS further avers that Chan was not employed by ProMOS or MVC at the time he made the claimed invention.

**REQUEST NO. 34**:

 Admit that the Chan Patents have never been cited by anyone in the semiconductor industry as having made a contribution to the field of semiconductors.

**RESPONSE TO REQUEST NO. 34**:

ProMOS objects to this request on the ground that it is vague and ambiguous.  ProMOS further objects to this request to the extent that it seeks information that is not within the possession, custody or control of ProMOS.

Subject to and without waiving the foregoing general and specific objections, ProMOS denies this request for admission.  ProMOS further avers that the Chan patents have been cited numerous times by other patents as prior art.

**REQUEST NO. 35**:

Admit that Fortin was never given any award for making the claimed inventions of the Fortin Patent.

**RESPONSE TO REQUEST NO. 35**:

ProMOS objects to this request on the ground that it is vague and ambiguous, particularly with respect to the meaning of the word "award."  ProMOS further objects to this request to the extent that it seeks information that is not within the possession, custody or control of ProMOS.

Subject to and without waiving the foregoing general and specific objections, ProMOS denies this request for admission

**REQUEST NO. 36**:

Admit that the Fortin Patent has never been cited by anyone in the semiconductor industry as having made a contribution to the field of semiconductors.

**RESPONSE TO REQUEST NO. 36**:

ProMOS objects to this request on the ground that it is vague and ambiguous.  ProMOS further objects to this request to the extent that it seeks information that is not within the possession, custody or control of ProMOS.

Subject to and without waiving the foregoing general and specific objections, ProMOS states that, after a reasonable inquiry, it is unable to admit or deny this request for admission

based on information presently known or available to ProMOS.

**REQUEST NO. 37**:

 Admit that, more than a year before the filing of the Fortin Patent, it was known to round the top edge of an opening for a tungsten interconnect.

**RESPONSE TO REQUEST NO. 37**:

 ProMOS objects to this request on the ground that it is vague and ambiguous and because the claim terms of the '267 patent have not yet been construed by the Court. ProMOS also objects to this request to the extent it seeks information that is not within the possession, custody or control of ProMOS. ProMOS objects to this request as stating an incomplete hypothetical. ProMOS also objects to this request to the extent it seeks expert opinion. ProMOS will disclose its expert opinions at the time and in the manner contemplated by the Scheduling Order entered in this case. In addition, ProMOS objects to this request on the ground that it does not refer to any specific reference that allegedly discloses "round[ing] the top edge of an opening for a tungsten interconnect."

 Subject to and without waiving the foregoing general and specific objections, ProMOS states that, after a reasonable inquiry, it is unable to admit or deny this request for admission based on information presently known or reasonably available to ProMOS

**REQUEST NO. 38**:

 Admit that, more than a year before the filing of the Fortin Patent, it was known to round the top edge of an opening for a tungsten interconnect by exposing the edge to an RF plasma in an argon atmosphere.

**RESPONSE TO REQUEST NO. 38**:

 ProMOS objects to this request on the ground that it is vague and ambiguous and because the claim terms of the '267 patent have not yet been construed by the Court. ProMOS also objects to this request to the extent it seeks information that is not within the possession, custody

or control of ProMOS.  ProMOS objects to this request as stating an incomplete hypothetical.

ProMOS also objects to this request to the extent it seeks expert opinion.  ProMOS will disclose

its expert opinions at the time and in the manner contemplated by the Scheduling Order entered

in this case.  In addition, ProMOS objects to this request on the ground that it does not refer to

any specific reference that allegedly discloses "round[ing] the top edge of an opening for a

tungsten interconnect by exposing the edge to an RF plasma in an argon atmosphere."

Subject to and without waiving the foregoing general and specific objections, ProMOS

states that, after a reasonable inquiry, it is unable to admit or deny this request for admission

based on information presently known or reasonably available to ProMOS

**REQUEST NO. 39**:

Admit that Vincent Fortin did not discover the use of physical vapor deposition to form
titanium nitride layers in tungsten interconnects.

**RESPONSE TO REQUEST NO. 39**:

ProMOS objects to this request on the ground that it is vague and ambiguous and because

the claim terms of the '267 patent have not yet been construed by the Court. ProMOS also

objects to this request to the extent it seeks information that is not within the possession, custody

or control of ProMOS.  ProMOS objects to this request as stating an incomplete hypothetical.

