# ASHBY & GEDDES

ATTORNEYS AND COUNSELLORS AT LAW

500 DELAWARE AVENUE

P. O. BOX 1150

WILMINGTON, DELAWARE 19899

TELEPHONE
302-654-1888

FACSIMILE
302-654-2067

May 13, 2008

VIA ELECTRONIC FILING and HAND DELIVERY

The Honorable Vincent J. Poppiti
Special Master
Blank Rome LLP
Chase Manhattan Center, Suite 800
Wilmington, DE 19801-4226

**REDACTED
PUBLIC VERSION**

Re:   *ProMOS Technologies, Inc. v. Freescale Semiconductor, Inc.*,
C.A. No. 06-788-JJF (DM   )

Dear Judge Poppiti:

Plaintiff ProMOS Technologies, Inc. ("ProMOS") respectfully seeks a ruling from the Special Master's imposing on Freescale Semiconductor, Inc. ("Freescale") sanctions in an amount sufficient to compensate ProMOS for the unnecessary costs, expenses, and delays imposed by Freescale's failure of to comply with its discovery obligations throughout much of the first year of this proceeding, including by the following:

1) The unnecessary legal and expert fees and costs that ProMOS was forced to incur as a result of Freescale's insistence that ProMOS send its counsel and expert to Jones Day's office in Cleveland to review Freescale's RTL materials – which totaled many thousands of pages in length – on a single off-line laptop computer, without printer access or software necessary to analyze the RTL;

2) The unnecessary legal and expert fees and costs that ProMOS was forced to incur trying to decipher the RTL, once it was finally produced, as a result of Freescale's refusal to produce microarchitecture documents and other technical documents critical to understanding the RTL (including, for example, directories of the signal names used in the RTL and schematics showing the design and layout of the accused products which Freescale repeatedly represented to the Court did not exist); and

3) The unnecessary legal fees that ProMOS was forced to incur in order to obtain a complete list of Freescale data cache-containing products, including many products that contained cores and/or that are virtually identical to products specifically identified by ProMOS early in the case.

{00216587;v1}

The Honorable Vincent J. Poppiti
May 13, 2008
Page 2

On Item #1, on October 31, 2007, Judge Farnan granted ProMOS' Motion to Compel, rejected Freescale's positions, and expressly stated that the issue of sanctions would be reserved pending further review of Freescale's conduct in discovery. On Item #2, in January and February 2008, Your Honor ordered Freescale to produce documents previously withheld from discovery by Freescale without justification. And on Item #3, in April 2008, Freescale belatedly disclosed the

**REDACTED**

The history of Freescale's discovery misconduct is catalogued in ProMOS's motions to compel that were ruled on by Judge Farnan on October 31 and December 20, 2007, and in letters to the Special Master of January 11, 2008 and March 10, 2008, which are incorporated herein by reference. The main issues that serve as the basis for the request sanctions are summarized below. ProMOS requests that Your Honor issue a ruling on the scope of Freescale's sanctionable conduct and then permit ProMOS to make a separate submission on the extent of attorneys' fees and costs incurred by ProMOS as a result of that conduct.

1.   **Freescale's Refusal to Produce RTL Except At Its Attorneys' Office in Cleveland On a Single Off-Line Computer With No Ability to Evaluate or Print Relevant RTL**

**REDACTED**

*First*, Freescale insisted on producing the RTL solely at its attorneys' office in Cleveland, Ohio on a single off-line laptop computer loaded with limited software and no printing capabilities. Freescale failed to supply software needed to analyze the RTL, rendering it of limited utility to ProMOS. Ex. 3 to January 11 submission (Wedig Decl. ¶ 7). Indeed, because the laptop had only a single screen, ProMOS's experts could not even review the RTL documentation for two modules of the same product at the same time to see how they interact or compare. Ex. 1 (September 12, 2007 Letter) at 1. Freescale also refused ProMOS's request that it be permitted to bring a printer into the conference room, and instead insisted that all print requests be filtered through Freescale's counsel. Id. As noted in ProMOS's filings with the Court, Freescale then proceeded to ignore every request made by ProMOS's counsel for printouts of documents, including a document that ProMOS informed Freescale it wanted to file with the Court in connection with ProMOS's renewed motion to compel.

{00216587;v1}

The Honorable Vincent J. Poppiti
May 13, 2008
Page 3

*Second*, the RTL made available by Freescale was incomplete, comprising only a portion of the chip for many of the products, and completely lacking any information for other products. These problems are summarized more fully in the attached Declaration of Robert G. Wedig, Ex. 3 to January 11 submission, which is incorporated herein by reference.

