# ASHBY & GEDDES

ATTORNEYS AND COUNSELLORS AT LAW

500 DELAWARE AVENUE

P. O. BOX 1150

WILMINGTON, DELAWARE 19899

TELEPHONE
302-654-1888

FACSIMILE
302-654-2067

May 20, 2008

The Honorable Vincent J. Poppiti  
Special Master  
Blank Rome LLP  
Chase Manhattan Center, Suite 800  
Wilmington, DE 19801-4226

VIA HAND DELIVERY  
and ELECTRONIC FILING

Re:   *ProMOS Technologies, Inc. v. Freescale Semiconductor, Inc.*,  
       C.A. No. 06-788-JJF (DM     )

Dear Judge Poppiti:

Plaintiff ProMOS Technologies, Inc. ("ProMOS") respectfully submits this opposition to the letter brief filed by Freescale Semiconductor, Inc. ("Freescale") seeking to compel ProMOS to respond to Freescale's Interrogatory No. 30. In what purports to be a single interrogatory, Freescale's Interrogatory No. 30 asks ProMOS to do the following for each of 60 different Requests for Admission ("RFAs") served by Freescale: (i) state each fact that supports or is contrary to ProMOS's response to each RFA; (ii) identify each document that relates to each identified fact; and (iii) identify each person with knowledge of each such fact. As such, Interrogatory No. 30 runs afoul of the limit of 35 interrogatories set by Judge Farnan in this case, not just by a few but by at least 57 interrogatories. Federal courts consistently have rejected the use of RFAs to circumvent limits on interrogatories in this manner. Moreover, Interrogatory No. 30 inappropriately seeks to convert the RFA process into a device for expanding discovery on new or additional factual issues – as opposed to its intended purpose of narrowing factual issues – a strategy that has been disfavored by federal courts. ProMOS therefore should not be required to supplement its answer to Interrogatory No. 30.

**(i) Under well-established counting rules, Interrogatory No. 30 counts as 60 separate interrogatories.**

Interrogatory No. 30 incorporates by reference 60 different RFAs that were served by Freescale in discovery. It is well settled, therefore, that Freescale's Interrogatory No. 30 counts as 60 separate interrogatories. Accordingly, the 92 total interrogatories served by Freescale vastly exceeds the limit of 35 interrogatories established by Judge Farnan in his Rule 16 Scheduling Order. See, e.g., Wolk v. Green, 2007 WL 3203050, *2 n.4 (N.D. Cal. Oct. 29, 2007) ("[a]n

The Honorable Vincent J. Poppiti
May 20, 2008
Page 2

interrogatory inquiring as to basis of responses to requests for admissions is treated as an interrogatory with subparts" and each RFA should be counted as a separate interrogatory); Stevens v. Federated Mutual Insur. Co., 2006 WL 2079053, *6 (N.D. W. Va. July 25, 2006) (finding that a single interrogatory counted as 11 interrogatories because it sought information regarding 11 different RFAs); American Chiropractic Ass'n v. Trigon Healthcare, Inc., 2002 WL 534459, *3 (W.D. Va. Mar. 18, 2002) (counting the 7 RFAs referenced in a single interrogatory as 7 separate interrogatories).

Moreover, it is important to note that Freescale cannot, as it has attempted to do in its letter brief, simply count the 12 RFAs that it wishes to have addressed now, skipping over the remaining 48 RFAs as though they do not count toward the limit. See Walker v. Lakewood Condominium Owners Ass'n, 186 F.R.D. 584, 589 (C.D. Cal. 1999) ("a party cannot unilaterally and randomly select those supernumerary interrogatories [to] which it will seek to compel answers"). ProMOS cannot be expected to have known which of the RFAs Freescale cared about the most at the time the discovery was served. Moreover, permitting a party to abandon interrogatories after they are served and thereby skip them for counting purposes only creates the incentive for that party to "simultaneously circumvent the whole purpose of the numerical limit and harass an opponent by serving the maximum number of interrogatories and then 'withdrawing' all of them on or after the date the opposing party incurred the burden of preparing and serving objections or verified answers." Id. at 588. Freescale must justify the interrogatory as it was originally drafted (*i.e.*, with 60 different sub-parts), not as Freescale would re-draft the interrogatory now if it had the opportunity to do so.

Nor can Freescale succeed in lumping any of the RFAs together simply because they relate to the same broad issue in the case. See, e.g., American Chiropractic Ass'n v. Trigon Healthcare, Inc., 2002 WL 534459, *3 (W.D. Va. Mar. 18, 2002) (counting each referenced RFA as a separate interrogatory because "[a]lthough the theme of the requests is similar, each may be fully and completely answered without reference to the others"). The only case cited by Freescale in support of its position is Estate of Manship v. U.S., 232 F.R.D. 552, 557 (M.D. La. 2005). But the court in that case actually found that the interrogatory at issue counted as numerous interrogatories because it referenced numerous RFAs. Id. Moreover, the Manship court premised its ruling on Safeco v. Rawstron, 181 F.R.D. 441 (C.D. Cal. 1998), which in turn noted that "as a practical matter, [it] will almost always be the case" that RFAs will relate to separate subject matters and thus that "*a strong presumption that each underlying request for admission constitutes a separately countable subpart should be adopted.*" Id. at 446 (emphasis added). The court noted that one of the few exceptions to this general rule would occur, for example, in the case of "an interrogatory seeking the basis for the denial of three requests for admissions which asked the responding party to admit that a specified meeting occurred on May 25, 26, or May 27." Id. That certainly is not the nature of the RFAs at issue here. Although Freescale has attempted to group them into broad categories such as "licensing," "invalidity," and "conception/reduction to practice," the factual issues presented by each of the RFAs is distinct. For example, the 6 RFAs that Freescale has lumped together as relating to "invalidity" (RFAs No. 41-45) seek admissions regarding entirely separate elements of a number of different claims in two different patents. Similarly, the 5 RFAs that Freescale has lumped together as relating to

