IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PROMOS TECHNOLOGIES, INC., ) | **REDACTED** |
| ) | **PUBLIC VERSION** |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 06-788 (JJF) |
| ) | |
| FREESCALE SEMICONDUCTOR, INC., ) | |
| ) | |
| Defendant. ) | |

**PROMOS'S REPLY LETTER TO THE SPECIAL MASTER
DATED MAY 23, 2008 REGARDING CUSTOMER DISCOVERY**

(DM___)

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Plaintiff*

*Of Counsel*:

William H. Wright
Hogan & Hartson LLP
1999 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
(310) 785-4672

Steven J. Routh
Sten A. Jensen
Hogan & Hartson LLP
555 Thirteenth Street, NW
Washington, DC 20004
(202) 637-6472

Dated: May 23, 2008

{00216557;v1}

Judge Poppiti:

ProMOS Technologies, Inc. ("ProMOS") respectfully submits this reply in support of its letter brief relating to customer instructions and uses of the Freescale processors.

**(i) Document Request No. 125:** The <u>only</u> argument that Freescale has made regarding Document Request No. 125 is that this issue was resolved in DM4. But that simply is not true. As Freescale repeatedly argued during the discussions before the Special Master, DM4 was focused exclusively on Freescale's obligations relating to so-called *new* products not previously identified by ProMOS in discovery. 4/9 Transcript at 46-47 (MR GOOTS: "this whole subject matter relates to newly identified products, and to somehow circle around and use it to extract an affirmative agreement relating to broader issues of discovery, relating to the products that have been accused ..., that isn't how I understood this."). And it was for that reason that the DM4 discussions were limited to products that were not on ProMOS's July 2007 list and that Freescale had previously hidden from discovery. Id. at 50 (MR. ROUTH: "I'd like to think we are getting discovery on all their products. If we are not, there may have to be another DM5. JUDGE POPPITI: I understand. MR. ROUTH: And maybe that's where we are headed. Let's focus, then, on the new products...."). The Special Master then made the comments quoted in Freescale's letter brief, to the effect that when ProMOS filed DM5, he would want to know why the issue was not raised earlier. Id. at 86. Having successfully convinced the Special Master that the July 2007 product list was outside of the scope of DM4, Freescale cannot now be heard to argue that those products were subsumed within the issues resolved in DM4. Moreover, the DM4 Agreement itself states that "nothing herein constitutes a waiver or release of, or a ruling on ... any position on issues outside the scope of DM4." Agreement ¶ 1.

With regard to ProMOS's timing in raising the issue, ProMOS could not have raised the issue any earlier than it did. Notwithstanding the August 15, 2007 document production deadline in this case, Freescale delayed in producing the vast majority of its documents in this case until February and March 2008. Indeed, since January 28, 2008, Freescale has produced a whopping 190,000 pages of documents – 50,000 more than Freescale had produced before January 28. While ProMOS is working as quickly as it can to review these documents, it cannot be faulted for not appreciating until Freescale's document production was complete that Freescale had not done what it said it would do in its discovery requests – produce documents responsive to Request No. 125 for all products listed in the July 2007 list. Ex. 2 to ProMOS May 13, 2008 letter. More significantly, it was not until Freescale argued to the Special Master that Request No. 125 was subject to a "preexisting agreement" that ProMOS learned that Freescale had withheld documents responsive to Request No. 125. 4/9 Transcript at 34 (MR. GOOTS: "it was my impression that there had been a preexisting agreement that covered this situation, and while we were willing to do that which fell within that preexisting agreement, to go beyond that was not something we thought was appropriate. And this was what I was reminded was the particular agreement, with Judge Bush's order and the subsequent agreement between the parties ...."). Your Honor has now determined that the "preexisting agreement" relied on by Freescale to withhold documents does not apply to Request No. 125, and so those documents should now be produced.

**REDACTED**

But Freescale has not done so for the remaining products listed on the July 2007 list. (Freescale does appear to have produced a number of application notes for new products identified under DM4 the day before it filed its opposition, but those documents are not the subject of this letter brief.) Moreover, Freescale cannot escape producing technical documents relating to the evaluation boards by attempting to characterize them as separate products that were dealt with in Exhibit 2 to the DM4 Agreement, because it failed to list them on Exhibit 2. Indeed, at the end of Exhibit 2, Freescale admitted that evaluation boards for any given product are subsumed within that product, noting: "The evaluation boards, evaluation modules, and developer kits ("EVM products") for these products families are not listed separately herein, as they are simply parts within an identified product family." Ex. 1.

**(ii) Document Request Nos. 123 and 124 and Interrogatory No. 32:** Freescale's arguments relating to these requests suffer from the same defects as its arguments relating to Document Request No. 125. Having fought vociferously against including any discovery disputes relating to the July 2007 list of products within the scope of DM4, Freescale cannot now be heard to argue that ProMOS somehow waived the right to raise these issues because the parties did not include them in their Agreement Regarding DM4. Again, the DM4 Agreement itself makes clear that it does not constitute "a waiver or release of, or a ruling on, .... any position on issues outside the scope of DM4." Agreement ¶ 1.

Moreover, ProMOS cannot be faulted for failing to complain about Freescale's failure to produce documents responsive to Requests No. 123 and 124 in January, when the parties were before the Special Master to discuss an extension of the discovery deadline. As noted above, Freescale produced the vast majority of documents in this case after January 28, and ProMOS had no way of knowing in advance the various ways in which the yet-to-occur document production would be defective.

**(iii) Deposition Testimony of Freescale Regarding Documents Provided to Customers:** Freescale argues that ProMOS should have complained earlier about the deficiencies at the Nash and Branson[1] depositions, but the need for this testimony largely results from Freescale's failure to rectify the deficiencies described above. Although Freescale complains that it produced other technical witnesses in response to Topic 8 in the Third Notice, none of them were designated to cover the products for which Mr. Nash and Mr. Branson were offered – the MPC55xx and the ARM-based SOC products. (This is one of many problems created by the fact that Freescale produced about a dozen different witnesses to cover the same topics – one for each product family.) Moreover, although Freescale is correct that Topic 2 in the Fifth (Marketing) notice was similar in nature to Topic 8 in the Third (Technical) Notice, Freescale's counsel specifically objected on the record of that deposition to having the witness answer any questions that relate to Topic 8 in the Third Notice or that cover "technical" documents provided to customers. See Ex. 3 to Freescale's Letter at 28. Freescale cannot now pretend that the marketing witness covered the same topics as the technical witnesses.

---

[1] The page numbers at issue for Mr. Branson's deposition are 12-13, 17-18, 28-29, 42-44.

{00219217;v1}

2

                                      Respectfully submitted,

                                      */s/ Lauren E. Maguire*

                                      Lauren E. Maguire

LEM/dmf
Attachments

cc:    Mary B. Graham, Esquire (via electronic mail)
        Steven J. Routh, Esquire (via electronic mail)
        David L. Witcoff, Esquire (via electronic mail)

{00219217;v1}                            3

# EXHIBIT 1

**REDACTED**