IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PROMOS TECHNOLOGIES, INC., | ) | **REDACTED** |
| | ) | **PUBLIC VERSION** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-788 (JJF) |
| | ) | |
| FREESCALE SEMICONDUCTOR, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**PROMOS'S REPLY LETTER TO THE SPECIAL MASTER
DATED MAY 23, 2008 REGARDING DAMAGES DOCUMENTS**

(DM___)

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Plaintiff*

*Of Counsel*:

William H. Wright
Hogan & Hartson LLP
1999 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
(310) 785-4672

Steven J. Routh
Sten A. Jensen
Hogan & Hartson LLP
555 Thirteenth Street, NW
Washington, DC 20004
(202) 637-6472

Dated: May 23, 2008

{00216557;v1}

Dear Judge Poppiti:

ProMOS Technologies, Inc. ("ProMOS") respectfully submits this reply in support of its letter reserving the right to seek the Special Master's assistance relating to missing damages information and data cache-containing products.

Freescale argues that ProMOS's decision to file the letter on May 13, the deadline set by the Special Master for raising such issues, somehow provides "further evidence of ProMOS's unreasonable approach to discovery." FSI Letter at 1. The facts, however, tell a different story. As the history of discovery in this case makes clear, Freescale will avoid producing discovery on virtually every issue until it faces the threat of imminent sanctions (as in DM4). Freescale's conduct with respect to the damages and missing product issues is no different. ProMOS obtained limited discovery on those issues only *after* it submitted its May 13 letter to the Special Master, despite many weeks of efforts to obtain that discovery before May 13.

Freescale's primary complaint appears to be that ProMOS submitted the May 13 letter before Freescale had completed its analysis of these issues. Freescale conveniently ignores, however, that ProMOS had been attempting to obtain Freescale's cooperation on these issues for weeks (in the case of the list of products), and even months (in the case of the missing damages information), with no results. Freescale's argument also ignores the May 13 deadline for presenting discovery issues to the Special Master. Given that deadline, and given that ProMOS's efforts to obtain the missing information had been met with little response by Freescale over the course of weeks or months, ProMOS had no choice but to submit a letter reserving its right to pursue these issues with the Special Master. Had ProMOS failed to file the letter on May 13, Freescale would have argued later that these issues had been waived (just as Freescale now argues that ProMOS's failure to include certain issues unrelated to DM4 in that filing somehow operated as a waiver of those rights.) ProMOS's May 13 letter was careful to explain the status of discussions between the parties, and in fact indicated that it was filing the letter "simply to reserve its rights to seek further relief from the Special Master in the event Freescale's promised supplementation is not satisfactory." Contrary to Freescale's unilateral declaration that all issues raised in the letter have been resolved, Freescale has continued to fall short on its discovery obligations. As a result, it appears that the Special Master's involvement is indeed warranted.

**(i) Damages Data**

As noted in ProMOS's opening letter brief, ProMOS has been seeking the missing damages data since March 4, 2008, on which date it provided Freescale with a specific list of products and data that was missing for those products. Ex. 1 to ProMOS May 13 Letter. Freescale initially responded by indicating that no damages information was available for most of the identified products because there were either no sales or no manufacturing or packaging data was kept. Ex. 2 and 7 to ProMOS May 13 Letter. Although ProMOS spent weeks poking holes in these representations (including pointing to sales data for the products that allegedly had no sales), Freescale continued to maintain that it was "investigating" the issue and was not able to respond substantively to ProMOS's arguments. This continued up until the afternoon before the deadline

{00219160;v1}

for filing discovery motions with the Special Master. It was only *after* ProMOS filed a letter with the Special Master reserving the right to seek his involvement that Freescale suddenly located and produced much of the damages information that it had previously indicated did not exist.

**REDACTED**

In light of Freescale's history of representing that certain data does not exist, only to have it turn up months later, ProMOS respectfully submits that it is entitled to be heard on this issue.

**(ii) Missing data cache-containing products**

Freescale strains credulity by arguing that ProMOS's May 13 letter somehow evidences "ProMOS's approach of laying in wait, rather than bringing up issues in a timely manner." FSI Letter at 2 n.4. Freescale did not identify its final lists of data cache-containing products until April 23 and 25 – after 5 weeks of "investigation" to determine what products Freescale itself sells. Immediately upon receipt of those lists, ProMOS undertook to check them against the Freescale website and documents that had been produced in discovery to determine whether there appeared to be anything obvious that was missing. ProMOS had no way of knowing in advance that the April 23 and April 25 lists would not include certain products that ProMOS subsequently discovered were still missing from Freescale's discovery responses. It simply makes no sense to blame ProMOS for not raising the issue earlier. Although Freescale complains about the timing of when ProMOS provided Freescale with the actual bates numbers of documents proving the existence of the missing products, Freescale has conveniently ignored that during the parties' meet and confer, they expressly agreed that Freescale would first identify all products for which sales data would be forthcoming, and ProMOS would then identify the bates numbers relating to the remaining products. ProMOS did so as promised. Ex. 1.

Moreover, Freescale has yet to provide a satisfactory explanation as to why it believes the products identified by ProMOS are not the legitimate subject of discovery. Tellingly, Freescale has not represented anywhere in its letter brief that the products were not made or sold prior to the relevant cut-off period. Instead, Freescale has merely asserted that "[b]ased on Freescale's investigation in April, none of the products listed in Ms. Cook's email were included in the paragraph 2 or paragraph 4 lists submitted by Freescale pursuant to the agreement on DM4." FSI Letter at 2. In other words, Freescale seems to believe that the mere fact that Freescale did not identify these products in April somehow absolved Freescale from having to investigate them in response to ProMOS's query. Tellingly, when ProMOS pointed out to Freescale after the latter had filed its opposition that, **by way of example,** at least two of the listed products were currently available for sale on Freescale's website, Ex. 2, Freescale apparently took the trouble to confirm that the products indeed have been made or sold and are the legitimate subject of discovery. But that does not absolve Freescale from performing the same investigation for the remaining products, which are identified either on the Freescale website or in documents produced in discovery.

ProMOS respectfully requests that the Special Master compel Freescale to provide complete discovery and/or a satisfactory explanation for the two products listed above as missing assembly data and for each of the additional Freescale products identified in Exhibit 2.

                                            Respectfully submitted,

                                            */s/ Lauren E. Maguire*

                                            Lauren E. Maguire

LEM/dmf
Attachments

cc:    Mary B. Graham, Esquire (via electronic mail)
        Steven J. Routh, Esquire (via electronic mail)
        David L. Witcoff, Esquire (via electronic mail)

{00219160;v1}

# EXHIBIT 1

# REDACTED

# EXHIBIT 2

# REDACTED