IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PROMOS TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-788 (JJF) |
| | ) | |
| FREESCALE SEMICONDUCTOR, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**FREESCALE'S JUNE 6, 2008 LETTER TO SPECIAL MASTER REGARDING
NUMBER OF PATENT CLAIMS AND REPRESENTATIVE PRODUCTS**

# DM ___

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Mary B. Graham (#2256)
James W. Parrett, Jr. (#4292)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
302.658.9200
mgraham@mnat.com
  *Attorneys for Freescale Semiconductor, Inc.*

OF COUNSEL:

David L. Witcoff
Kevin P. Ferguson
John M. Michalik
JONES DAY
77 West Wacker
Chicago, IL  60601-1692
312.782.3939

James L. Wamsley III
F. Drexel Feeling
Thomas R. Goots
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH  44114-1190
216.586.3939

June 6, 2008

Dear Judge Poppiti:

Defendant Freescale Semiconductor, Inc. hereby responds to the Special Master's request for submissions on reducing the number of asserted patent claims and the identification of representative Freescale products.

## Introduction

The Court recently amended the scheduling order and set this matter down for a five-day trial October 20-24, 2008. That trial setting was explicitly premised on the parties' commitment to streamline the case for trial. ProMOS was expected to cut back on the number of asserted claims in the two Chan ('709 and '241) patents, given that it had been asserting almost all 52 claims of these patents. Due to the large number of accused products, Freescale was in turn expected to pick a number of representative products for purposes of trial. Although the parties exchanged lists of claims and products and held multiple phone conferences, they were unable to reach agreement on these issues, requiring that the matter be submitted to the Special Master.

Freescale has identified fifteen products as representative of the approximately 300 Freescale products which ProMOS has accused of infringement. ProMOS has refused, however, to reduce appropriately the number of asserted patent claims to streamline the case. ProMOS still proposes to assert a total of fifteen patent claims from the two Chan patents--ten from the '709 patent (nos. 1, 2, 8, 9, 12, 14, 17, 21, 22 and 25) and five from the '241 patent (nos. 1, 5, 16, 25 and 26). That is far more claims than is necessary, especially because the two Chan patents share the same specification and are so closely related. ProMOS could easily cut that number by at least two-thirds (*i.e.,* down to 4-6 claims total) by eliminating claims which involve overlapping subject matter and others which would require the Court to address additional legal issues that could otherwise be eliminated.

## The Asserted Claims Should Be Reduced To No More Than 2-3 Per Patent

There are four independent claims in the Chan '709 patent: nos. 1, 13, 17 and 22. ProMOS proposes to assert three of these four claims (1, 17 and 22) directly and the fourth independent claim (13) indirectly by asserting claim 14, which depends from claim 13. In addition, of the six additional '709 claims still being asserted by ProMOS, three depend from other dependent claims not on ProMOS's list. In particular, proposed '709 claims 8, 12 and 21 depend from claims 7, 11 and 20--none of which is asserted directly. By this technique, ProMOS is effectively proposing to assert more than half (14) of the claims in the '709 patent. This is not the kind of significant reduction in claims for streamlining purposes contemplated by the Court.

Moreover, there is significant duplication and overlap among the '709 patent claims that ProMOS proposes to assert. Dependent claims 2 and 9 substantially overlap independent claims 17 and 22, such that both of those claims (and the dependent claims

The Honorable Vincent J. Poppiti
June 6, 2008
Page 3

identified by ProMOS) should be dropped.[1]  Further unnecessary duplication is evident in ProMOS's assertion of both claims 12 and 21 as well as claims 14 and 25[2] of the '709 patent, given that these pairs of claims also pertain to the same subject matter.

While ProMOS is proposing to assert only half as many '241 patent claims (five) as '709 claims, that is still far more than necessary given the fact that the two Chan patents are directly related, share the same disclosure and claim overlapping subject matter.   Again, ProMOS seeks to assert <u>both</u> of the independent apparatus claims in the '241 patent even though it could easily assert only one such claim.  ProMOS should pick one independent claim and no more than one or two dependent claims from the '241 patent.

Further streamlining and judicial economy would be accomplished if ProMOS dropped each of the claims containing the "means-plus-function" limitations in both the '709 and '241 patents.  Each of these claims (claims 12 and 21 in the '709 patent and claims 5 and 26 in the '241 patent) requires the Court to address additional issues beyond those presented by the other claims.  On the validity side, Freescale argued in the *Markman* proceedings that each of these claims is invalid as indefinite, lacking enablement and written description because the specification does not disclose any structure linked to the claimed "means."  On the infringement side, the Court (and perhaps the jury) would have to consider the different principles by which that issue must be addressed for claims having such limitations under 35 U.S.C. § 112, ¶ 6.  Since these additional legal issues and complexities would disappear, considerable further streamlining of the case would be achieved if all four of these claims were dropped from the case.

Notwithstanding the foregoing, ProMOS indicated in meet and confer conversations that it was unwilling to reduce further the number of asserted claims at this time, explaining that it might be willing to do so in the future.   However, the Court's amended scheduling order requires that the number of asserted claims be pared back **now** rather than waiting until later once expert reports have been served, expert discovery taken and dispositive motions filed.  The reason for this is is clear:  the compressed pretrial schedule requires that the claims be cut back now if the parties are going to be able to meet it.

Judge Farnan has ordered reductions in the number of asserted patent claims even before holding a *Markman* hearing and has consistently required patentees to reduce the number of asserted patent claims by far more than ProMOS has proposed to do here.  In *Fenster Family Patent Holdings, Inc. v. Siemens Medical Solutions USA, Inc.*, No. 04-0038-JJF (September 20, 2005) (copy attached as Exhibit A), for example, Judge Farnan held (prior to the *Markman* hearing) that the patentee's attempted assertion of 90 claims from eight unrelated patents was "unreasonable" and limited the patentee to ten claims total from all eight patents, noting that the

---

[1]     Independent claims 17 and 22 are almost identical and there is no reason both should be in the case.

