IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PROMOS TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-788 (JJF) |
| | ) | |
| FREESCALE SEMICONDUCTOR, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**SPECIAL MASTER'S REPORT AND RECOMMENDATION ON THE
MOTION OF FREESCALE SEMICONDUCTOR, INC. TO COMPEL
PROMOS TECHNOLOGIES, INC. TO SUPPLEMENT IT'S
RESPONSE TO INTERROGATORY NO. 30 (DM 5A)**

This matter comes before me as Special Master on the motion of Defendant, Freescale

Semiconductor, Inc. ("Freescale"), to compel Plaintiff, ProMOS Technologies, Inc. ("ProMOS"),

to supplement its response to Freescale's Interrogatory No. 30 ("ROG 30"). [D.I. 196].

Having read and considered the submittals of the parties, having determined there is no

need for a hearing on the motion, the Special Master recommends that Freescale's motion to

compel be DENIED in major part and GRANTED in part.

**I.    BACKGROUND**

Freescale's motion to compel ProMOS to answer ROG 30 seeks an explanation of

ProMOS' denial of certain of Freescale's Requests for Admissions ("RFAs").  While Freescale

propounded 60 RFAs, it identified 12 that assertedly relate to three general issues:  licensing of

the patents-in-suit (RFA Nos. 25-26); invalidity of the patents-in-suit (RFA Nos. 41-45); and

conception and reduction to practice of the claims of the patents-in-suit (RFA Nos. 46-48 and 59-

60).

ROG 30 reads as follows:

1

> With respect to any response by ProMOS to a request for
> admission served by Freescale, other than an unqualified
> admission, state each fact that supports or is contrary to the
> response, identify each document that relates to each such fact, and
> identify each person with knowledge of such facts.

ProMOS' Objections and Responses to Freescale's Fourth Set of Interrogatories served

on January 22, 2008 read in pertinent part:

> ProMOS objects to this interrogatory as overly broad and unduly
> burdensome. . . . ProMOS also objects to the interrogatory as
> premature and to the extent that it seeks information that is
> expected to be the subject of expert reports and/or testimony.
> ProMOS will provide information regarding its expert opinions in
> the time and manner prescribed in the Scheduling Order entered in
> this case. ProMOS further objects to this interrogatory because it
> seeks to circumvent the limits agreed upon by the parties and
> established by the Court for the number of interrogatories that each
> party may ask.

While Freescale acknowledges that the number of interrogatories permitted in this case is

35,[1] Freescale suggests that at worst ROG 30 should be considered three separate interrogatories

corresponding to the three categories above. Freescale further asserts that since it has

propounded only 33 total interrogatories, Freescale meets the limitation of 35 interrogatories.[2]

Freescale alternatively seeks leave to exceed the limit of 35 interrogatories if the Special

Master concludes that ROG 30 should be counted as more than one interrogatory, resulting in

Freescale's exceeding the number of allowed interrogatories. Freescale suggests that leave

should be granted because ProMOS would not be unduly burdened by responding to ROG 30

with respect to the twelve identified RFAs. Freescale further asserts that there is no other way

---

[1] The Rule 16 Scheduling Order provides for "[a] maximum of thirty-five (35) interrogatories." [D.I. 35, ¶3(b)]. The Special Master reads into the Order the requirement that the permitted number "include[s] all discrete subparts." FRCP 33(a)(1).

[2] If ROG 30 is counted as three separate interrogatories, that would bring the total number of interrogatories served to 35 – one category would replace ROG 30 and the other two categories would constitute Interrogatory Nos. 34 and 35.

2

for Freescale to obtain the information sought. Finally, Freescale requests that if leave is not granted, the Special Master should interpret the scope of Interrogatory Nos. 4 (conception and reduction to practice), 9 (licensing of the patents-in-suit) and 21 (contentions regarding alleged validity of the patents-in-suit) as including the information sought by ROG 30.

