IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PROMOS TECHNOLOGIES, INC., | ) | **REDACTED PUBLIC** |
| | ) | **VERSION** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-788 (JJF) |
| | ) | |
| FREESCALE SEMICONDUCTOR, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**FREESCALE'S MAY 20, 2008 LETTER TO SPECIAL MASTER**
**IN RESPONSE TO CUSTOMER LETTER BRIEF OF PROMOS**

# DM ___

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Mary B. Graham (#2256)
James W. Parrett, Jr. (#4292)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
302.658.9200
mgraham@mnat.com

OF COUNSEL:

*Attorneys for Freescale Semiconductor, Inc.*

David L. Witcoff
Kevin P. Ferguson
John M. Michalik
JONES DAY
77 West Wacker
Chicago, IL 60601-1692
312.782.3939

James L. Wamsley III
F. Drexel Feeling
Thomas R. Goots
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH 44114-1190
216.586.3939

Dated: May 20, 2008
Redacted Filing Date: July 1, 2008

Dear Judge Poppiti:

The second of ProMOS's four May 13, 2008 discovery letters demonstrates once again its attempt to use discovery motion practice as a strategic weapon.[1] This time, ProMOS seeks to compel discovery under four of the same discovery requests under which it moved to compel in DM4: document requests 123, 124 and 125 and interrogatory 32. Having agreed only weeks ago with Freescale to a resolution regarding discovery under these very requests in a discovery dispute raised more than two months ago, ProMOS should not be heard at this late date to raise new demands for discovery under the same requests.

The other relief sought by ProMOS's second letter concerns deposition testimony months ago to which ProMOS never before objected. Moreover, ProMOS has not disclosed the full record on these depositions, failing to disclose that Freescale produced a series of witnesses on the exact same deposition topic without objection or controversy. ProMOS's complaints about the Freescale 30(b)(6) testimony are without merit and come far too late in any event.

**Background**

The four written discovery requests on which ProMOS bases its second May 13 discovery letter were already the subject of an earlier ProMOS discovery motion. On March 10, 2008, ProMOS filed a discovery motion later designated by the Special Master as DM4. During a March 13 telephone conference with the parties, the Special Master directed ProMOS to identify the specific requests as to which it was seeking additional discovery in DM4. ProMOS responded with its March 14 letter identifying five interrogatories (including interrogatory no. 32) and thirty document requests (including nos. 123, 124 and 125) "that we believe are most critical in terms of Freescale's potential withholding of discovery and the need for court-ordered supplementation . . . ." (March 14, 2008 Letter attached as Exhibit 1.) The parties later participated in numerous conferences—including two all-day, in-person meetings—with the Special Master in an effort to resolve the issues with respect to "the need for court-ordered supplementation" of Freescale's responses to the discovery responses on which ProMOS had moved in DM4. With the Special Master's assistance, the parties were finally able to reach an agreement. (The memorialization of that agreement is attached as Exhibit 2 ("the Agreement").)

In its second May 13 discovery letter, ProMOS now wants the Court to ignore DM4 and the agreement on those ProMOS discovery requests, and it moves once again to compel discovery under those very same requests. As demonstrated below, there is no justification for such harassing tactics. ProMOS's misrepresentations regarding Freescale's statements in the proceedings before the Special Master are likewise not justified.

---

[1] ProMOS has exceeded the four-page limit for letter briefs without requesting permission and has directed the Special Master to the DM4 transcript without first obtaining (or even seeking) Freescale's agreement, in violation of the Special Master's explicit contrary directive. (4/4, 2008 Tr. at 3:1 – 5:3.) Freescale hereby seeks leave to exceed the four-page limit to respond to ProMOS's letter brief. Given that ProMOS has cited to the DM4 agreement transcript, Freescale does the same herein.

