

**BLANK ROME LLP**
COUNSELORS AT LAW

*Phone:*   *(302) 425-6410*
*Fax:*     *(302) 428-5132*
*Email:*   *Poppiti@BlankRome.com*

July 10, 2008

John G. Day, Esquire
Ashby & Geddes
500 Delaware Avenue
Wilmington, DE 19801

Mary B. Graham, Esquire
Morris Nichols Arsht & Tunnell LLP
1201 North Market Street
Wilmington, DE 19801

Re: **ProMOS Technologies, Inc. v. Freescale Semiconductor, Inc.,**
**C.A. No. 06-788 (JJF)**

**Special Master's Report and Recommendation on the Motion of Plaintiff, Promos Technologies, Inc., To Reopen The Deposition Of Steven Benzel And For Other Relief (DM5e)**

Dear Counsel,

This matter comes before me as Special Master on the motion of Plaintiff, ProMOS Technologies, Inc. ("ProMOS") to reopen the deposition of Steven Benzel ("Benzel"). For the reasons already stated on the record during the June 25, 2008 hearing on the motion [Tr. at pp. 19-48] and for reasons stated below, the Special Master concludes that a re-deposition of Benzel is unnecessary. Further, the Special Master concludes that ProMOS is not entitled to the fees associated with the deposition of the two additional Freescale individuals on the L210 cache.

Although the case law is clear that a deposition may be reopened when substantive changes are made in an errata sheet, (*See, e.g., Lugtig v. Thomas*, 89 F.R.D. 639, 714-15 (D.C.Ill. 1981)) reopening Benzel's deposition is, in the Special Master's view, simply a waste of time. When a deposition is reopened, the deposing counsel can only ask questions about the reasons the changes were made, where the changes originated (with the deponent or the attorney) and supplemental questions made necessary by the changed answer. *Id.* ProMOS asserts that it is

John G. Day, Esquire
Marby B. Graham, Esquire
July 10, 2008
Page 2



entitled to reopen the Benzel deposition in order to obtain an explanation of why he gave an answer during his deposition then retracted that answer. [Tr. at p. 24].

In the Special Master's view, the only questions that ProMOS can ask at a re-deposition of Benzel, per *Lugtig*, either have already been answered by the errata sheet or cannot be answered by Benzel. The errata sheet explains why Benzel gave one answer and later retracted that answer, where the changes originated and also explains that Benzel does not have information regarding the development of the DL2CC. This information was reiterated by counsel for Freescale at the June 25, 2008 hearing. [Tr. at pp. 28-29].

Further, Freescale has already agreed to designate two individuals that ProMOS can depose on the L210 cache controller, the project that Benzel identified in his errata sheet. The Special Master finds it noteworthy that ProMOS admitted that Benzel would not be able to provide the additional information on the L210 cache that it needs. [Tr. at p. 24:7-11].

At the June 25, 2008 hearing, the Special Master requested that the record be supplemented to include the email exchange between counsel leading up to the deposition of Benzel in order to be informed about the topics for which he was to be deposed. [Tr. at p. 43]. A review of the submittal emails demonstrates that they contain very broad language, adding no additional information that would cause the Special Master to alter the conclusion.

E-mail from counsel for ProMos of February 9 and 12 to counsel for Freescale show the agreed upon subject matter to which Benzel would be testifying on February 15, *i.e.* the ARM cores including the ARM 920T, the ARM 926 and the ARM 1136. This was confirmed by Mr. Maersch, counsel for Freescale, who when asked at the Benzel deposition about what topics Benzel was being presented, repeated the above ARM cores. [Benzel Dep. at 5:20]. While Mr.

John G. Day, Esquire
Marby B. Graham, Esquire
July 10, 2008
Page 3



Maersch added that Benzel would also testify to the "ARM Level 2 cache controller" (the "Maersch Statement" [*Id*. at 5:21], the Special Master concludes that the statement was neither inconsistent with the parties' understanding prior to Benzel's deposition nor did it open the door to a new topic for the following reasons.

First, the Level 2 cache controller is synonymous with the L210 cache. [*Id.* at 6:13-14] ("I was responsible for the integration of the L2CC cache controller and I also refer to it as an L210"). Second, as ProMOS acknowledged, the L210 cache is part of the ARM 1136 platform. [D.I. 192 at 1] ("The ARM 1136 has unified L2 cache that is referred to as 'L210'"). In contrast, as explained in Benzel's errata sheet, the DL2CC is part of the "StarCore DSP processor platform" not the ARM 1136 platform. And third, the DL2CC was not identified in Exhibit 1 of ProMOS's Third Notice of 30(b)(6) Deposition as a Freescale Product. Notably, the ARM 920T, the ARM 926 and the ARM 1136 cores were all listed in Exhibit 1.

Thus, in view of each of the above and in the context of the parties' discussions regarding the topics leading up to Benzel's deposition, the Maersch Statement regarding the Level 2 cache controller appears to refer to the L210 cache which is part of the ARM 1136. Accordingly, the Special Master concludes that Benzel was not presented to testify regarding the DL2CC, and the Maersch Statement did not open the door to such testimony.

At the June 25, 2008 hearing, ProMOS for the first time sought fees and costs for deposing the two newly designated individuals on the L210 cache. The Special Master is mindful that ProMOS had only requested fees for reopening the deposition of Benzel. [D.I.192 at 3]. The Special Master concludes that ProMOS knew that it was going to depose at least one additional individual based on Benzel's errata sheet, which stated that he did not have further

John G. Day, Esquire
Marby B. Graham, Esquire
July 10, 2008
Page 4



information on the topic but rather identified an individual with knowledge. Moreover, as stated above, Benzel was not designated to testify regarding the DL2CC. Knowing that Benzel did not possess any information regarding the L210 cache, ProMOS could have requested that Freescale pay for any additional deposition costs related to the L210 cache. It chose not to.

Moreover, ProMOS's eleventh hour request plainly violates D. Del. L. R. 7.1.3(c)(1)(G) which requires that a brief be accompanied by, "a short conclusion stating the precise relief requested." While the provisions of D. Del. L.R. 7.1.2 and 7.1.3 are more flexible when parties are directed to file letter briefs [D.I. 131], the requirement that a party state with precision the relief requested is a common sense fundamental requirement.

FOR THE FOREGOING REASONS, the Special Master concludes that ProMOS's letter Motion to Compel the re-deposition of Steven Benzel [D.I. 192] and its request to assess the costs of the additional 30(b)(6) depositions should be **DENIED**.

**The Special Master's Report and Recommendations will become a final order of the Court unless objections are taken within twenty (20) days as provided by the Court's Order of January 25, 2008. [D.I. 133].**

ENTERED this 10TH day of July, 2008.

Yours very truly,

Vincent J. Poppiti
(DSBA No. 100614)
Special Master

VJP/mcl

062038.00618/40175600v.1

1201 Market Street  Suite 800  Wilmington, DE 19801
www.BlankRome.com

Delaware • Florida • New Jersey • New York • Ohio • Pennsylvania • Washington, DC • Hong Kong