ProMOS also objects to this request to the extent it seeks expert opinion.  ProMOS will disclose

its expert opinions at the time and in the manner contemplated by the Scheduling Order entered

in this case.

Subject to and without waiving the foregoing general and specific objections, ProMOS

admits this request for admission.

**REQUEST NO. 40**:

Admit that, more than a year before the filing of the Chan Patents, it was known to
include in a cache memory a random access memory, a host port, and a system port.

**RESPONSE TO REQUEST NO. 40**:

ProMOS objects to this request on the ground that it is vague and ambiguous and because the claim terms of the Chan patents have not yet been construed by the Court. ProMOS also objects to this request to the extent it seeks information that is not within the possession, custody or control of ProMOS.  ProMOS objects to this request as stating an incomplete hypothetical. ProMOS also objects to this request to the extent it seeks expert opinion.  ProMOS will disclose its expert opinions at the time and in the manner contemplated by the Scheduling Order entered in this case.

Subject to and without waiving the foregoing general and specific objections, ProMOS admits this request for admission.

**REQUEST NO. 41**:

Admit that, more than a year before the filing of the Chan Patents, it was known to include in a cache memory a write register for buffering data received from a host port and selectively providing the data to one of a random access memory, a system port, and the random access memory and the system port, wherein the write register is coupled between the host port and the random access memory and between the host part and the system port.

**RESPONSE TO REQUEST NO. 41**:

ProMOS objects to this request on the ground that it is vague and ambiguous and because the claim terms of the Chan patents have not yet been construed by the Court. ProMOS also objects to this request to the extent it seeks information that is not within the possession, custody or control of ProMOS.  ProMOS objects to this request as stating an incomplete hypothetical. ProMOS also objects to this request to the extent it seeks expert opinion.  ProMOS will disclose its expert opinions at the time and in the manner contemplated by the Scheduling Order entered in this case.

Subject to and without waiving the foregoing general and specific objections, ProMOS denies this request for admission.

18

**REQUEST NO. 42**:

Admit that, more than a year before the filing of the Chan Patents, it was known to include in a cache memory a write back register for holding data received from a random access memory and selectively providing the data to a system port, wherein the write back register is coupled between the random access memory and the system port.

**RESPONSE TO REQUEST NO. 42**:

ProMOS objects to this request on the ground that it is vague and ambiguous and because the claim terms of the Chan patents have not yet been construed by the Court. ProMOS also objects to this request to the extent it seeks information that is not within the possession, custody or control of ProMOS.  ProMOS objects to this request as stating an incomplete hypothetical. ProMOS also objects to this request to the extent it seeks expert opinion.  ProMOS will disclose its expert opinions at the time and in the manner contemplated by the Scheduling Order entered in this case.

Subject to and without waiving the foregoing general and specific objections, ProMOS denies this request for admission.

**REQUEST NO. 43**:

Admit that, more than a year before the filing of the Chan Patents, it was known to provide in a computer system:  a host processor having a host address bus and a host data bus; and system memory having storage locations addressable by the host processor, a system address bus and a system data bus.

**RESPONSE TO REQUEST NO. 43**:

ProMOS objects to this request on the ground that it is vague and ambiguous and because the claim terms of the Chan patents have not yet been construed by the Court. ProMOS also objects to this request to the extent it seeks information that is not within the possession, custody or control of ProMOS.  ProMOS objects to this request as stating an incomplete hypothetical. ProMOS also objects to this request to the extent it seeks expert opinion.  ProMOS will disclose its expert opinions at the time and in the manner contemplated by the Scheduling Order entered

in this case.

Subject to and without waiving the foregoing general and specific objections, ProMOS

denies this request for admission.

**REQUEST NO. 44**:

Admit that, more than a year before the filing of the Chan Patents, it was known to
provide in a computer system:  a host processor having a host address bus and a host data bus;
a system memory having storage locations addressable by the host processor, a system address
bus and a system data bus; and a dual port cache memory having a system port connected to
said system data bus and a host port connected to said host data bus.

**RESPONSE TO REQUEST NO. 44**:

ProMOS objects to this request on the ground that it is vague and ambiguous and because

the claim terms of the Chan patents have not yet been construed by the Court. ProMOS also

objects to this request to the extent it seeks information that is not within the possession, custody

or control of ProMOS.  ProMOS objects to this request as stating an incomplete hypothetical.