*Third*, Freescale produced the TTL materials in .txt format without any of the software that would normally be used by engineers to review, analyze, and convert the RTL documentation into schematics – thus rendering the materials of limited utility to ProMOS in terms of mapping the design of the products. Ex. 3 to January 11 submission (Wedig Decl.) ¶ 7.

ProMOS sent three people to Jones Day's offices in Cleveland, and each of them spent between one and three full days reviewing the RTL. At the conclusion of that review, ProMOS's expert opined that the various barriers to meaningful review that Freescale had erected rendered the time he spent in Cleveland "of little or no value to my work in this matter, other than to identify the flawed nature of the production itself." Id. ¶ 12.

In his October 31 Order, Judge Farnan directed Freescale to produce electronic versions of the RTL documentation, specifically finding that Freescale's effort to shield the RTL from normal discovery under Paragraph 4 of the Protective Order was unwarranted. Ex. 5 to January 11 submission. Judge Farnan also specifically "RESERVED on Plaintiff's requests for attorneys' fees and costs pending the Court's further review of Defendant's conduct." Id.

Now that discovery is nearing an end, and in light of Freescale's additional discovery misconduct (some of which are highlighted herein and others are which are described in the January 11, 2008 and March 10, 2008 submissions), the time has come for Freescale to be accountable for its discovery misconduct. ProMOS therefore respectfully requests that Freescale be ordered to reimburse ProMOS for its legal and expert fees and costs incurred in connection with the trip to Cleveland, which resulted in no useful work product.

2.  **Freescale's Refusal to Produce Microarchiture Documents, Schematics, and Other Technical Documents Critical to Any Review of the RTL Even for the July 2007 List**

Even after Freescale produced electronic RTL, as required by the Court's October 31 Order, it continued to withhold microarchitecture documents and other technical documents critical to any meaningful review of the RTL for the 160 or so products that ProMOS had identified in July 2007.

**REDACTED**

At the same time, Freescale was pushing for ProMOS to complete infringement contentions based on the RTL that Freescale was in the process of producing. As a result, ProMOS was forced to waste significant time and money attempting to analyze the RTL without key documentation needed to make the perform that task efficiently.

{00216587;v1}

### (a) Microarchitecture Documents:

Microarchitecture documents are English language documents that illustrate and explain the upper-level and mid-level organization of the design for each product or processor and serve as a roadmap for someone who wishes to review RTL materials or work on future changes to the design of the product. Ex. 6 to January 11 submission (Neuhauser Decl.). By withholding microarchitecture documents until January and February 2008, Freescale forced ProMOS to waste time and money for several independent reasons:

*First,* without the microarchitecture documents, ProMOS's experts were left to guess about how the various blocks of RTL fit together to create a complete processor or product. As discussed in the Declaration of Charlie Neuhauser that accompanied ProMOS's January 11, 2008 submission to the Special Master, microarchitecture documents effectively provide high-level and mid-level roadmaps for the various components of the products at issue. Microarchitecture documents help an engineer decide which portion of the RTL code to focus on when trying to locate specific functions and circuitry related of the cache memory controller, for example. While it is technically possible for one skilled in the art to analyze RTL without access to the associated microarchitecture documents, it would be very time consuming.

*Second,* without the microarchitecture documents, ProMOS's experts were forced to devote extensive resources to deciphering the coded signal names used in the RTL. The RTL materials produced by Freescale often refer to individual signals by code names **REDACTED REDACTED**, without providing a definition of that signal name or a description of the signal path and function. The best way to trace signal paths when reviewing RTL is to cross-reference the signal code name with the definition and description provided in a microarchitecture document. This issue is discussed further in ProMOS's submission to the Special Master of January 11, 2008.

### (b) Schematics

**REDACTED**

Freescale eventually produced a number of these schematics in February and March 2008 – by which point ProMOS's expert witnesses had already expended a great deal of time trying to decipher the RTL without them. **REDACTED**

{00216587;v1}

The Honorable Vincent J. Poppiti
May 13, 2008
Page 5

**REDACTED**
Had these schematics been produced in May 2007, as required by the Federal Rules of Civil Procedure, ProMOS would have been spared the unnecessary expense of having its experts attempt to analyze the RTL for accused products without the appropriate tools to understand the RTL.