The Honorable Vincent J. Poppiti
May 20, 2008
Page 3

"conception/reduction to practice" (RFAs No. 46-48 and 59-60) actually relate to 5 separate factual issues – (i) the circumstances and needs that led to the claimed inventions; (ii) whether the original abandoned application shows conception of the claimed inventions; (iii) the date the claimed inventions were ready for patenting; (iv) whether the original application discloses a read hold register; and (v) whether the abandoned application discloses a memory update register. And Freescale has not even tried to lump together any of the other 48 RFAs, all of which must be counted toward the interrogatory limit even though Freescale has not elected to press them in its motion to compel. See Walker, 186 F.R.D. at 589.

**(ii) Freescale should not be granted the right to serve additional interrogatories in this case in order to compel ProMOS to respond to Interrogatory No. 30.**

Freescale next suggests that if its first argument fails, the Special Master should expand the number of interrogatories in this case and then compel ProMOS to respond to Interrogatory No. 30. In order to require ProMOS to respond to Interrogatory No. 30, this Court would have to grant Freescale an additional 57 interrogatories beyond the original 35, for as noted above, Freescale cannot simply pick and choose now which of the RFAs it wishes to have addressed, and instead is stuck with the interrogatory as written. Walker, 186 F.R.D. at 589. There simply is no basis for expanding the number of interrogatories allotted to Freescale in this case from 35 to 92.

In any event, Freescale's request seeks to turn the rules of discovery on their head. Many courts have noted that requests for admission are not a permissible method of obtaining fact discovery, but rather a mechanism for limiting the areas of proof at trial, and therefore should not be used to disguise additional interrogatories. In re Olympia Holding Corp., 189 B.R. 846, 853 (Bkrtcy N.D. Fla. 1995) ("Requests for admissions and interrogatories are not interchangeable procedures … Utilizing interrogatories disguised as requests for admissions in an attempt to circumvent a local rule limiting the number of interrogatories is an abuse of the discovery process."). As the Safeco court noted:

> The purpose of Rule 36(a) is to expedite trial by establishing certain material facts as true and thus narrowing the range of issues for trial. Their goal is to eliminate from the trial matters as to which there is no genuine dispute. Therefore, requests for admission are not principally discovery devices, and they 'are not to be treated as substitutes for discovery processes to uncover evidence.' California v. Jules Fribourg, 19 F.R.D. 432, 436 (N.D. Cal. 1955); see 7 Moore's Federal Practices § 36.02[2] (3d ed. 1991) ("Because Rule 36 was not designed to elicit information, to obtain discovery of the existence of facts, or [to] obtain production of documents, requests for admission should not be used as a method of discovery for those purposes."). Allowing service of an interrogatory which requests disclosure of all of the information on which the denials of each of 50 requests for admission were based, however, essentially transforms each request for admission into an interrogatory. This is not the purpose requests for admission were intended to serve, and because Rule 36 imposes no numerical limit on the number

{00218193;v1}

The Honorable Vincent J. Poppiti
May 20, 2008
Page 4

of requests for admission that may be served, condoning such a practice would circumvent the numerical limit contained in Rule 33(a).

Safeco, 181 F.R.D. at 445-46 (citations omitted). Freescale's inappropriate effort to convert the RFA process into a fact-gathering process should be rejected.

**(iii) It would be both premature and inappropriate to order ProMOS to incorporate specific matters into its supplementation of other discovery responses.**

Finally, Freescale asks the Special Master to order ProMOS to address the substance of the RFAs when it supplements its answers to other interrogatories (Nos. 4, 9, and 21) which Freescale asserts "relate to the subject areas at issue in Interrogatory No. 30." FSI Br. at 2. But Freescale has asserted no basis for assuming that ProMOS's supplementation of these interrogatory answers, due on June 9, will be deficient. Freescale's request therefore is premature.

Moreover, if Freescale were correct that Interrogatories No. 4, 9, and 21 call for the same information that was covered by Interrogatory No. 30, id., there would be no need to incorporate Interrogatory No. 30 into the existing requests – Freescale could simply seek the Special Master's involvement if ProMOS's responses do not address that information. To the extent, however, that Freescale is seeking to stretch those interrogatories to cover topics that are not already contained in them, this effort to retroactively revise interrogatories in order to circumvent the discovery limits should be rejected.

For the foregoing reasons, ProMOS respectfully submits that Freescale's May 13, 2008 letter brief to the Special Master should be DENIED.

                              Respectfully,

                              /s/ *Lauren E. Maguire*

                              Lauren E. Maguire

LEM:nml

cc:    Mary B. Graham, Esquire (via electronic mail)
        Steven J. Routh, Esquire (via electronic mail)
        David L. Witcoff, Esquire (via electronic mail)

{00218193;v1}