[2]     ProMOS first advised Freescale that it would drop claim 25, then added it back in two days later.

The Honorable Vincent J. Poppiti
June 6, 2008
Page 4

limitation was "appropriate from the viewpoint of the typical patent litigation." *Id. at pp. 7-8.*
And in a pretrial conference in *Affymetrix, Inc. v. Illumina, Inc.*, No. 04-907-JJF (February 8,
2007), Judge Farnan rejected the patentee's proposal to try the case on 22 claims from five
patents, noting that "I don't think you ought to be limited . . . to one claim per each of the five
patents, but there's going to have to be some reduction from the 22." (Exhibit B, Tr. at 5:18-22.)
When the parties were still unable to agree to an appropriately reduced number of patent claims,
Judge Farnan then ordered that the patentee was limited to asserting twelve claims of the five
patents-in-suit. (Exhibit C, Order of Feb. 26, 2007.)

Freescale has surveyed jury verdicts in patent cases tried by Judge Farnan over
the last three years, and a summary of those verdicts reveals that the Judge has sent no more than
three claims per patent to any jury during that time. (*See* Exhibit D.) Consistent with the Court's
usual practice, therefore, and the corresponding benefits to judicial economy and the avoidance
of jury confusion, Freescale submits that the asserted claims should be limited to no more than
two or three per patent. As demonstrated above, ProMOS can readily reduce significantly the
claims on its current list. Moreover, without such a meaningful reduction in asserted claims
now, the parties' ability to prepare the case for trial, let alone try the case in just five days, is
seriously in doubt. Judicial resources are scarce and should not be needlessly squandered.
Therefore, Freescale asks that ProMOS be directed to identify no more than two or three patent
claims per patent for purposes of trial.

## Freescale Has Identified Representative Products

As mentioned above, of the approximately 300 products accused of infringement,
Freescale has agreed to streamline the case by identifying fifteen as "representative" for purposes
of the trial. In discussions leading up to these submissions, ProMOS has raised two issues,
neither of which has merit.

First, ProMOS has asked Freescale to include an identification of the files in
which (and dates on which) Freescale produced RTL code for products on its list of
representative products. This request is in reality a belated discovery request that has nothing to
do with the identification of which particular Freescale products are representative for purposes
of streamlining the trial. Moreover, it is duplicative discovery at that. RTL code in question was
produced months ago. Freescale produced 15 witnesses in January, February and March under
topic 6 of ProMOS's Third 30(b)(6) notice, which reads:

> 6. RTL documentation and circuit schematics for each Freescale
> Product and/or the processors contained therein.

Based on this notice, ProMOS had the opportunity to ask each of these witnesses
to identify the RTL code for Freescale products or processors--and it did so on some occasions.
There is no reason why Freescale should be subjected again to questions that could have been
asked in these depositions—especially given the substantial expansion of the deposition time
limit that ProMOS was granted in that connection. Under paragraph 5 of the Court's February
2008 "Order Amending Discovery Schedule," ProMOS served infringement contentions for
Freescale's products on a rolling basis following these depositions in February and March, 2008.

The Honorable Vincent J. Poppiti
June 6, 2008
Page 5

Those infringement contentions apply the Chan patent claims to each of the representative products on the Freescale list and cite liberally to the RTL code that Freescale produced. While Freescale has responded informally to numerous RTL-related questions posed by ProMOS counsel, the latest demand that Freescale identify in writing RTL code files is unwarranted and has nothing at all to do with Freescale's obligation to list representative products for purposes of trial. It is instead a thinly-disguised interrogatory served far after the close of discovery. Freescale should not be compelled to do ProMOS's work for it.

The second issue raised by ProMOS arises from its demand that Freescale identify representative products for products which have not even been accused of infringement. ProMOS has insisted that Freescale identify representative products for the list of products which Freescale provided under paragraph 4 of the agreement resolving the DM4 discovery dispute, even though ProMOS has yet to serve infringement contentions accusing any of those products. Freescale obviously has no way of doing this, and it would be unfair to require Freescale to identify representative products in a vacuum, without first receiving ProMOS's accusations and infringement contentions. As such, ProMOS's second demand is not ripe and should be rejected as well.

Respectfully,

/s/ Mary B. Graham

Mary B. Graham (#2256)

MBG/dam
cc:    All counsel on service list
2355581

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 6, 2008, the foregoing was caused to be electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered participants.

In addition, the undersigned hereby certifies that on June 6, 2008 true and correct copies of the foregoing were caused to be served upon the following parties in the manner indicated:

**BY HAND DELIVERY (in triplicate):**

Vincent J. Poppiti, Esq.
BLANK ROME LLP
1201 North Market Street, Suite 800
Wilmington, DE  19801-4226

**BY E-MAIL:**

Vincent J. Poppiti, Esq.
**poppiti@blankrome.com**
BLANK ROME LLP

WITH A COPY TO:

Elizabeth Oestreich
**oestreich@blankrome.com**
Mary Levan
**levan@blankrome.com**
Carrie David
**david-c@blankrome.com**
BLANK ROME LLP

**BY E-MAIL AND HAND DELIVERY**

John G. Day, Esq.
Steven J. Balick, Esquire
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
Wilmington, DE  19899

**jday@ashby-geddes.com**
**sbalick@ashby-geddes.com**

**BY E-MAIL AND FEDERAL EXPRESS**

Sten A. Jensen, Esq.
HOGAN & HARTSON LLP
555 Thirteenth Street, NW
Washington, DC  20004

**sajensen@hhlaw.com**

**BY E-MAIL:**

Steven J. Routh, Esq.
**sjrouth@hhlaw.com**
William H. Wright, Esq.
**whwright@hhlaw.com**
HOGAN & HARTSON LLP

William C. Gooding, Esq.
**billgooding@gooding-crittenden.com**
GOODING & CRITTENDEN, L.L.P.