## II.   PROMOS' OPPOSITION TO FREESCALE'S MOTION

In response to Freescale's motion, ProMOS asserts that ROG 30 incorporates by reference each of the 60 RFAs. ProMOS therefore calculates that the total number of Freescale's interrogatories is 92.[3]  ProMOS suggests that although Freescale has identified only 12 of the 60 RFAs, Freescale should not be allowed to group any of the RFAs together simply because they relate to the same broad issue.

Regarding Freescale's request for leave to exceed the limit of 35 interrogatories, ProMOS argues that the purpose of requests for admission is to expedite trial, not fact discovery, and should not be used to circumvent the limit on the number of interrogatories. In addition, ProMOS argues that responding to such a large number of interrogatories would be unduly burdensome.

## III.   LEGAL STANDARD

The central question posed by the motion is, in the Special Master's view, well framed in the case of *Safeco v. Rawstron*, 181 F.R.D. 441, 442 (C.D. Cal. 1998), namely:

> [Does] an interrogatory which asks for the basis for the denial of each request for admission comprising a set of requests for admissions constitute[ ] a single interrogatory or multiple interrogatories for the purpose[ ] of the numerical limit contained [in this case's Rule 16 Scheduling Order]?

---

[3] Counting 60 separate interrogatories for ROG 30 plus the remaining 32 interrogatories served by Freescale totals 92 interrogatories.

The Special Master is convinced that the analysis and conclusion reached in *Safeco* are both instructive and compelling.

Before addressing the interplay between RAFs and a ROG 30 type of interrogatory, the court in *Safeco* first addressed the counting issue relative to FRCP 33(a).  The court noted the words of a "respected commentator":

> [I]t would appear that an interrogatory containing subparts directed at eliciting details concerning the common theme should be considered a single question, although the breadth of an area inquired about may be disputable.  On the other hand, an interrogatory with subparts inquiring into discrete areas is more likely to be counted as more than one for purposes of the limitation.

181 F.R.D. at 444 (quoting 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2168.1 at 261 (2d ed. 1994)).

After acknowledging that the question of whether differences in the information sought should render the subparts "discrete" is a difficult one and that the courts have not been entirely consistent in answering the question (*Id.* at 444), the court adopted the standard established in *Kendall v. GES Exposition Services, Inc.*, 174 F.R.D. 684 (D. Nev. 1997) (*Id.* at 445).  In *Kendall* the court held that:

> [I]nterrogatory subparts are to be counted as part of but one interrogatory for the purpose of [FRCP 33(a)(1)] if they are logically or factually subsumed within and necessarily related to the primary question.
>
> . . . [T]he more difficult question is determining whether the subparts are "logically or factually subsumed within and necessarily related to the primary question." . . .
>
> Probably the best test of whether subsequent questions, within a single interrogatory, are subsumed and related, is to examine whether the first question is primary and subsequent questions are secondary to the primary question.  Or, can the subsequent question stand alone?  Is it independent of the first question?

4

> Genuine subparts should not be counted as separate interrogatories.
> However, discrete or separate questions should be counted as
> separate interrogatories, notwithstanding that they are jointed by a
> conjunctive and may be related.

174 F.R.D. at 685-686.[4]

While concluding that the *Kendall* analysis falls short of any bright line test that would be helpful in an analysis of interrogatories relating to the reasons for denying RFAs, the court in *Safeco* established a presumption that "each underlying request for admission constitutes a separately countable subpart" toward the total number of interrogatories. *Safeco*, 181 F.R.D. at 446. The presumption may be overcome with a showing that the underlying RFAs do not concern "different, separate, or discrete matters." *Id.* Only if an underlying RFA is "logically or factually subsumed within and necessarily related to the primary question" (the *Kendall* standard), would it be considered not discrete. *American Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 2002 WL 534459, *3 (W.D. Va. Mar. 18, 2002) (adopting the *Kendall/Safeco* standard).