The Honorable Vincent J. Poppiti
May 20, 2008
Page 2

**Document Request No. 125**

Document Request No. 125 was the subject of hours of discussions in face-to-face meetings with the Special Master. The Special Master acknowledged early on in those discussions that this request is so broad on its face that it reaches every Freescale product. (4/9 Tr. at 47.) With the assistance of the Special Master, the parties eventually resolved issues regarding the scope of the documents to be produced and products for which production would occur, as memorialized in paragraph 7 of the Agreement. Throughout the negotiations leading up to the Agreement to resolve DM4, ProMOS's counsel was unwilling to compromise unless Freescale agreed to produce documents responsive to document request 125, not just for those products containing different "cores," but also for the other products that contained the cores ProMOS had previously identified and accused of infringement. At one point, ProMOS threatened to file "DM5" in the event that Freescale limited its production only to the "paragraph 4 products" that contained the new cores. (4/9 Tr. at 76-77.) Freescale responded by stating, "Judge, if I am being told that I am going to face a certain further discovery motion, then I have no incentive to do anything here" and "I do recoil with the idea that I am going to settle this, turn around, and find on my desk when I get back a new letter to Your Honor raising yet a new discovery issue now several weeks after the extended discovery cutoff date." (4/9 Tr. at 77-78.)

The Special Master articulated the problem with ProMOS's position as follows:

> JUDGE POPPITI: I understand what Mr. Wamsley is saying. If you are saying we are going to close down this table on DM4 and in a week and a half we are going to be right back on DM5 focused on this same issue with different product, then there is no incentive to enter into an agreement. That's what I heard you say.

> MR. WAMSLEY: And that is what I said, yes.

(4/9 Tr. p. 85). The Special Master continued:

> JUDGE POPPITI: [Y]ou can expect, and I have said it in many different ways and maybe I should just put a finer point on this, if there is the need, from ProMOS' point, for later discussion and then a later application, one of the questions I am going to have, even if Mr. Wamsley doesn't raise it, and I expect he would, is, if you are suggesting that, with respect to paragraph two products, information that you expect should have been given under 125 has not been given, my question is going to be: Why wasn't it raised earlier? If you hadn't been getting the information, then why wasn't it raised? I will ask that question.

(4/9 Tr. p. 85-86). Eventually, the document request 125 issue was resolved by Freescale's agreement to compromise by producing documents responsive to this request not just for the products identified pursuant to paragraph 4, but also for those identified pursuant to paragraph 2

The Honorable Vincent J. Poppiti
May 20, 2008
Page 3

of the Agreement.  (4/9 Tr. at 130-131.)  Although the parties spent countless hours working out this aspect of the Agreement, ProMOS is now asking the Court to compel Freescale to produce documents that are responsive to request 125 related to *different* products.  In short, even though ProMOS reached an agreement on this request, it now wants a different one.  This behavior exemplifies ProMOS's "moving target" approach to discovery about which Freescale has long complained. The time has long since come and gone for discovery to close and ProMOS has no justification for reopening it now for this purpose.

Not only does ProMOS seek to avoid its prior Agreement, in doing so, it misrepresents the record by claiming that Freescale disclosed during the April 9 conference that it had failed to search for documents responsive to request 125.  Freescale indicated nothing of the sort.  ProMOS's claim relating to Freescale's argument concerning the "location of usage" documents in the Texas case is a classic red herring.  Freescale's arguments regarding the Order of Magistrate Judge Bush in the Texas case were made in an effort to minimize its burden to produce documents going forward.  In fact, Freescale did not restrict its document production responsive to request 125 in the past based on that agreement, and stated on the record that it was not aware of withholding documents. (4/9 Tr. at 46.)  Moreover, while ProMOS suggests in its letter brief that it "agreed to address the issue by separate letter to Freescale following resolution of DM4" (Letter Br. At 2), Freescale certainly did not agree to anything of the sort, and the pages ProMOS cites in support of this supposed "agreement" do not support ProMOS's claim.  All of them refer instead to the parties' discussions which took place *before* Freescale agreed to compromise and to produce documents for additional products beyond the paragraph 4 products. (4/9 Tr. at 130.)  There was never any "agreement" for ProMOS to come back again and raise the issue all over again with respect to even *more* products at this stage in the proceedings.

Furthermore, contrary to ProMOS's claim, Freescale has produced application notes for Freescale products.  With respect to evaluation boards, those were not identified by ProMOS as allegedly infringing products in its original list.  Indeed, ProMOS made those boards one of the bases for its request for relief under DM4.  Consistent with its obligations under the Agreement resolving DM4, Freescale has produced technical documentation with respect to the paragraph 4 evaluation boards and sales data with respect to the paragraph 2 and paragraph 4 evaluation boards.  Nothing more is required.