ProMOS also objects to this request to the extent it seeks expert opinion.  ProMOS will disclose

its expert opinions at the time and in the manner contemplated by the Scheduling Order entered

in this case.

Subject to and without waiving the foregoing general and specific objections, ProMOS

denies this request for admission.

**REQUEST NO. 45**:

Admit that, more than a year before the filing of the Chan Patents, it was known to
provide in a computer system:  a host processor having a host address bus and a host data bus;
a system memory having storage locations addressable by the host processor, a system address
bus and a system data bus; a dual port cache memory having a system port connected to the
system data bus and a host port connected to the host data bus and cache storage locations
dynamically associable with storage locations of system memory; and a cache controller
connected to the dual port cache memory, the cache controller having a first port connected to
the host address bus and a second port connected to the system address bus such that the dual
port cache memory and the cache controller are connected in parallel between the host
processor and the system memory.

**RESPONSE TO REQUEST NO. 45**:

ProMOS objects to this request on the ground that it is vague and ambiguous and because the claim terms of the Chan patents have not yet been construed by the Court. ProMOS also objects to this request to the extent it seeks information that is not within the possession, custody or control of ProMOS.  ProMOS objects to this request as stating an incomplete hypothetical. ProMOS also objects to this request to the extent it seeks expert opinion.  ProMOS will disclose its expert opinions at the time and in the manner contemplated by the Scheduling Order entered in this proceeding.

Subject to and without waiving the foregoing general and specific objections, ProMOS denies this request for admission.

**REQUEST NO. 46**:

Admit that ProMOS has no information about the circumstances and/or need that led to the inventions claimed in the Chan Patents.

**RESPONSE TO REQUEST NO. 46**:

ProMOS objects to this request on the ground that it is vague and ambiguous.  ProMOS also objects to this request to the extent it seeks expert opinion.  ProMOS will disclose its expert opinions at the time and in the manner contemplated by the Scheduling Order entered in this case.  ProMOS further objects to this request to the extent it seeks information protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable claim of privilege.

Subject to and without waiving the foregoing general and specific objections, ProMOS denies this request for admission.   ProMOS further avers that it anticipates expert opinions to address this issue in the time and manner prescribed by the Scheduling Order entered in this proceeding.

**REQUEST NO. 47**:

Admit that ProMOS has no information as to whether the abandoned patent application from which the '709 Patent and the '241 Patent claim priority shows conception of the inventions disclosed and claimed in the '709 Patent or the '241 Patent.

**RESPONSE TO REQUEST NO. 47**:

ProMOS objects to this request on the ground that it is vague and ambiguous and because

the claim terms of the Chan patents have not yet been construed by the Court. ProMOS also

objects to this request to the extent it seeks expert opinion.  ProMOS will disclose its expert

opinions at the time and in the manner contemplated by the Scheduling Order entered in this

case.  ProMOS further objects to this request to the extent it seeks information protected from

disclosure by the attorney-client privilege, the work product doctrine, or other applicable claim

of privilege.

Subject to and without waiving the foregoing general and specific objections, ProMOS

denies this request for admission.  ProMOS further avers that it anticipates expert opinions to

address this issue in the time and manner prescribed by the Scheduling Order entered in this

proceeding.

**REQUEST NO. 48**:

Admit that ProMOS does not know the date the inventions claimed in the Chan Patents were ready for patenting.

**RESPONSE TO REQUEST NO. 48**:

ProMOS objects to this request on the ground that it is vague and ambiguous and because

the claim terms of the Chan patents have not yet been construed by the Court.  ProMOS also

objects to this request to the extent it seeks information that is not within the possession, custody

or control of ProMOS.  ProMOS also objects to this request to the extent it seeks expert opinion.

ProMOS will disclose its expert opinions at the time and in the manner contemplated by the

Scheduling Order entered in this case. ProMOS further objects to this request to the extent it seeks information protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable claim of privilege.

Subject to and without waiving the foregoing general and specific objections, ProMOS states that it has no non-privileged, non-work product information regarding the date the inventions claimed in the Chan patents were ready for patenting. ProMOS further avers that it anticipates eliciting expert testimony on this issue in the time and manner prescribed by the Scheduling Order entered in this proceeding.