    (c)    **The Special Master's Orders**

During January and February 2008, Your Honor issued a number of orders that required Freescale to produce technical documents that were called for by ProMOS discovery requests that had been pending since May 2007. As a result of those Orders, Freescale produced over a hundred thousand pages of additional documents in January and February 2008, including critical schematics and microarchitecture documents. The delay by Freescale in the production of those documents created extensive, unnecessary delay and costs in discovery.

3.    **Freescale's Failure to Provide a List of Products Containing Data Cache And Other Tactical Delays in Discovery**

Finally, ProMOS seeks reimbursement for the legal fees it incurred seeking Freescale's compliance with its own discovery obligations, including providing a response to Interrogatory No. 1 and supplementing the inaccurate deposition testimony of Mr. Snyder regarding Freescale's data-cache containing products.

As explained more fully in ProMOS's January 11 and March 10 submissions, Freescale has engaged in a series of "cat-and-mouse" discovery games, including the following:

- Refusing to produce any technical documents beyond those available on Freescale's website for over four months, insisting that it had no obligation to do so until ProMOS identified by product number each specific Freescale product containing data cache, see January 11 submission at 2-3; March 17 submission at 1;

- After ProMOS accepted Freescale's invitation in July 2007 to compile a preliminary list of accused products that appeared, based on Freescale's representation that such a list could be compiled from a review of the Freescale website, Freescale produced limited technical documents for those specific products, but withheld other technical documents relating to those products as well as other similar products, see January 11 submission at 2-3; March 17 submission at 1;

- Freescale further refused to produce a Rule 30(b)(6) witness to testify about its data-cache containing products and the types of technical documents maintained by Freescale relating thereto in response to a July 3, 2007 deposition notice for four months, until ordered to do so by the Court on October 31, 2007, see January 11 submission at 2-3, March 17 submission at 2;

- When Freescale finally produced a Rule 30(b)(6) witness, pursuant to the Court's October 31 Order, the witness (Mr. Snyder) falsely testified **REDACTED**

{00216587;v1}

**REDACTED**

- At no point in time did Freescale seek to supplement Mr. Snyder's inaccurate testimony, nor did it supplement its interrogatory answers or documents production to reflect the additional data cache-containing products;

- 

- 

**REDACTED**

- 

Had Freescale simply done at the outset of discovery what the Federal Rules of Civil Procedure require it to do – that is, answer Interrogatory No. 1 and produce relevant documents – ProMOS would have been spared the necessity of spending a considerable amount of time and legal fees seeking Freescale's compliance with the most basic of discovery obligations. Freescale therefore should be required to reimburse ProMOS for its attorneys' fees and costs incurred in seeking to induce Freescale's compliance with its discovery obligations.

\* \* \*

The cumulative effect of the foregoing instances of discovery misconduct is that ProMOS was forced to incur hundreds of thousands of dollars in legal and expert fees and costs that could have easily been avoided had Freescale simply done what the Federal Rules of Civil Procedure require it to do – produce documents and provide information in response to straight-forward discovery requests. It is well settled that sanctions are appropriate in these circumstances, particularly in light of the fact that the document discovery deadline originally closed on August 15, 2007 pursuant to Judge Schell's Rule 16 Scheduling Order. See, e.g., Tracinda Corp. v. Daimlerchrysler AG, 2005 WL 927187 (D. Del. 2005) (affirming special master's issuance of $551,000 in sanctions against defendants for withholding documents from production, even though defendant did not act intentionally or in bad faith). Moreover, as the cases ProMOS submitted to the Special Master on March 24, 2008 make clear, Freescale should be sanctioned for its ongoing refusal to correct or supplement Mr. Snyder's inaccurate Rule 30(b)(6) deposition

The Honorable Vincent J. Poppiti
May 13, 2008
Page 7

testimony regarding the identity of Freescale Products. <u>See</u> ProMOS's March 24, 2008 E-mail to Special Master.

For the foregoing reasons, ProMOS respectfully requests that it be awarded its counsel and expert fees and costs incurred in connection with the foregoing matters.

                                   Respectfully,

                                   /s/ *Lauren E. Maguire*

                                   Lauren E. Maguire

LEM: nml
Attachments

cc:    Mary B. Graham, Esquire (via electronic mail)
       Steven J. Routh, Esquire (via electronic mail)
       David L. Witcoff, Esquire (via electronic mail)

{00216587;v1}

# EXHIBITS 1 – 3

# REDACTED IN THEIR ENTIRETY