*/s/ Mary B. Graham*
_____
Mary B. Graham (#2256)

1383169

Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FENSTER FAMILY PATENT HOLDINGS, INC., ELSCINT LTD., and ELSCINT INC., | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Civil Action No. 04-0038-JJF |
| | : | |
| SIEMENS MEDICAL SOLUTIONS USA, INC., SIEMENS MEDICAL SYSTEMS, INC., SIEMENS CORPORATION, and SIEMENS AG, | : | |
| Defendants. | : | |

---

Josy W. Ingersoll, Esquire, John W. Shaw, Esquire, Adam W. Poff, Esquire of YOUNG CONAWAY STARGATT & TAYLOR, Wilmington, Delaware. Of Counsel: Neil F. Greenblum, Esquire, Michael J. Fink, Esquire, Jill M. Browning, Esquire and Van C. Ernest, Esquire of GREENBLUM & BERNSTEIN, P.L.C. Attorneys for Plaintiffs.

Arthur G. Connolly, III, Esquire of CONNOLLY BOVE LODE & HUTZ, LLP, Wilmington, Delaware. Of Counsel: Eugene M. Gelernter, Esquire; Scott B. Howard, Esquire, Chad J. Peterman, Esquire, Melissa Mandrgoc, Esquire and Adrian H. von Hassell, Esquire of PATTERSON, BELKNAP, WEBB & TYLER, LLP, New York, New York. Attorneys for Defendants.

---

## MEMORANDUM OPINION

September 20, 2005
Wilmington, Delaware

*Joseph J. Farnan Jr.*

Farnan, District Judge.

Presently before the Court are (1) Defendant Siemens' Motion For An Expedited Briefing Schedule (D.I. 69); (2) Defendant Siemens' Motion For A Protective Order With Respect To Plaintiffs' Rule 30(b)(6) Deposition Notice (D.I. 70); (3) Defendants' Combined Emergency Motion Pursuant To The Rule 16 Scheduling Order To: (1) Limit The Number Of Asserted Claims, And (2) Modify The Existing Schedule (D.I. 71); (4) Defendants' Rule 37 Motion To Compel Discovery (D.I. 72); (5) Plaintiffs' Motion To Compel Responses To Interrogatory Nos. 9 And 10 And Alleged Joint Defense Communications (D.I. 74); (6) Plaintiffs' Motion To Compel 30(b)(6) Witness (D.I. 75); (7) Plaintiffs' Renewed Motion For Access To Defendants' Intranet (D.I. 80); (8) Plaintiffs' Revised Motion To Compel Discovery Responses With Respect To Sienet Product (D.I. 84); (9) Plaintiffs' Motion To Quash And/Or In The Alternative For Protective Order In Response To Defendants; Notice Of Deposition And Subpoena Duces Tecum Issued On March 16, 2005 To General Electric Company And General Electric Medical Systems, Inc. (D.I. 101); (10) Plaintiffs' Motion To Compel Deposition Testimony Of Mssrs. Ruggiero And Keller (D.I. 107); (11) Plaintiffs' Motion To Preclude Defendants From Relying On Expert Testimony (D.I. 113); and (12) Siemens' Conditional Cross-Motion To Preclude Plaintiffs From Offering Expert Testimony On Infringement (D.I. 114).

**BACKGROUND**

This is a lawsuit filed by Fenster Family Patent Holdings, Inc. ("Fenster"), Elscint Ltd., and Elscint, Inc. (collectively, "Fenster") against Siemens Medical Solutions USA, Inc., Siemens Medical Systems, Inc., Siemens Corporations, and Siemens AG, (collectively, "Siemens"). Fenster asserts eight unrelated patents against Siemens: U.S. Patent Nos. 4,555,728 ("the '728 patent"); 4,693,864 ("the '864 patent"); 4,459,990 ("the '990 patent"); 4,685,146 ("the '146 patent"); 4,644,398 ("the '398 patent"); 4,595,949 ("the '949 patent"); 4,590,518 ("the '518 patent'); 4,777,620 ("the '620 patent"). Fenster seeks declarations of infringement, willful infringement, inducement of infringement, and contributory infringement plus damages and permanent injunctive relief. Fenster alleges that each of the patents in suit is owned by Elscint Ltd. and exclusively licensed to Fenster Family Patent Holdings, Inc.

The technology at issue is generally referred to as Digital Angiography and Digital Fluoroscopy ("DF"). DF refers to X-ray diagnostic apparatus and techniques that are used to measure cardiovascular function.

Plaintiff Fenster Family Patent Holdings, Inc. is a Delaware corporation with its principal place of business in Wilmington, Delaware. Plaintiff Elscint Ltd. is an Israeli Company located in Tel Aviv, and is the owner of the patents-in-suit. Plaintiff Elscint Inc. is a Massachusetts corporation, and a wholly owned U.S.

3

subsidiary of parent company Elscint Ltd.

Defendant Siemens Medical Solutions USA, Inc. is a Delaware corporation, with its principal place of business in Malvern, Pennsylvania.  Fenster alleges that Siemens Medical Solutions USA, Inc. is a wholly owned subsidiary of Defendant Siemens AG.

Defendant Siemens Medical Systems, Inc. is a Delaware corporation with its principal place of business in Iselin, New Jersey.  Fenster alleges that Siemens Medical Systems, Inc. is a wholly owned subsidiary of Defendant Siemens AG.