The *Safeco* court notes however:

> Where the underlying requests for admission concern different,
> separate, or discrete matters, however, the interrogatory should be
> viewed as containing a subpart for each request. As a practical
> matter this will almost always be the case. *See, e.g., S.E.C. v.
> Micro Moisture Controls*, 21 F.R.D. 164, 166 (S.D.N.Y. 1951) ("It
> is well settled that requests for admissions . . . are required to be
> simple and direct, and should be limited to singular relevant
> facts.")

*Safeco*, 181 F.R.D. at 446.

---

[4] This Special Master has previously conducted a *Kendall* analysis in conjunction with the Special Master's Report and Recommendations on Motion of LG. Phillips LCD Co., Ltd., for discovery sanctions against the Tatung Defendants entered on August 16, 2005 [D.I. 197], Civil Action No. 04-343 JJF, and adopted by the Court on September 29, 2006 [D.I. 297].

5

## IV.    DISCUSSION AND CONCLUSIONS

### A.    Freescale Has Exceeded the Limit of 35 Interrogatories

As an initial matter, the Special Master concludes that ROG 30 applies to each of the 60

RFAs propounded by Freescale rather than to the 12 RFAs that Freescale has selected to pursue

with the instant motion.

In the matter *sub judice* the Special Master is mindful that ProMOS, believing that ROG

30 resulted in presumptively sweeping in each of the 60 RFAs, properly objected to the

interrogatory while at the same time making objections and responses to Freescale's Forth Set of

Interrogatories (Nos. 30-33).

While not addressing the interplay between a ROG 30 type of interrogatory and RFAs,

the court in *Walker v. Lakewood Condominium Owner's Ass'n*, 186 F.R.D. 584 (C.D. Cal. 1999)

expressed the concern shared by the Special Master in the context of the matter presented here.

In *Walker* a party initially served 35 interrogatories and then withdrew them after objections

were interposed, only later to serve 29 new interrogatories.   In ruling that the original 35 would

be counted, the court observed:

> [N]othing in the applicable rules allow[s] [a party] to avoid or
> sidestep the numerical limit by unilaterally re-characterizing its
> subsequently served supernumerary interrogatories as a "revised
> set."
>
> In this regard, although none of the members of the Court's Rules
> Committee are clairvoyants, they do not need crystal balls to
> envision the abuse that would occur if Rule 33(a) . . . were
> construed as suggested . . . .  Specifically, if Rule 33(a) . . . allowed
> parties to unilaterally "withdraw" interrogatories after a party had
> already served objections, a party could simultaneously circumvent
> the whole purpose of the numerical limit and harass an opponent
> by serving the maximum number of interrogatories and then
> "withdrawing" all of them on or after the date the opposing party
> incurred the burden of preparing and serving objections or verified
> answers.  A day or two later, the party could begin the whole

process all over, repeating it until the expiration of the discovery cut-off date or until the responding party brought what would be a well-deserved motion for protective order pursuant to Rule 26(c). Given the Advisory Committee's concern that even proper, timely served interrogatories can be used as a costly form of harassment, it is clear that objectionable interrogatories can be just as, if not more, abusive. Accordingly, a party serving untimely or otherwise objectionable interrogatories, to which the opposing party timely objects, cannot unilaterally withdraw the interrogatories, and said interrogatories shall be counted toward the numerical limit unless otherwise ordered.

[A party] cannot circumvent its violation of the numerical limit . . . by simply claiming that it now "abandons any claims as to [selected interrogatories]"; a party cannot unilaterally and randomly select those supernumerary interrogatories which it will seek to compel answers.

*Id.* at 588-589 (footnotes omitted).

Consistent with this analysis, the Special Master agrees with ProMOS and therefore concludes that the total number of interrogatories is presumptively 92. The Special Master further concludes that Freescale can not hop scotch around its RFAs in order to make a determination as to which ones are implicated by ROG 30. Rather, the motion must be viewed as a Motion to Compel a ROG 30 Answer to the first 3 discrete RFAs in numerical order using the *Kendall* analysis for which ProMOS has not served "an unqualified admission." Since the Special Master has not been presented with RFAs 1 through 6, the Special Master is not in the position to conduct such an analysis.