### Document Request Nos. 123 and 124 and Interrogatory 32

As with Request No. 125, the Agreement to resolve DM4 disposes of the issue that ProMOS now attempts to raise under document requests 123 and 124 and interrogatory 32.[2] Just as it did with request 125, ProMOS specifically identified these two document requests and this interrogatory in its March 14 letter relating to DM4, and raised the issue of "the need for court-ordered supplementation" in this regard.  (See Exhibit 1.)  As with its request 125 discussed above, ProMOS could and should have raised any additional issues it now seeks to

---

[2]    Moreover, Freescale has provided an answer to interrogatory 32 pursuant to Rule 33(d), and ProMOS has made no showing that Freescale's answer is deficient.  This alone is reason enough to deny the ProMOS motion with respect to interrogatory 32.

The Honorable Vincent J. Poppiti
May 20, 2008
Page 4

raise with respect to requests 123 and 124 and interrogatory 32 as part of DM4. In particular, ProMOS could have raised any issue with the documents which are the subject of these requests and this interrogatory months ago when it asserted that Freescale's production of documents related to ProMOS's original list of accused products was deficient. ProMOS did not complain about Freescale's responses to request 123 or 124, interrogatory 32, or otherwise refer to "customer documents" during any of the conferences with the Special Master in January or February. In January, the parties engaged in extensive negotiations intended to forge an agreement defining the additional document production to be made by Freescale with respect to the accused products identified by ProMOS. During the very first telephone conference held by the Special Master, Freescale made it clear that it had no intention of holding documents back but wanted to put all document issues to rest by producing those types of documents that ProMOS wanted. (1/17 Tr. at 34-38.) Those documents were described in some detail by Freescale on the record during the January 17 teleconference and that description was ultimately set forth in the Court's January 25 stipulated order extending the discovery deadline. "Customer documents" were not among the documents that Freescale was asked to look for at that time. (See D.I. 132.) By moving now to compel further documents responsive to request nos. 123 and 124 and for a further response to interrogatory 32, ProMOS seeks not only a do-over of its DM4 motion, but also of its agreements which resulted in the January 25, 2008 stipulated order as well. It is simply too late for ProMOS to change its mind to raise this issue now.

**Deposition Testimony Regarding Documents Provided to Customers – Topic No. 8**

ProMOS's final complaint relates to deposition testimony with respect to Topic No. 8 of its Third 30(b)(6) notice. This issue is yet another one that ProMOS should have raised long ago if it truly believed there was a problem with the deposition testimony—which was given months ago. The only support that ProMOS cites for its motion on this issue is the deposition transcript of Mr. Nash.[3] ProMOS fails to mention that the Nash deposition occurred on January 23, 2008, almost four months ago. ProMOS's counsel never complained during the deposition that the witness was not prepared to testify regarding Topic No. 8. In fact, the cited testimony relates only to evaluation boards – a single area within Topic No. 8. At the conclusion of the deposition, Freescale's counsel stated on the record that the deposition was closed. ProMOS's counsel did not object. In the intervening months since the deposition was taken, ProMOS never raised any issue about Mr. Nash's testimony until the day before filing its discovery letter.

ProMOS also fails to mention that Freescale produced not only Mr. Nash, but at least eight other Freescale witnesses testify on Topic No. 8 in ProMOS's Third 30(b)(6) Notice.

---

[3]     ProMOS also suggests that other Freescale witnesses were unable to provide testimony on this issue, citing to the deposition of Mr. Branson. ProMOS does not provide any page cites to the Branson deposition transcript, so there is no indication what testimony ProMOS believes purportedly supports its position. Additionally, ProMOS never complained about this subject at the Branson deposition or in the two months since the deposition. And, like the Nash deposition, ProMOS's counsel made no objection whatsoever to the closing of the deposition by Freescale's counsel.

The Honorable Vincent J. Poppiti
May 20, 2008
Page 5

In addition to Mr. Nash, Freescale produced Messrs. Bobrov, Branson, Hui, Hunter, Nuckolls, Short and Todd, as well as Ms. Sullivan.[4]  The last of these depositions was taken more than two months ago, while several occurred more than three months ago.  Until days ago, at no time had ProMOS suggested that <u>any</u> of these witnesses was not able to provide testimony on Topic No. 8.