**REQUEST NO. 49**:

Admit that ProMOS has no information about the invention documentation and disclosure procedures of MOS Electronics Corporation

**RESPONSE TO REQUEST NO. 49**:

ProMOS objects to this request on the ground that it is vague and ambiguous, particularly with regard to the phrase "invention documentation and disclosure procedures."

Subject to and without waiving the foregoing general and specific objections, ProMOS admits this request for admission.

**REQUEST NO. 50**:

Admit that ProMOS has no information about the nature and circumstances surrounding any visit to MOS Electronics Corporation by any customer of MOS Electronics Corporation.

**RESPONSE TO REQUEST NO. 50**:

ProMOS objects to this request on the ground that it is vague and ambiguous, particularly with regard to the phrase "nature and circumstances surrounding any visit to MOS Electronics Corporation by any customer of MOS Electronics Corporation."

Subject to and without waiving the foregoing general and specific objections, ProMOS is not presently able to admit or deny this request for admission due to the vague and ambiguous

language identified above.

**REQUEST NO. 51**:

Admit that ProMOS has no information as to whether any MOS Electronics Corporation documents ProMOS produced in this litigation shows conception of the invention disclosed and claimed in the '709 Patent or the '241 Patent.

**RESPONSE TO REQUEST NO. 51**:

ProMOS objects to this request on the ground that it is vague and ambiguous and because

the claim terms of the Chan patents have not yet been construed by the Court. ProMOS also

objects to this request to the extent it seeks expert opinion.  ProMOS will disclose its expert

opinions at the time and in the manner contemplated by the Scheduling Order entered in this

case.  ProMOS further objects to this request to the extent it seeks information protected from

disclosure by the attorney-client privilege, the work product doctrine, or other applicable claim

of privilege.

Subject to and without waiving the foregoing general and specific objections, ProMOS

denies this request for admission.  ProMOS further avers that it anticipates that expert opinions

will address whether particular documents show conception of the inventions disclosed and

claimed in the Chan patents in the time and manner prescribed by the Scheduling Order entered

in this proceeding.

**REQUEST NO. 52**:

Admit that ProMOS has no information that any document drafted by the inventor of the Chan Patents dated prior to June 27, 1990 shows conception of the invention disclosed and claimed in the '709 Patent or the '241 Patent.

**RESPONSE TO REQUEST NO. 52**:

ProMOS objects to this request on the ground that it is vague and ambiguous and because

the claim terms of the Chan patents have not yet been construed by the Court.  ProMOS also

objects to this request to the extent it seeks expert opinion.  ProMOS will disclose its expert

opinions at the time and in the manner contemplated by the Scheduling Order entered in this

case.  ProMOS further objects to this request to the extent it seeks information protected from

disclosure by the attorney-client privilege, the work product doctrine, or other applicable claim

of privilege.

Subject to and without waiving the foregoing general and specific objections, ProMOS

denies this request for admission.

**REQUEST NO. 53**:

Admit that ProMOS has no information as to whether the document bearing Bates
numbers PRS DEL 009447-009455 shows conception of the invention disclosed and claimed
in the'709 Patent or the '241 Patent.

**RESPONSE TO REQUEST NO. 53**:

ProMOS objects to this request on the ground that it is vague and ambiguous and because

the claim terms of the Chan patents have not yet been construed by the Court.  ProMOS also

objects to this request to the extent it seeks expert opinion.  ProMOS will disclose its expert

opinions at the time and in the manner contemplated by the Scheduling Order entered in this

case.  ProMOS further objects to this request to the extent it seeks information protected from

disclosure by the attorney-client privilege, the work product doctrine, or other applicable claim

of privilege.

Subject to and without waiving the foregoing general and specific objections, ProMOS

denies this request for admission.

**REQUEST NO. 54**:

Admit that ProMOS has no information as to whether the document bearing Bates
numbers PRS DEL 009343-009380 shows conception of the invention disclosed and claimed
in the '709 Patent or the '241 Patent.

**RESPONSE TO REQUEST NO. 54**:

ProMOS objects to this request on the ground that it is vague and ambiguous and because

the claim terms of the Chan patents have not yet been construed by the Court. ProMOS also objects to this request to the extent it seeks expert opinion. ProMOS will disclose its expert opinions at the time and in the manner contemplated by the Scheduling Order entered in this case. ProMOS further objects to this request to the extent it seeks information protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable claim of privilege.