Defendant Siemens Corporation is a Delaware corporation with its principal place of business in New York, New York.  Fenster alleges that Siemens Corporation is a wholly owned subsidiary of Defendant Siemens AG and is the parent corporation of Siemens Medical Solutions USA, Inc. and Siemens Medical Systems, Inc.

Defendant Siemens AG is organized under the laws of Germany, with its principal place of business in Munich, Germany.  Fenster alleges that Siemens AG includes a medical technology business unit, Siemens Medical Solutions (Germany).

Fenster filed its Complaint (D.I. 1) on January 20, 2004. On February 6, 2004, Fenster filed a First Amended Complaint (D.I. 12). On July 7, 2004, the Court entered a Rule 16 Scheduling Order, whereby Fact Discovery ended on March 15, 2005, and the deadline for filing case dispositive motions was August 12, 2005.  There is a Markman hearing scheduled on October 3, 2005, a Pretrial Conference scheduled on November 10, 2005, and a jury trial scheduled to begin

4

on January 17, 2006.

    On November 22, 2004, the Court held a discovery hearing at
which the Court granted Siemens' Motion For Bifurcation (D.I. 38)
with regard to damages and denied it with regard to willfulness.
At the November 22 hearing, the Court also ruled on a Revised Motion
To Compel (D.I. 46-1) filed by Fenster denying access to the Siemens'
electronic database or Intranet and granting access to documents
related to products wherein a cardiac diagnostic image from an X-ray
is received and processed.

    In compliance with the Scheduling Order, on February 8, 2005,
Fenster identified 90 patent claims and listed 49 accused products.

**DISCUSSION**

    The motions pending in this case can be divided into two
categories (1) motions related to the scope of discovery, and (2)
other discovery motions.

**I.    Motions Related To The Scope Of Discovery**

    At the heart of most of the discovery related motions is
Siemens' contention that the 90 claims and 49 accused products
asserted by Fenster are unreasonable in number and that Siemens
cannot prepare its defense or maintain the current case schedule
under these conditions.  Fenster, in turn, seeks to compel Siemens to
respond to its discovery requests.

A.    Defendants' Motion For An Expedited Briefing Schedule (D.I. 69)

By its Motion, Siemens requests an order expediting the briefing schedule with regard to Siemens' Combined Emergency Motion Pursuant To The Rule 16 Scheduling Order to limit the number of claims asserted and modify the existing schedule.  In response, Fenster contends that Siemens has failed to diligently pursue its discovery and has impeded Fenster from conducting discovery.  Specifically, Fenster contends that Siemens has failed to notice depositions, has not pursued publicly available foreign patent documents, has refused to present any witnesses in response to Fenster's 30(b)(6) notice for February 14, 2005, and has produced documents long after the December 2004 date by which the Court wanted document production to be completed.

Because this motion has been pending for several months, the Court will deny Defendants' Motion For An Expedited Briefing Schedule.

B.    Defendants' Combined Emergency Motion Pursuant To The Rule 16 Scheduling Order To: (1) Limit The Number Of Asserted Claims, And (2) Modify The Existing Schedule (D.I. 71)

By its motion, Siemens requests an order limiting the number of claims and modifying the existing schedule.  Specifically, Siemens contends that allowing Fenster to assert 90 claims is unreasonable. Further, Siemens contends that, because Fenster expanded the scope of this litigation five weeks before the close of fact discovery and eleven weeks before the date for expert reports on validity, Siemens

6

is unable to prepare its defenses.  Siemens further contends that
Fenster has impeded discovery by refusing to make all inventors
available for depositions and failing to produce key documents (the
subject of a separate rule 37 motion).  Siemens requests that the
current schedule be modified as follows: fact discovery will end
eight weeks after Fenster identifies a reasonable number of asserted
claims and a reasonable number of accused products; opening expert
reports will be due four weeks after the close of fact discovery
(instead of six weeks under the current scheduling order); rebuttal
expert reports would be due four weeks after opening expert reports;
and the remainder of the schedule be adjusted accordingly.

     In response, Fenster contends that the number of asserted claims
should not be further limited because Fenster will likely limit them
after full discovery.  Further, Fenster contends that the Court
indicated at the November 22, 2004, discovery hearing that the
parties would not lose their trial date.  Fenster also contends that
Siemens has not noticed a single deposition, and has failed to
provide a 30(b)(6) witness.

     The Court agrees with Siemens that Fenster's number of asserted
claims is unreasonable.  The Court would prefer the parties to
address such issues among themselves, but when that does not happen;
the Court must intervene.  The Court finds that Fenster should be
limited, at this juncture, to ten (10) claims and five (5) products
asserted.  This decision is obviously arbitrary; however, it is

appropriate from the viewpoint of the typical patent litigation.
Because a modification of the Scheduling Order is required as a
result of the Court's decision, the Court will order the parties to
submit a proposed, revised scheduling order for the Court's
consideration.

      C.    Defendants' Motion For A Protective Order With Respect To
            Plaintiffs' Rule 30(b)(6) Deposition Notice (D.I. 70)

     By its Motion, Siemens contends that Fenster' Rule 30(b)(6)
deposition notice is overly broad and unduly burdensome because it
designates "all versions" of 49 different products as "Accused
Products," and seeks testimony on a multitude of topics (36 subject
matter categories) for each of them.  As relief, Siemens seeks the
entry of a protective order.  Based on the Court's decision reducing
the number of asserted claims, the Court will deny this motion as
moot.

      D.    Siemens' Rule 37 Motion To Compel Discovery (D.I. 72)

     By its motion, Siemens contends that Fenster has failed to
produce: file histories of foreign counterpart applications, and
related documents; documents relating to conception, reduction-to-
practice, and best mode, in response to Document Requests No. 14 and
15; complete answers to Siemens' Interrogatories 3 and 4, which ask
for information relating to Siemens' laches defense and the priority
dates for the patents-in-suit.  In response, Fenster contends that
Fenster's foreign file histories are publically available, that
Fenster has no other documents that are responsive to Document

Requests 14 and 15, and that Fenster has fully responded to
Interrogatory Nos. 13 and 14.  Because the Court has limited the
number of asserted claims and accused products and will modify the
schedule in this case, the Court will deny this motion with leave to
renew.