## B.    Good Cause Does Not Exist For Exceeding the Limit of 35 Interrogatories

FRCP 33(a) allows the limit on interrogatories to be exceeded unless, (i) the discovery is duplicative or obtainable from a more convenient source; (ii) there has been ample opportunity to obtain the information sought; or (iii) the burden of the proposed discovery outweighs its likely benefit. *See American Chiropractic*, 2002 WL 534459 at *3-4.

7

Freescale makes no effort to address the FRCP 33(a) factors, rather it simply argues that the information sought "is relevant and it would not unduly burden ProMOS to provide the requested information." [D.I. 208 at 1]. Freescale further asserts that ProMOS' position constitutes a "purely legalistic argument."

The Special Master makes the following observations.

First, the time when Freescale should have made an attempt to seek leave of the Court to exceed the parties' agreed to 35 interrogatory limit has long since past. Freescale knew that ProMOS was making the supernumerary argument on January 22, 2008 when it was served with ProMOS' objections and responses to Defendant Freescale's Fourth Set of Interrogatories (Nos. 30-33). The Special Master concludes it is simply too late in the process to recraft propounded discovery. Query, were the Special Master to entertain the application, should there be a consideration of permitting ProMOS to increase its arsenal of interrogatories? It is simply too late. Moreover, requiring ProMOS to provide a ROG 30 response just to the RFAs Freescale placed in question is in the Special Master's view no small task in terms of the time necessary to conduct the *Kendall* analysis, assemble the information, and serve answers. At this stage of the litigation, this time and expense should be focused on other matters.

Second, calling upon the Court – in this case the Special Master – to conduct the count analysis is admittedly tedious and hyper technical. At the same time, the supernumerary inquiry is not infrequently a fact of life in the discovery process. As Judge Farnan had occasion to observe in a recent patent case: "[T]hat rule has been around so long, lawyers ought to be able to count . . . " *L.G. Phillips LCD Co., Ltd. v. Tatung Co.,* C.A. No. 04-343 JJF [D.I. 132 at 51:7-12].

8

Similarly, the Special Master should be able to expect that lawyers should understand the

impact of a ROG 30 coupled with RFAs. *In re Olympia Holding Corp.*, 189 B.R. 846, 853

(Bankr. W.D. Fla. 1995) ("Requests for admissions and interrogatories are not interchangeable

procedures. Utilizing interrogatories disguised as requests for admissions in an attempt to

circumvent a local rule limiting the number of interrogatories is an abuse of the discovery

process."(citations omitted))  The court in *Safeco* discussed the purpose of RFAs and their

relationship to ROG 30, and its full analysis is noteworthy:

> "The purpose of Rule 36(a) is to expedite trial by establishing
> certain material facts as true and thus narrowing the range of issues
> for trial." *Asea, Inc. v. S. Pac. Transp. Co.*, 669 F.2d 1242, 1245
> (9th Cir. 1981); *see* Advisory Committee Note to 1970 Amendment
> to Fed.R.Civ.P. 36, 48 F.R.D. 531-532 (1970) ("Rule 36 serves
> two vital purposes, both of which are designated to reduce trial
> time.  Admissions are sought, first to facilitate proof with respect
> to issues that cannot be eliminated from the case, and secondly, to
> narrow the issues by eliminating those that can be.")  Their goal "is
> to eliminate from the trial matters as to which there is no genuine
> dispute." *State of California v. The S.S. Jules Fribourg*, 19 F.R.D.
> 432, 436 (N.D. Cal. 1955).  Therefore, requests for admissions are
> not principally discovery devices, *see* 8A Charles Alan Wright,
> Arthur R. Miller & Richard L. Marcus, *Federal Practice and
> Procedure* § 2252, at 524-525 ("Strictly speaking, Rule 36 is not a
> discovery procedure at all, since it presupposes that the party
> proceeding under it knows the facts or has the document and
> merely wishes its opponent to concede their genuineness.  A party
> who desires to discover what the facts are should resort to other
> discovery rules rather than Rule 36.") (footnotes omitted), and they
> "are not to be treated as substitutes for discovery processes to
> uncover evidence. . . ." *The Jules Fribourg*, 19 F.R.D. at 436; *see* 7
> Moore's Federal Practice § 36.02[2] (3d ed. 1991) ("Because Rule
> 36 was not designed to elicit information, to obtain discovery of
> the existence of facts, or [to] obtain production of documents,
> requests for admission should not be used as a method of discovery
> for those purposes.") (footnote omitted).  Allowing service of an
> interrogatory which requests disclosure of all of the information on
> which the denials of each of 50 requests for admissions were
> based, however, essentially transforms each request for admission
> into an interrogatory.  This is not the purpose requests for
> admissions were intended to serve, and because Rule 36 imposes

9

no numerical limit on the number of requests for admissions that
may be served, condoning such a practice would circumvent the
numerical limit contained in Rule 33(a). *See generally In re
Olympia Holding Corp.*, 189 B.R. 846, 853 (Bankr. N.D. Fla.
1995) ("Requests for admissions and interrogatories are not
interchangeable procedures . . . Utilizing interrogatories disguised
as requests for admission in an attempt to circumvent a local rule
limiting the number of interrogatories is an abuse of the discovery
process.") (citations omitted).

In addition, as a general matter, requests for admissions deal with
discrete or separate subjects. *See* Fed. R. Civ. P. 36(a) ("Each
matter of which an admission is requested shall be separately set
forth."). A set of requests for admissions may address a wide
variety of disparate topics. For example, it may contain separate
requests for an admission that a document is authentic, an
admission that a meeting occurred on a specified date, an
admission that the responding party received a document that was
mailed to it, an admission that an individual was acting as the
agent of the responding party during a specified period of time.
Each of those four requests for admission is entirely independent
of the others, is unrelated to the others, and is not subsumed within
or inextricably intertwined with the others. One might be admitted
and others might be denied. Similarly, a set of requests for
admissions might seek admissions as to the authenticity of 100
documents. The documents may deal with different topics, may
have been created by different persons or entities, and may have
been prepared on different dates. Each of those 100 requests for
admission would address a subject matter discrete or separate from
each of the others. Accordingly, an interrogatory that asks the
responding party to state facts, identify witnesses, or identify
documents supporting the denial of each request for admission
contained in a set of requests for admissions usually should be
construed as containing a subpart for each request for admission
contained in the set. (Footnote omitted). Therefore, each of
defendants' requests for admissions as to which a response to three
interrogatories would be required if the request were not admitted
should be treated as a separately countable subpart of each of the
three interrogatories.

*Safeco*, 181 F.R.D. at 445-446.

The Special Master agrees with the analysis and expects that lawyers ought to be able to

count and conduct the analysis.

10

WHEREFORE, for the foregoing reasons, the Special Master concludes that Freescale's

Motion to Compel ProMOS to Supplement its response to Freescale's ROG 30 should be

DENIED in major part and GRANTED in part.  ProMOS shall provide ROG 30 responses for so

many of Freescale RFAs as the *Kendall* analysis warrants beginning at ROG 1, not exceeding the

limit of 35 interrogatories, not later than 5 days from the date of this ORDER.

**The Special Master's Report and Recommendations will become a final order of the**

**Court unless objections are taken within twenty (20) days as provided by the Court's**

**Order of January 25, 2008.  [D.I. 133]**

ENTERED THIS _24_ DAY OF June, 2008

Vincent J. Poppiti (Del. Bar. ID No. 100614)
Special Master

062038.00618/40175282v.1