Even more damning to ProMOS's motion regarding Freescale's alleged failure to produce a witness to discuss documents provided to customers is the fact – not disclosed in ProMOS's letter – that Freescale also produced a witness who testified in response to Topic No. 2 in ProMOS's Fifth 30(b)(6) Notice, which is almost identical to Topic No. 8, as seen below.

> 2.      [Fifth Notice] Documents (such as data sheets, promotional or marketing materials) provided by Freescale to its customers or Distributors concerning the use of any Freescale Products, including communications between Freescale and its customers and/or Distributors relating to the installation, operation, structure, function, implementation and use of any of the Freescale Products.

> 8.      [Third Notice] Documents (such as communications, data sheets, promotional or marketing materials) and things (such as demonstration boards or other implementations) provided by Freescale to or used by Freescale with its customers or distributors concerning the use of each Freescale Product and/or each product that incorporates or includes a Freescale Product, including those relating to the installation, operation, structure, function, implementation and use of each Freescale Product and/or each product that incorporates or includes a Freescale Product.

In response to Topic No. 2, Freescale produced Fawzi Behmann on February 8, 2008.  ProMOS's counsel asked Mr. Behmann numerous questions regarding communications with Freescale's customers.  (Exhibit 3, Behmann Dep. Tr., s*ee, e.g.,* pp. 23-35.)  ProMOS has never complained that the witness was not responsive and it never complained in the intervening months that it needed another witness.

---

[4]      It cannot be disputed that ProMOS's counsel never truly explored Topic No. 8 with any of these witnesses.  The Bobrov deposition lasted 16 minutes.  The Todd deposition lasted only 41 minutes and the word "customer" is used in only two questions, both of which Mr. Todd answered.  The Short deposition lasted less than an hour and the word "customer" was used in only seven questions, to each of which Mr. Short provided a response.  While the deposition of Ms. Sullivan lasted over three hours, ProMOS's counsel asked Ms. Sullivan only two questions using the word "customer."  Moreover, after asking Ms. Sullivan what she did to prepare for Topic No. 8, ProMOS's counsel never asked a single question about the topic.  Similar circumstances exist with respect to the other deponents, including Messrs. Nuckolls and Hui whose depositions lasted only about an hour each, though they, like the others, were produced to testify regarding all or part of 16 topics, including Topic No. 8.

The Honorable Vincent J. Poppiti
May 20, 2008
Page 6

Another thing that ProMOS does not tell the Court is that Freescale objected to Topic No. 8 of the Third Notice as duplicative of Topic No. 2 of the Fifth Notice. (Exhibit 4, Freescale's Objections to ProMOS's Third Notice of 30(b)(6) Deposition.):

> Freescale further objects to this topic as unduly burdensome to the extent it is duplicative of Topic No. 2 in ProMOS' Fifth Notice of 30(b)(6) deposition. Freescale will only produce a witness to provide testimony regarding this topic in response to one 30(b)(6) notice.

The overlap between Topic No. 2 (Fifth Notice) and Topic No. 8 (Third Notice) is undeniable. ProMOS's complaint that it never had a proper witness on Topic No. 8 further lacks merit because it had a witness on Topic No. 2 and ProMOS never objected to that testimony.

In sum, ProMOS had ample opportunity to take discovery regarding Topic No. 8 (and Topic No. 2). Freescale produced ten witnesses to testify on those topics. ProMOS never fully explored the issue with any of Freescale's witnesses, other than Mr. Behmann. Moreover, ProMOS never complained, at the depositions or in the intervening months, that any of those witnesses was not prepared on the topic. ProMOS's complaint here has no merit. It is time to move on with the merits of this case rather than deal with unwarranted discovery complaints on requests that have already been brought before the Court.

**Conclusion**

For the forgoing reasons, the relief sought by ProMOS in its second of four May 13 discovery letters should be denied.

Respectfully,

*/s/ Mary B. Graham*

Mary B. Graham (#2256)

MBG/lmc
cc:    All counsel on service list
2337547

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 1, 2008, the foregoing was caused to be electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered participants.