Subject to and without waiving the foregoing general and specific objections, ProMOS denies this request for admission.

**REQUEST NO. 55**:

Admit that ProMOS has no information as to whether the document bearing Bates numbers PRS DEL 015762-015765 shows conception of the invention disclosed and claimed in the '709 Patent or the '241 Patent.

**RESPONSE TO REQUEST NO. 55**:

ProMOS objects to this request on the ground that it is vague and ambiguous and because the claim terms of the Chan patents have not yet been construed by the Court. ProMOS also objects to this request to the extent it seeks expert opinion. ProMOS will disclose its expert opinions at the time and in the manner contemplated by the Scheduling Order entered in this case. ProMOS further objects to this request to the extent it seeks information protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable claim of privilege.

Subject to and without waiving the foregoing general and specific objections, ProMOS denies this request for admission.

**REQUEST NO. 56**:

Admit that ProMOS has no information as to whether the document bearing Bates numbers PRS DEL 015826-015869 shows conception of the invention disclosed and claimed in the '709 Patent or the '241 Patent.

**RESPONSE TO REQUEST NO. 56**:

ProMOS objects to this request on the ground that it is vague and ambiguous and because the claim terms of the Chan patents have not yet been construed by the Court.  ProMOS also objects to this request to the extent it seeks expert opinion.  ProMOS will disclose its expert opinions at the time and in the manner contemplated by the Scheduling Order entered in this case.  ProMOS further objects to this request to the extent it seeks information protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable claim of privilege.

Subject to and without waiving the foregoing general and specific objections, ProMOS denies this request for admission.

**REQUEST NO. 57**:

Admit that ProMOS has no information as to whether the document bearing Bates numbers PRS DEL 009416-009428 shows conception of the invention disclosed and claimed in the '709 Patent or the '241 Patent.

**RESPONSE TO REQUEST NO. 57**:

ProMOS objects to this request on the ground that it is vague and ambiguous and because the claim terms of the Chan patents have not yet been construed by the Court. ProMOS also objects to this request to the extent it seeks expert opinion.  ProMOS will disclose its expert opinions at the time and in the manner contemplated by the Scheduling Order entered in this case.  ProMOS further objects to this request to the extent it seeks information protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable claim of privilege.

Subject to and without waiving the foregoing general and specific objections, ProMOS denies this request for admission.

**REQUEST NO. 58**:

Admit that ProMOS has no information as to whether the document bearing Bates numbers PRS DEL 009383-009412 shows conception of the invention disclosed and claimed in the '709 Patent or the '241 Patent.

**RESPONSE TO REQUEST NO. 58**:

ProMOS objects to this request on the ground that it is vague and ambiguous and because the claim terms of the Chan patents have not yet been construed by the Court.  ProMOS also objects to this request to the extent it seeks expert opinion.  ProMOS will disclose its expert opinions at the time and in the manner contemplated by the Scheduling Order entered in this case.  ProMOS further objects to this request to the extent it seeks information protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable claim of privilege.

Subject to and without waiving the foregoing general and specific objections, ProMOS denies this request for admission.

**REQUEST NO. 59**:

Admit that the abandoned application from which the '709 and '241 Patents claim priority does not disclose a read hold register as claimed in the '709 or '241 Patents.

**RESPONSE TO REQUEST NO. 59**:

ProMOS objects to this request on the ground that it is vague and ambiguous and because the claim terms of the Chan patents have not yet been construed by the Court.  ProMOS also objects to this request to the extent it seeks expert opinion.  ProMOS will disclose its expert opinions at the time and in the manner contemplated by the Scheduling Order entered in this case.  ProMOS further objects to this request to the extent it seeks information protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable claim of privilege.

Subject to and without waiving the foregoing general and specific objections, ProMOS denies this request for admission.

**REQUEST NO. 60**:

Admit that the abandoned application from which the '709 and '241 Patents claim priority does not disclose a memory update register as claimed in the '709 or '241 Patents.