E.    Fenster' Motion To Compel Responses To Interrogatory Nos. 9
      And 10 And Alleged Joint Defense Communications (D.I. 74)

By its motion, Fenster moves to compel Siemens to respond to
Interrogatory Nos. 9 and 10 of Fenster' Second Set of
Interrogatories.  Specifically, Fenster seeks the dates of the first
and last sales of each of the identified products.  In response,
Siemens asserts that these interrogatories seek information
duplicative of that requested in Fenster's Interrogatory Nos. 1 and
2.

In reply to Siemens' argument, Fenster contends that
Interrogatory Nos. 1 and 2 requested that Siemens identify each model
and all components made, used, sold, offered for sale and/or imported
since 1994.  Fenster contends that identification of the models and
components sold since 1994 is different from identification of the
first and last dates of sale.

Because the Court has limited the number of asserted claims and
accused products and will modify the schedule in this case, the Court
will deny this motion with leave to renew.

F.   Fenster's Motion To Compel 30(b)(6) Witness (D.I. 75)

Because the Court has denied as moot Siemens' Motion For A
Protective Order With Respect To Fenster's Rule 30(b)(6) Deposition
Notice (D.I. 70), the Court will likewise deny as moot Fenster's
Motion To Compel 30(b)(6) Witness.

G.   Fenster's Motion To Preclude Siemens From Relying On Expert
     Testimony (D.I. 113)

By its motion, Fenster moves to preclude Siemens from relying on
expert testimony because Siemens failed to serve its expert reports
prior to April 22, 2005, the date specified in the Scheduling Order.
In response, Siemens contends that Fenster's designation of 90
asserted claims made it impossible for Siemens' experts to conduct a
meaningful validity analysis.  Because the Court has limited the
number of asserted claims and accused products and will modify the
schedule in this case, the Court will deny this motion as moot.

H.   Siemens' Conditional Cross-Motion To Preclude Fenster From
     Offering Expert Testimony On Infringement (D.I. 114)

Siemens' Conditional Cross-Motion To Preclude Fenster From
Offering Expert Testimony On Infringement (D.I. 114) is related to
Fenster's Motion To Preclude Siemens From Relying On Expert Testimony
(D.I. 113).  Because the Court has limited the number of asserted
claims and accused products and will modify the schedule in this
case, the Court will deny this motion as moot.

10

## II.  Other Discovery Motions

A.  Fenster's Renewed Motion For Access To Siemens' Intranet (D.I. 80)

By its motion, Fenster renews its motion to compel Siemens to provide Fenster with access to its corporate Intranet or other electronic databases or networks.  The Court denied Fenster's original motion on November 22, 2004, stating that the Court based its decision in part on Siemens' representation that the production would be in a searchable electronic format.  However, Fenster contends that two developments warrant reconsideration of this issue. First, Fenster contends that Siemens provided access to documents in two warehouses, which requires document-by-document review of over a million pages of documents without the benefit of any type of electronic searching.  Second, Fenster contends that Siemens produced other large batches of documents in electronic format, but many of these documents are not in searchable format.

In response, Siemens contends that Fenster's motion is a motion for reconsideration, not a renewed motion.  Siemens contends that it will produce the specific documents that Fenster has previously identified as non-searchable in "searchable form."  Further, Siemens contends that some older documents are only available on microfilm, are not on the Intranet, and that Siemens fulfilled its obligations under the Federal Rules by producing them in the format in which they are maintained.

11

In a letter to the Court (D.I. 106), Fenster cites deposition testimony of a Siemens' employee wherein the employee states that it would be easy to determine whether there were any documents from Pie Medical on Siemens' Intranet.  Fenster contends that Siemens has not produced any documents from Pie Medical and that this testimony is new evidence that shows Fenster's motion for access to Siemens' Intranet should have been granted.

The Court finds that Fenster has not demonstrated an intervening change in controlling law, the availability of new evidence that was not available when the Court issued its first Order, or the need to correct a clear error of law or fact to prevent a manifest injustice. Accordingly, the Court will deny this motion.

B.    Fenster's Revised Motion To Compel Discovery Responses With Respect To Sienet Product (D.I. 84)

By its motion, Fenster seeks production of documents related to Siemens' SIENET.  Fenster contends that SIENET is a Picture Archiving and Communication System ("PACS"), which is relevant to this litigation.  Fenster acknowledges that Siemens' responses to Fenster's most recent discovery requests were not due until March 7, 2005, after Fenster filed its motion.

In response, Siemens contends that SIENET comprises three components: patient management, long-term image archiving (known as PACS), and image post processing.  Siemens contends that SIENET allows for the linking of image data from various x-ray imaging systems and provides data on a patient-based scheme to radiologists.

12

Further, Siemens contends that SIENET has a component with PACS
functionality that is merely used in part for long-term storage and
archiving.  Because the x-ray imaging systems function independently
of SIENET and discovery is limited to digital x-ray imaging systems,
Siemens contends that SIENET is outside the scope of discovery.
Siemens further contends that SIENET is capable of operating with a
host of x-ray systems (such as MRI, CT scanning, ultra-sound, and
nuclear medicine) that are outside the scope of this litigation.

The Court will deny Fenster's motion on two grounds.  First, the
Court concludes that this motion was filed prematurely, before
Siemens' discovery responses were due.  Second, it appears to the
Court that SIENET is not a digital x-ray imaging system, but rather a
way to knit such a system together with other components.
Accordingly, the Court concludes that SIENET is outside the scope of
discovery.