In addition, the undersigned hereby certifies that on July 1, 2008 true and correct copies of the foregoing were caused to be served upon the following parties in the manner indicated:

| | |
|---|---|
| **BY HAND DELIVERY:** | **BY E-MAIL** |
| Vincent J. Poppiti, Esq.<br>BLANK ROME LLP<br>1201 North Market Street, Suite 800<br>Wilmington, DE  19801-4226 | John G. Day, Esq.<br>Steven J. Balick, Esquire<br>ASHBY & GEDDES<br>500 Delaware Avenue, 8th Floor<br>Wilmington, DE  19899 |
| **BY E-MAIL:** | **jday@ashby-geddes.com**<br>**sbalick@ashby-geddes.com** |
| Vincent J. Poppiti, Esq.<br>**poppiti@blankrome.com**<br>BLANK ROME LLP | **BY E-MAIL** |
| WITH A COPY TO: | Sten A. Jensen, Esq.<br>HOGAN & HARTSON LLP<br>555 Thirteenth Street, NW<br>Washington, DC  20004 |
| Elizabeth Oestreich<br>**oestreich@blankrome.com**<br>Mary Levan<br>**levan@blankrome.com**<br>Carrie David<br>**david-c@blankrome.com**<br>BLANK ROME LLP | **sajensen@hhlaw.com** |
| | **BY E-MAIL:** |
| | Steven J. Routh, Esq.<br>**sjrouth@hhlaw.com**<br>William H. Wright, Esq.<br>**whwright@hhlaw.com**<br>HOGAN & HARTSON LLP |
| | William C. Gooding, Esq.<br>**billgooding@gooding-crittenden.com**<br>GOODING & CRITTENDEN, L.L.P. |

*/s/ James W. Parrett, Jr.*

_____

James W. Parrett (#4292)

1383169

EXHIBIT 1

# ASHBY & GEDDES

ATTORNEYS AND COUNSELLORS AT LAW

500 DELAWARE AVENUE

P. O. BOX 1150

WILMINGTON, DELAWARE 19899

TELEPHONE
302-654-1888

FACSIMILE
302-654-2067

March 14, 2008

The Honorable Vincent J. Poppiti
Special Master
Blank Rome LLP
Chase Manhattan Center, Suite 800
Wilmington, DE 19801-4226

<u>VIA ELECTRONIC FILING</u>
<u>AND HAND DELIVERY</u>

Re:    *ProMOS Technologies, Inc. v. Freescale Semiconductor, Inc.,*
       <u>C.A. No. 06-788-JJF (DM 4)</u>

Dear Judge Poppiti:

At the Special Master's request during yesterday's teleconference, ProMOS Technologies, Inc. ("ProMOS") has identified in the attached document those ProMOS discovery requests relating to "Freescale Products" (as defined in Freescale's discovery requests) that we believe are most critical in terms of Freescale's potential withholding of discovery and the need for court-ordered supplementation regarding certain of those products.

As noted in ProMOS's previous motions to compel, many of our discovery requests have sought to identify Freescale Products and to obtain technical and damages-related information on those products. We also conducted a Rule 30(b)(6) deposition, pursuant to orders issued by Judge Farnan, that sought information concerning Freescale Products. As a result, the issue at hand potentially infects much of the discovery in this case. It is not possible for ProMOS to know at this point the extent to which various discovery requests require supplementation and/or the implications of thereof. That is because Freescale has been unwilling to specify the extent to which there are Freescale Products for which discovery has not been provided based on Freescale's ubiquitous objection that ProMOS's discovery requests are overly broad. In the attached document, we have specifically identified the 5 interrogatories, 30 document requests, and Rule 30(b)(6) notice that are most critically in need of supplementation to cover any products that Freescale has shielded from discovery, or a certification from Freescale that it has not withheld any documents or discovery with respect to Freescale Products. Many of these discovery requests are overlapping and call for the same or similar information.

The precise number of discovery requests that require supplementation, the extent of supplementation required, and the consequences of the additional information will depend on what Freescale has withheld from discovery to date. Accordingly, as stated in our March 10 letter brief (DM 4), the precise relief required to remedy Freescale's discovery misconduct will depend in significant part on the types of products that Freescale has shielded from discovery. To the extent some of those products are technically the same as or similar to the accused products

The Honorable Vincent J. Poppiti
March 14, 2008
Page 2


that have already been identified (for example, they use the same core and do not have any other data caches), we may only need damages information for such products. To the extent any of the products contain cache memories outside the core and/or previously-unidentified cores, we may also need technical documents so that we can generate infringement charts and otherwise prepare our infringement case for trial or evidentiary sanctions.