**RESPONSE TO REQUEST NO. 60**:

ProMOS objects to this request on the ground that it is vague and ambiguous and because the claim terms of the Chan patents have not yet been construed by the Court. ProMOS also objects to this request to the extent it seeks expert opinion. ProMOS will disclose its expert opinions at the time and in the manner contemplated by the Scheduling Order entered in this case. ProMOS further objects to this request to the extent it seeks information protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable claim of privilege.

Subject to and without waiving the foregoing general and specific objections, ProMOS denies this request for admission.

ASHBY & GEDDES

_____

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888

*Attorneys for Plaintiff*
*ProMOS Technologies, Inc.*

*Of Counsel*:

William H. Wright
HOGAN & HARTSON LLP
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA  90067
(310) 785-4600

Steven J. Routh
Sten A. Jensen
HOGAN & HARTSON LLP
555 Thirteenth Street, NW
Washington, DC  20004
(202) 637-5600

Dated: January 22, 2008
187565.1

EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PROMOS TECHNOLOGIES, INC.,  )
                            )
            Plaintiff,      )        C.A. No. 06-788-JJF
                            )
    v.                      )
                            )
FREESCALE SEMICONDUCTOR, INC.,  )
                            )
            Defendant.      )

**PLAINTIFF PROMOS TECHNOLOGIES, INC.'S OBJECTIONS AND RESPONSES TO DEFENDANT FREESCALE'S FOURTH SET OF INTERROGATORIES (NOS. 30-33)**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, ProMOS Technologies, Inc. ("ProMOS") hereby submits the following Objections and Responses to Freescale Semiconductor, Inc.'s Fourth Set of Interrogatories (Nos. 30-33).

**GENERAL STATEMENT AND OBJECTIONS**

ProMOS incorporates herein by reference the general statement and objections from its previous responses to Freescale's interrogatories, including but not limited to its Response to Defendant Freescale Semiconductor, Inc.'s First Set of Interrogatories (Nos. 1-17).

**SPECIFIC OBJECTIONS AND RESPONSES**

**INTERROGATORY NO. 30:**

With respect to any response by ProMOS to a request for admission served by Freescale, other than an unqualified admission, state each fact that supports or is contrary to the response, identify each document that relates to each such fact, and identify each person with knowledge of such facts.

**RESPONSE NO. 30:**

ProMOS objects to this interrogatory as overly broad and unduly burdensome. ProMOS also objects to this interrogatory to the extent it seeks information that is protected from disclosure by the attorney-client privilege, the work product doctrine, and/or other applicable

1

claim of privilege.  ProMOS also objects to this interrogatory as premature and to the extent that

it seeks information that is expected to be the subject of expert reports and/or testimony.

ProMOS will provide information regarding its expert opinions in the time and manner

prescribed in the Scheduling Order entered in this case.  ProMOS further objects to this

interrogatory because it seeks to circumvent the limits agreed upon by the parties and established

by the Court for the number of interrogatories that each party may ask.

Subject to and without waiving the foregoing general and specific objections, ProMOS

refers to its individual responses to Freescale's Second Set of Requests for Admission (Nos. 7-

60), which are incorporated herein by reference.

## INTERROGATORY NO. 31:

Identify each fact witness you expect to call or may call at trial, state the areas of each
fact witness's expected testimony and, for each such witness that was not identified in your
Initial Disclosures or your answers to Freescale's interrogatories, state the reason for that
omission.

## RESPONSE NO. 31:

ProMOS objects to this interrogatory on the ground that it seeks information protected

from disclosure by the attorney-client privilege, the work product doctrine and/or other

applicable claim of privilege.  ProMOS also objects to this interrogatory to the extent that it

seeks to require ProMOS to provide information regarding trial witnesses in advance of the

deadline set by Local Rule 16.3(c)(7) and/or to the extent it seeks to impose a greater burden

upon ProMOS than that prescribed by the applicable Rules.

Subject to and without waiving the foregoing general and specific objections, ProMOS

states that it has not yet determined which fact witnesses it expects to call at trial.  ProMOS will

provide that information pursuant to the timing and process prescribed by Local Rule 16.3(c)(7).

**INTERROGATORY NO 32:**

Identify and describe any industry standard royalty rates or expected ranges of royalty rates in the markets for DRAMs, on the one hand, and microprocessors and processors, on the other hand, describe how those rates relate to each other, identify each document relating to the facts supporting your answer and each person with knowledge of such facts.