C.    Fenster' Motion To Quash And/Or In The Alternative For
      Protective Order In Response To Siemens' Notice Of
      Deposition And Subpoena Duces Tecum Issued On March 16,
      2005 To General Electric Company And General Electric
      Medical Systems, Inc. (D.I. 101)

By its motion, Fenster seeks to quash Siemens' notice of
deposition with regard to a Rule 30(b)(6) Deposition of General
Electric Company and General Electric Medical Systems, Inc.
(collectively, "GE") and a subpoena duces tecum, both issued on March
16, 2005, after the close of fact discovery.

In response, Siemens contends that because its counsel

13

represents GE in unrelated matters, counsel could not take third-party discovery from GE without obtaining a waiver from GE of any conflict of interest that may be presented by taking such discovery. Siemens contends that Fenster stood in the way of Siemens' attempts to obtain the waiver.  On March 9, 2005, GE informed Siemens' counsel that it would not waive the conflict.  Thus, Siemens had to retain other counsel, and served the subpoena less than a week after GE's refusal.  Siemens also contends that a decision by the Court to modify the existing schedule would moot Fenster's objections to the GE subpoena.

Because the Court has limited the number of asserted claims and accused products and will modify the schedule in this case, the Court will deny this motion.

D.    Fenster' Motion To Compel Deposition Testimony Of Mssrs. Ruggiero And Keller (D.I. 107)

By its motion, Fenster contends that it deposed two Siemens Medical Solutions employees, Tom Ruggiero on April 6, 2005, and Mike Keller on April 7, 2005.  Fenster contends that, during each deposition, counsel for Siemens instructed each witness not to testify regarding a device called "AXIS."  Fenster moves to compel further deposition testimony of Messrs. Ruggiero and Keller with regard to AXIS pursuant to Federal Rule of Civil Procedure 26(b)(1) and 37(a)(2).  Fenster contends that Siemens' counsel's instructions not to answer questions about AXIS were improper because the line of questioning did not involve a matter of privilege.

14

In response, Siemens contends that the design for the AXIS project has not been finalized and it remains in flux. Siemens further contends that there is no commercial AXIS product because Siemens has not yet sought or obtained FDA approval for a commercial product. Thus, Siemens contends that discovery with regard to AXIS is not reasonably calculated to lead to discovery of relevant information.

The Court limited the scope of discovery in this case to digital x-ray imaging systems. In its briefing, neither party addresses whether AXIS is a digital x-ray imaging system, but it seems to be one that is still in the stages of research and development. Accordingly, the Court will deny this motion, because it is directed to a yet to be developed product which appears to be outside the scope of discovery set by the Court.

CONCLUSION

For the reasons discussed, the Court will (1) deny Defendant Siemens' Motion For An Expedited Briefing Schedule (D.I. 69); (2) deny as moot Defendant Siemens' Motion For A Protective Order With Respect To Plaintiffs' Rule 30(b)(6) Deposition Notice (D.I. 70); (3) grant Defendants' Combined Emergency Motion Pursuant To The Rule 16 Scheduling Order To: (1) Limit The Number Of Asserted Claims, And (2) Modify The Existing Schedule (D.I. 71); (4) deny with leave to renew Defendants' Rule 37 Motion To Compel Discovery (D.I. 72); (5) deny with leave to renew Plaintiffs' Motion To Compel Responses To

15

Interrogatory Nos. 9 And 10 And Alleged Joint Defense Communications
(D.I. 74); (6) deny as moot Plaintiffs' Motion To Compel 30(b)(6)
Witness (D.I. 75); (7) deny Plaintiffs' Renewed Motion For Access To
Defendants' Intranet (D.I. 80); (8) deny Plaintiffs' Revised Motion
To Compel Discovery Responses With Respect To Sienet Product (D.I.
84); (9) deny Plaintiffs' Motion To Quash And/Or In The Alternative
For Protective Order In Response To Defendants; Notice Of Deposition
And Subpoena Duces Tecum Issued On March 16, 2005 To General Electric
Company And General Electric Medical Systems, Inc. (D.I. 101); (10)
deny Plaintiffs' Motion To Compel Deposition Testimony Of Mssrs.
Ruggiero And Keller (D.I. 107); (11) deny as moot Plaintiffs' Motion
To Preclude Defendants From Relying On Expert Testimony (D.I. 113);
and (12) deny as moot Siemens' Conditional Cross-Motion To Preclude
Plaintiffs From Offering Expert Testimony On Infringement (D.I. 114).

　　An appropriate Order will be entered.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

FENSTER FAMILY PATENT HOLDINGS,  :
INC., ELSCINT LTD., and ELSCINT  :
INC.,                            :
              Plaintiffs,        :
                                 :
         v.                      :   Civil Action No. 04-0038-JJF
                                 :
SIEMENS MEDICAL SOLUTIONS USA,   :
INC., SIEMENS MEDICAL SYSTEMS,   :
INC., SIEMENS CORPORATION, and   :
SIEMENS AG,                      :
                                 :
              Defendants.        :

### O R D E R

At Wilmington, this <u>20</u> day of September 2005, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that:

1.    Defendant Siemens' Motion For An Expedited Briefing Schedule (D.I. 69) is **DENIED**.

2.    Defendant Siemens' Motion For A Protective Order With Respect To Plaintiffs' Rule 30(b)(6) Deposition Notice (D.I. 70) is **DENIED AS MOOT**.

3.    Defendants' Combined Emergency Motion Pursuant To The Rule 16 Scheduling Order To: (1) Limit The Number Of Asserted Claims, And (2) Modify The Existing Schedule (D.I. 71) is **GRANTED**.  The parties shall submit a revised, proposed scheduling order within **twenty** (20) days of the date of this Order.