Respectfully,

*/s/ John G. Day*

John G. Day


JGD: nml
Attachment
cc:    Mary B. Graham, Esquire (via electronic mail; w/attachment)
       Steven J. Routh, Esquire (via electronic mail; w/attachment)
       David L. Witcoff, Esquire (via electronic mail; w/attachment)

## PROMOS INTERROGATORIES:

### INTERROGATORY NO. 1:

Identify by model number, model version, trade name, and internal designation each and every Freescale Product that you have manufactured or sold since 2000. For each such product, also identify the type of product (i.e., microcontroller, microprocessor, processor, digital signal processor, controller core, processor core or systems or components containing the same, etc.), the manufacturer, and the date of first sale in the United States. Your response may take the form of a table or chart, for example:

### INTERROGATORY NO. 7:

With respect to the products identified and/or requested to be identified in Interrogatory No. 1, state (a) the total unit and dollar volumes of each such product that were manufactured, sold, or offered for sale by you beginning in the year 2000, including projections through calendar year 2012, and (b) the revenues, costs (fixed and variable), gross profit and net profit for each such product beginning in the year 2000, including projections through calendar year 2012.

### INTERROGATORY NO. 28:

Identify each product designed, manufactured, or sold by Freescale that contains, uses, or works with cache memory, including those currently under development.

### INTERROGATORY NO. 29:

Identify (by customer, product name, product number, date, quantity, sales price, shipping location, billing location, and any other information available to Freescale) all sales of Freescale Products that were (a) shipped to; and/or (b) billed to; and/or (c) sold pursuant to an agreement where title was transferred in; and/or (c) used in locations within the United States.

### IINTERROGATORY NO. 32:

Identify all documents provided by Freescale to its customers (including documents posted on any website) concerning the use, installation, operation, structure, function or implementation of any Freescale Product.

## RULE 30(B)(6) DEPOSITION TESTIMONY

The Rule 30(b)(6) deposition testimony that Judge Farnan ordered Freescale to provide on October 31, 2007 and December 20, 2007 regarding the documents maintained by Freescale relating to, and features associated with, Freescale Products.

## PROMOS'S REQUESTS FOR PRODUCTION OF DOCUMENTS

### REQUEST NO. 23:

All documents relating to design reviews and design review meetings, including but not limited to, all notes, minutes, reports, action item lists and management summaries, relating to each version of each cache memory used with, incorporated in or relied on by any Freescale Product.

### REQUEST NO. 27:

All documents relating to drawings, schematics, blueprints, manufacturing specifications, engineering specifications, design specifications, product test specifications, part specifications, assembly specifications and other documents relating to the design, development, or manufacture of any Freescale Product.

### REQUEST NO. 32:

All versions of operation manuals, repair manuals, or user manuals for any Freescale Product.

### REQUEST NO. 33:

All manufacturing and/or production drawings for any Freescale Product, including but not limited to hardware drawings, engineering drawings, assembly drawings, and blueprints.

### REQUEST NO. 38:

All documents relating to the conception, engineering, design, research, development, manufacture, testing, use, repair and/or operation of each version of each model of Freescale Product, including but not limited to specifications, schematics, block diagrams, data sheets, layouts, databases, depictions, photographs, simulations, test results, manuals, journals, notes, notebooks, communications, and correspondence.

### REQUEST NO. 43:

For each Freescale Product, documents sufficient to show the place and process of manufacture, models manufactured, units manufactured, and destination of units manufactured.

### REQUEST NO. 44:

To the extent not produced in response to any other request, all reference designs and schematics relating to each version of each model of Freescale Product.

### REQUEST NO. 46:

Circuit diagrams for each version of each model of Freescale Product.

- 2 -

**REQUEST NO. 52:**

All documents relating to source code, object code, pseudo code, flow charts or design specifications of the circuit diagrams, Verilog code and/or VHDL code, and reticle layout code for each version of each model of Freescale Product.

**REQUEST NO. 57:**

All documents relating to the operation of each version of each model of Freescale Product.

**REQUEST NO. 62:**

Documents sufficient to show the device and system architecture of each version of each model of Freescale Product.