**RESPONSE NO. 32:**

ProMOS objects to this interrogatory on the ground that it is vague, ambiguous, and

overly broad.  ProMOS also objects to this interrogatory to the extent that it seeks information

protected from disclosure by the attorney-client privilege, the work product doctrine, and/or

other applicable claim of privilege.  ProMOS also objects to this interrogatory to the extent it

seeks information which is expected to be the subject of expert reports and/or testimony.

ProMOS will provide information regarding its expert opinions in the time and manner

prescribed in the Scheduling Order entered in this case.  ProMOS also objects to this

interrogatory to the extent that it seeks information (and the identification of documents) which

Freescale has labeled "highly confidential – outside counsel only."

Subject to and without waiving the foregoing general and specific objections, ProMOS

states that, in general, royalty rates for DRAMS are significantly lower than, for example, royalty

rates for microprocessors and processors.  In further support of this response, ProMOS refers to

the licensing agreements produced by both parties in discovery and the terms contained therein.

ProMOS anticipates that this issue will be addressed with more specificity in expert reports and

testimony.

**INTERROGATORY NO. 33:**

Identify each document no longer in existence relating to the Chan or Fortin patents, the making of any invention of those patents, the work of Chan or Fortin leading to those inventions, the assignment or acquisition of rights to those patents or inventions, or the valuation or licensing potential of those patents, and for each such document, describe the circumstances surrounding its destruction (including the date of destruction), state in full detail the contents of the documents, and identify each person with knowledge of its destruction or contents.

**RESPONSE NO. 33**

ProMOS objects to this interrogatory on the ground that it is overly broad and unduly burdensome.  ProMOS also objects to this interrogatory to the extent that it seeks information that is not within the custody, possession, or control of ProMOS, particularly to the extent it seeks information regarding documents that may have existed more than 15 years ago and/or that were in the possession of a third party rather than ProMOS.

Subject to and without waiving the foregoing general and specific objections, ProMOS states that it has the following information regarding specific documents that may previously have existed but which no longer exist: ProMOS has not been able to locate a lab notebook maintained by Mr. Fortin during a period that included December 2000 and in which Mr. Fortin made an entry on December 19, 2000 that relates to the inventions of the '267 patent.  ProMOS is not aware of the current location of that lab notebook or of any facts relating to its misplacement and/or destruction, although it has been informed by Mr. Fortin that he believes he left it at Moselic Vitelic Corporation ("MVC") when he left the company's employment in approximately March of 2003.  At the time, MVC was a 100% owned subsidiary of Mosel Vitelic, Inc. ("MVI").  MVI subsequently transferred to ProMOS 50% of its ownership interest in MVC.  In further response to this interrogatory, ProMOS refers to the testimony of Hsing Tuan on this issue given on December 19 and 20, which is incorporated herein by reference.

ASHBY & GEDDES

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Plaintiff*
*ProMOS Technologies, Inc.*

*Of Counsel*:

William H. Wright
HOGAN & HARTSON LLP
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA  90067
(310) 785-4600

Steven J. Routh
Sten A. Jensen
HOGAN & HARTSON LLP
555 Thirteenth Street, NW
Washington, DC  20004
(202) 637-5600

Dated: January 22, 2008
187561.v1

P9836 2008/01/22 16:36:39

**VERIFICATION TO PROMOS TECHNOLOGIES, INC.'S OBJECTIONS AND
RESPONSES TO DEFENDANT FREESCALE'S FOURTH SET OF
INTERROGATORIES TO PLAINTIFF PROMOS (NOS. 30-33)**

I, _Doris Wang_, declare under penalty of perjury that the following statements are true:

1.     I am the _IP director_ at ProMOS Technologies, Inc. ("ProMOS") and am duly authorized to sign this verification on behalf of ProMOS.

2.     I have read ProMOS's Technologies, Inc.'s Objections and Responses to Freescale's Fourth Set of Interrogatories to Plaintiff Promos (Nos. 30-33), and am aware of their contents.

3.     To the best of my knowledge, information, and belief founded upon reasonable inquiry, the factual contentions contained in these responses are true and correct and have evidentiary support or are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

I declare under penalty of perjury under the laws of the United States of America that the forgoing is true and correct.

Executed on January 22, 2008

_Doris Wang_
NAME

6

WDC - 022856/000005 - 2660439 v1