4.    Defendants' Rule 37 Motion To Compel Discovery (D.I. 72) is

**DENIED WITH LEAVE TO RENEW**.

5.   Plaintiffs' Motion To Compel Responses To Interrogatory Nos. 9 And 10 And Alleged Joint Defense Communications (D.I. 74) is **DENIED WITH LEAVE TO RENEW**.

6.   Plaintiffs' Motion To Compel 30(b)(6) Witness (D.I. 75) is **DENIED AS MOOT**.

7.   Plaintiffs' Renewed Motion For Access To Defendants' Intranet (D.I. 80) is **DENIED**.

8.   Plaintiffs' Revised Motion To Compel Discovery Responses With Respect To Sienet Product (D.I. 84) is **DENIED**.

9.   Plaintiffs' Motion To Quash And/Or In The Alternative For Protective Order In Response To Defendants; Notice Of Deposition And Subpoena Duces Tecum Issued On March 16, 2005 To General Electric Company And General Electric Medical Systems, Inc. (D.I. 101) is **DENIED**.

10.   Plaintiffs' Motion To Compel Deposition Testimony Of Mssrs. Ruggiero And Keller (D.I. 107) is **DENIED**.

11.   Plaintiffs' Motion To Preclude Defendants From Relying On Expert Testimony (D.I. 113) is **DENIED AS MOOT**.

12.   Siemens' Conditional Cross-Motion To Preclude Plaintiffs From Offering Expert Testimony On Infringement (D.I. 114) is **DENIED AS MOOT.**

Joseph J Farnan Jr.
UNITED STATES DISTRICT JUDGE

EXHIBIT B

ProTEXT Transcript Condensing for Windows

SHEET 1   PAGE 1

**1**

```
          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF DELAWARE


AFFYMETRIX, INC.,          )
                           )
             Plaintiff,    )
                           ) C.A. No. 04-901-JJF
v.                         )
                           )
ILLUMINA, INC.,            )
                           )
             Defendant.    )



                 Thursday, February 8, 2007
                 11:43 a.m.
                 Courtroom 4B


                 844 King Street
                 Wilmington, Delaware


BEFORE:  THE HONORABLE JOSEPH J. FARNAN, JR.
         United States District Court Judge


APPEARANCES:


         MORRIS, NICHOLS, ARSHT & TUNNELL
         BY:  MARYELLEN NOREIKA, ESQ.
         BY:  JACK B. BLUMENFELD, ESQ.

             -and-

         AFFYMETRIX
         BY:  MICHAEL J. MALECEK, ESQ.
         BY:  DANIEL REED, ESQ.

                       Counsel for the Plaintiff
```

PAGE 2

**2**

```
 1    APPEARANCES CONTINUED:

 2

 3         MORRIS, JAMES, HITCHENS & WILLIAMS
           BY:  RICHARD HERRMANN, ESQ.
 4
              -and-
 5
           KIRKLAND & ELLIS, LLP
 6         BY:  MARK A. PALS, ESQ.
           BY:  MARCUS E. SERNEL, ESQ.
 7
                       Counsel for the Defendant
 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
```

PAGE 3

**3**

```
 1              THE CLERK:  All rise.
 2              THE COURT:  All right.  Good
 3    morning.
 4              Be seated, please.
 5              THE COURT:  All right.  You want to
 6    announce your appearances?
 7              MS. NOREIKA:  Good morning, Your
 8    Honor.
 9              THE COURT:  Good morning.
10              MS. NOREIKA:  Maryellen Noreika from
11    Morris, Nichols for the plaintiff.  With me I
12    have Michael Malacek, and Dan Reed from
13    Affymetrix.  And Jack Blumenfeld from my firm.
14              THE COURT:  All right.  Good
15    morning.
16              Mr. Herrmann.
17              MR. HERRMANN:  Good morning, Your
18    Honor.  Your Honor, for the defendant I'd like to
19    reintroduce Mark Pals from Kirkland & Ellis, Marc
20    Sernel from Kirkland & Ellis, and Paul Collier
21    from Kirkland & Ellis.
22              THE COURT:  All right.  Good
23    morning.
24              MR. PALS:  Good morning, Your Honor.
```

PAGE 4

**4**

```
 1              MR. SERNEL:  Good morning, Your
 2    Honor.
 3              MR. COLLIER:  Good morning, Your
 4    Honor.
 5              THE COURT:  Okay.  I've taken a look
 6    at your proposed pretrial order, as well as the
 7    pending motions for summary judgment.
 8              All of the motions for summary
 9    judgment will be denied by memorandum order
10    because of the factual disputes, except the
11    motion related to assignor estoppel, which we'll
12    talk about a little more later.
13              With regard to the issues that are
14    raised in the proposed pretrial order, there are
15    two competing views about the structure of the
16    trial, whether it should have a separation of
17    issues, essentially along the lines of a
18    bifurcation, or whether it should be a
19    trifurcation, I guess, is the word used by
20    somebody.
21              This case will be tried in three
22    phases.  The first phase will deal with
23    infringement and damages.
24              The second phase, and sometime
```

You may have up to 3 Header and 3 Footer Lines

ProTEXT Transcript Condensing for Windows

**5**

```
 1  around the commencement of this trial, we'll get
 2  a date for the summer of 2007, will be a trial on
 3  the invalidity issues.
 4              And immediately after that will be a
 5  trial on the California state law issues and any
 6  matters that have to be tried of an equitable
 7  nature to the bench.
 8              So for purposes of the March 5th
 9  trial, we're focused on infringement and damages.
10  The infringement trial -- and I understand that
11  Affymetrix has reduced the number of asserted
12  claims from 50 or so to 22 or so.  That's going
13  to have to be further reduced to representative
14  claims.
15              As I review the summary judgment
16  papers, as well as the pretrial order, there's
17  some overlap there that can be avoided, which
18  will avoid confusion to the jury.  Now, I don't
19  think you ought to be limited, as the defendants
20  suggest, to one claim per each of the five
21  patents, but there's going to have to be some
22  reduction from the 22.
23              I'll give you the first chance at
24  doing that, and then if it can't be pared down by
```