**REQUEST NO. 68:**

Documents sufficient to identify any third parties that manufacture any Freescale Products.

**REQUEST NO. 69:**

All articles, speeches, presentations or interviews, both internal and external, that have been written and/or given by your employees, officers, directors or other of your representatives relating to Freescale Products.

**REQUEST NO. 74:**

All documents relating to any effort by Freescale or anyone else on its behalf to design, redesign, commercialize or modify any Freescale Product in view of the patents-in-suit.

**REQUEST NO. 75:**

All documents relating to any attempt by Freescale or anyone on its behalf to design around and/or avoid infringement of the patents-in-suit by any Freescale Product.

**REQUEST NO. 88:**

Documents sufficient to show by month or calendar quarter for each year since 2000 the number of each version of each model of Freescale Product manufactured, used, sold or distributed in the United States.

**REQUEST NO. 89:**

Documents sufficient to show by month or calendar quarter for each year since 2000 the volume of sales in dollars from the sale or distribution of each version of each model of Freescale Product.

**REQUEST NO. 90:**

All projections, forecasts, business plans, strategic plans, fiscal plans, marketing plans or sales plans relating to the sale of Freescale Products from 2000 to the present, including documents containing projections through calendar year 2012.

**REQUEST NO. 92:**

All versions of all part number decoders or legends for each version of each model of Freescale Product.

**REQUEST NO. 93:**

Current and historical price lists for each version of each model of Freescale Product.

**REQUEST NO. 97:**

All documents relating to sales, distribution or importation agreements entered into between Freescale and any third party for each version of each model of Freescale Product.

**REQUEST NO. 98:**

Documents sufficient to show each of your distributors, resellers and customers of each version of each model of Freescale Product.

**REQUEST NO. 101:**

Summary documents categorized by year and by product type and name regarding the following:  (1) Freescale's total unit and dollar volumes for Freescale Products manufactured, sold, or offered for sale by you from 2000 to the present, including projections through calendar year 2012; and (2) revenues, costs (fixed and variable), gross profit, and net profit for all such products manufactured, sold or offered for sale by you from 2000 to the present, including projections through calendar year 2012.

**REQUEST NO. 102:**

Summary documents categorized by year and by product type and name regarding gross expenses, including but not limited to direct labor costs, direct manufacturing costs, selling costs, variable overhead costs, incurred in the manufacture, distribution, or sale of Freescale Products from 2000 to the present, including projections through calendar year 2012.

**REQUEST NO. 118:**

Documents sufficient to correlate the product name, product, product number, part number, product family, process flow, circuit group or family, and circuit name for each Freescale Product.

**REQUEST NO. 119:**

Documents sufficient to determine the total unit and dollar volumes of Freescale Products manufactured in whole or in part within the United States for each quarter beginning in the calendar year 2000 and continuing through projections for calendar year 2012.

**REQUEST NO. 120:**

Documents sufficient to determine the total unit and dollar volumes of Freescale Products that are manufactured outside of the United States and subsequently sold into, shipped into, transferred into, located in and/or used in the United States for each quarter beginning in the calendar year 2000 and continuing through projections for calendar year 2012. Include in your response any Freescale Products that have been incorporated into any other product that is, will be, or has been sold into, shipped into, transferred into, located in and/or used in the United States by any person besides Freescale.

**REQUEST NO. 123:**

Documents sufficient to identify (by part number, product name, and product family) any customer product(s) that constitute, include or incorporate any Freescale Product.

**REQUEST NO. 124:**

Documents sufficient to identify (by date, geographic location, dollar value and quantity) any sales(s) of customer product(s) that constitute, include or incorporate any Freescale Product.

**REQUEST NO. 125:**

All documents, including but not limited to documents provided by Freescale to its customers, that provide or contain instruction on how to use any Freescale Product, including but not limited to reference designs, application notes and/or specific discussions or instructions as to what types of memory should be used in conjunction with specific Freescale Products.