**7**

```
 1              So I'm going to not get involved
 2  in -- I mean, let me say this:  The number of
 3  exhibits is unusually high would be a polite way
 4  of saying it.  And when I read both the witness
 5  and exhibit recitals in the body of the proposed
 6  pretrial order, there are more conditions on
 7  exhibits and witnesses, like if I didn't name
 8  them, I could call them.  But you know, if I find
 9  an exhibit later or if it's produced, I can use
10  it.
11              You know, I like to let lawyers try
12  their own case.  None of that is going to work
13  for you on the time frame I'm going to provide.
14              Now, since you agreed to the
15  procedure of that 48-hour notice and 24-hour
16  objections, I'm going to go along with it;
17  although it creates more work for you, not for
18  me, because I can get it done overnight.
19              But I can tell from both parties
20  that there's no inclination here, and I'm not
21  being critical in a negative way, but there's no
22  inclination here to actually provide a noticed
23  witness or exhibit list.  And that's okay with
24  me.  I just think it's going to make it a little
```

**6**

```
 1  the plaintiff, then I'll listen to both sides and
 2  I'll reduce it to a number per patent.  Not all
 3  patents will be equal if I have to do it, because
 4  my view is that there is a difference.
 5              An assertion of multiple claims
 6  under one or two of the patents is more
 7  appropriate than maybe under another patent.  But
 8  I'll reserve my judgment on it unless I have to
 9  exercise it.
10              I don't foresee, given the structure
11  that I've announced for the trial, that it will
12  take eight days to try this case on infringement
13  and damages, so I'm going to reduce the requested
14  eight days to something in the range of five
15  days.  And, also, that's designed because I'm not
16  going to get into whether either side is going to
17  be able to use 2,100 documents, 34 designated
18  depositions.
19              I'll just indicate the amount of
20  hours I think an infringement case can be tried
21  on five patents with a certain number of claims,
22  and then you'll manage how many documents you
23  want to use on those issues, and how many
24  witnesses you want to utilize.
```

**8**

```
 1  more difficult for your record.  But I'm going to
 2  subscribe to what you've proposed, which is
 3  48-hour notice.
 4              Now, the one area I'm not going to
 5  agree with you on, and I'm going to become an
 6  advocate for the trial is demonstrative exhibits.
 7  When I read through what you proposed about
 8  demonstrative exhibits, you're going to have
 9  artists in some hotel room painting boards up or
10  something.
11              Demonstrative exhibits, first of
12  all, they can only come into evidence -- what did
13  I read?  First of all, you're going to paint some
14  or make them up, and then you're going to have
15  some that can be created during the testimony of
16  a witness.
17              Well, if that isn't open ended, I
18  don't know what is.  And that, you know, the
19  danger is in the demonstrative exhibits.  The
20  danger of prejudice to a party at a trial is in
21  the demonstrative exhibits, because you can
22  really play games, particularly when you're
23  marking them up.
24              Now, I don't mind you enlarging the
```

EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

AFFYMETRIX, INC.,                    :
                                     :
          Plaintiff,                 :
                                     :
     v.                              :    Civil Action No. 04-901 JJF
                                     :
ILLUMINA, INC.,                      :
                                     :
          Defendant.                 :

**ORDER**

WHEREAS, on February 8, 2007, the Court held a pretrial
conference at which the parties discussed the number of claims to
be presented at the infringement phase of the trial scheduled to
commence May 5, 2007;

WHEREAS, as evidenced in letters submitted to the Court
(D.I. 375, 377, 380), the parties were unable to reach an
agreement on the number of claims;

NOW THEREFORE, IT IS HEREBY ORDERED that Plaintiff is
limited to asserting twelve (12) claims total for the five
patents in suit; however, claim 53 of U.S. Patent No. 6,646,243
may not be one of the twelve claims asserted.

February 26, 2007

                              _____
                              UNITED STATES DISTRICT JUDGE

EXHIBIT D

**EXHIBIT D**

Number Of Patent Claims Involved In Patent Jury Trials Before Judge Farnan
Over The Last Three Years

| CASE | CASE NO. | VERDICT DATE | PATENTS/TOTAL CLAIMS |
|---|---|---|---|
| Nice Systems Inc. et al v. Witness Systems Inc. | 06-311 | 1/22/08 | **5 total patents; 11 total claims**<br>'371 patent 2 claims; '570 patent 1 claim; '372 patent 3 claims; '920 patent 3 claims; '109 patent 2 claims |
| Affymetrix, Inc. v. Illumina, Inc. | 04-901 | 03/13/2007 | **5 total patents, 12 total claims**<br>'243 patent 3 claims; '365 patent 2 claims; 432 patent 2 claims; '531 patent 2 claims; '716 patent 3 claims |
| Power Integrations v. Fairchild Semi, et al. | 04-1371 | 10/10/2006 | **4 total patents; 7 total claims**<br>'876 patent 1 claim; '851 patent 2 claims; '366 patent 2 claims; '075 patent 2 claims |
| LG Phillips LCD Co., Ltd. V. Tatung Co., et. al. | 05-292 | 07/27/2006 | **1 patent; 2 claims**<br>'002 patent 2 claims |
| Kyphon Inc. v. Disc-O-Tech Med. Techs., Ltd., et al. | 04-204 | 06/22/2005 | **1 patent; 1 claim**<br>'043 patent 1 claim |

June 5, 2008

2355467