EXHIBIT 2

CONFIDENTIAL EXHIBIT

EXHIBIT 3

CONFIDENTIAL EXHIBIT

EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PROMOS TECHNOLOGIES, INC.,           )
                                      )
            Plaintiff,                )
                                      )
    v.                                )        C.A. No. 06-788 (JJF)
                                      )
FREESCALE SEMICONDUCTOR, INC.,        )
                                      )
            Defendant.                )

### FREESCALE'S OBJECTIONS TO PROMOS'S THIRD
### NOTICE OF DEPOSITION PURSUANT TO RULE 30(b)(6)

Freescale Semiconductor, Inc. ("Freescale") provides the following objections to the Third Notice of Deposition Pursuant to Rule 30(b)(6) served on Freescale by ProMOS Technologies, Inc. ("ProMOS") in the above-captioned matter, dated December 19, 2007.

### GENERAL OBJECTIONS

1.    Freescale objects to the topics set forth in the Notice to the extent any topic seeks information that is protected from discovery by the attorney-client privilege, the work product doctrine, the joint defense privilege and/or any other applicable privilege that is otherwise immune from discovery. Nothing contained in these objections is intended to be, or in any way shall be deemed, a waiver of such an available privilege, protection or immunity.

2.    Freescale objects to the topics to the extent they call for Freescale's legal conclusions, contentions or legal theories.

3.    Freescale objects to the topics to the extent they call for information protected by confidentiality agreements with third parties.

4.    Freescale objects to the Notice to the extent it seeks discovery of information that is available through other means that are less burdensome, less expensive or more appropriate than through deposition, such as through documents or written discovery. In

Subject to and without waiving its general or specific objections, Freescale will produce witnesses in response to this topic.

**DEPOSITION TOPIC NO. 7:**

Research, development, testing, and manufacturing of each Freescale Product, including the costs associated therewith.

**RESPONSE:**

Freescale specifically objects to this topic as overly broad, because of the unreasonable ProMOS definition of "Freescale Products." (*See* Response to Topic No. 1). Freescale further objects to this topic as overly broad to the extent it seeks testimony regarding aspects of the "research, development, testing, and manufacturing" not at issue in this litigation. Also, Freescale objects to this topic to the extent it purports to require Freescale to produce a witness knowledgeable about aspects of the "research, development, testing, and manufacturing" of Freescale's products that were/are performed by a third party. Freescale furthermore objects to this topic as unduly burdensome to the extent it is duplicative of Topic No. 4 in ProMOS's Fifth Notice of 30(b)(6) deposition. Freescale will only produce a witness to provide testimony regarding this topic in response to one 30(b)(6) notice. It will not produce duplicative witnesses.

Subject to and without waiving its general or specific objections, Freescale will produce a witness to address unit costs in response to the topics set forth in the Fifth Notice.

**DEPOSITION TOPIC NO. 8:**

Documents (such as communications, data sheets, promotional or marketing materials) and things (such as demonstration boards or other implementations) provided by Freescale to or used by Freescale with its customers or distributors concerning the use of each Freescale Product and/or each product that incorporates or includes a Freescale Product, including those relating to the installation, operation, structure, function, implementation and use of each Freescale Product and/or each product that incorporates or includes a Freescale Product.

**RESPONSE**:

Freescale specifically objects to this topic as overly broad, because of the unreasonable ProMOS definition of "Freescale Products." (*See* Response to Topic No. 1). Freescale further objects to this topic as overly broad to the extent it purports to seek a Freescale witness' testimony about non-Freescale products into which Freescale Products are "incorporated" or "included." Freescale further objects to this topic as overly broad and unduly burdensome to the extent it purports to require Freescale to produce a witness able to testify about every specific detail of each document that is made available to Freescale's customers. The volume is far too large to enable a witness to have specific knowledge about every aspect of those documents. If ProMOS seeks testimony regarding a specific manual or piece of documentation, it should specifically identify that material in an amended notice, making specific reference to the particular document. Freescale also objects to this topic to the extent it purports to require a Freescale witness to have detailed knowledge of documents generated by third parties that Freescale includes in the documents that it makes available to its customers. Freescale further objects to this topic as unduly burdensome to the extent it is duplicative of Topic No. 2 in ProMOS's Fifth Notice of 30(b)(6) deposition. Freescale will only produce a witness to provide testimony regarding this topic in response to one 30(b)(6) notice. It will not produce duplicative witnesses.

Subject to and without waiving its general or specific objections, Freescale will produce witnesses in response to this topic.

**DEPOSITION TOPIC NO. 9:**

The date of first use, first public use, and first sale for each of the Freescale Products.